SUSTAINABILITY INSTITUTE, ET AL v. TRUMP

2:25-CV-02152-RMG

# COLUMBUS DECLARATION

# EXHIBIT 15

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

THE SUSTAINABILITY INSTITUTE, et al.,
      Plaintiff,

v.

DONALD TRUMP, IN HIS OFFICIAL CAPACITY
AS PRESIDENT OF THE UNITED STATES, et al.,

      Defendants.

**DECLARATION OF TROY EUTON
(City of Columbus, Ohio)**

I, Troy Euton, declare as follows:

1.      My name is Troy Euton. This declaration is based on my knowledge, professional education, and experience. I am over the age of eighteen and suffer from no legal incapacity. I submit this declaration in support of the City of Columbus ("Columbus"), which is one of many grant recipients that has been affected by freezes on federal grant funding.

2.      I am an Assistant Director at the Columbus Recreation and Parks Department. I have held this position since November 2016. I have worked in parks departments in Ohio for 32 years. In my current role, I oversee the parks, facilities, forestry, and golf divisions. I also oversee the finances for the Recreation and Parks Department. The City Forester, Rosalie Hendon, reports directly to me.

3.      Columbus is a municipal corporation organized under Ohio law. It is the capital and largest city in the State of Ohio, and is predominantly located within Franklin County, Ohio.

1

It is the 14th-largest city in the United States, with a population of 913,175, according to the 2023 Census estimates. More than 2.1 million people live in the Columbus metropolitan area.

4. From about 2019 to 2022, I oversaw the development of Columbus's Urban Forestry Master Plan ("UFMP"). We initiated the UFMP because Columbus has less tree cover than other major cities, and the lack of tree cover contributes to an urban heat island effect. A heat island is a phenomenon where urban areas experience higher temperatures than surrounding areas due to the absorption and retention of heat by built environments like buildings and pavement. A 2014 study found that Columbus had the fastest-growing and eighth-most intense heat island of the 60 major cities studied.[1] Heat island effects can mean that our residents experience higher utility bills and can mean that vulnerable residents such as the elderly are subject to more heat-related illnesses, especially during the summer time.

5. To develop the UFMP, I met weekly with a small team, including the City Forester, and we all met several times a year to engage members of the community. Our goal was to get community input about the impact across Columbus of lack of tree cover.

6. We completed the UFMP in 2022. It has won several awards, including the 2021 Best Practice Award from the American Planning Association and a 2021 award for Planning and Analysis from the American Society of Landscape Architects. Our implementation of the UFMP won additional awards in 2022 and 2023.

7. The UFMP confirmed that Columbus needed more trees. It offered a closer analysis of which neighborhoods needed more tree cover.

8. In Columbus, lower-income neighborhoods are more likely to have few trees and a strong urban heat island effect. In 2022, a summer heat mapping effort found a 13.2-degree

---

[1] Climate Central, "Hot and Getting Hotter: Heat Islands Cooking U.S. Cities," Aug. 20, 2014.

difference in evening temperatures between different parts of Columbus, confirming that some residents inequitably experience more heat stress. Increased tree cover improves health outcomes, quality of life, and property values, while also lowering utility bills. More trees also help offset the impacts of climate change.

9.     Columbus Recreation and Parks Department Forestry staff plant an average of 3,000 trees each year, which are paid for through both Columbus's capital budget and operating budget. Trees are planted both by contracts with outside vendors and by in-house staff. Tree planting varies year-to-year based on the weather and duration of the planting season. Columbus's long-term goal is to plant enough trees to reach 40% canopy coverage by 2050.

10.     As a part of its plan to improve Columbus's tree canopy following the UFMP, the Recreation and Parks Department applied for an Urban and Community Forestry Grant with the U.S. Forest Service, an agency of the U.S. Department of Agriculture ("USDA"), as a subgrantee of the Ohio Department of Natural Resources. Columbus applied for $500,000 in order to purchase and plant approximately 1,250 diverse, large-class trees in disadvantaged areas in need of increased tree cover. I authorized the City Forester to apply for the grant.

11.     On February 28, 2024, the Ohio Department of Natural Resources sent a letter to Columbus confirming that the city had been chosen as a recipient of the US Forest Service's Inflation Reduction Act funding. A true and accurate copy of the Notice of Award is attached as Exhibit A. On July 10, 2024, Columbus signed a USDA certification related to the grant.

12.     Columbus' grant application specified that the additional $500,000 grant would allow Columbus to plant, on a one-time basis, an additional 1,250 street trees, beyond the typical 3,000 annual average.

3

13.     During the 2024 planting season, Columbus expended $393,930 of the awarded $500,000 to outside vendors, as detailed in the grant application. Through these vendors, Columbus has already planted about 1,100 of the promised trees. It plans to plant about 1,200 trees, then use the remaining grant funds to increase pruning services on mature trees in the neighborhoods identified in the grant application.

14.     Ordinarily, Columbus would have waited until 1,200 trees were planted to request reimbursement. On February 18, 2025, the Ohio Department of Natural Resources sent a letter to the Columbus Recreation and Parks Department. The letter indicated that ODNR was unsure which grants would be impacted but advised that grant recipients temporarily suspend expenditures of grant money, in light of the possibility that expenditures would not be reimbursed. ODNR also asked us to submit any outstanding reimbursements.

15.     On February 27, 2025, Columbus submitted a "Sub Awardee Request for Reimbursement(s)" to the Ohio Department of Natural Resources requesting reimbursement in the amount of $393,930 for expenses. As of the date of this declaration, Columbus has not been reimbursed for these expenses.

16.     Following the ODNR guidance, Columbus avoided making additional expenditures. Columbus had spent the outstanding $393,930 over the entire prior year since the grant was awarded.

17.     On March 13, 2025, the Ohio Department of Natural Resources sent an email to various grant recipients informing them that their previously-approved award was "approved for implementation:"

> If you have paused grant activities, please make plans to resume
> your project. I know many of you are concerned that this delay
> impacted your ability to complete the grant within the planned

4

project period. We understand your concern and will work with you on the necessary amendments.

18.    Given these events, Columbus is concerned that the federal government will continue to turn this grant on and off and may either fail to reimburse the city for the full amount of eligible expenses already incurred through this grant, or may not reimburse the city for the full amount of the grant after the city completes all of its required work.

19.    If Columbus does not receive the reimbursement it is owed under this grant, it will be forced to cover the $393,930 it has already spent through money from its capital budget. This would mean those funds would be unavailable for other important projects. This might include future planting or new special projects across the rest of the Recreation and Parks department. It would also cause staff in my department to have to spend resources and time to rewrite and seek amendment of the budget, and attempt to identify and seek funds to fill the new budget shortfall.

20.    Columbus intends to use the remaining $106,070 to prune mature trees in the neighborhoods covered by the grant. If Columbus does not receive the remaining funds, or if it is unclear whether that money will be available, then Columbus will not be able to perform this important upkeep.

21.    Already, because of the funding freeze, we have delayed engaging a request for proposals for tree pruning. Oak trees must be pruned during the winter, and while we prune other tree variants year-round, it is generally easier and more efficient to prune trees during the winter.

22.    These trees and their maintenance improve quality of life and health for low-income, disadvantaged communities, as the UFMP explains. Delaying tree maintenance impacts the communities in Columbus that already suffer harm from unequal access to a healthy tree canopy that could improve their health, their utility bills, and their well-being. These harms have

5

a ripple effect. When communities suffer greater health concerns, our health systems may be affected, and other public services may be strained. If the funding is not released, the delays also impact the many residents who contributed to the UFMP, who will not see their input and engagement honored.

*(signature on following page)*

6

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, and that this declaration was executed in Columbus, Ohio, on this 25th day of March, 2025.

Troy Euton
Assistant Director
Columbus Recreation and Parks Department

# COLUMBUS DECLARATION

# EXHIBIT 15-A

# SUBRECIPIENT GRANT AGREEMENT

This Agreement is between the **OHIO DEPARTMENT OF NATURAL RESOURCES** ("ODNR")**,** acting through its **DIVISION OF FORESTRY**, with offices located at 2045 Morse Rd., Columbus, OH, 43229, and **City of Columbus dba Columbus Recreation and Parks Department** (UEI # E212WH2HVV55), which is located at 1533 Alum Industrial Drive West, Columbus, Ohio 43209 **("Subrecipient")**.

Expenditures for this Agreement are partially or fully funded by federal funds. ODNR received a federal grant under the terms and conditions of an Ohio's Urban & Community Forestry Grant Program, awarded through USDA Forest Service, Eastern Region State, Private, and Tribal Forestry. This grant is identified by Federal Award Identification Number (FAIN) 23-DG-11094200-363, which became effective on September 5, 2023, with a total award amount of $9,000,000.00, and an approved indirect rate of 19.09%. This grant is made under Assistance Listing Number 10.727 Inflation Reduction Act Urban & Community Forestry Program. This Agreement is a subaward of that grant.

| | |
|---|---|
| **Total Award Committed to Subrecipient:** | **$500,000.00** |
| **Total Award Obligated for this Action:** | **$500,000.00** |
| **Cumulative Award Total Obligated (including this action and all prior actions):** | **$500,000.00** |

Subrecipient is an applicant who submitted a grant application to ODNR for this grant program. Under R.C. § 1501.0, ODNR may provide federal pass-through grants to eligible applicants for purpose or goal of federal program. Subrecipient has met the application requirements and has been approved by ODNR as eligible to receive this federal pass-through grant. Subrecipient will undertake the following with funding from this grant: tree plantings and public outreach that will conform to the approved timelines and project milestones as approved by the Division of Forestry.

The parties therefore agree as follows:

1. **Award.** ODNR hereby awards to the Subrecipient an Ohio's Urban & Community Forestry grant subaward not to exceed **$500,000.00** for the purpose of reimbursing the Subrecipient for performance and completion of the deliverables detailed in the attached Exhibits A-Scope of Work and Budget ("Exhibits") (the "Project").

2. **Performance of Project.** Subrecipient shall perform its duties and responsibilities under this Agreement in compliance with the terms, promises, conditions, plans, specifications, estimates, procedures, maps, and assurances set forth in the Exhibits, program guidelines, and the project application/proposal, incorporated herein by reference as though fully set forth herein, as well as the terms set forth in this Agreement. Subrecipient shall: (1) perform and complete the Project as set forth herein; (2) promptly submit to ODNR such reports and documents as required by ODNR and 2 CFR §200.330; (3) establish a separate special account for the funds for the acquisition and/or development of the Project; and (4) not change any of the terms, promises, conditions, plans, specifications, estimates, procedures, maps, or assurances set forth in the Exhibits, unless the proposed change is approved by ODNR. ODNR reserves the right to audit the special account created by Subrecipient, pursuant to this paragraph, either during or after the completion of the Project.

3. **Notice.** All notices, consents, and communications required hereunder (each, a "Notice") shall be in writing and shall be deemed to have been properly given when: 1) hand delivered with delivery acknowledged in writing; 2) sent by U.S. Certified mail, return receipt requested, postage prepaid; 3) sent by overnight delivery service (FedEx, UPS, etc.) with receipt; or 4) sent by fax or email. Notices shall be deemed given upon receipt thereof and shall be sent to the addresses below. Notices sent by fax or email shall be effectively given only upon acknowledgement of receipt by the receiving party. Any party may change its address for receipt of Notices upon notice to the other party. If delivery cannot be made at any address designated for Notices, a Notice shall be deemed given on the date on which delivery at such address is attempted.

| Subrecipient Contact: | ODNR Program Contact: | ODNR Federal Contact: |
|---|---|---|
| Rosalie Hendon<br>City Forester<br>Columbus Recreation and Parks Department<br>1533 Alum Industrial Dr. West<br>Columbus, Ohio 43209<br>614-724-3003<br>rfhendon@columbus.gov | Carrie Morrow<br>Urban Forestry Coordinator<br>ODNR Division of Forestry<br>2045 Morse Rd. Bldg. H-1<br>Columbus, Ohio  43229<br>614-265-6509<br>Carrie.morrow@dnr.ohio.gov | Kelsey Bradley<br>Program Administrator<br>ODNR Division of Forestry<br>2045 Morse Rd. Bldg. H-1<br>Columbus, Ohio  43229<br>614-265-6689<br>Kelsey.bradley@dnr.ohio.gov |

4. **Research and Development.** Grant funds shall not be used for research and development.

5. **Indirect Costs.** Grant funds are not authorized for indirect costs.

6. **Period of Performance.** Implementation of the Project shall not commence until this Agreement is effective. This Agreement shall be effective as of March 12, 2024.  ODNR shall not be responsible for any costs incurred by the Subrecipient prior to the date this Agreement becomes effective.  The Project shall be completed by April 1, 2028 unless modified by the mutual, written consent of both parties before that date or otherwise terminated as provided herein.  This Agreement shall terminate on April 1, 2028, unless modified by the mutual, written consent of both parties before that date or otherwise terminated as provided herein.

7. **Budget Period.** The budget period for this Agreement is March 12, 2024 through April 1, 2028.

8. **Non-Appropriation.** Performance by ODNR under this Agreement may be dependent upon the appropriation of funds by the Ohio General Assembly. Therefore, in accordance with R.C. § 126.07, it is agreed that ODNR's payments are contingent on the availability of such lawful appropriations by the Ohio General Assembly. If the Ohio General Assembly fails at any time to continue funding for the payments due hereunder, this Agreement is hereby terminated as of the date that the funding expires without further obligation of ODNR.  If appropriations are approved, ODNR may continue this Agreement past the current biennium by mutual written agreement between the parties.

9. **Permissible Costs.** Subrecipient shall comply with 2 CFR Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards) to determine the permissibility of all expenditures under this Agreement.

10. **Termination by ODNR.** Any time after signing this Agreement, ODNR may terminate the Agreement, in whole or in part, for any reason whatsoever, upon written notification to the Subrecipient. If ODNR terminates this Agreement, the Subrecipient will be paid for any non-cancelable obligation properly incurred by the Subrecipient prior to termination. Subrecipient shall return any unused grant funds to ODNR within thirty (30) days of termination.

11. **Termination by Subrecipient.** Any time after signing this Agreement, Subrecipient may terminate this Agreement for any reason whatsoever upon written notification to ODNR. If Subrecipient terminates this Agreement, Subrecipient shall not incur any new obligations using grant funds and shall use its reasonable best efforts to cancel as many outstanding obligations of grant funds as possible. Subrecipient shall return all unused grant funds to ODNR within thirty (30) days of termination.

12. **Nondiscrimination in Employment.** Subrecipient, Subrecipient's contractors, and any person acting on behalf of Subrecipient, shall comply with all federal and Ohio statutes, executive orders, and regulations implementing 42 U.S.C. Part 2000(d), Title IV of the Civil Rights Act of 1964 and R.C. Chapter 4112, prohibiting discrimination on the grounds of race, color, religion, sex, sexual orientation, age, disability, military status (as defined in R.C. § 4112.01), national origin, or ancestry against any citizen of this state in the employment of any person qualified and available for work related to the Project.  Subrecipient further agrees that Subrecipient, Subrecipient's contractors, and any person acting on behalf of Subrecipient shall not, in any manner, discriminate against, intimidate, or retaliate against any employee hired for the performance of work related to the Project on the grounds of race, color, religion, sex, sexual orientation, age, disability, military status, national origin, or ancestry.

    Subrecipient shall, in all solicitations or advertisements for employees placed by or on behalf of the Subrecipient, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, national origin, ancestry, age, sex, sexual orientation, handicap, or any disability. Subrecipient shall comply with Ohio and federal statutes, executive orders, and regulations to assure equal employment practices under the Agreement, and Subrecipient shall comply promptly with all orders, requests, and directions from the State of Ohio and federal agencies pertaining to the enforcement of the aforementioned nondiscrimination laws.

13. **Workers' Compensation.** Subrecipient shall provide its own workers' compensation coverage throughout the duration of this Agreement and any extensions thereof. ODNR is hereby released from any and all liability for injury received by the Subrecipient, its employees, agents, or subcontractors, while performing tasks, duties, work, or responsibilities as set forth in this Agreement.

14. **Compliance with Laws.** Subrecipient, in the execution of its duties and obligations under this Agreement, agrees to comply with all applicable federal, state, and local laws, rules, regulations, and ordinances.

15. **Prevailing Wage.** Pursuant to Chapter 4115 of the Ohio Revised Code, the Davis-Bacon Act (40 U.S.C. §§ 3141-3148) and 2 CFR 200 Appendix II(D), if applicable, Subrecipient shall require that all contractors pay the prevailing wage rate of the locality on all work performed on the Project. Subrecipient and any of its contractors shall comply with all other applicable provisions of Chapter 4115 of the Ohio Revised Code, the Davis-Bacon Act (40 U.S.C. §§ 3141-3148) and 2 CFR 200 Appendix II(D), including making the required reports to the prevailing wage coordinator.

16. **Liability; Indemnification.** Subrecipient shall be solely responsible for any and all claims, demands, or causes of action arising from Subrecipient's obligations under this Agreement. Each party to this Agreement must seek its own legal representative and bear its own costs, attorney fees, and expenses, in any litigation that may arise from the performance of this Agreement. It is specifically understood and agreed that ODNR does not indemnify Subrecipient. Nothing in this Agreement shall be construed to be a waiver of the sovereign immunity of the State of Ohio or the immunity of any of its employees or agents for any purpose. In no event shall ODNR be liable for indirect, consequential, incidental, special, liquidated, or punitive damages, or lost profits.

17. **Drug-Free Workplace.** Subrecipient agrees to comply with all applicable state and federal laws regarding drug-free workplace.

18. **Inspection.** The federal awarding agency, inspectors general, the Comptroller General of the United States, and ODNR, or any of their authorized representatives, have the right of access to any documents, papers, or other records of the Subrecipient which are pertinent to the federal award, to make audits, examinations, excerpts, and transcripts. This right also includes timely and reasonable access to the Subrecipient's personnel for the purpose of interview and discussion related to such documents. The rights of access in this section are not limited to the required retention period but last as long as the records are retained.

19. **OMB Guidance.** Subrecipient shall comply with OMB guidance in subparts A through F of 2 CFR Part 200. Subrecipient must also follow the regulations found in 2 CFR 200.330 through 2 CFR 200.332. Electronic copies of the CFR can be obtained at the following internet site: www.ecfr.gov.

20. **Use of MBE and EDGE Vendors.** Revised Code § 125.081 requires state agencies to set aside purchases for Minority Business Enterprises ("MBE") and Executive Order 2008-13S encourages use of Encouraging Diversity, Growth and Equity ("EDGE") businesses. ODNR encourages Subrecipient to purchase goods and services from Ohio-certified MBE and EDGE vendors.

21. **Events of Significant Impact.** Subrecipient shall immediately notify ODNR of developments that have a significant impact on the activities supported under this award. Also, notification must be given in case of problems, delays, or adverse conditions that materially impair the ability to meet the objectives of the award. This notification must include a statement of the action taken or contemplated, and any assistance needed to resolve the situation.

22. **Public Records.** Public access to award or agreement records must not be limited, except when such records must be kept confidential and would have been exempted from disclosure pursuant to Freedom of Information regulations (5 U.S.C. 552) or Ohio public records laws. Requests for research data are subject to 2 CFR 315(e).

23. **Records Retention.** Financial records, supporting documents, statistical records, and all other non-federal entity records pertinent to a federal award must be retained for a period of three years from the date of submission of the final expenditure report or, for federal awards that are renewed quarterly or annually, from the date of the submission of the quarterly or annual financial report, respectively, as reported to the federal awarding agency or pass-through entity in the case of a subrecipient. Records for real property and equipment acquired with federal funds must be retained for three (3) years after final disposition in accordance with 2 CFR 200.333.

24. **Debarment and Suspension.** Subrecipient shall immediately inform ODNR if it or any of its principals is presently excluded, debarred, or suspended from entering into covered transactions with the federal government or entities according to the terms of 2 CFR Part 180. If Subrecipient or any of its principals receive a transmittal letter or other official federal notice of debarment or suspension, it shall promptly notify ODNR. This applies whether the exclusion, debarment, or suspension is voluntary or involuntary. Subrecipient certifies that it is not debarred from consideration for contract awards by the State of Ohio under R.C. §§ 153.02, 125.25, or 5513.06. If this certification is false, this Agreement is void *ab initio* and Subrecipient shall immediately repay ODNR all funds transferred by this Agreement.

25. **Findings for Recovery.** Subrecipient represents and warrants that it is not subject to a finding for recovery under R.C. § 9.24, or that it has taken appropriate remedial steps required under R.C. § 9.24 or otherwise qualifies under that section. Subrecipient agrees that if this representation or warranty is deemed to be false, the agreement shall be void *ab initio* as between the parties to this agreement, and any funds paid by ODNR hereunder immediately shall be repaid to ODNR, or an action for recovery immediately may be commenced by ODNR for recovery.

26. **Ohio Ethics Law.** The Subrecipient certifies that it: (i) has reviewed and understands the Ohio ethics and conflict of interest laws as found in Ohio Revised Code Chapter 102 and in Ohio Revised Code Sections 2921.42 and 2921.43, and (ii) will take no action inconsistent with those laws. The Subrecipient understands that failure to comply with Ohio's ethics and conflict of interest laws is grounds for termination of this Agreement and may result in the loss of other contacts or grants with the State of Ohio.

27. **Campaign Contributions.** The Subrecipient affirms that, as applicable to it, no party listed in R.C. § 3517.13(I) or R.C. § 3517.13(J) or spouse of such party has made, as an individual, within the two previous calendar years, one or more contributions totaling in excess of $1,000.00 to the Governor or the Governor's campaign committees.

28. **Governing Law.** This Agreement and the rights of the parties hereunder shall be governed, construed, and interpreted in accordance with the laws of the State of Ohio and with the laws of the U.S. federal funding source. Subrecipient consents to jurisdiction in a court of proper jurisdiction in Franklin County, Ohio.

29. **Waiver.** A waiver by any party of any breach or default by the other party under this Agreement shall not constitute a continuing waiver by such party of any subsequent act in breach of or in default hereunder.

30. **Assignment.** Neither this Agreement nor any rights, duties, or obligations hereunder may be assigned or transferred in whole or in part by Subrecipient.

31. **Confidentiality Agreements.** Subrecipient shall not require its employees or subcontractors seeking to report fraud, waste, or abuse to sign or comply with internal confidentiality agreements or statements prohibiting or otherwise restricting them from lawfully reporting that waste, fraud, or abuse to a designated investigative or law-enforcement representative. Any prohibitions or restrictions of any internal confidentiality agreements inconsistent with the previous sentence are no longer in effect.

32. **Eligible Workers.** Subrecipient shall ensure all employees complete the I-9 form to certify they are eligible for lawful employment under the Immigration and Nationality Act (8 USC 1324a). Subrecipient shall

comply with regulations regarding certification and retention of the complete forms. These requirements also apply to any contract or supplement instruments awarded under this Agreement.

33. **Lobbying.** Subrecipient certifies that no federal appropriated funds have been paid by or on behalf of Subrecipient to any person for influencing or attempting to influence an officer or employee of any agency, member of Congress, or officer or employee of Congress, or an employee of a member of Congress in connection with the awarding of any federal contract, the making of any federal grant, the making of any federal loan, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan, or cooperative agreement. If any funds other than federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with this federal contract, grant, loan, or cooperative agreement, Subrecipient shall request, complete, and submit Standard Form-111, "Disclosure Form to Report Lobbying," in accordance with its instructions.

34. **Federal Clean Air Act and Water Pollution Control Act.** Subrecipient agrees to comply with all applicable standards, orders, or regulations issued pursuant to the Clean Air Act (42 U.S.C. 7401-7671q) and the Federal Water Pollution Control Act as amended (33 U.S.C. 1251-1387). Violations must be reported to the federal awarding agency and the Regional Office of the Environmental Protection Agency (EPA).

35. **Trafficking In Persons.** Subrecipient shall not: (i) engage in severe forms of trafficking in persons during the period of time that the subaward is in effect; (ii) procure a commercial sex act during the period of time that the subaward is in effect; or (iii) use forced labor in the performance of the subaward, pursuant to section 106(g) of the federal Trafficking Victims Protection Act of 2000 (TVPA), as amended (22 U.S.C. 7104(g)).

36. **Federal Single Audit Requirement.** Subrecipient shall comply with the federal single audit requirements in 2 CFR 200.501.

37. **In-Kind Match.** If applicable, Subrecipient shall comply with 2 CFR 200.306 when using in-kind contributions as matching funds for this Project.

38. **Independent Capacity of Subrecipient.** The parties agree that the Subrecipient, and any agents or employees of the Subrecipient, in the performance of this Agreement, shall act in an independent capacity and not as officers, employees, or agents of the State of Ohio for any purpose. Nothing in this Agreement shall be construed to create a partnership, joint venture, or other relationship between the parties.

39. **Use of ODNR and USDA Forest Service Logos.** For OH DNR to use the Forest Service insignia on any published media, such as a Web page, printed publication, or audiovisual production, permission must be granted by the Forest Service's Office of Communications (Washington Office). A written request will be submitted by Forest Service, Program Manager, to the Office of Communications Assistant Director, Visual information and Publishing Services prior to use of the insignia. The Forest Service Program Manager will notify OH DNR when permission is granted.

ODNR Legal Form
Rev. Mar. 16, 2022

DocuSign Envelope ID: A2C6DB48-FD41-43BC-9584-FC215AD4CDF0

Subrecipient Grant Agreement between ODNR
and Columbus Recreation and Parks Department
Legal Contract ID # 2024-0799

40. **Nondiscrimination Statement – Printed, Electronic, or Audiovisual Material.** OH DNR shall include the following statement, in full, in any printed, audiovisual material, or electronic media for public distribution developed or printed with any Federal funding.

> In accordance with Federal law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, this institution is prohibited from discriminating on the basis of race, color, national origin, sex, age, disability, and reprisal or Award Number: 23-DG-11094200-363 Page 8 of 19 retaliation for prior civil rights activity. (Not all prohibited bases apply to all programs.)
>
> Program information may be made available in languages other than English. Persons with disabilities who require alternative means of communication for program information (e.g., Braille, large print, audiotape, and American Sign Language) should contact the responsible State or local Agency that administers the program or USDA's TARGET Center at (202) 720-2600 (voice and TTY) or contact USDA through the Federal Relay Service at (800) 877-8339.
>
> To file a program discrimination complaint, a complainant should complete a Form AD-3027, USDA Program Discrimination Complaint Form, which can be obtained online at https://www.ocio.usda.gov/document/ad-3027, from any USDA office, by calling (866) 632-9992, or by writing a letter addressed to USDA. The letter must contain the complainant's name, address, telephone number, and a written description of the alleged discriminatory action in sufficient detail to inform the Assistant Secretary for Civil Rights (ASCR) about the nature and date of an alleged civil rights violation. The completed AD-3027 form or letter must be submitted to USDA by:
> (1) Mail: U.S. Department of Agriculture, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue SW, Washington, D.C. 20250-9410; or
> (2) Fax: (833) 256-1665 or (202) 690-7442; or
> (3) Email: program.intake@usda.gov.
>
> If the material is too small to permit the full Non-Discrimination Statement to be included, the material will, at a minimum, include the alternative statement: "This institution is an equal opportunity provider."

41. **Copyrighting.** OH DNR is/are granted sole and exclusive right to copyright any publications developed as a result of this award. This includes the right to publish and vend throughout the world in any language and in all media and forms, in whole or in part, for the full term of copyright and all renewals thereof in accordance with this award.
No original text or graphics produced and submitted by the Forest Service shall be copyrighted. The Forest Service reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use, and to authorize others to use the work for federal government purposes.
This right shall be transferred to any sub-awards or subcontracts.
This provision includes:
- The copyright in any work developed by OH DNR under this award.
- Any right of copyright to which OH DNR purchase(s) ownership with any federal contributions.

42. **Qualifications.** Subrecipient represents that it has all approvals, licenses, or other qualifications needed to conduct its business in Ohio and that all are current.

ODNR Legal Form
Rev. Mar. 16, 2022

43. **Conflicts.** In the event of any conflict between the terms and provisions of the body of this Agreement and any attachments hereto, the terms of this Agreement shall control.

44. **Severability**. The provisions of this Agreement are severable and independent, and if any such provision shall be determined to be unenforceable in whole or in part, the remaining provisions and any partially enforceable provisions shall, to the extent enforceable in any jurisdiction, nevertheless be binding and enforceable.

45. **Headings.** The headings in this Agreement have been inserted for convenient reference only and shall not be considered in any questions of interpretation or construction of this Agreement.

46. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument. Either party hereto may deliver a copy of its counterparty's signature page to this Agreement electronically pursuant to R.C. § 1306. Each party hereto shall be entitled to rely upon an electronic signature of any other party delivered in such a manner as if such signature were an original.

47. **Entire Agreement.** This Agreement, including any attachments, contains the entire agreement between the parties hereto with respect to the subject matter hereof, and shall not be modified, amended, or supplemented, or any rights herein waived, unless specifically agreed upon in writing by the parties hereto. This Agreement supersedes any and all previous agreements, whether written or oral, between the parties.

*[SIGNATURE PAGE FOLLOWS]*

DocuSign Envelope ID: A2C6DB48-FD41-43BC-9584-FC215AD4CDF0

Subrecipient Grant Agreement between ODNR
and Columbus Recreation and Parks Department
Legal Contract ID # 2024-0799

Each party is signing this Agreement on the date stated below that party's signature.

SUBRECIPIENT

Columbus Recreation and Parks Department

By: _Bernita A. Reese_
2DFEC37EED6F419...

Printed Name: Bernita A. Reese

Title: Director

Date: May 31, 2024

OHIO DEPARTMENT OF NATURAL RESOURCES

DIVISION OF FORESTRY

By: _Mary Mertz_
6DC82A2DBC484A7...

Printed Name: Mary Mertz

Title: Director, ODNR

Date: June 4, 2024

ODNR Legal Form
Rev. Mar. 16, 2022