## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| The Sustainability Institute, et al., | ) Civil Action Number:   2:25-cv-02152-RMG |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | ) ) ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR EXPEDITED DISCOVERY**

### I. INTRODUCTION

Plaintiffs' Motion for Expedited Discovery (ECF No. 25) ("Motion") effectively seeks accelerated responses to more than 280 burdensome discovery requests, while at the same time, suggesting that the current record is sufficient on its own to support Plaintiffs' Preliminary Injunction Motion (ECF No. 24) ("PI Motion"). Plaintiffs' Motion cannot survive this contradiction and should be denied.

Fundamentally, Plaintiffs' Motion fails to demonstrate that Plaintiffs will be irreparably harmed without access to early discovery or that the requested discovery is necessary to resolve the PI Motion, is narrowly tailored, or is sought for a reasonable purpose in the context of early discovery. Accordingly, Plaintiffs fail to demonstrate that the requested relief satisfies the standards for expedited discovery.

### II. BACKGROUND

Plaintiffs move the Court to order Defendants to respond to the following discovery by

April 9, 2025, fourteen (14) days after service of the Motion:

    1.    All documents that contain lists, charts, or summaries created, compiled, or edited by DOGE personnel or Elon Musk that reflect the planned or completed freeze or pause of 38 identified contracts, grants, or other legal agreements that are in the possession, custody, or control of any and all DOGE personnel or Musk.

    2.    All communications (excluding text messages) since January 20, 2025, that discuss, reference, or mention any of the 38 identified contracts, grants, or other legal agreements that are in the possession, custody, or control of any and all DOGE personnel or Musk.

    3.    All documents that contain lists, charts, or summaries created, compiled, or edited by EPA personnel that reflect the planned or completed freeze or pause of the 38 identified contracts, grants, or other legal agreements that are in the possession, custody, or control of any and all United States Environmental Protection Agency personnel.

    4.    All documents that contain lists, charts, or summaries created, compiled, or edited by EPA personnel that reflect the planned or completed freeze or pause of the 38 identified contracts, grants, or other legal agreements that are in the possession, custody, or control of any and all United States Department of Agriculture personnel.

    5.    All documents that contain lists, charts, or summaries created, compiled, or edited by EPA personnel that reflect the planned or completed freeze or pause of the 38 identified contracts, grants, or other legal agreements that are in the possession, custody, or control of any and all United States Department of Transportation personnel.

    6.    All documents that contain lists, charts, or summaries created, compiled, or edited by EPA personnel that reflect the planned or completed freeze or pause of the 38 identified

contracts, grants, or other legal agreements that are in the possession, custody, or control of any and all United States Department of Energy personnel.

7. All communications (excluding text messages) since January 20, 2025, that concern, discuss, reference, or mention any of the 38 identified contracts, grants, or other legal agreements that are in the possession, custody, or control of any and all United States Environmental Protection Agency personnel. These communications include, but are not limited to, "any communications with members of DOGE."

8. All communications (excluding text messages) since January 20, 2025, that concern, discuss, reference, or mention any of the 38 identified contracts, grants, or other legal agreements that are in the possession, custody, or control of any and all United States Department of Agriculture personnel. These communications include, but are not limited to, "any communications with members of DOGE."

9. All communications (excluding text messages) since January 20, 2025, that concern, discuss, reference, or mention any of the 38 identified contracts, grants, or other legal agreements that are in the possession, custody, or control of any and all United States Department of Transportation personnel. These communications include, but are not limited to, "any communications with members of DOGE."

10. All communications (excluding text messages) since January 20, 2025, that concern, discuss, reference, or mention any of the 38 identified contracts, grants, or other legal agreements that are in the possession, custody, or control of any and all United States Department of Energy personnel. These communications include, but are not limited to, "any communications with members of DOGE."

11. All documents that the United States Environmental Protection Agency relied upon in answering any of Plaintiffs' 71 interrogatories (including subparts) to that agency.

12. All documents that the United States Department of Agriculture relied upon in answering any of Plaintiffs' 106 interrogatories (including subparts) to that agency.

13. All documents that the United States Department of Transportation relied upon in answering any of Plaintiffs' 11 interrogatories (including subparts) to that agency.

14. All documents that the United States Department of Energy relied upon in answering any of Plaintiffs' 6 interrogatories (including subparts) to that agency.

15. Answers to 76 interrogatories (including subparts) directed to DOGE.

16. Answers to 71 interrogatories (including subparts) directed to the United States Environmental Protection Agency.

17. Answers to 106 interrogatories (including subparts) directed to the United States Department of Agriculture.

18. Answers to 11 interrogatories (including subparts) directed to the United States Department of Transportation.

19. Answers to 6 interrogatories (including subparts) directed to the United States Department of Energy.

While Plaintiffs attempt to suggest that the discovery is limited to five (5) requests for production and 26 interrogatories, the above closer review shows that Plaintiffs are seeking expedited responses to more than 280 discovery requests. *Compare supra* at 2-4, ¶¶ 1-19 *with* ECF No. 25-1. Moreover, Plaintiffs are seeking expedited discovery from *any and all employees* of five (5) Executive Branch agencies or departments. *See* ECF No. 25-1 at 3-4, ¶¶ 6, 9-10, and

15-17; 5-6, ¶¶ 2, 6.  Additionally, Plaintiffs' requests demand expedited production of responsive electronically stored information, including e-mails.  *See* ECF No. 25-1 at 2-3, ¶¶ 1, 2

### III.  **STANDARD OF REVIEW**

Rule 26(d)(1) generally prohibits discovery prior to the parties conferring pursuant to Rule 26(f).  *See* Fed. R. Civ. P. 26(d)(1).  "[T]he Federal Rules of Civil Procedure are silent as to the proper standard for courts to apply when considering a motion for expedited discovery . . . ." *Nevro Corp. v. Skoloff*, No. 6:23-cv-1093-TMC, 2023 WL 5489352, at *1 (D.S.C. June 23, 2023). "[D]istrict courts within the Fourth Circuit and elsewhere have applied two different standards, one applying modified preliminary injunction factors and another reasonableness, or good cause test." *Id*. (quoting *Synthes USA, LLC v. Davis*, No. 4:17-cv-2879-RBH, 2017 WL 5972705, at *9 (D.S.C. Dec. 1, 2017) (citation omitted)).

The modified preliminary injunction test requires the party seeking discovery to "demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."  *Id*. at *2 (quoting *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005) (citation omitted)).

The reasonableness or good cause test "looks at the totality of the circumstances under which the expedited discovery is sought."  *Id*. (citing *JTH Tax, Inc. v. M&M Income Tax Serv., Inc.*, No. 6:13-cv-0265-GRA, 2013 WL 460316, at *6 (D.S.C. Feb. 6, 2013)).  Under this test, some courts consider "(1) whether a preliminary injunction is pending; (2) the breadth of the

5

discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of typical discovery process the request was made." *Id*. (quoting *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006)).

Other courts frame the reasonableness or good cause test as requiring consideration of "the procedural posture of the case, whether the discovery requested is narrowly tailored, whether the party seeking the information would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference, and whether the information sought would be unavailable or subject to destruction in the absence of expedited production." *Clean Juice Franchising, LLC v. Charleston Juicing, LLC*, No. 3:23-cv-00894-RJC-SCR, 2024 WL 1363927, at *2 (W.D.N.C. Mar. 29, 2024) (quoting *Merz N. Am., Inc. v. Viveve Med. Inc.*, No. 2:17-CV-15-BR, 2017 WL 11613694, at *2 (E.D.N.C. May 5, 2017) (citation omitted)).

Regardless of whether courts in the Fourth Circuit apply the reasonableness test or the modified preliminary injunction test, "the moving party must show a likelihood of irreparable harm without access to early discovery." *Lewis v. Alamance Co. Dep't of Soc. Servs.*, No. 1:15CV298, 2015 WL 2124211, at *2 (M.D.N.C. May 6, 2015) (*comparing ForceX, Inc. v. Tech. Fusion, LLC*, No. 4:11CV88, 2011 WL 2560110, at *7 (E.D.Va. June 27, 2011) *with Dimension Data N. Am., Inc.*, 226 F.R.D. at 532); *see also Humphrey*, 2010 WL 2522743, at *1 (finding likelihood of irreparable harm in absence of expedited discovery because "information sought is in electronic format and may be purged by [third party] as part of its ordinary data retention policies and procedures. If the information is destroyed, the plaintiff may suffer irreparable harm.").

Plaintiffs fail to meet either test to support the expansive discovery they are seeking on an

expedited basis. Indeed, not only do Plaintiffs fail to address the likelihood of irreparable harm absent access to early discovery, but they contend that they already have sufficient evidence to support their PI Motion and that the purpose of the expedited discovery is to gather cumulative evidence to confirm what they already know and possess. Plaintiffs also fail to demonstrate that their requests are proportional or that the early discovery is narrowly tailored to information needed before the hearing on the PI Motion. *See Nevro Corp.*, 2023 WL 5489352, at *3 (noting "Plaintiffs have provided no sufficient basis for why they need [the discovery] prior to the hearing on the motion for preliminary injunction, absent that they wish to 'develop the facts.' However, this court frequently rules on such motions based solely on the allegations in the pleadings prior to any discovery.") (citations omitted). Plaintiffs' arguments therefore miss the mark under both tests.

## IV.    ARGUMENT

### A.    Jurisdictional Arguments Should be Addressed Before Discovery.

As a preliminary matter, Defendants' response to the PI Motion, which is due next week, will raise challenges to this Court's subject matter jurisdiction in this matter based in part on the Tucker Act, which vests jurisdiction over contractual disputes like this one in the Court of Federal Claims, and based on the APA, which forecloses judicial review of agency action committed to discretion by law. Defendants anticipate filing a motion to dismiss on the same jurisdictional grounds. Where strong threshold arguments against a case exist, courts generally adjudicate those arguments before permitting the burdensome discovery process to begin. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be

7

exposed at the point of minimum expenditure of time and money by the parties and the court."). Indeed, the D.C. Circuit just recently granted an emergency motion for stay on the basis that "petitioners [had] shown a likelihood of success on their argument that the district court was required to decide their motion to dismiss before allowing discovery." *See In re Musk*, Case No. 25-5072, Order (D.C. Cir. Mar. 26, 2025) (citing *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 389-90 (2004)).

Plaintiffs' proposed discovery concerns the merits of Plaintiffs' claims, not the Court's subject matter jurisdiction. The threshold arguments that Defendants will raise in their forthcoming opposition and anticipated motion to dismiss are legal questions that do not depend on factual development to adjudicate. And if resolved in Defendants' favor, they would require dismissal of the claims upon which Plaintiffs seek expedited relief. Therefore, Defendants respectfully submit that the Court should assess the merits of Defendants' jurisdictional arguments before considering the specific discovery proposed by Plaintiffs in the Motion. *See* ECF No. 25-1.

**B.     The Court Should Follow the Ordinary Rule of Record Review in this APA Case.**

In claims brought under the APA, there is a strong presumption that discovery is not permitted. "In APA actions, the agency supplies the court with the record of the materials that were considered by the agency at the time of the challenged action." *Rogers v. U.S. Dep't of Health & Human Servs.*, No. 6:19-cv-1567-JD, 2021 WL 11747919, at *2 (D.S.C. Mar. 8, 2021) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). "[T]he APA provides for review 'based on the record the agency presents to the reviewing court.'" *Id.* (quoting *Fla. Power & Light*, 470 U.S. at 744). And that administrative record is entitled to a "presumption of

regularity." *Wells v. Cuccinelli*, 2019 WL 2578630, at *7 (D.S.C. June 24, 2019).   Accordingly, the bar is high to get discovery in an APA case.   *See id.* at *8 ("Only in cases where the agency has provided no explanation for its decision may a reviewing court go beyond the record the agency presents to the reviewing court." (internal quotation marks omitted)).

As explained below, Plaintiffs cannot satisfy that high bar.   But even if they could, any discovery order would be premature.   In APA cases, agency defendants produce an administrative record, and *then*, under limited circumstances, plaintiffs may seek additional discovery on the basis of "a strong showing of bad faith or improper behavior."   *See Rogers*, 2021 WL 11747919, at *4 (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019)).   Here, because threshold jurisdictional issues have yet to be decided, Defendants have not yet had occasion to produce the administrative record.

### C.     Plaintiffs Cannot Satisfy the Irreparable Harm Factor.

If this Court nonetheless considers Plaintiffs' premature and inappropriate discovery request, it should deny the request on its merits.   Under either the modified preliminary injunction test or the reasonableness or good cause test, a party seeking expedited discovery in connection with a preliminary injunction motion "must show a likelihood of irreparable harm without access to early discovery."   *See Clean Juice Franchising, LLC*, 2024 WL 1363927, at *2 (citations omitted).   Here, Plaintiffs completely fail to make an irreparable harm argument.   *See generally* ECF No. 25.   Instead, Plaintiffs repeatedly claim that they already have provided the Court with evidence sufficient to decide the PI Motion, thereby demonstrating that irreparable harm is unlikely if the Court denies Plaintiffs' Motion.

To illustrate, Plaintiffs already have in their possession significant information relating to

their allegations. The PI Motion includes 1,996 pages of argument and exhibits. *See* ECF No. 24, including ECF Nos. 24-1 through 24-22. Plaintiffs also contend that—without any early discovery—they have compiled a "robust record of evidence," ECF No. 25 at 2, and that the evidence they have is already sufficient to "meet the standard for preliminary injunctive relief." ECF No. 24 at 2.

The PI Motion and memorandum in support do not include any representation that the PI Motion should or would fail absent expedited discovery. *See generally* ECF Nos. 24 and 24-1; *see also* ECF No. 24-1 at 13-14 (restricting purpose of expedited discovery to clarifying the record and stating expedited discovery is sought to "clarify precisely which actions led to the freeze of their grants"). Instead, Plaintiffs insist that they "have already compiled a robust record of evidence in their possession or in the public domain," ECF No. 25 at 2-3, and that they seek additional expedited evidence to "bolster" their request for a preliminary injunction, ECF No. 25 at 1. But a desire to "bolster" Plaintiffs' PI Motion is neither an appropriate basis for expedited discovery, nor a means of satisfying the irreparable harm standard. Because Plaintiffs focus on clarifying or confirmatory evidence that might be gleaned through expedited discovery, Plaintiffs effectively concede that the discovery sought would yield merely cumulative evidence to support the PI Motion. Therefore, the requested discovery is neither necessary for the Court to determine the merits of the PI Motion, nor is it sought for a reasonable purpose in the context of early discovery. *See*, *e.g.*, *Knight's Companies, Inc. v. Vantage Benefits Adm'rs, Inc.*, No. 2:18-cv-350, 2018 WL 6271049, at *2 (D.S.C. Apr. 5, 2019) (considering whether request was narrow in scope and made for a reasonable purpose in the context of early discovery); *see also 2311 Racing LLC v. Nat'l Assoc. for Stock Car Auto Racing, LLC*, No. 3:24-CV-00886-FDW-SCR, 2024 WL

4919420, at *3 (W.D.N.C. Oct. 31, 2024) (finding that Plaintiffs' motion for expedited discovery to "create a more fulsome record" combined with Plaintiffs' position that they could win the preliminary injunction motion without access to expedited discovery amounted to a concession that Plaintiffs did not require expedited discovery for the purpose of preliminary injunction motion). Likewise, the instant Motion omits any representation that the PI Motion is and will be fundamentally deficient unless Plaintiffs are allowed to conduct expedited discovery and demonstrates that the information sought would be merely cumulative. *See* ECF No. 25 at 2–3 (Plaintiffs asserting they "have already compiled a robust record of evidence"); *Id.* at 1 (Plaintiffs asserting discovery "will bolster" the PI Motion).

Because Plaintiffs do not argue, absent expedited discovery, the Court will lack some critical evidence that is necessary to decide their PI Motion, denying Plaintiffs' Motion will not result in irreparable harm.

**D.**     **Plaintiffs' Requests Are Voluminous, Not Narrowly Tailored, and Burdensome.**

Plaintiffs repeatedly assert that their proposed discovery requests are "narrowly tailored and minimally burdensome." *See*, *e.g.*, ECF No. 25 at 7-8. That argument is belied by the above discussion of the more than 280 burdensome discovery requests. *See supra* at 2-4, ¶¶ 1-19; *see also* ECF No. 25-1.

Additionally, the proposed requests for production seek "all documents" and "all communications." *See* ECF No. 25-1 at 8. Courts properly reject expedited discovery requests seeking "all documents" regarding a topic even when they "may be relevant to the overall case, [because] they are not narrowly tailored to the issues relevant to the preliminary injunction." *Chryso, Inc. v. Innovative Concrete Sols. of the Carolinas*, No. 5:15CV115-BR, 2015 WL

11

12600175, at *5 (E.D.N.C. June 30, 2015) (collecting cases); *see also United Healthcare Servs., Inc. v. Richards*, No. 3:09-CV-215-RJC-DCK, 2009 WL 4825184, at *1 (W.D.N.C. Dec. 2, 2009) (rejecting motion for expedited discovery as not narrowly tailored when it included multiple requests for all documents). Plaintiffs' requests for production are facially overly broad and not narrowly tailored.

Further, Plaintiffs claim that the requested expedited discovery is warranted "to confirm that their grants have been frozen and why." ECF No. 25 at 3; *accord id*. at 1 (seeking discovery to "bolster Plaintiffs' motion for preliminary injunction"); 3 (seeking information "such as why Plaintiffs' grants were identified and frozen . . . to support Plaintiffs' preliminary injunction motion"); 6 (seeking discovery "to clarify their claims by identifying precisely how, and why, their grants were frozen"); 8 (seeking discovery "to discover why their specific grants were frozen, and what actions and processes were employed by Defendants"). Such "confirmation," *arguendo*, ultimately might be relevant to the ultimate merits of Plaintiffs' claims. But that requested documents "may bear relevance to the ultimate merits . . . and thus might plausibly support a likelihood of success on the merits under the preliminary injunction standard" does not mean that they are "specifically relevant to obtaining a preliminary injunction." *Lewis*, 2025 WL 2124211, at *3; *see also Merz. N. Am., Inc.*, 2017 WL 11613694, at *2 ("[T]he proposed discovery requests must be targeted or otherwise tailored to obtaining injunctive relief, and not simply be addressed to the ultimate merits of plaintiff's claims.").

Again, Plaintiffs have not identified any particular evidence they need to support their motion or any specific prejudice they will face without their broad and burdensome discovery. To the contrary, Plaintiffs assert that their evidence already demonstrates that their grants have

12

been frozen and why. *See*, *e.g.*, ECF No. 23 at ¶¶ 207, 214, 217-220, 222-229, 233, 237, 296, 300, 306-307, 312-313, 321-322, 326, 332-334, 336, 344-345.  Allowing Plaintiffs to demand burdensome discovery to "confirm" what they have already presented to the Court would disregard both Plaintiffs' burden to establish that the discovery sought is proportional and the requirement that expedited discovery must be "narrowly tailored to the issues relevant to the preliminary injunction." *See Courthouse News Serv. v. Harris*, Civ. A. No. ELH-22-548, 2022 WL 3577255, at *3, 6 (D.Md. Aug. 18, 2022) (citations omitted).  Thus, Plaintiffs' Motion fails for this additional ground.

### E.     Plaintiffs Do Not Identify Any Information That is At Risk of Destruction.

Plaintiffs do not make any claim that the requested materials are at risk of destruction in the absence of expedited production. *See*, *e.g.*, *Humphrey*, 2010 WL 2522743, at *1.  Defendants already have implemented litigation holds that preserve the relevant materials, including those requested by Plaintiffs.  This factor does not favor awarding the relief sought by Plaintiffs. *See Merz*, 2017 WL 11613694, at *4.

### V.  CONCLUSION

For the reasons discussed above, Plaintiffs cannot satisfy either the modified preliminary injunction test or the reasonableness or good cause test.  Therefore, Defendants respectfully request that the Court deny Plaintiffs' Motion for Expedited Discovery.

[Signature Page Follows]

                    Respectfully submitted,

                    BROOK B. ANDREWS
                    ACTING UNITED STATES ATTORNEY

By:    *s/ Todd Timmons*
                    Todd Timmons (#11254)
                    Assistant United States Attorney
                    1441 Main Street, Suite 500
                    Columbia, South Carolina 29201
                    Tel: (803) 237-9265
                    Todd.Timmons@usdoj.gov

                    Lee E. Berlinsky (#05443)
                    Assistant United States Attorney
                    151 Meeting Street, Suite 200
                    Charleston, SC 29401
                    Tel: (843) 266-1679
                    Lee.Berlinsky@usdoj.gov

April 2, 2025