IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| THE SUSTAINABILITY INSTITUTE, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>                Defendants. | Case No.: 2:25-cv-02152-RMG |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR EXPEDITED DISCOVERY**

Plaintiffs' Motion for Expedited Discovery should be granted. The requests are reasonable, necessary, and narrowly tailored to avoid burdening Defendants. Without this information, Plaintiffs will be harmed.

*First*, the information sought here is necessary. Defendants' shifting rationale for freezing funds makes it difficult to determine precisely how and why Defendants have frozen the grants at issue here—harms Plaintiffs have already laid out in their filings. *E.g.*, Dkt. No. 24-1 at 14–15, 29–35; Dkt. No. 23 ¶¶ 18–75. While Plaintiffs know their grants are frozen—after all, they are unable to access their accounts or obtain payment for their reimbursement requests— what they do not know is precisely <u>why</u> their grants were targeted, <u>how</u> Defendants implemented the freeze, and <u>on what authority</u> Defendants purport to rely for their actions.[1] This information is directly related to Plaintiffs' legal arguments in the Motion for Preliminary Injunction, is

---

[1] That is, actions and authorities beyond the executive orders and memos identified in Plaintiffs' Complaint and Motion for Preliminary Injunction, which are not specific to Plaintiffs' grant agreements. Dkt. No. 23 ¶¶ 186–247 (Am. Compl.); Dkt. 24-1 at 6–15 (Mem. in Support of Motion for Prelim. Inj.).

necessary for the Court to craft effective preliminary relief, and without this expedited discovery, Plaintiffs will continue to be harmed.

For example, information regarding <u>why</u> certain grants were targeted directly relates to Plaintiffs' First Amendment claims of viewpoint discrimination. *See* Dkt. No. 24-1 at 20–22. Information on <u>how</u> Defendants froze these grants, and <u>on what authority</u> they purport to do so, is directly related to Plaintiffs' APA claims and constitutional claims—both in crystalizing the details of the final agency actions taken by Defendants and to confirm how those actions are arbitrary, capricious, and unlawful.[2] *See id.* at 22–28.

In a similar case concerning DOGE's activities at the Department of Labor, Judge Bates granted the plaintiffs' request for expedited discovery prior to resolving a preliminary injunction motion because "the facts that bear on irreparable harm remain opaque." *Am. Federation of Labor & Congress of Ind. Orgs. v. Dep't of Labor*, No. 1:25-cv-00339-JDB, Dkt. No. 48 at 8 (D.D.C. Feb. 27, 2025) (attached as Exhibit 2). The same is true here, where discovery "is necessary to determine the contours of the agency actions that plaintiffs challenge." *Id.* at 1.

While this Court recently and appropriately ordered Defendants to address the "legal and factual bases" for freezing the grants at issue in their response to the Motion for Preliminary Injunction, Dkt. No. 32, this Order does not obviate the need for limited expedited discovery here. Instead, Plaintiffs' requested documents and information—including emails discussing specific grants—are necessary to reveal the methods and processes that Defendants used to implement the freezing actions.

---

[2] For example, emails recently uncovered from EPA show that EPA knowingly terminated grants in direct violation of the terms and conditions of those grants. Ex. 1 – U.S. EPA, Office of General Counsel, Email from Attorney to Staff (Mar. 3, 2025).

Without the underlying documentation of all agency actions that caused the freezes of grants at issue, it may be difficult to determine whether Defendants' characterization of the relevant agency actions in their briefing "clashes with how Defendants' directives were actually written and implemented"—an issue in other litigation over the federal funding freezes. *Nat'l Council of Nonprofits v. Office of Mgmt. & Budget*, No. 25-cv-239, 2025 WL 597959, at *12 (D.D.C. Feb. 25, 2025); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23–24 (2020) (requiring an agency to "defend its actions based on the reasons it gave when it acted" rather than a *post hoc* rationale in court).

This information is also critical to ensure that Defendants do not, as they have in other funding freeze cases, rely on an ever-shifting set of directives to keep Plaintiffs' grants frozen while "evading judicial review." *Nat'l Council of Nonprofits v. Office of Mgmt. & Budget*, No. 25-cv-239, 2025 WL 368852, at *7 (D.D.C. Feb. 3, 2025); *accord New York v. Trump*, No. 25-cv-39, 2025 WL 715621, at *5 (D.R.I. Mar. 6, 2025).

As the "purpose of expedited discovery" in the context of a preliminary injunction is for "further development of the record" before the preliminary injunction hearing, these requests are reasonable. *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1057–58 (D. Minn. 2019) (finding expedited discovery enables the court to "judge the parties' interests and respective chances for success on the merits"). The expedited discovery here will both illuminate Plaintiffs' claims and allow the Court to properly tailor injunctive relief to reach the precise actions and rationales used by Defendants when freezing these grants. *See Mullane v. Almon*, 339 F.R.D. 659, 665 (N.D. Fla. 2021) (expedited discovery important to "allow a district court to craft an appropriate preliminary injunction.").

*Second*, Defendants' claim that "jurisdictional arguments should be addressed before discovery," Dkt. No. 39 at 7, falls flat. While Defendants state that they "anticipate" filing a motion to dismiss, arguing a lack of subject matter jurisdiction, *id.* at 7–8, no such motion is pending here, and no such arguments are before this Court—unlike in *In re Musk*, cited by Defendants, where such a motion was pending. Dkt. No. 39 at 8 (citing No. 25-5072, 2025 WL 926608, at *1 (D.C. Cir. Mar. 26, 2025)).

Moreover, even if a motion to dismiss were before the Court, the Tucker Act arguments previewed by Defendants have already been rejected by several courts for reasons equally applicable here.[3] The mere filing of a "motion to dismiss which obviously lacks merit should not preclude the discovery process from proceeding, whether expeditiously or at the normal rate." *Mullane*, 339 F.R.D. at 665 n.4 (N.D. Fla. 2021) (cleaned up). Instead, courts need only take a "preliminary peek" at a motion to dismiss "to determine whether it appears to be meritorious and dispositive of the entire case." *Id.* (citation and quotations omitted). Given the

---

[3] *See, e.g.*, *California v. U.S. Dep't of Educ*, No. 25-1244, 2025 WL 878431, at *2 (1st Cir. Mar. 21, 2025) (concluding that even where "the terms and conditions of each individual grant award [were] at issue," the Tucker Act did not apply because the "claims [were], at their core, assertions that the Department acted in violation of federal law"); *Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, No. 1:25-cv-00702, 2025 WL 863319, at * 4–5 (D. Md. Mar. 19, 2025) (rejecting Tucker Act defense in case challenging federal grant terminations because complaint turns on "authorizing statutes" and their implementation); *Climate United Fund v. Citibank, N.A.*, No. 25-cv-698, 2025 WL 842360, at *5–6 (D.D.C. Mar. 18, 2025) (rejecting Tucker Act defense in a case challenging the government's freeze and termination of federal grants because challenge was to "adverse agency actions" based on "a duly enacted statute"); *Aids Vaccine Coal. v. U.S. Dep't of State*, No. 25-00400, 2025 WL 752378, at *8–9 (D.D.C. Mar. 10, 2025) (rejecting Tucker Act defense in case challenging freeze on foreign aid grants because plaintiffs "challenge whether the agency action here was unlawful, irrespective of any breach"); *Am. Near East Refugee Aid v. U.S. Agency for Int'l Dev.*, 703 F. Supp. 3d 126, 132–34 (D.D.C. 2023) (federal grants that serve a "public purpose" and do "not confer a direct benefit" on the government such as acquiring "property or services" are not subject to the Tucker Act). Here, "[u]nlike normal contractual undertakings," Plaintiffs' "federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy." *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 669 (1985).

4

weakness of the jurisdictional arguments cursorily previewed by Defendants here—and the clear need for the requested materials to craft appropriate relief and prevent further irreparable harm—Plaintiffs' requests are reasonable and should be granted.

Further, Defendants claim that because Plaintiffs have APA claims, this case requires review of an agency record that is entitled to a "presumption of regularity." *Id.* at 8–9 (citation and quotations omitted). First, as discussed above, this case involves *ultra vires* constitutional claims as well as APA claims. *See Mayor & City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 140 (D. Md. 2019) (finding "no sound reason" to limit plaintiff's constitutional challenges to agency action to the administrative record "merely because the [plaintiff] also asserts that the [agency actions] are invalid on [APA] grounds").

Second, "this is not an ordinary APA case." *Am. Federation of Labor*, No. 1:25-cv-00339-JDB, ECF No. 48 at 5 (rejecting government's argument that "the Court should not permit discovery at all because this is an APA case"). The agency actions challenged here are "unlike the actions normally challenged in APA cases, such as a promulgated regulation or a grant or denial of an application." *Id.* Instead, Plaintiffs challenge actions by Defendants such as the issuing of abrupt, irregular directives and policies to freeze funds, as well as discrete and unexplained actions by Defendants to deny Plaintiffs access to their specific funds. The "contours" of Defendants' actions "are far from defined," and thus discovery will illuminate the conduct at issue. *Am. Federation of Labor*, No. 1:25-cv-00339-JDB, ECF No. 48 at 6 (quoting *Hispanic Affairs Proj. v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018)).

Moreover, while APA jurisprudence is premised on a set of norms usually followed by the federal government, here the government is acting in ways that are unprecedented in their lack of transparency and their procedural irregularity. *See Mayor & City Council of Baltimore*,

5

429 F. Supp. at 140 (refusing to cabin discovery to the administrative record where agency defendants "allegedly acted without warning or public input").  Though usually the government at least explains what it is doing and why, this is a situation in which the agencies have "'provided no explanation for [their] decision[s]'" and discovery is therefore warranted.  *See* Defendants' Opposition to Motion for Expedited Discovery, Dkt. No. 39 at 9 (quoting *Wells v. Cuccinelli*, No. 4:19-cv-1099, 2019 WL 2578630, at *7 (D.S.C. June 24, 2019)); *see also* Dkt. No. 24-1 at 13 (noting lack of "explanation or justification" for grant freezes and citing Plaintiffs' declarations).

*Finally,* the requests here are not unduly burdensome on defendants.  The requests are narrowly tailored to seek discrete information on the thirty-nine specific grants identified—by grant number—in Attachment A to their Discovery Requests.  Dkt. No. 25-1 at 14–20.  For example, rather than broad requests for "any and all" emails, Plaintiffs simply ask Defendants to run a discrete search of their email servers for documents created after January 20, 2025, using the specific "Grant Numbers" identified in Attachment A and to produce all document families responsive to that search.  *Id.* at 2–3 ¶ 1 (definition of "Communication").  Similarly, Plaintiffs ask for a targeted set of planning documents—namely, "lists, charts, or summaries"—prepared by Defendant Agencies regarding the planned or completed freeze of those thirty-nine grants.  *Id.* at 8.

These requests were designed to limit the burden on the Defendants while still providing Plaintiffs and the Court with vital information for the requested Preliminary Injunction.  Notably, Defendants provide no specifics regarding their purported burdens in complying with the requests.  They do not quantify the resources it would take to run one search term—the Grant Number—across their email platform for a two-month period of time and produce responsive

documents. Nor do they explain the burden of identifying <u>why</u> these grants were targeted, <u>how</u> Defendants implemented the freeze, and <u>on what authority</u> they purported to do so.

Defendants' complaints about the number of requests also ignore the fact that five separate agencies' actions are at issue in this case as well as the fact that the requests are not directed to all Defendants but instead are targeted to the specific grants at issue for each agency. The fact that numerous agencies abruptly froze numerous grants—with limited transparency and harmful consequences—is the result of Defendants' own actions and should not be held against Plaintiffs here. "One cannot set one's house on fire and then complain that the firefighters [damaged the house] trying to put it out." *New York*, 2025 WL 715621, at 7 n.7.

Accordingly, Plaintiffs' Motion for Expedited Discovery should be granted. The requested information is directly related to Plaintiff's Motion for Preliminary Injunction, it would allow the Court to properly craft injunctive relief by identifying specific actions that must be enjoined, and the requests are narrowly tailored to minimize the burden on Defendants.

Respectfully submitted, this 3rd day of April 2025,

/s/ Carl T. Brzorad
Carl T. Brzorad (S.C. Bar No. 105413)
SOUTHERN ENVIRONMENTAL LAW CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
Facsimile: (843) 414-7039
cbrzorad@selc.org

/s/ Kimberley Hunter
Kimberley Hunter (N.C. Bar No. 41333)
Irena Como (N.C. Bar No. 51812)
Nicholas S. Torrey (N.C. Bar No. 43382)
SOUTHERN ENVIRONMENTAL LAW CENTER
136 East Rosemary Street, Suite 500
Chapel Hill, NC 27514
Telephone: (919) 967-1450
Facsimile: (919) 929-9421
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org

*Counsel for Plaintiffs The Sustainability Institute, Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAIRE NC, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Marbleseed, Organic Association of Kentucky, Pennsylvania Association of Sustainable Agriculture, and Rural Advancement Foundation International - USA*

7

/s/ Graham Provost
Graham Provost (DC Bar No. 1780222)
(Pro Hac Vice pending)
Elaine Poon (VA Bar No. 91963)
(Pro Hac Vice pending)
Jon Miller (MA Bar No. 663012)
(Pro Hac Vice pending)
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
graham@publicrightsproject.org

*Counsel for Plaintiffs Baltimore, Maryland; Columbus, Ohio; Madison, Wisconsin; Nashville, Tennessee; New Haven, Connecticut; and San Diego, California*

/s/ Mark Ankcorn
Mark Ankcorn, Senior Chief Deputy City Attorney
(CA Bar No. 166871)
(Pro Hac Vice pending)
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
(619) 533-5800
mankcorn@sandiego.gov

*Counsel for Plaintiff City of San Diego*

**CERTIFICATE OF SERVICE**

 I certify that on April 3, 2025, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system.

/s/ Carl T. Brzorad
Carl T. Brzorad (S.C. Bar No. 105413)
SOUTHERN ENVIRONMENTAL LAW CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
Facsimile: (843) 414-7039
cbrzorad@selc.org
