IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| The Sustainability Institute, et al., | ) Civil Action Number:   2:25-cv-02152-RMG |
| Plaintiffs, | ) |
| vs. | ) |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF COURT'S ORDER FOR EXPEDITED DISCOVERY (ECF No. 45)**

### I.   INTRODUCTION

In the Response in Opposition (ECF No. 47), Plaintiffs attempt to distinguish this case from the case underlying the Supreme Court's April 4, 2025 decision in *Department of Education v. California*, No. 24A910, 2025 WL 1008354 (Apr. 4, 2025) (per curiam).  However, Plaintiffs' arguments are critically flawed because they ignore the grants upon which all Plaintiffs' claims are based, overlook the monetary relief that Plaintiffs seek, disregard the similarities between the claims in *California* and the instant case, and downplay the opinions of the *California* majority and dissent.  Therefore, as more fully discussed herein, Defendants respectfully request that the Court grant the Motion for Reconsideration.

### II.   ARGUMENT

**A.   Plaintiffs' Causes of Action Arise out of the Federal Grants and Seek Monetary Relief.**

Fundamentally, Plaintiffs cannot escape the reality that their claims would not exist but for the federal grants that form the bases of their claims and the desired relief for "the Government to

keep paying up." *U.S. Conference of Catholic Bishops v. U.S. Dep't of State*, No. 1:25-cv-00465 (TNM), 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025); *see also* ECF No. 23 at 89-91 (asking the Court to order the Government to stop withholding grant funds). Because Plaintiffs' APA, constitutional, and other *ultra vires* claims are essentially contract claims that depend upon an interpretation of Plaintiffs' grants with the United States, the Court of Federal Claims has exclusive jurisdiction over this case.

Specifically, the Tucker Act grants the Court of Federal Claims exclusive jurisdiction over certain suits against the Government, including those "founded . . . upon" any "contract with the United States." 28 U.S.C. § 1491(a)(1); *see also Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992) ("[T]his Court and others have interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government."). "The source of rights upon which [Plaintiffs] base [their] claims" and "the type of relief sought" establish that Plaintiffs' constitutional claims are essentially contract claims. *See U.S. Conference of Catholic Bishops*, 2025 WL 763738, at *4 (quoting *Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)); *see also Jackson v. United States*, 192 Ct. Cl. 765, 428 F.2d 844, 845-46 (1970) (First Amendment claim properly brought in Court of Claims because court's jurisdiction arose from pay legislation); *Swaaley v. United States*, 180 Ct. Cl. 1, 376 F.2d 857, 858 (1967) (same).

To illustrate, Plaintiffs' Amended Complaint demonstrates that all of the allegations that are claimed to result in APA, constitutional, or other *ultra vires* violations are closely connected with Plaintiffs' status as grantees and arise directly out of what Plaintiffs collectively call the

2

"Program Freezing Actions." *See* ECF No. 23 at ¶¶ 186-238.  For clarity, Plaintiffs tie the "Program Freezing Actions" that are referenced in each and every cause of action directly to the monetary relief Plaintiffs seek.  *See*, *e.g.*, *id.* at ¶ 238 (asserting that "EPA, USDA, DOT and DOE have blocked Plaintiffs' access to the websites and portals needed to access funds, frozen or labeled as 'suspended' the accounts containing the grant funds to prevent Plaintiffs from drawing down funds, informed Plaintiff orally that funds are frozen and cannot be drawn down, and communicated through state agencies that expenditures may not be reimbursed, usually with no explanation or justification").  Plaintiffs' allegations include (a) pausing or terminating funding to grantees as described in Count I (*see*, *e.g.*, ECF No. 23 at ¶¶ 293, 300); (b) freezing or blocking funding to grantees as described in Count II (*see id.* at ¶ 307); (c) preventing Plaintiffs from accessing grant funds or freezing funds to grantees as described in Count III (*see id.* at ¶ 310); (d) freezing or blocking or delaying expenditure of funds as described in Count IV (*see id.* at ¶¶ 321, 325); (e) blocking, freezing, or cancelling grant funding as described in Count V (*see id.* at ¶ 337); (f) pausing or terminating obligated grant funds as described in Count VI (*see id.* at ¶¶ 342-344).

Likewise, the relief sought is for "the Government to keep paying up."  *U.S. Conference of Catholic Bishops*, 2025 WL 763738, at *5; *see also* ECF No. 23 at 89-91 (asking the Court to order the Government to stop withholding grant funds).  Importantly, while Plaintiffs urge the Court to turn a blind eye toward the monies sought, **Plaintiffs have not withdrawn claims to monetary relief.**  They have not opted to forgo payments for past-due grant obligations or future payment obligations as they accrue.  At bottom, Plaintiffs want the federal grant money.  That desired relief runs like a through line in the Amended Complaint.

As the Supreme Court noted in *California*, "the Tucker Act grants the Court of Federal

Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 2025 WL 1008354, at *1. Adjudicating Plaintiffs' grant claims and considering the relief sought depend upon an interpretation of Plaintiffs' contracts with the United States. Plaintiffs "may not, by the simple expedient of lumping [their] contract claims together and denominating them a constitutional violation, escape the procedural limitations of the Tucker Act." *Metadure Corp. v. United States*, 490 F. Supp 1368, 1373 (S.D.N.Y. 1980). Indeed, to permit this approach "would subvert the jurisdiction of the Court of Claims, and might enable [Plaintiffs] to gain duplicate relief for the same alleged wrong." *Id*. (internal citation omitted).

B.     **The Similarities between the Instant Case and *California* Support Reconsideration.**

The instant case and *California* arise in the same context. Plaintiffs, like the *California* plaintiffs, challenge the Government's grant decisions made in the wake of Executive Order 14151, entitled "Ending Radical and Wasteful Government DEI Programs and Proficiency." *Compare* ECF No. 23 at 4 *with* Case 1:25-cv-10548-MJJ, ECF No. 1 (hereinafter "*California* Complaint") at ¶ 102. Plaintiffs in both cases seek to enjoin the Government from terminating federal grants. *Compare* ECF No. 23 at 90-91, ¶ F *with California* Complaint at 52 ¶ iv. Both sets of Plaintiffs seek relief in the form of an order effectively requiring "the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." *Compare* ECF No. 23 at 91, ¶ G with *California*, 2025 WL 1008354, at * 1 and *California* Complaint at 51, ¶ iii.

Plaintiffs in both cases assert violations of section 706(2)(A) of the APA. *Compare* ECF No. 23 at ¶¶ 308-328 *with California* Complaint at ¶¶ 161-186. Thus, Plaintiffs in both cases rely on the APA's waiver of sovereign immunity that "does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *California*, 2025 WL

1008354, at *2 (quoting 5 U.S.C. § 702).

The similarities between the cases support application of *California* to this case. The Supreme Court did not limit its opinion to a specific kind of federal grant or to past-due monies or to certain kinds of APA cases. Instead, the Supreme Court considered whether the district court had subject matter jurisdiction over a federal grants case in which Plaintiffs sought monetary payments based on the express or implied contracts with the United States and whether the district court needed to address that inquiry first. *See California*, 2025 WL 1008354, at *1-2. That is the same issue presented to this Court.

Indeed, any question about the application of the majority's decision in *California* is put to rest by the dissenting opinions. Justice Kagan's opinion highlights that the majority "make[s] new law" by relying exclusively on *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), to establish that the federal grants case resulting in pay-outs should go to the Court of Federal Claims, not a district court. *See California*, 2025 WL 1008354, at *2 (J. Kagan, dissenting). Justice Jackson's opinion emphasizes that the Supreme Court "now blesses this strategic decision" to first address subject matter jurisdiction and has provided a "real-time opinion" that the Court of Federal Claims, not the district court, likely has jurisdiction over the dispute. *Id*. at *7. Thus, Justice Jackson recognizes the majority opinion found that jurisdictional issues exist in these grant cases that must first be addressed without reaching the merits and, by extension, without the discovery sought here.

## **CONCLUSION**

The Supreme Court's decision in *California* forecasts that this Court does not have subject matter jurisdiction over Plaintiffs' claims. Thus, for the reasons outlined in the Motion and above,

Defendants respectfully state that the Court should reconsider its Order (ECF No. 45) and deny Plaintiffs' motion for expedited discovery.

                                          Respectfully submitted,

                                          BROOK B. ANDREWS
                                          ACTING UNITED STATES ATTORNEY

By:   *s/Todd Timmons*
        Todd Timmons (#11254)
        Assistant United States Attorney
        1441 Main Street, Suite 500
        Columbia, South Carolina 29201
        Tel: (803) 237-9265
        Todd.Timmons@usdoj.gov

        Lee E. Berlinsky (#05443)
        Assistant United States Attorney
        151 Meeting Street, Suite 200
        Charleston, SC 29401
        Tel: (843) 266-1679
        Lee.Berlinsky@usdoj.gov

April 9, 2025