# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| The Sustainability Institute, et al.,<br><br>        Plaintiffs,<br>  v.<br><br>Donald Trump, in his official capacity as President of the United States, et al.,<br><br>        Defendants. | Case No. 2:25-02152-RMG<br><br>**ORDER** |

      This matter is before the Court on Defendants' Motion for Reconsideration of the Court's Order for Expedited Discovery (Dkt. No. 46) and Defendants' Emergency Motion to Stay the Court's Order for Expedited Discovery (Dkt. No. 48). The Court entered an Expedited Discovery Order requiring five Defendants to produce a limited number of documents related to the grants at issue in this case. (Dkt. No. 45). The limited discovery authorized by the Expedited Discovery Order would allow the Court to better understand the nature of Plaintiffs' claims and, if meritorious, the appropriate remedies, issues central both to whether the Court has jurisdiction over this matter and Plaintiffs' entitlement to preliminary injunctive relief.

      Defendants now move for reconsideration of the Court's Expedited Discovery Order under Fed. R. Civ. P. 54(b) and stay of the Court's Expedited Discovery Order under Fed. R. Civ. P. 26(c). Defendants argue that the Supreme Court's decision in *Department of Education v. California*, No. 24A910, 2025 WL 1008354 (Apr. 4, 2025) suggests that this Court does not have subject matter jurisdiction over Plaintiffs' claims; and therefore, the Court should reconsider or stay its Expedited Discovery Order and not subject Defendants to discovery at this early stage. For the reasons set forth below, the Court grants-in-part Defendants' motion to reconsider and denies Defendants' motion to stay.

1

I.  **Standard**

   A. **Motion For Reconsideration**

Rule 54(b) governs the Court's reconsideration of interlocutory orders. Fed. R. Civ. P. 54(b). Where a district court issues an interlocutory order such as one for partial summary judgment "that adjudicates fewer than all of the claims," the court retains discretion to revise such an order "at any time before the entry of a judgment adjudicating all the claims." *Id.*

Compared to motions to reconsider final judgments pursuant to Rule 59(e), Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light. *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 326 (4th Cir. 2017).

The discretion Rule 54(b) provides is not limitless. Courts have cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case. *Id.* at 325 (citing *Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515-16 (4th Cir. 2003)) (internal citations omitted). "The law-of-the case doctrine provides that in the interest of finality, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Carlson*, 856 F.3d at 325 (citing *TWFS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009)) (internal citations omitted). Thus, a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) "a subsequent trial produc[ing] substantially different evidence;" (2) a change in applicable law; or (3) clear error causing "manifest injustice." *Id.* This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of "new

evidence not available at trial." *Id.* (citing *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

### B. Motion to Stay Discovery

District courts have "broad discretion" and "wide latitude" in controlling discovery. *Mey v. Phillips*, 71 F.4th 203, 217 (4th Cir. 2023); *see also Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (stating that district courts have broad discretion in their resolution of discovery problems that arise in cases pending before them).

Under Fed. R. Civ. P. 26(c), a court may stay discovery during the pendency of a dispositive motion for "good cause" shown. *Hollins v. U.S. Tennis Ass'n,* 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006); *see also Tilley v. United States,* 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003) (staying discovery during pendency of a motion for summary judgment). However, the mere filing of a dispositive motion does constitute "good cause" and does not alone warrant the issuance of a stay. *Hollins,* 469 F.Supp.2d at 78. Stay of discovery pending the outcome of a dispositive motion requires a case-by-case analysis. *E.g., Skellerup Ind. Ltd. v. City of Los Angeles,* 163 F.R.D. 598, 601 (C.D. Cal. 1995). In determining whether a stay of discovery is appropriate, courts have considered a number of factors including the breadth of discovery and burden of responding to it, the risk of unfair prejudice to a party opposing the stay, the nature and complexity of the action, the posture or stage of the litigation, and any other relevant circumstances. *See Hollins,* 469 F.Supp.2d at 78; *Skellerup,* 162 F.R.D. at 601.

## II. Discussion

In both motions, Defendants argue that the Supreme Court's recent per curiam decision in *Department of Education v. California* staying a district court's temporary restraining order settles once and for all the jurisdictional questions in this case. In light of the seminal Supreme Court

decision in *Bowen v. Massachusetts*, 487 U.S. 879 (1988) and its progeny, which require a careful analysis of the nature of the specific claims asserted and the remedies necessary to provide a prevailing plaintiff relief, the Court declines to adopt Defendants' view at this stage, especially without the benefit of the parties' briefing and argument on the issues.

In *Department of Education v. California*, the Supreme Court stayed a district court's temporary restraining order, which it construed as an appealable preliminary injunction, pending the resolution of the appeal in the underlying case. *California*, 2025 WL 1008354, at *2. At the district court, plaintiffs sought preliminary relief enjoining the Government from terminating grant awards under programs administered by the United States Department of Education. *California v. U.S. Department of Education*, No. 25-105488-MJJ, 2025 WL 760825, at *1 (D. Mass. Mar. 10, 2025). The District Court for the District of Massachusetts entered injunctive relief against the government. *Id.* at *5. The Government appealed the district court's order and requested a stay pending the appeal. *California v. U.S. Department of Education*, No. 25-1244, 2025 WL 878431, at *1 (1st Cir. Mar. 21, 2025). The First Circuit Court of Appeals denied the Government's request to stay the district court's order pending appeal. *Id.* at *1. The Government then filed an emergency application to the Supreme Court requesting the Court vacate the district court's temporary restraining order and immediately stay the case pending the disposition of the Government's appeal. *California*, 2025 WL 1008354, at *1. The Supreme Court granted the application and stayed the district court's order. The Court reasoned that a stay is appropriate because (1) "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA" and (2) the Government is likely to suffer irreparable harm. *Id.*

4

The Supreme Court's discussion on jurisdiction is relevant here. The Supreme Court noted that the APA's waiver of sovereign immunity does not apply to claims seeking money damages, but also reaffirmed the general rule that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *Id.* (quoting *Bowen*, 487 U.S. at 910). The Supreme Court further noted that "the APA's limited waiver of sovereign immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the [district court in *California*] ordered . . . ." *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). Instead, the Supreme Court stated, that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)).

The Court, when addressing both of Defendants motions in turn below, finds that the Supreme Court's decision in *California* should not prevent the discovery ordered in this case.

### A. Motion for Reconsideration

Defendants contend that the Supreme Court's opinion in *California* indicates "that the Tucker Act applies to actions challenging federal grant terminations and, as a result, jurisdiction over those actions lies solely in the Court of Federal Claims." (Dkt. No. 46 at 3). Based on that premise, Defendants argue requiring them to participate in discovery is manifestly unjust and contrary to controlling law such that the Court should reconsider its Expedited Discovery Order. The Court rejects Defendants argument for three reasons.

First, it appears to the Court that Defendants overread the Supreme Court's decision in *California*. The Supreme Court's order is on the Government's application to vacate the district court's temporary restraining order and request for an immediate administrative stay. That procedural posture led the Supreme Court to apply a likelihood of success standard to the

5

Government's application, stopping well short of addressing the complex jurisdictional issues on the merits. *California*, 2025 WL 1008354 at *2 ("[T]he Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA."). Based on the standard the Supreme Court applied, it is not clear that this Court lacks jurisdiction over this case at this time. It is certainly not so clear that requiring five Defendants to respond to one discovery request each would be manifestly unjust or contrary to controlling law. In addition to ignoring the standard of review, the Defendants discount a long line of cases, starting with *Bowen*, that have addressed whether a case falls under the APA or Tucker Act. *See, e.g.*, *Bowen*, 487 U.S. at 882-887; *Great-West Life*, 534 U.S. at 212; *Maine Community Health Options v. United States*, 590 U.S. 296, 327 (2020). The Supreme Court's brief treatment of *Bowen* and *Great-West Life* in *California* and the cursory mention of potential jurisdictional issues do not appear to settle all jurisdictional questions in this case. A careful examination of Plaintiffs' claims and the relief sought, mandated by *Bowen*, are necessary to resolve the question of whether Plaintiffs have jurisdiction with this Court under the APA or must pursue their claims under the Tucker Act before the Court of Federal Claims.

Second, the discovery ordered in the Expedited Discovery Order would help the Court fully and properly analyze subject matter jurisdiction. To determine whether the Court has jurisdiction, the Court must decide whether Plaintiffs' claims constitute a request for legal relief of money damages thus falling outside of Congress's waiver of sovereign immunity in the APA. *See Bowen*, 487 U.S. at 891-901. Whether a plaintiff is seeking legal or equitable relief depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought. *See Great-West Life*, 534 U.S. at 213; *see also Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) ("The classification of a particular action as one which is not or is not 'at its essence' a contract action

depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)."). Documents related to the freezing, pausing, and terminating of the grant funds at issue here will help the Court understand the nature of Plaintffs' claims and whether money damages alone would provide Plaintiffs and adequate remedy should they prevail on the merits. Based on this limited discovery, the Court may find that a declaration clarifying the extent of the Defendants' obligations under the various statutes at issue here and/or prospective injunctive relief are necessary to afford the Plaintiffs adequate relief in the event their complaint has merit. In that instance, the case would fall under the APA and the Court would have jurisdiction. Alternatively, the Court may find that in order to grant relief to a meritorious complaint the Court would have to enforce a contractual obligation to pay money damages and order Defendants to make payments to Plaintiffs. In that instance, the case would fall under the Tucker Act and the Court would not have jurisdiction. Expedited discovery would assist the Court in sorting out these issues.

Third, Defendants will not be irreparably harmed by participating in expedited discovery. Defendants argue that the Court should reconsider its Expedited Discovery Order because other district courts have changed course in light of the Supreme Court's decision in *California*. (Dkt. No. 46 at 4). Defendants cite *New York v. Trump*, No. 25-cv-39, where the District of Rhode Island granted an emergency motion to stay an order enforcing a preliminary injunction after the Supreme Court issued its decision in *California*. The Court's Expedited Discovery Order is not an order granting or enforcing a preliminary injunction but simply an order facilitating limited expedited discovery to assist the Court to address jurisdictional issues and the potential merit (or lack thereof) regarding Plaintiffs' motion for preliminary injunction. Defendants here are not in danger of suffering irreparable harm like the Defendants in *California* and *New York* were.

7

The Court does, however, grant-in-part Defendants' motion to reconsider regarding the production requirement directed at DOGE. Defendants assert that DOGE is part of the Executive Office of the President. (Dkt. No. 48 at 5). The actual legal status of DOGE has been something of an enigma, and the clarification by Defendants that it is part of the President's Office seems reasonable. Consequently, the Court grants Defendants' motion to reconsider regarding the production requirements of DOGE and strikes DOGE's discovery obligations.

Accordingly, except for the modification of the Expedited Discovery Order regarding DOGE, Defendants have failed to show that there was a change in applicable law or clear error causing manifest injustice that requires the Court to reconsider its Expedited Discover Order.

### B. Motion to Stay Discovery

Defendants also seek a stay of the Court's Expedited Discovery Order similarly arguing that the Supreme Court's decision in *California* indicates that this Court lacks jurisdiction over this case and that the Court should address jurisdictional arguments before permitting parties to engage in discovery. As indicated above, the Expedited Discovery Order relates directly to addressing jurisdictional issues mandated by *Bowen*.

In determining whether a stay of discovery is appropriate, courts have considered a number of factors including the breadth of discovery and burden of responding to it, the risk of unfair prejudice to a party opposing the stay, the nature and complexity of the action, the posture or stage of the litigation, and any other relevant circumstances. *See Hollins,* 469 F.Supp.2d at 78; *Skellerup,* 162 F.R.D. at 601. All relevant factors here disfavor a stay.

The breadth of discovery ordered here is narrow in time and scope. The requests for production of documents are tied directly to the grants at issue here and only concern documents

from January 20, 2025 to the present. The Defendants' burden to respond to that discovery is similarly low.

There is a great risk of unfair prejudice to Plaintiffs if the Court stays the Expedited Discovery Order. The Court ordered limited expedited discovery on Plaintiff's motion for a preliminary injunction to allow the Court to better understand the nature of the claims being asserted by Plaintiffs and, if their claims had merit, the type of relief that might be effective and proper. This limited discovery is highly relevant to the issue of jurisdiction, specifically whether Plaintiffs' claims should be considered under the Tucker Act by the United States Court of Claims or by this Court under the APA.

In *Bowen*, the district court was directed to carefully examine the nature of the claim and the remedy sought. If the plaintiff's claim is essentially a contract claim seeking money damages, jurisdiction lies with the Court of Claims. *Id*. at 893. On the other hand, if the plaintiff seeks equitable relief, such as declaratory and injunctive relief, the case falls under the APA because for all practical purposes the Tucker Act does not provide for equitable relief. *Id*. Further, as the Supreme Court explained, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize relief as 'money damages.'" *Id.* The determination of whether the claim "at its essence" is a contract claim "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Megapulse*, 672 F.2d at 968. The district court's inquiry into the nature of the claim must go beyond the allegations in the complaint and look beneath the surface to examine the true nature of the claim and the relief sought. *Suburban Mortgage Associates, Inc. v. U.S. Department of Housing and Urban Development*, 480 F.3d 1116, 1124 (Fed. Cir. 2007); *cf. Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009) (stating in the Federal Tort Claims Act immunity context that a trial

court may go beyond the allegations of the complaint and consider evidence when deciding the Government's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)).

Despite the fact intensive inquiry required by this issue, Defendants urge this Court to address jurisdiction before allowing any discovery. This argument ignores the common practice of district courts conducting limited jurisdictional discovery to determine whether the court has jurisdiction over the matter before the court. The expedited discovery would allow the Court to fully and properly address the issue of jurisdiction as a threshold question in considering Plaintiffs' motion for a preliminary injunction. If the Court determines that the Court lacks jurisdiction over this case because the claims are essentially contractual in nature and money damages can provide complete relief, the process will stop then and there, and the case will be dismissed. However, if the Court determines that under § 702 and §704 of the APA that plaintiffs seek "relief other than money damages" and there "is no other adequate remedy" available, then Plaintiffs have a right to pursue their claims in the United States District Court under the APA.

Because the limited discovery ordered by the Court is appropriate to assist in addressing issues relevant to jurisdiction and the merits of the Plaintiffs' motion for preliminary injunction (should the Court have jurisdiction), the Court finds that a stay of the Expedited Discovery Order is not in the interest of justice or the fair deliberation of the issues before the Court. Consequently, Defendants' motion to stay is denied.

## III.   Conclusion

For the reasons set forth above, the Court **GRANTS-IN-PART AND DENIES-IN-PART** Defendants' motion to reconsider (Dkt. No. 46) and **DENIES** Defendants' motion to stay (Dkt. No. 48).

                                                _s/ Richard Mark Gergel_____
                                                Richard Mark Gergel
                                                United States District Judge

April 9, 2025
Charleston, South Carolina