| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Transportation | | 20.824 | Cable Security Fleet Program | The CSF helps sustain a fleet of cable vessels active, commercially | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.825 | Tanker Security Program | The Tanker Security Program (TSP) will ensure that a core fleet | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.901 | Payments for Essential Air Services | The program provides subsidies to air carriers to serve eligible | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.909 | Transportation Research and Technology | The USDOT seeks competitively selected cooperative agreements | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.910 | Assistance to Small and Disadvantaged Businesses | To enter into successful partnerships between OSDBU and chambers | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.930 | Payments for Small Community Air Service Development | The SCASDP program is designed to provide financial assistance to | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.931 | Transportation Planning, Research and Education | To provide funds to conduct research and development on | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.933 | National Infrastructure Investments | RAISE (formerly BUILD) grants are for capital investments in | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.934 | Nationally Significant Freight and Highway Projects | The Nationally Significant Multimodal Freight and Highway | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.936 | Transportation Demonstration Program | Transportation Demonstration grants are for infrastructure | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.937 | National Infrastructure Project Assistance (Mega Projects) | The goal of the National Infrastructure Project Assistance (Mega | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.938 | Rural Surface Transportation Grant Program | The Rural Surface Transportation Grant Program will provide | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.939 | Safe Streets and Roads for All | The purpose of SS4A grants is to improve roadway safety by | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.940 | Reconnecting Communities Pilot (RCP) Discretionary | The Reconnecting Communities Pilot Program provides | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.941 | Strengthening Mobility and Revolutionizing Transportation | Strengthening Mobility and Revolutionizing Transportation | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.942 | Thriving Communities Program Capacity Builders Cooperative | 4 Capacity Builders were selected for FY22 and 9 Capacity Builders | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.943 | Rural and Tribal Assistance Pilot Program | The intent of this Program is to advance transportation | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.944 | Autonomous Vehicle Research in Rural Communities Program | The Autonomous Vehicle Research in Rural Communities | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.945 | Asset Concessions and Innovative Finance Assistance | The objective of this program is to facilitate access to expert | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.946 | Research Partnership on Climate Change and Transportation | The climate and transportation research center shall advance | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.947 | Advanced Bridge Technology Clearinghouse (ABTC) | Rutgers University has been awarded a cooperative agreement | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.948 | MOBILITY EQUITY RESEARCH INITIATIVE | The Mobility Equity Research Initiative shall advance research and | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.949 | RESEARCH INITIATIVE ON THE USE OF STEEL SLAG | The research study will advance the Decarbonization | https:/ / sam.g | https:/ / www. |
| Department of Transportation | | 20.950 | Bridge and Other Transportation Infrastructure Research | As stated in the Consolidated Appropriations Act, | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.005 | Grants to States for Construction of State Home Facilities | To assist States to acquire or construct State home facilities for | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.014 | Veterans State Domiciliary Care | To provide financial assistance to States furnishing domiciliary | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.015 | Veterans State Nursing Home Care | To provide financial assistance to States furnishing nursing home | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.024 | VA Homeless Providers Grant and Per Diem Program | The VA Homeless Providers Grant and Per Diem (GPD) | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.026 | Veterans State Adult Day Health Care | To provide a community-based program designed to | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.028 | Post-9/11 Veterans Educational Assistance | To assist beneficiaries in receiving educational benefits and training | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.031 | Life Insurance for Veterans - Direct Payments for Insurance | To provide direct insurance payments, including advance | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.032 | Montgomery GI Bill Selected Reserve | To encourage membership in units of the Selected Reserve of | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.033 | VA Supportive Services for Veteran Families Program | To provide supportive services grants to private non-profit | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.034 | VA Grants for Adaptive Sports Programs for Disabled Veterans and | To provide grants to eligible adaptive sports entities to plan, | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.035 | Veterans Transportation Program | This program furthers the Departmentâ€™s mission by establishing | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.037 | VA U.S. Paralympics Monthly Assistance Allowance Program | To promote the lifelong health and to motivate, encourage and sustain | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.039 | CHAMPVA | CHAMPVA is health care program that shares the cost of | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.051 | Specially Adapted Housing Assistive Technology Grant | Pursuant to the Veteransâ€™ Benefit Act of 2010, the | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.053 | Payments to States for Programs to Promote the Hiring and | In accordance with the provisions of 38 U.S.C. 1744, this part sets forth | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.054 | Research and Development | In accordance with the provisions of Title 38 U.S.C. 7303, this part | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.055 | Staff Sergeant Parker Gordon Fox Suicide Prevention Grant | To provide resources toward community-based suicide | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.056 | Legal Services for Veterans Grants | To provide legal services grants to public and non-profit private | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.057 | Suicide Mortality Review Cooperative Agreements | This funding supports States, territories, and Tribal entities in | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.058 | Veteran and Spouse Transitional Assistance Grant Program | The Secretary of Veterans Affairs will make grants available | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.100 | Automobiles and Adaptive Equipment for Certain Disabled | Provide financial assistance to certain disabled servicepersons | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.101 | Burial Expenses Allowance for Veterans | If the Veteran died on or after October 1, 2024, VA will provide a | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.104 | Pension for Non-Service-Connected Disability for Veterans | To assist wartime veterans in need whose non-service- connected | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.105 | Pension to Veterans Surviving Spouses, and Children | To assist needy surviving spouses, and children of deceased | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.106 | Specially Adapted Housing for Disabled Veterans | To help certain severely disabled veterans acquire a home which is | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.109 | Veterans Compensation for Service-Connected Disability | Compensate Veterans for disabilities incurred in or aggravated during | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.110 | Veterans Dependency and Indemnity Compensation for | To compensate surviving spouses, children and parents for | https:/ / sam.g | https:/ / www. |
| Department of Veterans Affairs | | 64.114 | Veterans Housing Guaranteed and Insured Loans | To assist veterans, certain service personnel, and certain | https:/ / sam.g | https:/ / www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Department of Veterans Affairs | | 64.116 | Veteran Readiness and Employment | To provide all services and assistance necessary to enable | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.117 | Survivors and Dependents Educational Assistance | To provide educational opportunities to the dependents of certain | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.118 | Veterans Housing Direct Loans for Certain Disabled Veterans | To provide veterans who are eligible for a Specially Adapted | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.120 | Post-Vietnam Era Veterans' Educational Assistance | To provide educational assistance to persons entering the Armed | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.124 | All-Volunteer Force Educational Assistance | To help servicepersons readjust to civilian life after their separation | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.125 | Vocational and Educational Counseling for Servicemembers | To offer vocational and educational counseling to service members | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.126 | Native American Veteran Direct Loan Program | To provide direct loans to certain veterans who are, or whose spouses | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.127 | Monthly Allowance for Children of Vietnam Veterans Born with | To provide financial assistance to certain children born with spina | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.128 | Vocational Training and Rehabilitation Benefits for Children of Vietnam | To provide services to children of Vietnam Veterans born with | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.130 | Veteran Rapid Retraining Assistance Program | The Veteran Rapid Retraining Assistance Program (VRRAP) was | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.201 | National Cemeteries | To verify military service and determine eligibility for burial in a VA | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.202 | Procurement of Headstones and Markers and/or | Provide Government-furnished headstones and markers to mark | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.203 | Veterans Cemetery Grants Program | To assist States and federally recognized tribal governments in | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.204 | Veterans Legacy Grants Program | Veterans Legacy Grants Program will provide grants to eligible entities | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.205 | VA Casket or Urn Allowance Program | To provide a monetary allowance for the purchase of a casket or | https:// sam.g | https:// www. |
| Department of Veterans Affairs | | 64.206 | VA Outer Burial Receptacle Allowance Program | Monetary allowance for an outer burial receptacle (OBR) for | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.001 | Air Pollution Control Program Support | The objectives of the A§105 program are to assist state, tribal, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.032 | State and Tribal Indoor Radon Grants | EPA assists states and federally recognized tribes to provide radon | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.033 | Ozone Transport Commission | The overall goal of the Ozone Transport Commission (OTC) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.034 | Surveys, Studies, Research, Investigations, | The objectives of this assistance listing are to fund surveys, research, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.037 | Internships, Training and Workshops for the Office of Air and | To provide, Internships, Training, Workshops, and Technical | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.038 | Training, Investigations, and Special Purpose Activities of Federally- | To support Federally-recognized Indian Tribes' efforts to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.039 | Diesel Emission Reduction Act (DERA) National Grants | The Diesel Emissions Reduction Act, 42 U.S.C. 16132 et seq., | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.040 | Diesel Emissions Reduction Act (DERA) State Grants | The Diesel Emissions Reduction Act, 42 U.S.C. 16131 et seq., | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.042 | Temporally Integrated Monitoring of Ecosystems (TIME) and | EPA will award interagency and cooperative agreements | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.044 | Wildfire Smoke Preparedness in Community Buildings | EPA is providing grants to States, federally recognized Tribes, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.045 | Clean School Bus Program | Title XI, Section 71101 of the Infrastructure Investment and Jobs | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.046 | Climate Pollution Reduction Grants | EPA is providing grants to States, Locals, Federally Recognized | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.047 | Hydrofluorocarbon Reclaim and Innovative Destruction Grants | Section 60109(a)(3) of the Inflation Reduction Act provided EPA with | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.048 | Greenhouse Gas and Zero Emission On-road Mobile Source | EPA is providing grants to support state governments that are | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.049 | Clean Heavy-Duty Vehicles Program | Section 60101 of the Inflation Reduction Act of 2022 (or IRA) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.051 | Clean Ports Program | Section 60102 of the Inflation Reduction Act of 2022 (or IRA) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.110 | Healthy Communities Grant Program | The Healthy Communities Grant Program is a | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.121 | Geographic Programs - Puget Sound Protection and Restoration: Tribal | Puget Sound has been designated as one of 28 estuaries of National | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.123 | Geographic Programs - Puget Sound Action Agenda: Technical | Puget Sound has been designated as one of 28 estuaries of National | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.124 | Geographic Programs â€" Coastal Wetlands Planning Protection and | The EPA Region 6 Coastal Wetlands Planning, Protection | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.125 | Geographic Programs - Lake Pontchartrain Basic Restoration | The purpose of the Clean Water Act Section 121 (33 U.S.C. | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.126 | Geographic Programs - San Francisco Bay Water Quality | The goals of the SF Bay Restoration Program (formally SF Bay Grant | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.129 | Geographic Programs - Southeast New England Coastal Watershed | To develop and support the Southeast New England Program | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.130 | Geographic Programs - Gulf Coast Ecosystem Restoration Council | The primary objective of this program is to disburse funds to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.202 | Congressionally Mandated Projects | To implement special Congressionally mandated spending for | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.203 | Environmental Finance Center Grants | The Environmental Finance Center Grant Program provides | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.204 | Multipurpose Grants to States and Tribes | Multipurpose Grants (MPGs) are intended to be used at state and | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.305 | Compliance Assistance Support for Services to the Regulated | Since 1996, in partnership with industry associations, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.306 | Environmental Justice Collaborative Problem-Solving Cooperative | The Environmental Justice Collaborative Problem-Solving | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.309 | Surveys, Studies, Investigations, Training and Special Purpose | The program's objective is to provide funding in support of surveys, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.312 | Environmental Justice Government-to-Government (EJG2G) | The purpose of this cooperative agreement program is to support | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.313 | International Compliance and Enforcement Projects | The primary purpose of this program is to support projects that | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.418 | Construction Grants for Wastewater Treatment Works | To assist and serve as an incentive in construction of | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.419 | Water Pollution Control State, Interstate, and Tribal Program Support | To assist States (including territories and the District of | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.424 | Surveys, Studies, Investigations, Demonstrations, and | To support developing, expanding, planning, implementing, and | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.432 | State Public Water System Supervision | The objective of these grants is to provide financial assistance to | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Environmental Protection Agency | | 66.433 | State Underground Water Source Protection | To foster development and implementation of underground injection | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.436 | Surveys, Studies, Investigations, Demonstrations, and | To support the coordination and acceleration of | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.437 | Geographic Programs â€" Long Island Sound Program | The Long Island Sound Program: (1) implements the Long | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.441 | Healthy Watersheds Consortium Grant Program | To support strategically protecting healthy watersheds across the | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.442 | Water Infrastructure Improvements for the Nation Small and | The objective is to assist small and underserved | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.443 | Reducing Lead in Drinking Water (SDWA 1459B) | The grant program funds activities to reduce lead in drinking | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.444 | Voluntary School and Child Care Lead Testing and Reduction Grant | Funding is awarded to states, territories, and Tribal Consortia to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.445 | Innovative Water Infrastructure Workforce Development Program | To inform the public about the role of water and wastewater | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.446 | Technical Assistance for Treatment Works (Clean Water Act (CWA) | The objective is to provide technical assistance and training | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.447 | Sewer Overflow and Stormwater Reuse Municipal Grant | The objective of the OSG Program is to award grants to the | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.448 | Drinking Water System Infrastructure Resilience and | The purpose of this grant program is to increase drinking water | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.454 | Water Quality Management Planning | This program assists States (including territories and the | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.456 | National Estuary Program | The National Estuary Program (NEP) goal is to protect and restore | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.458 | Clean Water State Revolving Fund | To create State Revolving Funds (SRFs) through a | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.460 | Nonpoint Source Implementation Grants | To assist States, the District of Columbia, American Samoa, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.461 | Regional Wetland Program Development Grants | To assist state, territory, tribal, and/or local government agencies | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.462 | National Wetland Program Development Grants and Five-Star | To assist state, Tribal, territory and/or local government agencies | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.466 | Geographic Programs - Chesapeake Bay Program | The Chesapeake Bay is a national treasure and unique as North | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.468 | Drinking Water State Revolving Fund | To provide a low-cost, long-term source of drinking water | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.469 | Geographic Programs - Great Lakes Restoration Initiative | The Great Lakes Restoration Initiative (GLRI) was launched in | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.472 | Beach Monitoring and Notification Program Implementation Grants | To assist Coastal and Great Lakes States, Territories, and Tribes | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.473 | Direct Implementation Tribal Cooperative Agreements | Direct Implementation Tribal Cooperative Agreements (DITCAs) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.475 | Geographic Programs â€" Gulf of Mexico Program | The objectives of the Gulf of Mexico Program, housed within | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.481 | Geographic Programs â€" Lake Champlain Basin Program | The goal of this program is to implement the Lake Champlain | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.484 | Geographic Programs - South Florida Geographic Initiatives | The EPA South Florida Program provides competitive grants to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.485 | Support for the Gulf Hypoxia Action Plan | The Infrastructure Investment and Jobs Act (Public Law 117-58) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.486 | Underground Injection Control Program Grants: Class VI | The Infrastructure Investment and Jobs Act (Public Law 117-58, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.487 | Non-State Member Support for the Gulf Hypoxia Action Plan | The Infrastructure Investment and Jobs Act (Public Law 117-58) | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.489 | Response to Emergency Situations Affecting Public Water | To assist in responding to and alleviating emergency situations | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.490 | Centers of Excellence for Stormwater Control Infrastructure | To improve the effectiveness, cost efficiency, and | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.508 | Senior Environmental Employment Program | To use the talents of Americans 55 years of age or older to provide | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.509 | Science To Achieve Results (STAR) Research Program | The Science to Achieve Results (STAR) Program's goal is to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.510 | Surveys, Studies, Investigations and Special Purpose Grants | The Office of Research and Development (ORD) supports | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.511 | Office of Research and Development Consolidated Research/ | The Office of Research and Developmentâ€™s (ORD) Consolidated | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.516 | P3 Award: National Student Design Competition for | The P3 program supports research, development, and | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.518 | State Senior Environmental Employment Program | To use the talents of Americans 55 years of age or older to provide | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.521 | Innovative Water Technology Grant Program | The purpose of this program is to accelerate the development and | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.522 | Enhanced Aquifer Use and Recharge Program | The purpose of this program is to carry out groundwater research | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.600 | Environmental Protection Consolidated Grants for the Insular | The Omnibus Territories Act (OTA) allows the Insular Areas to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.604 | Environmental Justice Small Grant Program | The Environmental Justice Small Grants (EJSG) Program | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.605 | Performance Partnership Grants | Fostering EPAâ€™s partnership with the states and Tribes is | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.608 | Environmental Information Exchange Network Grant Program | The National Environmental Information Exchange | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.609 | Protection of Children from Environmental Health Risks | To support efforts by organizations; educational institutions; | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.610 | Surveys, Studies, Investigations and Special Purpose Grants | The goals of these assistance programs are to: (1) support | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.611 | Environmental Policy and Innovation Grants | The goals of this assistance program are to (1) support analyses, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.614 | Financial Assistance For Community Support Activities To Address | The objective of this program is to provide financial assistance to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.615 | Environmental Justice Thriving Communities Grantmaking Program | The goals of this program are to make awards for the design | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.616 | Environmental and Climate Justice Community Change | The objective of this program is to provide financial assistance to | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.700 | Consolidated Pesticide Enforcement Cooperative | State, territorial, and tribal agencies participating in this | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.701 | Toxic Substances Compliance Monitoring Cooperative | The objectives of this program are to: 1) assist Grantees, | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.707 | TSCA Title IV State Lead Grants Certification of Lead- | The goal of EPA's lead-based paint program is to eliminate childhood | https:// sam.g | https:// www. |
| Environmental Protection Agency | | 66.708 | Pollution Prevention Grants Program | The P2 grant program was enacted under the Pollution Prevention Act | https:// sam.g | https:// www. |

| Agency | ID | Program | Description | URL | URL |
|---|---|---|---|---|---|
| Environmental Protection Agency | 96714 | | | https:// | https:// |
| Environmental Protection Agency | 96716 | | | https:// | https:// |
| Environmental Protection Agency | 96717 | | | https:// | https:// |
| Environmental Protection Agency | 96720 | | | https:// | https:// |
| Environmental Protection Agency | 96721 | | | https:// | https:// |
| Environmental Protection Agency | 96722 | | | https:// | https:// |
| Environmental Protection Agency | 96801 | | | https:// | https:// |
| Environmental Protection Agency | 96802 | | | https:// | https:// |
| Environmental Protection Agency | 96804 | | | https:// | https:// |
| Environmental Protection Agency | 96805 | | | https:// | https:// |
| Environmental Protection Agency | 96808 | | | https:// | https:// |
| Environmental Protection Agency | 96809 | | | https:// | https:// |
| Environmental Protection Agency | 96812 | | | https:// | https:// |
| Environmental Protection Agency | 96813 | | | https:// | https:// |
| Environmental Protection Agency | 96814 | | | https:// | https:// |
| Environmental Protection Agency | 96815 | | | https:// | https:// |
| Environmental Protection Agency | 96816 | | | https:// | https:// |
| Environmental Protection Agency | 96817 | | | https:// | https:// |
| Environmental Protection Agency | 96818 | | | https:// | https:// |
| Environmental Protection Agency | 96820 | | | https:// | https:// |
| Environmental Protection Agency | 96820 | | | https:// | https:// |
| Environmental Protection Agency | 96821 | | | https:// | https:// |
| Environmental Protection Agency | 96825 | | | https:// | https:// |
| Environmental Protection Agency | 96831 | | | https:// | https:// |
| Environmental Protection Agency | 96832 | | | https:// | https:// |
| Environmental Protection Agency | 96833 | | | https:// | https:// |
| Environmental Protection Agency | 96834 | | | https:// | https:// |
| Environmental Protection Agency | 96835 | | | https:// | https:// |
| Environmental Protection Agency | 96836 | | | https:// | https:// |
| Environmental Protection Agency | 96837 | | | https:// | https:// |
| Environmental Protection Agency | 96838 | | | https:// | https:// |
| Environmental Protection Agency | 96839 | | | https:// | https:// |
| Environmental Protection Agency | 96840 | | | https:// | https:// |
| Equal Employment Opportunity Commission | 30301 | | | https:// | https:// |
| Executive Office of the President | 95001 | | | https:// | https:// |
| Executive Office of the President | 95003 | | | https:// | https:// |
| Executive Office of the President | 95004 | | | https:// | https:// |
| Executive Office of the President | 95005 | | | https:// | https:// |
| Executive Office of the President | 95006 | | | https:// | https:// |
| Executive Office of the President | 95007 | | | https:// | https:// |
| Executive Office of the President | 95010 | | | https:// | https:// |
| Export - Import Bank of the United States | 31007 | | | https:// | https:// |
| Federal Communications Commission | 32002 | | | https:// | https:// |
| Federal Communications Commission | 32003 | | | https:// | https:// |
| Federal Communications Commission | 32004 | | | https:// | https:// |
| Federal Communications Commission | 32005 | | | https:// | https:// |
| Federal Communications Commission | 32006 | | | https:// | https:// |
| Federal Communications Commission | 32007 | | | https:// | https:// |
| Federal Communications Commission | 32008 | | | https:// | https:// |

EPA_00049324

| | | | | | |
|---|---|---|---|---|---|
| Federal Communications Commission | 32.009 | Emergency Connectivity Fund Program | In section 7402 of the American Rescue Plan Act (Act), Congress | https:// sam.g | https:// www. |
| Federal Communications Commission | 32.010 | Supply Chain Reimbursement Program | On March 12, 2020, the Secure and Trusted Communications | https:// sam.g | https:// www. |
| Federal Communications Commission | 32.011 | Affordable Connectivity Outreach Grant Program | Millions of low-income households experience difficulty paying for | https:// sam.g | https:// www. |
| Federal Communications Commission | 32.012 | Cybersecurity Pilot Program | As broadband connectivity and internet access have | https:// sam.g | https:// www. |
| Federal Financial Institutions Examination Council Appraisal Subcommittee | 38.006 | State Appraiser Agency Support Grants | To provide State Appraiser Regulatory Agencies with funds to | https:// sam.g | https:// www. |
| Federal Financial Institutions Examination Council Appraisal Subcommittee | 38.008 | Training and Technical Assistance for State Appraiser Regulatory | The objectives of this federal assistance are to expand and provide | https:// sam.g | https:// www. |
| Federal Financial Institutions Examination Council Appraisal Subcommittee | 38.009 | Board Support and Innovation Grant | The Appraisal Subcommittee is making funds available | https:// sam.g | https:// www. |
| Federal Permitting Improvement Steering Council | 90.800 | Federal Permitting Improvement Steering Council Environmental | Providing financial assistance to Tribal governments to | https:// sam.g | https:// www. |
| General Services Administration | 39.002 | Disposal of Federal Surplus Real Property | To assist State and local governments, and certain eligible (501(c) | https:// sam.g | https:// www. |
| General Services Administration | 39.003 | Donation of Federal Surplus Personal Property | To donate Federal personal property no longer required for | https:// sam.g | https:// www. |
| General Services Administration | 39.007 | Sale of Federal Surplus Personal Property | To sell personal property no longer needed by the | https:// sam.g | https:// www. |
| Gulf Coast Ecosystem Restoration Council | 87.051 | Gulf Coast Ecosystem Restoration Council Comprehensive Plan | The primary objective of this program is to disburse funds to | https:// sam.g | https:// www. |
| Gulf Coast Ecosystem Restoration Council | 87.052 | Gulf Coast Ecosystem Restoration Council Oil Spill Impact Program | The primary objective of this program is to disburse funds to | https:// sam.g | https:// www. |
| Inter-American Foundation | 85.750 | IAF Assistance for Overseas Programs | The primary objectives of the IAF Assistance for Programs Overseas | https:// sam.g | https:// www. |
| Inter-American Foundation | 85.751 | IAF Assistance for Overseas Programs | The primary objectives of the IAF Assistance for Programs Overseas | https:// sam.g | https:// www. |
| Japan-U.S. Friendship Commission | 90.300 | Japan-U.S. Friendship Commission Grants | to promote educational, intellectual, artistic and cultural exchange and | https:// sam.g | https:// www. |
| Library of Congress | 42.010 | Teaching with Primary Sources | Teaching with Primary Sources (TPS) grants seek to fulfill the | https:// sam.g | https:// www. |
| Library of Congress | 42.011 | Library of Congress Grants | To provide grants to individuals and organizations. | https:// sam.g | https:// www. |
| Library of Congress | 42.012 | Connecting Communities Digital Initiative | The Connecting Communities Digital Initiative (CCDI) | https:// sam.g | https:// www. |
| Library of Congress | 42.013 | Of the People: Community Collections Grants | The Library of Congress seeks to award grants to support | https:// sam.g | https:// www. |
| Library of Congress | 42.014 | Affiliate Centers for the Book Programming Grants | Through a gift from the John Y. Cole and Nancy E. Gwinn Trust Fund, | https:// sam.g | https:// www. |
| Library of Congress | 42.015 | Lewis-Houghton Civics and Democracy Initiative | With this notice, the Library of Congress invites education- | https:// sam.g | https:// www. |
| Millennium Challenge Corporation | 85.002 | MCC Foreign Assistance for Overseas Programs | To provide United States assistance for global development | https:// sam.g | https:// www. |
| Morris K. Udall Scholarship and Excellence in National Environmental Policy Foundation | 85.400 | Morris K. Udall Scholarship Program | The Udall Undergraduate Scholarship identifies | https:// sam.g | https:// www. |
| Morris K. Udall Scholarship and Excellence in National Environmental Policy Foundation | 85.401 | Morris K. Udall Fellowship Program | The Native American Graduate Fellowship Program supports | https:// sam.g | https:// www. |
| Morris K. Udall Scholarship and Excellence in National Environmental Policy Foundation | 85.402 | Morris K. Udall Native American Congressional | The Native American Congressional Internship Program | https:// sam.g | https:// www. |
| National Aeronautics and Space Administration | 43.001 | Science | The Science Mission Directorate (SMD) pursues NASA's | https:// sam.g | https:// www. |
| National Aeronautics and Space Administration | 43.002 | Aeronautics | The NASA Mission draws support from NASAâ€™s world- | https:// sam.g | https:// www. |
| National Aeronautics and Space Administration | 43.003 | Exploration | The Exploration Systems Development Mission Directorate | https:// sam.g | https:// www. |
| National Aeronautics and Space Administration | 43.007 | Space Operations | NASAâ€™s Space Operations Mission Directorate is the heart | https:// sam.g | https:// www. |
| National Aeronautics and Space Administration | 43.008 | Office of Stem Engagement (OSTEM) | NASAâ€™s journeys have propelled technological | https:// sam.g | https:// www. |
| National Aeronautics and Space Administration | 43.009 | Mission Support | Provides effective and efficient institutional support to enable | https:// sam.g | https:// www. |
| National Aeronautics and Space Administration | 43.012 | Space Technology | NASAâ€™s Space Technology Mission Directorate (STMD) | https:// sam.g | https:// www. |
| National Aeronautics and Space Administration | 43.014 | Congressionally Directed Programs | NASA Community Projects/NASA Special Projects are provided | https:// sam.g | https:// www. |
| National Archives and Records Administration | 89.001 | National Archives Reference Services Historical Research | Objectives: To provide professional reference service to members of | https:// sam.g | https:// www. |
| National Archives and Records Administration | 89.003 | National Historical Publications and Records Grants | To undertake a wide-range of activities related to the | https:// sam.g | https:// www. |
| National Council on Disability | 92.002 | National Council on Disability | NCD is an independent federal agency charged with advising the | https:// sam.g | https:// www. |
| National Credit Union Administration | 44.002 | Community Development Revolving Loan Fund Program for | The purpose of the Community Development Revolving | https:// sam.g | https:// www. |
| National Endowment for the Arts | 45.024 | Promotion of the Arts Grants to Organizations and Individuals | To support opportunities for all people to participate in the arts | https:// sam.g | https:// www. |
| National Endowment for the Arts | 45.025 | Promotion of the Arts Partnership Agreements | To develop and maintain partnerships with the state and | https:// sam.g | https:// www. |
| National Endowment for the Arts | 45.201 | Arts and Artifacts Indemnity | To provide for indemnification against loss or damage for | https:// sam.g | https:// www. |
| National Endowment for the Humanities | 45.129 | Promotion of the Humanities Federal/ State Partnership | Federal/State Partnerships promote local, statewide, and | https:// sam.g | https:// www. |
| National Endowment for the Humanities | 45.130 | Promotion of the Humanities Challenge Grants | To strengthen institutional base and organizational capacity | https:// sam.g | https:// www. |
| National Endowment for the Humanities | 45.149 | Promotion of the Humanities Division of Preservation and | Preservation and Access grants ensure the long-term and wide | https:// sam.g | https:// www. |
| National Endowment for the Humanities | 45.160 | Promotion of the Humanities Fellowships and Stipends | Fellowships and Stipends provide support for individual | https:// sam.g | https:// www. |
| National Endowment for the Humanities | 45.161 | Promotion of the Humanities Research | Humanities Research awards advance knowledge and | https:// sam.g | https:// www. |
| National Endowment for the Humanities | 45.162 | Promotion of the Humanities Teaching and Learning | Teaching and Learning Resources and Curriculum | https:// sam.g | https:// www. |
| National Endowment for the Humanities | 45.163 | Promotion of the Humanities Professional | The institutes program promotes better teaching and research | https:// sam.g | https:// www. |
| National Endowment for the Humanities | 45.164 | Promotion of the Humanities Public Programs | Public Programs grants provide opportunities for the American public to | https:// sam.g | https:// www. |
| National Endowment for the Humanities | 45.169 | Promotion of the Humanities Office of Digital Humanities | The Office of Digital Humanities supports innovative humanities | https:// sam.g | https:// www. |
| National Science Foundation | 47.041 | Engineering | "The NSF Directorate for Engineering (ENG) seeks to improve the | https:// sam.g | https:// www. |
| National Science Foundation | 47.049 | Mathematical and Physical Sciences | To promote the progress of the mathematical and | https:// sam.g | https:// www. |

| | | | | | | |
|---|---|---|---|---|---|---|
| National Science Foundation | | 47.050 | Geosciences | To strengthen and enhance the national scientific enterprise | https:/ / sam.g | https:/ / www. |
| National Science Foundation | | 47.070 | Computer and Information Science and Engineering | To support investigator-initiated research and education in all areas of | https:/ / sam.g | https:/ / www. |
| National Science Foundation | | 47.074 | Biological Sciences | To promote the progress of the biological sciences and | https:/ / sam.g | https:/ / www. |
| National Science Foundation | | 47.075 | Social, Behavioral, and Economic Sciences | To contribute to the scientific strength and welfare of the Nation | https:/ / sam.g | https:/ / www. |
| National Science Foundation | | 47.076 | STEM Education (formerly Education and Human Resources) | To provide leadership and ensure the vitality of the Nation's science, | https:/ / sam.g | https:/ / www. |
| National Science Foundation | | 47.078 | Polar Programs | To strengthen and enhance the national scientific enterprise | https:/ / sam.g | https:/ / www. |
| National Science Foundation | | 47.079 | Office of International Science and Engineering | To enable the U.S. to maintain its leadership within the global | https:/ / sam.g | https:/ / www. |
| National Science Foundation | | 47.083 | Integrative Activities | Enhance the competitiveness of the Nationâ€™s research | https:/ / sam.g | https:/ / www. |
| National Science Foundation | | 47.084 | NSF Technology, Innovation, and Partnerships | The Directorate for Technology, Innovation, and Partnerships (TIP) | https:/ / sam.g | https:/ / www. |
| Northern Border Regional Commission | | 90.601 | Northern Border Regional Development | The Northern Border Regional Commission is a Federal-State | https:/ / sam.g | https:/ / www. |
| Nuclear Regulatory Commission | | 77.007 | U.S. Nuclear Regulatory Commission Minority Serving | The Minority Serving Institutions Grants Program (MSIGP) funds | https:/ / sam.g | https:/ / www. |
| Nuclear Regulatory Commission | | 77.008 | U.S. Nuclear Regulatory Commission Scholarship and | This Scholarship and Fellowship program provides funding for | https:/ / sam.g | https:/ / www. |
| Nuclear Regulatory Commission | | 77.009 | U.S. Nuclear Regulatory Commission Office of Research | The Office of Nuclear Regulatory Research (RES) furthers the | https:/ / sam.g | https:/ / www. |
| Office of the Director Of National Intelligence | | 54.001 | Intelligence Community Centers for Academic Excellence | The Intelligence Community Centers for Academic Excellence | https:/ / sam.g | https:/ / www. |
| Pension Benefit Guaranty Corporation | | 86.001 | Pension Plan Termination Insurance | To encourage the continuation and maintenance of | https:/ / sam.g | https:/ / www. |
| Railroad Retirement Board | | 57.001 | Social Insurance for Railroad Workers | Provide income security for retired and disabled railroad workers, their | https:/ / sam.g | https:/ / www. |
| Railroad Retirement Board | | 57.006 | Social Insurance for Railroad Workers | Provide income security for retired and disabled railroad workers, their | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.006 | 8(a) Business Development Program | To foster business ownership by individuals who are both | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.007 | 7(j) Technical Assistance | The purpose of the program is to provide Business Development | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.008 | Disaster Assistance Loans | To provide loans to the survivors of declared disasters for uninsured | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.011 | Small Business Investment Companies | To establish privately owned and managed Small Business | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.012 | 7(a) Loan Guarantees | To provide guaranteed loans from lenders to eligible for profit small | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.016 | Surety Bond Guarantees | To guarantee surety bonds issued by Treasury listed surety | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.026 | SCORE | To provide mentoring and workshops to potential and existing | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.037 | Small Business Development Centers | To provide management counseling, training, and technical | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.041 | 504 Certified Development Loans | To assist small business concerns by providing long-term, fixed-rate | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.043 | Women's Business Ownership Assistance | To fund private, nonprofit organizations to assist, through | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.044 | Veterans Outreach Program | In accordance with Public Law 110-186, the organizations will | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.046 | Microloan Program | To assist women, low-income, and minority entrepreneurs, business | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.050 | Prime Technical Assistance | To increase the number of microenterprises and to enhance the | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.052 | Native American Outreach | To fund economic development projects that will provide small | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.053 | Ombudsman and Regulatory Fairness Boards | To assure equity and fairness in federal regulation of small | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.054 | 7(a)Export Loan Guarantees | Provides aid and assistance to small-businesses to increase | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.055 | HUBZone Program | The purpose of the HUBZone program is to provide federal | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.058 | Federal and State Technology Partnership Program | The purpose of the FAST program is to strengthen the | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.059 | Congressional Grants | Provide funding for small business development and | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.061 | State Trade Expansion | Grants made to state governments to increase the number of | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.062 | Intermediary Loan Program | Three year pilot program in which SBA made direct loans of up | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.065 | Growth Accelerator Fund Competition | Growth Accelerators provide focused assistance to STEM/ | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.066 | Transition Assistance â€" Entrepreneurship Track (Boots to | Boots to Business (B2B) grant/ cooperative agreement | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.067 | Regional Innovation Clusters | The purpose of this program is to connect and expand regional | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.069 | SBA Emerging Leaders Initiative | Emerging Leaders is a free educational series that provides executives | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.072 | Economic Injury Disaster Loan Emergency Advance | In response to the Coronavirus (COVID-19) pandemic, | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.073 | Paycheck Protection Loan Program (PPP) | The Paycheck Protection Program established by the | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.075 | Shuttered Venue Operators Grant Program | The SVOG Program provided funds to support the ongoing | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.076 | Lab-to-Market | Highlight successful examples of innovation ecosystems, particularly | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.077 | Community Navigator Pilot Program | Per the American Rescue Plan, the SBA is authorized to create | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.078 | Restaurant Revitalization Fund | This program provided emergency assistance for eligible restaurants, | https:/ / sam.g | https:/ / www. |
| Small Business Administration | | 59.079 | Cybersecurity for Small Business Pilot Program | Funding opportunity for state governments to assist small business | https:/ / sam.g | https:/ / www. |
| Social Security Administration | | 96.001 | Social Security Disability Insurance | Social Security pays benefits to people who canâ€™t work because | https:/ / sam.g | https:/ / www. |
| Social Security Administration | | 96.002 | Social Security Retirement Insurance | The Social Security Retirement benefit is a monthly payment that | https:/ / sam.g | https:/ / www. |
| Social Security Administration | | 96.004 | Social Security Survivors Insurance | Social Security helps survivors by providing income for the families | https:/ / sam.g | https:/ / www. |

| Social Security Administration | 96.006 | Supplemental Security Income | http://www.sam.gov |
| Social Security Administration | 96.007 | Social Security Research and Demonstration | http://www.sam.gov |
| Social Security Administration | 96.008 | Social Security - Work Incentives Planning and Assistance Program | http://www.sam.gov |
| Social Security Administration | 96.009 | Social Security State Grants for Work Incentives Assistance to Disabled Beneficiaries | http://www.sam.gov |
| Social Security Administration | 96.011 | Analyzing Relationships Between Disability, Rehabilitation and Work | http://www.sam.gov |
| Social Security Administration | 96.012 | International Cooperative Agreement Program | http://www.sam.gov |
| Social Security Administration | 96.013 | Disability Insurance/SSDI | http://www.sam.gov |
| Social Security Administration | 96.020 | Special Benefits for Certain World War II Veterans | http://www.sam.gov |
| Southeast Crescent Regional Commission | 90.705 | Southeast Crescent Regional Commission Economic and Infrastructure Development | http://www.sam.gov |
| The Institute of Museum and Library Services | 45.301 | American Library/Museum Internship and Fellowship Program | http://www.sam.gov |
| The Institute of Museum and Library Services | 45.302 | 21st Century Museum Professional Program | http://www.sam.gov |
| The Institute of Museum and Library Services | 45.303 | Museum Grants for African American History and Culture | http://www.sam.gov |
| The Institute of Museum and Library Services | 45.301 | Museums for America | http://www.sam.gov |
| The Institute of Museum and Library Services | 45.309 | Native American/Native Hawaiian Museum Services | http://www.sam.gov |
| The Institute of Museum and Library Services | 45.308 | Museum Grants for African American History and Culture | http://www.sam.gov |
| The Institute of Museum and Library Services | 45.310 | Grants to States | http://www.sam.gov |
| The Institute of Museum and Library Services | 45.311 | Native American Library Services | http://www.sam.gov |
| The Institute of Museum and Library Services | 45.312 | National Leadership Grants | http://www.sam.gov |
| The Institute of Museum and Library Services | 45.313 | Laura Bush 21st Century Librarian Program | http://www.sam.gov |
| U.S. Agency for Global Media | 90.100 | International Broadcasting | http://www.sam.gov |
| U.S. Election Assistance Commission | 90.400 | Help America Vote College Program | http://www.sam.gov |
| U.S. Election Assistance Commission | 90.401 | Help America Vote Act Requirements Payments | http://www.sam.gov |
| U.S. Election Assistance Commission | 90.404 | Voter Election Security Grants | http://www.sam.gov |
| United States Institute of Peace | 91.005 | Priddy Grant Competition | http://www.sam.gov |
| United States International Development Finance Corporation | 97.004 | Equity Investments | http://www.sam.gov |
| United States International Development Finance Corporation | 97.003 | Debt Financing | http://www.sam.gov |
| United States International Development Finance Corporation | 97.006 | Political Risk Insurance | http://www.sam.gov |
| United States International Development Finance Corporation | 97.101 | Technical Assistance and Feasibility Studies | http://www.sam.gov |

EPA_00049327

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

State of New York, et al.

### DEFENDANTS

Donald Trump, et al.

**(b)** County of Residence of First Listed Plaintiff   New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Rhode Island Office of Attorney General
150 South Main Street, Providence, RI 02903

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government
  Plaintiff
- [ ] 3  Federal Question
  *(U.S. Government Not a Party)*
- [x] 2  U.S. Government
  Defendant
- [ ] 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                             *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [x] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original
  Proceeding
- [ ] 2  Removed from
  State Court
- [ ] 3  Remanded from
  Appellate Court
- [ ] 4  Reinstated or
  Reopened
- [ ] 5  Transferred from
  Another District
  *(specify)*
- [ ] 6  Multidistrict
  Litigation -
  Transfer
- [ ] 8  Multidistrict
  Litigation -
  Direct File

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
5 USC 702; 5 USC 706; 28 USC 2201
Brief description of cause:
APA, Constitutional Claims

### VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

### VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Jan 28, 2025 | /s/ Sarah Rice |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

EPA_00049328

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.

Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.

**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

EPA_00049329

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

---

STATE OF NEW YORK; STATE OF
CALIFORNIA; STATE OF ILLINOIS; STATE OF
RHODE ISLAND; STATE OF NEW JERSEY;
COMMONWEALTH OF MASSACHUSETTS;
STATE OF ARIZONA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
DELAWARE; THE DISTRICT OF COLUMBIA;
STATE OF HAWAI'I; STATE OF MAINE; STATE
OF MARYLAND; STATE OF MICHIGAN; STATE
OF MINNESOTA; STATE OF NEVADA; STATE
OF NORTH CAROLINA; STATE OF NEW
MEXICO; STATE OF OREGON; STATE OF
VERMONT; STATE OF WASHINGTON; STATE
OF WISCONSIN,

       Plaintiffs,

     v.

DONALD TRUMP, IN HIS OFFICIAL CAPACITY
AS PRESIDENT OF THE UNITED STATES; U.S.
OFFICE OF MANAGEMENT AND BUDGET;
MATTHEW J. VAETH, IN HIS OFFICIAL
CAPACITY AS ACTING DIRECTOR OF THE
U.S. OFFICE OF MANAGEMENT AND
BUDGET; U.S. DEPARTMENT OF THE
TREASURY; SCOTT BESSENT, IN HIS
OFFICIAL CAPACITY AS SECRETARY OF THE
TREASURY; PATRICIA COLLINS IN HER
OFFICIAL CAPACITY AS TREASURER OF THE
U.S.; U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES; DOROTHY A. FINK, M.D.,
IN HER OFFICIAL CAPACITY AS ACTING
SECRETARY OF HEALTH AND HUMAN
SERVICES; U.S. DEPARTMENT OF
EDUCATION; DENISE CARTER, IN HER
OFFICIAL CAPACITY AS ACTING SECRETARY
OF EDUCATION; U.S. FEDERAL EMERGENCY
MANAGEMENT AGENCY; CAMERON
HAMILTON, IN HIS OFFICIAL CAPACITY AS
ACTING ADMINISTRATOR OF THE U.S.
FEDERAL EMERGENCY MANAGEMENT

C.A. No. 1:25-cv-00039

**REQUEST FOR EMERGENCY
TEMPORARY RESTRAINING
ORDER UNDER FEDERAL RULE
OF CIVIL PROCEDURE 65(B)**

EPA_00049330

AGENCY; U.S. DEPARTMENT OF
TRANSPORTATION;
JUDITH KALETA, IN HER OFFICIAL
CAPACITY AS ACTING SECRETARY OF
TRANSPORTATION;
U.S. DEPARTMENT OF LABOR; VINCE
MICONE, IN HIS OFFICIAL CAPACITY AS
ACTING SECRETARY OF LABOR; U.S.
DEPARTMENT OF ENERGY; INGRID KOLB, IN
HER OFFICIAL CAPACITY AS ACTING
SECRETARY OF THE U.S. DEPARTMENT OF
ENERGY; U.S. ENVIRONMENTAL
PROTECTION AGENCY; JAMES PAYNE, IN HIS
OFFICIAL CAPACITY AS ACTING
ADMINISTRATOR OF THE U.S.
ENVIRONMENTAL PROTECTION AGENCY;
U.S. DEPARTMENT OF HOMELAND
SECURITY; KRISTI NOEM, IN HER CAPACITY
AS SECRETARY OF THE U.S. DEPARTMENT
OF HOMELAND SECURITY; U.S.
DEPARTMENT OF JUSTICE; JAMES R.
McHENRY III, IN HIS OFFICIAL CAPACITY AS
ACTING ATTORNEY GENERAL OF THE U.S.
DEPARTMENT OF JUSTICE; THE NATIONAL
SCIENCE FOUNDATION and DR.
SETHURAMAN PANCHANATHAN, IN HIS
CAPACITY AS DIRECTOR OF THE NATIONAL
SCIENCE FOUNDATION,

       Defendants.

## MOTION FOR A TEMPORARY RESTRAINING ORDER

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff States move for issuance of an

order temporarily restraining Defendants from enforcing the directive given to all Federal agencies

in the Office of Management and Budget's January 27, 2025 Directive to "**temporarily pause** all

activities related to obligation or disbursement of all Federal financial assistance, and other

relevant agency activities that may be implicated by [certain] executive orders" pending the

Court's review of the merits. Matthew J. Vaeth, Acting Director of the Office of Management and

EPA_00049331

Budget, "Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs" (January 27, 2025) ("OMB Directive"), at 2.

The OMB Directive's directive to "pause . . . disbursement of Federal funds under all open awards," and to "pause" other Federal financial assistance-related activities is unlawful under the Administrative Procedure Act ("APA") because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, contrary to constitutional right or power, in excess of statutory jurisdiction, authority, or limitations, and is contrary to law. *See* 5 U.S.C. § 706. The OMB Directive also violates constitutional Separation of Powers principles and exceeds the constitutional limitations on any Spending Clause power that Congress might have delegated to the executive branch in any of the activity areas affected by the "pause." The OMB Directive's "pause" mandate is causing Plaintiff States immediate and irreparable harm—in the form of millions of dollars in obligated funds and mass regulatory chaos—every day that the policy set out in the OMB Directive is in effect.[1] The balance of the equities also weighs overwhelmingly in Plaintiffs' favor. Plaintiff States thus respectfully request that this Court schedule a hearing on this matter today, January 28, 2025, or as soon as is otherwise practicable, and that the Court restrain the Defendants from enforcing the OMB Directive's directive to "pause all activities related to obligation or disbursement of all Federal financial assistance." OMB Directive at 2.

---

[1] Indeed, Defendants essentially acknowledged in a separate filing that a TRO would be appropriate if payments under particular grant programs have been delayed and that such delay would cause harm meriting immediate relief—which this record, with declarations from dozens of state officials indicating just that—amply demonstrates. Def.'s Notice Regarding Pls' Mot. for TRO, *Nat'l Council of Nonprofits v. OMB*, No. 25-cv-239 Dkt. 11 at 2 (D.D.C. Jan. 28, 2025).

EPA_00049332

## BACKGROUND

Last night, Plaintiff States became aware through social media reporting, later confirmed by the Washington Post,[2] that the Acting Director of the Office of Management and Budget, Matthew Vaeth, had sent a sweeping Directive to heads of executive departments and agencies that will upend the regular workings of State government programs providing health care, safe roads, disaster assistance, and other essential services. The OMB Directive has already caused mass uncertainty and confusion for recipients of Federal funds who are not sure when or if they will receive funding already obligated. The OMB Directive addresses "Federal financial assistance," a broad designation under Federal law that encompasses most Federal grants and loans—the Directive itself claims that $3 trillion of FY 2024 Federal government spending is comprised of Federal financial assistance. OMB Directive, at 1.

Complicating matters further, instead of communicating through normal procedural channels to explain changes in the complex Federal grant and loan programs each Federal executive branch agency is charged with administering, Director Vaeth issued the OMB Directive as a non-publicized internal memorandum dictating that all agencies "**must temporarily pause** all activities related to obligation or disbursement of all Federal financial assistance . . . ." *Id.* at 2. The memorandum further cryptically explains that the financial activities subject to the pause include, but are not limited to, "financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal." *Id.* And, while the OMB Directive specifically mentions seven executive orders that by their own terms purport to limit

---

[2] Jeff Stein, Jacob Bogage, and Emily Davies, "White House pauses all federal grants, sparking confusion," Washington Post, Jan. 27, 2025, https://www.washingtonpost.com/business/2025/01/27/white-house-pauses-federal-grants/.

EPA_00049333

Federal financial assistance or at least appear to begin a process at interrupting Federal financial assistance,[3] it is unclear if these are the only policies to which the memo applies. *Id.* at 1-2.

The OMB Directive sketches out a process by which each executive branch agency "must complete a comprehensive analysis" of their programs, the purpose of which is to allow the Administration to "review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities." *Id.* at 2. But, while that happens, the Directive asserts that "all activities related to obligation or disbursement of all Federal financial assistance" must be paused. *Id.* at 2. And while the order describes the pause as temporary, there is no set end date. Agencies must submit a detailed report by February 10, 2025, but there is no deadline for OMB to make a determination and resume funding. *Id.* While waiting for that determination to be made, "[e]ach agency must pause: (i) issuance of new awards; (ii) disbursement of Federal funds under all open awards; and (iii) other relevant agency actions that may be implicated by the executive orders, to the extent permissible by law . . . ." *Id.*

State Plaintiffs rely on Federal financial assistance to provide basic services to their residents. In FY 2024, Federal grants to States surpassed $1 trillion.[4]

Billions of dollars flow to State health systems, infrastructure, law enforcement, education, and everything in between. Many States are faced with the possibility of immediate cash shortfalls

---

[3] The referenced executive orders are: *Protecting the American People Against Invasion* (Jan. 20, 2025), *Reevaluating and Realigning United States Foreign Aid* (Jan. 20, 2025), *Putting America First in International Environmental Agreements* (Jan. 20, 2025), *Unleashing American Energy* (Jan. 20, 2025), *Ending Radical and Wasteful Government DEI Programs and Preferencing* (Jan. 20, 2025), *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Jan. 20, 2025), and *Enforcing the Hyde Amendment* (Jan. 24, 2025). Id. at 1-2.

[4] Rebecca Thiess, Kate Watkins, and Justin Theal, "Record Federal Grants to States Keep Federal Share of State Budgets High," Pew, Sept. 10, 2024, https://www.pewtrusts.org/en/research-and-analysis/articles/2024/09/10/record-federal-grants-to-states-keep-federal-share-of-state-budgets-high.

to conduct their basic everyday programs like funding for healthcare and food for children, which are and have been conducted through cooperative federalism arrangements enacted by Congress and in place for decades, and to address their most pressing emergency needs. *See* Affirmation of Keith D. Hoffman dated January 28, 2025 ("Hoffmann Aff.") at ¶¶3-31 (citing exhibits A-DD in support); Compl. ¶ ¶ 77-97. This will result in immediate and devastating consequences for the people of Plaintiff States. California is in particularly dire straits given the uncertainty imposed by the Department of Justice Memorandum on continued disbursement of Federal Emergency Management Agency ("FEMA") funding that is essential to the response to wildfires. Compl. ¶80. Many of these grants are distributed according to statutory formulas such that Congress did not leave discretion to agencies to determine qualification to begin with.

In short, funding making up billions of dollars in each of Plaintiff States has been cast aside regardless of the chaos this will cause or the impact on essential functions Americans need in their daily lives.

## ARGUMENT

The legal standard for a temporary restraining order "mirrors that for a preliminary injunction." *Schnitzer Steel Industries, Inc. v. Dingman*, 639 F. Supp. 3d 222, 226 (D.R.I. 2022) (citing *Harris v. Wall*, 217 F. Supp. 3d 541, 552 (D.R.I. 2016)).  Under that standard, "[t]he district court must consider 'the movant's likelihood of success on the merits; whether and to what extent the movant will suffer irreparable harm in the absence of preliminary injunctive relief; the balance of relative hardships [and equities]; and the effect, if any, that either a preliminary injunction or the absence of one will have on the public interest.'" *U.S. Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*, 121 F.4th 339, 347 (1st Cir. 2024) (quoting *Ryan v. U.S. Immigration and Customs Enforcement*, 974 F.3d 9, 18 (1st Cir. 2020)); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

6

7, 20 (2008). The final two factors—the balance of equities and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Likelihood of success is the main bearing wall of the four-factor framework." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996). However, a "district court is required only to make an estimation of likelihood of success and need not predict the eventual outcome on the merits with absolute assurance." *Schnitzer Steel Industries, Inc.*, 639 F. Supp. 3d at 226 (quoting *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013)).

### I. Plaintiff States Have Standing to Challenge the OMB Directive.

Plaintiff States risk losing billions of dollars of funding obligated to them by the Federal government, and for this reason, they easily meet the standard for Article III standing.

"To ensure the proper adversarial presentation *Lujan* holds that a litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992)). "Monetary costs are of course an injury." *United States v. Texas*, 599 U.S. 670, 676 (2023). Thus, "los[ing] out on federal funds . . . is a sufficiently concrete and imminent injury to satisfy Article III." *Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019).

Because the OMB Directive threatens to pause large amounts of Federal funding to the Plaintiff States on less than 24 hours' notice, the Plaintiff States meet these requirements. The injury could hardly be more severe: Plaintiff California faces the prospect of losing disaster relief funds at a moment of great need, as the Los Angeles area is recovering from devastating wildfires; Plaintiff States risk losing funding that they receive from the Federal government to provide school lunches to children from low-income families, grants to help law enforcement combat violence

7

EPA_00049336

against children, elders, and other vulnerable populations, and funds for highways and other essential infrastructure. Compl. ¶¶ 14, 30, 82, 90. In short, each of the Plaintiff States faces immediate, direct pocketbook losses.

Moreover, because the OMB Directive was issued to agency heads on less than 24 hours' notice, the Plaintiff States have had no time to prepare for this drastic move by the Federal government. Had the proposal given several weeks' or months' notice, the Plaintiff States could have consulted with their budgetary personnel to devise a plan to address any potential pause in funding. Compl. ¶¶ 95-97. As it is, they had no notice and thus no ability to set aside funding for the anticipated shortfall, work with their legislatures to appropriate funds, or take other similar measures. *Id.*

The OMB Directive's Federal financial assistance "pause" mandate is also causing a present harm to Plaintiff States' ability to engage in budgeting and financial planning.

As for traceability and redressability, the Defendants are the sole cause of this mayhem—there is no other party that these injuries could be traced to. And the injunctive relief Plaintiff States seek will prevent the Federal government from following through on its unlawful directive.

## II.     Plaintiff States Are Likely to Succeed on the Merits

Plaintiff States are likely to succeed on the merits of their claims. *First*, Defendants' actions violate the APA because they are acting *ultra vires*: Congress has not delegated any unilateral authority to Defendants to indefinitely pause all Federal financial assistance under any circumstance, irrespective of the specific Federal statutes and contractual terms governing particular grants, and without even considering those statutory and contractual terms. The OMB Directive's categorical and sweeping command cannot be squared with the complex statutory regime governing Federal grants and, specifically, the many Federal statutes requiring the Executive to provide grant funding to recipients under particular statutory provisions and formulas.

8

EPA_00049337

*Second,* the OMB Directive is arbitrary and capricious in multiple respects, including that it "entirely fail[s] to consider . . . important aspect[s] of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), namely the significant harms imposed on grant recipients (including Plaintiff States) by an abrupt termination of nearly all Federal funding. There is also a sweeping gulf between the purported basis for the OMB Directive (President Trump's recent executive orders directing agencies to consider terminating programs in a handful of discrete policy areas) and what it actually does, which is to imperil billions of dollars in Federal funding without regard to what the funding supports, the statutory scheme authorizing it, or whether it has any connection to the recent executive orders. The OMB Directive also does not consider any alternatives—for instance, conducting its "review" absent a pause in Federal funds, or pausing only grants and other Federal financial assistance where it has some power to act.

Moreover, by purporting to terminate Federal funds on 24 hours' notice, the OMB Directive effectively renders illusory (1) its direction that funding be halted only "to the extent permissible by law" and (2) its statement that "OMB may grant exceptions allowing Federal agencies to issue new awards or take other actions on a case-by-case basis." The OMB Directive provides no time for Federal agencies either to make supported requests for case-by-case exceptions to the memo's directives or to assess adequately whether halting particular grants would or would not be permissible under law. Even with more time, it is unclear whether it would be possible to assess whether the law permits any funding to be halted in response the President's Executive Orders where the Executive Orders themselves may be contrary to law.

Indeed, the OMB Directive does not identify *any* reasoned explanation for the decision to halt all Federal funding to grant recipients, across the board and indefinitely, much less one that

EPA_00049338

could justify such an extreme and reckless policy. And Defendants are not even attempting to clearly limit the spending "pause" to only some subset of Federal financial assistance as to which they determine that they have lawful authority to order the pause, because the pause is mandated to take effect at 5:00 p.m. on the day after it was issued and actually began even sooner—this morning. Defendants are thus acting with full knowledge that, as to many of the funding disbursements it is pausing indefinitely, the Executive has no lawful authority to hold back the funding, because Congress has tied its hands or because the terms of the grants—which States reviewed and accepted—do not authorize any such pause.

*Third*, implementing the OMB Directive Federal funding freeze will violate separation of powers principles. "The United States Constitution exclusively grants the power of the purse to Congress, not the President," *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018), with the executive branch possessing only such authority in relation to Federal funding that Congress has chosen to give it. Congress has not given the Executive limitless power to "pause" all Federal financial assistance—including funds that Congress has expressly directed to specific recipients and purposes—while the Executive tries to figure out where it might have some authority to renege on its funding commitments, let alone to pause all Federal financial assistance indefinitely.

*Fourth*, even if the Executive had some power to suspend disbursements in some areas affected by the OMB Directive's instruction, it still would not have power to retroactively impose a new term on already agreed upon Federal financial assistance to Plaintiff States—the new term being that the Executive retains a right to pause already-awarded funding midstream, indefinitely, while it decides whether or not it still wants to fund the grant-funded activities. Plaintiff States are entitled to know the terms of the funding agreement *before* they enter into it. Plaintiff States are

10

not currently aware of grant terms that would allow an indefinite, unsubstantiated, across-the-board freeze of all funds—let alone the type of clear terms that would be required to put the States on notice, before they accepted the many Federal grants implicated by the OMB Directive, that these Federal funds could be frozen based solely on the Executive's unilateral whims. And to the extent the OMB Directive is attaching new, retroactive conditions on Federal funding recipients' receipt of Federal funds—or pausing Federal funding so it can decide whether to try to impose such new conditions—it is plainly in violation of the limitations on any spending power it might have.

Plaintiff States are thus highly likely to succeed on their claims that the OMB Directive is arbitrary and capricious and contrary to law, that agencies halting all disbursement of Federal funds pursuant to the OMB Directive are acting *ultra vires*, and that the executive branch—and the President—are violating separation of powers principles.

### A.      The OMB Directive Is Contrary to Law and *Ultra Vires* (Count I)

It is black-letter law that, in the appropriations context, "the President must follow statutory mandates so long as there is appropriated money available." *In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.); *accord, e.g.*, *City & Cnty. of San Francisco*, 897 F.3d at 1232 ("[T]he President is without authority to thwart congressional will by canceling appropriations passed by Congress.").[5] The Executive cannot simply "decline to follow a statutory mandate or prohibition simply because of policy objections." *Aiken Cnty.*, 725 F.3d at 259. But the OMB

---

[5] The OMB Directive constitutes final agency action subject to the APA. Final agency actions "mark the consummation of the agency's decisionmaking process" and are those "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citation and quotation marks omitted). The OMB Directive is a final agency action because it is a final order directing all agencies to immediately "pause all activities related to obligation or disbursement of all Federal financial assistance." OMB Directive, at 2.

EPA_00049340

Directive purports to do just that, instructing agencies to "pause" trillions of dollars in Federal funding that Congress has directed the executive branch to spend—and, in many cases, that the agencies have formally obligated to grant recipients under specific terms—simply because such funds are not, in its view, "align[ed] . . . with the will of the American people as expressed through Presidential priorities." OMB Directive, at 1.

The OMB Directive identifies no legal authority for such an action, and there is none: no Federal law authorizes the President to unilaterally halt all disbursements of all Federal funds to all funding recipients, no matter the authorizing or appropriating statute, the regulatory regime, or the terms and conditions of the grant itself. *See Aiken Cnty.*, 725 F.3d at 261 n.1 (explaining that the executive branch and its officers, including the President, do "not have unilateral authority to refuse to spend" funds that have been appropriated by Congress "for a particular project or program"). To the contrary, when the President wants "to spend less that the full amount appropriated by Congress" he must comport with the specific procedural requirements set forth in the Impoundment Control Act, 2 U.S.C. §§ 681 *et seq*.; *see also Aiken Cnty.*, 725 F.3d at 261 n.1, citing 2 U.S.C. § 683 (requiring budget authority proposed for rescission to be made available for obligation until "Congress has completed action on a rescission bill[.]"). Even a temporary "pause" of budget authority by the OMB requires compliance with the ICA. 2 U.S.C. § 684 (requiring proposed deferrals to be transmitted via a "special message" to Congress).

Indeed, Federal appropriations law is complex and nuanced, and it cannot be squared with the OMB Directive's reckless sweep. Many of the most significant funding streams to the States, for instance, take the form of categorical or "formula" grants, which Congress has instructed the Executive to provide to States on the basis of enumerated statutory factors, such as population or the expenditure of qualifying State funds. *See, e.g., City of Los Angeles v. Barr*, 941 F.3d 931, 934-

12

EPA_00049341

35 (9th Cir. 2019) (describing the statutory factors determining eligibility for specific formula grant); *City of Philadelphia v. Att'y Gen. of United States*, 916 F.3d 276, 280 (3d Cir. 2019) (same). Congress, for instance, has instructed the Department of Education to fund elementary and secondary education in the States by reference to specific formulas that encompass total population and the population of disadvantaged children, among other factors. 20 U.S.C. § 6303; *see* Rebecca R. Skinner, Cong. Rsch. Serv., R47702, *ESEA Title I-A Formulas: A Primer* (2023), available at http://bit.ly/4ha5W52. But the funding statute does not confer authority on the Department (or anyone else) to indefinitely halt elementary and secondary education grants to the States simply because such grants are not "align[ed] . . . with the will of the American people," OMB Directive, at 1, as the OMB Directive instructs it to do.

The same is true of many other Federal funds that Congress has required the Executive to provide to the States (and other grantees), but which the OMB Directive purports to indefinitely suspend. Congress has required the Secretary of Health and Human Services to reimburse States for a fixed portion of their Medicaid expenditures, 42 U.S.C. § 1396b(a) (outlining that the HHS Secretary "shall pay to each State" amount set by statute), an amount totaling over $800 billion annually, U.S. Dep't of Health & Human Servs., Centers for Medicare & Medicaid Servs., *NHE Fact Sheet*, https://bit.ly/42xCy4i (last updated Dec. 18, 2024). But Congress did not authorize the Acting Secretary to indefinitely suspend such payments "simply because of policy objections," *Aiken Cnty.*, 725 F.3d at 259, as the OMB Directive instructs. Likewise, Congress has established a statutory formula by which the Secretary of Transportation is required to distribute Federal highway funds to States, 23 U.S.C. § 104(c), an amount totaling approximately $60 billion annually, U.S. Dep't of Transp., Fed. Highway Admin., *State-by-State Federal Aid Highway Program Apportionments*, available at https://bit.ly/3WBmpXC. But Congress did not authorize

13

EPA_00049342

the Acting Secretary to indefinitely halt the distribution of highway funds to States on the view that such funds do not "advanc[e] Administration priorities," as the OMB Directive so instructs. At bottom, the OMB Directive appears to suggest that the Executive can unilaterally suspend the payment of Federal funds to the States at any time simply by choosing to do so, no matter the authorizing or appropriating statute, the regulatory regime, or the terms and conditions of the grant itself. That is not the law.

### B.      The OMB Directive Is Arbitrary and Capricious (Count II)

Plaintiff States are also highly likely to succeed on their claim that the OMB Directive is arbitrary and capricious in multiple respects.

First, the OMB Directive is arbitrary and capricious on its face because it "entirely fail[s] to consider . . . important aspect[s] of the problem," *State Farm*, 463 U.S. at 43, principally the profound harms worked on the States and their residents by the abrupt halt in Federal funding and the significant reliance interests that States have developed in connection with the Federal funds to which they are entitled by law. It is a basic rule of administrative law that an agency must "pay[] attention to the advantages *and* the disadvantages of [its] decisions." *Michigan v. EPA*, 576 U.S. 743, 753 (2015). But the OMB Directive reflects no consideration of the extraordinary harm that its policy will impose on the States and their residents. The OMB Directive threatens Plaintiff States' ability to perform these essential activities—and it does so without any evidence that it considered the enormous costs of its abrupt policy change. Because Defendants "should have considered those matters but did not," their "failure was arbitrary and capricious in violation of the APA." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 33 (2020).

Likewise, the OMB Directive does not reflect any consideration of the "serious reliance interests" that Plaintiff States and their residents have developed on the Federal funds to which they were legally entitled, and the consequences of withdrawing those funds with little or no notice.

14

EPA_00049343

*Id.* at 30 (internal quotation marks and citation omitted). Again, all Plaintiff States rely on Federal funds to provide essential services to their residents, ranging from primary and secondary education to healthcare to disaster relief. But the OMB Directive's abrupt about-face—purporting to terminate access to Federal funds on 24 hours' notice—not only deprives Plaintiff States of those funds and threatens their ability to provide those services, it also effectively prevents Plaintiff States from making effective plans for the termination or cessation of Federal funding and the replacement of Federally funded programs with their State equivalents. The OMB Directive does not even acknowledge these interests, much less explain why they might warrant (in Defendants' view) less importance than whatever factors motivated the policy set out in the OMB Directive. "Making that difficult decision was the agency's job, but the agency failed to do it." *Id.* at 32.

The OMB Directive also does not reflect any attempt at all to consider alternative approaches to the policy it sets out. *See California v. EPA*, 72 F.4th 308, 317 (D.C. Cir. 2023) (noting that an agency action may be "arbitrary or capricious" where it "ignore[s] an obvious alternative"). The OMB Directive asserts that an across-the-board "pause" in Federal disbursements is needed to permit the Executive to "review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities." OMB Directive, at 2. But it does not explain why such a dramatic step—the effective rescission of billions of dollars in obligated funds—is necessary to permit the incoming administration to "review" Federal spending for compliance with Federal law and, to the extent permissible, the administration's policy priorities. And the OMB Directive does not reflect any effort to consider the obvious alternatives to its sweeping policy—for instance, conducting its "review" absent a pause in Federal funds, or pausing only grants and other Federal financial assistance where it has some power to act. The failure to consider those alternatives, too, is arbitrary and capricious.

15

EPA_00049344

Indeed, the OMB Directive fails to articulate *any* plausible rationale that would support Defendants' extreme decision. It is "a fundamental requirement of administrative law . . . that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (internal citation and quotation marks omitted). "[C]onclusory statements will not do; an agency's statement must be one of *reasoning*." *Id.* (internal citation and quotation marks omitted); *see also Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (an agency must "articulate[] a satisfactory explanation for [its] decision" (internal citation and quotation marks omitted)). Here, the OMB Directive sets forth no reasoning sufficient to justify its extraordinary policy shift. It states that Federal funds "should be dedicated to advancing Administration priorities," OMB Directive, at 1, and identifies a range of projects that it deems contrary to the policy priorities of the new administration, *see id.* (describing "Marxist equity, transgenderism and green new deal social engineering policies"), but it does not explain why—even presuming Defendants had authority to terminate Federal funding that they determined did not comply with their policy priorities—an immediate, across-the-board funding freeze, one untethered to Federal statute, regulation, or contract term, was the appropriate means for pursuing that end. Although the OMB Directive explains that the "temporary pause will provide the Administration time to review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities," OMB Directive, at 2, it does not explain why a "pause" on funding is necessary to provide Defendants with time to review Federal funding—nor, for that matter, how a sweeping and categorical "pause" in Federal disbursements could be "consistent with the law," *id.*, in the first place. Plaintiff States are likely to show that the OMB Directive is arbitrary and capricious.

EPA_00049345

## C.     The OMB Directive is Unconstitutional (Count III and IV)

Finally, even if the Executive had some statutory basis for the power it seeks to assert, that power would violate bedrock separation of powers principles, the Spending Clause, and the Tenth Amendment.

The Constitution "exclusively grants the power of the purse to Congress, not the President." *City & Cnty. of San Francisco*, 897 F.3d at 1231. By contrast, there is "no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998). The President can influence the legislative process in some smaller ways—the President "shall from time to time give to the Congress Information on the State of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient . . . ." U.S. Const. art. II, § 3. Further, "after a bill has passed both Houses of Congress, but 'before it becomes a Law,' it must be presented to the President." *Clinton*, 524 U.S. at 438-39 (quoting U.S. Const. art. I, § 7, cl. 2). Ultimately, however, under "the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952). "The Constitution limits his functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad." *Id.*

Through the OMB Directive, the Executive is claiming a breathtaking power to suspend all Federal grant disbursements and obligations regardless of the specific statutes, regulations, and terms, which govern grants—especially formula grants. Congress is the branch of government that has the authority to modify the statutory authorization of specific streams of funding, not the Executive.

To the extent the OMB Directive purports to impose new funding conditions on the States, it likewise also violates the Tenth Amendment and the Spending Clause. If the Federal government

17

EPA_00049346

"desires to condition the States' receipt of federal funds, it 'must do so unambiguously.'" *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). But the OMB Directive appears to announce—with less than 24 hours' notice—a sweeping policy freezing disbursement of all Federal funds "that may be implicated by" seven executive orders. OMB Directive, at 2. That policy shift fails to provide Plaintiff States with the "clear notice" that they are entitled to under *Pennhurst*. 451 U.S. at 25. And, because the purpose and effect of the policy is to place new conditions on funds already obligated to specific States for specific purposes, it violates the basic rule that the Federal government cannot "surprise[] [S]tates with 'post acceptance or "retroactive" conditions.'" *City of Los Angeles*, 929 F.3d at 1174-75 (quoting *Pennhurst*, 451 U.S. at 25); *accord Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 584 (2012). The OMB Directive is thus not only contrary to statute, it also violates basic constitutional principles, including the separation of powers, the Spending Clause, and the Tenth Amendment.

## III.    Plaintiff States Will Be Irreparably Harmed Absent a Temporary Restraining Order.

Plaintiff States rely on Federal funds to provide essential services for their residents every day—services that Congress specifically contemplated and authorized such funds to support. State health systems, for instance, rely on Federal funding to support hospitals, community health centers, and facilities for children and the elderly. Compl. 78, 86-87, 90. States rely on disaster funds from FEMA to rebuild homes and bridges—including, most recently, to help California's residents recover from devastating fires estimated to have caused over $150 billion in economic losses. *Id*. ¶ 80. State education systems, too, rely on formula grants from Federal agencies to improve teaching and learning in high-poverty schools. *Id*. ¶¶ 84-85. Imperiling this funding even for a temporary period is unquestionable irreparable harm.  The OMB Directive's breadth justifies

EPA_00049347

equally broad temporary relief—it purports to pause enormous swathes of Federal funding, sowing immediate confusion and chaos that necessitates temporary relief halting its implementation.

There has apparently been a third document circulated by OMB attempting to clarify that the pause is not "across-the-board," and does not impact funding like Medicaid. Regardless of this attempt at clarification, the portals for processing Medicaid Disbursement were inoperable across numerous of Plaintiff States for hours. The system for drawing down Head Start and the Child Care Development Block Grant Fund were also down for some states. Plaintiff States became aware of this document via X (formerly Twitter). This directive does not describe how particular grant programs are treated, and the pausing continues as to nearly all Federal funding. This directive suggests that in some circumstances, a pause "could be a day," but it does not provide an end date, and the process required by the OMB Directive, including analysis and reports by agencies demonstrates that delays is more likely to be weeks or months, with no way of determining the actual length of time.

## IV. The Public Interest and the Balance of the Equities Strongly Favor Entry of a Temporary Restraining Order.

When the government is a party, as it is here, "the final two factors in the temporary restraining order analysis—the balance of the equities and the public interest—merge." *Jones v. Wolf*, 467 F. Supp. 3d 74, 93-94 (W.D.N.Y. 2020) (citing *Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018)). Here, both factors strongly favor granting Plaintiff States' application for a temporary restraining order.

As an initial matter, Plaintiff States have established both an overwhelming likelihood of prevailing on the merits of their challenge to the OMB Directive and grave, irreparable harm to their residents in the absence of an immediate injunction. Plaintiff States' "extremely high likelihood of success on the merits is a strong indicator that a preliminary injunction would serve

19

the public interest." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also Saget v. Trump*, 375 F. Supp. 3d 280, 377 (E.D.N.Y. 2019) ("Because Plaintiffs have shown both a likelihood of success on the merits and irreparable harm, it is also likely the public interest supports preliminary relief." (citing *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017)).

Moreover, "there is a substantial public interest 'in having governmental agencies abide by the Federal laws that govern their existence and operations.'" *League of Women Voters*, 838 F.3d at 12 (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). Conversely, courts routinely observe that "there is generally no public interest in the perpetuation of unlawful agency action." *Planned Parenthood of N.Y.C.*, 337 F. Supp. 3d at 343 (collecting cases) (internal quotation marks, citations, and alterations omitted). Here, as Plaintiff States have shown, the OMB Directive transgresses both the APA and several constitutional limitations. There is, therefore, a strong public interest in curtailing OMB's unlawful conduct and requiring the executive branch to comply with basic constitutional, statutory, and procedural requirements, as well as the terms of the agreements into which they entered. Put simply, the public has a strong interest in the Federal government playing by the rules. *See, e.g.*, *Deferio v. City of Syracuse*, 193 F. Supp. 3d 119, 131 (N.D.N.Y. 2016) ("[I]t is decidedly against the public interest to abide the continued enforcement of an unconstitutional policy or law.").

The public also has strong reliance interests in preserving the continuity of existing Federal grant funding. Plaintiff States have detailed the myriad harms they and their residents will confront if the OMB Directive goes into effect. *See* Hoffman Aff. at ¶¶ 3-31. To take one example, Plaintiff States' health departments receive billions of dollars in essential Federal grant funding that may be "paused" as soon as this evening. The absence of these funds will have immediate and

EPA_00049349

dangerous consequences. *See,* Hoffman Aff. at ¶¶ 3-31. Courts have little trouble concluding that the public "benefit[s] from ensuring public health and safety." *Jones,* 467 F. Supp. 3d at 94; *see also Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 61 (D.D.C. 2020) ("There is clearly a robust public interest in safeguarding prompt access to health care.").

Likewise, Plaintiff States receive billions of dollars in Federal grants for critical public services that ensure access to education, promote clean air and water, protect public safety, fight forest fires, and support the health of infants—to name just a handful of additional examples. The interruptions in Federal funding that are likely to result from the OMB Directive will impair all of these substantial interests. *See, e.g.*, *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 651 (2022) ("[T]he State has a strong sovereign interest in ensuring public safety and criminal justice within its territory."); *Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1180-81 (9th Cir. 2011) (noting that state "clearly has an especially powerful interest in controlling the harmful effects of air pollution").

On the other end of the scale, the Federal government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). Since the OMB Directive is unlawful, Defendants have no cognizable interest in its enforcement.

The OMB Directive is a blunt effort to effectuate vague policy changes that the Executive does not have authority to unilaterally impose, and it does not reflect any particularly compelling public interest. To the extent that Defendants assert that existing Federal grants constitute a "waste of taxpayer dollars" attributable to "Marxist equity, transgenderism, and green new deal social

EPA_00049350

engineering policies," OMB Directive, at 1, "those harms are insufficiently grave to overcome the much more substantial countervailing harms" to Plaintiff States, *League of Women Voters*, 838 F.3d at 13. And to the extent the OMB Directive purports to "support hardworking American families," OMB Directive, at 2, Plaintiff States have demonstrated that implementing the OMB Directive will instead irreparably harm a wide swath of Americans who benefit from programs that receive Federal grant funding. In short, the public interest and the equities are unambiguous. The OMB Directive is unlawful and there is no public interest in its enforcement. *See Planned Parenthood of N.Y.C.*, 337 F. Supp. 3d at 343. A temporary restraining order will protect a vital source of funding for core public programs.

## CONCLUSION

"[P]articularly when so much is at stake, [] 'the Government should turn square corners in dealing with the people.'" *Regents of the Univ. of Cal.*, 591 U.S. at 24 (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229 (1961) (Black, J., dissenting)). Here, the executive branch of the Federal government has overstepped the bounds of its authority through an unlawful, undemocratic effort to withhold billions in Federal grant, loan, or other financial assistance program funds, to the great detriment of the Plaintiff States and their millions of residents. For these reasons, Plaintiff States respectfully request a temporary restraining order as this case proceeds.

EPA_00049351

Respectfully submitted,

**LETITIA JAMES**
Attorney General of the State of New York

By:  /s Rabia Muqaddam
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Molly Thomas-Jensen*
Zoe Levine*
Colleen K. Faherty*
28 Liberty Street
New York, NY 10005
(212) 416-8883

**ROB BONTA**
Attorney General of the State of California

MICHAEL L. NEWMAN*
THOMAS PATTERSON*
Senior Assistant Attorneys General
CHRISTINE CHUANG*
LARA HADDAD*
Supervising Deputy Attorneys General

/s/ Laura L. Faer
LAURA L. Faer
Supervising Deputy Attorney General
NICHOLAS GREEN*
CARLY MUNSON*
KENNETH SUGARMAN*
CHRISTOPHER KISSEL*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
laura.faer@doj.ca.gov

**KWAME RAOUL**
ATTORNEY GENERAL STATE OF ILLINOIS

By: /s/ Alex Hemmer
Alex Hemmer*

23

EPA_00049352

Deputy Solicitor General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526
alex.hemmer@ilag.gov

*Counsel for the State of Illinois*


**PETER F. NERONHA**
ATTORNEY GENERAL OF RHODE ISLAND

/s/ Kathryn M. Sabatini
Kathryn M. Sabatini (RI Bar No. 8486)
*Civil Division Chief*
*Special Assistant Attorney General*

/s/ Sarah W. Rice
Sarah W. Rice (R.I. Bar No. 10465)
*Deputy Chief, Public Protection Bureau*
*Assistant Attorney General*
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
srice@riag.ri.gov

*Counsel for the State of Rhode Island*


**Matthew J. Platkin**
Attorney General of New Jersey

*/s/ Angela Cai*
Angela Cai*
*Executive Assistant Attorney General*

Jeremy M. Feigenbaum*
*Solicitor General*

Shankar Duraiswamy*
*Deputy Solicitor General*

Office of the Attorney General
25 Market Street
Trenton, NJ 08625

24

EPA_00049353

609) 376-3377
Angela.Cai@njoag.gov

*Counsel for the State of New Jersey*

**Andrea Joy Campbell**
Attorney General of Massachusetts

*/s/ Katherine Dirks*
Katherine Dirks *
Deputy Chief, Government Bureau
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

**KRIS MAYES**
*Attorney General of Arizona*

*s/ Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-3333
Joshua.Bendor@azag.gov
ACL@azag.gov

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Shannon Stevenson**
Shannon Stevenson, CO Reg. No. 35542
Solicitor General
Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6749

25

EPA_00049354

Shannon.Stevenson@coag.gov
Attorney for State of Colorado

STATE OF CONNECTICUT
**WILLIAM TONG**
ATTORNEY GENERAL

By: */s/ Michael K. Skold*
      Michael K. Skold*
      Solicitor General
      165 Capitol Ave
      Hartford, CT 06106
      (860) 808-5020
      Michael.skold@ct.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Ian R. Liston*
Ian R. Liston*
Director of Impact Litigation
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

/s/ Andrew C. Mendrala___
ANDREW C. MENDRALA*
Assistant Attorney General

Public Advocacy Division
Office of the Attorney General for the D.C.
Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.mendrala@dc.gov
Counsel for the District of Columbia

26

EPA_00049355

**ANNE E. LOPEZ**
ATTORNEY GENERAL OF HAWAIʻI

*/s/Kalikoʻonālani D. Fernandes*
David D. Day*
*Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes*
*Solicitor General*
Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov


**AARON M. FREY**
Attorney General for
the State of Maine

/s/ Jason Anton
      JASON ANTON*
      Assistant Attorney General
      Office of the Attorney General
       6 State House Station
      Augusta, ME  04333-0006
Tel.:  207-626-8800
Fax:  207-287-3145
      jason.anton@maine.gov


**ANTHONY G. BROWN**
ATTORNEY GENERAL OF MARYLAND

/s/ Adam D. Kirschner
Adam D. Kirschner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
akirschner@oag.state.md.us
410-576-6424

*Counsel for the State of Maryland*

27

EPA_00049356

**DANA NESSEL**
Attorney General of Michigan

By: /s/ Linus Banghart-Linn
Linus Banghart-Linn*
Chief Legal Counsel
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov

*Attorneys for the State of Michigan*


**KEITH ELLISON**
Attorney General of Minnesota

By /s/ **Liz Kramer***
Solicitor General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1010
liz.kramer@ag.state.mn.us

Attorneys for State of Minnesota


**AARON D. FORD**
ATTORNEY GENERAL OF NEVADA
*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov
Counsel for the State of Nevada

EPA_00049357

**JEFF JACKSON**
Attorney General of North Carolina

LAURA HOWARD*
Chief Deputy Attorney General

By /s/ Daniel P. Mosteller*
Associate Deputy Attorney General
North Carolina Department of Justice
PO Box 629
      Raleigh, NC 27602
      919-716-6026
dmosteller@ncdoj.gov

*Attorneys for State of North Carolina*


STATE OF NEW MEXICO
**RAÚL TORREZ**
ATTORNEY GENERAL

/s/ Anjana Samant
      Anjana Samant*
      Deputy Counsel for Impact Litigation
      New Mexico Department of Justice
      P.O. Drawer 1508
      Santa Fe, NM 87504-1508
      (505) 490-4060
      asamant@nmdoj.gov



**DAN RAYFIELD**
Attorney General of Oregon

CHRISTINA L. BEATTY-WALTERS*
      Senior Assistant Attorney General
      Trial Attorney
      Tel (971) 673-1880
      Fax (971) 673-5000
      Tina.BeattyWalters@doj.oregon.gov
      Of Attorneys for Defendants

EPA_00049358

**CHARITY R. CLARK**
Attorney General of Vermont

By: /s/ Jonathan T. Rose
      Jonathan T. Rose*
      Solicitor General
      109 State Street
      Montpelier, VT 05609
      (802)828-3171
Jonathan.rose@vermont.gov


**NICHOLAS W. BROWN**
Attorney General of Washington

*s/ Andrew Hughes*
ANDREW HUGHES*
LEAH BROWN*
Assistant Attorneys General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
leah.brown@atg.wa.gov.

*Attorneys for Plaintiff State of Washington*


**JOSHUA L. KAUL**
Attorney General of Wisconsin

/s/ Aaron J. Bibb

Aaron J. Bibb
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
bibbaj@doj.state.wi.us

30

EPA_00049359

Counsel for the State of Wisconsin

EPA_00049360

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

STATE OF NEW YORK; STATE OF
CALIFORNIA; STATE OF ILLINOIS; STATE OF
RHODE ISLAND; STATE OF NEW JERSEY;
COMMONWEALTH OF MASSACHUSETTS;
STATE OF ARIZONA; STATE OF COLORADO;
STATE OF CONNECTICUT; STATE OF
DELAWARE; THE DISTRICT OF COLUMBIA;
STATE OF HAWAI'I; STATE OF MAINE; STATE
OF MARYLAND; STATE OF MICHIGAN; STATE
OF MINNESOTA; STATE OF NEVADA; STATE
OF NORTH CAROLINA; STATE OF NEW
MEXICO; STATE OF OREGON; STATE OF
VERMONT STATE OF WASHINGTON; STATE
OF WISCONSIN,

     Plaintiffs,

v.

DONALD TRUMP, IN HIS OFFICIAL CAPACITY
AS PRESIDENT OF THE UNITED STATES; U.S.
OFFICE OF MANAGEMENT AND BUDGET;
MATTHEW J. VAETH, IN HIS OFFICIAL
CAPACITY AS ACTING DIRECTOR OF THE
U.S. OFFICE OF MANAGEMENT AND
BUDGET; U.S. DEPARTMENT OF THE
TREASURY; SCOTT BESSENT, IN HIS
OFFICIAL CAPACITY AS SECRETARY OF THE
TREASURY; PATRICIA COLLINS IN HER
OFFICIAL CAPACITY AS TREASURER OF THE
U.S.; U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES; DOROTHY A. FINK, M.D.,
IN HER OFFICIAL CAPACITY AS ACTING
SECRETARY OF HEALTH AND HUMAN
SERVICES; U.S. DEPARTMENT OF
EDUCATION; DENISE CARTER, IN HER
OFFICIAL CAPACITY AS ACTING SECRETARY
OF EDUCATION; U.S. FEDERAL EMERGENCY
MANAGEMENT AGENCY; CAMERON
HAMILTON, IN HIS OFFICIAL CAPACITY AS
ACTING ADMINISTRATOR OF THE U.S.
FEDERAL EMERGENCY MANAGEMENT

C.A. No. 1:25-cv-00039-JJM-PAS

1

EPA_00049361

AGENCY; U.S. DEPARTMENT OF
TRANSPORTATION;
JUDITH KALETA, IN HER OFFICIAL
CAPACITY AS ACTING SECRETARY OF
TRANSPORTATION;
U.S. DEPARTMENT OF LABOR; VINCE
MICONE, IN HIS OFFICIAL CAPACITY AS
ACTING SECRETARY OF LABOR; U.S.
DEPARTMENT OF ENERGY; INGRID KOLB, IN
HER OFFICIAL CAPACITY AS ACTING
SECRETARY OF THE U.S. DEPARTMENT OF
ENERGY; U.S. ENVIRONMENTAL
PROTECTION AGENCY; JAMES PAYNE, IN HIS
OFFICIAL CAPACITY AS ACTING
ADMINISTRATOR OF THE U.S.
ENVIRONMENTAL PROTECTION AGENCY;
U.S. DEPARTMENT OF HOMELAND
SECURITY; KRISTI NOEM, IN HER CAPACITY
AS SECRETARY OF THE U.S. DEPARTMENT
OF HOMELAND SECURITY; U.S.
DEPARTMENT OF JUSTICE; JAMES R.
McHENRY III, IN HIS OFFICIAL CAPACITY AS
ACTING ATTORNEY GENERAL OF THE U.S.
DEPARTMENT OF JUSTICE; THE NATIONAL
SCIENCE FOUNDATION and DR.
SETHURAMAN PANCHANATHAN, IN HIS
CAPACITY AS DIRECTOR OF THE NATIONAL
SCIENCE FOUNDATION,

    Defendants.

## [PROPOSED] TEMPORARY RESTRAINING ORDER

To maintain the status quo until the Court may rule on Plaintiffs' forthcoming motion for

preliminary injunction, it is hereby ORDERED that a TEMPORARY RESTRAINING ORDER

is entered in this case until this Court rules upon Plaintiffs' motion for a preliminary injunction,

which shall be filed on a date ordered by the Court.

During the pendency of the Temporary Restraining Order, Defendants shall refrain from

pausing, freezing, impeding, blocking, canceling, or terminating Defendants' compliance with

EPA_00049362

awards and obligations to provide federal financial assistance, and Defendants shall not impede Plaintiffs' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms.

To the extent Defendants engage in the "identif[ication] and review" of federal financial assistance programs, as identified in the OMB Directive as referenced in the Complaint, such exercise shall not effect a pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms.

Defendants shall also be restrained and prohibited from reissuing, adopting, implementing, or otherwise giving effect to the OMB Directive under any other name or title or through any other Defendants (or agency supervised, administered, or controlled by any Defendant), such as the continued implementation identified by the White House Press Secretary statement of January 29, 2025.

Defendants shall provide written notice of this order to all Defendants and agencies and their employees, contractors, and grantees within two hours of the issuance of this Order.

Defendants shall comply with all notice and procedural requirements set forth in the award, agreement, or other instrument relating to decisions to stop, delay, or otherwise withhold federal financial assistance programs.

The TRO shall be in effect for 14 days from the date of this Order, and may be extended for an additional 14 days for good cause shown.

It is so ordered.

3

EPA_00049363

By the Court:

_____          _____
Dated                                          McConnell, Chief Judge

4

EPA_00049364

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:25-cv-39 (JJM) |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*, | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED
TEMPORARY RESTRAINING ORDER**

Defendants respectfully submit this response to Plaintiffs' proposed temporary restraining order. No relief is appropriate in this case, for the numerous reasons discussed below. To the extent relief is awarded, however, it should comply with several further limits.

**I.     No Relief is Appropriate for Numerous Reasons**

The President of the United States, along with the chief agency responsible for overseeing expenditures—the Office of Management and Budget (OMB)—plainly have authority to direct agencies to fully implement the President's agenda, consistent with each individual agency's underlying statutory authorities. That is what President Trump has done in several Executive Orders including directions on federal spending, and that is what OMB did in the now-withdrawn Memorandum that is the focus of Plaintiffs' claims in this case. *See* OMB Mem. M-25-13, *Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs*

EPA_00049365

(Jan. 27, 2025) ("OMB Memo").  The President's authority to direct subordinate agencies to implement his agenda, subject to those agencies' own statutory authorities, is well-established.  *See Bldg. & Const. Trades Dep't v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) ("[T]he President's power necessarily encompasses 'general administrative control of those executing the laws,' throughout the Executive Branch of government, of which he is the head." (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926), citation omitted)); *see also, e.g.*, *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012) ("[A]s an agency under the direction of the executive branch, it must implement the President's policy directives to the extent permitted by law."); *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981) ("The authority of the President to control and supervise executive policymaking is derived from the Constitution.").

Notwithstanding this clear authority, Plaintiffs here request sweeping relief, on an emergency basis, that would effectively disable the President and OMB from providing these types of instructions to agencies.  There is no valid basis for awarding such relief, and Plaintiffs' motion for a temporary restraining order should be denied.

**First**, this Court lacks jurisdiction.  Plaintiffs' claims in this case are directed solely against the OMB Memo, which has now been withdrawn thereby rendering their claims moot.  *See Harris v. Univ. of Massachusetts Lowell,* 43 F.4th 187, 192 (1st Cir. 2022) ("claims for injunctive relief are inescapably moot" when a "polic[y] no longer appl[ies]").  Whatever challenges they may wish to bring against other

2