consider, [or] entirely failed to consider an important aspect of the problem . . . ." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Courts "must ensure that the agency has examined the relevant data and articulated a satisfactory explanation for its action," *Def's of Wildlife v. U.S. Dep't of Interior*, 931 F. 3d 339, 345 (4th Cir. 2019) (internal quotation omitted), "including a rational connection between the facts found and the choice made." *Dep't of Commerce v. New York*, 588 U.S. 752, 773 (2019) (quoting *State Farm*, 463 U.S. at 43).

257. When an agency is not writing on a "blank slate" but is "changing [its] position," the agency must "provide a more detailed justification than what would suffice for a new policy" if, "for example, . . . its prior policy has engendered serious reliance interests that must be taken into account." *F. C. C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

258. When changing policy, agencies must "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy interests." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 33(2020). "[W]hen an agency rescinds a prior policy its reasoned analysis must [also] consider the alternatives that are within the ambit of the existing policy." *Id.* at 30 (citation and quotations omitted). At bottom, an agency must give "good reasons for the new policy," *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 223 (2016) (citation and quotations omitted), including "a reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Fox*, 556 U.S. at 516.

259. Judicial review under the APA is limited to agency actions made reviewable by statute and "final agency action." 5 U.S.C. § 704. Agency action, including agency memoranda, are "final agency action" when they "'mark[]' the 'consummation' of the agency's decisionmaking

process' and result[] in 'rights and obligations being determined. '" *Biden v. Texas*, 597 U.S. 785, 788 (2022) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (alterations omitted)).

260. In sum, "[t]he role of the reviewing court under the APA is . . . .  fixing the boundaries of the delegated authority, and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Loper Bright Enters.*, 603 U.S. at 395 (citation and quotations omitted).

## VI.    Nonstatutory Review Claims and *Ultra Vires* Actions

261. Separate from the APA, "a plaintiff can obtain injunctive relief against an individual officer or agent of the United States in his official capacity for acts beyond his statutory or constitutional authority.'" *Strickland v. United States*, 32 F. 4th 311, 363 (4th Cir. 2022).

262. Such "nonstatutory review" or "*ultra vires*" claims arise when federal officials have acted "beyond the scope of their powers and/or in an unconstitutional manner." *Id.* at 366.

263. Sovereign immunity does not shield federal officials from such claims because actions beyond statutory or constitutional authority "are considered individual and not sovereign actions." *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949)).

### CLAIMS FOR RELIEF

**—COUNT I—**
**THE ENERGY EO, EQUITY EO, DOGE EO,**
**AND PROGRAM FREEZING ACTIONS**
**VIOLATE THE SEPARATION OF POWERS**
**NONSTATUTORY REVIEW AND ULTRA VIRES ACTION**
**(All Plaintiffs[27])**

---

[27] Baltimore joins this claim only as to the Energy EO, Cost Efficiency EO, agency actions implementing those two EOs, and agency actions based on EPA's and USDA's independent authorities. *See supra* footnote 1.

EPA_00051016

264. The allegations in the preceding paragraphs are incorporated herein by reference.

265. "[W]henever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins v. Yellen*, 594 U.S. 220, 245 (2021).

266. The U.S. Constitution grants Congress, not the President, exclusive power over the nation's purse and the power to legislate. U.S. Const. art. I, § 9, cl. 7; art. I, § 8, cl. 1; art. I, § 1.

267. When Congress appropriates funds for a specified purpose, the President has a duty to spend those funds on the terms set by Congress. *See* U.S. Const. art. II, § 3 (Take Care Clause).

268. The President has no constitutional power to freeze funds appropriated by Congress, particularly when the freeze is based on Presidential policies rather than Congress's spending directives. *E.g.*, *City & Cnty. of S. F.*, 897 F. 3d at 1231–35.

269. Congress has enacted the federal grant programs at issue in this case under the IRA and the IIJA and has appropriated over $1 trillion in funding for those programs to serve enumerated purposes specified in these statutory programs.

270. Consistent with their constitutional and statutory duties, federal agencies obligated these funds to specific entities via a rigorous, regulated, and competitive grantmaking process.

271. Defendants are constitutionally required to carry out these congressionally mandated programs, and to obligate and distribute the funds that Congress appropriated for these programs.

272. But in the Energy EO, Equity EO, and DOGE EO President Trump directed that federal funding be paused or terminated if it was inconsistent with his own policies.

273. The President's Executive Orders, and the Program Freezing Actions implementing those Orders, directly contravene Congress's directives in the IRA, IIJA, and other statutes to carry out and fund the statutory programs at issue in this case. *See, e.g.*, 42 U.S.C. § 7438(b)(1) (IRA "Environmental and Climate Justice Block Grants" program, directing that EPA "shall"

71

EPA_00051017

award grants for certain activities "that benefit disadvantaged communities"); IRA, § 22007, 136 Stat. at 2022 (directing that USDA "shall" award grants for "USDA Assistance and Support for Underserved Farmers, Ranchers [and] Foresters" and those "determined to have experienced discrimination . . . in Department of Agriculture farm lending programs"); *see also* 33 U.S.C. § 1302f(c)(4)(A)(ii) (IIJA, requiring that EPA "shall" give priority to grant applications submitted on behalf of "a small, rural, or disadvantaged community").

274. None of the Executive Orders nor the Program Freezing Actions point to any statutory, regulatory, or constitutional authority to indefinitely freeze congressionally appropriated funds based on the President's policy preferences.

275. All the relevant constitutional powers here—the power to appropriate, spend, and legislate—belong solely to Congress. The President has no constitutional power to indefinitely freeze funds appropriated by Congress, much less based on policies that conflict with what Congress specified.

276. The Energy EO, Equity EO, DOGE EO, and Program Freezing Actions—including the First OMB Memo, Second OMB Memo, EPA Memo, USDA Directive, USDOT memo, EPA Notice of DOGE Approval Requirement, EPA Executive Order Compliance Review Requirement, and any other agency action to freeze or block IRA, IIJA, or "equity-related" funding based on President Trump's priorities—usurp Congress's spending power, *see* U.S. Const. art. I, § 8, cl. 1 (Spending Clause), art. I, § 9, cl. 7 (Appropriations Clause), and Congress's power to legislate, *see* U.S. Const. art. I, § 1 (Legislative Power), and thus violate the separation of powers.

EPA_00051018

—COUNT II—
**THE ENERGY EO, EQUITY EO, DOGE EO,**
**AND PROGRAM FREEZING ACTIONS**
**VIOLATE THE PRESENTMENT CLAUSES**
**NONSTATUTORY REVIEW AND ULTRA VIRES ACTION**
**(All Plaintiffs[28])**

277. The allegations in the preceding paragraphs are incorporated herein by reference.

278. The Presentment Clauses limit the President's role in lawmaking to vetoing an "entire bill . . . *before* the bill becomes law." *Clinton*, 524 U.S. at 439. "Presidential action that either repeals or amends *parts* of *duly enacted statutes*" violates the Presentment Clauses. *See id.* (emphasis added).

279. The Energy EO, Equity EO, and DOGE EO violate the Presentment Clauses to the extent they seek to "terminat[e]" or "modify" parts of the IRA or IIJA and other relevant statutes after they were passed by Congress and signed by the President. *See* Energy EO § 7; Equity EO § 2(b); DOGE EO § 3(b).

280. In purpose and in effect, the Energy EO, Equity EO, and DOGE EO amend the spending provisions of the IRA and the IIJA and other statutes, indefinitely suspending funding appropriated under these statutes, and unlawfully terminating the programs mandated by Congress, that the Executive Branch deems incompatible with *presidential* policies wholly different than *Congress's* directives for the funds and programs. *See supra* ¶¶ 168–223.

281. Like the "line item veto" in *Clinton*, the Energy EO, Equity EO, and DOGE EO "cancel" Congress's spending priorities expressed in duly enacted statutes and replace them with

---

[28] Baltimore joins this claim only as to the Energy EO, Cost Efficiency EO, agency actions implementing those two EOs, and agency actions based on EPA's and USDA's independent authorities. *See supra* footnote 1.

73

those of the President.  524 U.S. at 436.  The President lacks power to amend enacted law, as do his agencies.

282. By cancelling Congress's spending directives and replacing them with the President's policy preference to withhold appropriated funds, the Energy EO, Equity EO, and DOGE EO seek to repeal and amend the IRA and the IIJA in violation of the Presentment Clauses.  *See* U.S. Const. Art. I, § 7, cl. 2–3.

283. For these same reasons, the Program Freezing Actions—including the First OMB Memo, Second OMB Memo, EPA Memo, USDA Directive, EPA Notice of DOGE Approval Requirement, EPA Executive Order Compliance Review Requirement, and any other agency action implementing the Executive Orders to freeze or block IRA and the IIJA or "equity-related" funding based on President Trump's priorities—also violate the Presentment Clauses.

**—COUNT III—**
**THE PROGRAM FREEZING ACTIONS ARE**
**ARBITRARY AND CAPRICIOUS**
**IN VIOLATION OF THE APA**
**(All Plaintiffs[29])**

284. The allegations of the preceding paragraphs are incorporated herein by reference.

285. The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

286. The Program Freezing Actions, including the First OMB Memo, Second OMB Memo, EPA Memo, USDA Directive, USDOT memo, EPA Notice of DOGE Approval Requirement, the

---

[29] Baltimore joins this claim only as to agency actions implementing the Energy EO and Cost Efficiency EO, and agency actions based on EPA's and USDA's independent authorities. *See supra* footnote 1.

74

EPA Executive Order Compliance Review Requirement, agency actions to block or prevent Plaintiffs from accessing the online portals needed to withdraw their grant funds, and other agency actions that prevent Plaintiffs from accessing their awarded grant funds, are arbitrary and capricious for multiple reasons.

287. First, these agency actions indefinitely froze over $1 trillion appropriated under the IRA and the IIJA without consideration of the "serious reliance interests" of recipients, including Plaintiffs, on those funds. *Fox Television Stations*, 556 U.S. at 515. "Defendants cut the fuel supply to a vast, complicated, nationwide machine—seemingly without any consideration for the consequences of that decision. To say that OMB 'failed to consider an important aspect of the problem' would be putting it mildly." *Nat'l Council of Nonprofits*, 2025 WL 368852, at *11.

288. Second, these agency actions rely "on factors which Congress has not intended [them] to consider." *State Farm*, 463 U.S. at 43. Specifically, these actions indefinitely freeze funds based on the *President's* policies, contrary to Congress's specific directives and purposes for appropriating funds in the IRA and the IIJA and other federal statutes.

289. Third, these agency actions indefinitely froze *all* IRA and IIJA funding, as well as funding under other federal statutes without a consideration of alternative options. *See Regents of Univ. of Cal.*, 591 U.S. at 30 ("[W]hen an agency rescinds a prior policy its reasoned analysis must [also] consider the alternatives that are within the ambit of the existing policy.").

290. For example, Defendants could have engaged in a review of grant funding and how it relates to President Trump's priorities *without* freezing the funds.

291. The unexplained freeze of all IRA and IIJA funds and freezing of funds under various other federal statutes epitomizes agency action by "whim and caprice of the bureaucracy," *N. C. Growers' Ass'n*, 702 F. 3d at 772 (Wilkinson, J., concurring).

75

EPA_00051021

292. The Program Freezing Actions must be vacated as arbitrary and capricious under the APA.  5 U.S.C. § 706(2)(A).

## —COUNT IV—
## THE PROGRAM FREEZING ACTIONS
## ARE NOT IN ACCORDANCE WITH LAW,
## IN EXCESS OF STATUTORY AUTHORITY, AND
## WITHOUT OBSERVANCE OF PROCEDURE REQUIRED BY LAW
## IN VIOLATION OF THE APA
### (All Plaintiffs[30])

293. The allegations of the preceding paragraphs are incorporated herein by reference.

294. The APA requires courts to hold unlawful and set aside agency actions "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations," "not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)–(D).

295. "Courts"—not the Executive— "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters.*, 603 U.S. at 412. The APA reflects the judiciary's constitutional duty "to say what the law is." *Marbury*, 5 U.S. (1 Cranch) at 177.

296. For five reasons, the Program Freezing Actions are outside of the agencies' statutory authority, contrary to law, and without observance of procedure required by law.

297. First, no federal law or regulation gives the President, OMB, EPA, USDA, USDOT, or DOGE the power to freeze funding appropriated by Congress and obligated by executive agencies.  The Executive Branch has blocked these funds based on President Trump's policies, as

---

[30] Baltimore joins this claim only as to agency actions implementing the Energy EO and Cost Efficiency EO, and agency actions based on EPA's and USDA's independent authorities. *See supra* footnote 1.

EPA_00051022

articulated in the Energy EO, Equity EO, and DOGE EO—policies that are entirely different than, and in many cases directly conflict with, the directives and purposes specified by Congress for expending the funds.

298. By freezing funding based on the *President's* priorities rather than "stated statutory factors," the "Executive has acted contrary to law and in violation of the APA." *New York*, 2025 WL 357368, at *2.

299. Second, these agency actions are unconstitutional on the grounds set forth in Counts I–II and V, *see supra* ¶¶ 263–82, *infra*, ¶¶ 303–314, and are thus "not in accordance with law" and "contrary to constitutional right, power, privilege, or immunity" under the APA, 5 U.S.C. § 706(2)(A), (B).

300. Third, these agency actions are contrary to the IRA, the IIJA and other statutes creating and appropriated money to the programs for which Plaintiffs receive grants. Defendants' actions are not in accordance with the statutory requirements to create, fund, and carry out these programs.

301. Fourth, these agency actions are contrary to the Impoundment Control Act of 1974. Defendants have unlawfully delayed the expenditure of funds, resulting in deferrals that are for impermissible policy reasons and that did not follow the ICA's requirements for notifying Congress of deferrals. The agency actions also represent unlawful rescissions of the funds in violation of the ICA.

302. Fifth, these agency actions, which remain in effect, direct a freeze of IRA, IIJA, and "equity-related" funding that violates agency regulations and the grant agreements that incorporate these regulations. *See, e.g.*, *J.E.C.M. v. Lloyd*, 352 F. Supp. 3d 559, 583 (E.D. Va. 2018) ("[W]here an agency's decision does not comport with governing . . . regulations, that

77

decision is 'not in accordance with law' and must be set aside."). To the extent subsequent agency actions have unilaterally frozen specific funding or programs, those freezes are unlawful for the same reasons.

303. These agency actions indefinitely freeze IRA, IIJA, and "equity-related" funding without identifying any permissible grounds for freezing funds, exhausting less drastic remedies, 2 C. F. R. §§ 200. 339, 200. 208(c), or affording any recipient notice and an opportunity to object. *Id.* § 200. 342. Both binding regulations and grant agreements require these award-specific findings and procedures before funding may be suspended.

304. The Program Freezing Actions, and any other agency action to freeze or block IRA, IIJA, or "equity-related" funding based on President Trump's priorities rather than Congress's are in excess of the agencies' statutory authority, unconstitutional, and not in accordance with law. 5 U.S.C. § 706(2)(A)–(C). These agency actions must be held unlawful and vacated under the APA. *Id.* § 706(2).

## —COUNT V —
## THE PROGRAM FREEZING ACTIONS
## VIOLATE THE FIRST AMENDMENT AND
## ARE NOT IN ACCORDANCE WITH LAW
### (Community Group Plaintiffs)

305. The allegations of the preceding paragraphs are incorporated herein by reference as to the non-city plaintiffs.

306. Under the First Amendment, actions by the government targeting speech based on its subject matter or the viewpoint expressed are presumptively unconstitutional and subject to strict scrutiny. *Rosenberger*, 515 U.S. at 828–29. In particular, the government cannot condition benefits or financial assistance on the suppression of constitutionally protected speech, especially

78

EPA_00051024

when such a denial of support is based on the viewpoint or content of the expression.  *Speiser*, 357 U.S. at 518.

307. In addition, under the APA, courts must "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

308. The Second OMB Memo purported to block all disbursements of federal financial assistance pending a "review" to determine whether they are "consistent with the President's Policies," including those outlined in the Equity EO, which mandates the termination of all "equity-related grants."

309. The Equity EO directs government officials to eliminate "environmental justice" from government initiatives. Equity EO § 2(b)(i). It further instructs agencies to terminate all grants or contracts deemed "equity related" within 60 days. *Id.*

310. The Second OMB Memo further directs agencies to identify federal funding recipients that supposedly "advance Marxist equity, transgenderism, and green new deal social engineering policies."

311. While none of these terms are defined, the pejorative descriptions and context make clear that they are highly disfavored by the Administration.

312. The Second OMB Memo targets federal funding recipients who express or advocate for viewpoints or content disfavored by the Administration, discriminating against these entities for continued federal funding based on their viewpoint.

313. Upon information and belief, the Program Freezing Actions identify organizations based on their viewpoints for purposes of blocking, freezing, or cancelling grant funding.

EPA_00051025

314. For example, EPA is using a flowchart to identify which grants to freeze or cancel based on the presence of certain arbitrary keywords representing viewpoints disfavored by the Administration in grant applications or other grant materials.  This is unconstitutional viewpoint-based discrimination because it targets grantees like the nonprofit Community Group Plaintiffs and penalizes them based on their presence of certain words, concepts, and viewpoints in grant application or other grant materials—even though the words, concepts, and viewpoints were prioritized by Congress for federal funding, and the grantees were awarded funding on the basis of their grant materials, expressly to advance these policies that are central to their missions.

315. The Program Freezing Actions violate the First Amendment by restricting Plaintiffs' constitutionally protected speech based on its content.

**—COUNT VI—**
**THE ENERGY EO, EQUITY EO, DOGE EO,**
**AND PROGRAM FREEZING ACTIONS**
**VIOLATE THE IRA AND THE IIJA AND OTHER RELEVANT STATUTES**
**NONSTATUTORY REVIEW AND ULTRA VIRES ACTION**
**(All Plaintiffs[31])**

316. The allegations of the preceding paragraphs are incorporated herein by reference.

317. Congress has enacted the federal grant programs at issue in this case under the IRA, IIJA, and other relevant statutes and has appropriated over $1 trillion in funding for those programs to serve enumerated purposes specified in these statutory programs.

318. Defendants are statutorily required to carry out these congressionally mandated programs, and to obligate and distribute the funds that Congress appropriated for these programs.

---

[31] Baltimore joins this claim only as to the Energy EO, Cost Efficiency EO, agency actions implementing those two EOs, and agency actions based on EPA's and USDA's independent authorities. *See supra* footnote 1.

EPA_00051026

319. Consistent with their statutory duties, federal agencies obligated these funds to specific entities via a rigorous, regulated, and competitive grantmaking process.

320. But in the Energy EO, Equity EO, and DOGE EO President Trump directed that federal funding be paused or terminated if it was inconsistent with his own policies.

321. The President's Executive Orders and the Program Freezing Actions directly contravene the statutory requirements to carry out and fund the statutory programs under the IRA, IIJA, and other statutes under which Plaintiffs received grants. *See, e.g.*, 42 U.S.C. § 7438(b)(1) (IRA "Environmental and Climate Justice Block Grants" program, directing that EPA "shall" award grants for certain activities "that benefit disadvantaged communities"); IRA, § 22007, 136 Stat. at 2022 (directing that USDA "shall" award grants for "USDA Assistance and Support for Underserved Farmers, Ranchers [and] Foresters" and those "determined to have experienced discrimination . . . in Department of Agriculture farm lending programs"); *see also* 33 U.S.C. § 1302f(c)(4)(A)(2) (IIJA, requiring that EPA "shall" give priority to grant applications submitted on behalf of "a small, rural, or disadvantaged community"); Section 1001 of the American Rescue Plan Act of 2001, Technical Assistance Investment Program to support farmworkers, and Urban Agriculture and Innovative Production Grant to support urban agriculture efforts in underserved communities.

## PRAYER FOR RELIEF

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the following relief:

A. Issue a declaratory judgment that Sections 2 and 7 of the Unleashing Energy EO that direct the freezing or termination of federal grants violate the United States Constitution and are therefore void;

81

B.  Issue a declaratory judgment that Section 2(b) of the Equity EO that directs the termination of "equity-related" grants or contracts violates the United States Constitution;

C.  Issue a declaratory judgment that Section 3(b) of the DOGE EO that directs the termination or modification of grants to advance the policies of the Trump Administration violates the United States Constitution;

D.  Issue a declaratory judgment that executive actions taken to freeze or terminate awarded federal grants under the Community Change Grants program; the Environmental Justice Collaborative Problem Solving Program; the Environmental Justice Government-to-Government Program; the Partnerships for Climate-Smart Commodities program; the Conservation Stewardship Program; the Equity in Conservation Outreach Cooperative Agreements program; the Conservation Technical Assistance Program; the Increasing Land, Capital and Market Access Program; the Rural Development Policy Cooperative Agreement program; the American Rescue Plan Technical Assistance Investment Program; the Climate Pollution Reduction Grants program; the Urban and Community Forestry Grant Program; the Distressed Borrower Assistance Network Cooperative Agreement Program; the Solid Waste Infrastructure for Recycling Grant Program; the Innovative Nutrient and Sediment Reduction Grant Program; the Charging and Fueling Infrastructure Program Grants; the Active Transportation Infrastructure Investment Grant Program; the Farm and Food Workers Grant Relief Program; and the Office of Urban Agriculture and Innovative Production Grants program, violate the United States Constitution, the statutory provisions enacting and appropriating funds to these programs, and the APA;

82

E.  Pursuant to 5 U.S.C. § 706, hold unlawful and set aside any actions taken by OMB, EPA, USDA, USDOT, or DOGE to freeze or terminate federal grants under the Community Change Grants program; the Environmental Justice Collaborative Problem Solving Program; the Environmental Justice Government-to-Government Program; the Partnerships for Climate-Smart Commodities program; the Conservation Stewardship Program; the Equity in Conservation Outreach Cooperative Agreements program; the Conservation Technical Assistance Program; the Increasing Land, Capital and Market Access Program; the Rural Development Policy Cooperative Agreement program; the American Rescue Plan Technical Assistance Investment Program; the Climate Pollution Reduction Grants program; the Urban and Community Forestry Grant Program; the Distressed Borrower Assistance Network Cooperative Agreement Program; the Solid Waste Infrastructure for Recycling Grant Program; the Innovative Nutrient and Sediment Reduction Grant Program; the Charging and Fueling Infrastructure Program Grants; the , Active Transportation Infrastructure Investment Grant Program; the Farm and Food Workers Grant Relief Program; and the Office of Urban Agriculture and Innovative Production Grants program;

F.  Preliminarily and permanently enjoin Defendants from continuing to freeze or terminating grants under the Community Change Grants program; the Environmental Justice Collaborative Problem Solving Program; the Environmental Justice Government-to-Government Program; the Partnerships for Climate-Smart Commodities program; the Conservation Stewardship Program; the Equity in Conservation Outreach Cooperative Agreements program; the Conservation Technical Assistance Program; the Increasing Land, Capital and Market Access Program; the Rural Development Policy Cooperative

83

Agreement program; the American Rescue Plan Technical Assistance Investment Program; the Climate Pollution Reduction Grants program; the Urban and Community Forestry Grant Program; the Distressed Borrower Assistance Network Cooperative Agreement Program; the Solid Waste Infrastructure for Recycling Grant Program; the Innovative Nutrient and Sediment Reduction Grant Program; the Charging and Fueling Infrastructure Program Grants; the Active Transportation Infrastructure Investment Grant Program; the Farm and Food Workers Grant Relief Program; and the Office of Urban Agriculture and Innovative Production Grants program;

G. Prohibit Defendants from otherwise impeding, blocking, cancelling, or terminating Plaintiffs' access to their funds awarded under such program(s);

H. Require Defendants to make grant program managers available to Plaintiffs to assist with the administration of grant funds, and require that grant program managers respond to questions from grantees in a timely manner;

I. Provide Plaintiffs and the Court with weekly status updates regarding grant disbursements and grant program administration;

J. Retain jurisdiction over this matter to ensure compliance with the above relief;

K. Award Plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

L. Grant such other relief as this Court deems just and proper.

Respectfully submitted this 19th day of March 2025.

/s/ Carl T. Brzorad
Carl T. Brzorad (S. C. Bar No. 105413)
SOUTHERN ENVIRONMENTAL LAW CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270

84

EPA_00051030

Facsimile: (843) 414-7039
cbrzorad@selc.org

*/s/* Kimberley Hunter
Kimberley Hunter (N. C. Bar No. 41333)
(*Pro Hac Vice* pending)
Irena Como (N. C. Bar No. 51812)
(*Pro Hac Vice* pending)
Nicholas S. Torrey (N. C. Bar No. 43382)
(*Pro Hac Vice* pending)
SOUTHERN ENVIRONMENTAL LAW CENTER
136 East Rosemary Street, Suite 500
Chapel Hill, NC 27514
Telephone: (919) 967-1450
Facsimile: (919) 929-9421
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org

*Counsel for Plaintiffs The Sustainability Institute,
Agrarian Trust, Alliance for Agriculture, Alliance
for the Shenandoah Valley, Bronx River Alliance,
CleanAIRE NC, Conservation Innovation Fund,
Leadership Counsel for Justice and Accountability,
Marbleseed, Pennsylvania Association of
Sustainable Agriculture, and Rural Advancement
Foundation International - USA*

*/s/* Graham Provost
Graham Provost (DC Bar No. 1780222)
(*Pro Hac Vice* pending)
Elaine Poon (VA Bar No. 91963)
(*Pro Hac Vice* pending)
Jon Miller (MA Bar No. 663012)
(*Pro Hac Vice* pending)
Public Rights Project

490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
graham@publicrightsproject. org

*Counsel for Plaintiffs Baltimore, Maryland,
Columbus, Ohio, Madison, Wisconsin, Nashville,
Tennessee, New Haven, Connecticut, and San
Diego, California*

85

_/s/_ Mark Ankcorn
Mark Ankcorn, Senior Chief Deputy City Attorney
(CA Bar No. 166871)
(_Pro Hac Vice_ pending)
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
(619) 533-5800
mankcorn@sandiego.gov

_Counsel for Plaintiff City of San Diego_

86

EPA_00051032

# EXHIBIT A

# "First OMB Memo"

EPA_00051033



THE DIRECTOR

**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

January 21, 2025

M-25-11

MEMORANDUM TO THE HEADS OF DEPARTMENTS AND AGENCIES

FROM:      Matthew J. Vaeth, Acting Director, Office of Management and Budget

           Kevin Hassett, Assistant to the President for Economic Policy and Director of the National Economic Council

SUBJECT:   Guidance Regarding Section 7 of the Executive Order *Unleashing American Energy*

The directive in section 7 of the Executive Order entitled *Unleashing American Energy* requires agencies to immediately pause disbursement of funds appropriated under the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58). This pause only applies to funds supporting programs, projects, or activities that may be implicated by the policy established in Section 2 of the order. This interpretation is consistent with section 7's heading ("Terminating the Green New Deal") and its reference to the "law and the policy outlined in section 2 of th[e] order."

For the purposes of implementing section 7 of the Order, funds supporting the "Green New Deal" refer to any appropriations for objectives that contravene the policies established in section 2. Agency heads may disburse funds as they deem necessary after consulting with the Office of Management and Budget.

# EXHIBIT B
# "Second OMB Memo"

EPA_00051035



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

January 27, 2025

M-25-13

MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES

FROM:        Matthew J. Vaeth, Acting Director, Office of Management and Budget

SUBJECT:     Temporary Pause of Agency Grant, Loan, and Other Financial Assistance
             Programs

  The American people elected Donald J. Trump to be President of the United States and
gave him a mandate to increase the impact of every federal taxpayer dollar. In Fiscal Year 2024,
of the nearly $10 trillion that the Federal Government spent, more than $3 trillion was Federal
financial assistance, such as grants and loans. Career and political appointees in the Executive
Branch have a duty to align Federal spending and action with the will of the American people as
expressed through Presidential priorities. Financial assistance should be dedicated to advancing
Administration priorities, focusing taxpayer dollars to advance a stronger and safer America,
eliminating the financial burden of inflation for citizens, unleashing American energy and
manufacturing, ending "wokeness" and the weaponization of government, promoting efficiency
in government, and Making America Healthy Again. The use of Federal resources to advance
Marxist equity, transgenderism, and green new deal social engineering policies is a waste of
taxpayer dollars that does not improve the day-to-day lives of those we serve.

  This memorandum requires Federal agencies to identify and review all Federal financial
assistance[1] programs and supporting activities consistent with the President's policies and
requirements.[2]  For example, during the initial days of his Administration, President Donald J.
Trump issued a series of executive orders to protect the American people and safeguard valuable
taxpayer resources, including *Protecting the American People Against Invasion* (Jan. 20, 2025),
*Reevaluating and Realigning United States Foreign Aid* (Jan. 20, 2025), *Putting America First in
International Environmental Agreements* (Jan. 20, 2025), *Unleashing American Energy* (Jan. 20,
2025), *Ending Radical and Wasteful Government DEI Programs and Preferencing* (Jan. 20,

---

[1] 2 CFR 200.1 defines Federal financial assistance to mean "[a]ssistance that recipients or subrecipients receive or
administer" in various forms, but this term does not include assistance provided directly to individuals. For the
purposes of this memorandum, Federal financial assistance includes: (i) all forms of assistance listed in paragraphs
(1) and (2) of the definition of this term at 2 CFR 200.1; and (ii) assistance received or administered by recipients or
subrecipients of any type except for assistance received directly by individuals.
[2] Nothing in this memo should be construed to impact Medicare or Social Security benefits.

2025), *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Jan. 20, 2025), and *Enforcing the Hyde Amendment* (Jan. 24, 2025). These executive orders ensure that Federal funds are used to support hardworking American families.

To implement these orders, each agency must complete a comprehensive analysis of all of their Federal financial assistance programs to identify programs, projects, and activities that may be implicated by any of the President's executive orders.  In the interim, to the extent permissible under applicable law, Federal agencies **must temporarily pause** all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that may be implicated by the executive orders, including, but not limited to, financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal.

This temporary pause will provide the Administration time to review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities.  The temporary pause will become effective on January 28, 2025, at 5:00 PM. Even before completing their comprehensive analysis, Federal agencies must immediately identify any legally mandated actions or deadlines for assistance programs arising while the pause remains in effect. Federal agencies must report this information to OMB along with an analysis of the requirement. OMB also directs Federal agencies to pause all activities associated with open NOFOs, such as conducting merit review panels.

No later than February 10, 2025, agencies shall submit to OMB detailed information on any programs, projects or activities subject to this pause. Each agency must pause: (i) issuance of new awards; (ii) disbursement of Federal funds under all open awards; and (iii) other relevant agency actions that may be implicated by the executive orders, to the extent permissible by law, until OMB has reviewed and provided guidance to your agency with respect to the information submitted.

OMB may grant exceptions allowing Federal agencies to issue new awards or take other actions on a case-by-case basis.  To the extent required by law, Federal agencies may continue taking certain administrative actions, such as closeout of Federal awards (2 CFR 200.344), or recording obligations expressly required by law.

Additionally, agencies must, for each Federal financial assistance program: (i) assign responsibility and oversight to a senior political appointee to ensure Federal financial assistance conforms to Administration priorities; (ii) review currently pending Federal financial assistance announcements to ensure Administration priorities are addressed, and, subject to program statutory authority, modify unpublished Federal financial assistance announcements, withdraw any announcements already published, and, to the extent permissible by law, cancel awards already awarded that are in conflict with Administration priorities, and; (iii) ensure adequate oversight of Federal financial assistance programs and initiate investigations when warranted to identify underperforming recipients, and address identified issues up to and including cancellation of awards.

2

# EXHIBIT C
# "USDA Directive"

EPA_00051038

2:25-cv-00352-RDC Document Filed 03/06/25 Entry Number 1-3 Page 25 of 54



Andrew Currie <andrew@pasafarming.org>

---

## FW: FOR DISTRIBUTION TO GRANT RECIPIENTS: Partnerships for Climate-Smart Commodities Grant Update

---

**Culbert, Tanya - FPAC-NRCS, MS** <tanya.culbert@usda.gov>          Wed, Jan 22, 2025 at 1:14 PM
To: "Culbert, Tanya - FPAC-NRCS, MS" <tanya.culbert@usda.gov>
Cc: "Anderson, John - FPAC-FSA, SD" <john.a.anderson@usda.gov>, "Abouali, Mustapha - FPAC-NRCS, NV"
<mustapha.abouali@usda.gov>, "Hansen, Eric - FPAC-NRCS, DC" <Eric.Hansen@usda.gov>

Hello Grantees,


Please see message below for your awareness.


Let me know if you have questions and I will work to get you answers.


Thank you,


Tanya Culbert

National Program Officer

Office of the Associate Chief | Center for Sustainable Commodity Markets



| c: (601) 748-9177 |Remote duty station

e: tanya.culbert@usda.gov | https://www.nrcs.usda.gov/


Stay Connected with USDA:

     


Helping People Help the Land

*USDA is an equal opportunity provider, employer, and lender.*


*******************************************************************************

EPA_00051039

Dear Grant Recipients,

As of late yesterday, January 21, 2025, the administration placed a temporary suspension on all actions related to grants, including Partnerships for Climate-Smart Commodities grants. This is a fluid situation, and we ask for your patience as we work to gain additional clarification for you in the coming days.

Please contact your National Program Officer if you have additional questions. We will continue to provide periodic updates via email as more information becomes available.

Sincerely,

Katina

*************************************************************************

Katina D. Hanson

*Director*

**Office of the Associate Chief | Center for Sustainable Commodity Markets**



USDA **Natural Resources Conservation Service**
U.S. DEPARTMENT OF AGRICULTURE

*USDA is an equal opportunity provider, employer, and lender.*

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

EPA_00051040



Andrew Currie <andrew@pasafarming.org>

---

## FW: FOR DISTRIBUTION TO GRANT RECIPIENTS: Partnerships for Climate-Smart Commodities Grant Update FAQs

---

**Culbert, Tanya - FPAC-NRCS, MS** <tanya.culbert@usda.gov>                     Wed, Jan 22, 2025 at 3:53 PM
To: "Culbert, Tanya - FPAC-NRCS, MS" <tanya.culbert@usda.gov>

Hello Grantees,

Please see additional guidance below.

Thank you,

Tanya Culbert

National Program Officer

Office of the Associate Chief | Center for Sustainable Commodity Markets

 Natural Resources Conservation Service
U.S. DEPARTMENT OF AGRICULTURE

| c: (601) 748-9177 |Remote duty station

e: tanya.culbert@usda.gov | https://www.nrcs.usda.gov/

Stay Connected with USDA:

   

Helping People Help the Land

*USDA is an equal opportunity provider, employer, and lender.*



Dear Grant Recipients,

EPA_00051041

We have received additional guidance from the USDA Office of the Chief Financial Officer's office on the temporary suspension of all USDA actions related to grants, including Partnerships for Climate-Smart Commodities grants. Please see Frequently Asked Questions (FAQs) below:

1. **Does the moratorium include no-cost extensions or no-cost modifications on existing awards?**

   a. <u>Answer:</u> No, it does not apply to no-cost extensions or no-cost modifications. This may include budget revisions that do not obligate additional funds, no-cost extensions of time, changes in key staff, and other changes that do not result in any additional expenditure of funds (regardless of their source).

2. **Can existing work continue under active awards?**

   a. <u>Answer:</u> Yes, until such time that you receive guidance in the future that specific transactions must be modified or terminated.

3. **Can payments or claims be processed under existing awards?**

   a. <u>Answer:</u> At this time, yes, payments or claims may continue to be processed under existing awards, provided that they are not funded using IRA and IIJA funding sources. Additional guidance related to IIJA and IRA funds will be provided by OCFO and/or OBPA, when available.

The above direction is subject to change pending updates from the current administration. Any updates will be communicated in writing when available.

Again, this is a fluid situation, and we ask for your patience as we work to gain additional clarification for you in the coming days.  Please contact your National Program Officer if you have additional questions. We will continue to provide periodic updates via email as more information becomes available.

Sincerely,

Katina

*******************************************************************

Katina D. Hanson

*Director*

**Office of the Associate Chief | Center for Sustainable Commodity Markets**



**Natural Resources Conservation Service**
U.S. DEPARTMENT OF AGRICULTURE

*USDA is an equal opportunity provider, employer, and lender.*

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the

EPA_00051042

violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

EPA_00051043



U.S. Department of Agriculture

**PRESS RELEASE**

# Secretary Rollins Releases the First Tranche of Funding Under Review

PUBLISHED:    February 20, 2025

SHARE:      

Today, U.S. Secretary of Agriculture Brooke Rollins announced that USDA will release the first tranche of funding that was paused due to the review of funding in the Inflation Reduction Act (IRA).

**Washington, D.C., Feb. 20, 2025**—Today, U.S. Secretary of Agriculture Brooke Rollins announced that USDA will release the first tranche of funding that was paused due to the review of funding in the Inflation Reduction Act (IRA).

In alignment with White House directives, Secretary Rollins will honor contracts that were already made directly to farmers. Specifically, USDA is releasing approximately $20 million in contracts for the Environmental Quality Incentive Program, the Conservation Stewardship Program, and the Agricultural Conservation Easement Program.

"American farmers and ranchers are the backbone of our nation," **said Secretary Rollins**. "They feed, fuel, and clothe our nation—and millions of people around the world. The past four years have been among the most difficult for American Agriculture, due in no small measure to Biden's disastrous policies of over-regulation, extreme environmental programs, and crippling inflation. Unfortunately, the Biden administration rushed out hundreds of millions of dollars of IRA funding that was supposed to be distributed over eight years. After careful review, it is clear that some of this funding went to programs that had nothing to do with agriculture—that is why we are still reviewing—whereas other funding was directed to farmers and ranchers who have since made investments in these programs.

EPA_00051044

We will honor our commitments to American farmers and ranchers, and we will ensure they have the support they need to be the most competitive in the world."

This is the first tranche of released funding, and additional announcements are forthcoming as USDA continues to review IRA funding to ensure that we honor our sacred obligation to American taxpayers—and to ensure that programs are focused on supporting farmers and ranchers, not DEIA programs or far-left climate programs.

# # #

USDA is an equal opportunity provider, employer, and lender.

PRESS RELEASE

**Release No.:**
**0030.25**

 U.S. Department of Agriculture

EPA_00051045

# EXHIBIT D
# "EPA Memo"

EPA_00051046



## THE CHIEF FINANCIAL OFFICER

WASHINGTON, D.C. 20460

January 27, 2025

# CUI//SP-BUDG

**MEMORANDUM**

**SUBJECT:**   Inflation Reduction Act and Infrastructure Investment and Jobs Act Funding Action Pause

**FROM:**   Gregg Treml, Chief Financial Officer (Acting)

GREGG
TREML

Digitally signed by
GREGG TREML
Date: 2025.01.27
16:59:02 -05'00'

**TO:**   Deputy Assistant Administrators
Deputy Associate Administrators
Deputy Regional Administrators

This message is being provided based on instruction from OMB.

In accordance with the Executive Order *Unleashing American Energy,* unobligated funds (including unobligated commitments) appropriated by the Inflation Reduction Act of 2022 (P.L. 117-169) and the Infrastructure Investment and Jobs Act (P.L. 117-58) are paused. Pursuant to this pause, the Compass financial system will temporarily not allow obligations to be made in these lines of accounting. EPA is in discussions with the Office of Management and Budget on the continuation of payroll in IIJA and IRA.

Additionally, all disbursements for unliquidated obligations funded by any line of accounting including funds appropriated by the Inflation Reduction Act of 2022 (P.L. 117-169) and the Infrastructure Investment and Jobs Act (P.L. 117-58), are paused. Additional details on the pause in disbursements will be provided separately by the Office of the Controller.

This pause will allow for the review of processes, policies and programs as required by Section 7 of the Order.

All related actions, including new contract, grant, rebate and interagency actions, to include drawdowns, for IIJA and IRA are paused. Offices are not to put IIJA or IRA lines of accounting on any actions and all current actions are paused. Further, no IIJA or IRA funded travel is permissible at this time and all upcoming travel funded from either should be cancelled.

A process has been established at OMB for their review and approval of obligations and disbursements based on the Order. We will continue to update the community. We appreciate your work to ensure compliance with the Order.

cc: Lek Kadeli
   Meshell Jones-Peeler
   Paige Hanson
   Senior Resource Officials
   Senior Budget Officers
   Regional Comptrollers
   Funds Control Officers

Controlled by U.S. Environmental Protection Agency

EPA_00051048

# EXHIBIT E

# "EPA Executive Order Compliance Review Requirement"

EPA_00051049



# EXHIBIT F
# "DOT Memo"

EPA_00051051

**Attention: Heads of Secretarial Offices and Operating Administrations (OA)**

**Overview:**  The Office of the Assistant Secretary for Transportation Policy (OST-P) is providing guidance on competitive award selections made after January 20, 2021, that do NOT have fully obligated grant agreements or cooperative agreements in place.

Projects with executed grant agreements in place that are fully obligated are not subject to the guidance below. For selections with partially obligated grant agreements, the same review should take place before awarding subsequent phases or adding additional funds to an existing grant agreement. Additional guidance will be provided regarding revisions to standard terms and conditions appearing in draft grant agreements or templates.

**Summary:**  All competitive grant and cooperative agreement award selections must comply with current Administration priorities and Executive Orders (EO) that address energy, climate change, diversity and gender, and economic analysis, and other priorities.  Applicable Executive Orders and Memoranda include:

- Executive Order 14148, Initial Rescissions of Harmful Executive Orders and Actions;

- Executive Order 14154, Unleashing American Energy

- Executive Order 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing

- Executive Order 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government

- Secretarial Order 2100.7, Ensuring Reliance Upon Sound Economic Analysis in Department of Transportation Policies, Programs, and Activities

- Secretarial Memorandum on Implementation of Executive Orders Addressing Energy, Climate Change, Diversity, and Gender

This guidance provides direction for identifying award selections without fully obligated grant agreements that do not comply with these priorities.

**ACTION**: For projects announced from FY 2022 through FY 2025, review all award selections without grant agreements and partially obligated grant agreements. The focus of this review is to identify project scope and activities that are allocating funding to advance climate, equity, and other priorities counter to the Administration's Executive Orders.

**Step 1: Program Identification.** Identify Programs for which award selections may have included any of the following elements: equity activities, Diversity, Equity, and Inclusion (DEI) activities, climate change activities, environmental justice (EJ) activities, gender-

specific activities, when the primary purpose is bicycle infrastructure (i.e., recreational trails and shared-use paths, etc.), electric vehicles (EV), and EV charging infrastructure. Additionally, project-by-project review of selections to identify any project scope elements for potential removal are required for any Programs that meet the criteria below:

- Statutory language includes equity requirements, climate considerations, or bicycle infrastructure.
- NOFO mandatory evaluation criteria includes equity and/or climate requirements.
- Eligible activities included bicycle infrastructure, EV and/or EV charging infrastructure.

Programs that do not meet the criteria above should be shared with the OA Administrator or equivalent OST leadership for concurrence/confirmation. Following OA Administrator or equivalent OST leadership concurrence, the OST Office of Policy (OST-P) and Office of the General Counsel (OGC) will provide final confirmation on whether a program is required to conduct a project-by-project review. If OST-P and OGC confirm that a project-by-project review is not required, offices may proceed with negotiating and finalizing grant agreements. If OST-P and OGC confirm that project-by-project review is required, offices should proceed to Step 2. Please submit review requests to the OST Policy Board at OSTPolicyBoard@dot.gov.

**Step 2: Project-by Project Review.** Programs that require further review shall have Program Teams examine each individual project to identify those award selections that have project scopes that include any of the project elements listed in Step 1 (i.e. equity activities, DEI activities climate change activities, etc.). Those Teams should document their project-by-project examination and flag any project scope elements or activities for potential removal, including:

- Project activities such as equity analysis, green infrastructure, bicycle infrastructure, EV and/or EV charging infrastructure.
- Project purpose or primary project benefits include equity and/or climate such as-projects that purposefully improve the condition for EJ communities or actively reduce GHG emissions.

*Note: If project scope elements are based in statute, program offices should consult with applicable legal counsel, and following legal concurrence, raise any proposed scope changes to OA leadership.*

OA leadership shall review the findings from the Team review, and recommend to OST-P and OGC which project selections should:

EPA_00051053

a. Continue in their current form with no change;
b. Be revised with a reduced or modified scope; or
c. Be canceled entirely.

**Step 3: Project Scope Revision.** Award selections identified in Step 2.b must update project scopes to eliminate flagged activities, and where possible replace identified elements with relevant elements that align with program statute, the scope of the application submission, and current Administration EOs.

Where the scope of the project includes elements noted above, Teams should negotiate with project sponsors to update project scopes to eliminate and, where possible, replace those identified elements with relevant elements that align with the program statute, the original scope of the application submission, and current Administration EOs.

a. If the project sponsor agrees to proceed with scope changes, proceed to grant agreement formulation and execution. The project sponsor may propose alternative project elements to substitute for the redline elements that should be removed as long as they 1) align with the program statute, 2) are consistent with the purposes of the original scope of the application submission, and 3) align with current Administration EOs.

b. If the project sponsor does not agree to remove project elements noted in Step 2 and replace with acceptable alternative scope, then the Team should proceed with a reduced award that removes the flagged scope and activities.

EPA_00051054

# EXHIBIT G
# "EPA Notice of DOGE Approval Requirement"

EPA_00051055

**Subject:** FW: Updated EO Compliance Review

Project Officers and Contract Officer Representatives:

Good morning. Please see the updated EO compliance review document (attached) and the instructions below.

Funding organizations will need to provide the amended EO compliance review document to award officials to signal alignment on Administration priorities as detailed through Executive Orders (Presidential Actions – The White House) and the Administrator's "Powering the Great American Comeback" Initiative (EPA Administrator Lee Zeldin Announces EPA's "Powering the Great American Comeback" Initiative | US EPA). For transactions below $50,000, the compliance document is largely the same, except it requests the dollar amount.

There is a new requirement for transactions greater than $50,000. **Effective today, any assistance agreement, contract, or interagency agreement transaction $50,000 or greater must receive approval from an EPA DOGE Team member**. To facilitate the DOGE Team review, please include a brief (1-sentence) explanation of the funding action (all other fields must be completed as well). Programs and regions should aim to submit a single tranche of actions for DOGE review each day between 3pm – 6pm EST. While emergency/ special actions are understandable, please work to batch your funding actions as best as possible.

For compliance reviews requiring DOGE sign-off, please email your request by **2 p.m.** to ████████ at ████████@epa.gov **and** ████████ at ████████@epa.gov.

Thank you for your time, and feel free to contact me with any questions.

Have a great day,

# EXHIBIT H

# "EPA Flowchart for 'Equity-Related' Grants"

EPA_00051057

## Decision Tree



## Keywords

activism
activists
advocacy
advocate
advocates
barrier
barriers
biased
biased toward
biases
biases towards
bipoc
black and latinx
community diversity
community equity
cultural differences
cultural heritage
culturally responsive
disabilities
disability
discriminated
discrimination
discriminatory
diverse backgrounds
diverse communities
diverse community
diverse group
diverse groups
diversified
diversify
diversifying
diversity and inclusion
diversity equity
enhance the diversity
enhancing diversity
equal opportunity
equality
equitable
equity
ethnicity
excluded
female
females
fostering inclusivity
gender
gender diversity

genders
hate speech
excluded
female
females
fostering inclusivity
gender
gender diversity
genders
hate speech
hispanic minority
historically

implicit bias
implicit biases
inclusion inclusive
inclusiveness inclusivity
increase diversity
increase the diversity
indigenous community
inequalities
inequality
inequitable
inequities
institutional
lgbt
marginalize
marginalized
minorities
minority
multicultural
polarization
political
prejudice
privileges
promoting diversity
race and ethnicity
racial
racial diversity
racial inequality
racial justice
racially
racism
sense of belonging
sexual preferences

social justice
sociocultural
socioeconomic
status
stereotypes
systemic
trauma
under appreciated
under represented
under served
underrepresentation
underrepresented
underserved
undervalued
victim
women
women and
underrepresented

EPA_00051059

# EXHIBIT I
# "EPA Compliance Form"

EPA_00051060

**Executive Order Compliance Review**
The following review verification document must be included with any assistance agreement, contract or interagency (IA) funding action or amendment to a workplan or statement of work. The document demonstrates that the signatory understands that the action and associated workplan or performance work statement complies with Executive Order requirements (detailed here: Presidential Actions – The White House) at the time of signature.

For actions requiring this document, signature must be by the Office Director (OD) in Headquarters or the Division Director (DD) in the regions. An OD/DD may assign a designee. Contracting Officers/Specialists, IA Specialists, and Grants Specialists must retain the signed document in the contract, IA or grant file.

Funding actions for $50,000 and above, review and signature by a DOGE team member is required.

**Funding Action Review Confirmation**
This confirms that the workplan, budget or performance work statement does not conflict with the Executive Orders and aligns with the Administrator's "Powering the Great American Comeback" initiative. Funding organizations may batch actions and attach a list of covered actions, which must include the following details, at a minimum.

Contract/ Grant/ IA #:

Recipient/ Vendor name:

Funding amount $:

Description of Work (one sentence and only for $50,000 and above actions):

_____
Program Office Director (or designee)/ Regional Division Director (or designee)

_____
DOGE Team (if required)



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

<u>**MEMORANDUM**</u>

DEPUTY ADMINISTRATOR

**SUBJECT:**    Review of Financial Assistance Programs

**FROM:**       Chad McIntosh, Acting Deputy Administrator

**TO:**          Gregg Treml, Acting Chief Financial Officer
              Kimberly Y. Patrick, Principal Deputy Assistant Administrator, OMS
              Deputy Assistant Administrators
              Deputy Associate Administrators
              Deputy Regional Administrators

Distribute as appropriate to those needed to carry out this direction.

Upon confirmation, EPA Administrator Lee Zeldin pledged to enthusiastically uphold the EPA's mission and our moral responsibility to be good stewards of our environment for generations to come. With that commitment is the promise to be accountable for the Agency's use of hard-earned American taxpayer dollars.

Congress has been clear on the need for oversight of funds provided to the Agency in the Inflation Reduction Act (IRA) (Pub. Law 117-169, Aug. 16, 2021, 136 Stat 1818) and other funding programs that may be improperly utilized. However, over the course of the prior Adminstration, several reports and investigations have raised serious concerns with the implementation of certain grant programs and subsequent grant awards.

Problems with implementation of these funding programs were egregiously confirmed from documented statements by Biden-Harris Administration political appointee staff at EPA describing the Agency's then funding push as "throwing gold bars off the Titanic."

In one example of the potential problematic implementation of programs, to expend, the Biden-Harris Adminstration utilized an external financial agent to hold funding, which is the first time the Agency has ever operated a grant funding program in that manner which could limit Agency oversight.

Not only have these instances been well documented, but during his confirmation hearing before the U.S. Senate Committee on Environment and Public Works and through additional Congressional requests, Administrator Zeldin has been specifically asked to ensure accountability of Agency funding. These documented accounts of potential waste, fraud, and abuse of hard-earned American taxpayer dollars warrant further attention and oversight.

EPA_00051267

For these reasons, I am directing our leadership team and all Agency personnel as follows:

Agency personnel shall immediately initiate and conduct an internal review of all relevant grant programs, grant awards, grants that have not yet been awarded and obligated to specific individuals or entities (e.g., notices of funding opportunities), and issued grants. This includes a review of payments on all grant programs and awards where Agency personnel suspect that the grant is unlawful or contrary to Agency policy priorities, or suspect that the grant program implementation or payment might be fraudulent, abusive, duplicative, or implemented in a way that failed to safeguard Agency dollars.

This directive shall be implemented by personnel in the Office of the Chief Financial Officer, the Office of Mission Support, and all relevant program and regional offices responsible for the execution of the Agency's programs, consistent with all notice and procedural requirements in each affected award, agreement, or other instrument. Whenever a program or award has been identified, Agency personnel shall utilize all available means to ensure necessary review for any administrative and criminal violations.

If any program, award, or action is deemed inconsistent with necessary financial and oversight procedural requirements or grant conditions, the Agency shall, where permitted by applicable law, take immediate action to ensure compliance. This includes coordination and further referral to the Office of the Inspector General and other entities to ensure full accountability and prosecution where applicable.

Notwithstanding this directive, any disbursements on open grant awards that were paused due to Office of Management and Budget Memorandum M-25-13 or any Executive Order underlying that Memorandum shall continue to be immediately released, as the Agency initiated on February 3, 2025.

Thank you for your continued service to ensure the effective implementation and use of taxpayer dollars.

| | |
|---|---|
| **From:** | Budget and Planning |
| **Sent:** | Thursday, February 13, 2025 3:31 PM |
| **To:** | Budget and Planning; OCFO-SBO; OCFO-SBO-STAFF; OCFO-Regional-Comptroller; OCFO-Regional Budget Officers; OCFO-SROs; Regional Mission Support Division - Directors; Regional Mission Support Division - Directors; OCFO-FCOs; Leadership_Deputy_Regional_Administrators; Leadership_Deputy_Assistant_Administrators |
| **Cc:** | Wise, Melissa; Legare, Pamela; Rogers, JoanB; Coogan, Daniel; Kalikhman, Yulia; Gulamali, Adil; Lavergne, Dany; Miller, Renee; Jennette, Vonda; Luebbering, Gregory; Henry, Latonya; Talbert-Duarte, Angelia; Goerke, Ariadne; Askew, Wendel; Holden, Allison; Kadeli, Lek; Jones-Peeler, Meshell; Lane, Gary; Robinson, Angel; Katz, Brian; Cardenas, Andrew; Li, Sylvana; Beg, Gul; Cottrill, Edward; Hurley, Kevin; Humes, Hamilton; Wang, Lili |
| **Subject:** | RE: Additional Information on IIJA and IRA - program review pause |
| **Importance:** | High |
| **Categories:** | Reference |

Sharing another update as the program review proceeds.

Obligations from EPA already made as of 3 PM EST today can be released for payment. The agency will continue robust oversight of these funds and take appropriate action if any of them are found to be used outside of the terms and conditions of their agreements.

Note this excludes the Greenhouse Gas Reduction Fund.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 6:04 PM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; Henry, Latonya <Henry.Latonya@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>; Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>; Lane, Gary <Lane.Gary@epa.gov>; Robinson, Angel <robinson.angel@epa.gov>; Boyd, Wyatt <Boyd.Wyatt@epa.gov>; Katz, Brian <Katz.Brian@epa.gov>; Cardenas, Andrew <Cardenas.Andrew@epa.gov>; Li, Sylvana <li.sylvana@epa.gov>; Beg, Gul <Beg.Gul@epa.gov>; Cottrill, Edward <Cottrill.Edward@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA - program review pause

Pursuant to the review of financial assistance programs announced by the Acting Deputy Administrator

on February 6, the following accounts are temporarily paused for new obligations or disbursements for assistance agreements, loans, rebates, interagency agreements, procurements, and no-cost actions pending a review for compliance with applicable administrative rules and policies.

Air Quality Sensors in Low Income and Disadvantaged Communities (OAR) (STAG)
Clean Heavy-Duty Vehicles (OAR) (STAG)
Clean Heavy-Duty Vehicles in Nonattainment Areas (OAR) (STAG)
Clean School Bus Program (STAG)
Competitive Grants (OAR) (STAG)
Diesel Emissions Reductions (OAR) (STAG)
Emissions from Wood Heaters (OAR/ORD) (STAG)
Environmental and Climate Justice Block Grants – Technical Assistance (OEJECR)
Environmental and Climate Justice Block Grants (OEJECR)
Environmental Product Declaration Assistance (OCSPP/ORD/OAR)
Fenceline Air Monitoring and Screening Air Monitoring (OAR/ORD) (STAG)
Funding for the Implementation of the American Innovation and Manufacturing Act (OAR)
Funding for Section 211 of the Clean Air Act – Advanced Biofuels (OAR)
GHG Air Pollution Implementation Grants (OAR) (STAG)
GHG and Zero Emission Standards for Mobile Sources (OAR) (STAG)
GHG Pollution Planning Grants (OAR) (STAG)
Grants to Reduce Air Pollution at Ports (OAR) (STAG)
Grants to Reduce Air Pollution at Ports in Nonattainment Areas (OAR) (STAG)
Greenhouse Gas Corporate Reporting (OAR) (STAG)
Greenhouse Gas Reduction Fund – General Assistance (OA) (STAG)
Greenhouse Gas Reduction Fund – Low Income and Disadvantaged Communities (OA) (STAG)
Greenhouse Gas Reduction Fund – Zero Emision Technologies (OA) (STAG)
Implementation / Accountability (OAR)
Implementation and Compliance (OECA)
Industry Outreach (OAR)
Low Embodied Carbon Labeling for Construction Materials for Transportation Methane Monitoring (OCSPP/OAR/ORD)
Multipollutant Monitoring Stations (OAR) (STAG)
State/Tribal/Local Government Outreach (OAR)
Technical Assistance for Low Income Communities (OAR)

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 11:29 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

We are working expeditiously to carry out the attached and request your assistance where appropriate.

*(excerpt)*

Notwithstanding this directive, any disbursements on open grant awards that were paused due to Office of Management and Budget Memorandum M-25-13 or any Executive Order underlying that Memorandum shall continue to be immediately released, as the Agency initiated on February 3, 2025.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Wednesday, February 5, 2025 11:00 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

Clarifying the compound sentence in the original message.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for:

- federal financial assistance;
- Superfund;
- and the accounts (originally) attached.

Note that thousands of accounts are involved and this is a manual process.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Tuesday, February 4, 2025 1:46 PM
**To:** OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** Additional Information on IIJA and IRA

**Importance:** High

This message provides additional detail to the attached message from the Acting Chief Financial Officer.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for all federal financial assistance, including cooperative assistance agreements, all Superfund, and the accounts attached.

We will continue to keep the community updated as we implement Orders. Please note that effectuation in agency systems is occurring and requires sequencing.

*Please share this information within EPA as necessary to execute.*

file:///C/...02%20-%20RE%20Additional%20Information%20on%20IIJA%20and%20IRA%20-%20program%20review%20pause%20.htm[2/14/2025 10:11:11 AM]

EPA_00051272

Message

---

**From**: Wise, Melissa [wise.melissa@epa.gov]
**Sent**: 2/19/2025 8:41:21 PM
**To**: OMS-OGD-GMOs Only [OMS-OGD-GMOs-Only@epa.gov]
**CC**: OCFO-SROs [OCFO_SROs@epa.gov]; OMS-OGD-Grants JROs [OMS-OGD-Grants-JROs@epa.gov]; Regional Mission Support Division - Directors [Regional_Mission_Support_Division_Directors@epa.gov]; Regional Mission Support Division - Deputy Directors [Regional_Mission_Support_Division_Deputy_Directors@epa.gov]; Coogan, Daniel [Coogan.Daniel@epa.gov]
**Subject**: RE: Additional Information on IIJA and IRA - program review pause

Good afternoon, GMOs,

I am sharing approved language which can be utilized in response to any inquiries:

"EPA worked expeditiously to enable payment accounts for IIJA and IRA grant recipients, so funding is now accessible to all recipients."

Thank you,
Melissa

---

**From:** Wise, Melissa
**Sent:** Wednesday, February 19, 2025 12:25 PM
**To:** OMS-OGD-GMOs Only <OMS-OGD-GMOs-Only@epa.gov>
**Cc:** OCFO-SROs <OCFO_SROs@epa.gov>; OMS-OGD-Grants JROs <OMS-OGD-Grants-JROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Deputy Directors <Regional_Mission_Support_Division_Deputy_Directors@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA - program review pause

Good afternoon, GMOs,

As a follow-up to the information shared below, OCFO has confirmed that all grants are now unsuspended in ASAP, except for the grants on the attached list which are still under review.

Outside of the grants on the attached list, any obligations EPA made as of 3pm EST on 2/13 can be released for payment.

Thank you,
Melissa

---

**From:** Wise, Melissa
**Sent:** Thursday, February 13, 2025 3:46 PM
**To:** OMS-OGD-GMOs Only OMS-OGD-GMOs-Only@epa.gov
**Cc:** OCFO-SROs OCFO_SROs@epa.gov; OMS-OGD-Grants JROs OMS-OGD-Grants-JROs@epa.gov; Regional Mission Support Division - Directors Regional_Mission_Support_Division_Directors@epa.gov; Regional Mission Support Division - Deputy Directors <Regional_Mission_Support_Division_Deputy_Directors@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Subject:** FW: Additional Information on IIJA and IRA - program review pause
**Importance:** High

Good afternoon, GMOs,

For your situational awareness.