*Id.* at 30 (internal quotation marks and citation omitted). Again, all Plaintiff States rely on Federal funds to provide essential services to their residents, ranging from primary and secondary education to healthcare to disaster relief. But the OMB Directive's abrupt about-face—purporting to terminate access to Federal funds on 24 hours' notice—not only deprives Plaintiff States of those funds and threatens their ability to provide those services, it also effectively prevents Plaintiff States from making effective plans for the termination or cessation of Federal funding and the replacement of Federally funded programs with their State equivalents. The OMB Directive does not even acknowledge these interests, much less explain why they might warrant (in Defendants' view) less importance than whatever factors motivated the policy set out in the OMB Directive. "Making that difficult decision was the agency's job, but the agency failed to do it." *Id.* at 32.

The OMB Directive also does not reflect any attempt at all to consider alternative approaches to the policy it sets out. *See California v. EPA*, 72 F.4th 308, 317 (D.C. Cir. 2023) (noting that an agency action may be "arbitrary or capricious" where it "ignore[s] an obvious alternative"). The OMB Directive asserts that an across-the-board "pause" in Federal disbursements is needed to permit the Executive to "review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities." OMB Directive, at 2. But it does not explain why such a dramatic step—the effective rescission of billions of dollars in obligated funds—is necessary to permit the incoming administration to "review" Federal spending for compliance with Federal law and, to the extent permissible, the administration's policy priorities. And the OMB Directive does not reflect any effort to consider the obvious alternatives to its sweeping policy—for instance, conducting its "review" absent a pause in Federal funds, or pausing only grants and other Federal financial assistance where it has some power to act. The failure to consider those alternatives, too, is arbitrary and capricious.

15

EPA_00052955

Indeed, the OMB Directive fails to articulate *any* plausible rationale that would support Defendants' extreme decision. It is "a fundamental requirement of administrative law . . . that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (internal citation and quotation marks omitted). "[C]onclusory statements will not do; an agency's statement must be one of *reasoning.*" *Id.* (internal citation and quotation marks omitted); *see also Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (an agency must "articulate[] a satisfactory explanation for [its] decision" (internal citation and quotation marks omitted)). Here, the OMB Directive sets forth no reasoning sufficient to justify its extraordinary policy shift. It states that Federal funds "should be dedicated to advancing Administration priorities," OMB Directive, at 1, and identifies a range of projects that it deems contrary to the policy priorities of the new administration, *see id.* (describing "Marxist equity, transgenderism and green new deal social engineering policies"), but it does not explain why—even presuming Defendants had authority to terminate Federal funding that they determined did not comply with their policy priorities—an immediate, across-the-board funding freeze, one untethered to Federal statute, regulation, or contract term, was the appropriate means for pursuing that end. Although the OMB Directive explains that the "temporary pause will provide the Administration time to review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities," OMB Directive, at 2, it does not explain why a "pause" on funding is necessary to provide Defendants with time to review Federal funding—nor, for that matter, how a sweeping and categorical "pause" in Federal disbursements could be "consistent with the law," *id.*, in the first place. Plaintiff States are likely to show that the OMB Directive is arbitrary and capricious.

16

## C. The OMB Directive is Unconstitutional (Count III and IV)

Finally, even if the Executive had some statutory basis for the power it seeks to assert, that power would violate bedrock separation of powers principles, the Spending Clause, and the Tenth Amendment.

The Constitution "exclusively grants the power of the purse to Congress, not the President." *City & Cnty. of San Francisco*, 897 F.3d at 1231. By contrast, there is "no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998). The President can influence the legislative process in some smaller ways—the President "shall from time to time give to the Congress Information on the State of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient . . . ." U.S. Const. art. II, § 3. Further, "after a bill has passed both Houses of Congress, but 'before it becomes a Law,' it must be presented to the President." *Clinton*, 524 U.S. at 438-39 (quoting U.S. Const. art. I, § 7, cl. 2). Ultimately, however, under "the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952). "The Constitution limits his functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad." *Id.*

Through the OMB Directive, the Executive is claiming a breathtaking power to suspend all Federal grant disbursements and obligations regardless of the specific statutes, regulations, and terms, which govern grants—especially formula grants. Congress is the branch of government that has the authority to modify the statutory authorization of specific streams of funding, not the Executive.

To the extent the OMB Directive purports to impose new funding conditions on the States, it likewise also violates the Tenth Amendment and the Spending Clause. If the Federal government

EPA_00052957

"desires to condition the States' receipt of federal funds, it 'must do so unambiguously.'" *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). But the OMB Directive appears to announce—with less than 24 hours' notice—a sweeping policy freezing disbursement of all Federal funds "that may be implicated by" seven executive orders. OMB Directive, at 2. That policy shift fails to provide Plaintiff States with the "clear notice" that they are entitled to under *Pennhurst*. 451 U.S. at 25. And, because the purpose and effect of the policy is to place new conditions on funds already obligated to specific States for specific purposes, it violates the basic rule that the Federal government cannot "surprise[] [S]tates with 'post acceptance or "retroactive" conditions.'" *City of Los Angeles*, 929 F.3d at 1174-75 (quoting *Pennhurst*, 451 U.S. at 25); *accord Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 584 (2012). The OMB Directive is thus not only contrary to statute, it also violates basic constitutional principles, including the separation of powers, the Spending Clause, and the Tenth Amendment.

## III. Plaintiff States Will Be Irreparably Harmed Absent a Temporary Restraining Order.

Plaintiff States rely on Federal funds to provide essential services for their residents every day—services that Congress specifically contemplated and authorized such funds to support. State health systems, for instance, rely on Federal funding to support hospitals, community health centers, and facilities for children and the elderly. Compl. 78, 86-87, 90. States rely on disaster funds from FEMA to rebuild homes and bridges—including, most recently, to help California's residents recover from devastating fires estimated to have caused over $150 billion in economic losses. *Id*. ¶ 80. State education systems, too, rely on formula grants from Federal agencies to improve teaching and learning in high-poverty schools. *Id*. ¶¶ 84-85. Imperiling this funding even for a temporary period is unquestionable irreparable harm. The OMB Directive's breadth justifies

EPA_00052958

equally broad temporary relief—it purports to pause enormous swathes of Federal funding, sowing immediate confusion and chaos that necessitates temporary relief halting its implementation.

There has apparently been a third document circulated by OMB attempting to clarify that the pause is not "across-the-board," and does not impact funding like Medicaid. Regardless of this attempt at clarification, the portals for processing Medicaid Disbursement were inoperable across numerous of Plaintiff States for hours. The system for drawing down Head Start and the Child Care Development Block Grant Fund were also down for some states. Plaintiff States became aware of this document via X (formerly Twitter). This directive does not describe how particular grant programs are treated, and the pausing continues as to nearly all Federal funding. This directive suggests that in some circumstances, a pause "could be a day," but it does not provide an end date, and the process required by the OMB Directive, including analysis and reports by agencies demonstrates that delays is more likely to be weeks or months, with no way of determining the actual length of time.

## IV. The Public Interest and the Balance of the Equities Strongly Favor Entry of a Temporary Restraining Order.

When the government is a party, as it is here, "the final two factors in the temporary restraining order analysis—the balance of the equities and the public interest—merge." *Jones v. Wolf*, 467 F. Supp. 3d 74, 93-94 (W.D.N.Y. 2020) (citing *Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018)). Here, both factors strongly favor granting Plaintiff States' application for a temporary restraining order.

As an initial matter, Plaintiff States have established both an overwhelming likelihood of prevailing on the merits of their challenge to the OMB Directive and grave, irreparable harm to their residents in the absence of an immediate injunction. Plaintiff States' "extremely high likelihood of success on the merits is a strong indicator that a preliminary injunction would serve

19

the public interest." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also Saget v. Trump*, 375 F. Supp. 3d 280, 377 (E.D.N.Y. 2019) ("Because Plaintiffs have shown both a likelihood of success on the merits and irreparable harm, it is also likely the public interest supports preliminary relief." (citing *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017)).

Moreover, "there is a substantial public interest 'in having governmental agencies abide by the Federal laws that govern their existence and operations.'" *League of Women Voters*, 838 F.3d at 12 (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). Conversely, courts routinely observe that "there is generally no public interest in the perpetuation of unlawful agency action." *Planned Parenthood of N.Y.C.*, 337 F. Supp. 3d at 343 (collecting cases) (internal quotation marks, citations, and alterations omitted). Here, as Plaintiff States have shown, the OMB Directive transgresses both the APA and several constitutional limitations. There is, therefore, a strong public interest in curtailing OMB's unlawful conduct and requiring the executive branch to comply with basic constitutional, statutory, and procedural requirements, as well as the terms of the agreements into which they entered. Put simply, the public has a strong interest in the Federal government playing by the rules. *See, e.g.*, *Deferio v. City of Syracuse*, 193 F. Supp. 3d 119, 131 (N.D.N.Y. 2016) ("[I]t is decidedly against the public interest to abide the continued enforcement of an unconstitutional policy or law.").

The public also has strong reliance interests in preserving the continuity of existing Federal grant funding. Plaintiff States have detailed the myriad harms they and their residents will confront if the OMB Directive goes into effect. *See* Hoffman Aff. at ¶¶ 3-31. To take one example, Plaintiff States' health departments receive billions of dollars in essential Federal grant funding that may be "paused" as soon as this evening. The absence of these funds will have immediate and

EPA_00052960

dangerous consequences. *See,* Hoffman Aff. at ¶¶ 3-31. Courts have little trouble concluding that the public "benefit[s] from ensuring public health and safety." *Jones*, 467 F. Supp. 3d at 94; *see also Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 61 (D.D.C. 2020) ("There is clearly a robust public interest in safeguarding prompt access to health care.").

Likewise, Plaintiff States receive billions of dollars in Federal grants for critical public services that ensure access to education, promote clean air and water, protect public safety, fight forest fires, and support the health of infants—to name just a handful of additional examples. The interruptions in Federal funding that are likely to result from the OMB Directive will impair all of these substantial interests. *See, e.g.*, *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 651 (2022) ("[T]he State has a strong sovereign interest in ensuring public safety and criminal justice within its territory."); *Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1180-81 (9th Cir. 2011) (noting that state "clearly has an especially powerful interest in controlling the harmful effects of air pollution").

On the other end of the scale, the Federal government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). Since the OMB Directive is unlawful, Defendants have no cognizable interest in its enforcement.

The OMB Directive is a blunt effort to effectuate vague policy changes that the Executive does not have authority to unilaterally impose, and it does not reflect any particularly compelling public interest. To the extent that Defendants assert that existing Federal grants constitute a "waste of taxpayer dollars" attributable to "Marxist equity, transgenderism, and green new deal social

EPA_00052961

engineering policies," OMB Directive, at 1, "those harms are insufficiently grave to overcome the much more substantial countervailing harms" to Plaintiff States, *League of Women Voters*, 838 F.3d at 13. And to the extent the OMB Directive purports to "support hardworking American families," OMB Directive, at 2, Plaintiff States have demonstrated that implementing the OMB Directive will instead irreparably harm a wide swath of Americans who benefit from programs that receive Federal grant funding. In short, the public interest and the equities are unambiguous. The OMB Directive is unlawful and there is no public interest in its enforcement. *See Planned Parenthood of N.Y.C.*, 337 F. Supp. 3d at 343. A temporary restraining order will protect a vital source of funding for core public programs.

## CONCLUSION

"[P]articularly when so much is at stake, [] 'the Government should turn square corners in dealing with the people.'" *Regents of the Univ. of Cal.*, 591 U.S. at 24 (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229 (1961) (Black, J., dissenting)). Here, the executive branch of the Federal government has overstepped the bounds of its authority through an unlawful, undemocratic effort to withhold billions in Federal grant, loan, or other financial assistance program funds, to the great detriment of the Plaintiff States and their millions of residents. For these reasons, Plaintiff States respectfully request a temporary restraining order as this case proceeds.

EPA_00052962

Respectfully submitted,

**LETITIA JAMES**
Attorney General of the State of New York

By: /s Rabia Muqaddam
Rabia Muqaddam*
Special Counsel for Federal Initiatives
Molly Thomas-Jensen*
Zoe Levine*
Colleen K. Faherty*
28 Liberty Street
New York, NY 10005
(212) 416-8883

**ROB BONTA**
Attorney General of the State of California

MICHAEL L. NEWMAN*
THOMAS PATTERSON*
Senior Assistant Attorneys General
CHRISTINE CHUANG*
LARA HADDAD*
Supervising Deputy Attorneys General

/s/ Laura L. Faer
LAURA L. Faer
Supervising Deputy Attorney General
NICHOLAS GREEN*
CARLY MUNSON*
KENNETH SUGARMAN*
CHRISTOPHER KISSEL*
Deputy Attorneys General
California Attorney General's Office
1515 Clay St.
Oakland, CA 94612
(510) 879-3304
laura.faer@doj.ca.gov

**KWAME RAOUL**
ATTORNEY GENERAL STATE OF ILLINOIS

By: /s/ Alex Hemmer
Alex Hemmer*

23

EPA_00052963

Deputy Solicitor General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526
alex.hemmer@ilag.gov

*Counsel for the State of Illinois*


**PETER F. NERONHA**
ATTORNEY GENERAL OF RHODE ISLAND

/s/ Kathryn M. Sabatini
Kathryn M. Sabatini (RI Bar No. 8486)
*Civil Division Chief*
*Special Assistant Attorney General*

/s/ Sarah W. Rice
Sarah W. Rice (R.I. Bar No. 10465)
*Deputy Chief, Public Protection Bureau*
*Assistant Attorney General*
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
srice@riag.ri.gov

*Counsel for the State of Rhode Island*


**Matthew J. Platkin**
Attorney General of New Jersey

*/s/ Angela Cai*
Angela Cai*
*Executive Assistant Attorney General*

Jeremy M. Feigenbaum*
*Solicitor General*

Shankar Duraiswamy*
*Deputy Solicitor General*

Office of the Attorney General
25 Market Street
Trenton, NJ 08625

24

609) 376-3377
Angela.Cai@njoag.gov

*Counsel for the State of New Jersey*


**Andrea Joy Campbell**
Attorney General of Massachusetts

*/s/ Katherine Dirks*
Katherine Dirks *
Deputy Chief, Government Bureau
Office of the Attorney General
One Ashburton Place, 20th Floor
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

**KRIS MAYES**
*Attorney General of Arizona*

*s/ Joshua D. Bendor*
Joshua D. Bendor*
Solicitor General
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-3333
Joshua.Bendor@azag.gov
ACL@azag.gov


**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Shannon Stevenson**
Shannon Stevenson, CO Reg. No. 35542
Solicitor General
Colorado Department of Law
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Phone: (720) 508-6749

EPA_00052965

Shannon.Stevenson@coag.gov
Attorney for State of Colorado

STATE OF CONNECTICUT
**WILLIAM TONG**
ATTORNEY GENERAL

By: */s/ Michael K. Skold*
      Michael K. Skold*
       Solicitor General
       165 Capitol Ave
       Hartford, CT 06106
       (860) 808-5020
       Michael.skold@ct.gov

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Ian R. Liston*
Ian R. Liston*
Director of Impact Litigation
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
ian.liston@delaware.gov

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

/s/ Andrew C. Mendrala___
ANDREW C. MENDRALA*
Assistant Attorney General

Public Advocacy Division
Office of the Attorney General for the D.C.
Sixth Street, NW
Washington, D.C. 20001
(202) 724-9726
Andrew.mendrala@dc.gov
Counsel for the District of Columbia

26

**ANNE E. LOPEZ**
ATTORNEY GENERAL OF HAWAIʻI

*/s/Kalikoʻonālani D. Fernandes*
David D. Day*
*Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes*
*Solicitor General*
Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov


**AARON M. FREY**
Attorney General for
the State of Maine

/s/ Jason Anton
        JASON ANTON*
        Assistant Attorney General
        Office of the Attorney General
         6 State House Station
        Augusta, ME  04333-0006
Tel.:  207-626-8800
Fax:  207-287-3145
        jason.anton@maine.gov


**ANTHONY G. BROWN**
ATTORNEY GENERAL OF MARYLAND

/s/ Adam D. Kirschner
Adam D. Kirschner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
akirschner@oag.state.md.us
410-576-6424

*Counsel for the State of Maryland*

27

EPA_00052967

**DANA NESSEL**
Attorney General of Michigan

By: /s/ Linus Banghart-Linn
Linus Banghart-Linn*
Chief Legal Counsel
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 281-6677
Banghart-LinnL@michigan.gov

*Attorneys for the State of Michigan*


**KEITH ELLISON**
Attorney General of Minnesota

By /s/ **Liz Kramer***
Solicitor General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1010
liz.kramer@ag.state.mn.us

Attorneys for State of Minnesota


**AARON D. FORD**
ATTORNEY GENERAL OF NEVADA
*/s/ Heidi Parry Stern*
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-5708
HStern@ag.nv.gov
Counsel for the State of Nevada

28

**JEFF JACKSON**
Attorney General of North Carolina

LAURA HOWARD*
Chief Deputy Attorney General

By /s/ Daniel P. Mosteller*
Associate Deputy Attorney General
North Carolina Department of Justice
PO Box 629
     Raleigh, NC 27602
     919-716-6026
dmosteller@ncdoj.gov

*Attorneys for State of North Carolina*


STATE OF NEW MEXICO
**RAÚL TORREZ**
ATTORNEY GENERAL

/s/ Anjana Samant
     Anjana Samant*
     Deputy Counsel for Impact Litigation
     New Mexico Department of Justice
     P.O. Drawer 1508
     Santa Fe, NM 87504-1508
     (505) 490-4060
     asamant@nmdoj.gov


**DAN RAYFIELD**
Attorney General of Oregon

CHRISTINA L. BEATTY-WALTERS*
     Senior Assistant Attorney General
     Trial Attorney
     Tel (971) 673-1880
     Fax (971) 673-5000
     Tina.BeattyWalters@doj.oregon.gov
     Of Attorneys for Defendants

EPA_00052969

**CHARITY R. CLARK**
Attorney General of Vermont

By: /s/ Jonathan T. Rose
   Jonathan T. Rose*
   Solicitor General
   109 State Street
   Montpelier, VT 05609
   (802)828-3171
Jonathan.rose@vermont.gov

**NICHOLAS W. BROWN**
Attorney General of Washington

*s/ Andrew Hughes*
ANDREW HUGHES*
LEAH BROWN*
Assistant Attorneys General
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
andrew.hughes@atg.wa.gov
leah.brown@atg.wa.gov.

*Attorneys for Plaintiff State of Washington*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

/s/ Aaron J. Bibb

Aaron J. Bibb
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0810
bibbaj@doj.state.wi.us

30

EPA_00052970

Counsel for the State of Wisconsin

EPA_00052971

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF RHODE ISLAND; STATE OF NEW JERSEY; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NORTH CAROLINA; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT STATE OF WASHINGTON; STATE OF WISCONSIN, | C.A. No. 1:25-cv-00039-JJM-PAS |
| Plaintiffs, | |
| v. | |
| DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES; U.S. OFFICE OF MANAGEMENT AND BUDGET; MATTHEW J. VAETH, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR OF THE U.S. OFFICE OF MANAGEMENT AND BUDGET; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY; PATRICIA COLLINS IN HER OFFICIAL CAPACITY AS TREASURER OF THE U.S.; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; DOROTHY A. FINK, M.D., IN HER OFFICIAL CAPACITY AS ACTING SECRETARY OF HEALTH AND HUMAN SERVICES; U.S. DEPARTMENT OF EDUCATION; DENISE CARTER, IN HER OFFICIAL CAPACITY AS ACTING SECRETARY OF EDUCATION; U.S. FEDERAL EMERGENCY MANAGEMENT AGENCY; CAMERON HAMILTON, IN HIS OFFICIAL CAPACITY AS ACTING ADMINISTRATOR OF THE U.S. FEDERAL EMERGENCY MANAGEMENT | |

1

AGENCY; U.S. DEPARTMENT OF
TRANSPORTATION;
JUDITH KALETA, IN HER OFFICIAL
CAPACITY AS ACTING SECRETARY OF
TRANSPORTATION;
U.S. DEPARTMENT OF LABOR; VINCE
MICONE, IN HIS OFFICIAL CAPACITY AS
ACTING SECRETARY OF LABOR; U.S.
DEPARTMENT OF ENERGY; INGRID KOLB, IN
HER OFFICIAL CAPACITY AS ACTING
SECRETARY OF THE U.S. DEPARTMENT OF
ENERGY; U.S. ENVIRONMENTAL
PROTECTION AGENCY; JAMES PAYNE, IN HIS
OFFICIAL CAPACITY AS ACTING
ADMINISTRATOR OF THE U.S.
ENVIRONMENTAL PROTECTION AGENCY;
U.S. DEPARTMENT OF HOMELAND
SECURITY; KRISTI NOEM, IN HER CAPACITY
AS SECRETARY OF THE U.S. DEPARTMENT
OF HOMELAND SECURITY; U.S.
DEPARTMENT OF JUSTICE; JAMES R.
McHENRY III, IN HIS OFFICIAL CAPACITY AS
ACTING ATTORNEY GENERAL OF THE U.S.
DEPARTMENT OF JUSTICE; THE NATIONAL
SCIENCE FOUNDATION and DR.
SETHURAMAN PANCHANATHAN, IN HIS
CAPACITY AS DIRECTOR OF THE NATIONAL
SCIENCE FOUNDATION,

   Defendants.

## [PROPOSED] TEMPORARY RESTRAINING ORDER

To maintain the status quo until the Court may rule on Plaintiffs' forthcoming motion for

preliminary injunction, it is hereby ORDERED that a TEMPORARY RESTRAINING ORDER

is entered in this case until this Court rules upon Plaintiffs' motion for a preliminary injunction,

which shall be filed on a date ordered by the Court.

During the pendency of the Temporary Restraining Order, Defendants shall refrain from

pausing, freezing, impeding, blocking, canceling, or terminating Defendants' compliance with

EPA_00052973

awards and obligations to provide federal financial assistance, and Defendants shall not impede Plaintiffs' access to such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms.

To the extent Defendants engage in the "identif[ication] and review" of federal financial assistance programs, as identified in the OMB Directive as referenced in the Complaint, such exercise shall not effect a pause, freeze, impediment, block, cancellation, or termination of Defendants' compliance with such awards and obligations, except on the basis of the applicable authorizing statutes, regulations, and terms.

Defendants shall also be restrained and prohibited from reissuing, adopting, implementing, or otherwise giving effect to the OMB Directive under any other name or title or through any other Defendants (or agency supervised, administered, or controlled by any Defendant), such as the continued implementation identified by the White House Press Secretary statement of January 29, 2025.

Defendants shall provide written notice of this order to all Defendants and agencies and their employees, contractors, and grantees within two hours of the issuance of this Order.

Defendants shall comply with all notice and procedural requirements set forth in the award, agreement, or other instrument relating to decisions to stop, delay, or otherwise withhold federal financial assistance programs.

The TRO shall be in effect for 14 days from the date of this Order, and may be extended for an additional 14 days for good cause shown.

It is so ordered.

3

EPA_00052974

By the Court:

_____          _____
Dated                        McConnell, Chief Judge

EPA_00052975

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD TRUMP, IN HIS OFFICIAL<br>CAPACITY AS PRESIDENT OF THE<br>UNITED STATES, *et al.*,<br><br>                    Defendants. | Civil Action No. 1:25-cv-39 (JJM) |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED TEMPORARY RESTRAINING ORDER

Defendants respectfully submit this response to Plaintiffs' proposed temporary restraining order.  No relief is appropriate in this case, for the numerous reasons discussed below.  To the extent relief is awarded, however, it should comply with several further limits.

## I.    No Relief is Appropriate for Numerous Reasons

The President of the United States, along with the chief agency responsible for overseeing expenditures—the Office of Management and Budget (OMB)—plainly have authority to direct agencies to fully implement the President's agenda, consistent with each individual agency's underlying statutory authorities.  That is what President Trump has done in several Executive Orders including directions on federal spending, and that is what OMB did in the now-withdrawn Memorandum that is the focus of Plaintiffs' claims in this case. *See* OMB Mem. M-25-13, *Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs*

(Jan. 27, 2025) ("OMB Memo"). The President's authority to direct subordinate agencies to implement his agenda, subject to those agencies' own statutory authorities, is well-established. *See Bldg. & Const. Trades Dep't v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) ("[T]he President's power necessarily encompasses 'general administrative control of those executing the laws,' throughout the Executive Branch of government, of which he is the head." (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926), citation omitted)); *see also, e.g.*, *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012) ("[A]s an agency under the direction of the executive branch, it must implement the President's policy directives to the extent permitted by law."); *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981) ("The authority of the President to control and supervise executive policymaking is derived from the Constitution.").

Notwithstanding this clear authority, Plaintiffs here request sweeping relief, on an emergency basis, that would effectively disable the President and OMB from providing these types of instructions to agencies. There is no valid basis for awarding such relief, and Plaintiffs' motion for a temporary restraining order should be denied.

**First**, this Court lacks jurisdiction. Plaintiffs' claims in this case are directed solely against the OMB Memo, which has now been withdrawn thereby rendering their claims moot. *See Harris v. Univ. of Massachusetts Lowell,* 43 F.4th 187, 192 (1st Cir. 2022) ("claims for injunctive relief are inescapably moot" when a "polic[y] no longer appl[ies]"). Whatever challenges they may wish to bring against other

EPA_00052977

actions, that is properly the subject of separate litigation. But Plaintiffs cannot use a Complaint and TRO motion directed against an OMB Memorandum as a basis for obtaining significantly broader relief against Defendants' federal funding decisions writ large.

Indeed, even with respect to the now-withdrawn OMB Memo, Plaintiffs have not established that they would have suffered irreparable injury as a result of the Memo's direction to agencies that they temporarily pause certain funding, to the extent permissible by law, pending a review to ensure that such funding is consistent with the President's priorities. Plaintiffs' filings portray the OMB Memo as an across-the-board suspension of all Federal financial assistance. Although Plaintiffs acknowledged that OMB had subsequently issued additional Guidance clarifying that the OMB Memo did *not* apply across-the-board and did *not* apply to many types of funding, *see, e.g.*, Compl. ¶ 3, Plaintiffs opted not to file that Guidance with the Court. *See* OMB Guidance (attached hereto).

Importantly, that Guidance makes plain that many of Plaintiffs' claimed harms and sources of funding would not be subject to the pause. *See id.* at 1 ("Any program not implicated by the President's Executive Orders is not subject to the pause."); *id.* at 1-2 ("[A]ny program that provides direct benefits to Americans is explicitly excluded from the pause and exempted from this review process. In addition to Social Security and Medicare, already explicitly excluded in the guidance, mandatory programs like Medicaid and SNAP will continue without pause. Funds for small businesses, farmers, Pell grants, Head Start, rental

3

EPA_00052978

assistance, and other similar programs will not be paused.").  Particularly in light of this Guidance, Plaintiffs have not carried their burden of establishing the need for immediate relief in the short timeframe relevant to litigating a preliminary-injunction motion.

**Second,** Plaintiffs cannot transform their lawsuit into a vehicle to seek relief against other actions, such as the President's Executive Orders or agencies' ongoing implementation of those Orders.  The President's Executive Orders are not subject to direct challenge; the Supreme Court has made clear that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867); *see also Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring in part).  And with respect to agency actions, the Administrative Procedure Act (APA) permits review only over "final agency action," 5 U.S.C. § 704, and such final agency actions must be "circumscribed [and] discrete." *Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 62 (2004).  The APA does not provide for "general judicial review of [an agency's] day-to-day-operations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1999).  But that is precisely what Plaintiffs seek here, by demanding ongoing judicial oversight over twenty-six Defendants' funding decisions.  And they seek such relief despite their Complaint identifying only one agency action—the OMB Memo—that has now been withdrawn and was not itself a final agency action determining rights and consequences with respect to any particular funding award.

**Third,** even if the Court were willing to consider Plaintiffs' claims on the

4

EPA_00052979

merits, Plaintiffs have not established a likelihood of success.  The overarching theme of Plaintiffs' claims is that OMB's categorical pause in funding was unlawful.  But as a factual matter, OMB did not direct a categorical pause—it directed that agencies pause certain funding, to the extent permissible by law, consistent with their own individual authorities.  Courts have routinely upheld such orders.  *See, e.g.*, *Allbaugh*, 295 F.3d at 32; *Common Cause v. Trump*, 506 F. Supp. 3d 39, 47 (D.D.C. 2020). Definitionally, directing executive agencies to take action *to the extent consistent with applicable law* cannot be interpreted as an order to violate the law.

As a legal matter, moreover, temporary pauses in funding are commonplace and accepted by the Legislative Branch. *See City of New Haven v. United States*, 809 F.2d 900, 901 (D.C. Cir. 1987) (explaining how Congress has previously "acknowledged that 'the executive branch necessarily withholds funds on hundreds of occasions during the course of a fiscal year' and such delays may result from the 'normal and orderly operation of the government'" (quoting H.R. Rep. No. 658, 93d Cong., 1st Sess. 41 (1971)).  The Government Accountability Office (GAO), itself an entity within the Legislative Branch, has approved of agencies "taking the steps it reasonably believes are necessary to implement a program efficiently and equitably, even if the result is that funds temporarily go unobligated."  *In re James R. Jones, House of Representatives*, B-203057 L/M, 1981 WL 23385 (Comp. Gen. Sept. 15, 1981).  The OMB Memo fits comfortably within this Executive Branch practice of short-term delays in order to determine how best to implement programs consistent

5

EPA_00052980

with the President's policy objectives and consistent with the underlying law
governing each program.

**Fourth**, the balance of the equities here weighs in favor of denying relief.
Plaintiffs have not established irreparable harm based on the actual terms of the
OMB Memo and OMB Guidance, and meanwhile they seek relief that would
effectively prohibit twenty-six federal agency Defendants, as well as the President
himself, from implementing the President's priorities consistent with their
constitutional and statutory authorities. "Any time a [government] is enjoined by a
court from effectuating statutes enacted by representatives of its people, it suffers a
form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts,
C.J., in chambers) (brackets omitted).

Thus, the proper course here is to deny relief entirely.  To the extent the
Court issues injunctive relief, the United States respectfully requests that such
relief be stayed pending the disposition of any appeal that is authorized, or at a
minimum that such relief be administratively stayed for a period of seven days to
allow the United States to seek an emergency, expedited stay from the court of
appeals if an appeal is authorized.

## II.  Relief Should Be Limited In Five Ways

To the extent the Court considers entering Plaintiffs' proposed temporary
restraining order, that order should be limited in five ways to mitigate (albeit not
eliminate) the significant harms it would cause Defendants.

EPA_00052981

## 1. Limit Relief Only to What Is Challenged In This Case

It is axiomatic that Plaintiffs are not entitled to emergency injunctive relief that goes beyond the scope of what they challenge in this case. *See, e.g., Bird v. Barr*, No. 19-cv-1581, 2020 WL 4219784, at *2 (D.D.C. July 23, 2020) (a preliminary injunction "is not a generic means by which a plaintiff can obtain auxiliary forms of relief that may be helpful to them while they litigate unrelated claims"); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011) ("An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation."). Here, Plaintiffs' Complaint challenges only the now-rescinded OMB Memo, not any independent Executive Orders—which were issued prior to the OMB Memo and which Plaintiffs elected not to challenge. The scope of Plaintiffs' challenge is clear from Plaintiffs' Prayer for Relief, which asks for various forms of relief relating only to the "OMB Directive," and not to any Executive Orders. See Compl. at 35–36.

Thus, the Court's Order should make clear that it does not prohibit agencies from implementing the President's Executive Orders, to the extent permissible within the agency's underlying statutory authorities. Failure to include that clarification would highlight the extraordinarily intrusive nature of Plaintiffs' relief, prohibiting twenty-six Defendants from implementing the President's priorities consistent with their authorities, as they are required to do. *Sherley*, 689 F.3d at 784.

## 2. Limit Relief Only to Awards Involving Plaintiffs

It is a bedrock principle of equity that "injunctive relief should be no more

7

EPA_00052982

burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). In some provisions, Plaintiffs' proposed TRO seems to request relief only to awards involving the Plaintiffs here. *E.g.*, Prop. TRO at 3 ("Defendants shall not impede Plaintiffs' access to such awards and obligations"). Other provisions, however, would seem to restrict Defendants' activities with respect to *all* federal financial assistance, regardless of recipient. *E.g.*, *id.* at 2 ("Defendants shall refrain from pausing, freezing, impeding, blocking, canceling, or terminating Defendants' compliance with awards and obligations to provide federal financial assistance").

There is no basis for extending relief to non-parties in this suit, and absent that limitation, Plaintiffs' requested TRO would threaten to interfere with implementation of Executive Orders that do not appear to have any effect on Plaintiffs. *See, e.g.*, Reevaluating and Realigning United States Foreign Aid (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/reevaluating-and-realigning-united-states-foreign-aid/. Accordingly the Court should include a paragraph confirming that all obligations in the TRO apply only with respect to awards involving Plaintiffs.

### 3. Eliminate Paragraph on Purported Re-Issuance of OMB Memo, or Clarify Defendants Are Allowed to Advise Agencies on Exercising Their Own Authority

Plaintiffs' proposed TRO includes a paragraph requesting that the Court "restrain[] and prohibit[] [Defendants] from reissuing, adopting, implementing, or otherwise giving effect to the OMB Directive under any other name or title or through

8

any other Defendants . . . such as the continued implementation identified by the White House Press Secretary statement of January 29, 2025." Prop. TRO at 3.

Defendants do not understand the meaning of this paragraph or how they could be expected to determine whether any particular funding decision could be construed as "giving effect to the OMB Directive under any other name or title." *Id.* In particular, the OMB Memo instructed agencies to act "to the extent permissible under applicable law." OMB Memorandum M-25-13 at 2, ECF No. 1-1. And as discussed above, there is no apparent dispute that agencies are allowed to exercise their own independent authorities in administering their federal funding, as the preceding paragraphs of Plaintiffs' proposed TRO reflect. But any of those actions— *e.g.*, further instructions from OMB that agencies should act consistent with their own authorities, or any individual agency's own funding-related decision pursuant to its own authorities—could be construed as "giving effect to the OMB Directive under" a different "name or title," or through a different Defendant. Thus, this paragraph threatens to prohibit actions that are plainly lawful, and that are expressly permitted elsewhere in Plaintiffs' proposed TRO.

Moreover, the second half of the paragraph—prohibiting "the continued implementation identified by the White House Press Secretary statement"—is further problematic for failing to "state its terms specifically," and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed R. Civ. P. 65(d)(1)(C).

Given the problems inherent in this paragraph's vague language, and the risk

9

that this paragraph could enjoin large swaths of lawful efforts to implement Federal financial assistance, the simplest solution would be to delete the paragraph entirely. Notably, the paragraph is not necessary to address concerns about ensuring that funding continues, which would already be addressed by other paragraphs in Plaintiffs' proposed order. Thus, it should be deleted as unnecessary and overbroad. *Cf. Mickalis Pawn Shop*, 645 F.3d at 145 ("An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation.").

Regardless of whether the Court deletes the above-referenced paragraph, Defendants request that the Court include an additional paragraph making clear that nothing in the order interferes with Defendants' ability to exercise their lawful authorities, *i.e.*: "Nothing in this Order prohibits Defendants from giving directions to federal agencies regarding how to exercise their legal authority, or from exercising their own authorities pursuant to applicable authorizing statutes, regulations, and terms."

### 4. Eliminate Two-Hour Written Notice Requirement

Plaintiffs also request that the Court Order the twenty-six Defendants to "provide written notice of this order to all Defendants and agencies and their employees, contractors, and grantees within two hours of the issuance of this Order."

It is simply not feasible for twenty-six federal Defendants to disseminate the Court's Order, without knowing when that Order will issue, to the extraordinarily large universe of all "employees, contractors, and grantees" in a matter of only two

10

EPA_00052985

hours, especially in the absence of any demonstrated need. That order is far more "burdensome . . . than is necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017). When "fashioning interim relief," balancing the equities requires "focusing specifically on the concrete burdens that would fall on [both parties]." *Id.* at 580-81. Given the impracticability of providing notice in this short a time frame, Defendant respectfully requests this requirement be struck, or at least modified so as not to include an arbitrary timeframe for provision of notice.

### 5. Eliminate Relief Against the President

Plaintiffs' requested temporary restraining order seeks relief against all Defendants, which includes the President. But as discussed above, the Supreme Court has made clear that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." *Mississippi*, 71 U.S. at 501 (1867); *see also Franklin*, 505 U.S. at 827 (Scalia, J., concurring in part). Thus, any relief entered must not apply to the President.

*     *     *

Plaintiffs have not established the need for emergency, expedited relief in this matter, and any such relief would be highly burdensome to the Government. Thus, relief should be denied. To the extent the Court enters Plaintiffs' proposed temporary

11

EPA_00052986

restraining order, however, at a minimum it should be modified as set forth above.


Dated: January 30, 2025                    Respectfully Submitted,

                                           BRETT A. SHUMATE
                                           Acting Assistant Attorney General

                                           ALEXANDER K. HAAS
                                           Director

                                           */s/ Daniel Schwei*
                                           DANIEL SCHWEI
                                           Special Counsel
                                           ANDREW F. FREIDAH
                                           EITAN R. SIRKOVICH
                                           Trial Attorneys
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street NW
                                           Washington, DC 20530
                                           Tel.: (202) 305-8693
                                           Fax: (202) 616-8470
                                           Email: daniel.s.schwei@usdoj.gov

                                           *Counsel for Defendants*

EPA_00052987

## CERTIFICATION OF SERVICE

I hereby certify that on January 30, 2025, I electronically filed the within Certification with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System, thereby serving it on all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule Gen 305.

/s/ *Daniel Schwei*
Daneil Schwei

13

EPA_00052988



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

In implementing President Trump's Executive Orders, OMB issued guidance requesting that agencies temporarily pause, to the extent permitted by law, grant, loan or federal financial assistance programs that are implicated by the President's Executive Orders.

**Any program not implicated by the President's Executive Orders is not subject to the pause.**

The Executive Orders listed in the guidance are:

*Protecting the American People Against Invasion*

*Reevaluating and Realigning United States Foreign Aid*

*Putting America First in International Environmental Agreements*

*Unleashing American Energy*

*Ending Radical and Wasteful Government DEI Programs and Preferencing*

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*

*Enforcing the Hyde Amendment*

Any program that provides direct benefits to individuals is not subject to the pause.

The guidance establishes a process for agencies to work with OMB to determine quickly whether any program is inconsistent with the President's Executive Orders. A pause could be as short as day. In fact, OMB has worked with agencies and has already approved many programs to continue even before the pause has gone into effect.

Any payment required by law to be paid will be paid without interruption or delay.

**Q: Is this a freeze on all Federal financial assistance?**

A: No, the pause does not apply across-the-board. It is expressly limited to programs, projects, and activities implicated by the President's Executive Orders, such as ending DEI, the green new deal, and funding nongovernmental organizations that undermine the national interest.

**Q: Is this a freeze on benefits to Americans like SNAP or student loans?**

A: No, any program that provides direct benefits to Americans is explicitly excluded from the pause and exempted from this review process. In addition to Social Security and Medicare, already explicitly excluded in the guidance, mandatory programs like Medicaid and SNAP will continue without pause.

Funds for small businesses, farmers, Pell grants, Head Start, rental assistance, and other similar programs will not be paused. If agencies are concerned that these programs may implicate the President's Executive Orders, they should consult OMB to begin to unwind these objectionable policies without a pause in the payments.

**Q:  Is the pause of federal financial assistance an impoundment?**

**A:**  No, it is not an impoundment under the Impoundment Control Act.  It is a temporary pause to give agencies time to ensure that financial assistance conforms to the policies set out in the President's Executive Orders, to the extent permitted by law.

Temporary pauses are a necessary part of program implementation that have been ordered by past presidents to ensure that programs are being executed and funds spent in accordance with a new President's policies and do not constitute impoundments.

**Q: Why was this pause necessary?**

**A:**  To act as faithful stewards of taxpayer money, new administrations must review federal programs to ensure that they are being executed in accordance with the law and the new President's policies.



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

<u>**MEMORANDUM**</u>

DEPUTY ADMINISTRATOR

**SUBJECT:**   Review of Financial Assistance Programs

**FROM:**      Chad McIntosh, Acting Deputy Administrator

**TO:**        Gregg Treml, Acting Chief Financial Officer
               Kimberly Y. Patrick, Principal Deputy Assistant Administrator, OMS
               Deputy Assistant Administrators
               Deputy Associate Administrators
               Deputy Regional Administrators

Distribute as appropriate to those needed to carry out this direction.

Upon confirmation, EPA Administrator Lee Zeldin pledged to enthusiastically uphold the EPA's mission and our moral responsibility to be good stewards of our environment for generations to come. With that commitment is the promise to be accountable for the Agency's use of hard-earned American taxpayer dollars.

Congress has been clear on the need for oversight of funds provided to the Agency in the Inflation Reduction Act (IRA) (Pub. Law 117-169, Aug. 16, 2021, 136 Stat 1818) and other funding programs that may be improperly utilized. However, over the course of the prior Adminstration, several reports and investigations have raised serious concerns with the implementation of certain grant programs and subsequent grant awards.

Problems with implementation of these funding programs were egregiously confirmed from documented statements by Biden-Harris Administration political appointee staff at EPA describing the Agency's then funding push as "throwing gold bars off the Titanic."

In one example of the potential problematic implementation of programs, to expend, the Biden-Harris Adminstration utilized an external financial agent to hold funding, which is the first time the Agency has ever operated a grant funding program in that manner which could limit Agency oversight.

Not only have these instances been well documented, but during his confirmation hearing before the U.S. Senate Committee on Environment and Public Works and through additional Congressional requests, Administrator Zeldin has been specifically asked to ensure accountability of Agency funding. These documented accounts of potential waste, fraud, and abuse of hard-earned American taxpayer dollars warrant further attention and oversight.

EPA_00053827

For these reasons, I am directing our leadership team and all Agency personnel as follows:

Agency personnel shall immediately initiate and conduct an internal review of all relevant grant programs, grant awards, grants that have not yet been awarded and obligated to specific individuals or entities (e.g., notices of funding opportunities), and issued grants. This includes a review of payments on all grant programs and awards where Agency personnel suspect that the grant is unlawful or contrary to Agency policy priorities, or suspect that the grant program implementation or payment might be fraudulent, abusive, duplicative, or implemented in a way that failed to safeguard Agency dollars.

This directive shall be implemented by personnel in the Office of the Chief Financial Officer, the Office of Mission Support, and all relevant program and regional offices responsible for the execution of the Agency's programs, consistent with all notice and procedural requirements in each affected award, agreement, or other instrument. Whenever a program or award has been identified, Agency personnel shall utilize all available means to ensure necessary review for any administrative and criminal violations.

If any program, award, or action is deemed inconsistent with necessary financial and oversight procedural requirements or grant conditions, the Agency shall, where permitted by applicable law, take immediate action to ensure compliance. This includes coordination and further referral to the Office of the Inspector General and other entities to ensure full accountability and prosecution where applicable.

Notwithstanding this directive, any disbursements on open grant awards that were paused due to Office of Management and Budget Memorandum M-25-13 or any Executive Order underlying that Memorandum shall continue to be immediately released, as the Agency initiated on February 3, 2025.

Thank you for your continued service to ensure the effective implementation and use of taxpayer dollars.

| From: | Budget and Planning |
|---|---|
| Sent: | Thursday, February 13, 2025 3:31 PM |
| To: | Budget and Planning; OCFO-SBO; OCFO-SBO-STAFF; OCFO-Regional-Comptroller; OCFO-Regional Budget Officers; OCFO-SROs; Regional Mission Support Division - Directors; Regional Mission Support Division - Directors; OCFO-FCOs; Leadership_Deputy_Regional_Administrators; Leadership_Deputy_Assistant_Administrators |
| Cc: | Wise, Melissa; Legare, Pamela; Rogers, JoanB; Coogan, Daniel; Kalikhman, Yulia; Gulamali, Adil; Lavergne, Dany; Miller, Renee; Jennette, Vonda; Luebbering, Gregory; Henry, Latonya; Talbert-Duarte, Angelia; Goerke, Ariadne; Askew, Wendel; Holden, Allison; Kadeli, Lek; Jones-Peeler, Meshell; Lane, Gary; Robinson, Angel; Katz, Brian; Cardenas, Andrew; Li, Sylvana; Beg, Gul; Cottrill, Edward; Hurley, Kevin; Humes, Hamilton; Wang, Lili |
| Subject: | RE: Additional Information on IIJA and IRA - program review pause |
| Importance: | High |
| Categories: | Reference |

Sharing another update as the program review proceeds.

Obligations from EPA already made as of 3 PM EST today can be released for payment. The agency will continue robust oversight of these funds and take appropriate action if any of them are found to be used outside of the terms and conditions of their agreements.

Note this excludes the Greenhouse Gas Reduction Fund.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 6:04 PM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; Henry, Latonya <Henry.Latonya@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>; Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>; Lane, Gary <Lane.Gary@epa.gov>; Robinson, Angel <robinson.angel@epa.gov>; Boyd, Wyatt <Boyd.Wyatt@epa.gov>; Katz, Brian <Katz.Brian@epa.gov>; Cardenas, Andrew <Cardenas.Andrew@epa.gov>; Li, Sylvana <li.sylvana@epa.gov>; Beg, Gul <Beg.Gul@epa.gov>; Cottrill, Edward <Cottrill.Edward@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA - program review pause

Pursuant to the review of financial assistance programs announced by the Acting Deputy Administrator

on February 6, the following accounts are temporarily paused for new obligations or disbursements for assistance agreements, loans, rebates, interagency agreements, procurements, and no-cost actions pending a review for compliance with applicable administrative rules and policies.

Air Quality Sensors in Low Income and Disadvantaged Communities (OAR) (STAG)
Clean Heavy-Duty Vehicles (OAR) (STAG)
Clean Heavy-Duty Vehicles in Nonattainment Areas (OAR) (STAG)
Clean School Bus Program (STAG)
Competitive Grants (OAR) (STAG)
Diesel Emissions Reductions (OAR) (STAG)
Emissions from Wood Heaters (OAR/ORD) (STAG)
Environmental and Climate Justice Block Grants – Technical Assistance (OEJECR)
Environmental and Climate Justice Block Grants (OEJECR)
Environmental Product Declaration Assistance (OCSPP/ORD/OAR)
Fenceline Air Monitoring and Screening Air Monitoring (OAR/ORD) (STAG)
Funding for the Implementation of the American Innovation and Manufacturing Act (OAR)
Funding for Section 211 of the Clean Air Act – Advanced Biofuels (OAR)
GHG Air Pollution Implementation Grants (OAR) (STAG)
GHG and Zero Emission Standards for Mobile Sources (OAR) (STAG)
GHG Pollution Planning Grants (OAR) (STAG)
Grants to Reduce Air Pollution at Ports (OAR) (STAG)
Grants to Reduce Air Pollution at Ports in Nonattainment Areas (OAR) (STAG)
Greenhouse Gas Corporate Reporting (OAR) (STAG)
Greenhouse Gas Reduction Fund – General Assistance (OA) (STAG)
Greenhouse Gas Reduction Fund – Low Income and Disadvantaged Communities (OA) (STAG)
Greenhouse Gas Reduction Fund – Zero Emision Technologies (OA) (STAG)
Implementation / Accountability (OAR)
Implementation and Compliance (OECA)
Industry Outreach (OAR)
Low Embodied Carbon Labeling for Construction Materials for Transportation Methane Monitoring (OCSPP/OAR/ORD)
Multipollutant Monitoring Stations (OAR) (STAG)
State/Tribal/Local Government Outreach (OAR)
Technical Assistance for Low Income Communities (OAR)

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 11:29 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

file:///C/...02%20-%20RE%20Additional%20Information%20on%20IIJA%20and%20IRA%20-%20program%20review%20pause%20.htm[2/14/2025 10:11:11 AM]

EPA_00053830

We are working expeditiously to carry out the attached and request your assistance where appropriate.

*(excerpt)*

Notwithstanding this directive, any disbursements on open grant awards that were paused due to Office of Management and Budget Memorandum M-25-13 or any Executive Order underlying that Memorandum shall continue to be immediately released, as the Agency initiated on February 3, 2025.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Wednesday, February 5, 2025 11:00 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

Clarifying the compound sentence in the original message.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for:

- federal financial assistance;
- Superfund;
- and the accounts (originally) attached.

Note that thousands of accounts are involved and this is a manual process.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Tuesday, February 4, 2025 1:46 PM
**To:** OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** Additional Information on IIJA and IRA

file:///C/...02%20-%20RE%20Additional%20Information%20on%20IIJA%20and%20IRA%20-%20program%20review%20pause%20.htm[2/14/2025 10:11:11 AM]

EPA_00053831

**Importance:** High

This message provides additional detail to the attached message from the Acting Chief Financial Officer.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for all federal financial assistance, including cooperative assistance agreements, all Superfund, and the accounts attached.

We will continue to keep the community updated as we implement Orders. Please note that effectuation in agency systems is occurring and requires sequencing.

*Please share this information within EPA as necessary to execute.*

EPA_00053832



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

<u>**MEMORANDUM**</u>
<span style="float:right">DEPUTY ADMINISTRATOR</span>

**SUBJECT:**   Review of Financial Assistance Programs

**FROM:**   Chad McIntosh, Acting Deputy Administrator

**TO:**   Gregg Treml, Acting Chief Financial Officer
Kimberly Y. Patrick, Principal Deputy Assistant Administrator, OMS
Deputy Assistant Administrators
Deputy Associate Administrators
Deputy Regional Administrators

Distribute as appropriate to those needed to carry out this direction.

Upon confirmation, EPA Administrator Lee Zeldin pledged to enthusiastically uphold the EPA's mission and our moral responsibility to be good stewards of our environment for generations to come. With that commitment is the promise to be accountable for the Agency's use of hard-earned American taxpayer dollars.

Congress has been clear on the need for oversight of funds provided to the Agency in the Inflation Reduction Act (IRA) (Pub. Law 117-169, Aug. 16, 2021, 136 Stat 1818) and other funding programs that may be improperly utilized. However, over the course of the prior Adminstration, several reports and investigations have raised serious concerns with the implementation of certain grant programs and subsequent grant awards.

Problems with implementation of these funding programs were egregiously confirmed from documented statements by Biden-Harris Administration political appointee staff at EPA describing the Agency's then funding push as "throwing gold bars off the Titanic."

In one example of the potential problematic implementation of programs, to expend, the Biden-Harris Adminstration utilized an external financial agent to hold funding, which is the first time the Agency has ever operated a grant funding program in that manner which could limit Agency oversight.

Not only have these instances been well documented, but during his confirmation hearing before the U.S. Senate Committee on Environment and Public Works and through additional Congressional requests, Administrator Zeldin has been specifically asked to ensure accountability of Agency funding. These documented accounts of potential waste, fraud, and abuse of hard-earned American taxpayer dollars warrant further attention and oversight.

EPA_00053850

For these reasons, I am directing our leadership team and all Agency personnel as follows:

Agency personnel shall immediately initiate and conduct an internal review of all relevant grant programs, grant awards, grants that have not yet been awarded and obligated to specific individuals or entities (e.g., notices of funding opportunities), and issued grants. This includes a review of payments on all grant programs and awards where Agency personnel suspect that the grant is unlawful or contrary to Agency policy priorities, or suspect that the grant program implementation or payment might be fraudulent, abusive, duplicative, or implemented in a way that failed to safeguard Agency dollars.

This directive shall be implemented by personnel in the Office of the Chief Financial Officer, the Office of Mission Support, and all relevant program and regional offices responsible for the execution of the Agency's programs, consistent with all notice and procedural requirements in each affected award, agreement, or other instrument. Whenever a program or award has been identified, Agency personnel shall utilize all available means to ensure necessary review for any administrative and criminal violations.

If any program, award, or action is deemed inconsistent with necessary financial and oversight procedural requirements or grant conditions, the Agency shall, where permitted by applicable law, take immediate action to ensure compliance. This includes coordination and further referral to the Office of the Inspector General and other entities to ensure full accountability and prosecution where applicable.

Notwithstanding this directive, any disbursements on open grant awards that were paused due to Office of Management and Budget Memorandum M-25-13 or any Executive Order underlying that Memorandum shall continue to be immediately released, as the Agency initiated on February 3, 2025.

Thank you for your continued service to ensure the effective implementation and use of taxpayer dollars.

| | |
|---|---|
| **From:** | Budget and Planning |
| **Sent:** | Thursday, February 13, 2025 3:31 PM |
| **To:** | Budget and Planning; OCFO-SBO; OCFO-SBO-STAFF; OCFO-Regional-Comptroller; OCFO-Regional Budget Officers; OCFO-SROs; Regional Mission Support Division - Directors; Regional Mission Support Division - Directors; OCFO-FCOs; Leadership_Deputy_Regional_Administrators; Leadership_Deputy_Assistant_Administrators |
| **Cc:** | Wise, Melissa; Legare, Pamela; Rogers, JoanB; Coogan, Daniel; Kalikhman, Yulia; Gulamali, Adil; Lavergne, Dany; Miller, Renee; Jennette, Vonda; Luebbering, Gregory; Henry, Latonya; Talbert-Duarte, Angelia; Goerke, Ariadne; Askew, Wendel; Holden, Allison; Kadeli, Lek; Jones-Peeler, Meshell; Lane, Gary; Robinson, Angel; Katz, Brian; Cardenas, Andrew; Li, Sylvana; Beg, Gul; Cottrill, Edward; Hurley, Kevin; Humes, Hamilton; Wang, Lili |
| **Subject:** | RE: Additional Information on IIJA and IRA - program review pause |
| **Importance:** | High |
| **Categories:** | Reference |

Sharing another update as the program review proceeds.

Obligations from EPA already made as of 3 PM EST today can be released for payment. The agency will continue robust oversight of these funds and take appropriate action if any of them are found to be used outside of the terms and conditions of their agreements.

Note this excludes the Greenhouse Gas Reduction Fund.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 6:04 PM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; Henry, Latonya <Henry.Latonya@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>; Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>; Lane, Gary <Lane.Gary@epa.gov>; Robinson, Angel <robinson.angel@epa.gov>; Boyd, Wyatt <Boyd.Wyatt@epa.gov>; Katz, Brian <Katz.Brian@epa.gov>; Cardenas, Andrew <Cardenas.Andrew@epa.gov>; Li, Sylvana <li.sylvana@epa.gov>; Beg, Gul <Beg.Gul@epa.gov>; Cottrill, Edward <Cottrill.Edward@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA - program review pause

Pursuant to the review of financial assistance programs announced by the Acting Deputy Administrator

on February 6, the following accounts are temporarily paused for new obligations or disbursements for assistance agreements, loans, rebates, interagency agreements, procurements, and no-cost actions pending a review for compliance with applicable administrative rules and policies.

Air Quality Sensors in Low Income and Disadvantaged Communities (OAR) (STAG)
Clean Heavy-Duty Vehicles (OAR) (STAG)
Clean Heavy-Duty Vehicles in Nonattainment Areas (OAR) (STAG)
Clean School Bus Program (STAG)
Competitive Grants (OAR) (STAG)
Diesel Emissions Reductions (OAR) (STAG)
Emissions from Wood Heaters (OAR/ORD) (STAG)
Environmental and Climate Justice Block Grants – Technical Assistance (OEJECR)
Environmental and Climate Justice Block Grants (OEJECR)
Environmental Product Declaration Assistance (OCSPP/ORD/OAR)
Fenceline Air Monitoring and Screening Air Monitoring (OAR/ORD) (STAG)
Funding for the Implementation of the American Innovation and Manufacturing Act (OAR)
Funding for Section 211 of the Clean Air Act – Advanced Biofuels (OAR)
GHG Air Pollution Implementation Grants (OAR) (STAG)
GHG and Zero Emission Standards for Mobile Sources (OAR) (STAG)
GHG Pollution Planning Grants (OAR) (STAG)
Grants to Reduce Air Pollution at Ports (OAR) (STAG)
Grants to Reduce Air Pollution at Ports in Nonattainment Areas (OAR) (STAG)
Greenhouse Gas Corporate Reporting (OAR) (STAG)
Greenhouse Gas Reduction Fund – General Assistance (OA) (STAG)
Greenhouse Gas Reduction Fund – Low Income and Disadvantaged Communities (OA) (STAG)
Greenhouse Gas Reduction Fund – Zero Emision Technologies (OA) (STAG)
Implementation / Accountability (OAR)
Implementation and Compliance (OECA)
Industry Outreach (OAR)
Low Embodied Carbon Labeling for Construction Materials for Transportation Methane Monitoring (OCSPP/OAR/ORD)
Multipollutant Monitoring Stations (OAR) (STAG)
State/Tribal/Local Government Outreach (OAR)
Technical Assistance for Low Income Communities (OAR)

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 11:29 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

EPA_00053853

We are working expeditiously to carry out the attached and request your assistance where appropriate.

*(excerpt)*

Notwithstanding this directive, any disbursements on open grant awards that were paused due to Office of Management and Budget Memorandum M-25-13 or any Executive Order underlying that Memorandum shall continue to be immediately released, as the Agency initiated on February 3, 2025.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Wednesday, February 5, 2025 11:00 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

Clarifying the compound sentence in the original message.


Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for:

- federal financial assistance;
- Superfund;
- and the accounts (originally) attached.


Note that thousands of accounts are involved and this is a manual process.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Tuesday, February 4, 2025 1:46 PM
**To:** OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** Additional Information on IIJA and IRA

EPA_00053854

**Importance:** High

This message provides additional detail to the attached message from the Acting Chief Financial Officer.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for all federal financial assistance, including cooperative assistance agreements, all Superfund, and the accounts attached.

We will continue to keep the community updated as we implement Orders. Please note that effectuation in agency systems is occurring and requires sequencing.

*Please share this information within EPA as necessary to execute.*

EPA_00053855

Message

**From:** Wise, Melissa [wise.melissa@epa.gov]
**Sent:** 1/27/2025 12:52:42 PM
**To:** Sylvester, Kenneth [Sylvester.Kenneth@epa.gov]; Schindel, Phillip [Schindel.Phillip@epa.gov]
**CC:** Lentz, Rachel [Lentz.Rachel@epa.gov]; Durand, Jessica [Durand.Jessica@epa.gov]
**Subject:** FW: List of IIJA/IRA Grants Awarded on 1/15 and later
**Attachments:** IIJA IRA Award Date gt 1-15-25.xlsx

Hi Ken and Phil,

Sharing for situational awareness.

Thanks,
Melissa

---

**From:** Rose, Kenneth (he/him/his) <Rose.Kenneth@epa.gov>
**Sent:** Friday, January 24, 2025 5:53 PM
**To:** Wise, Melissa <wise.melissa@epa.gov>; Tocci, Brian F. <Tocci.Brian@epa.gov>; O'Neal Jr., Rudnell R. <ONeal.Rudnell@epa.gov>; Shelmon, Shantel <Shelmon.Shantel@epa.gov>; Sykes, Karen <Sykes.Karen@epa.gov>; Watkins, Christopher <Watkins.Christopher@epa.gov>; Rawls, Whitney <rawls.whitney@epa.gov>; Hulstein, Sarah <hulstein.sarah@epa.gov>; Truong, Carolyn <Truong.Carolyn@epa.gov>; Manion, Andrea <Manion.Andrea.L@epa.gov>; Brown, Devon <Brown.Devon@epa.gov>
**Cc:** Johnson, Arthur <Johnson.Arthur@epa.gov>; Pace, Donald <Pace.Donald@epa.gov>; McManus, Catharine (she/her/hers) <mcmanus.catharine@epa.gov>; Eubanks, Kristy <Eubanks.Kristy@epa.gov>; Sanders, Amy <Sanders.Amy@epa.gov>; Stanton, MaryA <Stanton.Marya@epa.gov>; Krehbiel, Ben <Krehbiel.Ben@epa.gov>; Brincks, Mike <brincks.mike@epa.gov>; McCluney, Lance (he/him/his) <McCluney.Lance@epa.gov>; Drake, Kerry (he/him/his) <Drake.Kerry@epa.gov>; Chung, Angela (she/her/hers) <Chung.Angela@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Subject:** RE: List of IIJA/IRA Grants Awarded on 1/15 and later

Melissa,
Thank you for your response. I understand and will follow the direction provided.

Have a great weekend.

Ken



Kenneth J. Rose III (he, him, his)
M        on and Assistance Branch
US        ic Region (3MD20)
Fo
16                dy Blvd.
Philadelphia, PA 19103
**Phone** 215-814-3147
**Cell**   215-983-8660
**Email** rose.kenneth@epa.gov



*Please note that I sent this at a time that was convenient for me without expectation for a response outside of business hours. If you receive this email outside of your normal working hours, please know that I do not expect a response until you are back at work during your normal hours.*

EPA_00053860

**From:** Wise, Melissa <wise.melissa@epa.gov>
**Sent:** Friday, January 24, 2025 5:34 PM
**To:** Rose, Kenneth (he/him/his) <Rose.Kenneth@epa.gov>; Tocci, Brian F. <Tocci.Brian@epa.gov>; O'Neal Jr., Rudnell R. <ONeal.Rudnell@epa.gov>; Shelmon, Shantel <Shelmon.Shantel@epa.gov>; Sykes, Karen <Sykes.Karen@epa.gov>; Watkins, Christopher <Watkins.Christopher@epa.gov>; Rawls, Whitney <rawls.whitney@epa.gov>; Hulstein, Sarah <hulstein.sarah@epa.gov>; Truong, Carolyn <Truong.Carolyn@epa.gov>; Manion, Andrea <Manion.Andrea.L@epa.gov>; Brown, Devon <Brown.Devon@epa.gov>
**Cc:** Johnson, Arthur <Johnson.Arthur@epa.gov>; Pace, Donald <Pace.Donald@epa.gov>; McManus, Catharine (she/her/hers) <mcmanus.catharine@epa.gov>; Eubanks, Kristy <Eubanks.Kristy@epa.gov>; Sanders, Amy <Sanders.Amy@epa.gov>; Stanton, MaryA <Stanton.Marya@epa.gov>; Krehbiel, Ben <Krehbiel.Ben@epa.gov>; Brincks, Mike <brincks.mike@epa.gov>; McCluney, Lance (he/him/his) <McCluney.Lance@epa.gov>; Drake, Kerry (he/him/his) <Drake.Kerry@epa.gov>; Chung, Angela (she/her/hers) <Chung.Angela@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Subject:** RE: List of IIJA/IRA Grants Awarded on 1/15 and later

Hi Ken,

Thank you for your email.

First, to be clear, all grants on this list will be restricted. This decision was made out of an abundance of caution given the timing of the pause.

Second, while I respect that the 21-day clock is ticking, I believe the risk of grantee challenges is likely low. I understand you are feeling pressure to provide responses, and I sincerely empathize.

I am reaffirming my commitment to share canned responses. However, as you know, Dan and I are still awaiting clearance. It is possible this could be received next week. When available, it will be disseminated.

-Melissa

**From:** Rose, Kenneth (he/him/his) <Rose.Kenneth@epa.gov>
**Sent:** Friday, January 24, 2025 4:35 PM
**To:** Wise, Melissa <wise.melissa@epa.gov>; Tocci, Brian F. <Tocci.Brian@epa.gov>; O'Neal Jr., Rudnell R. <ONeal.Rudnell@epa.gov>; Shelmon, Shantel <Shelmon.Shantel@epa.gov>; Sykes, Karen <Sykes.Karen@epa.gov>; Watkins, Christopher <Watkins.Christopher@epa.gov>; Rawls, Whitney <rawls.whitney@epa.gov>; Hulstein, Sarah <hulstein.sarah@epa.gov>; Truong, Carolyn <Truong.Carolyn@epa.gov>; Manion, Andrea <Manion.Andrea.L@epa.gov>; Brown, Devon <Brown.Devon@epa.gov>
**Cc:** Johnson, Arthur <Johnson.Arthur@epa.gov>; Pace, Donald <Pace.Donald@epa.gov>; McManus, Catharine (she/her/hers) <mcmanus.catharine@epa.gov>; Eubanks, Kristy <Eubanks.Kristy@epa.gov>; Sanders, Amy <Sanders.Amy@epa.gov>; Stanton, MaryA <Stanton.Marya@epa.gov>; Krehbiel, Ben <Krehbiel.Ben@epa.gov>; Brincks, Mike <brincks.mike@epa.gov>; McCluney, Lance (he/him/his) <McCluney.Lance@epa.gov>; Drake, Kerry (he/him/his) <Drake.Kerry@epa.gov>; Chung, Angela (she/her/hers) <Chung.Angela@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Subject:** RE: List of IIJA/IRA Grants Awarded on 1/15 and later

Melissa,
Thank you for the list. I respect your opinion about the message but I do have concerns, which I'll outline below.

First, I fully expect we will begin to get questions from these recipients on the status of their awards. They know we were pushing to get them awarded. What are we supposed to say when asked the status?

EPA_00053861