Message

| | |
|---|---|
| **From:** | Boyd, Wyatt [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2221B70C69A74E18BE72346F3A25B5F1-BOYD, WYATT] |
| **Sent:** | 1/24/2025 12:10:21 AM |
| **To:** | Lane, Gary [Lane.Gary@epa.gov] |
| **CC:** | Wang, Lili [Wang.Lili@epa.gov]; Monson, CJ [Monson.CJ@epa.gov]; Henry, Latonya [Henry.Latonya@epa.gov]; Katz, Brian [Katz.Brian@epa.gov] |
| **Subject:** | Re: Notes (closehold) |

Thank you!

Sent from my iPhone

On Jan 23, 2025, at 6:21 PM, Lane, Gary <Lane.Gary@epa.gov> wrote:

# CUI//SP-BUDG

Lili - BECD completed the updates to the EBFY and Unobligated columns.

## Controlled by U.S. Environmental Protection Agency

**From:** Wang, Lili <Wang.Lili@epa.gov>
**Sent:** Thursday, January 23, 2025 11:21 AM
**To:** Lane, Gary <Lane.Gary@epa.gov>; Monson, CJ <Monson.CJ@epa.gov>
**Cc:** Henry, Latonya <Henry.Latonya@epa.gov>; Boyd, Wyatt <Boyd.Wyatt@epa.gov>; Katz, Brian <Katz.Brian@epa.gov>
**Subject:** RE: Notes (closehold)

# CUI//SP-BUDG

@Monson, CJ

1.         Please add columns to it for EBFY, current unobligated balances (Check with Gary on this), and current FTE utilization for each section

Here is the link to the file:

<image001.png>
IIJA IRA EO_v1.xlsx

Thanks,

## Controlled by U.S. Environmental Protection Agency

**From:** Boyd, Wyatt <Boyd.Wyatt@epa.gov>
**Sent:** Thursday, January 23, 2025 10:53 AM
**To:** Henry, Latonya <Henry.Latonya@epa.gov>; Lane, Gary <Lane.Gary@epa.gov>; Wang, Lili <Wang.Lili@epa.gov>; Katz, Brian <Katz.Brian@epa.gov>
**Cc:** Robinson, Angel <robinson.angel@epa.gov>
**Subject:** Notes (closehold)

# CUI//SP-BUDG

Readout from meeting with Gregg and Lek this morning –

2.     OB should be prepared to issue the pause message tomorrow. BECD please be prepared to work with CGI to execute the Compass "lock" for non-pay and non-WCF tomorrow morning.
1.          We are awaiting the direction to do this
3.     They found the IRA and IIJA section by section document very helpful
1.               Please add columns to it for EBFY, current unobligated balances, and current FTE utilization for each section
4.     We also will need to be prepared to lock non-pay in the EJ program project when directed

Please let me know any questions, we can also discuss at the OB meeting later today.

Wyatt Boyd
Deputy Director, Office of Budget
Office of the Chief Financial Officer
Desk: 202.564.8503 | Mobile: 202.945.7495 | E: boyd.wyatt@epa.gov |
4443A WJC-N Washington, D.C.

<image002.png>

# Controlled by U.S. Environmental Protection Agency

**This document is produced in native format.**

**Original file name:**

**IIJA IRA EO_v2.xlsx**

**This document is produced in native format.**

**Original file name:**

**IIJA IRA EO_v2.xlsx**

EPA_00035632 - EPA_00035634

Message

| | |
|---|---|
| **From:** | Boyd, Wyatt [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2221B70C69A74E18BE72346F3A25B5F1-BOYD, WYATT] |
| **Sent:** | 1/24/2025 10:41:23 PM |
| **To:** | Treml, Gregg [Treml.Gregg@epa.gov] |
| **CC:** | Kadeli, Lek [Kadeli.Lek@epa.gov]; Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov]; Robinson, Angel [robinson.angel@epa.gov]; Gulamali, Adil [Gulamali.Adil@epa.gov]; Wang, Lili [Wang.Lili@epa.gov] |
| **Subject:** | Request to provide draft IIJA IRA document to OMB |
| **Attachments:** | IIJA IRA EO_v3.xlsx; Message from the OMB General Counsel.docx |

Hi Gregg,

Per our conversation, attaching the excel with a draft note below.

---

Paige,

OMB has indicated that the environment branch needs to approve each section of the agency's IIJA and IRA resources before we can disburse or obligate those funds. Attached is the complete message we received from OMB. We have prepared a section-by-section analysis in the attached file. OMB indicated they are working to expedite review once agencies send information to them.

We recommend providing this to our branch this weekend, marked as a draft. This will give us the needed time to address OMB questions and discuss with them any impacts. The agency is also receiving invoices and about to send payroll out and so clarity is needed quickly from OMB.

2:25-cv-02152-RMG    Entry Number 107-6    Page 6 of 63

FILED: March 14, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 25-1189**
**(1:25-cv-00333-ABA)**

———————

NATIONAL ASSOCIATION OF DIVERSITY OFFICERS IN HIGHER
EDUCATION; AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS;
RESTAURANT OPPORTUNITIES CENTERS UNITED; MAYOR AND CITY
COUNCIL OF BALTIMORE, MARYLAND,

        Plaintiffs - Appellees,

    v.

DONALD J. TRUMP; DOROTHY FINK; DEPARTMENT OF HEALTH AND
HUMAN SERVICES; DEPARTMENT OF EDUCATION; DENISE CARTER;
DEPARTMENT OF LABOR; VINCENT MICONEI; DEPARTMENT OF
INTERIOR; DOUG BURGUM; DEPARTMENT OF COMMERCE; JEREMY
PELTER; DEPARTMENT OF AGRICULTURE; GARY WASHINGTON;
DEPARTMENT OF ENERGY; INGRID KOLB; DEPARTMENT OF
TRANSPORTATION; SEAN DUFFY; DEPARTMENT OF JUSTICE; JAMES
MCHENRY; NATIONAL SCIENCE FOUNDATION; SETHURAMAN
PANCHANATHAN; OFFICE OF MANAGEMENT AND BUDGET; MATTHEW
VAETH,

        Defendants – Appellants.

------------------------------------

AMERICAN CENTER FOR LAW AND JUSTICE,

        Amicus Supporting Appellant.

———————

ORDER

———————

Pending before the court is the government's Motion for a Stay Pending Appeal. The case concerns two Executive Orders that instruct executive agencies to end "diversity, equity, and inclusion" (or "DEI") programs within federal grant and contract processes. *See* Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025); Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025). The plaintiffs—the Mayor and City Council of Baltimore, Maryland and three national associations—moved to preliminarily enjoin the government's enforcement of the Orders, challenging the constitutionality of three of the Orders' provisions under the First and Fifth Amendments.

The district court found the provisions likely unconstitutional and issued a nationwide injunction barring defendants from enforcing those provisions against both the plaintiffs and "similarly situated non-parties." *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, --- F. Supp. 3d ---, 2025 WL 573764, at *29 (D. Md. Feb. 21, 2025). After the government appealed that injunction to this Court, the district court entered an order clarifying that its preliminary injunction "applies to and binds Defendants . . . as well as other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions." *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, --- F. Supp. 3d. ---, 2025 WL 750690, at *4 (D. Md. Mar. 10, 2025). The government now seeks a stay of the district court's preliminary injunction, or asks that it be limited only to the plaintiffs and named defendants.

Having reviewed the record, the district court's opinion, and the parties' briefing, we agree with the government that it has satisfied the factors for a stay under *Nken v. Holder*, 556 U.S. 418, 426 (2009).

2

EPA_00035666

 

We therefore grant the government's motion for a stay of the preliminary injunction. The Clerk will set an expedited briefing schedule after consultation with the parties.

Entered at the direction of Chief Judge Diaz, with the concurrence of Judge Harris and Judge Rushing.

EPA_00035667

DIAZ, Chief Judge, concurring:

I'm satisfied for now that the government has met its burden justifying a stay of the district court's injunction pending appeal.[1] So I join in the order granting the government's motion and in Judge Harris's separate opinion explaining why. But I'm compelled to write separately to address what seems to be (at least to some) a monster in America's closet— Diversity, Equity, and Inclusion initiatives.

The Executive Orders charge that DEI (and the related DEIA, which also denotes Accessibility) policies include "dangerous, demeaning, and immoral race- and sex-based preferences" that "deny, discredit, and undermine the traditional American values of hard work, excellence, and individual achievement in favor of an unlawful, corrosive, and pernicious identity-based spoils system." *See* Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025). The Orders seek to terminate all "'equity-based' grants or contracts" that apparently have led to "immense public waste and shameful discrimination." Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025). But neither Order ever defines DEI or its component terms.[2]

---

[1] Like my colleague, I too reserve judgment on how the administration enforces these executive orders, which may well implicate cognizable First and Fifth Amendment concerns. *See* Concurring Op. at 7–8 (Harris, J., concurring). I likewise reserve judgment on the extent to which the government relies on the Orders' savings clause provisions as it enforces the Orders' directives against federal contractors, grantees, and private entities. *See, e.g.*, *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1239–40 (9th Cir. 2018) (declining to give effect to savings clause where that clause "in [] context" would "override clear and specific language," and render "judicial review a meaningless exercise").

[2] As a result, it's unclear what types of programs—formal or informal—the administration seeks to eliminate, and it could not respond to the district court's (Continued)

EPA_00035668

And despite the vitriol now being heaped on DEI, people of good faith who work to promote diversity, equity, and inclusion deserve praise, not opprobrium. For when this country embraces true diversity, it acknowledges and respects the social identity of its people. When it fosters true equity, it opens opportunities and ensures a level playing field for all. And when its policies are truly inclusive, it creates an environment and culture where everyone is respected and valued. What could be more American than that?

Under the most basic tenets of the First Amendment, there should be room for open discussion and principled debate about DEI programs, and whether its corresponding values should guide admissions, hiring, scholarship, funding, or workplace and educational practices. And all Americans should be able to freely consider how to continue empowering historically disadvantaged groups, while not "[r]educ[ing]" the individuals within those groups "to an assigned racial [or sex-based] identity."[3]

For almost 250 years, this nation's North Star has been the self-evident truth, "that all men are created equal." The Declaration of Independence para. 2 (U.S. 1776). Even when we have fallen short—badly at times—we have stood up, made amends, and moved

---

hypotheticals about the same. *See Nat'l Ass'n of Diversity Officers in Higher Educ.*, 2025 WL 573764, at *22. At this preliminary stage of the litigation, where the Orders only purport to direct executive policy and actors, we don't find vagueness principles outcome determinative. But I repeat that agency action that goes beyond the narrow scope set out in this motion could implicate Fifth Amendment vagueness concerns.

[3] *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 795, 797 (2007) (Kennedy, J., concurring in part and concurring in the judgment).

EPA_00035669

forward.  But a country does itself no favors by scrubbing the shameful moments of its past.  Because while history may be static, its effects remain.

From boardrooms to courtrooms to operating rooms to classrooms, previously marginalized Americans are thriving in spaces long closed to them.  And we are the better for it.  Yet despite this success—or because of it—we owe it to ourselves to continue forging conversations that may help us achieve that "more perfect Union."  U.S. Const. prbl.

*****

As with most monsters in the closet, what lurks is but a mere shadow, for which the remedy is simply light.

EPA_00035670

PAMELA HARRIS, Circuit Judge, concurring:

I concur in the order granting the government's motion for a stay pending appeal. This is a difficult case that will benefit from more sustained attention than we can give it in the present posture. But for now, I believe the government has shown a sufficient likelihood of success to warrant a stay until we can hear and decide its appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

As the government explains, the challenged Executive Orders, on their face, are of distinctly limited scope. The Executive Orders do not purport to establish the illegality of all efforts to advance diversity, equity or inclusion, and they should not be so understood. Instead, the so-called "Certification" and "Enforcement Threat" provisions apply only to conduct that violates existing federal anti-discrimination law. Nor do the Orders authorize the termination of grants based on a grantee's speech or activities outside the scope of the funded activities. Rather, the "Termination" provision directs the termination of grants, subject to applicable legal limits, based only on the nature of the grant-funded activity itself. On this understanding, the government has shown the requisite likelihood that the challenged provisions do not on their face violate the First or Fifth Amendment.

But my vote to grant the stay comes with a caveat. What the Orders say on their face and how they are enforced are two different things. Agency enforcement actions that go beyond the Orders' narrow scope may well raise serious First Amendment and Due Process concerns, for the reasons cogently explained by the district court. *See Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 2025 WL 573764, --- F. Supp. 3d --- (D.

EPA_00035671

Md. Feb. 21, 2025).  This case, however, does not directly challenge any such action, and I therefore concur.

Finally, my vote should not be understood as agreement with the Orders' attack on efforts to promote diversity, equity, and inclusion.  In my view, like Chief Judge Diaz's, "people of good faith who work to promote diversity, equity, and inclusion deserve praise, not opprobrium."  *See* Concurring Op. at 5 (Diaz, C.J., concurring).  I appreciate Chief Judge Diaz's concurrence and share his sentiments.

EPA_00035672

RUSHING, Circuit Judge, concurring:

I concur in the order granting the government's motion for a stay pending appeal. The scope of the preliminary injunction alone should raise red flags: the district court purported to enjoin *nondefendants* from taking action against *nonplaintiffs*. *Cf.*, *e.g.*, *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024) (mem.). But, more than that, the judges of this panel unanimously agree that the entire substance of the preliminary injunction must be stayed, not just trimmed back in scope. That's because the government has made a "strong showing" that it "is likely to succeed on the merits" and that the district court erred in concluding otherwise. *Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal quotation marks omitted). In other words, the government is likely to succeed in demonstrating that the challenged provisions of the Executive Orders—all of which are directives from the President to his officers—do not violate the First or Fifth Amendments.

In addition, as Judge Harris rightly points out, this case does not challenge any particular agency action implementing the Executive Orders. Yet, in finding the Orders themselves unconstitutional, the district court relied on evidence of how various agencies are implementing, or may implement, the Executive Orders. That highlights serious questions about the ripeness of this lawsuit and plaintiffs' standing to bring it as an initial matter. Ripeness and standing doctrines "prevent the judicial process from being used to usurp the powers of the political branches," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013), by keeping courts within their "province"—deciding "the rights of individuals" in actual controversies, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803). Ignoring these limits on judicial power results in courts becoming "virtually continuing monitors of

9

EPA_00035673

the wisdom and soundness of Executive action." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992) (internal quotation marks omitted).

We must not lose sight of the boundaries of our constitutional role and the imperative of judicial impartiality. Any individual judge's view on whether certain Executive action is good policy is not only irrelevant to fulfilling our duty to adjudicate cases and controversies according to the law, it is an impermissible consideration. A judge's opinion that DEI programs "deserve praise, not opprobrium" should play absolutely no part in deciding this case. *Supra*, at 5, 8.

EPA_00035674

Message
_____

**From:**       Boyd, Wyatt [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
                (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2221B70C69A74E18BE72346F3A25B5F1-BOYD, WYATT]
**Sent:**       3/25/2025 1:34:18 PM
**To:**         Wright, John [wright.john@epa.gov]
**CC:**         Robinson, Angel [robinson.angel@epa.gov]
**Subject:**    FW: Review FOIA 2025-EPA-04422
**Attachments:** Additional Information on IIJA and IRA .pdf; Final Response Letter 2025-EPA-04422.docx; Additional Information on
                IIJA and IRA _Redacted.pdf; OB Routing Slip 2025-EPA-04422 - Request (003).pdf; Final Response Letter 2025-EPA-
                04422.pdf

Thx, signed both. I appreciate the confirmation that OCFO's SRO signed off.

_____

**From:** Wright, John <wright.john@epa.gov>
**Sent:** Tuesday, March 25, 2025 9:27 AM
**To:** Boyd, Wyatt <Boyd.Wyatt@epa.gov>
**Subject:** RE: Review FOIA 2025-EPA-04422

As requested

_____

**From:** Boyd, Wyatt <Boyd.Wyatt@epa.gov>
**Sent:** Tuesday, March 25, 2025 9:24 AM
**To:** Wright, John <wright.john@epa.gov>
**Subject:** RE: Review FOIA 2025-EPA-04422

Please send back to me with your signature on routing slip

_____

**From:** Wright, John <wright.john@epa.gov>
**Sent:** Tuesday, March 25, 2025 9:09 AM
**To:** Boyd, Wyatt <Boyd.Wyatt@epa.gov>
**Subject:** FW: Review FOIA 2025-EPA-04422

Wyatt,

With Angel out I'm sending this FOIA to you for review and signature. I have added the final approval letter in Word
format as well as PDF in case you wanted to make changes. It is due to the requester by 4/7.

Thanks,
John

_____

**From:** Mason, Jay <Mason.Jay@epa.gov>
**Sent:** Thursday, March 20, 2025 1:58 PM
**To:** Wright, John <wright.john@epa.gov>
**Cc:** Kennedy, Chandra <Kennedy.Chandra@epa.gov>
**Subject:** FW: Review FOIA 2025-EPA-04422

Hi John,

Meshell has cleared the documents. <span style="color:red">Please redact the group emails and prepare the final response.</span> When you
are ready to close in FOIAXpress, please contact me for delivering redact records.

*Respectfully,*

**Jay Mason**
IT Specialist Data Management
U.S. EPA| OCFO|OM
1200 Pennsylvania Ave. NW
Washington, DC 20460
Office: 202-564-3907
Email: mason.jay@epa.gov

---

**From:** Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>
**Sent:** Thursday, March 20, 2025 1:06 PM
**To:** Mason, Jay <Mason.Jay@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>
**Cc:** Soward, Ruth-Alene <Soward.Ruth-Alene@epa.gov>; Callewaert, Michael <Callewaert.Michael@epa.gov>; Kennedy, Chandra <Kennedy.Chandra@epa.gov>
**Subject:** RE: Review FOIA 2025-EPA-04422

Jay,

This is cleared to send. Thanks

Meshell Jones-Peeler
**Deputy Associate Chief Financial Officer**
Office of the Chief Financial Officer
Environmental Protection Agency
Work:  (202) 564-3160
Mobile:  (202) 359-0975

---

**From:** Mason, Jay <Mason.Jay@epa.gov>
**Sent:** Tuesday, March 18, 2025 1:49 PM
**To:** Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>
**Cc:** Soward, Ruth-Alene <Soward.Ruth-Alene@epa.gov>; Callewaert, Michael <Callewaert.Michael@epa.gov>; Kennedy, Chandra <Kennedy.Chandra@epa.gov>
**Subject:** Review FOIA 2025-EPA-04422

Good afternoon,

OCFO received a FOIA request regarding a memo from February 4, 2025, titled "Inflation Reduction Act and Infrastructure Investment and Jobs Act Pause" . Attached are the responsive records that has been found including the email. OB is requesting for your review before releasing the documents. For more details of the request, please see below. Thank you.

**Assignment Details:**

- Request ID : 2025-EPA-04422
- Request Type : FOIA
- Requested By : May, Beatrice
- Requested Date : 03/10/2025
- Primary User : OCFO - Advanced Queue
- Due Date: 04/07/2025

- Track: Simple
- Assignment Note :

**Request Description:**

- To Whom It May Concern: Under the Freedom of Information Act, I am writing to request the following records: I would like to request the list mentioned in the EPA Memo from February 4, 2025, titled "Inflation Reduction Act and Infrastructure Investment and Jobs Act Funding Action Pause." I would also like to request all documents and communications referencing that or related to that list. The memo was signed by Acting Chief Financial Officer Gregg Treml. Lek Kadeli, Meshell Jones-Peeler, Paige Hanson, OCFO Senior Managers, Vonda Jennette, Greg Luebbering, Senior Resource Officials, Senior Budget Officers, Regional Comptrollers, and Funds Control Officers were CC'd. The memo states, "Consistent with the Order, the agency's financial system will now enable the obligation of financial assistance. This includes programs within the Infrastructure Investment and Jobs Act and the Inflation Reduction Act, including federal financial assistance in the State and Tribal Assistance Grants, Brownfields, and Superfund. The Office of Budget will follow-up with a detailed list. Additionally, the disbursement of funds connected to this notice will continue." Thank you for your cooperation in this request, and please don't hesitate to contact me directly should you have any questions pertaining to it. I look forward to receiving your response within 20 business days, as required by statute. Beatrice May

*Respectfully,*

**Jay Mason**
IT Specialist Data Management
U.S. EPA| OCFO|OM
1200 Pennsylvania Ave. NW
Washington, DC 20460
Office: 202-564-3907
Email: mason.jay@epa.gov

EPA_00035691

| **From:** | Budget and Planning |
| **To:** | OCFO-SBO; OCFO-SBO-STAFF; OCFO-Regional-Comptroller; OCFO-Regional Budget Officers; OCFO-SROs; Regional Mission Support Division - Directors; Regional Mission Support Division - Directors; OCFO-FCOs |
| **Cc:** | Wise, Melissa; Legare, Pamela; Rogers, JoanB; Coogan, Daniel; Kalikhman, Yulia; Gulamali, Adil; Lavergne, Dany; Miller, Renee; Jennette, Vonda; Luebbering, Gregory; OCFO-OB-ALL.; Talbert-Duarte, Angelia; Goerke, Ariadne; Askew, Wendel; Holden, Allison |
| **Subject:** | Additional Information on IIJA and IRA |
| **Date:** | Tuesday, February 4, 2025 1:45:46 PM |
| **Attachments:** | Update on IIJA and IRA Pause_FINAL_2-4-2025.pdf List of Sections.xlsx |
| **Importance:** | High |

This message provides additional detail to the attached message from the Acting Chief Financial Officer.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for all federal financial assistance, including cooperative assistance agreements, all Superfund, and the accounts attached.

We will continue to keep the community updated as we implement Orders. Please note that effectuation in agency systems is occurring and requires sequencing.

*Please share this information within EPA as necessary to execute*.



# THE CHIEF FINANCIAL OFFICER
WASHINGTON, D.C. 20460

February 4, 2025

**MEMORANDUM**

**SUBJECT:**     Update on Inflation Reduction Act and Infrastructure Investment and Jobs Act Pause

**FROM:**     Gregg Treml, Chief Financial Officer (Acting)

GREGG
TREML

Digitally signed by
GREGG TREML
Date: 2025.02.04
12:53:31 -05'00'

**TO:**     Deputy Assistant Administrators
Deputy Associate Administrators
Deputy Regional Administrators

Distribute as appropriate to those needed to carry out this direction.

This message provides an update pursuant to the recent Court directive addressing financial assistance. The Court directs that federal financial assistance shall not be paused based on the Office of Management and Budget's direction in the rescinded OMB memorandum or the President's Executive Orders, while ongoing litigation proceeds or until otherwise directed by a Court.

Consistent with the Order, the agency's financial system will now enable the obligation of financial assistance. This includes programs within the Infrastructure Investment and Jobs Act and the Inflation Reduction Act, including federal financial assistance in the State and Tribal Assistance Grants, Brownfields, and Superfund. The Office of Budget will follow-up with a detailed list. Additionally, the disbursement of funds connected to this notice will continue.

OCFO, working closely with the Office of General Counsel and Office of Mission Support, will continue to keep the community updated on this matter.

cc: Lek Kadeli
    Meshell Jones-Peeler
    Paige Hanson
    OCFO Senior Managers
    Vonda Jennette
    Greg Luebbering
    Senior Resource Officials
    Senior Budget Officers

EPA_00035693

Regional Comptrollers
Funds Control Officers

EPA_00035694

**This document is produced in native format.**

**Original file name:**

**List of Sections.xlsx**



**OFFICE OF THE CHIEF FINANCIAL OFFICER**

WASHINGTON, D.C. 20460

[ DATE \@ "MMMM d, yyyy" ]

Beatrice May
4619 9th St. NW
Washington, DC 20011

Re: Freedom of Information Act Request No. 2025-EPA-04422, Final Response

Dear Beatrice May:

This letter concerns the above-referenced FOIA request, received by the U.S. Environmental Protection Agency on February 7, 2025, in which you requested

>*the EPA Memo from February 4, 2025, titled "Inflation Reduction Act and Infrastructure Investment and Jobs Act Funding Action Pause." I would also like to request all documents and communications referencing that or related to that list. The memo was signed by Acting Chief Financial Officer Gregg Treml. Lek Kadeli, Meshell Jones-Peeler, Paige Hanson, OCFO Senior Managers, Vonda Jennette, Greg Luebbering, Senior Resource Officials, Senior Budget Officers, Regional Comptrollers, and Funds Control Officers were CC'd. The memo states, "Consistent with the Order, the agency's financial system will now enable the obligation of financial assistance. This includes programs within the Infrastructure Investment and Jobs Act and the Inflation Reduction Act, including federal financial assistance in the State and Tribal Assistance Grants, Brownfields, and Superfund. The Office of Budget will follow-up with a detailed list. Additionally, the disbursement of funds connected to this notice will continue."*

<u>Disposition</u>
Granted.

<u>Description of Records</u>
The Agency has concluded its search for records responsive to your request and is providing the requested records in full. Enclosed is Memorandum on the Inflation Reduction Act and Infrastructure Investment and Jobs Acting Funding Action Pause, the update memorandum and the List of Sections effected.

<u>Cost Information</u>
The cost to process your request was $0.00.

Final Appeal Rights and Contact Information

You may appeal this determination in writing within 90 calendar days from the date of this letter by one of the following methods:

1. Visit EPA's FOIA submission website ([ HYPERLINK "https://foiapublicaccessportal.epa.gov/" ]), sign into your account by clicking Sign-In, and select Submit Appeal.2. U.S. Mail sent to the following address:

> National FOIA Office,
> U.S. Environmental Protection Agency,
> 1200 Pennsylvania NW, Room (2310A),
> Washington, DC 20460; or

3. Overnight delivery service to:

> National FOIA Office,
> U.S. Environmental Protection Agency,
> 1200 Pennsylvania NW, Room 7309C,
> Washington, DC 20460.

The Agency will not consider appeals received after the 90-calendar-day limit. Appeals received after 5:00 p.m. EST will be considered received on the next business day. The appeal should include the FOIA tracking number listed above. For quickest possible handling, the appeal letter, and its envelope, if applicable, should be marked "Freedom of Information Act Appeal."

If you need any further assistance or would like to discuss any aspect of your request, you may seek assistance from EPA's FOIA Public Liaison at hq.foia@epa.gov or call (202) 566-1667. You may also seek assistance from the Office of Government Information Services (OGIS). You may contact OGIS in any of the following ways: by mail, Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD 20740-6001; email: ogis@nara.gov; telephone: (202) 741-5770 or (877) 684-6448; or fax: (202) 741-5769. For all media inquiries, please contact press@epa.gov.

If you have any questions concerning this response, please contact John Wright of my staff at [ HYPERLINK "mailto:wright.john@epa.gov" ].

Sincerely,

Wyatt Boyd, Deputy Director
Office of Budget

U.S. EPA, OCFO/OB (2732A)
1200 Pennsylvania Avenue, NW
Washington, DC 20460

cc:  Chandra Kennedy, OCFO FOIA Officer

| | |
|---|---|
| **From:** | |
| **To:** | |
| **Cc:** | Wise, Melissa; Legare, Pamela; Rogers, JoanB; Coogan, Daniel; Kalikhman, Yulia; Gulamali, Adil; Lavergne, Dany; Miller, Renee; Jennette, Vonda; Luebbering, Gregory             Talbert-Duarte, Angelia; Goerke, Ariadne; Askew, Wendel; Holden, Allison |
| **Subject:** | Additional Information on IIJA and IRA |
| **Date:** | Tuesday, February 4, 2025 1:45:46 PM |
| **Attachments:** | Update on IIJA and IRA Pause_FINAL_2-4-2025.pdf<br>List of Sections.xlsx |
| **Importance:** | High |

This message provides additional detail to the attached message from the Acting Chief Financial Officer.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for all federal financial assistance, including cooperative assistance agreements, all Superfund, and the accounts attached.

We will continue to keep the community updated as we implement Orders. Please note that effectuation in agency systems is occurring and requires sequencing.

*Please share this information within EPA as necessary to execute.*



# OFFICE OF BUDGET
## ROUTING AND TRANSMITTAL SLIP

| TO | CONCUR | SIGNATURE | DATE | COMMENTS |
|---|---|---|---|---|
| John Wright | Yes | JOHN WRIGHT Digitally signed by JOHN WRIGHT Date: 2025.03.25 09:26:11 -04'00' | | |
| Wyatt Boyd (Deputy Dir. OB) | Yes | WYATT BOYD Digitally signed by WYATT BOYD Date: 2025.03.25 09:32:46 -04'00' | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**SUBJECT:** FOIA 2025-EPA-04422

| | | | | | | |
|---|---|---|---|---|---|---|
| | As Requested | | For Correction | | | Prepare Reply |
| | Circulate | | For Your Info | | | See Me |
| | **Action** | | File | | | Note & Return |
| ✔ | **Approval** | | For Clearance | | | Per Conversation |
| | Comment | | Investigate | | ✔ | **Signature** |
| | Coordination | | Justify | | | **Return a signed copy** |

**Description/Comments**

Description

Attached is the IRA/IIJA Pause Memo with the list of sections. Group emails have been redacted.

Comments: Director/Deputy ONLY

**POINT OF CONTACT**

Name: John Wright          Phone: 564-2123          Room: 4443Q



## OFFICE OF THE CHIEF FINANCIAL OFFICER
WASHINGTON, D.C. 20460

March 25, 2025

Beatrice May
4619 9th St. NW
Washington, DC 20011

Re: Freedom of Information Act Request No. 2025-EPA-04422, Final Response

Dear Beatrice May:

This letter concerns the above-referenced FOIA request, received by the U.S. Environmental Protection Agency on February 7, 2025, in which you requested

> *the EPA Memo from February 4, 2025, titled "Inflation Reduction Act and Infrastructure Investment and Jobs Act Funding Action Pause." I would also like to request all documents and communications referencing that or related to that list. The memo was signed by Acting Chief Financial Officer Gregg Treml. Lek Kadeli, Meshell Jones-Peeler, Paige Hanson, OCFO Senior Managers, Vonda Jennette, Greg Luebbering, Senior Resource Officials, Senior Budget Officers, Regional Comptrollers, and Funds Control Officers were CC'd. The memo states, "Consistent with the Order, the agency's financial system will now enable the obligation of financial assistance. This includes programs within the Infrastructure Investment and Jobs Act and the Inflation Reduction Act, including federal financial assistance in the State and Tribal Assistance Grants, Brownfields, and Superfund. The Office of Budget will follow-up with a detailed list. Additionally, the disbursement of funds connected to this notice will continue."*

<u>Disposition</u>
Granted.

<u>Description of Records</u>
The Agency has concluded its search for records responsive to your request and is providing the requested records in full. Enclosed is Memorandum on the Inflation Reduction Act and Infrastructure Investment and Jobs Acting Funding Action Pause, the update memorandum and the List of Sections effected.

<u>Cost Information</u>
The cost to process your request was $0.00.

<u>Final Appeal Rights and Contact Information</u>

You may appeal this determination in writing within 90 calendar days from the date of this letter by one of the following methods:

1. Visit EPA's FOIA submission website (https://foiapublicaccessportal.epa.gov/), sign into your account by clicking Sign-In, and select Submit Appeal.2. U.S. Mail sent to the following address:

> National FOIA Office,
> U.S. Environmental Protection Agency,
> 1200 Pennsylvania NW, Room (2310A),
> Washington, DC 20460; or

3. Overnight delivery service to:

> National FOIA Office,
> U.S. Environmental Protection Agency,
> 1200 Pennsylvania NW, Room 7309C,
> Washington, DC 20460.

The Agency will not consider appeals received after the 90-calendar-day limit. Appeals received after 5:00 p.m. EST will be considered received on the next business day. The appeal should include the FOIA tracking number listed above. For quickest possible handling, the appeal letter, and its envelope, if applicable, should be marked "Freedom of Information Act Appeal."

If you need any further assistance or would like to discuss any aspect of your request, you may seek assistance from EPA's FOIA Public Liaison at hq.foia@epa.gov or call (202) 566-1667. You may also seek assistance from the Office of Government Information Services (OGIS). You may contact OGIS in any of the following ways: by mail, Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road, College Park, MD 20740-6001; email: ogis@nara.gov; telephone: (202) 741-5770 or (877) 684-6448; or fax: (202) 741-5769. For all media inquiries, please contact press@epa.gov.

If you have any questions concerning this response, please contact John Wright of my staff at wright.john@epa.gov.

Sincerely,

WYATT
BOYD

Digitally signed by
WYATT BOYD
Date: 2025.03.25
09:19:48 -04'00'

Wyatt Boyd, Deputy Director
Office of Budget

U.S. EPA, OCFO/OB (2732A)
1200 Pennsylvania Avenue, NW
Washington, DC 20460

cc: Chandra Kennedy, OCFO FOIA Officer

Message

| | |
|---|---|
| **From:** | Boyd, Wyatt [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2221B70C69A74E18BE72346F3A25B5F1-BOYD, WYATT] |
| **Sent:** | 3/10/2025 6:20:22 PM |
| **To:** | Wright, John [wright.john@epa.gov] |
| **CC:** | Robinson, Angel [robinson.angel@epa.gov] |
| **Subject:** | RE: 2025-EPA-04422: FOIA Assignment |
| **Attachments:** | Additional Information on IIJA and IRA |

Attached

Flag for OMB that Meshell and Lek need to clear this (very important)

---

**From:** Wright, John <wright.john@epa.gov>
**Sent:** Monday, March 10, 2025 2:15 PM
**To:** Boyd, Wyatt <Boyd.Wyatt@epa.gov>
**Subject:** FW: 2025-EPA-04422: FOIA Assignment

Hi Wyatt,

I just received this FOIA from the same requestor that asked for the two memo's you sent me 2 or so weeks ago. The requestor is asking for quite a few documents, many of which are in the IO. I'm thinking I should ask Jay to reassign it to the IO but wanted to check with you first.

Thoughts?

---

**From:** Mason, Jay <Mason.Jay@epa.gov>
**Sent:** Monday, March 10, 2025 2:08 PM
**To:** Wright, John <wright.john@epa.gov>
**Cc:** Kennedy, Chandra <Kennedy.Chandra@epa.gov>
**Subject:** 2025-EPA-04422: FOIA Assignment

**<u>Assignment Details:</u>**

- Request ID : 2025-EPA-04422
- Request Type : FOIA
- Requested By : May, Beatrice
- Requested Date : 03/10/2025
- Primary User : OCFO - Advanced Queue
- Due Date: 04/07/2025
- Track: Simple
- Assignment Note :

**<u>Request Description:</u>**

- To Whom It May Concern: Under the Freedom of Information Act, I am writing to request the following records: I would like to request the list mentioned in the EPA Memo from February 4, 2025, titled "Inflation Reduction Act and Infrastructure Investment and Jobs Act Funding Action Pause." I would also like to request all documents and communications referencing that or related to that list. The memo was signed by Acting Chief Financial Officer Gregg Treml. Lek Kadeli, Meshell Jones-Peeler, Paige Hanson, OCFO Senior

Managers, Vonda Jennette, Greg Luebbering, Senior Resource Officials, Senior Budget Officers, Regional Comptrollers, and Funds Control Officers were CC'd. The memo states, "Consistent with the Order, the agency's financial system will now enable the obligation of financial assistance. This includes programs within the Infrastructure Investment and Jobs Act and the Inflation Reduction Act, including federal financial assistance in the State and Tribal Assistance Grants, Brownfields, and Superfund. The Office of Budget will follow-up with a detailed list. Additionally, the disbursement of funds connected to this notice will continue." Thank you for your cooperation in this request, and please don't hesitate to contact me directly should you have any questions pertaining to it. I look forward to receiving your response within 20 business days, as required by statute. Beatrice May

Message

| | |
|---|---|
| **From:** | Budget and Planning [Budget_and_Planning@epa.gov] |
| **Sent:** | 2/4/2025 6:45:33 PM |
| **To:** | OCFO-SBO [OCFOSBO@epa.gov]; OCFO-SBO-STAFF [OCFOSBOSTAFF@epa.gov]; OCFO-Regional-Comptroller [OCFORegionalComptroller@epa.gov]; OCFO-Regional Budget Officers [OCFORegional_Budget_Officers@epa.gov]; OCFO-SROs [OCFO_SROs@epa.gov]; Regional Mission Support Division - Directors [Regional_Mission_Support_Division_Directors@epa.gov]; Regional Mission Support Division - Directors [Regional_Mission_Support_Division_Directors@epa.gov]; OCFO-FCOs [OCFO-FCOs@epa.gov] |
| **CC:** | Wise, Melissa [wise.melissa@epa.gov]; Legare, Pamela [Legare.Pamela@epa.gov]; Rogers, JoanB [Rogers.JoanB@epa.gov]; Coogan, Daniel [Coogan.Daniel@epa.gov]; Kalikhman, Yulia [Kalikhman.Yulia@epa.gov]; Gulamali, Adil [Gulamali.Adil@epa.gov]; Lavergne, Dany [lavergne.dany@epa.gov]; Miller, Renee [Miller.Renee@epa.gov]; Jennette, Vonda [Jennette.Vonda@epa.gov]; Luebbering, Gregory [luebbering.gregory@epa.gov]; OCFO-OB-ALL. [OCFO-OB-ALL_x@epa.gov]; Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov]; Goerke, Ariadne [Goerke.Ariadne@epa.gov]; Askew, Wendel [Askew.Wendel@epa.gov]; Holden, Allison [Holden.Allison@epa.gov] |
| **Subject:** | Additional Information on IIJA and IRA |
| **Attachments:** | Update on IIJA and IRA Pause_FINAL_2-4-2025.pdf; List of Sections.xlsx |
| | |
| **Importance:** | High |

This message provides additional detail to the attached message from the Acting Chief Financial Officer.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for all federal financial assistance, including cooperative assistance agreements, all Superfund, and the accounts attached.

We will continue to keep the community updated as we implement Orders. Please note that effectuation in agency systems is occurring and requires sequencing.

*Please share this information within EPA as necessary to execute.*

EPA_00035707



# THE CHIEF FINANCIAL OFFICER

WASHINGTON, D.C. 20460

February 4, 2025

**MEMORANDUM**

**SUBJECT:**    Update on Inflation Reduction Act and Infrastructure Investment and Jobs Act Pause

**FROM:**    Gregg Treml, Chief Financial Officer (Acting)

GREGG TREML
Digitally signed by GREGG TREML
Date: 2025.02.04 12:53:31 -05'00'

**TO:**    Deputy Assistant Administrators
Deputy Associate Administrators
Deputy Regional Administrators

Distribute as appropriate to those needed to carry out this direction.

This message provides an update pursuant to the recent Court directive addressing financial assistance. The Court directs that federal financial assistance shall not be paused based on the Office of Management and Budget's direction in the rescinded OMB memorandum or the President's Executive Orders, while ongoing litigation proceeds or until otherwise directed by a Court.

Consistent with the Order, the agency's financial system will now enable the obligation of financial assistance. This includes programs within the Infrastructure Investment and Jobs Act and the Inflation Reduction Act, including federal financial assistance in the State and Tribal Assistance Grants, Brownfields, and Superfund. The Office of Budget will follow-up with a detailed list. Additionally, the disbursement of funds connected to this notice will continue.

OCFO, working closely with the Office of General Counsel and Office of Mission Support, will continue to keep the community updated on this matter.

cc:  Lek Kadeli
Meshell Jones-Peeler
Paige Hanson
OCFO Senior Managers
Vonda Jennette
Greg Luebbering
Senior Resource Officials
Senior Budget Officers

EPA_00035708

Regional Comptrollers
Funds Control Officers

EPA_00035709

**This document is produced in native format.**

**Original file name:**

**List of Sections.xlsx**

Message

---

**From:**     Boyd, Wyatt [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
           (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2221B70C69A74E18BE72346F3A25B5F1-BOYD, WYATT]
**Sent:**     3/10/2025 7:35:07 PM
**To:**      Amorosi, Joanne [Amorosi.Joanne@epa.gov]; Battin, Andrew [Battin.Andrew@epa.gov]
**CC:**      McMichael, Nate [McMichael.Nate@epa.gov]; Gulamali, Adil [Gulamali.Adil@epa.gov]
**Subject:**  RE: MEDIA QUERY - DEADLINE MARCH 11: Inquiry from NYT re: Community Change Grants, deadline 11AM Tuesday

Should use OPA language.

These grants might be in the process of being terminated.

---

**From:** Amorosi, Joanne <Amorosi.Joanne@epa.gov>
**Sent:** Monday, March 10, 2025 3:24 PM
**To:** Boyd, Wyatt <Boyd.Wyatt@epa.gov>; Battin, Andrew <Battin.Andrew@epa.gov>
**Cc:** McMichael, Nate <McMichael.Nate@epa.gov>; McCorkle-Kester, Phalia <McCorkle-Kester.Phalia@epa.gov>
**Subject:** FW: MEDIA QUERY - DEADLINE MARCH 11: Inquiry from NYT re: Community Change Grants, deadline 11AM Tuesday

Do we have any intel here?

Joanne

---

**From:** Joseph, Dominique <Joseph.Dominique@epa.gov>
**Sent:** Monday, March 10, 2025 2:57 PM
**To:** Amorosi, Joanne <Amorosi.Joanne@epa.gov>; McCorkle-Kester, Phalia <McCorkle-Kester.Phalia@epa.gov>;
McMichael, Nate <McMichael.Nate@epa.gov>
**Subject:** MEDIA QUERY - DEADLINE MARCH 11: Inquiry from NYT re: Community Change Grants, deadline 11AM Tuesday

Hi all,

OEJECR directed me to you. Are you familiar with any access issues with the Community Change Grants?
Deadline here is 11:00 a.m. tomorrow, March 11.

Thanks,

Dominique

*Dominique Joseph*
**Office of Public Affairs (OPA)**
**U.S. Environmental Protection Agency**
**202-805-3635 (cell)**
joseph.dominique@epa.gov

---

**From:** Joseph, Dominique <Joseph.Dominique@epa.gov>
**Sent:** Monday, March 10, 2025 1:54 PM
**To:** Burney, Jacob <Burney.Jacob@epa.gov>
**Cc:** Padmaperuma, Ishani <padmaperuma.ishani@epa.gov>; Motilall, Christina <Motilall.Christina@epa.gov>;
McFadden, Joseph <McFadden.Joseph@epa.gov>
**Subject:** MEDIA QUERY - DEADLINE MARCH 11: Inquiry from NYT re: Community Change Grants, deadline 11AM Tuesday

Another grants query. Are you familiar with any access issues with the Community Change Grants? Deadline here is 11:00 a.m. tomorrow, March 11.

Thanks,

Dominique

---

**From:** Claire Brown <claire.brown@nytimes.com>
**Sent:** Monday, March 10, 2025 1:31 PM
**To:** EPA Press Office <Press@epa.gov>
**Subject:** Inquiry from NYT re: Community Change Grants, deadline 11AM Tuesday

> **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Hello,

I hope this email finds you well. I'm hearing from sources that they're not able to access invoicing for grants under the Community Change Grant program as of Friday/today.

I have a few clarifying questions, which I'm including below. If it's easier/faster to walk me through this on a background phone call, I'm at 919-612-1353. Have several calls intermittently scheduled throughout the day but will call back as soon as possible if I miss you.

1. Can you confirm Community Change Grants are frozen?
2. If yes, is it all the grants? Or just some of them?
3. If no, why are grant recipients reporting that they can't access ASAP and/or that the CCG grants have disappeared from their accounts?
4. If yes, why are the grants frozen?
5. If yes, is this a temporary freeze or a permanent freeze? If temporary, how long will it last?
6. What is the justification for a freeze? I know there was a judicial order last week but I'm not sure if or how it applies here - any help in understanding this would be greatly appreciated.
7. Does E.P.A. have any comment on the Community Change Grant program?

Thanks so much. Again, if it's easier to explain this to me on background, please call at 919-612-1353.

Best,
Claire

--

**Claire Brown (she/her)**
Writer, Climate

620 Eighth Avenue
New York, NY 10018
claire.brown@nytimes.com

EPA_00035714

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NATIONAL ASSOCIATION OF
DIVERSITY OFFICERS IN HIGHER
EDUCATION, *et al.*,

    *Plaintiffs,*

    v.

DONALD J. TRUMP, *et al.*,

    *Defendants*

Case No. 25-cv-0333-ABA

### MEMORANDUM OPINION

The Court entered a Preliminary Injunction on February 21, 2025. ECF No. 45. The Preliminary Injunction described the "Enjoined Parties" as "Defendants other than the President, and other persons who are in active concert or participation with Defendants." *Id.* ¶ 3. Defendants, as identified in Plaintiffs' complaint, are President Trump in his official capacity, the Office of Management and Budget, the Departments of Justice, Health and Human Services, Education, Labor, Interior, Commerce, Agriculture, Energy, and Transportation along with the heads of those agencies (in their official capacities), and the National Science Foundation.

Plaintiffs have filed a motion seeking "clarification" on whether the "Enjoined Parties" include federal executive agencies, departments, and commissions (and their subdivisions, agents, and officers) that are not named as defendants in this case. ECF No. 50-1 ("Clarification Motion") at 3. Defendants oppose the motion and argue that (1) the Court lacks jurisdiction to consider the Clarification Motion because Defendants have filed a notice of appeal; and (2) Plaintiffs' interpretation, or requested clarification, of the Preliminary Injunction is inconsistent with Federal Rule of Civil Procedure 65(d),

1

Article III of the U.S. Constitution, and traditional principles of equity and the principles underlying preliminary injunctive relief. *See* ECF No. 62.

For the reasons set forth below, the Court will grant the Clarification Motion. The Court clarifies, pursuant to Federal Rule of Civil Procedure 65(d)(2)(B), as follows and as set forth in the accompanying Clarified Preliminary Injunction (March 10, 2025) at paragraph 3:

> The Preliminary Injunction applies to and binds Defendants other than the President, as well as all other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions directed pursuant to the J20 and J21 Orders (collectively, the "Enjoined Parties").

## I.     JURISDICTION

Generally, the timely filing of a notice of appeal transfers jurisdiction to the court of appeals and "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014). An exception to this general rule is when the district court "take[s] action that aids the appellate process." *Pub. Citizen*, 749 F.3d at 258 (citing *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991)). Under this exception, a district court may modify an injunction to clarify it in order to "reliev[e] [the appellate court] from considering the substance of an issue begotten merely from imprecise wording in the injunction." *Lytle v. Griffith*, 240 F.3d 404, 407 n.2 (4th Cir. 2001).

In *Lytle*, while an appeal was pending, the district court replaced a reference to "the Commonwealth" to specify who was covered by the injunction (there, the Governor of the Commonwealth of Virginia, and the Norfolk Commonwealth Attorney). *Id.*

EPA_00035763

Similarly, in *Dixon v. Edwards*, the Fourth Circuit held that, while an appeal was pending, the district court could modify an injunction barring an individual from "officiat[ing] at religious services on or near the grounds" of a church by revising the order to specify that the individual was "permitted to conduct religious services at least 300 feet distant from the perimeter" of the church. 290 F.3d 699, 709 & n.14 (4th Cir. 2001).

Here, Plaintiffs do not request a substantive amendment to the Preliminary Injunction, but rather a clarification regarding which agencies are encompassed among "Enjoined Parties." The requested clarification is comparable to the modified orders in *Lytle* and *Dixon*. Further, as explained below, the Court's Memorandum Opinion that accompanied the Preliminary Injunction cited actions by agencies that were not named as defendants to explain the rationale for the Preliminary Injunction, and thus clarification is further justified, and serves to "aid[] the appellate process," *Pub. Citizen*, 749 F.3d at 258, "in light of a potential inconsistency between the language of the Preliminary Injunction and that of the accompanying Memorandum Opinion." *See Am. Coll. of Obstetricians and Gynecologists ex rel. Council of Univ. Chairs of Obstetrics & Gynecology v. U.S. Food & Drug Admin.*, No. 20-cv-1320-TDC, 2020 WL 8167535, at *1 (D. Md. Aug. 19, 2020). Therefore, this Court may rule on the Clarification Motion and clarify the terms of the Preliminary Injunction.[1]

---

[1] Because the clarified preliminary injunction replaces the "in active concert or participation" language from the February 21, 2025 order with clearer wording consistent with the Court's February 21, 2025 memorandum opinion, the Court need not reach the issues raised by the parties as to what would render a non-named federal executive agency "in active concert or participation" with a named Defendant.

3

## II.     CLARIFICATION

Plaintiffs' complaint challenges as facially unconstitutional three executive order provisions, set forth in the Preliminary Injunction and referred to therein as the Termination Provision, Certification Provision, and Enforcement Threat Provision. ECF No. 45 ¶ 2. As the Court explained in its February 21 Memorandum Opinion, those provisions run afoul of the free speech protections of the First Amendment, and the due process protections of the Fifth Amendment, and do so on their face. ECF No. 44 at 38-55.

Defendants acknowledge that the President was a named defendant in this case; that the Challenged Provisions were directives to all executive agencies, departments, and commissions; and that the Court has held that those directives are unconstitutional on their face. ECF No. 62 at 3. Nonetheless, Defendants argue that the Court should only preliminarily enjoin the actions of the specific departments, agencies and commissions that Plaintiffs named as *additional* defendants. *Id.* at 14. They argue that including other departments, agencies and commissions that are under the President's direction, and were in fact directed by the Challenged Provisions, is inconsistent with Article III's standing requirement because it would bind "nonparties who would [otherwise] not be bound by the judgment." *Id.* at 13 (citing *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023)). Defendants similarly argue that this kind of injunction is inconsistent with traditional principles of equity and preliminary injunctive relief. *Id.*

The Court has previously explained why this is the proper scope of an injunction given the claims, the nature of the challenged provisions, and the ways in which Plaintiffs have shown a likelihood that the provisions are facially unconstitutional. *See*

4

ECF No. 44 at 60-62; ECF No. 61 at 10. To reiterate and further explain, there are three principal reasons.

 <u>First</u>, Plaintiffs have shown a likelihood of success on the merits that the Termination and Certification Provisions, and the Enforcement Threat Provision in part, on their face constitute unlawful content-based and viewpoint-discriminatory restrictions on speech in violation of the First Amendment, and on their face also run afoul of due process because of their vagueness. ECF No. 44 at 38-55; *see also* ECF No. 61 at 1-2 (order denying stay pending appeal). In particular, the Court held that Plaintiffs have shown a likelihood of success on the merits as follows:

- The Termination Provision, as to which Plaintiffs brought facial challenges under the Spending Clause (Count 1) and the Fifth Amendment (Count 2), "invites arbitrary and discriminatory enforcement" and "offers insufficient notice to current grantees about whether and how they can adapt their conduct to avoid termination of their grants or contracts," and in so doing facially violates the "'more stringent vagueness test'" that applies when a law "'interferes with the right of free speech or of association.'" ECF No. 44 at 38-39 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)).

- The Certification Provision, as to which Plaintiffs brought facial challenges under the First Amendment (Count 5) and separation of powers (Count 6), "operates as a facially viewpoint-discriminatory order," "constitutes a content-based restriction on the speech rights of federal contractors and grantees . . . because such restriction expands to all of those contractors' and grantees work, whether funded by the government or not," and also "unconstitutionally

EPA_00035766

restricts, and retaliates against, contractors' and grantees' free speech rights even within the scope of the pertinent programs." *Id.* at 45 & 47-48.

- The Enforcement Threat Provision, as to which Plaintiffs brought facial challenges under the First Amendment (Count 4) and Fifth Amendment (Count 3), violates the First Amendment because it "threatens . . . enforcement actions" using "a content-based restriction on protected speech that would not pass the high bar of strict scrutiny" and further constitutes an "unlawful viewpoint-based restriction on protected speech." *Id.* at 50, 52. And it violates the Fifth Amendment because, among other things, while "rescind[ing] swaths of existing executive branch guidance on what the executive branch considers the federal civil rights laws to require, prohibit, or allow," it gives no "guidance on what the new administration considers to constitute 'illegal DEI discrimination and preferences,' J21 Order § 4(b)(iv), or '[p]romoting diversity,' *id.* § 3(b)(ii), or 'illegal DEI and DEIA policies,' *id.* § 1, or what types of 'DEI programs or principles' the new administration considers 'illegal' and is seeking to 'deter,' *id.* § 4(b)(iii)." *Id.* at 53-54.

Each of those ways in which Plaintiffs have shown that the Challenged Provisions are unconstitutional are deficiencies with those provisions on their face. Any executive agency, department or commission acting pursuant to the Challenged Provisions would be acting pursuant to an order that Plaintiffs have shown a strong likelihood of success in establishing is unconstitutional on its face.

Second, the Termination and Certification Provisions are directives the President issued to *all* executive agencies, departments and commissions, J20 Order § 2(a)(i); J21 Order § 3(b)(iv), and the Enforcement Threat Provision was an express directive by the

6

President to the Department of Justice. J21 Order § 4(b)(iii). Defendants named in

Plaintiffs' complaint include the President in his official capacity. ECF No. 1 ¶ 22. The

Preliminary Injunction—both original and as clarified—is tailored to the executive

branch agencies, departments and commissions that were directed, and have acted or

may act, pursuant to the President's directives in the Challenged Provisions of the J20

and J21 Orders. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561

U.S. 477, 513-14 (2010) (holding that the President is responsible and accountable for

executive agencies that are executing the laws); *Seila Law LLC v. Consumer Fin. Prot.*

*Bureau*, 591 U.S. 197, 203-204 (2020) (same).

Third, enjoining only the agencies that Plaintiffs specifically named, and ignoring

the fact that the President (who issued the Challenged Provisions) is a named defendant,

would fail to provide complete relief to Plaintiffs and their members themselves

because, among other things, they are at risk of their speech being chilled by many non-

named federal executive agencies, as Plaintiffs explain. ECF No. 65 at 13. Artificially

limiting the preliminary injunction in the way Defendants propose also would make the

termination status of a federal grant, or the requirement to certify compliance by a

federal contractor, turn on which federal executive agency the grantee or contractor

relies on for current or future federal funding—even though the agencies would be

acting pursuant to the exact same Challenged Provisions—thereby "causing 'inequitable

treatment' in an area in which uniformity is needed." *CASA, Inc. v. Maribel*, No. 25-

1153, 2025 WL 654902, at *1 (4th Cir. Feb. 28, 2025) (quoting *Roe v. Dep't. of Defense*,

947 F.3d 207, 231-32 (4th Cir. 2020) and *HIAS, Inc. v. Trump*, 985 F.3d 309, 326-27

(4th Cir. 2021)).

EPA_00035768

III.    **CONCLUSION**

For these reasons and those previously articulated, the Court will issue a separate

order clarifying that the Preliminary Injunction, consistent with the Court's reasoning in

the February 21, 2025 Memorandum Opinion, applies as follows:

> The Preliminary Injunction applies to and binds Defendants
> other than the President, as well as all other federal executive
> branch agencies, departments, and commissions, and their
> heads, officers, agents, and subdivisions directed pursuant to
> the J20 and J21 Orders (collectively, the "Enjoined Parties").

Date:  March 10, 2025                        _____/s/_____

                                             Adam B. Abelson
                                             United States District Judge

8

EPA_00035769

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NATIONAL ASSOCIATION OF
DIVERSITY OFFICERS IN HIGHER
EDUCATION, *et al.*,

    *Plaintiffs,*

  v.

DONALD J. TRUMP, *et al.*,

    *Defendants*

Case No. 25-cv-0333-ABA

## MEMORANDUM OPINION

The Court entered a Preliminary Injunction on February 21, 2025. ECF No. 45. The Preliminary Injunction described the "Enjoined Parties" as "Defendants other than the President, and other persons who are in active concert or participation with Defendants." *Id.* ¶ 3. Defendants, as identified in Plaintiffs' complaint, are President Trump in his official capacity, the Office of Management and Budget, the Departments of Justice, Health and Human Services, Education, Labor, Interior, Commerce, Agriculture, Energy, and Transportation along with the heads of those agencies (in their official capacities), and the National Science Foundation.

Plaintiffs have filed a motion seeking "clarification" on whether the "Enjoined Parties" include federal executive agencies, departments, and commissions (and their subdivisions, agents, and officers) that are not named as defendants in this case. ECF No. 50-1 ("Clarification Motion") at 3. Defendants oppose the motion and argue that (1) the Court lacks jurisdiction to consider the Clarification Motion because Defendants have filed a notice of appeal; and (2) Plaintiffs' interpretation, or requested clarification, of the Preliminary Injunction is inconsistent with Federal Rule of Civil Procedure 65(d),

1

Article III of the U.S. Constitution, and traditional principles of equity and the principles underlying preliminary injunctive relief. *See* ECF No. 62.

For the reasons set forth below, the Court will grant the Clarification Motion. The Court clarifies, pursuant to Federal Rule of Civil Procedure 65(d)(2)(B), as follows and as set forth in the accompanying Clarified Preliminary Injunction (March 10, 2025) at paragraph 3:

> The Preliminary Injunction applies to and binds Defendants other than the President, as well as all other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions directed pursuant to the J20 and J21 Orders (collectively, the "Enjoined Parties").

## I.    JURISDICTION

Generally, the timely filing of a notice of appeal transfers jurisdiction to the court of appeals and "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014). An exception to this general rule is when the district court "take[s] action that aids the appellate process." *Pub. Citizen*, 749 F.3d at 258 (citing *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991)). Under this exception, a district court may modify an injunction to clarify it in order to "reliev[e] [the appellate court] from considering the substance of an issue begotten merely from imprecise wording in the injunction." *Lytle v. Griffith*, 240 F.3d 404, 407 n.2 (4th Cir. 2001).

In *Lytle*, while an appeal was pending, the district court replaced a reference to "the Commonwealth" to specify who was covered by the injunction (there, the Governor of the Commonwealth of Virginia, and the Norfolk Commonwealth Attorney). *Id.*

EPA_00035779

Similarly, in *Dixon v. Edwards*, the Fourth Circuit held that, while an appeal was pending, the district court could modify an injunction barring an individual from "officiat[ing] at religious services on or near the grounds" of a church by revising the order to specify that the individual was "permitted to conduct religious services at least 300 feet distant from the perimeter" of the church. 290 F.3d 699, 709 & n.14 (4th Cir. 2001).

Here, Plaintiffs do not request a substantive amendment to the Preliminary Injunction, but rather a clarification regarding which agencies are encompassed among "Enjoined Parties." The requested clarification is comparable to the modified orders in *Lytle* and *Dixon*. Further, as explained below, the Court's Memorandum Opinion that accompanied the Preliminary Injunction cited actions by agencies that were not named as defendants to explain the rationale for the Preliminary Injunction, and thus clarification is further justified, and serves to "aid[] the appellate process," *Pub. Citizen*, 749 F.3d at 258, "in light of a potential inconsistency between the language of the Preliminary Injunction and that of the accompanying Memorandum Opinion." *See Am. Coll. of Obstetricians and Gynecologists ex rel. Council of Univ. Chairs of Obstetrics & Gynecology v. U.S. Food & Drug Admin.*, No. 20-cv-1320-TDC, 2020 WL 8167535, at *1 (D. Md. Aug. 19, 2020). Therefore, this Court may rule on the Clarification Motion and clarify the terms of the Preliminary Injunction.[1]

---

[1] Because the clarified preliminary injunction replaces the "in active concert or participation" language from the February 21, 2025 order with clearer wording consistent with the Court's February 21, 2025 memorandum opinion, the Court need not reach the issues raised by the parties as to what would render a non-named federal executive agency "in active concert or participation" with a named Defendant.

3

## II.    CLARIFICATION

Plaintiffs' complaint challenges as facially unconstitutional three executive order provisions, set forth in the Preliminary Injunction and referred to therein as the Termination Provision, Certification Provision, and Enforcement Threat Provision. ECF No. 45 ¶ 2. As the Court explained in its February 21 Memorandum Opinion, those provisions run afoul of the free speech protections of the First Amendment, and the due process protections of the Fifth Amendment, and do so on their face. ECF No. 44 at 38-55.

Defendants acknowledge that the President was a named defendant in this case; that the Challenged Provisions were directives to all executive agencies, departments, and commissions; and that the Court has held that those directives are unconstitutional on their face. ECF No. 62 at 3. Nonetheless, Defendants argue that the Court should only preliminarily enjoin the actions of the specific departments, agencies and commissions that Plaintiffs named as *additional* defendants. *Id.* at 14. They argue that including other departments, agencies and commissions that are under the President's direction, and were in fact directed by the Challenged Provisions, is inconsistent with Article III's standing requirement because it would bind "nonparties who would [otherwise] not be bound by the judgment." *Id.* at 13 (citing *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023)). Defendants similarly argue that this kind of injunction is inconsistent with traditional principles of equity and preliminary injunctive relief. *Id.*

 The Court has previously explained why this is the proper scope of an injunction given the claims, the nature of the challenged provisions, and the ways in which Plaintiffs have shown a likelihood that the provisions are facially unconstitutional. *See*

4

ECF No. 44 at 60-62; ECF No. 61 at 10. To reiterate and further explain, there are three principal reasons.

First, Plaintiffs have shown a likelihood of success on the merits that the Termination and Certification Provisions, and the Enforcement Threat Provision in part, on their face constitute unlawful content-based and viewpoint-discriminatory restrictions on speech in violation of the First Amendment, and on their face also run afoul of due process because of their vagueness. ECF No. 44 at 38-55; *see also* ECF No. 61 at 1-2 (order denying stay pending appeal). In particular, the Court held that Plaintiffs have shown a likelihood of success on the merits as follows:

- The Termination Provision, as to which Plaintiffs brought facial challenges under the Spending Clause (Count 1) and the Fifth Amendment (Count 2), "invites arbitrary and discriminatory enforcement" and "offers insufficient notice to current grantees about whether and how they can adapt their conduct to avoid termination of their grants or contracts," and in so doing facially violates the "'more stringent vagueness test'" that applies when a law "'interferes with the right of free speech or of association.'" ECF No. 44 at 38-39 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)).

- The Certification Provision, as to which Plaintiffs brought facial challenges under the First Amendment (Count 5) and separation of powers (Count 6), "operates as a facially viewpoint-discriminatory order," "constitutes a content-based restriction on the speech rights of federal contractors and grantees . . . because such restriction expands to all of those contractors' and grantees work, whether funded by the government or not," and also "unconstitutionally

5

restricts, and retaliates against, contractors' and grantees' free speech rights even within the scope of the pertinent programs." *Id.* at 45 & 47-48.

- The Enforcement Threat Provision, as to which Plaintiffs brought facial challenges under the First Amendment (Count 4) and Fifth Amendment (Count 3), violates the First Amendment because it "threatens . . . enforcement actions" using "a content-based restriction on protected speech that would not pass the high bar of strict scrutiny" and further constitutes an "unlawful viewpoint-based restriction on protected speech." *Id.* at 50, 52. And it violates the Fifth Amendment because, among other things, while "rescind[ing] swaths of existing executive branch guidance on what the executive branch considers the federal civil rights laws to require, prohibit, or allow," it gives no "guidance on what the new administration considers to constitute 'illegal DEI discrimination and preferences,' J21 Order § 4(b)(iv), or '[p]romoting diversity,' *id.* § 3(b)(ii), or 'illegal DEI and DEIA policies,' *id.* § 1, or what types of 'DEI programs or principles' the new administration considers 'illegal' and is seeking to 'deter,' *id.* § 4(b)(iii)." *Id.* at 53-54.

Each of those ways in which Plaintiffs have shown that the Challenged Provisions are unconstitutional are deficiencies with those provisions on their face. Any executive agency, department or commission acting pursuant to the Challenged Provisions would be acting pursuant to an order that Plaintiffs have shown a strong likelihood of success in establishing is unconstitutional on its face.

<u>Second</u>, the Termination and Certification Provisions are directives the President issued to *all* executive agencies, departments and commissions, J20 Order § 2(a)(i); J21 Order § 3(b)(iv), and the Enforcement Threat Provision was an express directive by the

6

President to the Department of Justice. J21 Order § 4(b)(iii). Defendants named in

Plaintiffs' complaint include the President in his official capacity. ECF No. 1 ¶ 22. The

Preliminary Injunction—both original and as clarified—is tailored to the executive

branch agencies, departments and commissions that were directed, and have acted or

may act, pursuant to the President's directives in the Challenged Provisions of the J20

and J21 Orders. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561

U.S. 477, 513-14 (2010) (holding that the President is responsible and accountable for

executive agencies that are executing the laws); *Seila Law LLC v. Consumer Fin. Prot.*

*Bureau*, 591 U.S. 197, 203-204 (2020) (same).

    <u>Third</u>, enjoining only the agencies that Plaintiffs specifically named, and ignoring

the fact that the President (who issued the Challenged Provisions) is a named defendant,

would fail to provide complete relief to Plaintiffs and their members themselves

because, among other things, they are at risk of their speech being chilled by many non-

named federal executive agencies, as Plaintiffs explain. ECF No. 65 at 13. Artificially

limiting the preliminary injunction in the way Defendants propose also would make the

termination status of a federal grant, or the requirement to certify compliance by a

federal contractor, turn on which federal executive agency the grantee or contractor

relies on for current or future federal funding—even though the agencies would be

acting pursuant to the exact same Challenged Provisions—thereby "causing 'inequitable

treatment' in an area in which uniformity is needed." *CASA, Inc. v. Maribel*, No. 25-

1153, 2025 WL 654902, at *1 (4th Cir. Feb. 28, 2025) (quoting *Roe v. Dep't. of Defense*,

947 F.3d 207, 231-32 (4th Cir. 2020) and *HIAS, Inc. v. Trump*, 985 F.3d 309, 326-27

(4th Cir. 2021)).

EPA_00035784

III.    **CONCLUSION**

For these reasons and those previously articulated, the Court will issue a separate

order clarifying that the Preliminary Injunction, consistent with the Court's reasoning in

the February 21, 2025 Memorandum Opinion, applies as follows:

> The Preliminary Injunction applies to and binds Defendants
> other than the President, as well as all other federal executive
> branch agencies, departments, and commissions, and their
> heads, officers, agents, and subdivisions directed pursuant to
> the J20 and J21 Orders (collectively, the "Enjoined Parties").

Date:  March 10, 2025                    _____/s/_____

                                        Adam B. Abelson
                                        United States District Judge

8

EPA_00035785

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

NATIONAL ASSOCIATION OF
DIVERSITY OFFICERS IN HIGHER
EDUCATION, *et al.*,

     *Plaintiffs,*

    v.

DONALD J. TRUMP, *et al.*,

     *Defendants*

Case No. 25-cv-0333-ABA

## MEMORANDUM OPINION

The Court entered a Preliminary Injunction on February 21, 2025. ECF No. 45. The Preliminary Injunction described the "Enjoined Parties" as "Defendants other than the President, and other persons who are in active concert or participation with Defendants." *Id.* ¶ 3. Defendants, as identified in Plaintiffs' complaint, are President Trump in his official capacity, the Office of Management and Budget, the Departments of Justice, Health and Human Services, Education, Labor, Interior, Commerce, Agriculture, Energy, and Transportation along with the heads of those agencies (in their official capacities), and the National Science Foundation.

Plaintiffs have filed a motion seeking "clarification" on whether the "Enjoined Parties" include federal executive agencies, departments, and commissions (and their subdivisions, agents, and officers) that are not named as defendants in this case. ECF No. 50-1 ("Clarification Motion") at 3. Defendants oppose the motion and argue that (1) the Court lacks jurisdiction to consider the Clarification Motion because Defendants have filed a notice of appeal; and (2) Plaintiffs' interpretation, or requested clarification, of the Preliminary Injunction is inconsistent with Federal Rule of Civil Procedure 65(d),

1

Article III of the U.S. Constitution, and traditional principles of equity and the principles underlying preliminary injunctive relief. *See* ECF No. 62.

For the reasons set forth below, the Court will grant the Clarification Motion. The Court clarifies, pursuant to Federal Rule of Civil Procedure 65(d)(2)(B), as follows and as set forth in the accompanying Clarified Preliminary Injunction (March 10, 2025) at paragraph 3:

> The Preliminary Injunction applies to and binds Defendants other than the President, as well as all other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions directed pursuant to the J20 and J21 Orders (collectively, the "Enjoined Parties").

## I.    JURISDICTION

Generally, the timely filing of a notice of appeal transfers jurisdiction to the court of appeals and "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014). An exception to this general rule is when the district court "take[s] action that aids the appellate process." *Pub. Citizen*, 749 F.3d at 258 (citing *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991)). Under this exception, a district court may modify an injunction to clarify it in order to "reliev[e] [the appellate court] from considering the substance of an issue begotten merely from imprecise wording in the injunction." *Lytle v. Griffith*, 240 F.3d 404, 407 n.2 (4th Cir. 2001).

In *Lytle*, while an appeal was pending, the district court replaced a reference to "the Commonwealth" to specify who was covered by the injunction (there, the Governor of the Commonwealth of Virginia, and the Norfolk Commonwealth Attorney). *Id.*

2

Similarly, in *Dixon v. Edwards*, the Fourth Circuit held that, while an appeal was pending, the district court could modify an injunction barring an individual from "officiat[ing] at religious services on or near the grounds" of a church by revising the order to specify that the individual was "permitted to conduct religious services at least 300 feet distant from the perimeter" of the church. 290 F.3d 699, 709 & n.14 (4th Cir. 2001).

Here, Plaintiffs do not request a substantive amendment to the Preliminary Injunction, but rather a clarification regarding which agencies are encompassed among "Enjoined Parties." The requested clarification is comparable to the modified orders in *Lytle* and *Dixon*. Further, as explained below, the Court's Memorandum Opinion that accompanied the Preliminary Injunction cited actions by agencies that were not named as defendants to explain the rationale for the Preliminary Injunction, and thus clarification is further justified, and serves to "aid[] the appellate process," *Pub. Citizen*, 749 F.3d at 258, "in light of a potential inconsistency between the language of the Preliminary Injunction and that of the accompanying Memorandum Opinion." *See Am. Coll. of Obstetricians and Gynecologists ex rel. Council of Univ. Chairs of Obstetrics & Gynecology v. U.S. Food & Drug Admin.*, No. 20-cv-1320-TDC, 2020 WL 8167535, at *1 (D. Md. Aug. 19, 2020). Therefore, this Court may rule on the Clarification Motion and clarify the terms of the Preliminary Injunction.[1]

---

[1] Because the clarified preliminary injunction replaces the "in active concert or participation" language from the February 21, 2025 order with clearer wording consistent with the Court's February 21, 2025 memorandum opinion, the Court need not reach the issues raised by the parties as to what would render a non-named federal executive agency "in active concert or participation" with a named Defendant.

3

## II.    CLARIFICATION

Plaintiffs' complaint challenges as facially unconstitutional three executive order provisions, set forth in the Preliminary Injunction and referred to therein as the Termination Provision, Certification Provision, and Enforcement Threat Provision. ECF No. 45 ¶ 2. As the Court explained in its February 21 Memorandum Opinion, those provisions run afoul of the free speech protections of the First Amendment, and the due process protections of the Fifth Amendment, and do so on their face. ECF No. 44 at 38-55.

Defendants acknowledge that the President was a named defendant in this case; that the Challenged Provisions were directives to all executive agencies, departments, and commissions; and that the Court has held that those directives are unconstitutional on their face. ECF No. 62 at 3. Nonetheless, Defendants argue that the Court should only preliminarily enjoin the actions of the specific departments, agencies and commissions that Plaintiffs named as *additional* defendants. *Id.* at 14. They argue that including other departments, agencies and commissions that are under the President's direction, and were in fact directed by the Challenged Provisions, is inconsistent with Article III's standing requirement because it would bind "nonparties who would [otherwise] not be bound by the judgment." *Id.* at 13 (citing *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023)). Defendants similarly argue that this kind of injunction is inconsistent with traditional principles of equity and preliminary injunctive relief. *Id.*

The Court has previously explained why this is the proper scope of an injunction given the claims, the nature of the challenged provisions, and the ways in which Plaintiffs have shown a likelihood that the provisions are facially unconstitutional. *See*

4

ECF No. 44 at 60-62; ECF No. 61 at 10. To reiterate and further explain, there are three principal reasons.

First, Plaintiffs have shown a likelihood of success on the merits that the Termination and Certification Provisions, and the Enforcement Threat Provision in part, on their face constitute unlawful content-based and viewpoint-discriminatory restrictions on speech in violation of the First Amendment, and on their face also run afoul of due process because of their vagueness. ECF No. 44 at 38-55; *see also* ECF No. 61 at 1-2 (order denying stay pending appeal). In particular, the Court held that Plaintiffs have shown a likelihood of success on the merits as follows:

- The Termination Provision, as to which Plaintiffs brought facial challenges under the Spending Clause (Count 1) and the Fifth Amendment (Count 2), "invites arbitrary and discriminatory enforcement" and "offers insufficient notice to current grantees about whether and how they can adapt their conduct to avoid termination of their grants or contracts," and in so doing facially violates the "'more stringent vagueness test'" that applies when a law "'interferes with the right of free speech or of association.'" ECF No. 44 at 38-39 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)).

- The Certification Provision, as to which Plaintiffs brought facial challenges under the First Amendment (Count 5) and separation of powers (Count 6), "operates as a facially viewpoint-discriminatory order," "constitutes a content-based restriction on the speech rights of federal contractors and grantees . . . because such restriction expands to all of those contractors' and grantees work, whether funded by the government or not," and also "unconstitutionally

EPA_00035799

restricts, and retaliates against, contractors' and grantees' free speech rights even within the scope of the pertinent programs." *Id.* at 45 & 47-48.

- The Enforcement Threat Provision, as to which Plaintiffs brought facial challenges under the First Amendment (Count 4) and Fifth Amendment (Count 3), violates the First Amendment because it "threatens . . . enforcement actions" using "a content-based restriction on protected speech that would not pass the high bar of strict scrutiny" and further constitutes an "unlawful viewpoint-based restriction on protected speech." *Id.* at 50, 52. And it violates the Fifth Amendment because, among other things, while "rescind[ing] swaths of existing executive branch guidance on what the executive branch considers the federal civil rights laws to require, prohibit, or allow," it gives no "guidance on what the new administration considers to constitute 'illegal DEI discrimination and preferences,' J21 Order § 4(b)(iv), or '[p]romoting diversity,' *id.* § 3(b)(ii), or 'illegal DEI and DEIA policies,' *id.* § 1, or what types of 'DEI programs or principles' the new administration considers 'illegal' and is seeking to 'deter,' *id.* § 4(b)(iii)." *Id.* at 53-54.

Each of those ways in which Plaintiffs have shown that the Challenged Provisions are unconstitutional are deficiencies with those provisions on their face. Any executive agency, department or commission acting pursuant to the Challenged Provisions would be acting pursuant to an order that Plaintiffs have shown a strong likelihood of success in establishing is unconstitutional on its face.

Second, the Termination and Certification Provisions are directives the President issued to *all* executive agencies, departments and commissions, J20 Order § 2(a)(i); J21 Order § 3(b)(iv), and the Enforcement Threat Provision was an express directive by the

6

President to the Department of Justice. J21 Order § 4(b)(iii). Defendants named in Plaintiffs' complaint include the President in his official capacity. ECF No. 1 ¶ 22. The Preliminary Injunction—both original and as clarified—is tailored to the executive branch agencies, departments and commissions that were directed, and have acted or may act, pursuant to the President's directives in the Challenged Provisions of the J20 and J21 Orders. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 513-14 (2010) (holding that the President is responsible and accountable for executive agencies that are executing the laws); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203-204 (2020) (same).

<u>Third</u>, enjoining only the agencies that Plaintiffs specifically named, and ignoring the fact that the President (who issued the Challenged Provisions) is a named defendant, would fail to provide complete relief to Plaintiffs and their members themselves because, among other things, they are at risk of their speech being chilled by many non-named federal executive agencies, as Plaintiffs explain. ECF No. 65 at 13. Artificially limiting the preliminary injunction in the way Defendants propose also would make the termination status of a federal grant, or the requirement to certify compliance by a federal contractor, turn on which federal executive agency the grantee or contractor relies on for current or future federal funding—even though the agencies would be acting pursuant to the exact same Challenged Provisions—thereby "causing 'inequitable treatment' in an area in which uniformity is needed." *CASA, Inc. v. Maribel*, No. 25-1153, 2025 WL 654902, at *1 (4th Cir. Feb. 28, 2025) (quoting *Roe v. Dep't. of Defense*, 947 F.3d 207, 231-32 (4th Cir. 2020) and *HIAS, Inc. v. Trump*, 985 F.3d 309, 326-27 (4th Cir. 2021)).

EPA_00035801

## III.  CONCLUSION

For these reasons and those previously articulated, the Court will issue a separate

order clarifying that the Preliminary Injunction, consistent with the Court's reasoning in

the February 21, 2025 Memorandum Opinion, applies as follows:

> The Preliminary Injunction applies to and binds Defendants
> other than the President, as well as all other federal executive
> branch agencies, departments, and commissions, and their
> heads, officers, agents, and subdivisions directed pursuant to
> the J20 and J21 Orders (collectively, the "Enjoined Parties").

Date:  March 10, 2025

_____/s/_____
Adam B. Abelson
United States District Judge

EPA_00035802