Message

**From:** Schindel, Phillip [Schindel.Phillip@epa.gov]
**Sent:** 1/17/2025 3:49:47 PM
**To:** Nowlan, Aileen [Nowlan.Aileen@epa.gov]; Oneil, Walker [Oneil.Walker@epa.gov]
**CC:** Drummond, James [Drummond.James@epa.gov]
**Subject:** RE: Request for Prior Approval (Grant Number 84094201)

Walker, For the file, confirming our conversation from earlier this morning.

The PO, Ben is out today, and as Aileen has provided programmatic concurrence, I have requested you to move the amendment forward in NGGS so that it is available for my signature.

Thanks,
Phil

---

**From:** Nowlan, Aileen <Nowlan.Aileen@epa.gov>
**Sent:** Thursday, January 16, 2025 5:01 PM
**To:** Oneil, Walker <Oneil.Walker@epa.gov>
**Cc:** Schindel, Phillip <Schindel.Phillip@epa.gov>; Drummond, James <Drummond.James@epa.gov>
**Subject:** FW: Request for Prior Approval (Grant Number 84094201)

Hi Walker,
Please see attached for a proposed change from CGC.

The program understands the change to be in line with the workplan and budget as initially proposed, but achieving the Financial Assistance and workplan goals through a different financial mechanism. We expect CGC to hold Indirect Costs to the lower original level and provide full transparency as soon as transactions close.

Please let me know if you have any questions.

Aileen

---

**From:** David Pettit <dpettit@coalitionforgreencapital.com>
**Sent:** Thursday, January 16, 2025 1:05 PM
**To:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Cc:** Drummond, James <Drummond.James@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; kevin.minoli@alston.com; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; cbrowner@cov.com; Jack, W. Andrew <ajack@cov.com>; Terenzio, Peter <pterenzio@cov.com>; Richard Kauffman <RKauffman@coalitionforgreencapital.com>
**Subject:** Re: Request for Prior Approval (Grant Number 84094201)

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Mr. Schindel,

Please see attached the requested documents.  Please confirm receipt and your approval.

We respectfully request expedited treatment as we have transactions scheduled to close today.  To the extent possible, a prompt response today would be greatly appreciated.

Thank you again for your consideration.

Best regards,
David

--

**David Pettit**
General Counsel and Chief Strategy Officer
Coalition For Green Capital

---

**From:** David Pettit <dpettit@coalitionforgreencapital.com>
**Sent:** Thursday, January 16, 2025 9:22 AM
**To:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Cc:** Drummond, James <Drummond.James@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Minoli, Kevin <kevin.minoli@alston.com>; Eli Hopson <eli@coalitionforgreencapital.com>; Jeff Diehl <jdiehl@coalitionforgreencapital.com>; cbrowner@cov.com <cbrowner@cov.com>; Jack, W. Andrew <ajack@cov.com>; Terenzio, Peter <pterenzio@cov.com>
**Subject:** Re: Request for Prior Approval (Grant Number 84094201)

Thank you so much, Mr. Schindel.  We will be back to you shortly with the requested documents.

--

**David Pettit**
General Counsel and Chief Strategy Officer
Coalition For Green Capital

---

**From:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Sent:** Thursday, January 16, 2025 9:11 AM
**To:** David Pettit <dpettit@coalitionforgreencapital.com>
**Cc:** Drummond, James <Drummond.James@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Minoli, Kevin <kevin.minoli@alston.com>; Eli Hopson <eli@coalitionforgreencapital.com>; Jeff Diehl <jdiehl@coalitionforgreencapital.com>; cbrowner@cov.com <cbrowner@cov.com>; Jack, W. Andrew <ajack@cov.com>; Terenzio, Peter <pterenzio@cov.com>
**Subject:** RE: Request for Prior Approval (Grant Number 84094201)

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Good morning Mr. Pettit,

We can approve this request in concept. I will need CGC to please send a proposed revision to workplan page 45 and to the associated detailed budget table.

Thank you,
Phil


Phillip Schindel
Acting Director
US EPA Grants Management & Business Operations Division
202-564-5293
Schindel.Phillip@epa.gov

---

**From:** David Pettit <dpettit@coalitionforgreencapital.com>
**Sent:** Wednesday, January 15, 2025 7:11 PM
**To:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Cc:** Drummond, James <Drummond.James@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; kevin.minoli@alston.com; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; cbrowner@cov.com; Jack, W. Andrew <ajack@cov.com>; Terenzio, Peter <pterenzio@cov.com>
**Subject:** Request for Prior Approval (Grant Number 84094201)

 **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Dear Mr. Schindel:

Pursuant to the terms of the Award Agreement for Grant Number 84094201 ("NCIF Award") and 2 C.F.R. 200.308(f)(5), the Coalition for Green Capital ("CGC") hereby requests "prior approval" from EPA for the transfer of funds budgeted for Participant Support Costs to other budget categories. The purpose of this request is to facilitate the award and funding of subawards to financial intermediary subrecipients consistent with the activities describe in the workplan in effect for CGC's NCIF Award.

CGC's workplan describes CGC's intent to make subawards to financial intermediary subrecipients and the important role these entities have in helping to implement CGC's NCIF Award. See, e.g., Workplan at p. 45. Among the types of financial assistance described in CGC's workplan, and thus approved for use under CGC's NCIF Award, are subawards to financial intermediary subrecipients, through which CGC would provide financial assistance to an entity, which may itself be a qualified project, to enable the entity to provide follow-on loans and other forms of financial assistance to qualified projects. CGC's approved budget, however, does not presently distinguish between participant support costs and subawards to financial intermediaries. CGC requests EPA's prior approval in order to rectify that issue. In the event that a transfer of funds covered by the requested prior approval could allow for a recalculation of the amount of indirect costs available, CGC will not draw down indirect costs in excess of the amount listed in CGC's approved budget as of the date of this request.

Thank you for your consideration of this request.

Best regards,
David

--

**David Pettit**

(he/him)

General Counsel and Chief Strategy Officer

_____

Coalition For Green Capital/American Green Bank Consortium

*Twitter* | *LinkedIn*





*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

## CGC's Strategic Financial Partnerships Factsheet

- CGC received $5 billion of initial capitalization from the EPA's National Clean Investment Fund (NCIF) to invest in public-private partnerships and to accelerate the construction of a clean power platform for all Americans. The Coalition for Green Capital (CGC)'s commitments with Apollo Asset Management (Apollo), Brookfield Asset Management (Brookfield), Energy Capital Partners (ECP), and StepStone Group (StepStone) demonstrate the power of public-private collaboration. Through these partnerships, CGC retains all rights to make final decisions regarding investments. **CGC is taking the first step toward reaching its target of causing more than $20 billion in cumulative private-public investment in clean power projects by mid-2026.**

- **Selecting Strategic Financial Partners.** These four partners were selected through CGC's highly competitive RFP 1 open submission process. CGC carefully evaluated proposals among numerous other submissions. CGC received 35+ proposals for financial intermediary investment vehicles, totaling $22B+ in requested capital commitments. As part of its selections for financial intermediary investment vehicles, CGC is investing $2.65 billion across these four partners.

- **Magnifying Impact and Expanding Market Reach.** CGC has invested $2.65 billion across the Apollo, Brookfield, ECP and StepStone partnerships **to magnify the impact of CGC's capital and community investment expertise** with private sector operational capabilities and resources to accelerate the mobilization of private capital and deployment of clean energy projects across different markets. **Each partnership will target investing at least 50 percent of its funds in Low-Income and Disadvantaged Communities.**

    - **Brookfield's CGC Renewable Credit Mobilization Fund,** capitalized by $450M in CGC investment, will focus on energy infrastructure credit solutions, such as renewable power generation and storage projects, to accelerate deployment of transformative projects with key requirements to ensure community benefits while also mobilizing private capital.

    - **Apollo's CGC Clean Energy Mobilization Fund,** also capitalized by $450M in CGC investment, will focus on hybrid solutions  (i.e., structured investments with downside debt-like protections and up-side equity-like benefits, which can play a particularly catalytic role in the capital stack of projects) and other financing solutions for qualified projects that deliver key financing needs.

    - **Energy Capital Partners' CGC Clean Energy Mobilization Fund,** capitalized by $300M CGC investment, will support equity investments into carbon-reducing infrastructure, such as distributed generation and other renewables, providing critical equity capital for projects and companies alike.

    - **StepStone's CGC Clean Energy Investment Mobilization LLC,** capitalized by $1,450M in CGC investment, includes two distinct mandates: (1)  providing capital for direct and co-investments into projects and companies focused on

1

EPA_00050657



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

America's advanced clean power platform and (2) expanding access to capital for small and medium-sized General Partners to mobilize private capital for qualified projects within underserved areas of the market, such as project development financing.

- **The Power of Strategic Collaboration.** These partnerships enable CGC to move faster and more effectively in funding projects across different investment approaches, types of assets, clean technologies, project sizes, and locations.
  - **Builds Market Reputation:** These strategic partnerships enable CGC to grow a stronger track record with diverse private sector providers, increasing CGC's ability to influence where resources are directed to ensure funding goes to the projects and areas that need it most.
  - **Accelerates Market Transformation:** CGC's partnerships help drive investment in qualified projects quickly and prudently, creating opportunities for capital to be recycled and reinvested into additional qualified projects, in line with the Greenhouse Gas Reduction Fund's overarching mandate.
  - **Leverage Partner Capabilities for Targeted Impact:** CGC's partnerships provide CGC with the ability to leverage partner pipelines helping expand investment opportunities across diverse geographies, asset classes, and projects. Just as important, CGC can leverage each partner's proven track record to mobilize institutional capital in private markets to enhance outcomes for the communities served.
  - **Access to Enhanced Investment Tools:** CGC's partnerships enable CGC to access each partner's rigorous due diligence capabilities, proprietary analytics, and industry expertise to enable a more precise evaluation of investment opportunities, improved risk mitigation, and data-driven decisions.
  - **Potential for Significant Private Capital Mobilization:** CGC's partnerships have the potential for significant private capital mobilization, not just through project-level leverage and capital recycling strategies but also through fund-level leverage. **Each of the new funds enables additional private, philanthropic, and other capital providers to invest in the funds alongside CGC's anchor commitment.**

- **A Partnership with Deep Accountability:** Each of these partners brings significant track record and capabilities to execute, but CGC is not relying on track record alone. Instead, CGC upholds accountability in these partnerships through clear requirements that are embedded in CGC's agreements with the partners.
  - **Collaboration:** CGC will have veto and consent rights. This means that CGC retains a critical role in the process of sourcing, screening, underwriting, and approving investments, ensuring alignment with EPA requirements, affiliate rules, and strategic goals while also accelerating impact. Through this structure, CGC is

EPA_00050658

CGC
Coalition for Green Capital

*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

able to ensure underlying investments are not just financially prudent but also drive benefits into critically impacted markets.

o **Investment Requirements:** These partners must align their investment portfolios with CGC's impact goals and targets, including the target that 50% or more of investments are directed to LIDACs. CGC has gone one step further than that requirement; with partners required to prioritize tools like project labor agreements and community benefits agreements, projects will not just be "in" LIDACs but also benefit communities through creation of good-paying jobs.

o **Reporting Standards:** CGC is ensuring alignment with EPA requirement, clear and transparent reporting at transaction- and project-level for compliance and consistent portfolio insights, including visibility on underlying portfolios and their impacts, such as energy savings, job creation, and health benefits.

o **Financial Prudence**. CGC requires that funds held by partners are kept in insurance accounts or invested in the safest short-term securities (i.e., U.S. Savings Bonds, U.S. Treasury Marketable Securities, and U.S. Agency Marketable Securities – or money market funds consisting of these securities) before being invested in qualified projects, consistent with the terms and conditions of CGC's award agreement with the EPA as well as prudent financial management standards. Funds held by partners enable them to deliver on their investment mandates by mobilizing private capital and driving capital into projects.

EPA_00050659

**This document is produced in native format.**

**Original file name:**

**1-17-2024 Copy of 11725 Budget Account Drawdown Spreadsheet (CBI).xlsx**



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

## RFP 1 Factsheet

- The Coalition for Green Capital (CGC) was awarded a $5 billion grant by the Environmental Protection Agency (EPA) under the National Clean Investment Fund (NCIF) competition to invest in public-private partnerships and create a network of self-sustaining green banks to accelerate the construction of a clean power platform. The launch of CGC's first open Request for Investment Proposals ("RFP 1") constituted a significant step to enable developers, investors, and project partners to secure a financing agreement with CGC. RFP 1 accelerates the development of America's clean power platform quickly and prudently, creating a process for proposal submissions that mobilize private sector capital to deliver clean jobs, clean air, clean water and cheap clean power so all Americans benefit.

- **Launching RFP 1.** On November 8, 2024, CGC launched its first [Request for Investment](#) [Proposals](#) ("RFP 1"). This open solicitation allows clean energy developers, commercial partners, community lenders, and financial investors—including private credit and equity firms—to submit investment proposals for qualified projects located in the United States. **CGC continues to welcome proposal submissions under RFP 1 and plans to issue additional guidance on how proposal submissions under RFP No.1 integrate into CGC's newly established partnerships.**

- **RFP 1 submission process:**
    1. **Submission:** Proposals are formally submitted to CGC through its web form under RFP 1. Submission contents from applicants included completed submission forms, materials on qualifications, proposed term sheets, and more.
    2. **Screening:** Proposals are evaluated for responsiveness, completeness, and conformance to RFP requirements. Further, proposals are screened out if they did not score at least 50% in any one of the five categories of evaluation criteria, as described in RFP 1.
    3. **Scoring:** Proposals are scored by a committee using the RFP's five evaluation criteria, resulting in each proposal that was first deemed responsive to be then scored out of 100 points. **The five evaluation criteria and respective weightings are as follows:** Project Management Team & Execution Risks (20%), Investment Terms and Financial Criteria (20%), Investment Impact (20%), Compliance Readiness (20%), Compliance Readiness (20%)
    4. **Scoring:** Proposals were scored by a committee using the RFP's five evaluation criteria, resulting in each proposal that was first deemed responsive to be then scored out of 100 points. **The five evaluation criteria and respective weightings are as follows:** Project Management Team & Execution Risks (20%), Investment Terms and Financial Criteria (20%),

EPA_00050681



CONFIDENTIAL BUSINESS INFORMATION
THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS
CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4
DRAFT

Investment Impact (20%), Compliance Readiness (20%), Compliance Readiness (20%)
*Note: Given the nature of the network investments and consistent with internal policies, the network investments were not sourced through RFP 1.*

- **CGC is moving quickly and prudently.** RFP 1 was issued to provide a structured process for CGC to source, evaluate, and select proposals that leverage its capital and expertise alongside third-party resources and capabilities. For example, working with financial intermediaries would enable CGC to leverage their sourcing and screening of qualified projects to deploy funds sooner while being able to better accomplish the objectives of CGC's NCIF grant. Additional benefits in doing so involve spurring larger financial institutions as well as emerging fund managers to accelerate equitable financing in qualified projects, helping to ensure under-served communities, including rural communities, benefit from the advanced clean power platform.  CGC chose to use RFP 1 to source project proposals even when not strictly required as a "best practice" to be followed—especially given the size of capital requested under some of the proposals.

- **RFP 1 has a broad scope, listing out the following seven financial product/transaction types:** senior debt instruments, junior debt instruments, credit enhancements, equity investments, loan purchases, financial intermediary investment vehicles, and other investment type. On December 5, 2024, CGC published supplemental guidance for prospective applicants on one of those financial product/transaction types, financial intermediary investment vehicles, to improve potential applicants' understanding of RFP requirements in a fair and competitive manner while not altering the terms of the RFP or the criteria against proposals were reviewed.

- **RFP 1 has resulted in a highly competitive process.** After the release of the supplemental guidance for financial intermediary investment vehicles, for example, CGC received 35+ proposals for financial intermediary investment vehicles, totaling $22B+ in requested capital commitments.

- [1]**Impact of RFP 1 to Date:** Based upon the RFP process, Apollo, Brookfield, Energy Capital Partners, and StepStone moved forward and were ultimately selected as private sector partners. These partners received a total of $2.65 billion **to magnify the impact of CGC's capital and expertise with private sector resources and accelerate the demand for clean energy across different markets.** Each partnership will aim to invest **at least 50 percent** of its funds in Low-Income and Disadvantaged communities.
  - CGC's financial transactions with these four strategic financial partners as well as GreenieRE were approved by CGC's Management Investment Committee as well as Board Investment Committee.

EPA_00050682

*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

- o Across each of the investments, CGC makes the final decision as to which projects and opportunities receive funding.
- **Continual Use of RFP 1:** CGC will continue to use RFP 1 to source project proposals for consideration by partners, including strategic financial partners and Network members. Additional guidance on this process is forthcoming.

**RFP 1 Resources:**
- Press release announcing the launch of RFP 1, can be found **here.**
- RFP 1 document can be found **here.**
- Public RFP 1 webinar can here.
- RFP 1 webinar deck can be found **here.**

EPA_00050683

| Message | |
|---|---|
| **From:** | David Pettit [dpettit@coalitionforgreencapital.com] |
| **Sent:** | 1/21/2025 2:57:34 PM |
| **To:** | Nowlan, Aileen [Nowlan.Aileen@epa.gov] |
| **CC:** | Hitz, Thomas [Hitz.Thomas@epa.gov]; Dinnocenzo, Benjamin (he/him/his) [Dinnocenzo.Benjamin@epa.gov]; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; Drummond, James [Drummond.James@epa.gov]; Widawsky, David [Widawsky.David@epa.gov]; Christopher, Katherine [Christopher.Katherine@epa.gov] |
| **Subject:** | Re: Confidential Business Information - anticipated drawdown summary |
| **Attachments:** | GreenieRE Fact Sheet (Draft 01212025) (CBI).pdf; Investing in Year One CGC Fact Sheet (Draft 01212025) (CBI).pdf; Network Fact Sheet (Draft 01212025) (CBI).pdf; Strategic Financial Partnerships Fact Sheet (Draft 01212025) (CBI).pdf; CGC RFP 1 Fact Sheet (Draft 01212025) (CBI).pdf |

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

ATTACHMENTS CONTAIN CONFIDENTIAL BUSINESS INFORMATION

Aileen,

Attached please find drafts of several fact sheets that we are developing for purposes of public announcements planned for later this month or early February. This information is still in draft form and not currently publicly available and so we respectfully request confidential business information treatment.

Thanks,
David

--
**David Pettit**
General Counsel and Chief Strategy Officer
Coalition For Green Capital

---

**From:** David Pettit <dpettit@coalitionforgreencapital.com>
**Sent:** Friday, January 17, 2025 1:14 PM
**To:** Nowlan, Aileen <Nowlan.Aileen@epa.gov>
**Cc:** Hitz, Thomas <Hitz.Thomas@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Eli Hopson <eli@coalitionforgreencapital.com>; Jeff Diehl <jdiehl@coalitionforgreencapital.com>; Drummond, James

<Drummond.James@epa.gov>; Widawsky, David <Widawsky.David@epa.gov>; Christopher, Katherine
<Christopher.Katherine@epa.gov>
**Subject:** Re: Confidential Business Information - anticipated drawdown summary

ATTACHMENT CONTAINS CONFIDENTIAL BUSINESS INFORMATION

Aileen,

Thank you for the opportunity this morning to discuss our plans and to clarify the points below.  Attached is an
updated table that breaks down the transactions that have now been fully executed and that are being facilitated
by draw requests we will submit later today.  This attachment constitutes a trade secret and commercial
information typically treated as confidential exempt from mandatory disclosure under FOIA exemption 4.

We will also follow up with the additional information we discussed.

Best regards,
David


--
**David Pettit**
General Counsel and Chief Strategy Officer
Coalition For Green Capital

---

**From:** Nowlan, Aileen <Nowlan.Aileen@epa.gov>
**Sent:** Friday, January 17, 2025 8:51 AM
**To:** Eli Hopson <eli@coalitionforgreencapital.com>; Dinnocenzo, Benjamin (he/him/his)
<Dinnocenzo.Benjamin@epa.gov>; Hitz, Thomas <Hitz.Thomas@epa.gov>
**Cc:** Jeff Diehl <jdiehl@coalitionforgreencapital.com>; David Pettit <dpettit@coalitionforgreencapital.com>; Drummond,
James <Drummond.James@epa.gov>; Widawsky, David <Widawsky.David@epa.gov>; Christopher, Katherine
<Christopher.Katherine@epa.gov>
**Subject:** RE: Confidential Business Information - anticipated drawdown summary

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Eli:

We appreciate the opportunity to review Coalition for Green Capital's anticipated draw down of funds from the Citi
Budget Account for Grant Number XXX described on the spreadsheet you provided.  Please note the following points.

1.  We do not concur with CGC's proposal to immediately draw down $50 Million for "Payment of budgeted contractual
obligations for consultant, legal, and personnel and fringe benefits, consistent with 2 CFR 200.430 Compensation—
personal services and 2 CFR 200.431 Compensation—fringe benefits"   NCIF grant funds may only be drawn down from
the Budget Account for use to pay contractors and employees when there is a need to do so within the period of time
specified in the "Transferring Funds Out of the Budget Account" term and condition.   Contractors and employees earn
payments through performance of work and NCIF grant funds may not be used to pay them in advance for work that has
not been performed.

2.  For the Financial Assistance Transactions listed on the spreadsheet, CGC must be legally obligated to disburse the
entire amount of funding specified to the Network Partner or other subrecipient in order to draw down

funds.  Documentation of that obligation must be available in the event of an audit or other "transaction testing" review of the expenditures.

3.  CGC must ensure that all Financial Assistance Transactions comply with Conflict of Interest requirements specified in the EPA Financial Assistance Conflict of Interest Policy and CCG's implementing procedures.  Again, documentation of compliance must be available in the event of an audit or other review of the expenditures.

We recognize that the CCG workplan is based on a "pipeline" of financial assistance transactions that CCG anticipated executing within a year of award of NCIF funding.  Nonetheless, given the proposal to draw down such a large amount of funds at one time, CGC should be prepared for an audit or other transaction testing review.

Regards,
Aileen

---

**From:** Eli Hopson <eli@coalitionforgreencapital.com>
**Sent:** Tuesday, January 14, 2025 5:02 PM
**To:** Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Hitz, Thomas <Hitz.Thomas@epa.gov>
**Cc:** jdiehl@coalitionforgreencapital.com; dpettit@coalitionforgreencapital.com
**Subject:** Confidential Business Information - anticipated drawdown summary

> **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

As requested, please find attached a spreadsheet that provides an overview of CGC's anticipated drawdowns from the Financial Agent over the next few days.  **Note that these transactions have not been finalized, and we have not submitted draw requests for any of these transactions at this time.**  Please let us know if helpful to provide an updated version of this spreadsheet after drawdowns are made with the final numbers

- 
- Our workplan emphasizes the need for rapid deployment of capital to drive impact against the Greenhouse Gas Reduction Fund's three program objectives. This is why our workplan committed us to deploying CGC's entire Financial Assistance budget within the first year of the Period of Performance.

- As requested, please find attached a spreadsheet that provides an overview of CGC's anticipated drawdowns from the Financial Agent over the next few days. Please let us know if helpful to provide an updated version of this spreadsheet after drawdowns are made with the final numbers.

- Each of the anticipated drawdowns is for an allowable cost under the terms and conditions of our award agreement and is consistent with our workplan.

- Pursuant to the terms and conditions, funds that are drawn down will be disbursed for an allowable activity shortly after the funds are drawn.

- To the extent that a longer disbursement window is known in advance for any of the anticipated drawdowns, CGC will notify our EPA Project Officer prior to executing the transfer—and follow up with the amount of the transfer that has been disbursed at the fifth, tenth, and fourteenth business day.

- To the extent funds are drawn but not disbursed within 15 business days, CGC will return funds to the Financial Agent.

EPA_00050686

- We look forward to drawing down these funds and finalizing the associated transactions to ensure continued progress against our workplan, including our commitment to deploy our budget within the first year.

Thanks,
-Eli



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

## GreenieRE Fact Sheet

- The Coalition for Green Capital was awarded $5 billion in NCIF grant funds to fill market gaps by using public-private partnerships to maximize the impact of public capital, directly invest in qualified projects, and indirectly through a network of economically self-sufficient green banks.
- CGC made a **$200 million investment** in GreenieRE, an impact-driven reinsurance company designed to remove green financing obstacles and address gaps in the insurance market that prevent the deployment of clean energy technologies at-scale. **This partnership plays a critical first step at removing the barriers that lock out private capital and keep clean energy technology costs high for developers and consumers.**
- **CGC financial assistance to GreenieRe will:**
    - **Reduce bottlenecks** and break down insurance barriers for qualified renewable energy projects.
    - **Attract billions** in private investment to fund clean energy projects that might not otherwise happen.
    - **Accelerate** the build out advanced clean power platform to benefit communities across the U.S.

- **Governance & Risk Management:** CGC will ensure GreenieRE balances impact and financial sustainability by maintaining oversight and consent rights for major decisions. GreenieRE also reduces risk by only insuring projects shared across multiple insurers.

- **The Financing Bottleneck:** A major hurdle for financing clean energy projects is obtaining affordable and reliable insurance. Many insurers are hesitant to cover these projects because they involve newer technologies or businesses with little credit history. This can lead to higher premiums, restrictive terms, and limited coverage options, making it harder for developers to secure the funding they need. **The challenge is even more pronounced for projects serving low-income and disadvantaged communities (LIDACS), where perceived financial risk is higher. At least 40% of GreenieRE's insured value will be allocated to projects in Low-Income and Disadvantaged Communities (LIDACs).** By stepping in where traditional insurers hesitate, GreenieRE helps bridge these gaps, ensuring qualified projects have the financial backing needed to move forward**.**
- **The GreenieRE opportunity** targets four fast-growing markets for renewable energy insurance where insurance premiums are high because traditional insurers see them as risky. By specializing in these markets, GreenieRE lowers these barriers, reducing upfront costs for developers and adoption costs for consumers.
    - **Renewables:** Solar, wind, hydro, geothermal
    - **Grid Infrastructure:** Battery storage, transmission

1

EPA_00050688

*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

- **Electric Vehicles:** EV leasing, manufacturing, charging infrastructure
- **Building Energy Efficiency:** HVAC, lighting, and appliances

**GreenieRE addresses critical insurance gaps** by providing backstop capacity to qualified renewable energy projects. It has structured its initial operations around four product offerings:

- **Credit Insurance:** Ensures developers get paid, even if buyers default.
- **Tax Insurance:** Protects projects relying on federal tax credits.
- **Performance Insurance:** Covers risks of underperformance of renewable technologies like solar and wind.
- **EV Residual Value Insurance:** Stabilizes EV financing by reducing depreciation risks.

**The potential impact** over the next decade for projects supported by GreenieRE could:

- **Avoid up to 2.3 million metric tons of $CO_2$** emissions – equivalent to taking half a million cars off the road
- **Drive billions of private capital into clean energy projects.** Over 10 years, projects directly tied to GreenieRE's involvement will generate $5.2 billion. Through its ripple effect on the green financing ecosystem, GreenieRE's insurance is expected to unlock $34.4 billion in total project value.
- **Produce results for real communities** across America by expanding access to the benefits of cleaner energy like cleaner air and water, new jobs, and more affordable clean energy for everyone.

EPA_00050689



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

## CGC Network Factsheet

CGC received $5 billion from the EPA's National Clean Investment Fund to invest in public-private partnerships and create a network of self-sustaining green banks to accelerate the construction of a clean power platform.

- **CGC is disbursing $2B in funding to 33 network partners in 29 states and the District of Columbia.** Of the $2B, $1.8 billion was committed to 16 well-established state and local green banks and 2 national nonprofit investors, and $150 million in low-interest loans to 15 emerging green banks.
- **CGC's Network consists of 18 well-established green banks and investors, and 15 emerging green banks.** CGC has made substantial progress toward fulfilling its commitment to the EPA to establish a nationwide system of economically self-sufficient green lenders in every state.
  - **CGC Coalition Members:** CGC's application submitted to the EPA October 2023 included a coalition of 18 experienced green investors. $1.8 billion of CGC's $5 billion award is being disbursed to these network partners who have signed their agreements, which will unlock clean energy benefits for 13 states and the District of Columbia.
  - **CGC Emerging Green Banks:** CGC committed $150 million in funding to 15 emerging green banks and community lenders across 15 states, for initial capitalization to support capacity building, clean power projects, job creation, and mobilization of private capital in their respective regions
    - **Selection Process:** CGC evaluated each emerging partner based on their business plans, financial performance, mission alignment and staff experience. **CGC will continue to crowd in additional resources in the future to further capitalize this cohort while expanding into the remaining states.**
    - All 15 emerging green banks signed the new network partner agreement. Spruce Root in Alaska, was the first to sign the new agreement and join the Consortium in October 2024.
    - **A Growing Network:** The Louisiana Clean Energy Fund, Finance New Orleans, and the Wisconsin Green Innovation Fund, are expected to join the network, $20 million will be unlocked to extend coverage into two

1

EPA_00050690



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

more states. Connecticut Green Bank is expected to support New Hampshire and Puerto Rico

- **CGC has expanded its network coverage across the nation.** The network now spans 29 states and D.C., this includes additional coverage with two partners who work nationally. States represented include Arizona, Florida, Georgia, Colorado, Missouri, Texas, and Utah, among others.
  - **States Covered by the CGC Network:** Alaska, Arizona, California, Colorado, Connecticut, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Maine, Maryland, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, South Carolina, Ohio, Pennsylvania, Rhode Island, Texas, Utah, Vermont, and Washington, D.C.
  - **States and Territories Expected to be covered CGC's Network:** Louisiana, New Hampshire, Puerto Rico and and Wisconsin
- **By building a strong network**, CGC is eliminating green financing deserts and expanding access to clean energy. The CGC Network will create economic opportunities and deliver environmental and financial benefits to all Americans across the nation.
  - **CGC's investment in the network will:**
    - **Expand** access to the benefits of green capital.
    - **Create** thousands of clean energy jobs.
    - **Mobilize** private capital for renewable energy and energy efficiency projects.
    - **Reduce** emissions nationwide.
    - **Save** costs on energy for underserved communities who. disproportionately impacted by high energy costs.

EPA_00050691

**CONFIDENTIAL BUSINESS INFORMATION**
**THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS**
**CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4**
**DRAFT**



*The North Carolina Clean Energy Fund's service area includes South Carolina as well.

**Emerging Green Banks:**

1. **Alaska**: Spruce Root, receiving $10 million in capitalization
2. **Arizona**: Groundswell, receiving $10 million in capitalization
3. **Georgia**: Georgia Clean Energy Fund, receiving $10 million in capitalization
4. **Hawaii**: Hawaii Green Infrastructure Authority, receiving $10 million in capitalization
5. **Indiana**: Indiana Energy Independence Fund, receiving $10 million in capitalization
6. **Iowa**: Iowa Energy Fund, receiving $10 million in capitalization
7. *Louisiana: Is expected to be covered by Louisiana Clean Energy Fund and Finance New Orleans, each receiving $5 million in capitalization.*
8. **Nebraska**: Center for Rural Affairs, receiving $10 million in capitalization
9. **Nevada**: Nevada Clean Energy Fund, receiving $10 million in capitalization
10. **New Mexico**: New Mexico Climate Investment Center, receiving $10 million in capitalization
11. **North Carolina**: Covered by North Carolina Clean Energy Fund with $5 million in capitalization
12. **South Carolina:** Covered by North Carolina Clean Energy Fund with $5 million in capitalization.

3

EPA_00050692

*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

13. **Pennsylvania**: Philadelphia Green Capital Corp, receiving $10 million in capitalization
14. **Rhode Island**: Rhode Island Infrastructure Fund, receiving $10 million in capitalization
15. **Texas**: Clean Energy Fund of Texas, receiving $10 million in capitalization
16. **Utah**: Sustainable Energy Finance, receiving $10 million in capitalization
17. **Vermont**: Vermont Economic Development Authority, receiving $10 million in capitalization
18. *Wisconsin: Wisconsin is expected to be covered by the Wisconsin Green Innovation Fund, with$10 million in capitalization*

EPA_00050693



CONFIDENTIAL BUSINESS INFORMATION
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

## CGC's Strategic Financial Partnerships Factsheet

- CGC received $5 billion of initial capitalization from the EPA's National Clean Investment Fund (NCIF) to invest in public-private partnerships and to accelerate the construction of a clean power platform for all Americans. The Coalition for Green Capital (CGC)'s commitments with Apollo Asset Management (Apollo), Brookfield Asset Management (Brookfield), Energy Capital Partners (ECP), and StepStone Group (StepStone) demonstrate the power of public-private collaboration. Through these partnerships, CGC retains all rights to make final decisions regarding investments. **CGC is taking the first step toward reaching its target of causing more than $20 billion in cumulative private-public investment in clean power projects by mid-2026.**

- **Selecting Strategic Financial Partners.** These four partners were selected through CGC's highly competitive RFP 1 open submission process. CGC carefully evaluated proposals among numerous other submissions. CGC received 35+ proposals for financial intermediary investment vehicles, totaling $22B+ in requested capital commitments. As part of its selections for financial intermediary investment vehicles, CGC is investing $2.65 billion across these four partners.

- **Magnifying Impact and Expanding Market Reach.** CGC has invested $2.65 billion across the Apollo, Brookfield, ECP and StepStone partnerships **to magnify the impact of CGC's capital and community investment expertise** with private sector operational capabilities and resources to accelerate the mobilization of private capital and deployment of clean energy projects across different markets. **Each partnership will target investing at least 50 percent of its funds in Low-Income and Disadvantaged Communities.**

  - **Brookfield's CGC Renewable Credit Mobilization Fund,** capitalized by $450M in CGC investment, will focus on energy infrastructure credit solutions, such as renewable power generation and storage projects, to accelerate deployment of transformative projects with key requirements to ensure community benefits while also mobilizing private capital.

  - **Apollo's CGC Clean Energy Mobilization Fund,** also capitalized by $450M in CGC investment, will focus on hybrid solutions  (i.e., structured investments with downside debt-like protections and up-side equity-like benefits, which can play a particularly catalytic role in the capital stack of projects) and other financing solutions for qualified projects that deliver key financing needs.

  - **Energy Capital Partners' CGC Clean Energy Mobilization Fund,** capitalized by $300M CGC investment, will support equity investments into carbon-reducing infrastructure, such as distributed generation and other renewables, providing critical equity capital for projects and companies alike.

  - **StepStone's CGC Clean Energy Investment Mobilization LLC,** capitalized by $1,450M in CGC investment, includes two distinct mandates: (1)  providing capital for direct and co-investments into projects and companies focused on

EPA_00050694



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

America's advanced clean power platform and (2) expanding access to capital for small and medium-sized General Partners to mobilize private capital for qualified projects within underserved areas of the market, such as project development financing.

- **The Power of Strategic Collaboration.** These partnerships enable CGC to move faster and more effectively in funding projects across different investment approaches, types of assets, clean technologies, project sizes, and locations.
  - **Builds Market Reputation:** These strategic partnerships enable CGC to grow a stronger track record with diverse private sector providers, increasing CGC's ability to influence where resources are directed to ensure funding goes to the projects and areas that need it most.
  - **Accelerates Market Transformation:** CGC's partnerships help drive investment in qualified projects quickly and prudently, creating opportunities for capital to be recycled and reinvested into additional qualified projects, in line with the Greenhouse Gas Reduction Fund's overarching mandate.
  - **Leverage Partner Capabilities for Targeted Impact:** CGC's partnerships provide CGC with the ability to leverage partner pipelines helping expand investment opportunities across diverse geographies, asset classes, and projects. Just as important, CGC can leverage each partner's proven track record to mobilize institutional capital in private markets to enhance outcomes for the communities served.
  - **Access to Enhanced Investment Tools:** CGC's partnerships enable CGC to access each partner's rigorous due diligence capabilities, proprietary analytics, and industry expertise to enable a more precise evaluation of investment opportunities, improved risk mitigation, and data-driven decisions.
  - **Potential for Significant Private Capital Mobilization:** CGC's partnerships have the potential for significant private capital mobilization, not just through project-level leverage and capital recycling strategies but also through fund-level leverage. **Each of the new funds enables additional private, philanthropic, and other capital providers to invest in the funds alongside CGC's anchor commitment.**

- **A Partnership with Deep Accountability:** Each of these partners brings significant track record and capabilities to execute, but CGC is not relying on track record alone. Instead, CGC upholds accountability in these partnerships through clear requirements that are embedded in CGC's agreements with the partners.
  - **Collaboration:** CGC will have veto and consent rights. This means that CGC retains a critical role in the process of sourcing, screening, underwriting, and approving investments, ensuring alignment with EPA requirements, affiliate rules, and strategic goals while also accelerating impact. Through this structure, CGC is

2

EPA_00050695

*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

able to ensure underlying investments are not just financially prudent but also drive benefits into critically impacted markets.

o **Investment Requirements:** These partners must align their investment portfolios with CGC's impact goals and targets, including the target that 50% or more of investments are directed to LIDACs. CGC has gone one step further than that requirement; with partners required to prioritize tools like project labor agreements and community benefits agreements, projects will not just be "in" LIDACs but also benefit communities through creation of good-paying jobs.

o **Reporting Standards:** CGC is ensuring alignment with EPA requirement, clear and transparent reporting at transaction- and project-level for compliance and consistent portfolio insights, including visibility on underlying portfolios and their impacts, such as energy savings, job creation, and health benefits.

o **Financial Prudence**. CGC requires that funds held by partners are kept in insurance accounts or invested in the safest short-term securities (i.e., U.S. Savings Bonds, U.S. Treasury Marketable Securities, and U.S. Agency Marketable Securities – or money market funds consisting of these securities) before being invested in qualified projects, consistent with the terms and conditions of CGC's award agreement with the EPA as well as prudent financial management standards. Funds held by partners enable them to deliver on their investment mandates by mobilizing private capital and driving capital into projects.

EPA_00050696



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

## RFP 1 Factsheet

- The Coalition for Green Capital (CGC) was awarded a $5 billion grant by the Environmental Protection Agency (EPA) under the National Clean Investment Fund (NCIF) competition to invest in public-private partnerships and create a network of self-sustaining green banks to accelerate the construction of a clean power platform. The launch of CGC's first open Request for Investment Proposals ("RFP 1") constituted a significant step to enable developers, investors, and project partners to secure a financing agreement with CGC. RFP 1 accelerates the development of America's clean power platform quickly and prudently, creating a process for proposal submissions that mobilize private sector capital to deliver clean jobs, clean air, clean water and cheap clean power so all Americans benefit.
- **Launching RFP 1.** On November 8, 2024, CGC launched its first Request for Investment Proposals ("RFP 1"). This open solicitation allows clean energy developers, commercial partners, community lenders, and financial investors—including private credit and equity firms—to submit investment proposals for qualified projects located in the United States. **CGC continues to welcome proposal submissions under RFP 1 and plans to issue additional guidance on how proposal submissions under RFP No.1 integrate into CGC's newly established partnerships.**
- **RFP 1 submission process:**
    1. **Submission:** Proposals are formally submitted to CGC through its web form under RFP 1. Submission contents from applicants included completed submission forms, materials on qualifications, proposed term sheets, and more.
    2. **Screening:** Proposals are evaluated for responsiveness, completeness, and conformance to RFP requirements. Further, proposals are screened out if they did not score at least 50% in any one of the five categories of evaluation criteria, as described in RFP 1.
    3. **Scoring:** Proposals are scored by a committee using the RFP's five evaluation criteria, resulting in each proposal that was first deemed responsive to be then scored out of 100 points. **The five evaluation criteria and respective weightings are as follows:** Project Management Team & Execution Risks (20%), Investment Terms and Financial Criteria (20%), Investment Impact (20%), Compliance Readiness (20%), Compliance Readiness (20%)
    4. **Scoring:** Proposals were scored by a committee using the RFP's five evaluation criteria, resulting in each proposal that was first deemed responsive to be then scored out of 100 points. **The five evaluation criteria and respective weightings are as follows:** Project Management Team & Execution Risks (20%), Investment Terms and Financial Criteria (20%),

EPA_00050697



CONFIDENTIAL BUSINESS INFORMATION
THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS
CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4
DRAFT

Investment Impact (20%), Compliance Readiness (20%), Compliance Readiness (20%)
*Note: Given the nature of the network investments and consistent with internal policies, the network investments were not sourced through RFP 1.*

- **CGC is moving quickly and prudently.** RFP 1 was issued to provide a structured process for CGC to source, evaluate, and select proposals that leverage its capital and expertise alongside third-party resources and capabilities. For example, working with financial intermediaries would enable CGC to leverage their sourcing and screening of qualified projects to deploy funds sooner while being able to better accomplish the objectives of CGC's NCIF grant. Additional benefits in doing so involve spurring larger financial institutions as well as emerging fund managers to accelerate equitable financing in qualified projects, helping to ensure under-served communities, including rural communities, benefit from the advanced clean power platform.  CGC chose to use RFP 1 to source project proposals even when not strictly required as a "best practice" to be followed—especially given the size of capital requested under some of the proposals.

- **RFP 1 has a broad scope, listing out the following seven financial product/transaction types:** senior debt instruments, junior debt instruments, credit enhancements, equity investments, loan purchases, financial intermediary investment vehicles, and other investment type. On December 5, 2024, CGC published supplemental guidance for prospective applicants on one of those financial product/transaction types, financial intermediary investment vehicles, to improve potential applicants' understanding of RFP requirements in a fair and competitive manner while not altering the terms of the RFP or the criteria against proposals were reviewed.

- **RFP 1 has resulted in a highly competitive process.** After the release of the supplemental guidance for financial intermediary investment vehicles, for example, CGC received 35+ proposals for financial intermediary investment vehicles, totaling $22B+ in requested capital commitments.

- [1]**Impact of RFP 1 to Date:** Based upon the RFP process, Apollo, Brookfield, Energy Capital Partners, and StepStone moved forward and were ultimately selected as private sector partners. These partners received a total of $2.65 billion **to magnify the impact of CGC's capital and expertise with private sector resources and accelerate the demand for clean energy across different markets.** Each partnership will aim to invest **at least 50 percent** of its funds in Low-Income and Disadvantaged communities.
  - CGC's financial transactions with these four strategic financial partners as well as GreenieRE were approved by CGC's Management Investment Committee as well as Board Investment Committee.

EPA_00050698



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

  - ○ Across each of the investments, CGC makes the final decision as to which projects and opportunities receive funding.
- **Continual Use of RFP 1:** CGC will continue to use RFP 1 to source project proposals for consideration by partners, including strategic financial partners and Network members. Additional guidance on this process is forthcoming.

**RFP 1 Resources:**
- Press release announcing the launch of RFP 1, can be found **here.**
- RFP 1 document can be found **here.**
- Public RFP 1 webinar can here.
- RFP 1 webinar deck can be found **here.**

EPA_00050699

| Message | |
|---|---|
| **From:** | dpettit@coalitionforgreencapital.com [dpettit@coalitionforgreencapital.com] |
| **Sent:** | 1/16/2025 12:10:40 AM |
| **To:** | Schindel, Phillip [Schindel.Phillip@epa.gov] |
| **CC:** | Drummond, James [Drummond.James@epa.gov]; Nowlan, Aileen [Nowlan.Aileen@epa.gov]; Dinnocenzo, Benjamin (he/him/his) [Dinnocenzo.Benjamin@epa.gov]; kevin.minoli@alston.com; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; cbrowner@cov.com; Jack, W. Andrew [ajack@cov.com]; Terenzio, Peter [pterenzio@cov.com] |
| **Subject:** | Request for Prior Approval (Grant Number 84094201) |

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Dear Mr. Schindel:

Pursuant to the terms of the Award Agreement for Grant Number 84094201 ("NCIF Award") and 2 C.F.R. 200.308(f)(5), the Coalition for Green Capital ("CGC") hereby requests "prior approval" from EPA for the transfer of funds budgeted for Participant Support Costs to other budget categories. The purpose of this request is to facilitate the award and funding of subawards to financial intermediary subrecipients consistent with the activities describe in the workplan in effect for CGC's NCIF Award.

CGC's workplan describes CGC's intent to make subawards to financial intermediary subrecipients and the important role these entities have in helping to implement CGC's NCIF Award. See, e.g., Workplan at p. 45. Among the types of financial assistance described in CGC's workplan, and thus approved for use under CGC's NCIF Award, are subawards to financial intermediary subrecipients, through which CGC would provide financial assistance to an entity, which may itself be a qualified project, to enable the entity to provide follow-on loans and other forms of financial assistance to qualified projects.  CGC's approved budget, however, does not presently distinguish between participant support costs and subawards to financial intermediaries. CGC requests EPA's prior approval in order to rectify that issue. In the event that a transfer of funds covered by the requested prior approval could allow for a recalculation of the amount of indirect costs available, CGC will not draw down indirect costs in excess of the amount listed in CGC's approved budget as of the date of this request.

Thank you for your consideration of this request.

Best regards,
David

--
**David Pettit**
(he/him)
General Counsel and Chief Strategy Officer
Coalition For Green Capital/American Green Bank Consortium

*Twitter* | *LinkedIn*





*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

## GreenieRE Fact Sheet

- The Coalition for Green Capital was awarded $5 billion in NCIF grant funds to fill market gaps by using public-private partnerships to maximize the impact of public capital, directly invest in qualified projects, and indirectly through a network of economically self-sufficient green banks.
- CGC made a **$200 million investment** in GreenieRE, an impact-driven reinsurance company designed to remove green financing obstacles and address gaps in the insurance market that prevent the deployment of clean energy technologies at-scale. **This partnership plays a critical first step at removing the barriers that lock out private capital and keep clean energy technology costs high for developers and consumers.**
- **CGC financial assistance to GreenieRe will:**
    - **Reduce bottlenecks** and break down insurance barriers for qualified renewable energy projects.
    - **Attract billions** in private investment to fund clean energy projects that might not otherwise happen.
    - **Accelerate** the build out advanced clean power platform to benefit communities across the U.S.

- **Governance & Risk Management:** CGC will ensure GreenieRE balances impact and financial sustainability by maintaining oversight and consent rights for major decisions. GreenieRE also reduces risk by only insuring projects shared across multiple insurers.

- **The Financing Bottleneck:** A major hurdle for financing clean energy projects is obtaining affordable and reliable insurance. Many insurers are hesitant to cover these projects because they involve newer technologies or businesses with little credit history. This can lead to higher premiums, restrictive terms, and limited coverage options, making it harder for developers to secure the funding they need. **The challenge is even more pronounced for projects serving low-income and disadvantaged communities (LIDACS), where perceived financial risk is higher. At least 40% of GreenieRE's insured value will be allocated to projects in Low-Income and Disadvantaged Communities (LIDACs).** By stepping in where traditional insurers hesitate, GreenieRE helps bridge these gaps, ensuring qualified projects have the financial backing needed to move forward**.**

- **The GreenieRE opportunity** targets four fast-growing markets for renewable energy insurance where insurance premiums are high because traditional insurers see them as risky. By specializing in these markets, GreenieRE lowers these barriers, reducing upfront costs for developers and adoption costs for consumers.
    - **Renewables:** Solar, wind, hydro, geothermal
    - **Grid Infrastructure:** Battery storage, transmission

EPA_00050702



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

- **Electric Vehicles:** EV leasing, manufacturing, charging infrastructure
- **Building Energy Efficiency:** HVAC, lighting, and appliances

**GreenieRE addresses critical insurance gaps** by providing backstop capacity to qualified renewable energy projects. It has structured its initial operations around four product offerings:

- **Credit Insurance:** Ensures developers get paid, even if buyers default.
- **Tax Insurance:** Protects projects relying on federal tax credits.
- **Performance Insurance:** Covers risks of underperformance of renewable technologies like solar and wind.
- **EV Residual Value Insurance:** Stabilizes EV financing by reducing depreciation risks.

**The potential impact** over the next decade for projects supported by GreenieRE could:

- **Avoid up to 2.3 million metric tons of $CO_2$** emissions – equivalent to taking half a million cars off the road
- **Drive billions of private capital into clean energy projects.** Over 10 years, projects directly tied to GreenieRE's involvement will generate $5.2 billion. Through its ripple effect on the green financing ecosystem, GreenieRE's insurance is expected to unlock $34.4 billion in total project value.
- **Produce results for real communities** across America by expanding access to the benefits of cleaner energy like cleaner air and water, new jobs, and more affordable clean energy for everyone.

EPA_00050703

Message

| | |
|---|---|
| **From:** | Nowlan, Aileen [Nowlan.Aileen@epa.gov] |
| **Sent:** | 1/17/2025 3:51:52 PM |
| **To:** | eli@coalitionforgreencapital.com; Dinnocenzo, Benjamin (he/him/his) [Dinnocenzo.Benjamin@epa.gov]; Hitz, Thomas [Hitz.Thomas@epa.gov] |
| **CC:** | jdiehl@coalitionforgreencapital.com; dpettit@coalitionforgreencapital.com; Drummond, James [Drummond.James@epa.gov]; Widawsky, David [Widawsky.David@epa.gov]; Christopher, Katherine [Christopher.Katherine@epa.gov] |
| **Subject:** | RE: Confidential Business Information - anticipated drawdown summary |

Eli:

We appreciate the opportunity to review Coalition for Green Capital's anticipated draw down of funds from the Citi Budget Account for Grant Number XXX described on the spreadsheet you provided.  Please note the following points.

1.  We do not concur with CGC's proposal to immediately draw down $50 Million for "Payment of budgeted contractual obligations for consultant, legal, and personnel and fringe benefits, consistent with 2 CFR 200.430 Compensation—personal services and 2 CFR 200.431 Compensation—fringe benefits"   NCIF grant funds may only be drawn down from the Budget Account for use to pay contractors and employees when there is a need to do so within the period of time specified in the "Transferring Funds Out of the Budget Account" term and condition.   Contractors and employees earn payments through performance of work and NCIF grant funds may not be used to pay them in advance for work that has not been performed.

2.  For the Financial Assistance Transactions listed on the spreadsheet, CGC must be legally obligated to disburse the entire amount of funding specified to the Network Partner or other subrecipient in order to draw down funds.  Documentation of that obligation must be available in the event of an audit or other "transaction testing" review of the expenditures.

3.  CGC must ensure that all Financial Assistance Transactions comply with Conflict of Interest requirements specified in the EPA Financial Assistance Conflict of Interest Policy and CCG's implementing procedures.  Again, documentation of compliance must be available in the event of an audit or other review of the expenditures.

We recognize that the CCG workplan is based on a "pipeline" of financial assistance transactions that CCG anticipated executing within a year of award of NCIF funding.  Nonetheless, given the proposal to draw down such a large amount of funds at one time, CGC should be prepared for an audit or other transaction testing review.

Regards,
Aileen

---

**From:** Eli Hopson <eli@coalitionforgreencapital.com>
**Sent:** Tuesday, January 14, 2025 5:02 PM
**To:** Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Hitz, Thomas <Hitz.Thomas@epa.gov>
**Cc:** jdiehl@coalitionforgreencapital.com; dpettit@coalitionforgreencapital.com
**Subject:** Confidential Business Information - anticipated drawdown summary

> **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

As requested, please find attached a spreadsheet that provides an overview of CGC's anticipated drawdowns from the Financial Agent over the next few days.  **Note that these transactions have not been finalized, and**

**we have not submitted draw requests for any of these transactions at this time.**  Please let us know if helpful to provide an updated version of this spreadsheet after drawdowns are made with the final numbers

- 

- Our workplan emphasizes the need for rapid deployment of capital to drive impact against the Greenhouse Gas Reduction Fund's three program objectives. This is why our workplan committed us to deploying CGC's entire Financial Assistance budget within the first year of the Period of Performance.

- As requested, please find attached a spreadsheet that provides an overview of CGC's anticipated drawdowns from the Financial Agent over the next few days. Please let us know if helpful to provide an updated version of this spreadsheet after drawdowns are made with the final numbers.

- Each of the anticipated drawdowns is for an allowable cost under the terms and conditions of our award agreement and is consistent with our workplan.

- Pursuant to the terms and conditions, funds that are drawn down will be disbursed for an allowable activity shortly after the funds are drawn.

- To the extent that a longer disbursement window is known in advance for any of the anticipated drawdowns, CGC will notify our EPA Project Officer prior to executing the transfer—and follow up with the amount of the transfer that has been disbursed at the fifth, tenth, and fourteenth business day.

- To the extent funds are drawn but not disbursed within 15 business days, CGC will return funds to the Financial Agent.

- We look forward to drawing down these funds and finalizing the associated transactions to ensure continued progress against our workplan, including our commitment to deploy our budget within the first year.

Thanks,
-Eli

| | |
|---|---|
| **From:** | Nowlan, Aileen |
| **To:** | eli@coalitionforgreencapital.com; Dinnocenzo, Benjamin (he/him/his); Hitz, Thomas |
| **Cc:** | jdiehl@coalitionforgreencapital.com; dpettit@coalitionforgreencapital.com; Drummond, James; Widawsky, David; Christopher, Katherine |
| **Subject:** | RE: Confidential Business Information - anticipated drawdown summary |
| **Date:** | Friday, January 17, 2025 10:51:56 AM |

Eli:

We appreciate the opportunity to review Coalition for Green Capital's anticipated draw down of funds from the Citi Budget Account for Grant Number XXX described on the spreadsheet you provided. Please note the following points.

1. We do not concur with CGC's proposal to immediately draw down $50 Million for "Payment of budgeted contractual obligations for consultant, legal, and personnel and fringe benefits, consistent with 2 CFR 200.430 Compensation—personal services and 2 CFR 200.431 Compensation—fringe benefits" NCIF grant funds may only be drawn down from the Budget Account for use to pay contractors and employees when there is a need to do so within the period of time specified in the "Transferring Funds Out of the Budget Account" term and condition. Contractors and employees earn payments through performance of work and NCIF grant funds may not be used to pay them in advance for work that has not been performed.

2. For the Financial Assistance Transactions listed on the spreadsheet, CGC must be legally obligated to disburse the entire amount of funding specified to the Network Partner or other subrecipient in order to draw down funds. Documentation of that obligation must be available in the event of an audit or other "transaction testing" review of the expenditures.

3. CGC must ensure that all Financial Assistance Transactions comply with Conflict of Interest requirements specified in the EPA Financial Assistance Conflict of Interest Policy and CCG's implementing procedures. Again, documentation of compliance must be available in the event of an audit or other review of the expenditures.

We recognize that the CCG workplan is based on a "pipeline" of financial assistance transactions that CCG anticipated executing within a year of award of NCIF funding. Nonetheless, given the proposal to draw down such a large amount of funds at one time, CGC should be prepared for an audit or other transaction testing review.

Regards,
Aileen

**From:** Eli Hopson <eli@coalitionforgreencapital.com>
**Sent:** Tuesday, January 14, 2025 5:02 PM
**To:** Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Hitz, Thomas <Hitz.Thomas@epa.gov>
**Cc:** jdiehl@coalitionforgreencapital.com; dpettit@coalitionforgreencapital.com
**Subject:** Confidential Business Information - anticipated drawdown summary

> **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

As requested, please find attached a spreadsheet that provides an overview of CGC's anticipated drawdowns from the Financial Agent over the next few days.  **Note that these transactions have not been finalized, and we have not submitted draw requests for any of these transactions at this time.**  Please let us know if helpful to provide an updated version of this spreadsheet after drawdowns are made with the final numbers

- 

- Our workplan emphasizes the need for rapid deployment of capital to drive impact against the Greenhouse Gas Reduction Fund's three program objectives. This is why our workplan committed us to deploying CGC's entire Financial Assistance budget within the first year of the Period of Performance.

  - As requested, please find attached a spreadsheet that provides an overview of CGC's anticipated drawdowns from the Financial Agent over the next few days. Please let us know if helpful to provide an updated version of this spreadsheet after drawdowns are made with the final numbers.

  - Each of the anticipated drawdowns is for an allowable cost under the terms and conditions of our award agreement and is consistent with our workplan.

  - Pursuant to the terms and conditions, funds that are drawn down will be disbursed for an allowable activity shortly after the funds are drawn.

  - To the extent that a longer disbursement window is known in advance for any of the anticipated drawdowns, CGC will notify our EPA Project Officer prior to executing the transfer—and follow up with the amount of the transfer that has been disbursed at the fifth, tenth, and fourteenth business day.

  - To the extent funds are drawn but not disbursed within 15 business days, CGC will return funds to the Financial Agent.

  - We look forward to drawing down these funds and finalizing the associated transactions to ensure continued progress against our workplan, including our commitment to deploy our budget within the first year.

Thanks,
 -Eli

EPA_00050708

**This document is produced in native format.**

**Original file name:**

**January 17 2025 CGC Account Drawdown Spreadsheet (CBI).xlsx**



CONFIDENTIAL BUSINESS INFORMATION
THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS
CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4
DRAFT

## CGC Network Factsheet

CGC received $5 billion from the EPA's National Clean Investment Fund to invest in public-private partnerships and create a network of self-sustaining green banks to accelerate the construction of a clean power platform.

- **CGC is disbursing $2B in funding to 33 network partners in 29 states and the District of Columbia.** Of the $2B, $1.8 billion was committed to 16 well-established state and local green banks and 2 national nonprofit investors, and $150 million in low-interest loans to 15 emerging green banks.
- **CGC's Network consists of 18 well-established green banks and investors, and 15 emerging green banks.** CGC has made substantial progress toward fulfilling its commitment to the EPA to establish a nationwide system of economically self-sufficient green lenders in every state.
    - **CGC Coalition Members:** CGC's application submitted to the EPA October 2023 included a coalition of 18 experienced green investors. $1.8 billion of CGC's $5 billion award is being disbursed to these network partners who have signed their agreements, which will unlock clean energy benefits for 13 states and the District of Columbia.
    - **CGC Emerging Green Banks:** CGC committed $150 million in funding to 15 emerging green banks and community lenders across 15 states, for initial capitalization to support capacity building, clean power projects, job creation, and mobilization of private capital in their respective regions
        - **Selection Process:** CGC evaluated each emerging partner based on their business plans, financial performance, mission alignment and staff experience. **CGC will continue to crowd in additional resources in the future to further capitalize this cohort while expanding into the remaining states.**
        - All 15 emerging green banks signed the new network partner agreement. Spruce Root in Alaska, was the first to sign the new agreement and join the Consortium in October 2024.
        - **A Growing Network:** The Louisiana Clean Energy Fund, Finance New Orleans, and the Wisconsin Green Innovation Fund, are expected to join the network, $20 million will be unlocked to extend coverage into two

1

EPA_00050712



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

more states. Connecticut Green Bank is expected to support New Hampshire and Puerto Rico

- **CGC has expanded its network coverage across the nation.** The network now spans 29 states and D.C., this includes additional coverage with two partners who work nationally. States represented include Arizona, Florida, Georgia, Colorado, Missouri, Texas, and Utah, among others.
    - **States Covered by the CGC Network:** Alaska, Arizona, California, Colorado, Connecticut, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Maine, Maryland, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, South Carolina, Ohio, Pennsylvania, Rhode Island, Texas, Utah, Vermont, and Washington, D.C.
    - **States and Territories Expected to be covered CGC's Network:** Louisiana, New Hampshire, Puerto Rico and and Wisconsin
- **By building a strong network,** CGC is eliminating green financing deserts and expanding access to clean energy. The CGC Network will create economic opportunities and deliver environmental and financial benefits to all Americans across the nation.
    - **CGC's investment in the network will:**
        - **Expand** access to the benefits of green capital.
        - **Create** thousands of clean energy jobs.
        - **Mobilize** private capital for renewable energy and energy efficiency projects.
        - **Reduce** emissions nationwide.
        - **Save** costs on energy for underserved communities who. disproportionately impacted by high energy costs.

EPA_00050713

CONFIDENTIAL BUSINESS INFORMATION
THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4
DRAFT



*The North Carolina Clean Energy Fund's service area includes South Carolina as well.

**Emerging Green Banks:**

1. **Alaska**: Spruce Root, receiving $10 million in capitalization
2. **Arizona**: Groundswell, receiving $10 million in capitalization
3. **Georgia**: Georgia Clean Energy Fund, receiving $10 million in capitalization
4. **Hawaii**: Hawaii Green Infrastructure Authority, receiving $10 million in capitalization
5. **Indiana**: Indiana Energy Independence Fund, receiving $10 million in capitalization
6. **Iowa**: Iowa Energy Fund, receiving $10 million in capitalization
7. *Louisiana: Is expected to be covered by Louisiana Clean Energy Fund and Finance New Orleans, each receiving $5 million in capitalization.*
8. **Nebraska**: Center for Rural Affairs, receiving $10 million in capitalization
9. **Nevada**: Nevada Clean Energy Fund, receiving $10 million in capitalization
10. **New Mexico**: New Mexico Climate Investment Center, receiving $10 million in capitalization
11. **North Carolina**: Covered by North Carolina Clean Energy Fund with $5 million in capitalization
12. **South Carolina:** Covered by North Carolina Clean Energy Fund with $5 million in capitalization.

EPA_00050714



*CONFIDENTIAL BUSINESS INFORMATION*
*THIS DOCUMENT CONSTITUTES A TRADE SECRET & COMMERCIAL INFORMATION TYPICALLY TREATED AS*
*CONFIDENTIAL AND EXEMPT FROM MANDATORY DISCLOSURE UNDER FOIA EXEMPTION 4*
*DRAFT*

13. **Pennsylvania**: Philadelphia Green Capital Corp, receiving $10 million in capitalization
14. **Rhode Island**: Rhode Island Infrastructure Fund, receiving $10 million in capitalization
15. **Texas**: Clean Energy Fund of Texas, receiving $10 million in capitalization
16. **Utah**: Sustainable Energy Finance, receiving $10 million in capitalization
17. **Vermont**: Vermont Economic Development Authority, receiving $10 million in capitalization
18. *Wisconsin: Wisconsin is expected to be covered by the Wisconsin Green Innovation Fund, with$10 million in capitalization*

EPA_00050715

Aileen,

Thank you for speaking with us earlier this afternoon. As requested, below please find a summary of the points we would like to have confirmed.  If you would please provide us confirmation by Monday, we would greatly appreciate it.

Our grant agreement provides that ". . . if the Recipient seeks to transfer any amount of funds budgeted for Participant Support Costs to other budget categories, then it must seek prior approval pursuant to 2 CFR 200.308(f)(5)."  Our approved workplan contains a line item for Participant Support Costs within our budget category for Direct Costs for Financial Assistance to Qualified Projects.  Our understanding is that this provision does not apply (i.e., no approval is needed) if we alter the amount for Participant Support Costs so long as we are not transferring funds from Participant Support Costs to budget categories outside of the category of Direct Costs for Financial Assistance to Qualified Projects.

Alternatively, if you interpret this to mean that approval is required to transfer funds for Participant Support Costs within the types of Direct Costs for Financial Assistance to Qualified Projects allowed under the grant agreement, we believe that we have already been given approval for the purposes of 2 CFR 200.308(f)(5) as a result of our approved workplan.

CGC's approved workplan authorizes CGC to use NCIF grant funds to deploy the types of financial assistance described in the workplan to qualified projects and provides CGC the flexibility to choose among those approved types of financial assistance when implementing its grant agreement.  For example, our approved workplan states:

The Budget provides for up to $2.8 billion in loan originations, full loan guarantees, credit enhancements and loan loss reserves included as Participant Support Costs, which may, depending on the financial structure, counterparty and subject to agreement on the final NCIF Terms and Conditions, be classified as either Subawards to Program Participants or as Participant Support Costs. This will include financial assistance to program participants in the form of subordinated capital investments, such as loans, and credit enhancements, such as full or partial loan guarantees, which may or may not be subsidized depending on the potential impact of the project.

Among the types of financial assistance described in CGC's workplan, and thus approved for use under CGC's grant agreement, are subawards to financial intermediary subrecipients, through which CGC would provide financial assistance to an entity, which may itself be a qualified project, to enable the entity to provide follow-on loans and other forms of financial assistance to qualified projects.  CGC's approved budget includes funding for such subawards and other forms of approved financial assistance within the $2.8 billion designated in the Participant Support Costs budget line within the budgeted $4.7 billion for Direct Costs for Financial Assistance to Qualified Projects.

Because CGC's approved workplan describes how CGC may use funds within the Participant Support Cost budget line when making subawards to financial intermediary subrecipients or for other approved types of financial assistance, such use of funds is already authorized.

Subject:  Transfer of Funds Budgeted for Participant Support Costs for Use as Subawards—Coalition for Green Capital Assistance Agreement Number XXX.

David:

Aileen Nowlan of the Office of Greenhouse Gas Reduction Fund referred your January 10, 2025, email requesting confirmation that EPA agreed that the Coalition for Green Capital (CGC) could transfer some of the $2.8 billion in funds budgeted for Participant Support Costs (PSC) for under Assistance Agreement XXX  ("the Assistance Agreement") for use in Subawards without prior EPA approval as required by 2 CFR 200.308(f)(5) and the Terms and Conditions (T&Cs) of the Assistance Agreement.  As the Award Official for the Assistance Agreement, it is my responsibility to make EPA determinations under that regulation.  For the reasons described below, EPA does not agree that 1) Prior EPA approval is not required for the transfer; and 2) EPA provided prior approval for the transfer when approving the workplan and budget narrative when awarding Assistance Agreement.

We are, however, willing to work with CGC to establish an efficient process for obtaining EPA approval for transfers of funds CCG budgeted for PSCs to the Subaward budget line item.  In this regard, we recognize is a discrepancy between a statement in the workplan regarding the use of the $2.8 billion budgeted for PSCs for subawards and the description of CGCs planned use of those funds in the budget narrative and detailed budget submitted to support the workplan.  Apparently, CGC may have intended to request prior EPA approval for transferring funds budgeted for PSCs to the Subaward line item of the budget but did not do so explicitly in what became the approved budget.

Under 2 CFR 200.305(f)(5), " A recipient . . .  must request prior written approval from the Federal agency . . . transfer of funds budgeted for participant support costs to other budget categories."  This requirement is implemented in the Assistance Agreement T&Cs as follows:  that ". . . if the Recipient seeks to transfer any amount of funds budgeted for Participant Support Costs to other budget categories, then it must seek prior approval pursuant to 2 CFR 200.308(f)(5)."

In your January 10 email you advised that CGC did not need to obtain prior EPA approval for using PSC funds for subawards because:

> Our approved workplan contains a line item for Participant Support Costs within our budget category for Direct Costs for Financial Assistance to Qualified Projects.  Our understanding is that this provision does not apply (i.e., no approval is needed) if we alter the amount for Participant Support Costs so long as we are not transferring funds from Participant Support Costs to budget categories outside of the category of Direct Costs for Financial Assistance to Qualified Projects.

EPA's guidance on how to budget for PSCs as well as guidance on PSCs, which was incorporated in the NCIF Notice of Funding Opportunity, advised applicants that amounts for PSCs must be budgeted as separate line items in the "Other" Budget Object Class Category.  Interim General Budget Development Guidance for Applicants and Recipients of EPA Financial Assistance (Budget Guidance) available at [ HYPERLINK "https://www.epa.gov/sites/default/files/2019-05/documents/applicant-budget-development-guidance.pdf" ] and EPA Guidance on Participant Support Costs available at [ HYPERLINK

"https://www.epa.gov/sites/default/files/2020-11/documents/epa-guidance-on-participant-support-costs.pdf" ] This approach is necessary because there is no separate Budget Object Class Category on the Standard For 424 Budget Information Form.

Our intention in requiring separate line items for PSSs is to ensure that amounts budgeted for PSCs are clear when EPA makes the award such that there is a basis for the recipient, EPA, and auditors from our Office of Inspector General to determine whether EPA approval was required for transfers of funds budgeted for PSCs for use in incurring other types of costs.   There are a wide range of types of costs that are encompassed in the "Other" Budget Object Class Category that are subject to different standards for allowability and treatment for indirect costs as indicated on pp. 32-39 of the Budget Guidance.  One significant difference between costs for PSCs and costs for Subawards, for example, is that nonprofit recipients can include the first $50,000 in subaward costs in their distribution of indirect costs to *Modified total direct costs* (MTDC) as defined in 2 CFR 200.1 while PSCs are completely excluded from MTDC.  Subawards and PSCs for financial assistance are not interchangeable as explained in Section 4 of the PSC Guidance.

EPA_00050718

| Message |
| --- |

| **From**: | dpettit@coalitionforgreencapital.com [dpettit@coalitionforgreencapital.com] |
| **Sent**: | 1/17/2025 8:14:54 PM |
| **To**: | Nowlan, Aileen [Nowlan.Aileen@epa.gov] |
| **CC**: | Hitz, Thomas [Hitz.Thomas@epa.gov]; Dinnocenzo, Benjamin [Dinnocenzo.Benjamin@epa.gov]; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; Drummond, James [Drummond.James@epa.gov]; Widawsky, David [Widawsky.David@epa.gov]; Christopher, Katherine [Christopher.Katherine@epa.gov] |
| **Subject**: | Re: Confidential Business Information - anticipated drawdown summary |
| **Attachments**: | 11725 Budget Account Drawdown Spreadsheet (CBI).xlsx |

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

ATTACHMENT CONTAINS CONFIDENTIAL BUSINESS INFORMATION

Aileen,

Thank you for the opportunity this morning to discuss our plans and to clarify the points below.  Attached is an updated table that breaks down the transactions that have now been fully executed and that are being facilitated by draw requests we will submit later today.  This attachment constitutes a trade secret and commercial information typically treated as confidential exempt from mandatory disclosure under FOIA exemption 4.

We will also follow up with the additional information we discussed.

Best regards,
David


--
**David Pettit**
General Counsel and Chief Strategy Officer
Coalition For Green Capital


---

**From:** Nowlan, Aileen <Nowlan.Aileen@epa.gov>
**Sent:** Friday, January 17, 2025 8:51 AM
**To:** Eli Hopson <eli@coalitionforgreencapital.com>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Hitz, Thomas <Hitz.Thomas@epa.gov>

Cc: Jeff Diehl <jdiehl@coalitionforgreencapital.com>; David Pettit <dpettit@coalitionforgreencapital.com>; Drummond, James <Drummond.James@epa.gov>; Widawsky, David <Widawsky.David@epa.gov>; Christopher, Katherine <Christopher.Katherine@epa.gov>
**Subject:** RE: Confidential Business Information - anticipated drawdown summary

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Eli:

We appreciate the opportunity to review Coalition for Green Capital's anticipated draw down of funds from the Citi Budget Account for Grant Number XXX described on the spreadsheet you provided.  Please note the following points.

1.  We do not concur with CGC's proposal to immediately draw down $50 Million for "Payment of budgeted contractual obligations for consultant, legal, and personnel and fringe benefits, consistent with 2 CFR 200.430 Compensation—personal services and 2 CFR 200.431 Compensation—fringe benefits"   NCIF grant funds may only be drawn down from the Budget Account for use to pay contractors and employees when there is a need to do so within the period of time specified in the "Transferring Funds Out of the Budget Account" term and condition.   Contractors and employees earn payments through performance of work and NCIF grant funds may not be used to pay them in advance for work that has not been performed.

2.  For the Financial Assistance Transactions listed on the spreadsheet, CGC must be legally obligated to disburse the entire amount of funding specified to the Network Partner or other subrecipient in order to draw down funds.  Documentation of that obligation must be available in the event of an audit or other "transaction testing" review of the expenditures.

3.  CGC must ensure that all Financial Assistance Transactions comply with Conflict of Interest requirements specified in the EPA Financial Assistance Conflict of Interest Policy and CCG's implementing procedures.  Again, documentation of compliance must be available in the event of an audit or other review of the expenditures.

We recognize that the CCG workplan is based on a "pipeline" of financial assistance transactions that CCG anticipated executing within a year of award of NCIF funding.  Nonetheless, given the proposal to draw down such a large amount of funds at one time, CGC should be prepared for an audit or other transaction testing review.

Regards,
Aileen

---

**From:** Eli Hopson <eli@coalitionforgreencapital.com>
**Sent:** Tuesday, January 14, 2025 5:02 PM
**To:** Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Hitz, Thomas <Hitz.Thomas@epa.gov>
**Cc:** jdiehl@coalitionforgreencapital.com; dpettit@coalitionforgreencapital.com
**Subject:** Confidential Business Information - anticipated drawdown summary

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

As requested, please find attached a spreadsheet that provides an overview of CGC's anticipated drawdowns from the Financial Agent over the next few days.  **Note that these transactions have not been finalized, and we have not submitted draw requests for any of these transactions at**

**this time.**  Please let us know if helpful to provide an updated version of this spreadsheet after drawdowns are made with the final numbers

- 
- Our workplan emphasizes the need for rapid deployment of capital to drive impact against the Greenhouse Gas Reduction Fund's three program objectives. This is why our workplan committed us to deploying CGC's entire Financial Assistance budget within the first year of the Period of Performance.

- As requested, please find attached a spreadsheet that provides an overview of CGC's anticipated drawdowns from the Financial Agent over the next few days. Please let us know if helpful to provide an updated version of this spreadsheet after drawdowns are made with the final numbers.

- Each of the anticipated drawdowns is for an allowable cost under the terms and conditions of our award agreement and is consistent with our workplan.

- Pursuant to the terms and conditions, funds that are drawn down will be disbursed for an allowable activity shortly after the funds are drawn.

- To the extent that a longer disbursement window is known in advance for any of the anticipated drawdowns, CGC will notify our EPA Project Officer prior to executing the transfer—and follow up with the amount of the transfer that has been disbursed at the fifth, tenth, and fourteenth business day.

- To the extent funds are drawn but not disbursed within 15 business days, CGC will return funds to the Financial Agent.

- We look forward to drawing down these funds and finalizing the associated transactions to ensure continued progress against our workplan, including our commitment to deploy our budget within the first year.

Thanks,
-Eli

**This document is produced in native format.**

**Original file name:**

**11725 Budget Account Drawdown Spreadsheet (CBI).xlsx**

Message

| | |
|---|---|
| **From:** | Minoli, Kevin [Kevin.Minoli@alston.com] |
| **Sent:** | 1/14/2025 5:43:13 PM |
| **To:** | Drummond, James [Drummond.James@epa.gov] |
| **Subject:** | Re: Confirmation Requested Regarding Participant Support Costs |

Caution: This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Thanks Jim. I appreciate the update and everyone's help working through this request.

Kevin

Kevin S. Minoli<https://gcc02.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww.alston.com%2Fen%2Fprofessionals%2Fm%2Fminoli-kevin&data=05%7C02%7Cdrummond.james%40epa.gov%7Cd6bb74777a1242dff62e08dd34c2f9f7%7C88b378b367484867acf976aacbeca6a7%7C0%7C0%7C638724734192691443%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiOiIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C7C0%7C7C%7C7C&sdata=ZecoGAEsxOVzXAMIRnuHSJe8YRFFIO4iq3X1Ao6kSAk%3D&reserved=0>
Partner

(he/him)
ALSTON & BIRD
950 F Street, NW
WASHINGTON, DC 20004
+1 202 860 5581
Kevin.Minoli@alston.com<mailto:Kevin.Minoli@alston.com>

_____
From: Drummond, James <Drummond.James@epa.gov>
Sent: Tuesday, January 14, 2025 12:34:58 PM
To: Minoli, Kevin <Kevin.Minoli@alston.com>
Subject: RE: Confirmation Requested Regarding Participant Support Costs

EXTERNAL SENDER — Proceed with caution
_____

Thanks Kevin.  We are still reviewing this request internally from an overall precedent standpoint so a discussion at this point would be premature.  Understand that the question is time sensitive and will contact you with questions.

James Drummond

Attorney-Advisor

Civil Rights and Finance Law Office

EPA Office of General Counsel

(202) 564-2845 (Office)

(202) 746-1029 (Cell)

Attorney-Client Privileged; Pre-Decisional/Deliberative:
For Internal EPA Use Only/Do Not Share Outside EPA

From: Minoli, Kevin <Kevin.Minoli@alston.com>

Sent: Tuesday, January 14, 2025 11:24 AM
To: Drummond, James <Drummond.James@epa.gov>
Subject: FW: Confirmation Requested Regarding Participant Support Costs


Caution: This email originated from outside EPA, please exercise additional caution when deciding whether
to open attachments or click on provided links.


Jim- I think you have been looped in on the email chain below, and I wanted to see if we could connect
for a few minutes about it. While we are confident that CGC has the necessary authority to move forward
as laid out in the email from David on Friday, CGC would like to include an email to EPA confirming our
understanding in the record for several transactions that are otherwise ready to close. As David notes in
his email, those transactions create a time urgency on our end, and so I wanted to reach out to you
directly. I should be able to take your call at any point today, if you are able to discuss.


Thanks, Kevin



Kevin S.
Minoli<https://gcc02.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww.alston.com%2Fen%2Fprofession
als%2Fm%2Fminoli-
kevin&data=05%7C02%7Cdrummond.james%40epa.gov%7Cd6bb74777a1242dff62e08dd34c2f9f7%7C88b378b367484867acf976
aacbeca6a7%7C0%7C0%7C638724734192711479%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiOiIwLjAuMDAwMC
IsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=QlU%2Bz1Vy%2Bfr8VQWblLZBUD46jdQbTL
CqPwOHJNuLP5g%3D&reserved=0>
Partner

(he/him)
ALSTON & BIRD
950 F Street, NW
WASHINGTON, DC 20004
+1 202 860 5581
Kevin.Minoli@alston.com<mailto:Kevin.Minoli@alston.com>




Caution: This email originated from outside EPA, please exercise additional caution when deciding whether
to open attachments or click on provided links.


Hi Aileen and Benjamin-Just checking in here to see if we can get a response tonight or first thing
tomorrow.  Sorry to chase but it is of great importance that we get this clarity as soon as possible as
we now have counterparties waiting.


Thank you!


--

David Pettit

General Counsel and Chief Strategy Officer

Coalition For Green
Capital<https://gcc02.safelinks.protection.outlook.com/?url=https%3A%2F%2Fcoalitionforgreencapital.com%2F
&data=05%7C02%7Cdrummond.james%40epa.gov%7Cd6bb74777a1242dff62e08dd34c2f9f7%7C88b378b367484867acf976aacbe
ca6a7%7C0%7C0%7C638724734192723634%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiOiIwLjAuMDAwMCIsIl
AiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=P5aKLeNudtNkWBTB4ACLRQ3Uz9n7Jgf7cAPZBgI
wYLU%3D&reserved=0>

_____

From: David Pettit
Sent: Friday, January 10, 2025 4:54 PM
To: Nowlan, Aileen <Nowlan.Aileen@epa.gov<mailto:Nowlan.Aileen@epa.gov>>
Cc: Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov<mailto:Dinnocenzo.Benjamin@epa.gov>>;
Eli Hopson <eli@coalitionforgreencapital.com<mailto:eli@coalitionforgreencapital.com>>; Jeff Diehl
<jdiehl@coalitionforgreencapital.com<mailto:jdiehl@coalitionforgreencapital.com>>; Minoli, Kevin
<kevin.minoli@alston.com<mailto:kevin.minoli@alston.com>>
Subject: Confirmation Requested Regarding Participant Support Costs


Aileen,


Thank you for speaking with us earlier this afternoon. As requested, below please find a summary of the
points we would like to have confirmed.  If you would please provide us confirmation by Monday, we would
greatly appreciate it.


Our grant agreement provides that ". . . if the Recipient seeks to transfer any amount of funds budgeted
for Participant Support Costs to other budget categories, then it must seek prior approval pursuant to 2
CFR 200.308(f)(5)."  Our approved workplan contains a line item for Participant Support Costs within our
budget category for Direct Costs for Financial Assistance to Qualified Projects.  Our understanding is
that this provision does not apply (i.e., no approval is needed) if we alter the amount for Participant
Support Costs so long as we are not transferring funds from Participant Support Costs to budget
categories outside of the category of Direct Costs for Financial Assistance to Qualified Projects.


Alternatively, if you interpret this to mean that approval is required to transfer funds for Participant
Support Costs within the types of Direct Costs for Financial Assistance to Qualified Projects allowed
under the grant agreement, we believe that we have already been given approval for the purposes of 2 CFR
200.308(f)(5) as a result of our approved workplan.


CGC's approved workplan authorizes CGC to use NCIF grant funds to deploy the types of financial
assistance described in the workplan to qualified projects and provides CGC the flexibility to choose
among those approved types of financial assistance when implementing its grant agreement.  For example,
our approved workplan states:


The Budget provides for up to $2.8 billion in loan originations, full loan guarantees, credit
enhancements and loan loss reserves included as Participant Support Costs, which may, depending on the
financial structure, counterparty and subject to agreement on the final NCIF Terms and Conditions, be
classified as either Subawards to Program Participants or as Participant Support Costs. This will include
financial assistance to program participants in the form of subordinated capital investments, such as
loans, and credit enhancements, such as full or partial loan guarantees, which may or may not be
subsidized depending on the potential impact of the project.


Among the types of financial assistance described in CGC's workplan, and thus approved for use under
CGC's grant agreement, are subawards to financial intermediary subrecipients, through which CGC would
provide financial assistance to an entity, which may itself be a qualified project, to enable the entity
to provide follow-on loans and other forms of financial assistance to qualified projects.  CGC's approved
budget includes funding for such subawards and other forms of approved financial assistance within the
$2.8 billion designated in the Participant Support Costs budget line within the budgeted $4.7 billion for
Direct Costs for Financial Assistance to Qualified Projects.


Because CGC's approved workplan describes how CGC may use funds within the Participant Support Cost
budget line when making subawards to financial intermediary subrecipients or for other approved types of
financial assistance, such use of funds is already authorized.


Again, if you would please confirm our understanding as described above, we would greatly appreciate it.

Thanks,

David



--

David Pettit

(he/him)

General Counsel and Chief Strategy Officer

_____

Coalition For Green
Capital<https://gcc02.safelinks.protection.outlook.com/?url=https%3A%2F%2Fcoalitionforgreencapital.com%2F
&data=05%7C02%7Cdrummond.james%40epa.gov%7Cd6bb74777a1242dff62e08dd34c2f9f7%7C88b378b367484867acf976aacbe
ca6a7%7C0%7C0%7C638724734192735839%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiOiIwLjAwMDAwMCIsIl
AiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=zzvPLkyuoGR729ADR%2BCC3zyTOEMP5Q1%2BOuo
rIWHnYbw%3D&reserved=0>/American Green Bank
Consortium<https://gcc02.safelinks.protection.outlook.com/?url=https%3A%2F%2Fcoalitionforgreencapital.com
%2Famerican-green-bank-
consortium&data=05%7C02%7Cdrummond.james%40epa.gov%7Cd6bb74777a1242dff62e08dd34c2f9f7%7C88b378b367484867a
cf976aacbeca6a7%7C0%7C0%7C638724734192748362%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiOiIwLjAu
MDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=ciOBzrfr5bwzfhtpypSbIcAwJrM9m
WPieO3G0EVeQ%2Fw%3D&reserved=0>

Twitter<https://gcc02.safelinks.protection.outlook.com/?url=https%3A%2F%2Ftwitter.com%2FCGreenCapital&dat
a=05%7C02%7Cdrummond.james%40epa.gov%7Cd6bb74777a1242dff62e08dd34c2f9f7%7C88b378b367484867acf976aacbeca6a
7%7C0%7C0%7C638724734192759846%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiOiIwLjAwMDAwMCIsIlAiOi
JXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=Wh0SHJ4yt2JoL1Imqhz8xxqFB_UE9j0Atb0A0Gf1Q0Y
EM%3D&reserved=0> | LinkedIn
<https://gcc02.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww.linkedin.com%2Fcompany%2Fcoalition
-for-green-
capital&data=05%7C02%7Cdrummond.james%40epa.gov%7Cd6bb74777a1242dff62e08dd34c2f9f7%7C88b378b367484867acf9
76aacbeca6a7%7C0%7C0%7C638724734192772007%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiOiIwLjAwMDA
wMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=FqEa23GV9aF63rAcV4DOzeSxg25Z6qK1
opamyfoPXbE%3D&reserved=0>


<Outlook-gs1j4ymj.png>



_____

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential
information intended solely for the use of the addressee. If you are not the intended recipient, you are
hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments.
If you have received this message in error, please notify the sender by email and delete all copies of
the message immediately.

| Message | |
|---|---|
| **From:** | Minoli, Kevin [Kevin.Minoli@alston.com] |
| **Sent:** | 1/16/2025 9:40:31 PM |
| **To:** | Schindel, Phillip [Schindel.Phillip@epa.gov]; dpettit@coalitionforgreencapital.com |
| **CC:** | Drummond, James [Drummond.James@epa.gov]; Nowlan, Aileen [Nowlan.Aileen@epa.gov]; Dinnocenzo, Benjamin (he/him/his) [Dinnocenzo.Benjamin@epa.gov]; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; cbrowner@cov.com; Jack, W. Andrew [ajack@cov.com]; Terenzio, Peter [pterenzio@cov.com] |
| **Subject:** | RE: Request for Prior Approval (Grant Number 84094201) |

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Mr. Schindel,

Thank you to you and your team for the attention you have given our request for prior approval up to this point. We understand that this is a time of transition for EPA, and that you are likely facing multiple demands from a variety of directions. While our request may have come to you in the last week of the current administration, I want to assure you that the transactions we hope to close today are not last-minute proposals. Rather, closing these deals will mark the end of months and, in many instances, years of collaboration and negotiation with the counterparties. As set forth in correspondence to Ms. Nowlan and Mr. Dinnocenzo last Friday, we negotiated these transactions based on our understanding that they were fully authorized under the workplan in effect for our Award. That workplan specifically identified subawards to financial intermediary subrecipients as one of the types of financial assistance to qualified projects that we intended to provide, and it was approved by EPA when the agency finalized CGC's Award.

It may be helpful to consider the budget CGC submitted with its application in October 2023. In that budget, a screen shot of which is included below, CGC designated more than $5 billion of its $10 billion proposal – over half of our request – for "Subawards to Program Participants (Loan Originations and Full Loan Guarantees)," which is the term that was used before EPA first introduced the term "financial intermediary subrecipient." In contrast, that original budget designated just $800,000,000 for "Participant Support Costs (Credit Enhancements and Loan Loss Reserves)."

| | | Year 1 | Year 2 | Year 3 | Total |
|---|---|---|---|---|---|
| Direct Costs for Financial Assistance* | | $ 9,653,934,802 | $ - | $ - | $ 9,653,934,802 |
| Contractual | Acquisitions of Intangible Property (Equity Investments and Loan Purchases) | $ 200,000,000 | $ - | $ - | $ 200,000,000 |
| | Distributed Generation & Storage | $ 67,213,216 | | | $ 67,213,216 |
| | Net-Zero Emissions Buildings | $ 53,194,596 | | | $ 53,194,596 |
| | Zero-Emissions Transportation | $ 21,922,018 | | | $ 21,922,018 |
| | Other Qualified Project Categories | $ 57,670,170 | | | $ 57,670,170 |
| Other | Subawards to Program Participants (Loan Originations and Full Loan Guarantees) | $ 5,070,769,803 | $ - | $ - | $ 5,070,769,803 |
| | Distributed Energy Generation & Storage | $ 1,704,113,723 | | | $ 1,704,113,723 |
| | Net-Zero Emissions Buildings | $ 1,348,687,751 | | | $ 1,348,687,751 |
| | Zero-Emissions Transportation | $ 555,807,544 | | | $ 555,807,544 |
| | Other Qualified Project Categories | $ 1,462,160,785 | | | $ 1,462,160,785 |
| | Subawards to Subgrantees (Subgrant to Carry out a Part of the Federal Award) | $ 3,583,165,000 | $ - | $ - | $ 3,583,165,000 |
| | Distributed Energy Generation & Storage | $ 1,202,465,142 | | | $ 1,202,465,142 |
| | Net-Zero Emissions Buildings | $ 939,888,608 | | | $ 939,888,608 |
| | Zero-Emissions Transportation | $ 385,818,551 | | | $ 385,818,551 |
| | Other Qualified Project Categories | $ 1,054,992,699 | | | $ 1,054,992,699 |
| | Participant Support Costs (Credit Enhancements and Loan Loss Reserves) | $ 799,999,999 | $ - | $ - | $ 799,999,999 |
| | Distributed Energy Generation & Storage | $ 268,852,863 | | | $ 268,852,863 |
| | Net-Zero Emissions Buildings | $ 212,778,383 | | | $ 212,778,383 |
| | Zero-Emissions Transportation | $ 87,688,073 | | | $ 87,688,073 |
| | Other Qualified Project Categories | $ 230,680,680 | | | $ 230,680,680 |

When EPA made a partial award to CGC, that original budget had to be updated. When you compare the budget submitted with the application to the budget EPA approved with the Award, it shows that CGC reduced the amount of each category of Direct Costs by about 50%, except for costs associated with program administration. That 50% reduction holds true for each category of Direct Costs and each subcategory, with what may appear to be one key exception: the budgeted amount for "Participant Support Costs" increased by more than 300% to $2.8 billion.

| DIRECT COSTS | | Year 1 | Year 2 | Year 3 | Total |
|---|---|---|---|---|---|
| Direct Costs for Financial Assistance* | | $ 4,722,005,348 | $ - | $ - | $ 4,722,005,348 |
| Contractual | Acquisitions of Intangible Property (Equity Investments and Loan Purchases) | $ 97,825,507 | $ - | $ - | $ 97,825,507 |
| | Type of projects includes Distributed Generation & Storage, Zero-Emissions Transportation, Net-Zero Emissions Buildings and Other Qualified Project Categories | | | | |
| Other | Subawards to Subgrantees (Subgrant to Carry out a Part of the Federal Award) | $ 1,752,624,670 | $ - | $ - | $ 1,752,624,670 |
| | Type of projects includes Distributed Generation & Storage, Zero-Emissions Transportation, Net-Zero Emissions Buildings and Other Qualified Project Categories | | | | |
| | Participant Support Costs (Loan Originations, Full Loan Guarantee, Credit Enhancements and Loan Loss Reserves) | $ 2,871,555,171 | $ - | $ - | $ 2,871,555,171 |
| | Type of projects includes Distributed Generation & Storage, Zero-Emissions Transportation, Net-Zero Emissions Buildings and Other Qualified Project Categories | | | | |

A closer look at the budget, however, makes clear than CGC had combined the budget lines for "Subawards to Program Participants (Loan Originations and Full Loan Guarantees)" and "Participant Support Costs (Credit Enhancements and Loan Loss Reserves)" into a single new budget line from which it intended to fund both Subawards to Program Participants and Participant Support Costs. The best evidence of that is the fact that CGC included the parenthetical descriptions from both of the original budget lines in the parenthetical description of what activities would be funded from the new combined line. Thus, CGC labeled the combined budget line, "Participant Support Costs (*Loan Originations, Full Loan Guarantee, Credit Enhancements and Loan Loss Reserves*)." (Emphasis added.) CGC's understanding is also supported by the amount allocated to that line, which is approximately 50% of the combined total of the original two lines in the budget submitted with the application. Finally, CGC was explicit in its workplan that it intended to fund both types of transactions out of the combined $2.8 billion line item, stating that "[t]he Budget provides for up to $2.8 billion in loan originations, full loan guarantees, credit enhancements and loan loss reserves included as Participant Support Costs, which may, depending on the financial structure, counterparty and subject to agreement on the final NCIF Terms and Conditions, be classified as either Subawards to Program Participants or as Participant Support Costs."

EPA approved both CGC's budget and workplan, and CGC has been operating consistent with this understanding since receiving our Award in August 2024. When we reached out to EPA last week, it was in what we viewed as an abundance of caution as part of the final due diligence and review of these

EPA_00050730

transactions. That is why we asked initially for EPA's confirmation of our understanding that CGC had the authority it needed to enter these transactions.

We wanted to provide you with a more fulsome explanation for our understanding of our authority to enter these transactions because we had not provided it to you before and because we still believe it to be the best understanding of our authority and whether EPA needs to provide its prior approval at this time. In the event that EPA determines that prior approval is required at this point, however, we believe this history demonstrates that such approval would be reasonable and consistent with the applicable regulations and the terms and conditions of our Award.

If we can provide any additional information that would help you in making your decision, we are eager to do so.

Thank you for your consideration.

Kevin Minoli
Counsel to Coalition for Green Capital


Kevin S. Minoli
Partner
(he/him)
**ALSTON & BIRD**
950 F Street, NW
WASHINGTON, DC 20004
+1 202 860 5581
Kevin.Minoli@alston.com

---

**From:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Sent:** Thursday, January 16, 2025 11:12 AM
**To:** dpettit@coalitionforgreencapital.com
**Cc:** Drummond, James <Drummond.James@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Minoli, Kevin <Kevin.Minoli@alston.com>; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; cbrowner@cov.com; Jack, W. Andrew <ajack@cov.com>; Terenzio, Peter <pterenzio@cov.com>
**Subject:** RE: Request for Prior Approval (Grant Number 84094201)

**EXTERNAL SENDER – Proceed with caution**

---

Good morning Mr. Pettit,

We can approve this request in concept. I will need CGC to please send a proposed revision to workplan page 45 and to the associated detailed budget table.

Thank you,
Phil

Phillip Schindel
Acting Director
US EPA Grants Management & Business Operations Division
202-564-5293
Schindel.Phillip@epa.gov

---

**From:** David Pettit <dpettit@coalitionforgreencapital.com>
**Sent:** Wednesday, January 15, 2025 7:11 PM
**To:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Cc:** Drummond, James <Drummond.James@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; kevin.minoli@alston.com; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; cbrowner@cov.com; Jack, W. Andrew <ajack@cov.com>; Terenzio, Peter <pterenzio@cov.com>
**Subject:** Request for Prior Approval (Grant Number 84094201)

 **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Dear Mr. Schindel:

Pursuant to the terms of the Award Agreement for Grant Number 84094201 ("NCIF Award") and 2 C.F.R. 200.308(f)(5), the Coalition for Green Capital ("CGC") hereby requests "prior approval" from EPA for the transfer of funds budgeted for Participant Support Costs to other budget categories. The purpose of this request is to facilitate the award and funding of subawards to financial intermediary subrecipients consistent with the activities describe in the workplan in effect for CGC's NCIF Award.

CGC's workplan describes CGC's intent to make subawards to financial intermediary subrecipients and the important role these entities have in helping to implement CGC's NCIF Award. See, e.g., Workplan at p. 45. Among the types of financial assistance described in CGC's workplan, and thus approved for use under CGC's NCIF Award, are subawards to financial intermediary subrecipients, through which CGC would provide financial assistance to an entity, which may itself be a qualified project, to enable the entity to provide follow-on loans and other forms of financial assistance to qualified projects. CGC's approved budget, however, does not presently distinguish between participant support costs and subawards to financial intermediaries. CGC requests EPA's prior approval in order to rectify that issue. In the event that a transfer of funds covered by the requested prior approval could allow for a recalculation of the amount of indirect costs available, CGC will not draw down indirect costs in excess of the amount listed in CGC's approved budget as of the date of this request.

Thank you for your consideration of this request.

Best regards,
David

--

**David Pettit**
(he/him)
General Counsel and Chief Strategy Officer

---

Coalition For Green Capital/American Green Bank Consortium

*Twitter | LinkedIn*

EPA_00050732



NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

Message

| | |
|---|---|
| **From:** | Schindel, Phillip [Schindel.Phillip@epa.gov] |
| **Sent:** | 1/16/2025 10:46:02 PM |
| **To:** | dpettit@coalitionforgreencapital.com |
| **CC:** | Drummond, James [Drummond.James@epa.gov]; Nowlan, Aileen [Nowlan.Aileen@epa.gov]; Dinnocenzo, Benjamin (he/him/his) [Dinnocenzo.Benjamin@epa.gov]; kevin.minoli@alston.com; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; cbrowner@cov.com; Jack, W. Andrew [ajack@cov.com]; Terenzio, Peter [pterenzio@cov.com]; Richard Kauffman [RKauffman@coalitionforgreencapital.com] |
| **Subject:** | RE: Request for Prior Approval (Grant Number 84094201) |

Dear Mr. Pettit,

We received the proposed updates and have given them an initial review.

Thank you Mr. Minoli for the additional background information regarding CGC's request to re-budget $2.8 billion in participant support costs for subawards. Our position remains that prior EPA approval for that action is required pursuant to 2 CFR 200.308(f)(5) and the Terms and Conditions of CGC's National Clean Investment Fund award agreement. We can provide a more detailed rationale for our determination upon request. However, at this point we are working on an amendment to CGC's grant agreement to authorize the re-budgeting and believe that task should receive priority.

Have a good evening,
Phil


Phillip Schindel
Acting Director
US EPA Grants Management & Business Operations Division
202-564-5293
Schindel.Phillip@epa.gov


---

**From:** David Pettit <dpettit@coalitionforgreencapital.com>
**Sent:** Thursday, January 16, 2025 1:05 PM
**To:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Cc:** Drummond, James <Drummond.James@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; kevin.minoli@alston.com; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; cbrowner@cov.com; Jack, W. Andrew <ajack@cov.com>; Terenzio, Peter <pterenzio@cov.com>; Richard Kauffman <RKauffman@coalitionforgreencapital.com>
**Subject:** Re: Request for Prior Approval (Grant Number 84094201)

> **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

 Mr. Schindel,

Please see attached the requested documents.  Please confirm receipt and your approval.

We respectfully request expedited treatment as we have transactions scheduled to close today.  To the extent possible, a prompt response today would be greatly appreciated.

Thank you again for your consideration.

Best regards,
David

--
**David Pettit**
General Counsel and Chief Strategy Officer
Coalition For Green Capital

---

**From:** David Pettit <dpettit@coalitionforgreencapital.com>
**Sent:** Thursday, January 16, 2025 9:22 AM
**To:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Cc:** Drummond, James <Drummond.James@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Minoli, Kevin <kevin.minoli@alston.com>; Eli Hopson <eli@coalitionforgreencapital.com>; Jeff Diehl <jdiehl@coalitionforgreencapital.com>; cbrowner@cov.com <cbrowner@cov.com>; Jack, W. Andrew <ajack@cov.com>; Terenzio, Peter <pterenzio@cov.com>
**Subject:** Re: Request for Prior Approval (Grant Number 84094201)

Thank you so much, Mr. Schindel.  We will be back to you shortly with the requested documents.

--
**David Pettit**
General Counsel and Chief Strategy Officer
Coalition For Green Capital

---

**From:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Sent:** Thursday, January 16, 2025 9:11 AM
**To:** David Pettit <dpettit@coalitionforgreencapital.com>
**Cc:** Drummond, James <Drummond.James@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; Minoli, Kevin <kevin.minoli@alston.com>; Eli Hopson <eli@coalitionforgreencapital.com>; Jeff Diehl <jdiehl@coalitionforgreencapital.com>; cbrowner@cov.com <cbrowner@cov.com>; Jack, W. Andrew <ajack@cov.com>; Terenzio, Peter <pterenzio@cov.com>
**Subject:** RE: Request for Prior Approval (Grant Number 84094201)

**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.

Good morning Mr. Pettit,

We can approve this request in concept. I will need CGC to please send a proposed revision to workplan page 45 and to the associated detailed budget table.

Thank you,
Phil


Phillip Schindel
Acting Director
US EPA Grants Management & Business Operations Division
202-564-5293
Schindel.Phillip@epa.gov

---

**From:** David Pettit <dpettit@coalitionforgreencapital.com>
**Sent:** Wednesday, January 15, 2025 7:11 PM
**To:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Cc:** Drummond, James <Drummond.James@epa.gov>; Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Dinnocenzo, Benjamin (he/him/his) <Dinnocenzo.Benjamin@epa.gov>; kevin.minoli@alston.com; eli@coalitionforgreencapital.com; jdiehl@coalitionforgreencapital.com; cbrowner@cov.com; Jack, W. Andrew <ajack@cov.com>; Terenzio, Peter <pterenzio@cov.com>
**Subject:** Request for Prior Approval (Grant Number 84094201)

 **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Dear Mr. Schindel:

Pursuant to the terms of the Award Agreement for Grant Number 84094201 ("NCIF Award") and 2 C.F.R. 200.308(f)(5), the Coalition for Green Capital ("CGC") hereby requests "prior approval" from EPA for the transfer of funds budgeted for Participant Support Costs to other budget categories. The purpose of this request is to facilitate the award and funding of subawards to financial intermediary subrecipients consistent with the activities describe in the workplan in effect for CGC's NCIF Award.

CGC's workplan describes CGC's intent to make subawards to financial intermediary subrecipients and the important role these entities have in helping to implement CGC's NCIF Award. See, e.g., Workplan at p. 45. Among the types of financial assistance described in CGC's workplan, and thus approved for use under CGC's NCIF Award, are subawards to financial intermediary subrecipients, through which CGC would provide financial assistance to an entity, which may itself be a qualified project, to enable the entity to provide follow-on loans and other forms of financial assistance to qualified projects. CGC's approved budget, however, does not presently distinguish between participant support costs and subawards to financial intermediaries. CGC requests EPA's prior approval in order to rectify that issue. In the event that a transfer of funds covered by the requested prior approval could allow for a recalculation of the amount of indirect costs available, CGC will not draw down indirect costs in excess of the amount listed in CGC's approved budget as of the date of this request.

Thank you for your consideration of this request.

Best regards,
David


--

**David Pettit**

(he/him)

General Counsel and Chief Strategy Officer

_____

Coalition For Green Capital/American Green Bank Consortium

*Twitter* | *LinkedIn*

