## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAPANESE AMERICAN CITIZENS
LEAGUE, et al.,

     *Plaintiffs*,

     v.

Case No. 1:25-cv-00643-TSC

ELON MUSK, *in his official capacity*, et al.,

     *Defendants*.

## PLAINTIFFS' EXPEDITED MOTION FOR EXPEDITED DISCOVERY

EPA_00052608

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................................2

    I.    Procedural Background..........................................................................................2

    II.    Lack of Transparency and Obfuscation as to Mr. Musk and DOGE's Role in the Federal Government...........................................................................................3

LEGAL STANDARD ..................................................................................................................9

ARGUMENT ............................................................................................................................10

    I.    Expedited Discovery Is Reasonable in Light of Plaintiffs' Forthcoming Motion for Preliminary Injunction and the Secretive Nature of Mr. Musk and DOGE's Actions.11

    II.    Plaintiffs' Requested Expedited Discovery Is Narrowly Tailored and Not Overly Burdensome. .......................................................................................................15

    III.    The Fact that One of Plaintiffs' Four Claims, Not Against Defendants DOGE, Musk, or Gleason, is an APA Claim Does Not Counsel Against Expedited Discovery..........19

CONCLUSION.........................................................................................................................21

EPA_00052609

Plaintiffs Japanese American Citizens League (JACL), OCA – Asian Pacific American Advocates (OCA), Sierra Club, and Union of Concerned Scientists (UCS) request expedited discovery in support of a forthcoming motion for preliminary injunction. Plaintiffs are working quickly to develop a robust record to support such a motion, but due to Defendants' lack of transparency and contradictory public statements, some important information is solely within Defendants' possession. To give just one example, the White House only publicly shared the identity of the purported U.S. DOGE Service Administrator after weeks of questioning, stating that that individual is Defendant Gleason—yet President Trump subsequently informed Congress that DOGE "is headed by Elon Musk." ECF No. 1 at 35 ¶ 135. More broadly, the true nature and scope of many of Defendants Musk and DOGE's actions in drastically altering federal spending—including through the termination of grants and contracts, the firing of federal employees, and the reduction in size of the federal workforce—and in dismantling federal agencies is not known. Mr. Musk and DOGE's actions lack transparency, and discovery is important for Plaintiffs and the Court to understand and evaluate both Mr. Musk and DOGE's role in these processes and the full scope of harm that they are inflicting upon Plaintiffs. These issues are important for Plaintiffs' preliminary injunction motion, as to resolving basic factual issues underlying Plaintiffs' claims and as to irreparable harm.

Accordingly, Plaintiffs request that this Court grant limited expedited discovery, attached as Exhibit A. Plaintiffs' narrowly tailored request will aid this Court's evaluation of Plaintiffs' motion for preliminary injunction, on the attenuated timeline necessitated by the ongoing and imminent harm that Mr. Musk and DOGE are causing to Plaintiffs' scientific research, safety and enjoyment in outdoor activities, work to remember historical injustice, and educational opportunities. Because Plaintiffs seek this information to support a motion for preliminary

1

injunction and are working to file that motion as quickly as possible, in light of ongoing irreparable harm, Plaintiffs respectfully request consideration of this motion on an emergency basis. Plaintiffs request that the Court require that Defendants file their response no later than Monday, March 17, 2025, and that Plaintiffs file their reply no later than Friday, March 21, 2025. Counsel for Plaintiffs has conferred via email with counsel for Defendants, who oppose both the motion for expedited discovery and the proposed schedule.

## BACKGROUND

### I.      Procedural Background

On March 5, Plaintiffs filed suit challenging Mr. Musk and DOGE's lawless exercise of sweeping power over federal spending and federal agencies. ECF No. 1. Plaintiffs' Complaint includes ultra vires and separation of powers claims against Defendants Musk, DOGE, and Gleason; an Appointments Clause claim against Mr. Musk; and an Administrative Procedure Act claim against 16 federal Agency Defendants.[1]

This case is related to *New Mexico v. Musk*, No. 1:25-cv-00429 (D.D.C. filed Feb. 13, 2025), and it has been identified as such on the docket. In that case, State plaintiffs also bring an Appointments Clause claim against Mr. Musk and ultra vires claims against Mr. Musk and DOGE for roughly the same set of actions, lawlessly exercising unchecked power over large swaths of the federal government. *New Mexico*, No. 1:25-cv-00429-TSC (D.D.C. Feb. 13, 2025), ECF No. 1.

---

[1] "Agency Defendants" includes Defendants Office of Personnel Management, Ezell, U.S. Department of Education, McMahon, National Park Service, Bowron, U.S. Forest Service, Schultz, Bureau of Land Management, Raby, National Oceanic and Atmospheric Administration, Hann, U.S. Department of Commerce, Lutnick, U.S. Department of Interior, Burgum, U.S. Department of Health and Human Services, Kennedy, National Institutes of Health, Memoli, Substance Abuse and Mental Health Services Administration, Carroll, Environmental Protection Agency, Zeldin, National Science Foundation, Panchanathan, U.S. Department of Agriculture, Rollins, Federal Emergency Management Agency, Hamilton, U.S. Department of Housing and Urban Development, and Turner.

2

EPA_00052611

The *New Mexico* Plaintiffs sought a temporary restraining order, *New Mexico* (D.D.C. Feb. 14, 2025), ECF No. 6, which this Court denied solely on the basis that they had not met the "high standard for irreparable injury" required for a TRO. *New Mexico* (D.D.C. Feb. 18, 2025), ECF No. 29 (*New Mexico* TRO Op.) at 6 (quoting *Church v. Biden*, 573 F. Supp. 3d 118, 138 (D.D.C. 2021)). This Court observed that "[a]ccepting Plaintiffs' allegations as true, Defendants' actions are thus precisely the 'Executive abuses' that the Appointments Clause seeks to prevent." *New Mexico* TRO Op. at 9 (quoting *Edmond v. United States*, 520 U.S. 651, 659 (1997)).

In its TRO opinion in *New Mexico*, this Court recognized that "DOGE's unpredictable actions have resulted in considerable uncertainty and confusion for [State] Plaintiffs and many of their agencies and residents." *New Mexico* TRO Op. at 6. The Court found, however, that "widespread media reports that DOGE has taken or will soon take certain actions, such as mass terminations" alone could not "substitute for" the "specific facts" necessary for a temporary restraining order. *Id.* at 7.

## II. Lack of Transparency and Obfuscation as to Mr. Musk and DOGE's Role in the Federal Government

Mr. Musk and DOGE have consistently obscured DOGE's actions, and the administration's public descriptions of DOGE have been contradictory and, in some instances, inconsistent with the information provided by the government in court filings or that has otherwise emerged via litigation. Although Plaintiffs' Complaint contains significant information about Mr. Musk and DOGE's actions that has become public, frequently through reporting, the specifics of what, precisely, Mr. Musk and DOGE have done and plan to do remain within Defendants' exclusive knowledge and control. This is especially true with respect to specific information about (1) Mr. Musk and DOGE's role in directing and causing the termination of federal grants and contracts, the reduction in size of the federal workforce, and the dismantling of federal departments and

3

EPA_00052612

agencies and (2) the full scope of the impact of Mr. Musk and DOGE's actions on federal departments and agencies (such as, as just one example, the impact of Mr. Musk and DOGE's actions throughout the National Park Service).

Speaking from the Oval Office, Mr. Musk recently claimed: "We are actually trying to be as transparent as possible. So all of our actions are maximally transparent. I don't know of a case where an organization has been more transparent than the DOGE organization."[2] But in fact, there is no comprehensive, publicly available information as to the specifics of Mr. Musk and DOGE's actions to date. DOGE's website features a purported "wall of receipts" where DOGE claims credit for purported cuts to grants and contracts, among other things. But the *New York Times* reported on March 3 that a comparison of an archived version of the "wall of receipts" with the currently posted version showed that DOGE had, without announcement, deleted or changed more than 1,000 contracts it had initially claimed to have canceled.[3] Moreover, DOGE admits that the list on the purported "wall of receipts" is an incomplete "subset of contract, grant, and lease cancellations, representing ~30% of total savings."[4] And DOGE has not responded to requests for additional information. For example, *Inside Higher Ed* reported that DOGE ignored its request for information about terminated grants and contracts at the Department of Education[5]—which is a lack of transparency that is particularly problematic for this litigation, where Plaintiffs JACL and OCA have sued over education-related harms and threats of imminent harm. ECF No. 1 at 82-86 ¶¶ 284-292.

---

[2] The White House, *President Trump Signs Executive Orders in the Oval Office*, YouTube (Feb. 12, 2025), https://perma.cc/96FG-9LG9.

[3] David A. Fahrenthold, et al., *Struggling With Errors, DOGE Deletes Billions More From List of Savings*, The New York Times (Mar. 3, 2025), https://perma.cc/762B-48UJ.

[4] *Savings*, Dep't of Gov't Efficiency (as of March 10, 2025), https://perma.cc/L6ED-Y6LJ.

[5] Jessica Blake, *Trump Stresses Transparency but Releases Little Accurate Data*, Inside Higher Ed (Mar. 5, 2025), https://perma.cc/CS34-V9Y6.

EPA_00052613

The administration even declined for weeks to provide the identity of the U.S. DOGE Service Administrator before eventually claiming that the position is held by Amy Gleason, and the administration has still not confirmed whether there was an administrator prior to Ms. Gleason or the specific date on which Ms. Gleason purportedly became the U.S. DOGE Service Administrator. *See* ECF No. 1 at 37 ¶ 141. (In any event, it is clear from public statements by President Trump, Mr. Musk, and others, including President Trump's statement in his March 4, 2025, joint address to Congress that DOGE "is headed by Elon Musk," that regardless of formal title, Mr. Musk is the de facto head of DOGE and is operating as such within the federal government. *Id.* at 34-37 ¶¶ 134-140.)

Instead, the administration has provided incomplete and conflicting public accounts of Mr. Musk and DOGE's actions and role in the government. For example, as described in Plaintiffs' Complaint, in a recent court filing the White House Office of Administration's Director asserted that Mr. Musk is a Senior Advisor to the President, and is not a DOGE employee or the DOGE Administrator. But repeatedly and publicly, numerous administration officials—including President Trump at a joint address to Congress and Mr. Musk himself—have claimed that Mr. Musk is the head of DOGE. *Id.* at 34-37 ¶¶ 134-140. Moreover, following a Cabinet meeting on March 6, President Trump stated on social media that he "ha[d] instructed the Secretaries and Leadership to work with DOGE on Cost Cutting measures and Staffing."[6] Then, in a press conference, President Trump stated, "I said I want the Cabinet members—go first, keep all the people you want, everybody that you need . . . . We want them to keep the good people and, uh, so we're going to be watching them, and Elon and the group are going to be watching them, and if

---

[6] Donald J. Trump (@realdonaldtrump), Truth Social (Mar. 6, 2025, 1:55 PM), https://perma.cc/3DW5-VBTW.

EPA_00052614

they can cut, it's better, uh, and if they don't cut, then Elon will do the cutting."[7] President Trump's statements demonstrate that, contrary to other assertions by the administration and DOGE's purportedly narrow ambit of updating federal technology, ECF No. 1 at 12 ¶ 37, Mr. Musk is in fact in charge of DOGE, and Mr. Musk and DOGE have assumed the power to reduce the federal workforce and terminate federal employees across the government—even overruling agency and department heads to do so.

Information from the proceedings in *National Treasury Employees Union v. Vought*, No. 1:25-cv-00381 (D.D.C.) (*NTEU*), litigation challenging executive branch efforts to dismantle the Consumer Financial Protection Bureau (CFPB), also demonstrates how DOGE's role in drastically altering federal spending and dismantling federal agencies remains opaque. The Chief Operating Officer of the CFPB filed a declaration stating that "The CFPB is Committed to Performing Statutory Obligations" and that "[o]ur leadership has worked to comply with statutorily required functions." Decl. of Adam Martinez, *NTEU*, No. 1:25-cv-00381 (D.D.C. Feb. 24, 2025), ECF No. 31-1 ¶ 19. A federal employee who attended meetings between the Office of Personnel Management and the CFPB, then filed a declaration stating:

> Around February 13th, my team was directed to assist with terminating the vast majority of CFPB employees as quickly as possible. The termination was to proceed in phases, to be completed in rapid succession. First, the Bureau fired all probationary and term employees. Next, the Bureau would fire approximately 1,200 additional employees, by eliminating whole offices, divisions, and units. Finally, the Bureau would "reduce altogether" within 60-90 days by terminating most of its remaining staff, leaving a Bureau that could not actually perform any functions, or no Bureau at all.

Decl. of Alex Doe, *NTEU* (D.D.C. Feb. 27, 2025), ECF No. 38-2 ¶ 3. A second federal employee filed a declaration stating that on February 13, 2025, he "was present at a meeting, at which CFPB

---

[7] ABC News, '*If They Don't Cut, Then Elon Will Fo the Cutting': Trump Warns Cabinet Members*, YouTube (Mar. 6, 2025), https://perma.cc/2SGY-9ZLR.

EPA_00052615

Chief Operating Officer Adam Martinez explained that the CFPB was in 'wind down mode.'" Decl. of Blake Doe, *NTEU* (D.D.C. Feb. 27, 2025), ECF No. 38-3 ¶ 3. The CFPB Chief Operating Officer only then filed a supplemental declaration stating, "Prior to Russell Vought's designation as Acting Director of CFPB, agency staff had received guidance from DOGE-associated personnel consistent with" "the closure of the agency" and a "wind down mode." Supp. Decl. of Adam Martinez, *NTEU* (D.D.C. Mar. 2, 2025), ECF No. 47-1 ¶ 3. DOGE's role in the efforts to shut down the CFPB, and the fact that it was providing "guidance" to agency staff, was not previously known. *See also NTEU* (D.D.C. Mar. 4, 2025), ECF No. 56-1 at 1-2 (email exchange filed at the direction of the court in which the CFPB Chief Operating Officer told an employee, "The USDS Team will let you or me know if any other work is needed."). Only through an internal whistleblower and a court directive to file relevant evidence did DOGE's role in working to dismantle the CFPB become clear.

Further, Mr. Musk and DOGE do not make public concrete details about what departments and agencies they will target next or what actions they will undertake. The public only learns about their actions through what they choose to publish on an ad hoc basis—which is after the fact and often has proven inaccurate. However, they are acting quickly to destroy agencies. For example, Mr. Musk and DOGE acted swiftly and without significant warning to dismantle the U.S. Agency for International Development (USAID). ECF No. 1 at 53-55 ¶¶ 191-196. As Mr. Musk trumpeted on February 3: "We spent the weekend feeding USAID into the wood chipper."[8] Defendants do not provide significant or reliable public information about their planned next steps or the actions

---

[8] Elon Musk (@elonmusk), X (Feb. 3, 2025, 1:54 AM), https://perma.cc/6XD3-DNDU; *see* ECF No. 1 at 54 ¶ 193.

7

EPA_00052616

they have already taken to lay the groundwork for dismantling agencies and taking apart vast portions of the federal government.

Accounts of DOGE's actions at the Inter-American Foundation (IAF) and United States African Development Foundation (USADF) further underscore Mr. Musk and DOGE's methodology of swiftly dismantling federal agencies and, also, the ways in which the administration obfuscates Mr. Musk and DOGE's role in directing and causing federal funding cuts, directing and causing reductions in the federal workforce, and dismantling agencies. According to court filings by the President of USADF, in a lawsuit filed on March 6, 2025, in this District, DOGE representatives told the IAF board on February 20, 2025, that they were seeking to improve IAF software. *Brehm v. Marocco*, No. 1:25-cv-00660 (D.D.C. Mar. 6, 2025), ECF No. 1 (*Brehm* Compl.). After signing a memorandum of understanding, the DOGE representatives then told the IAF board that in fact "their real goal was to reduce the functions of IAF to what they characterized as its statutory minimum operations." *Brehm* Compl. at 15 ¶ 52. "DOGE . . . intended to effectuate the reduction-in-force (RIF) of most, if not all IAF's employees, and the termination of all but a handful of IAF's grants and contracts," either with IAF board support or after the termination of the board. *Id.* ¶ 53. Following board resistance and a purported change in the agency's leadership by President Trump, DOGE representatives then implemented a RIF of most if not all IAF workers, canceled most IAF grants, sent back donations made to IAF, shut employees out of IAF IT, and took down the IAF website. *Id.* at 17 ¶ 60. As described in the *Brehm* complaint and reported in the *New York Times*, DOGE sought to execute the same playbook at the USADF. *Id.* at 3 ¶ 5.

EPA_00052617

## LEGAL STANDARD

District courts have broad discretion to manage the timing of discovery, especially where a request for a preliminary injunction is impending. *Beale v. D.C.*, 545 F. Supp. 2d 8, 15 (D.D.C. 2008) ("a district court has wide discretion in managing its discovery process"); *Pinson v. U.S. Dep't of Just.*, No. CV 18-486 (RC), 2021 WL 3418954, at *4 (D.D.C. Aug. 5, 2021) ("Courts enjoy broad authority to permit early discovery."); *Washington Bancorporation v. Wafic Said*, No. CIV.A. 88-3111 (RCL), 1988 WL 120829, at *1 (D.D.C. Nov. 2, 1988) (expedited discovery available where circumstances are "likely to prejudice the plaintiff if he were compelled to await for the required period") (citations omitted); Fed. R. Civ. P. 26(d)(1) (permitting deviation from ordinary discovery schedule when "authorized . . . by court order"); *id.*, Advisory Committee Notes ("Discovery can begin earlier if authorized . . . by . . . order . . . . This will be appropriate in some cases, such as those involving requests for a preliminary injunction . . . ."); Fed. R. Civ. P. 30(a)(2), 33(a), 33(b)(2), and 34(b).

"Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings . . . [and] courts have routinely granted expedited discovery in cases involving challenges to constitutionality of government action." *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996); *see also Garnett v. Zeilinger*, No. 17-CV-1757 (CRC), 2017 WL 8944640, at *3 (D.D.C. Dec. 15, 2017) (citing Fed. R. Civ. P. 26(f) Advisory Committee's Notes to 1993 Amendments) (expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction"). In evaluating a request for expedited discovery, courts apply a reasonableness test, which on the whole evaluates "the reasonableness of the request in light of the entire record to date and all of the surrounding circumstances." *Legal Tech. Grp., Inc. v. Mukerji*, No. CV 17-631 (RBW), 2017

9

EPA_00052618

WL 7279398, at *2 (D.D.C. June 5, 2017).[9] Non-exhaustive factors that courts often consider as guidelines in their reasonableness assessment include "(1) whether a motion for preliminary injunction is pending, (2) the discovery request's breadth, (3) the purpose for requesting expedited discovery, (4) the burden on the defendant to comply with the requested discovery, and (5) how far in advance of the typical discovery process the request is made." *Pinson*, 2021 WL 3418954, at *4. "Courts are not limited to these factors but instead are empowered to employ them as 'guidelines for the exercise of the Court's discretion.'" *Id.* (internal citations omitted). The fundamental touchstone of evaluation of a request for expedited discovery is reasonableness. *Id.*

## ARGUMENT

Plaintiffs intend to move for a preliminary injunction and are working with alacrity, based on publicly available information, to develop the necessary evidentiary record. Plaintiffs' request for expedited discovery is reasonable in light of the circumstances: Some important information for Plaintiffs' motion and for the Court's consideration of such a motion, however, is solely in Defendants' possession. Plaintiffs' request is reasonable considering the ongoing obfuscation and confusion regarding Mr. Musk and DOGE's role in directing and causing alteration of federal spending, including termination of federal grants and contracts and reduction in the federal

---

[9] Two tests have emerged to consider expedited motions for discovery: the *Notaro* test and the reasonableness test. Courts in this circuit have recognized that the *Notaro* test closely mirrors the test for issuance of a preliminary injunction, so "it does not make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request" for a preliminary injunction. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014); *accord Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 9598404, at *2; *Pinson*, 2021 WL 3418954, at *4; *Mukerji*, No. CV 17-631 (RBW), 2017 WL 7279398, at *2; *Garnett v. Zeilinger,* No. 17-CV-1757 (CRC), 2017 WL 8944640, at *1 (D.D.C. Dec. 15, 2017). As a result, courts in this circuit have routinely applied the reasonableness test to motions for expedited discovery in support of a preliminary injunction because in such circumstances, the *Notaro* test makes the analysis for a motion for expedited discovery redundant. *See Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 9598404, at *2 (D.D.C. Jan. 30, 2019).

EPA_00052619

workforce, and in directing and causing the dismantling of federal agencies. It is also reasonable in light of the lack of transparency about the impact of Mr. Musk and DOGE's actions and the fast-moving and unpredictable nature of their actions, which directly harm Plaintiffs. Plaintiffs' narrowly drawn requests for expedited discovery are reasonable under the totality of the circumstances.

I.    **Expedited Discovery Is Reasonable in Light of Plaintiffs' Forthcoming Motion for Preliminary Injunction and the Secretive Nature of Mr. Musk and DOGE's Actions.**

Expedited discovery is reasonable to aid this Court in evaluation of Plaintiffs' forthcoming motion for preliminary injunction, because important relevant information is in Defendants' sole possession. Plaintiffs intend to seek a preliminary injunction in short order. The discovery Plaintiffs seek on an expedited basis will provide additional facts directly relevant to that preliminary injunction motion as quickly as practicable, so that the Court may consider them in deciding the motion.

Courts in this circuit, and outside of it, regularly grant expedited discovery in anticipation of a preliminary injunction. *E.g.*, *AFL-CIO v. Dep't of Labor*, No. 1:25-cv-00339-JDB (D.D.C. Feb. 27, 2025), ECF No. 48 (partially granting expedited discovery in light of plaintiffs' impending preliminary injunction motion, including 30(b)(6) depositions of DOGE and three federal agencies, of eight hours each); *Pompeo*, 2019 WL 9598404; *Am. Fed'n of Gov't Emps., AFL-CIO v. Off. of Pers. Mgmt.*, No. 25-cv-01237-DLC (S.D.N.Y. Mar. 7, 2025), ECF No. 57 (granting in part plaintiffs' request for expedited discovery prior to anticipated briefing of motion for preliminary injunction, and providing opportunity for renewal of full request following preliminary injunction hearing in related action); *Courthouse News Serv. v. Harris*, No. ELH-22-548, 2022 WL 3577255 (D. Md. Aug. 18, 2022) (granting expedited discovery and noting that

11

EPA_00052620

"expedited discovery is particularly appropriate where a preliminary injunction is sought"); *Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 456 (D.S.D. 2014); *OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 305 (N.D.N.Y. 2006); *see also Mukerji*, 2017 WL 7279398, at *3 (plaintiffs' plan to file a preliminary injunction weighed in favor of expedited discovery since "the very purpose of [plaintiffs'] motion for expedited discovery is to support its anticipated motion for a preliminary injunction"); *cf. Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Pers. Mgmt.*, No. 3:25-cv-01780 (N.D. Cal. Feb. 27, 2025), ECF No. 41 (requiring government to produce expedited discovery amid ongoing TRO proceedings). Expedited discovery is reasonable here, too, for the same reason: Plaintiffs plan to move for preliminary injunction in short order. The limited information that Plaintiffs request on an expedited basis will inform both Plaintiffs' briefing and this Court's evaluation of the preliminary injunction motion.

The limited expedited discovery that Plaintiffs request is further reasonable because Plaintiffs seek important information on issues core to the evaluation of the preliminary injunction motion that are "clearly relevant, but . . . unavailable to [Plaintiffs] from other sources." *Courthouse News Serv.*, 2022 WL 3577255, at *5. As reflected in the Complaint, ECF No. 1, Plaintiffs have diligently examined the public record, and continue to do so, to ascertain all publicly available information relevant to Plaintiffs' claims and to promote effective resolution of their forthcoming motion. However, as described *supra*, Background II, Defendants continue to obfuscate the nature and scope of Mr. Musk and DOGE's actions, and their impacts throughout the federal government. For example, it has taken weeks for Defendants to publicly provide any answer to the seemingly straightforward question of who formally occupies the role of U.S. DOGE Service Administrator. And even after that answer, there is still uncertainty as to when that individual assumed the role and whether that role has any meaning, in light of the President's, Mr.

12

Musk's, and others' repeated assertions that Mr. Musk is the head of DOGE. *Supra* Background II.

More broadly, as described *supra*, Background II, Defendants have not been transparent about the extent of Mr. Musk and DOGE's power over the federal government, or the impacts of their work on federal departments and agencies. This is information that goes to the core of Plaintiffs' claims that Mr. Musk and DOGE's actions are ultra vires, in violation of separation of powers, that Mr. Musk's actions violate the Appointments Clause, and that to the extent Agency Defendants are implementing Mr. Musk and DOGE's actions, they are violating the APA. *See, e.g.*, ECF No. 1 at 42-45 ¶¶ 155-59, 162; *id.* at 46-47 ¶¶ 164-166; *id.* at 48 ¶¶ 171-173; *id.* at 50 ¶¶ 179-180; *id.* at 52 ¶ 186; *id.* at 53-55 ¶¶ 192, 194, 197-98. While Mr. Musk and DOGE publicly claim they are engaged in altering large swaths of federal spending, reducing the size of the federal workforce (including through terminations of employees), and dismantling federal departments and agencies, they simultaneously have cloaked these processes, their actions and decision-making, and the effects of their actions and decisions in secrecy. *See, e.g.*, ECF No. 1 at 4 ¶ 8; *id.* at 63-64 ¶¶ 223-224; *id.* at 39 ¶ 146.

Information about Mr. Musk and DOGE's actions, to the extent it is available, comes primarily in the form of ad hoc tweets and postings to DOGE's "wall of receipts," which has been shown to be riddled with errors and which DOGE surreptitiously revises at will.[10] Neither Mr. Musk nor DOGE nor any other part of the federal executive branch has provided reliable information as to how Mr. Musk and DOGE analyze federal spending, including federal grants, contracts, and the federal workforce; how Mr. Musk and DOGE decide on, direct, and cause the

---

[10] David A. Fahrenthold, et al., *Struggling with Errors, DOGE Deletes Billions More From List of Savings*, NY Times (Mar. 3, 2025), https://perma.cc/762B-48UJ.

EPA_00052622

termination of federal grants and contracts; how Mr. Musk and DOGE decide on, direct, and cause reductions in size of the federal workforce, including terminations of federal employees; and how Mr. Musk and DOGE decide on, direct, and cause the dismantling of federal agencies. Indeed, Mr. Musk, DOGE, and other federal executive branch actors have toggled between claiming credit for Mr. Musk and DOGE in these areas and obscuring Mr. Musk and DOGE's role. *Supra* Background II. Further, neither Mr. Musk nor DOGE nor any other part of the federal executive branch has provided reliable, complete information about the *impacts* of Mr. Musk and DOGE's actions. There is no meaningful way absent discovery for Plaintiffs to accurately ascertain how many federal employees have been terminated at each National Park Service location, for example, so as to evaluate the impacts of these terminations on Plaintiffs Japanese American Citizens League and Sierra Club. This information on the impacts of Mr. Musk and DOGE's actions is especially important to the issue of irreparable harm, paramount to evaluating Plaintiffs' motion for preliminary injunction.

Defendants are therefore in sole possession of information important to Plaintiffs' forthcoming motion for preliminary injunction, and this Court's adjudication of it, due to Defendants' secretive approach to Mr. Musk and DOGE's actions. The usual discovery schedule will not provide this information quickly enough for Plaintiffs to incorporate it into their motion for preliminary injunction, and as a result, Plaintiffs will be severely harmed. *See AFL-CIO*, No. 1:25-cv-00339-JDB (D.D.C. filed Feb. 13, 2025). Only Defendants possess information as to the contours of Mr. Musk and DOGE's actions. Public statements by the President, other executive officials, Mr. Musk, and DOGE about Mr. Musk and DOGE's actions have been subsequently undermined by facts provided by court filings in other legal proceedings. *Compare, e.g.*, ECF No. 1 at 34 ¶ 134, *with id.* ¶ 135; *see id.* at 37 ¶ 141. Defendants' own actions therefore emphasize the

14

EPA_00052623

need for limited discovery to ascertain the truth of what is happening and inform evaluation of Plaintiffs' forthcoming motion for preliminary injunction. *See, e.g.*, *id.* at 39-40 ¶ 146; *id.* at 47 ¶ 166; *id.* at 55 ¶ 197; *id.* at 57-58 ¶¶ 205-06; *id.* at 61 ¶ 215. Because of such secrecy and Plaintiffs' inability to obtain the information they seek elsewhere in a timely manner, expedited discovery is necessary.

As a result, expedited discovery "will better enable the court to judge the parties' interests and respective chances for success on the merits," *Garnett*, 2017 WL 8944640, at *2 (citation omitted), including the degree of irreparable harm accruing to Plaintiffs. By providing otherwise unavailable information in Defendants' possession about the nature and scope of Mr. Musk and DOGE's actions, expedited discovery will aid this Court in evaluating both the effect of Mr. Musk and DOGE's actions on federal funding, the federal workforce, and federal agencies and the ways in which Defendants' actions are harming and threaten further harm to Plaintiffs on an ongoing basis.

## II. Plaintiffs' Requested Expedited Discovery Is Narrowly Tailored and Not Overly Burdensome.

Plaintiffs seek information as to (1) Mr. Musk and DOGE's role in directing and causing the termination of federal grants and contracts, the reduction in size of the federal workforce, and the dismantling of federal departments and agencies and (2) the impact of Mr. Musk and DOGE's actions on federal departments and agencies. The requested expedited discovery, information in Defendants' sole possession, is narrowly tailored and not overly burdensome for Defendants— whereas lack of access to this information would inhibit Plaintiffs' efforts to seek a preliminary injunction. Plaintiffs are proposing 6 requests for the production of documents and 7 interrogatories, each requesting documents and written answers relating to actions taken by Mr.

15

EPA_00052624

Musk and DOGE regarding their influence and control over federal spending, termination of the federal workforce, and dismantling of federal agencies, as well as 3 limited-scope depositions.

The limited expedited discovery that Plaintiffs request is reasonable in scope. The requested discovery is tailored to encompass only information important to evaluation of Plaintiffs' forthcoming motion for preliminary injunction. *Cf. Damus v. Nielsen*, 328 F.R.D. 1, 5 (D.D.C. 2018). Plaintiffs have targeted their requests to obtaining information solely in Defendants' possession that otherwise must be gleaned, with difficulty and with no guarantee of actual transparency or completeness, from piecemeal news reporting—information that is relevant and important to the evaluation of Mr. Musk and DOGE's exercise of control over federal spending and federal departments and agencies. *See* Opinion and Order, *New Mexico v. Musk*, No. 1:25-cv-00429 (D.D.C. Feb. 18, 2025), ECF No. 29 at 6-7. Plaintiffs seek only discovery directly pertinent to evaluating Mr. Musk and DOGE's non-public actions: specifically, whether and to what extent Mr. Musk and DOGE are directing and/or involved in decisional processes around federal spending and the continued functional existence of federal agencies, and the impact of Mr. Musk and DOGE's actions on federal spending and federal agencies.

Courts routinely grant similar expedited discovery requests. *See, e.g*, *AFL-CIO*, No. 1:25-cv-00339-JDB (D.D.C. Feb 27, 2025), ECF No. 48 at 5 (granting four 30(b)(6) depositions, seven requests for production, and two interrogatories (with 17 subparts) in expedited discovery in a case against some of the same defendants as here); *Pompeo*, 2019 WL 9598404, at *2 (granting requests for production and Rule 30(b)(6) depositions of the representatives of two federal executive departments); *Garnett*, 2017 WL 8944640, at *3 (granting production of reports and 30(b)(6) deposition); *KPM Analytics N. Am. v. Blue Sun Scientific, LLC*, 540 F. Supp. 3d 145, 147 (D. Mass. 2021) (permitting three depositions, including one Rule 30(b)(6) deposition, in addition to requests

16

for production); *N. Atl. Operating Co., Inc. v. Evergreen Distribs., LLC*, 293 F.R.D. 363, 371, 374 (E.D.N.Y. 2013) (permitting seven depositions and granting document requests).

Notably, in *Pompeo*, this Court granted depositions of the corporate representatives for the Departments of State and Defense with a scope that included authorship and preparation of certain statutorily required congressional reports—similar to Plaintiffs' proposed depositions. 2019 WL 9598404. The scope of Plaintiffs' expedited discovery request is similarly appropriate. Given public reporting that federal government data and documents have been removed, changed, or deleted,[11] as well as Defendants' own lack of transparency as to their activities, described *supra* Background II and in Plaintiffs' Complaint, limited deposition discovery is also warranted here to evaluate Plaintiffs' likelihood of success in their forthcoming preliminary injunction motion. *Compare Pompeo*, 2019 WL 9598404, at *2 (granting expedited discovery "reasonably tailored to the issues presented by Plaintiffs' application for preliminary injunction"). The documents, interrogatory answers, and depositions will provide meaningful information not otherwise available regarding Mr. Musk and DOGE's actions and are therefore important for this litigation—particularly given the imminent nature of harm to Plaintiffs that is central to the organizations' core mission and programmatic work, and to members' daily lives.

In an effort to avoid duplicative requests upon Defendants, Plaintiffs have requested that Defendants provide copies of discovery produced or expected to be produced in *New Mexico*. Additionally, the limited Rule 30(b)(6) depositions that Plaintiffs propose are minimally intrusive: they are limited in duration and, in scope, are geared toward information solely in Defendants'

---

[11] *See supra* note 3; *see also* Mike Stobbe and Mike Schneider, *Trump administration's data deletions set off 'a mad scramble,' researcher says*, AP (Feb. 3, 2025), https://apnews.com/article/cdc-census-federal-data-trump-6a9ba7c01a42b72e2c0a119325ba3753.

17

EPA_00052626

possession that is directly relevant to the core claims in this litigation, including irreparable harm during the pendency of the litigation due to Defendants' actions. *See Pompeo*, 2019 WL 9598404, at *3 (granting request for limited 30(b)(6) depositions of Department of Homeland Security and the Department of State during expedited discovery); *see also Citizens for Resp. & Ethics in Washington v. Cheney*, 593 F. Supp. 2d 194, 207 (D.D.C. 2009) (granting request for depositions of Vice President's Chief of Staff and Director of the Presidential Materials Staff during expedited discovery); *Tracfone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015) ("expedited discovery [was] warranted so that [plaintiff could] mitigate any additional irreparable harm caused by Defendants' ongoing alleged scheme"). Plaintiffs' requested discovery is not overly burdensome in light of the important information it will provide as to Mr. Musk and DOGE's actions and their impact.[12]

\*\*\*

Plaintiffs' motion for expedited discovery is also in line with the non-exhaustive guidelines that courts frequently consider in evaluating the reasonableness of requests for expedited discovery. It is in anticipation of a motion for a preliminary injunction (factor one); the requests are narrowly tailored to support the efficient development of the evidentiary record and aid the Court's adjudication of that motion, and necessary because of Defendants' lack of transparency (factors two and three); and Plaintiffs' requests are not burdensome because the requested documents are already in Defendants' possession, and Plaintiffs have requested only limited discovery important to the motion for preliminary injunction (factor four). Finally, denial of Plaintiffs' motion will prejudice Plaintiffs given Plaintiffs' imminent and lasting harm and

---

[12] Were this Court to determine a portion of the discovery that Plaintiffs seek is not reasonable at this stage of the litigation, a partial grant of expedited discovery is not only permissible but routine. *E.g.*, *Garnett*, 2017 WL 8944640, at *2 (partial grant of expedited discovery).

18

Defendants' lack of transparency, whereas discovery at this time will not prejudice Defendants (factor five). *See* Fed. R. Civ. P. 26(b)(1) (inquiries into "burden" should consider "likely benefit"). And Plaintiffs' requested expedited discovery is, fundamentally, reasonable—it will provide important information in Defendants' possession and likely not obtainable by other means, information that is greatly significant to Plaintiffs' forthcoming motion for preliminary injunction and that will aid this Court in its evaluation.

### III. The Fact that One of Plaintiffs' Four Claims, Not Against Defendants DOGE, Musk, or Gleason, is an APA Claim Does Not Counsel Against Expedited Discovery.

Expedited discovery is appropriate in light of the entire record, the posture of the case, and the unusual nature of Defendants Musk and DOGE's actions, notwithstanding Plaintiffs' single Administrative Procedure Act (APA) claim against Agency Defendants. While Plaintiffs have brought an APA claim, this is not a typical "APA case." *AFL-CIO*, No. 1:25-cv-00339-JDB, 2025 WL 556325, at *1 (D.D.C. Feb. 19, 2025); *see Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 187 (D.D.C. 2022) (where plaintiffs bring more than APA claims, the rule barring discovery outside the administrative record does not necessarily apply). *AFL-CIO*, an ongoing case in this district challenging Mr. Musk and DOGE's actions, held that limited expedited discovery was appropriate and permissible even though three of the plaintiffs' five claims were brought under the APA. 2025 WL 556325, at *1. The same logic applies with greater force here, where the gravamen of Plaintiffs' claims here are the ultra vires, separation of powers, and Appointments Clause claims against Defendants Musk, DOGE, and Gleason—in light of Mr. Musk and DOGE's lawless, sweeping effort to alter federal spending, terminate federal grants and contracts, reduce the federal workforce, and dismantle federal agencies.

19

As Judge Bates explained in *AFL-CIO*, cases with APA claims usually pertain to a "promulgated regulation or a grant or denial of an application" and consider whether a government agency's decision has adequate foundation in its record of decision. As a result, judicial review is typically limited to an administrative record, and discovery into matters outside the record is typically not reasonable in light of the legal question before the court. *See AFL-CIO*, No. 1:25-cv-00339-JDB (D.D.C. Feb. 27, 2025), ECF No. 48 at 5; *Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.*, No. 1:19-CV-2236-RCL, 2023 WL 5221367, at *4-5 (D.D.C. Aug. 15, 2023). But "this is an unusual case." *AFL-CIO*, 2025 WL 556325, at *1. Here, Plaintiffs are not challenging "decisions or policies [that] were made through a formal process or otherwise produced a record like the Court may see in a typical APA case." *Id.* Instead, "one of the core questions [] is whether the defendants even took the actions (or established the policies) that plaintiffs challenge." *Id.*

As a result, the same type of expedited discovery to aid in evaluation of a forthcoming motion for preliminary injunction that was appropriate in *AFL-CIO* is likewise appropriate here: "There's no way for the Court to decide" whether Defendants took the relevant actions "without some evidence of defendants' decisionmaking process." *Id.* Moreover, here as in *AFL-CIO*, "[l]imited discovery could also benefit the Court by helping it decide additional factual questions necessary to resolving other critical legal issues." *Id.*; *cf. Am. First Legal Found.*, 630 F. Supp. 3d at 187 (granting extra-record discovery in a Federal Advisory Committee Act (FACA) case with APA claims as to "whether the [Department of Education's family engagement] Council will function as a group or a collection of individuals" "because such evidence will be necessary to determine whether the Council is a FACA advisory committee"). For example, directives, instructions, and other communications between Mr. Musk and DOGE, on the one hand, and

20

EPA_00052629

agencies, on the other, will provide information relevant to Plaintiffs' claims that Mr. Musk and DOGE are acting beyond the scope of any lawful authority and that Mr. Musk is exercising significant authority in the federal government in violation of the Appointments Clause.

Further, as another judge within this district recently held in a case alleging that the Postal Service acted beyond its authority under the Postal Reorganization Act of 1970, "in at least some *ultra vires* review cases, discovery will be appropriate." *Nat'l Ass'n of Postal Supervisors*, No. 1:19-CV-2236-RCL, 2023 WL 5221367, at *6. And even if this *were* an ordinary APA case (which it is not), discovery would still be available. Courts, including within this circuit, have recognized that discovery in APA cases is appropriate to "enable judicial review to become effective." *Calloway v. Harvey*, 590 F. Supp. 2d 29, 38 (D.D.C. 2008); *see also, e.g.*, *Texas v. United States Dep't of Homeland Sec.*, 123 F.4th 186, 194 (5th Cir. 2024) (describing how district court granted expedited discovery, leading to "thousands of pages of evidence," in support of evaluation of a motion for preliminary injunction including APA, ultra vires, and other claims). Finally, Plaintiffs do not bring an APA claim as to Defendants Musk, DOGE, and Gleason, so at minimum—even if Agency Defendants had furnished a record supporting their decisions (which they have not)— discovery would still be appropriate to aid in evaluation of Plaintiffs' claims against these Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for expedited discovery.

21

Date:   March 10, 2025                                    Respectfully submitted,

                                                          /s/ Bruce V. Spiva
Gloria D. Smith**                                         Bruce V. Spiva (DC Bar No. 443754)
Sanjay Narayan**                                          Kathryn Huddleston**
SIERRA CLUB ENVIRONMENTAL LAW                             Daniel S. Lenz***
PROGRAM                                                   Robert Brent Ferguson (DC Bar No. 1782289)*
2101 Webster Street, Suite 1300                           Katherine Hamilton (DC Bar No. 90006168)*
Oakland, CA 94612                                         Heather Szilagyi (DC Bar No. 90006787)
(415) 977-5532                                            Rachel Appel (DC Bar No. 90017750)
gloria.smith@sierraclub.org                               CAMPAIGN LEGAL CENTER
sanjay.narayan@sierraclub.org                             1101 14th St. NW, Suite 400
                                                          Washington, D.C. 20005
*Counsel for Plaintiff Sierra Club*                       (202) 736-2200
                                                          bspiva@campaignlegalcenter.org
                                                          khuddleston@campaignlegalcenter.org
                                                          dlenz@campaignlegalcenter.org
                                                          bferguson@campaignlegalcenter.org
                                                          khamilton@campaignlegalcenter.org
                                                          hszilagyi@campaignlegalcenter.org
                                                          rappel@campaignlegalcenter.org

                                                          *Counsel for Plaintiffs Japanese American
                                                          Citizens League, OCA-Asian Pacific American
                                                          Advocates, Sierra Club, and Union of Concerned
                                                          Scientists*


                                                          * D.D.C. application pending
                                                          **Application for pro hac vice forthcoming
                                                          ***Admitted pro hac vice

22

EPA_00052631

Message

---

**From:**       Kohn, Jeffrey [Kohn.Jeffrey@epa.gov]
**Sent:**       2/10/2025 3:56:53 PM
**To:**         Ward, Prentiss [Ward.Prentiss@epa.gov]; Regional P2 Coordinators [RegionalP2Coordinators@epa.gov]; OPPT SPRKD Managers [OPPT-SPRKD-Managers@epa.gov]
**CC:**         Davies, Clive [Davies.Clive@epa.gov]; Williamson, Anahita [Williamson.Anahita@epa.gov]; Binder, Kelsey [Binder.Kelsey@epa.gov]; Clapp, Brian [Clapp.Brian@epa.gov]
**Subject:**    RE: Please pause all P2 grant awards

Hi All,

My understanding is this guidance is for new awards only.

Thanks,
Jeff

---

**From:** Ward, Prentiss <Ward.Prentiss@epa.gov>
**Sent:** Monday, February 10, 2025 10:34 AM
**To:** Kohn, Jeffrey <Kohn.Jeffrey@epa.gov>; Regional P2 Coordinators <RegionalP2Coordinators@epa.gov>; OPPT SPRKD Managers <OPPT-SPRKD-Managers@epa.gov>
**Cc:** Davies, Clive <Davies.Clive@epa.gov>; Williamson, Anahita <Williamson.Anahita@epa.gov>; Binder, Kelsey <Binder.Kelsey@epa.gov>; Clapp, Brian <Clapp.Brian@epa.gov>
**Subject:** RE: Please pause all P2 grant awards

Good morning Jeff,

Thanks for the update.  Does this include incremental funding too?

Prentiss

---

**From:** Kohn, Jeffrey <Kohn.Jeffrey@epa.gov>
**Sent:** Monday, February 10, 2025 10:20 AM
**To:** Regional P2 Coordinators <RegionalP2Coordinators@epa.gov>; OPPT SPRKD Managers <OPPT-SPRKD-Managers@epa.gov>
**Cc:** Davies, Clive <Davies.Clive@epa.gov>; Williamson, Anahita <Williamson.Anahita@epa.gov>; Binder, Kelsey <Binder.Kelsey@epa.gov>; Clapp, Brian <Clapp.Brian@epa.gov>
**Subject:** Please pause all P2 grant awards

P2 Managers and Coordinators,

We have been asked by our leadership to pause BIL, P2 and SRA grant awards.  We hope to have more information for you in the next few days.

Thank you,
Jeff

Jeff Kohn, Branch Supervisor
Pollution Prevention Grants Branch
Sustainability, Prevention, and Right-to-Know Division
Office of Pollution Prevention and Toxics
(202) 566-1407



## THE CHIEF FINANCIAL OFFICER

WASHINGTON, D.C. 20460

January 27, 2025

## CUI//SP-BUDG

**MEMORANDUM**

**SUBJECT:**   Inflation Reduction Act and Infrastructure Investment and Jobs Act Funding Action
Pause

**FROM:**      Gregg Treml, Chief Financial Officer (Acting)

GREGG TREML

Digitally signed by
GREGG TREML
Date: 2025.01.27
16:59:02 -05'00'

**TO:**        Deputy Assistant Administrators
Deputy Associate Administrators
Deputy Regional Administrators

This message is being provided based on instruction from OMB.

In accordance with the Executive Order *Unleashing American Energy,* unobligated funds (including
unobligated commitments) appropriated by the Inflation Reduction Act of 2022 (P.L. 117-169) and the
Infrastructure Investment and Jobs Act (P.L. 117-58) are paused. Pursuant to this pause, the Compass
financial system will temporarily not allow obligations to be made in these lines of accounting. EPA is in
discussions with the Office of Management and Budget on the continuation of payroll in IIJA and IRA.

Additionally, all disbursements for unliquidated obligations funded by any line of accounting including
funds appropriated by the Inflation Reduction Act of 2022 (P.L. 117-169) and the Infrastructure
Investment and Jobs Act (P.L. 117-58), are paused. Additional details on the pause in disbursements
will be provided separately by the Office of the Controller.

This pause will allow for the review of processes, policies and programs as required by Section 7 of the
Order.

All related actions, including new contract, grant, rebate and interagency actions, to include
drawdowns, for IIJA and IRA are paused. Offices are not to put IIJA or IRA lines of accounting on any
actions and all current actions are paused. Further, no IIJA or IRA funded travel is permissible at this
time and all upcoming travel funded from either should be cancelled.

EPA_00052690

A process has been established at OMB for their review and approval of obligations and disbursements based on the Order. We will continue to update the community. We appreciate your work to ensure compliance with the Order.

cc: Lek Kadeli
    Meshell Jones-Peeler
    Paige Hanson
    Senior Resource Officials
    Senior Budget Officers
    Regional Comptrollers
    Funds Control Officers

# Controlled by U.S. Environmental Protection Agency

EPA_00052691



## THE CHIEF FINANCIAL OFFICER

### WASHINGTON, D.C. 20460

February 4, 2025

**MEMORANDUM**

**SUBJECT:**    Update on Inflation Reduction Act and Infrastructure Investment and Jobs Act Pause

**FROM:**    Gregg Treml, Chief Financial Officer (Acting)

GREGG TREML    Digitally signed by GREGG TREML
Date: 2025.02.04 12:53:31 -05'00'

**TO:**    Deputy Assistant Administrators
Deputy Associate Administrators
Deputy Regional Administrators

Distribute as appropriate to those needed to carry out this direction.

This message provides an update pursuant to the recent Court directive addressing financial assistance. The Court directs that federal financial assistance shall not be paused based on the Office of Management and Budget's direction in the rescinded OMB memorandum or the President's Executive Orders, while ongoing litigation proceeds or until otherwise directed by a Court.

Consistent with the Order, the agency's financial system will now enable the obligation of financial assistance. This includes programs within the Infrastructure Investment and Jobs Act and the Inflation Reduction Act, including federal financial assistance in the State and Tribal Assistance Grants, Brownfields, and Superfund. The Office of Budget will follow-up with a detailed list. Additionally, the disbursement of funds connected to this notice will continue.

OCFO, working closely with the Office of General Counsel and Office of Mission Support, will continue to keep the community updated on this matter.


cc:  Lek Kadeli
Meshell Jones-Peeler
Paige Hanson
OCFO Senior Managers
Vonda Jennette
Greg Luebbering
Senior Resource Officials
Senior Budget Officers

EPA_00052740

Regional Comptrollers
Funds Control Officers

2

EPA_00052741

**This document is produced in native format.**

**Original file name:**

**List of Sections.xlsx**

EPA_00052742 - EPA_00052743

Message

---

**From:**        Christopher, Katherine [Christopher.Katherine@epa.gov]
**Sent:**        2/19/2025 6:02:00 PM
**To:**          Askew, Wendel [Askew.Wendel@epa.gov]
**CC:**          Holden, Allison [Holden.Allison@epa.gov]
**Subject:**     FW: Additional Information on IIJA and IRA - program review pause
**Attachments:** image001.png

Hi Wendel,

Following up on our discussion yesterday, please note that it appears that GGRF funds, including Solar For All, remain frozen.

Thanks,

**Katherine L. Christopher** (she/her)
Attorney-Advisor
Civil Rights & Finance Law Office
Office of General Counsel
U.S. Environmental Protection Agency
Office: (202) 564-0339
Mobile: (612) 723-2295
Christopher.Katherine@epa.gov

---

**From:** Shah, Monisha <Shah.Monisha@epa.gov>
**Sent:** Wednesday, February 19, 2025 12:46 PM
**To:** Christopher, Katherine <Christopher.Katherine@epa.gov>
**Subject:** FW: Additional Information on IIJA and IRA - program review pause

FYI

---

**From:** Zavala, Julie <Zavala.Julie@epa.gov>
**Sent:** Thursday, February 13, 2025 3:55 PM
**To:** OGGRF-IO <OGGRF-IO@epa.gov>
**Subject:** FW: Additional Information on IIJA and IRA - program review pause

IO--FYI

---

**From:** Harvey, Luby <Harvey.Luby@epa.gov>
**Sent:** Thursday, February 13, 2025 3:41 PM
**To:** AO Staff Office Directors and AA's <AO_Staff_Office_Directors_and_AAs@epa.gov>
**Subject:** Fw: Additional Information on IIJA and IRA - program review pause

FYSA

Best regards,

**Luby Harvey, MBA, MPA, CGFM**
Assistant Director and Senior Budget Officer (Acting)
Resource Management Staff (RMS)
Office of Administrative and Executive Services (OAES)
Office of the Administrator (AO)

U.S. Environmental Protection Agency
1200 Pennsylvania Avenue NW | Room 4509-B WJCN | Washington, DC 20460
Office: (202) 566-0923 | Work Cell: (202) 909-8637
Email: Harvey.Luby@epa.gov

*Please note that I sent this email at a time that was convenient for me without expectation for a response outside of business hours. If you receive this email outside of your normal working hours, please know that I do not expect a response until you are back at work during your normal hours.*

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Thursday, February 13, 2025 3:31 PM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>; Leadership_Deputy_Regional_Administrators <Leadership_Deputy_Regional_Administrators@epa.gov>; Leadership_Deputy_Assistant_Administrators <Leadership_Deputy_Assistant_Administrators@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; Henry, Latonya <Henry.Latonya@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>; Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>; Lane, Gary <Lane.Gary@epa.gov>; Robinson, Angel <robinson.angel@epa.gov>; Katz, Brian <Katz.Brian@epa.gov>; Cardenas, Andrew <Cardenas.Andrew@epa.gov>; Li, Sylvana <li.sylvana@epa.gov>; Beg, Gul <Beg.Gul@epa.gov>; Cottrill, Edward <Cottrill.Edward@epa.gov>; Hurley, Kevin <Hurley.Kevin@epa.gov>; Humes, Hamilton <Humes.Hamilton@epa.gov>; Wang, Lili <Wang.Lili@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA - program review pause

Sharing another update as the program review proceeds.

Obligations from EPA already made as of 3 PM EST today can be released for payment. The agency will continue robust oversight of these funds and take appropriate action if any of them are found to be used outside of the terms and conditions of their agreements.

Note this excludes the Greenhouse Gas Reduction Fund.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 6:04 PM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support

EPA_00052749

Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; Henry, Latonya <Henry.Latonya@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>; Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>; Lane, Gary <Lane.Gary@epa.gov>; Robinson, Angel <robinson.angel@epa.gov>; Boyd, Wyatt <Boyd.Wyatt@epa.gov>; Katz, Brian <Katz.Brian@epa.gov>; Cardenas, Andrew <Cardenas.Andrew@epa.gov>; Li, Sylvana <li.sylvana@epa.gov>; Beg, Gul <Beg.Gul@epa.gov>; Cottrill, Edward <Cottrill.Edward@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA - program review pause

Pursuant to the review of financial assistance programs announced by the Acting Deputy Administrator on February 6, the following accounts are temporarily paused for new obligations or disbursements for assistance agreements, loans, rebates, interagency agreements, procurements, and no-cost actions pending a review for compliance with applicable administrative rules and policies.

Air Quality Sensors in Low Income and Disadvantaged Communities (OAR) (STAG)
Clean Heavy-Duty Vehicles (OAR) (STAG)
Clean Heavy-Duty Vehicles in Nonattainment Areas (OAR) (STAG)
Clean School Bus Program (STAG)
Competitive Grants (OAR) (STAG)
Diesel Emissions Reductions (OAR) (STAG)
Emissions from Wood Heaters (OAR/ORD) (STAG)
Environmental and Climate Justice Block Grants – Technical Assistance (OEJECR)
Environmental and Climate Justice Block Grants (OEJECR)
Environmental Product Declaration Assistance (OCSPP/ORD/OAR)
Fenceline Air Monitoring and Screening Air Monitoring (OAR/ORD) (STAG)
Funding for the Implementation of the American Innovation and Manufacturing Act (OAR)
Funding for Section 211 of the Clean Air Act – Advanced Biofuels (OAR)
GHG Air Pollution Implementation Grants (OAR) (STAG)
GHG and Zero Emission Standards for Mobile Sources (OAR) (STAG)
GHG Pollution Planning Grants (OAR) (STAG)
Grants to Reduce Air Pollution at Ports (OAR) (STAG)
Grants to Reduce Air Pollution at Ports in Nonattainment Areas (OAR) (STAG)
Greenhouse Gas Corporate Reporting (OAR) (STAG)
Greenhouse Gas Reduction Fund – General Assistance (OA) (STAG)
Greenhouse Gas Reduction Fund – Low Income and Disadvantaged Communities (OA) (STAG)
Greenhouse Gas Reduction Fund – Zero Emision Technologies (OA) (STAG)
Implementation / Accountability (OAR)
Implementation and Compliance (OECA)
Industry Outreach (OAR)
Low Embodied Carbon Labeling for Construction Materials for Transportation Methane Monitoring (OCSPP/OAR/ORD)
Multipollutant Monitoring Stations (OAR) (STAG)
State/Tribal/Local Government Outreach (OAR)
Technical Assistance for Low Income Communities (OAR)

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 11:29 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission

Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

We are working expeditiously to carry out the attached and request your assistance where appropriate.

*(excerpt)*

Notwithstanding this directive, any disbursements on open grant awards that were paused due to Office of Management and Budget Memorandum M-25-13 or any Executive Order underlying that Memorandum shall continue to be immediately released, as the Agency initiated on February 3, 2025.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Wednesday, February 5, 2025 11:00 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

Clarifying the compound sentence in the original message.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for:
• federal financial assistance;
• Superfund;
• and the accounts (originally) attached.

Note that thousands of accounts are involved and this is a manual process.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Tuesday, February 4, 2025 1:46 PM
**To:** OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors

<Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors
<Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB
<Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>;
Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee
<Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory
<luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-
duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>;
Holden, Allison <Holden.Allison@epa.gov>
**Subject:** Additional Information on IIJA and IRA
**Importance:** High

This message provides additional detail to the attached message from the Acting Chief Financial Officer.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for all federal financial assistance, including cooperative assistance agreements, all Superfund, and the accounts attached.

We will continue to keep the community updated as we implement Orders. Please note that effectuation in agency systems is occurring and requires sequencing.

*Please share this information within EPA as necessary to execute.*

EPA_00052752

Notwithstanding this directive, any disbursements on open grant awards that were paused due to Office of Management and Budget Memorandum M-25-13 or any Executive Order underlying that Memorandum shall continue to be immediately released, as the Agency initiated on February 3, 2025.

EPA_00052753

Message

---

**From:**      Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov]
**Sent:**      2/21/2025 5:48:52 PM
**To:**        Holden, Allison [Holden.Allison@epa.gov]
**Subject:**   FW: Guidance on IIJA/ IRA Funded Programs (draft)

Angelia Talbert-Duarte
Associate General Counsel
Civil Rights and Finance Law Office
U.S. Environmental Protection Agency
Phone – (202) 564-8158
Fax – (202) 564-5432

*Please note that I may have sent this communication outside regular business hours.  If you receive this email outside of your normal working hours, please know that I do not expect a response until you are back at work during your normal hours.*

---

**From:** Packard, Elise <Packard.Elise@epa.gov>
**Sent:** Friday, February 21, 2025 12:23 PM
**To:** Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>
**Subject:** FW: Guidance on IIJA/ IRA Funded Programs (draft)

I think this is where the confusion came from.

Elise B. Packard
Deputy General Counsel for Operations
Office of General Counsel
U.S. Environmental Protection Agency
(202) 564-7729

---

**From:** Coogan, Daniel <Coogan.Daniel@epa.gov>
**Sent:** Friday, February 21, 2025 11:32 AM
**To:** OCFO-SROs <OCFO_SROs@epa.gov>
**Cc:** Patrick, Kimberly <Patrick.Kimberly@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Wise, Melissa <wise.melissa@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>
**Subject:** Guidance on IIJA/ IRA Funded Programs (draft)

SROs, we met with leadership to get clearance on the following, which will help streamline the grants process and allow us to continue critical oversight activity to ensure compliance with terms and conditions for EPA assistance agreements. With the exception of the Greenhouse Gas Reduction Fund, IIJA- and IRA-funded assistance agreements awarded prior to 3pm EST on February 13, 2025, can continue to fully operate. This includes:

- Drawing down resources in ASAP
- Engagement with recipients
- Oversight activities (transaction testing, post-award oversight, management review, etc)
- Training to ensure compliance with terms and conditions and to avoid potential for waste, fraud, and abuse.

Further, IIJA and IRA contract funding is allowed for new awards to support oversight activities and to fund IT systems and applications necessary to conduct oversight activities and to closeout grants.

For grant programs listed in OCFO's February 7 guidance, there should not be any engagement with recipients related to new awards or new assistance agreement activity beyond that which was obligated prior to 3pm EST on February 13, 2025, as OMS and OCFO work to implement compliance and oversight reviews for those programs. Please let me know if you have any questions.

Dan

EPA_00052769

Appointment

---

| | |
|---|---|
| **From**: | Coogan, Daniel [Coogan.Daniel@epa.gov] |
| **Sent**: | 1/21/2025 3:41:50 PM |
| **To**: | Coogan, Daniel [Coogan.Daniel@epa.gov]; Jones-Peeler, Meshell [Jones-Peeler.Meshell@epa.gov]; Gulamali, Adil [Gulamali.Adil@epa.gov]; Wise, Melissa [wise.melissa@epa.gov]; Humes, Hamilton (he/him/his) [Humes.Hamilton@epa.gov]; Packard, Elise [Packard.Elise@epa.gov]; Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov]; Holden, Allison (she/her/hers) [Holden.Allison@epa.gov]; Boyd, Wyatt [Boyd.Wyatt@epa.gov] |
| **CC**: | Kenealy, Timi (she/her/hers) [Kenealy.Timi@epa.gov] |
| | |
| **Subject**: | Coordinating on EO Implementation |
| **Location**: | Microsoft Teams Meeting |
| | |
| **Start**: | 1/21/2025 5:15:00 PM |
| **End**: | 1/21/2025 5:30:00 PM |
| **Show Time As**: | Busy |

| | |
|---|---|
| **Required Attendees**: | Coogan, Daniel; Jones-Peeler, Meshell; Gulamali, Adil; Wise, Melissa; Humes, Hamilton (he/him/his); Packard, Elise; Talbert-Duarte, Angelia; Holden, Allison (she/her/hers); Boyd, Wyatt |
| **Optional Attendees**: | Kenealy, Timi (she/her/hers) |

We're meeting to discuss how to implement the EO on Unleashing American Energy as it relates to IRA funding on grants and contracts. Sharing in case anyone from OGC can join.

-----Original Appointment-----
**From:** Coogan, Daniel
**Sent:** Tuesday, January 21, 2025 9:55 AM
**To:** Coogan, Daniel; Jones-Peeler, Meshell; Gulamali, Adil; Wise, Melissa; Humes, Hamilton (he/him/his)
**Subject:** Coordinating on EO Implementation
**When:** Tuesday, January 21, 2025 12:15 PM-12:30 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Microsoft Teams Meeting

The EO on Unleashing American Energy states: "Terminating the Green New Deal.  (a)  All agencies shall immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58), including but not limited to funds for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program and the Charging and Fueling Infrastructure Discretionary Grant Program, and shall review their processes, policies, and programs for issuing grants, loans, contracts, or any other financial disbursements of such appropriated funds for consistency with the law and the policy outlined in section 2 of this order.  Within 90 days of the date of this order, all agency heads shall submit a report to the Director of the NEC and Director of OMB that details the findings of this review, including recommendations to enhance their alignment with the policy set forth in section 2.  No funds identified in this subsection (a) shall be disbursed by a given agency until the Director of OMB and Assistant to the President for Economic Policy have determined that such disbursements are consistent with any review recommendations they have chosen to adopt."

Just want to have a quick check-in on how we plan to manage it.

---

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 286 680 270 850

Passcode: bc9VA6fV

---

**Dial in by phone**

+1 202-991-0477,,955859034# United States, Washington

Find a local number

Phone conference ID: 955 859 034#

**Join on a video conferencing device**

Tenant key: sip:teams@video.epa.gov

Video ID: 113 214 349 4

More info

For organizers: Meeting options | Reset dial-in PIN

This meeting may be recorded. If the meeting is recorded, it will be announced via a banner showing "this meeting is being recorded." Participation in a recorded meeting will be deemed as consent to be recorded. Meeting recordings may be official agency records subject to appropriate policy, rules and regulations.

---

EPA_00052771

Appointment

| | |
|---|---|
| **From:** | Holden, Allison (she/her/hers) [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=af62e0fece97474faf19eddc577246de-Holden, Allison] |
| on behalf of | Holden, Allison (she/her/hers) [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=AF62E0FECE97474FAF19EDDC577246DE-HOLDEN, ALLISON] |
| **Sent:** | 1/22/2025 1:42:58 PM |
| **To:** | Holden, Allison (she/her/hers) [Holden.Allison@epa.gov]; Pavlik, Mary E [Mary.E.Pavlik@hud.gov] |

| | |
|---|---|
| **Subject:** | Time for Consult tomorrow? |
| **Attachments:** | USG guidance Unleashing American Energy.pdf |
| **Location:** | Microsoft Teams Meeting |

| | |
|---|---|
| **Start:** | 1/22/2025 4:05:00 PM |
| **End:** | 1/22/2025 4:30:00 PM |
| **Show Time As:** | Busy |

| | |
|---|---|
| **Required Attendees:** | Pavlik, Mary E |

How's this? Also see attached

---

# Microsoft Teams [Need help?](#)

## [Join the meeting now](#)

Meeting ID: 241 960 098 457

Passcode: 6zk3dK6B

---

### Dial in by phone

[+1 202-991-0477,,492606976#](#) United States, Washington

[Find a local number](#)

Phone conference ID: 492 606 976#

### Join on a video conferencing device

Tenant key: sip:teams@video.epa.gov

Video ID: 117 014 334 9

[More info](#)

For organizers: [Meeting options](#) | [Reset dial-in PIN](#)

This meeting may be recorded. If the meeting is recorded, it will be announced via a banner showing "this meeting is being recorded." Participation in a recorded meeting will be deemed as consent to be recorded. Meeting recordings may be official agency records subject to appropriate policy, rules and regulations.

**From:** Pavlik, Mary E <Mary.E.Pavlik@hud.gov>
**Sent:** Tuesday, January 21, 2025 9:25 PM
**To:** Holden, Allison (she/her/hers) <Holden.Allison@epa.gov>
**Subject:** Time for Consult tomorrow?

**Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Get Outlook for iOS

EPA_00052773



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

January 21, 2025

M-25-11

MEMORANDUM TO THE HEADS OF DEPARTMENTS AND AGENCIES

FROM:        Matthew J. Vaeth, Acting Director, Office of Management and Budget

Kevin Hassett, Assistant to the President for Economic Policy and Director of the National Economic Council

SUBJECT:     Guidance Regarding Section 7 of the Executive Order *Unleashing American Energy*

The directive in section 7 of the Executive Order entitled *Unleashing American Energy* requires agencies to immediately pause disbursement of funds appropriated under the Inflation Reduction Act of 2022 (Public Law 117-169) or the Infrastructure Investment and Jobs Act (Public Law 117-58).  This pause only applies to funds supporting programs, projects, or activities that may be implicated by the policy established in Section 2 of the order. This interpretation is consistent with section 7's heading ("Terminating the Green New Deal") and its reference to the "law and the policy outlined in section 2 of th[e] order."

For the purposes of implementing section 7 of the Order, funds supporting the "Green New Deal" refer to any appropriations for objectives that contravene the policies established in section 2.  Agency heads may disburse funds as they deem necessary after consulting with the Office of Management and Budget.

Appointment

| | |
|---|---|
| **From**: | Holden, Allison [/o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=af62e0fece97474faf19eddc577246de-Holden, Allison] |
| on behalf of | Holden, Allison [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=AF62E0FECE97474FAF19EDDC577246DE-HOLDEN, ALLISON] |
| **Sent**: | 3/11/2025 1:56:17 PM |

**Subject**: FOIA Req: 2025-EPA-03254 - EO and NCIF/SFA/EJ Grants - OGC CRFLO Equity
**Attachments**: FOIA Req: 2025-EPA-03254 - EO and NCIF/SFA/EJ Grants - OGC CRFLO Equity

**Start**: 3/12/2025 4:00:00 PM
**End**: 3/12/2025 5:00:00 PM
**Show Time As**: Busy


**Recurrence**: (none)

**Required Attendees**: Holden, Allison

EPA_00052775

Message

**From:** Romano, Justin [romano.justin@epa.gov]
**Sent:** 3/11/2025 1:36:33 PM
**To:** Holden, Allison [Holden.Allison@epa.gov]
**CC:** Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov]; Goerke, Ariadne [Goerke.Ariadne@epa.gov]
**Subject:** FOIA Req: 2025-EPA-03254 - EO and NCIF/SFA/EJ Grants - OGC CRFLO Equity
**Attachments:** Pages from RR_ 2025-EPA-03254_Transparent_OGCCRFLO.pdf

**Flag:** Follow up

Hi Allison,

I see Ariadne's out of office message so sending this equity review to your attention. Attached are 18 pages of records I'm submitting for OGC equity review that are responsive to the below copied FOIA request assigned to AO. Please let me know if you have any questions at all. If you could have your consult back by the end of next week that would be great. Thank you so much for your time.

Justin

2025-EPA-03254 – Ann Brown, Center for Biological Diversity

As background, as of January 20, 2025, the U.S. Environmental Protection Agency ("EPA" was administering several Greenhouse Gas Reduction Fund programs, including the "National Clean Investment Fund," "Solar for All," the "Clean Communities Investment Accelerator," the "Environmental and Climate Justice Community Change Grants program," the "Environmental Justice Thriving Communities Grantmaking Program," and "Environmental Justice Collaborative Problem-Solving Cooperative Agreement Program."

On January 20, 2025, President Trump issued an Executive Order ("EO") requiring agencies, "to the maximum extent allowed by law," to terminate all equity-related programs. On January, 27, 2025, the Office of Management and Budget issued a Memorandum ("Memorandum") prohibiting agencies from continuing to fund certain activities, including those related to "the green new deal." A subsequently issued spreadsheet suggests the Greenhouse Gas Reduction Fund is such a covered activity, but the Memorandum was subsequently rescinded.

Specifically, the Center requests from EPA from January 20, 2025 to the date EPA conducts this search, the records, including communications with non-federal employees*, created or obtained by EPA that discuss either:

1.      The extent to which the aforementioned programs listed above are implicated by the January 20, 2025 EO or January 27, 2025 Memorandum; and/or

2.      How these programs will proceed in light of the EO and Memorandum.

*Please note: The Center requests that EPA start its search with the Office of the Administrator, Office of the Greenhouse Gas Reduction Fund (OGGRF), General Counsel, and Inspector General.


Justin Romano
Attorney-Adviser for the Office of Information Access
Office of the Executive Secretariat
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW (2336K)
Washington, D.C. 20460
(202) 564-1439

Appointment

**From:**         Holden, Allison [Holden.Allison@epa.gov]
**Sent:**         3/24/2025 3:02:38 PM

**Subject:**     EJ Grant Pause
**Location:**    Microsoft Teams Meeting

**Start:**        3/24/2025 5:00:00 PM
**End:**          3/24/2025 5:30:00 PM
**Show Time As:** Busy

**Recurrence:**   (none)

Message

| | |
|---|---|
| **From:** | Holden, Allison [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=AF62E0FECE97474FAF19EDDC577246DE-HOLDEN, ALLISON] |
| **Sent:** | 2/4/2025 7:58:58 PM |
| **To:** | Coogan, Daniel [Coogan.Daniel@epa.gov] |
| **Subject:** | Holden, Allison left a comment in "OMS-OCFO_Action_Tracker" |

-->

-->

 **OMS-OCFO_Action_Tracker.docx**



 **Holden, Allison** added a comment

Go to comment

Why am I receiving this notification from Office?

Notification Settings



Privacy Statement

This email is generated through Environmental Protection Agency (EPA)'s use of Microsoft 365 and may contain content that is controlled by Environmental Protection Agency (EPA).

| programmatic review | Pending programmatic review | | | | |
|---|---|---|---|---|---|
| **Climate: Disburse/ Expend** | Pending programmatic review | Pending programmatic review | Pending programmatic review | Pending programmatic review | Pending programmatic review |
| **DEIA: Award** | N/A | N/A | N/A | N/A | Cancelled |
| **DEIA: Disburse/ Expend** | N/A | N/A | N/A | N/A | Cancelled |
| **EJ (non-IIJA/ IRA): Award** | Pending programmatic review | Pending programmatic review | N/A | N/A | Pending programmatic review |
| **EJ (non-IIJA/ IRA): Disburse/ Expend** | Allowed once ASAP lifted | Allowed once ASAP lifted | N/A | N/A | Allowed once ASAP lifted |
| **Gender: Award** | N/A | N/A | N/A | N/A | Cancelled |
| **Gender: Disburse/ Expend** | N/A | N/A | N/A | N/A | Cancelled |
| **IIJA/ IRA*: Award** | Pending programmatic review | Pending programmatic review | Pending programmatic review | Pending programmatic review | Pending programmatic review |
| **IIJA/ IRA*: Disburse/ Expend** | Pending programmatic review | Allowed | Allowed | Pending programmatic review | Pending programmatic review |

EPA_00052998

Message

| | |
|---|---|
| **From**: | Holden, Allison [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=AF62E0FECE97474FAF19EDDC577246DE-HOLDEN, ALLISON] |
| **Sent**: | 2/5/2025 1:33:29 PM |
| **To**: | Coogan, Daniel [Coogan.Daniel@epa.gov] |
| **Subject**: | Holden, Allison replied to a comment in "OMS-OCFO_Action_Tracker" |

-->

-->



**OMS-OCFO_Action_Tracker.docx**

**Holden, Allison** left a comment

**You** left a comment

**Holden, Allison** replied

Go to comment

Why am I receiving this notification from Office?

Notification Settings



Privacy Statement

This email is generated through Environmental Protection Agency (EPA)'s use of Microsoft 365 and may contain content that is controlled by Environmental Protection Agency (EPA).

| | Funding Mechanism | | | | |
|---|---|---|---|---|---|
| Category | IAs | Grants | Loans | Rebates | Contracts |
| Climate: Award | Pending programmatic review | Pending programmatic review | Pending programmatic review | Pending programmatic review | Pending programmatic review |
| Climate: Disburse/ Expend | Pending programmatic review | Pending programmatic review | Pending programmatic review | Pending programmatic review | Pending programmatic review |
| DEIA: Award | N/A | N/A | N/A | N/A | Cancelled |
| DEIA: Disburse/ Expend | N/A | N/A | N/A | N/A | Cancelled (except for final invoices) |
| EJ (non-IIJA/ IRA): Award | Pending programmatic review | Pending programmatic review | N/A | N/A | Pending programmatic review |
| EJ (non-IIJA/ IRA): Disburse/ Expend | Pending programmatic review | Allowed once ASAP lifted | N/A | N/A | Pending programmatic review |
| Gender: Award | N/A | N/A | N/A | N/A | Cancelled |
| Gender: Disburse/ Expend | N/A | N/A | N/A | N/A | Cancelled (except for final invoices) |
| IIJA/ IRA*: Award | Pending programmatic review | Pending programmatic review | Pending programmatic review | Pending programmatic review | Pending programmatic review |
| IIJA/ IRA*: Disburse/ Expend | Pending programmatic review | Allowed | Allowed | Pending programmatic review | Pending programmatic review |

EPA_00053010

Message

| | |
|---|---|
| **From:** | Holden, Allison [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=AF62E0FECE97474FAF19EDDC577246DE-HOLDEN, ALLISON] |
| **Sent:** | 2/5/2025 5:20:08 PM |
| **To:** | Kenealy, Timi [Kenealy.Timi@epa.gov]; Askew, Wendel [Askew.Wendel@epa.gov] |
| **CC:** | Goerke, Ariadne [Goerke.Ariadne@epa.gov]; Talbert-Duarte, Angelia [talbert-duarte.angelia@epa.gov]; Sisson, Ann [Sisson.Ann@epa.gov] |
| **Subject:** | RE: Memo on TRO re grants |
| **Attachments:** | M-25-13 Temporary Pause to Review Agency Grant Loan and Other Financial Assistance Programs.pdf |

Not surprising. I managed to keep a copy, attached.

------------------------------------------------

Allison Holden
Attorney-Advisor
Civil Rights and Finance Law Office
Office of General Counsel
Environmental Protection Agency
Pronouns: she/her
202-564-3841

---

**From:** Kenealy, Timi <Kenealy.Timi@epa.gov>
**Sent:** Wednesday, February 5, 2025 12:18 PM
**To:** Holden, Allison <Holden.Allison@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>
**Cc:** Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Sisson, Ann <Sisson.Ann@epa.gov>
**Subject:** RE: Memo on TRO re grants

# CUI//PRIVILEGE

Thank you, Allison.  Also, I am not able to find OMB Memo M-25-13.  I did not save/download that one and cannot find it on the White House site.  When I search for it, I get one response, the President's Remarks from Las Vegas.

Timi

Timi Nickerson Kenealy
Assistant General Counsel
Procurement Law Practice Group
Civil Rights and Finance Law Office
U.S. EPA Office of General Counsel
1200 Pennsylvania Avenue, NW (WJCN – 7522C)
Washington, DC  20460
202-565-2066

**Attorney-Client Privileged; Pre-Decisional/Deliberative:**
**For Internal EPA Use Only/Do Not Share Outside EPA**

EPA_00053017

## Controlled by U.S. Environmental Protection Agency

**From:** Holden, Allison <Holden.Allison@epa.gov>
**Sent:** Wednesday, February 5, 2025 12:04 PM
**To:** Askew, Wendel <Askew.Wendel@epa.gov>; Kenealy, Timi <Kenealy.Timi@epa.gov>
**Cc:** Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Sisson, Ann <Sisson.Ann@epa.gov>
**Subject:** RE: Memo on TRO re grants

# CUI//PRIVILEGE

And here's a summary of the two cases, a link to the dockets, and the operative TROs. Including Ariadne Ann & Angie so we all have this in one place.

- *State of New York et al. v. Trump et al*., 1:25cv39 (D. RI). On January 28, 2025 a coalition of twenty-two states and the District of Columbia, lead by the Attorney General of Rhode Island, filed suit in the U.S. District Court for the District of Rhode Island seeking declaratory and injunctive relief and vacatur under the Administrative Procedure Act with respect to OMB Memo M-25-13 regarding a pause on federal financial assistance. James Payne, in his official capacity as Acting Administrator, is one of the defendants, along with the heads and acting heads of many other federal departments and agencies. The complaint alleges the pause on federal financial assistance is contrary to law and ultra vires, arbitrary and capricious, and unconstitutional as violating separation of powers principles and the Spending Clause. On January 31, 2025, the Court granted a temporary restraining order.

- *National Council of Nonprofits et al. v. Office Of Management and Budget et al*., 1:25cv239 (D.D.C.). On January 28, 2025, a coalition of non-profits filed suit in the U.S. District Court for the District of Columbia against the OMB and Matthew Vaeth in his official capacity as Acting Director. The Complaint alleges that OMB Memo M-25-13 regarding a pause on federal financial assistance (i) violates the Administrative Procedure Act because it is arbitrary and capricious, (ii) violates the Administrative Procedures Act because it is in excess of the OMB's statutory authority, and (iii) violates the First Amendment of the Constitution because its conditions to the receipt of federal funding burden political speech and association rights and discriminate based on viewpoint. On January 28, 2025, Judge Loren AliKhan granted the Plaintiffs an administrative stay lasting until Monday, February 3 to allow for briefing on the matter of a temporary restraining order and a motion to dismiss by the government. After briefing, On February 3, 2025, the Court granted the temporary restraining order and denied the government's motion to dismiss.

-----------------------------------------------
Allison Holden
Attorney-Advisor
Civil Rights and Finance Law Office
Office of General Counsel
Environmental Protection Agency
Pronouns: she/her
202-564-3841

# Controlled by U.S. Environmental Protection Agency

**From:** Askew, Wendel <Askew.Wendel@epa.gov>
**Sent:** Wednesday, February 5, 2025 11:58 AM
**To:** Kenealy, Timi <Kenealy.Timi@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Memo on TRO re grants

Attached is the DOJ email providing their interpretation of the Order from Friday.

Wendel J. Askew
Assistant General Counsel for Financial Assistance Law
Civil Rights and Finance Law Office
Office of General Counsel
US Environmental Protection Agency
Mail Code 2399A
202-564-3987
7454H WJCN


**From:** Kenealy, Timi <Kenealy.Timi@epa.gov>
**Sent:** Wednesday, February 5, 2025 11:41 AM
**To:** Holden, Allison <Holden.Allison@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>
**Subject:** Memo on TRO re grants

I s there a memo on the interpretation of the TRO from the RI court  I can see?  I want to be sure we in PLPG do not say something inconsistent with it.

Also, I think I have heard about more than one TRO floating around – can someone send me other TROs if there are any?  Also, are there other memos related to those TROs that I also can have?

Thanks,
Timi

Timi Nickerson Kenealy
Assistant General Counsel
Procurement Law Practice Group
Civil Rights and Finance Law Office
U.S. EPA Office of General Counsel
1200 Pennsylvania Avenue, NW (WJCN – 7522C)
Washington, DC  20460
202-565-2066

**Attorney-Client Privileged; Pre-Decisional/Deliberative:**
**For Internal EPA Use Only/Do Not Share Outside EPA**

EPA_00053019



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

January 27, 2025

M-25-13

MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES

FROM:      Matthew J. Vaeth, Acting Director, Office of Management and Budget

SUBJECT:   Temporary Pause of Agency Grant, Loan, and Other Financial Assistance
           Programs

The American people elected Donald J. Trump to be President of the United States and gave him a mandate to increase the impact of every federal taxpayer dollar. In Fiscal Year 2024, of the nearly $10 trillion that the Federal Government spent, more than $3 trillion was Federal financial assistance, such as grants and loans. Career and political appointees in the Executive Branch have a duty to align Federal spending and action with the will of the American people as expressed through Presidential priorities. Financial assistance should be dedicated to advancing Administration priorities, focusing taxpayer dollars to advance a stronger and safer America, eliminating the financial burden of inflation for citizens, unleashing American energy and manufacturing, ending "wokeness" and the weaponization of government, promoting efficiency in government, and Making America Healthy Again. The use of Federal resources to advance Marxist equity, transgenderism, and green new deal social engineering policies is a waste of taxpayer dollars that does not improve the day-to-day lives of those we serve.

This memorandum requires Federal agencies to identify and review all Federal financial assistance[1] programs and supporting activities consistent with the President's policies and requirements.[2]  For example, during the initial days of his Administration, President Donald J. Trump issued a series of executive orders to protect the American people and safeguard valuable taxpayer resources, including *Protecting the American People Against Invasion* (Jan. 20, 2025), *Reevaluating and Realigning United States Foreign Aid* (Jan. 20, 2025), *Putting America First in International Environmental Agreements* (Jan. 20, 2025), *Unleashing American Energy* (Jan. 20, 2025), *Ending Radical and Wasteful Government DEI Programs and Preferencing* (Jan. 20,

---

[1] 2 CFR 200.1 defines Federal financial assistance to mean "[a]ssistance that recipients or subrecipients receive or administer" in various forms, but this term does not include assistance provided directly to individuals. For the purposes of this memorandum, Federal financial assistance includes: (i) all forms of assistance listed in paragraphs (1) and (2) of the definition of this term at 2 CFR 200.1; and (ii) assistance received or administered by recipients or subrecipients of any type except for assistance received directly by individuals.

[2] Nothing in this memo should be construed to impact Medicare or Social Security benefits.

EPA_00053020

2025), *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (Jan. 20, 2025), and *Enforcing the Hyde Amendment* (Jan. 24, 2025). These executive orders ensure that Federal funds are used to support hardworking American families.

To implement these orders, each agency must complete a comprehensive analysis of all of their Federal financial assistance programs to identify programs, projects, and activities that may be implicated by any of the President's executive orders. In the interim, to the extent permissible under applicable law, Federal agencies **must temporarily pause** all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency activities that may be implicated by the executive orders, including, but not limited to, financial assistance for foreign aid, nongovernmental organizations, DEI, woke gender ideology, and the green new deal.

This temporary pause will provide the Administration time to review agency programs and determine the best uses of the funding for those programs consistent with the law and the President's priorities. The temporary pause will become effective on January 28, 2025, at 5:00 PM. Even before completing their comprehensive analysis, Federal agencies must immediately identify any legally mandated actions or deadlines for assistance programs arising while the pause remains in effect. Federal agencies must report this information to OMB along with an analysis of the requirement. OMB also directs Federal agencies to pause all activities associated with open NOFOs, such as conducting merit review panels.

No later than February 10, 2025, agencies shall submit to OMB detailed information on any programs, projects or activities subject to this pause. Each agency must pause: (i) issuance of new awards; (ii) disbursement of Federal funds under all open awards; and (iii) other relevant agency actions that may be implicated by the executive orders, to the extent permissible by law, until OMB has reviewed and provided guidance to your agency with respect to the information submitted.

OMB may grant exceptions allowing Federal agencies to issue new awards or take other actions on a case-by-case basis. To the extent required by law, Federal agencies may continue taking certain administrative actions, such as closeout of Federal awards (2 CFR 200.344), or recording obligations expressly required by law.

Additionally, agencies must, for each Federal financial assistance program: (i) assign responsibility and oversight to a senior political appointee to ensure Federal financial assistance conforms to Administration priorities; (ii) review currently pending Federal financial assistance announcements to ensure Administration priorities are addressed, and, subject to program statutory authority, modify unpublished Federal financial assistance announcements, withdraw any announcements already published, and, to the extent permissible by law, cancel awards already awarded that are in conflict with Administration priorities, and; (iii) ensure adequate oversight of Federal financial assistance programs and initiate investigations when warranted to identify underperforming recipients, and address identified issues up to and including cancellation of awards.

EPA_00053021