Message

| | |
|---|---|
| **From:** | Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov] |
| **Sent:** | 3/27/2025 5:23:21 PM |
| **To:** | Puglisi, Peter [puglisi.peter@epa.gov] |
| **CC:** | Wise, Melissa [wise.melissa@epa.gov]; Schindel, Phillip [Schindel.Phillip@epa.gov]; Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov] |
| **Subject:** | Terminate Grant #00E03635 - Compass balance not found under 52 - program code change from 5C to 52 |
| **Attachments:** | OMB Form 00E03635-0 original award 5C.pdf; OMB Form 00E03635-1 program code 5C.pdf; OMB Form 00E03635-2 program code change to 52.pdf; OMB Form 00E03635-3 Terminate program code 52.pdf |

Hi Peter,

I noticed Compass did not change the program code from 5C to 52 for FAIN (Grant #) 00E03635. **Please update and change in Compass to match with NGGS for financial search.**

I was able to find the Compass balance when searching for 5C00E03635. Attached is the complete award document for the financial record. Amendment #2 mentioned program code change.

**Screenshot Compass cannot found if search 5200E03635.**



**Screenshot program code change starting amendment #2 from 5C to 52.**

| Edit/View | Awarding Region | Program Code | Grant # | Recipient | Title | Assignee | Grant Specialist | Project Officer | Status | Comments | CRs | Logs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☑ | EPA R5 | 52 - Environmental Justice Government-to-Government (EJG2G) Program - IRA Only Implementation Projects | 00E03635-3 | CTY AA - CITY OF ANN ARBOR | A Model Regional Resilience Network with Resilient Infrastructure | | Cody Kitchens | Katharine Marko | Award Completed | | | ▦ | ✖ |
| ☑ | EPA R5 | 52 - Environmental Justice Government-to-Government (EJG2G) Program - IRA Only Implementation Projects | 00E03635-2 | CTY AA - CITY OF ANN ARBOR | A Model Regional Resilience Network with Resilient Infrastructure | | Cody Kitchens | Katharine Marko | Award Completed | | 2 | ▦ | ✖ |
| ☑ | EPA R5 | 5C - Environmental Justice Government-to-Government (EJG2G) Program - IRA Only | 00E03635-1 | CTY AA - CITY OF ANN ARBOR | A Model Regional Resilience Network with Resilient Infrastructure | | Matthew Mischnick | Olivia Davidson | Award Completed | | 1 | ▦ | ✖ |
| ☑ | EPA R5 | 5C - Environmental Justice Government-to-Government (EJG2G) Program - IRA Only | 00E03635-0 | CTY AA - CITY OF ANN ARBOR | A Model Regional Resilience Network with Resilient Infrastructure | | Matthew Mischnick | Olivia Davidson | Award Completed | 23 | 1 | ▦ | ✖ |

Thank you,

*Kathy Tsing-Choy*
Associate Award Official
OMS-OGD-GMBOD-BOB
202-565-0049 or MS Team
tsing-choy.kathy@epa.gov

"To serve as a leader and supporter, live a balanced life, and to build collaborative relationships among individuals or group members toward a common vision."



Message

| | |
|---|---|
| **From:** | Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov] |
| **Sent:** | 4/1/2025 4:07:51 PM |
| **To:** | Romero, Clarisa [Romero.Clarisa@epa.gov]; Acosta, Savannah [Acosta.Savannah@epa.gov]; Oneil, Walker [Oneil.Walker@epa.gov] |
| **CC:** | Schindel, Phillip [Schindel.Phillip@epa.gov] |
| **Subject:** | FW: Notices of Termination NCIF and CCIA |
| **Attachments:** | Notice of Termination; Notice of Termination; Notice of Termination; Notice of Termination; Notice of Termination; Notice of Termination; Notice of Termination; Notice of Termination |

*Kathy Tsing-Choy*
Associate Award Official
tsing-choy.kathy@epa.gov

---

**From:** Wise, Melissa <wise.melissa@epa.gov>
**Sent:** Wednesday, March 12, 2025 9:35 AM
**To:** Schindel, Phillip <Schindel.Phillip@epa.gov>; Tsing-Choy, Kathy <Tsing-Choy.Kathy@epa.gov>
**Subject:** FW: Notices of Termination

Hi Phil and Kat,

Sharing for awareness.

Melissa

**From:** Zavala, Julie <Zavala.Julie@epa.gov>
**Sent:** Tuesday, March 11, 2025 8:09 PM
**To:** Carpenter, Wesley <Carpenter.Wesley@epa.gov>; Jackson, Terrence <Jackson.Terrence@epa.gov>; Wise, Melissa <wise.melissa@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Cc:** Nowlan, Aileen <Nowlan.Aileen@epa.gov>; Benkeser, Anna <Benkeser.Anna@epa.gov>
**Subject:** FW: Notices of Termination

All,
Acting Deputy Administrator McIntosh sent the attached notices of termination to the NCIF and CCIA grantees earlier this evening.
Julie

Julie Zavala
Acting Director, Office of the Greenhouse Gas Reduction Fund
U.S. Environmental Protection Agency
Mobile: 202-817-0114

Message

| | |
|---|---|
| **From:** | McIntosh, Chad [mcintosh.chad@epa.gov] |
| **Sent:** | 3/11/2025 10:28:26 PM |
| **To:** | pete@nativecdfi.net |
| **CC:** | GGRFoversight [GGRFoversight@epa.gov]; Payne, James (Jim) [payne.james@epa.gov]; Molina, Michael [molina.michael@epa.gov]; Zavala, Julie [Zavala.Julie@epa.gov]; Amidon, Eric [Amidon.Eric@epa.gov] |
| **Subject:** | Notice of Termination |
| **Attachments:** | 2025.03.11 EPA Notice of Termination Native CDFI Network.pdf |

Please see attached. Thank you.


Chad McIntosh, P.E.
Acting Deputy Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
3412 WJC-North  |  Mail Code 1102
Washington, DC  20004
Tel. No. (202) 787-0580
mcintosh.chad@epa.gov

Message

| | |
|---|---|
| **From:** | McIntosh, Chad [mcintosh.chad@epa.gov] |
| **Sent:** | 3/11/2025 10:27:08 PM |
| **To:** | dgambrell@acc1.org |
| **CC:** | GGRFoversight [GGRFoversight@epa.gov]; Payne, James (Jim) [payne.james@epa.gov]; Molina, Michael [molina.michael@epa.gov]; Zavala, Julie [Zavala.Julie@epa.gov]; Amidon, Eric [Amidon.Eric@epa.gov] |
| **Subject:** | Notice of Termination |
| **Attachments:** | 2025.03.11 EPA Notice of Termination Appalachian Community Capital - ACC.pdf |

Please see attached. Thank you.


Chad McIntosh, P.E.
Acting Deputy Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
3412 WJC-North  |  Mail Code 1102
Washington, DC  20004
Tel. No. (202) 787-0580
mcintosh.chad@epa.gov

Message

| | |
|---|---|
| **From:** | McIntosh, Chad [mcintosh.chad@epa.gov] |
| **Sent:** | 3/11/2025 10:26:36 PM |
| **To:** | akirkwood@justiceclimatefund.org |
| **CC:** | GGRFoversight [GGRFoversight@epa.gov]; Payne, James (Jim) [payne.james@epa.gov]; Molina, Michael [molina.michael@epa.gov]; Zavala, Julie [Zavala.Julie@epa.gov]; Amidon, Eric [Amidon.Eric@epa.gov] |
| **Subject:** | Notice of Termination |
| **Attachments:** | 2025.03.11 EPA Notice of Termination Justice Climate Fund - JCF.pdf |

Please see attached. Thank you.


Chad McIntosh, P.E.
Acting Deputy Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
3412 WJC-North | Mail Code 1102
Washington, DC 20004
Tel. No. (202) 787-0580
mcintosh.chad@epa.gov

Message

**From:** McIntosh, Chad [mcintosh.chad@epa.gov]
**Sent:** 3/11/2025 10:25:55 PM
**To:** cmahon@inclusiv.org
**CC:** GGRFoversight [GGRFoversight@epa.gov]; Payne, James (Jim) [payne.james@epa.gov]; Molina, Michael [molina.michael@epa.gov]; Zavala, Julie [Zavala.Julie@epa.gov]; Amidon, Eric [Amidon.Eric@epa.gov]
**Subject:** Notice of Termination
**Attachments:** 2025.03.11 EPA Notice of Termination Inclusiv.pdf

Please see attached. Thank you.

Chad McIntosh, P.E.
Acting Deputy Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
3412 WJC-North | Mail Code 1102
Washington, DC 20004
Tel. No. (202) 787-0580
mcintosh.chad@epa.gov

Message

| | |
|---|---|
| **From:** | McIntosh, Chad [mcintosh.chad@epa.gov] |
| **Sent:** | 3/11/2025 10:25:12 PM |
| **To:** | abell@OFN.org |
| **CC:** | GGRFoversight [GGRFoversight@epa.gov]; Payne, James (Jim) [payne.james@epa.gov]; Molina, Michael [molina.michael@epa.gov]; Zavala, Julie [Zavala.Julie@epa.gov]; Amidon, Eric [Amidon.Eric@epa.gov] |
| **Subject:** | Notice of Termination |
| **Attachments:** | 2025.03.11 EPA Notice of Termination Opportunity Finance Network - OFN.pdf |

Please see attached. Thank you.

Chad McIntosh, P.E.
Acting Deputy Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
3412 WJC-North | Mail Code 1102
Washington, DC 20004
Tel. No. (202) 787-0580
mcintosh.chad@epa.gov

Message

**From**:        McIntosh, Chad [mcintosh.chad@epa.gov]
**Sent**:        3/11/2025 10:24:15 PM
**To**:          tim [tim@powerforwardcommunities.org]
**CC**:          GGRFoversight [GGRFoversight@epa.gov]; Payne, James (Jim) [payne.james@epa.gov]; Molina, Michael
                 [molina.michael@epa.gov]; Zavala, Julie [Zavala.Julie@epa.gov]; Amidon, Eric [Amidon.Eric@epa.gov]
**Subject**:     Notice of Termination
**Attachments**: 2025.03.11 EPA Notice of Termination Power Forward Communities - PFC.pdf


Please see attached. Thank you.


Chad McIntosh, P.E.
Acting Deputy Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
3412 WJC-North  |  Mail Code 1102
Washington, DC  20004
Tel. No. (202) 787-0580
mcintosh.chad@epa.gov

EPA_00143077

Message

---

**From:**        McIntosh, Chad [mcintosh.chad@epa.gov]
**Sent:**        3/11/2025 10:23:15 PM
**To:**          eli@coalitionforgreencapital.com
**CC:**          GGRFoversight [GGRFoversight@epa.gov]; Payne, James (Jim) [payne.james@epa.gov]; Molina, Michael [molina.michael@epa.gov]; Zavala, Julie [Zavala.Julie@epa.gov]; Amidon, Eric [Amidon.Eric@epa.gov]
**Subject:**     Notice of Termination
**Attachments:** 2025.03.11 EPA Notice of Termination Coalition for Green Capital - CGC.pdf


Please see attached. Thank you.


Chad McIntosh, P.E.
Acting Deputy Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
3412 WJC-North | Mail Code 1102
Washington, DC 20004
Tel. No. (202) 787-0580
mcintosh.chad@epa.gov

Message

---

**From:**        McIntosh, Chad [mcintosh.chad@epa.gov]
**Sent:**        3/11/2025 10:21:45 PM
**To:**          Bafford, Beth [BBafford@climateunited.org]
**CC:**          GGRFoversight [GGRFoversight@epa.gov]; Payne, James (Jim) [payne.james@epa.gov]; Molina, Michael
                 [molina.michael@epa.gov]; Zavala, Julie [Zavala.Julie@epa.gov]; Amidon, Eric [Amidon.Eric@epa.gov]
**Subject:**     Notice of Termination
**Attachments:** 2025.03.11 EPA Notice of Termination Climate United Fund - CUF.pdf


Please see attached. Thank you.


Chad McIntosh, P.E.
Acting Deputy Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
3412 WJC-North | Mail Code 1102
Washington, DC  20004
Tel. No. (202) 787-0580
mcintosh.chad@epa.gov

Message

**From:**      oms-arm-ogd-grant_reports@epa.gov [oms-arm-ogd-grant_reports@epa.gov]
**Sent:**      2/25/2025 9:00:05 PM
**To:**        Coogan, Daniel [Coogan.Daniel@epa.gov]; Hublar, Jennifer [Hublar.Jennifer@epa.gov]; Wise, Melissa
               [wise.melissa@epa.gov]; Sylvester, Kenneth [Sylvester.Kenneth@epa.gov]; Schindel, Phillip
               [Schindel.Phillip@epa.gov]; Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov]
**CC:**        Wilson, Kevin [Wilson.Kevin@epa.gov]; Nguyen, Minh [nguyen.minh@epa.gov]; Patrick, Dai [patrick.dai@epa.gov]
**Subject:**   Pending Grant Actions
**Attachments:** Pending Grants Actions – All Regions and HQ.xlsx

Attached is a Report of Pending Grants Actions. This report is daily generated. Please contact Phil Schindel or
Minh Nguyen for questions about the data or if the report needs to change. Thanks!

**This document is produced in native format.**

**Original file name:**

**Pending Grants Actions – All Regions and HQ.xlsx**

Message

| | |
|---|---|
| **From:** | Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov] |
| **Sent:** | 3/27/2025 5:35:01 PM |
| **To:** | Puglisi, Peter [puglisi.peter@epa.gov] |
| **CC:** | Wise, Melissa [wise.melissa@epa.gov]; Schindel, Phillip [Schindel.Phillip@epa.gov]; Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov] |
| **Subject:** | Terminate Grant #00E03858 - Compass not found with program code 5B |
| **Attachments:** | OMB Form 00E03858-0 original award program code 5B.pdf; OMB Form 00E03858-1 Terminate program code 5B.pdf |

Hi  Peter,

Attached is the complete grant #00E03858 award documents.  Compass cannot be found for financial search to check on drawdown and remaining balance.  **Please guide how to look up for balance on this grant.** Thank you.

**Screenshot Compass grant not found.**

   **Financial I**

Commitment, Obligation documents that start with 5B00E03858

No documents were found matching these conditions. Please click the back button on your browser and check your entries. Thank you.

*Kathy Tsing-Choy*
Associate Award Official
OMS-OGD-GMBOD-BOB
202-565-0049 or MS Team
tsing-choy.kathy@epa.gov

"To serve as a leader and supporter, live a balanced life, and to build collaborative relationships among individuals or group members toward a common vision."



5B - 00E03858 - 0    Page 1

| | | GRANT NUMBER (FAIN): 00E03858 | |
|---|---|---|---|
| | **U.S. ENVIRONMENTAL PROTECTION AGENCY** Cooperative Agreement | MODIFICATION NUMBER:    0 PROGRAM CODE:    5B | **DATE OF AWARD** 09/29/2024 |
| | | **TYPE OF ACTION** New | **MAILING DATE** 10/02/2024 |
| | | **PAYMENT METHOD:** ASAP | **ACH#** 50555 |

| RECIPIENT TYPE: | Send Payment Request to: |
|---|---|
| Not for Profit | Contact EPA RTPFC at: rtpfc-grants@epa.gov |

| RECIPIENT: | PAYEE: |
|---|---|
| DETROITERS WORKING FOR ENVIRONMENTAL JUSTICE 4750 WOODARD AVENUE 315 DETROIT, MI 48201-1300 **EIN:** 38-3259924 | DETROITERS WORKING FOR ENVIRONMENTAL JUSTICE 4750 Woodward Ave., Suite 406 Detroit, MI 48201 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Charlotte Burkes 4750 WOODWARD AVE. #315 DETROIT, MI 48201 **Email:** charlotte@dwej.org **Phone:** 313-878-7150 | Ravishankar Rao 77 W Jackson Blvd., EC-19J Chicago, IL 60604 **Email:** Rao.Ravi@epa.gov **Phone:** 312-353-4365 | Kendra Kozak MA-10J 77 W Jackson Blvd. Chicago, IL 60604 **Email:** Kozak.Kendra@epa.gov **Phone:** 312-353-8834 |

**PROJECT TITLE AND DESCRIPTION**

It's in the Air: Community Air Quality  System in Detroit

See Attachment 1 for project description.

| BUDGET PERIOD | PROJECT PERIOD | TOTAL BUDGET PERIOD COST | TOTAL PROJECT PERIOD COST |
|---|---|---|---|
| 10/01/2024 - 09/30/2027 | 10/01/2024 - 09/30/2027 | $ 474,253.00 | $ 474,253.00 |

## NOTICE OF AWARD

Based on your Application dated 04/14/2023 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $ 474,253.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 474,253.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| U.S. EPA, Region 5, U.S. EPA Region 5 Mail Code MCG10J 77 West Jackson Blvd. Chicago, IL 60604-3507 | U.S. EPA, Region 5, Environmental Justice, Community Health, and Environmental Review Division R5 - Region 5 77 W Jackson Blvd., EC-19J Chicago, IL 60604 |

| THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY | |
|---|---|
| Digital signature applied by EPA Award Official for Sheila Dolan - Manager, Acquisition & Assistance Branch by Karen Sykes - Award Official Delegate | **DATE** 09/29/2024 |

EPA_00143142

5B - 00E03858 - 0    Page 2

# EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $ 0 | $ 474,253 | $ 474,253 |
| EPA In-Kind Amount | $ 0 | $ 0 | $ 0 |
| Unexpended Prior Year Balance | $ 0 | $ 0 | $ 0 |
| Other Federal Funds | $ 0 | $ 0 | $ 0 |
| Recipient Contribution | $ 0 | $ 0 | $ 0 |
| State Contribution | $ 0 | $ 0 | $ 0 |
| Local Contribution | $ 0 | $ 0 | $ 0 |
| Other Contribution | $ 0 | $ 0 | $ 0 |
| Allowable Project Cost | $ 0 | $ 474,253 | $ 474,253 |

| Assistance Program | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.306 - Environmental Justice Collaborative Problem-Solving Cooperative Agreement Program | Clean Air Act: Sec. 138 | 2 CFR 200, 2 CFR 1500 and 40 CFR 33 |

| Fiscal | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Site Name | Req No | FY | Approp. Code | Budget Organization | PRC | Object Class | Site/Project | Cost Organization | Obligation / Deobligation |
| - | 24124WB246 | 2226 | BSF5 | WF | 000W57XK1 | 4140 | - | - | $ 474,253 |
| | | | | | | | | | $ 474,253 |

5B - 00E03858 - 0     Page 3

Budget Summary Page

| Table A - Object Class Category (Non-Construction) | Total Approved Allowable Budget Period Cost |
|---|---|
| 1. Personnel | $ 150,000 |
| 2. Fringe Benefits | $ 45,000 |
| 3. Travel | $ 0 |
| 4. Equipment | $ 0 |
| 5. Supplies | $ 253 |
| 6. Contractual | $ 12,000 |
| 7. Construction | $ 0 |
| 8. Other | $ 247,500 |
| 9. Total Direct Charges | $ 454,753 |
| 10. Indirect Costs: 0.00 % Base SEE TABLE B | $ 19,500 |
| 11. Total (Share: Recipient ___0.00 % Federal __100.00 %) | $ 474,253 |
| 12. Total Approved Assistance Amount | $ 474,253 |
| 13. Program Income | $ 0 |
| 14. Total EPA Amount Awarded This Action | $ 474,253 |
| 15. Total EPA Amount Awarded To Date | $ 474,253 |

EPA_00143144

5B - 00E03858 - 0    Page 4

SUMMARY OF INDIRECT COST RATES

| Table B - Program Element Classification (Non-construction) | Total Approved Allowable Budget Period Cost |
|---|---|
| 1. 10% DEMINIMIS RATE | $ 0 |
| 2. | $ 0 |
| 3. | $ 0 |
| 4. | $ 0 |
| 5. | $ 0 |
| 6. | $ 0 |
| 7. | $ 0 |
| 8. | $ 0 |
| 9. | $ 0 |
| 10. | $ 0 |
| 11. Total (Share: Recip    % Fed    %) | $ 0 |
| 12. Total Approved Assistance Amount | $ 0 |

EPA_00143145

# Attachment 1 - Project Description

The agreement provides funding to Detroiters Working for Environmental Justice. Specifically, the recipient will build a text-messaging system to Detroiters about poor air quality and its effects - for the purpose of giving Detroiters access to resources and tools that can educate them on how to stay safe as well as how to make reports to Michigan Department of Environment, Great Lakes, and Energy (EGLE) Pollution Emergency ing System (PEAS).The activities include: (1) This initiative will begin with project partners holding a work planning summit to set out goals on a quarterly and annual basis, develop work plans, and

divide up areas to canvas across Detroit. (2) create a website that describes the project and allows community members to sign up for the text messaging service. (3) Project partners will hold one to three coalition meetings of 15-20 allied environmental, government, industry, academic, neighborhood and health organizations to get additional feedback on the Project before it is operationalized. (4) Press Launch. Once the registration website is operational and the system has been revised with feedback from additional community groups, this program will be launched publicly. (5) Online Launch. Once the program is publicly launched, project partners and coalition members will begin recruiting the public to join the list through an email and social media campaign. (6) In-Person Recruitment Begins. Once the program is digitally launched, off-line recruitment will begin in earnest. Project partners will be funded to add 500 names per year to the list. (7) Messaging Begins. After the initial sign-ups have been tagged in the JustAir system, project partners will begin sending air quality s to the system. (8) Information Feedback Solicitation Begins. Once trust has been established with the list through the provision of air quality information for six to eight months, project partners will begin the process of collecting data from the list . (9) Recruitment of List Members to Trainings. (10) Recruitment of List Members to Public Meetings.The anticipated deliverables include: Build a text-messaging system to Detroiters about bad air quality and environmental hazards.

The expected outcomes include : The system will give Detroiters access to air quality information with health recommendations.

The intended beneficiaries include : The citizens of DetroitAs described in the Workplan, the sub awardees are:

1. Southwest Detroit Environmental Vision - will promote the project & recruit residents annually to sign up for the texting service. They will participate in coalition quarterly meetings and annual reviews and will use their deep connections in Southwest Detroit to expand the project's reach.

2. Original United Citizens of Southwest Detroit (OUCSD) - will promote and recruit residents annually to sign up for the texting service. They will participate in coalition quarterly meetings and annual reviews and will use their block club connections to promote this project.

3. Michigan Environmental Council (MEC) - will promote the project and recruit residents annually to sign up for the texting service. They will participate in coalition quarterly meetings and annual reviews and will use their connections through the Detroit Environmental Agenda to grow the project's reach. MEC will also use its grass tops connections to help with advocacy efforts.

4.Michigan United -will promote the project and recruit residents annually to sign up for the texting service. They would participate in coalition quarterly meetings and annual reviews.

EPA_00143146

5B - 00E03858 - 0    Page 6

5. The Ecology Center - will provide technical support to help determine action levels for s.

EPA_00143147

# Administrative Conditions

The recipient agrees to comply with the current EPA general terms and conditions available at: https://www.epa.gov/grants/epa-general-terms-and-conditions-effective-october-1-2023-or-later.

These terms and conditions are in addition to the assurances and certifications made as a part of the award and the terms, conditions, or restrictions cited throughout the award.

The EPA repository for the general terms and conditions by year can be found at: https://www.epa.gov/grants/grant-terms-and-conditions#general.

## A. Correspondence Condition

The terms and conditions of this agreement require the submittal of reports, specific requests for approval, or notifications to EPA.  Unless otherwise noted, all such correspondence should be sent to the following email addresses:

- Federal Financial Reports (SF-425):  rtpfc-grants@epa.gov and rao.seema@epa.gov

- MBE/WBE reports (EPA Form 5700-52A):  region5closeouts@epa.gov and Seema Rao at rao.seema@epa.gov

- All other forms/certifications/assurances, Indirect Cost Rate Agreements, Requests for Extensions of the Budget and Project Period, Amendment Requests, Requests for other Prior Approvals, updates to recipient information (including email addresses, changes in contact information or changes in authorized representatives) and other notifications: **Ravishankar Rao at rao.ravishankar@epa.gov and Seema Rao at rao.seema@epa.gov**

- Payment requests (if applicable): Ravishankar Rao **at rao.ravishankar@epa.gov**

- Quality Assurance documents, workplan revisions, equipment lists, programmatic reports and deliverables: Ravishankar Rao **at rao.ravishankar@epa.gov.**

## B. Pre-Award Administrative Capability

**Detroiters Working for Environmental Justice's** pre-award certification review was initiated but is not completed. EPA's policy for awarding financial assistance in excess of $200,000 to non-profit organizations requires an Administrative Capability Assessment review of the recipient's administrative and financial managment systems to be completed **prior** to the recipient drawing down any EPA funds per EPA Order 5700.8. Because EPA has not yet completed the review, **Detroiters Working for Environmental Justice** is precluded from drawing down funds under this assistance agreement until EPA provides written confirmation of the completion of the assessment with satisfactory results. Please note, any costs incurred prior to EPA approval are at **Detroiters Working for Environmental Justice** own risk. If **Detroiters Working for Environmental Justice** fails to respond or is unable to satisfactorily address all identified deficiencies within 90 days of the award date of this assistance agreement or within any extension of time granted by EPA, the agreement may be terminated. Noncompliance with this term and condition may result in adverse action by EPA per 2 CFR 200.339.

5B - 00E03858 - 0     Page 8

# Programmatic Conditions

**Environmental Justice Collaborative Problem Solving (EJCPS) Cooperative Agreement Terms and Conditions (Updated 01/17/2024)**

## A. PERFORMANCE REPORTING AND FINAL PERFORMANCE REPORT

### Performance Reports – Content

In accordance with 2 CFR 200.329, the recipient agrees to submit performance reports that include brief information on each of the following areas: 1) A comparison of actual accomplishments to the outputs/outcomes established in the assistance agreement work plan for the period; 2) The reasons why established outputs/outcomes were not met; and 3) other pertinent information, including, when appropriate, analysis and explanation of cost overruns or high unit costs. This description may include overall best practices and/or lessons learned over the project performance period, and attachments and links for materials that may be helpful to other Environmental Grants recipients or similar organizations (e.g., tip sheets, "how-to" sheets, communication materials, outreach materials, web tools, etc).

These reports shall cover work status, work progress, difficulties encountered, preliminary data results and a statement of activity anticipated during the subsequent reporting period, including a description of equipment, techniques, and materials to be used or evaluated. A discussion of expenditures along with a comparison of the percentage of the project completed to the project schedule and an explanation of significant discrepancies shall be included in the report. The report shall also include any changes of key personnel concerned with the project.

Additionally, the recipient agrees to inform EPA as soon as problems, delays, or adverse conditions which will materially impair the ability to meet the outputs/outcomes specified in the assistance agreement work plan are known.

### Performance Reports - Frequency

The recipient agrees to submit semi-**annual** performance reports electronically to the EPA Project Officer within 30 days after the reporting period six-month period. The reporting periods are *4/30/25, 10/1/25, 4/30/26, 10/1/26, 4/30/27, 10/1/27.*

The recipient must submit the final performance report no later than 120 calendar days after the end date of the period of performance. The final report shall document project activities over the entire project period.

### Subaward Performance Reporting

The recipient must report on its subaward monitoring activities under 2 CFR 200.332(d). Examples of items that must be reported if the pass-through entity has the information available are:

1. Summaries of results of reviews of financial and programmatic reports.

2. Summaries of findings from site visits and/or desk reviews to ensure effective subrecipient performance.

3. Environmental results the subrecipient achieved.

4. Summaries of audit findings and related pass-through entity management decisions.

5. Actions the pass-through entity has taken to correct deficiencies such as those specified at 2 CFR 200.332(e), 2 CFR 200.208 and the 2 CFR Part 200.339 Remedies for Noncompliance.

## B.  EJ Grantee Workshops (Virtual and/or In-Person)

All EJCPS recipients will be required to attend at least one EJ Grantee training workshop hosted by your EPA Region. These trainings will assist all current EPA EJ grant recipients with strategic planning and project management of their grants and/or cooperative agreements, as well as afford recipients opportunities to learn from their peers and other experts. Recipients will need to identify at least one authorized official to participate. Virtual workshops will utilize webinar technology that can be accessed via personal computer. A conference call line will be available for any recipient who doesn't have the technical capability (i.e. slow internet connection) to access the webinar. Your EPA Project Officer will keep you informed of the dates of the workshops. Each EPA Regional Office will tailor their workshop agenda to the environmental needs and priorities of workshop participants and local communities in the region. Workshops may include a mix of current and former EJ grant recipients, local community stakeholders, other EPA and federal program personnel, and other attendees. Workshop attendees will come together to provide perspective, insight, and lessons learned regarding environmental justice issues plaguing their communities and ways to address them. Recipients will need to identify at least one authorized official to participate. Recipients are permitted to use awarded funds to pay for travel to the workshops.

## C. Review and Oversight

1. Products - The recipient agrees that any product (e.g., publication, outreach materials, training manuals) produced through this assistance agreement and made available for public view must be first reviewed by the EPA Project Officer for comment before release. The recipient shall make all final decisions on the product content.

2. Monthly Calls - The recipient shall consult with the EPA Project Officer on a monthly basis in order to obtain input on program activities and products produced. However, the recipient should make all final decisions on project implementation and product content. It is at the EPA Project Officer's discretion to determine any change to the frequency with which calls are held.

3. Prior Approval - Any proposed changes to the project must be submitted in writing to the EPA Project Officer for approval prior to implementation. The recipient incurs costs at its own risk if it fails to obtain written approval before implementing any changes.

## D. Post-Project Period Follow-up and Engagement

For no less than one year after completion of the project, recipient agrees to periodically update its designated EPA Project Officer on current community-based and environmental justice work the recipient is performing and how/if that work relates to its now completed EJCPS project. These periodic updates may include (but are not limited to) recent local media reports, additional grant funding received, new initiatives, and developing partnerships. The EPA EJ Grants program is invested in the long-term success of each EJ Grant recipient and its long-term impact on addressing the disproportionate

environmental and public health impacts plaguing their communities. These post-project period updates allow the EJ Grants program to provide past recipients with additional guidance about applicable funding opportunities, potential collaborations, and technical assistance that may assist recipients in their future work*. The periodic updates also allow the program to track best practices that lead to greater project sustainability and long-term community revitalization for impacted community residents. The frequency of these periodic updates will be at the discretion of the designated EPA Project Officer and will be discussed with the recipient before the end of the project period. Recipients are also encouraged to continue providing updates and engaging with their EPA Project Officers beyond the additional year after the end of the project.

*NOTE – Compliance with this term & condition will not give the recipient priority during future EPA EJ grant competitions and is not a guarantee for future EPA grant funding.

## E.  Cybersecurity Condition

### Cybersecurity Grant Condition for Other Recipients, Including Intertribal Consortia

(a) The recipient agrees that when collecting and managing environmental data under this assistance agreement, it will protect the data by following all applicable State or Tribal law cybersecurity requirements.

(b) (1) EPA must ensure that any connections between the recipient's network or information system and EPA networks used by the recipient to transfer data under this agreement, are secure. For purposes of this Section, a connection is defined as a dedicated persistent interface between an Agency IT system and an external IT system for the purpose of transferring information. Transitory, user-controlled connections such as website browsing are excluded from this definition.

If the recipient's connections as defined above do not go through the Environmental Information Exchange Network or EPA's Central Data Exchange, the recipient agrees to contact the EPA Project Officer (PO) no later than 90 days after the date of this award and work with the designated Regional/Headquarters Information Security Officer to ensure that the connections meet EPA security requirements, including entering into Interconnection Service Agreements as appropriate. This condition does not apply to manual entry of data by the recipient into systems operated and used by EPA's regulatory programs for the submission of reporting and/or compliance data.

(2) The recipient agrees that any subawards it makes under this agreement will require the subrecipient to comply with the requirements in (b)(1) if the subrecipient's network or information system is connected to EPA networks to transfer data to the Agency using systems other than the Environmental Information Exchange Network or EPA's Central Data Exchange. The recipient will be in compliance with this condition: by including this requirement in subaward agreements; and during subrecipient monitoring deemed necessary by the recipient under 2 CFR 200.332(d), by inquiring whether the subrecipient has contacted the EPA Project Officer. Nothing in this condition requires the recipient to contact the EPA Project Officer on behalf of a subrecipient or to be involved in the negotiation of an Interconnection Service Agreement between the subrecipient and EPA.

## F.  Competency Policy

### Competency of Organizations Generating Environmental Measurement Data

In accordance with Agency Policy Directive Number FEM-2012-02, <u>Policy to Assure the Competency of Organizations Generating Environmental Measurement Data under Agency-Funded Assistance Agreements,</u>

Recipient agrees, by entering into this agreement, that it has demonstrated competency prior to award, or alternatively, where a pre-award demonstration of competency is not practicable, Recipient agrees to demonstrate competency prior to carrying out any activities under the award involving the generation or use of environmental data. Recipient shall maintain competency for the duration of the project period of this agreement and this will be documented during the annual reporting process.  A copy of the Policy is available online at https://www.epa.gov/sites/production/files/2015-03/documents/competency-policy-aaia-new.pdf or a copy may also be requested by contacting the EPA Project Officer for this award.

## G. Procurement Terms and Conditions

**The recipient agrees to conduct all procurement actions under this assistance agreement in accordance with the procurement standards set forth in Title 2 CFR, Parts 200.317 through 200.327, 2 CFR Part 1500 and 40 CFR Part 33.  EPA provides additional guidance on complying with these requirements in the Best Practice Guide for Procuring Services, Supplies, and Equipment Under EPA Assistance Agreements which is available at https://www.epa.gov/grants/best-practice-guide-procuring-services-supplies-and-equipment-under-epa-assistance  Any costs incurred by the recipient under contracts and/or small purchases that EPA determines to be in noncompliance with EPA procurement standards shall be unallowable for Federal reimbursement.**

## 2.  Public or Media Events

The Recipient agrees to notify the EPA Project Officer listed in this award document of public or media events publicizing the accomplishment of significant events related to construction projects as a result of this agreement, and provide the opportunity for attendance and participation by federal representatives with at least ten (10) working days' notice.

## H.  Use of Logos

If the EPA logo is appearing along with logos from other participating entities on websites, outreach materials, or reports, it must **not** be prominently displayed to imply that any of the recipient or subrecipient's activities are being conducted by the EPA. Instead, the EPA logo should be accompanied with a statement indicating that the [Insert Recipient or subrecipient NAME] received financial support from the EPA under an Assistance Agreement. More information is available at: https://www.epa.gov/stylebook/using-epa-seal-and-logo#policy

## I. Paperwork Reduction Act

Notwithstanding any references to collection of information in the recipient's application or proposal for EPA funding, the scope of work for this cooperative agreement does not include a survey or other information collection of identical information from 10 or more parties.  No EPA funds (directly paid by EPA or from the recipient's cost share) may be used for the design or administration of such an information collection, and EPA personnel may not participate in such activities.  Reasonable costs for analyzing independently collected information and publishing the results of such information collections are allowable to the extent authorized in the EPA approved budget for this agreement.

## J.  DURC/iDURC

The recipient agrees to not initiate any life sciences research involving agents and toxins identified in Section 6.2.1 of the *United States Government Policy for Institutional Oversight of Life Sciences Dual Use Research of Concern* (iDURC Policy) until appropriate review and clearance by the recipient institution's Institutional Review Entity (IRE). The recipient also agrees to temporarily suspend life sciences research in the event that, during the course of the research project, the IRE determines that the life sciences research meets the definition of DURC in the iDURC Policy, and the recipient agrees to notify the EPA Institutional Contact for Dual Use Research (ICDUR) (DURC@epa.gov) of the institution's determination.

## K.  Substantial Involvement

EPA will be substantially involved in this agreement. Substantial involvement by the EPA Project Officer may include:

1.) monthly telephone calls and other monitoring,

2.) reviewing project phases and providing approval to continue to the next phase,

3.) reviewing and commenting on any documents, web content, or other materials developed under this agreement (the recipient will make final decisions on these matters),

4.) approving substantive terms included in contracts or subawards (EPA's Project Officer will not suggest, recommend or direct the recipient to select any particular contractor or subrecipient except to the extent permitted in Section 10 of EPA's Subaward Policy).

5.) reviewing and commenting on the programmatic progress reports

6) Consultation with EPA regarding the selection of key personnel (EPA's involvement is limited to reviewing the technical qualifications of key personnel and the recipient will make the final decisions on selection.  EPA's Project Officer will not suggest, recommend or direct the recipient to select any individual).

7.) Joint operational involvement, participation, and/or collaboration between EPA and the recipient.

## L.  National Programmatic Term and Condition for Fellowship, Internship Programs and Similar Programs Supported by EPA Financial Assistance

1. EPA funds for this program may only be used for participant support cost payments, scholarships, tuition remission and other forms of student aid for citizens of the United States, its territories, or possessions, or for individuals lawfully admitted to the United States for permanent residence.

2. The recipient and program participants are responsible for taxes, if any, on payments made to or on behalf of individuals participating in this program that are allowable as participant support costs under 2 CFR 200.1 or 2 CFR 200.456 and scholarships and other forms of student aid such as tuition remission under 2 CFR 200.466. EPA encourages recipients and program participants to consult their tax advisers, the U.S. Internal Revenue Service, or state and local tax authorities regarding the taxability of stipends, tuition remission and other payments. However, EPA does not provide advice on tax issues relating to

these payments.

3. Participant support cost payments, scholarships, and other forms of student aid such as tuition remission are lower tiered covered Nonprocurement transactions for the purposes of 2 CFR 180.300 and EPA's Suspension and Debarment Term and Condition. Recipients, therefore, may not make participant support cost payments to individuals who are excluded from participation in Federal Nonprocurement programs under 2 CFR Part 180. Recipients are responsible for checking the eligibility of program participants in the System for Award Management (SAM) or obtaining eligibility certifications from the program participants.

See EPA Guidance on Participant Support Costs.

5B - 00E03858 - 1    Page 1

# U.S. ENVIRONMENTAL PROTECTION AGENCY

### Assistance Amendment

| | |
|---|---|
| **GRANT NUMBER (FAIN):** 00E03858 | |
| **MODIFICATION NUMBER:** 1 | **DATE OF AWARD** 03/26/2025 |
| **PROGRAM CODE:** 5B | |
| **TYPE OF ACTION** No Cost Amendment | **MAILING DATE** 03/26/2025 |
| **PAYMENT METHOD:** ASAP | **ACH#** 50555 |

| RECIPIENT TYPE: | Send Payment Request to: |
|---|---|
| Not for Profit | Contact EPA RTPFC at: rtpfc-grants@epa.gov |

| RECIPIENT: | PAYEE: |
|---|---|
| DETROITERS WORKING FOR ENVIRONMENTAL JUSTICE<br>4750 WOODARD AVENUE<br>315<br>DETROIT, MI 48201-1300<br>EIN: 38-3259924 | DETROITERS WORKING FOR ENVIRONMENTAL JUSTICE<br>4750 Woodward Ave., Suite 406<br>Detroit, MI 48201 |

| PROJECT MANAGER | EPA PROJECT OFFICER | EPA GRANT SPECIALIST |
|---|---|---|
| Laprisha Daniels<br>4750 WOODWARD AVE. #315<br>DETROIT, MI 48201<br>**Email:** laprisha@dwej.org<br>**Phone:** 313-878-7150 | Rosita Clarke<br>77 West Jackson Blvd., EC-19J<br>Chicago, IL 60604-3507<br>**Email:** Clarke.Rosita@epa.gov<br>**Phone:** 312-886-7251 | Kendra Kozak<br>Assistance Section II, MA-10J<br>77 West Jackson Blvd.<br>Chicago, IL 60604<br>**Email:** Kozak.Kendra@epa.gov<br>**Phone:** 312-353-8834 |

### PROJECT TITLE AND EXPLANATION OF CHANGES

It's in the Air: Community Air Quality System in Detroit

The agreement provides funding to Detroiters Working for Environmental Justice. Specifically, the recipient will build a text-messaging system to Detroiters about poor air quality and its effects - for the purpose of giving Detroiters access to resources and tools that can educate them on how to stay safe as well as how to make reports to Michigan Department of Environment, Great Lakes, and Energy (EGLE) Pollution Emergency System (PEAS).

This amendment is to stop work; terminate the agreement; reduce performance period duration; curtail scope of work; and waive certain reporting requirements. Administrative terms and conditions are added.

Per 2 CFR 200.340 and the Termination General Terms and Conditions of this agreement, EPA is terminating this award. Your organization shall immediately stop work and take all reasonable steps to minimize the incurrence of costs otherwise allocable to the assistance agreement. See terms and conditions.

| BUDGET PERIOD | PROJECT PERIOD | TOTAL BUDGET PERIOD COST | TOTAL PROJECT PERIOD COST |
|---|---|---|---|
| 10/01/2024 - 03/26/2025 | 10/01/2024 - 03/26/2025 | $ 474,253.00 | $ 474,253.00 |

## NOTICE OF AWARD

Based on your Application dated 03/20/2025 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $ 0.00. EPA agrees to cost-share 100.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $ 474,253.00. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and any attachments.

| ISSUING OFFICE (GRANTS MANAGEMENT OFFICE) | AWARD APPROVAL OFFICE |
|---|---|
| **ORGANIZATION / ADDRESS** | **ORGANIZATION / ADDRESS** |
| U.S. EPA, Region 5, U.S. EPA Region 5<br>Mail Code MCG10J 77 West Jackson Blvd.<br>Chicago, IL 60604-3507 | U.S. EPA, Region 5, Environmental Justice, Community Health, and Environmental Review Division<br>R5 - Region 5<br>77 West Jackson Blvd., EC-19J<br>Chicago, IL 60604 |

| THE UNITED STATES OF AMERICA BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY | |
|---|---|
| **Digital signature applied by EPA Award Official** Sheila Dolan - Manager, Acquisition & Assistance Branch | **DATE** 03/26/2025 |

EPA_00143155

## EPA Funding Information

| FUNDS | FORMER AWARD | THIS ACTION | AMENDED TOTAL |
|---|---|---|---|
| EPA Amount This Action | $ 474,253 | $ 0 | $ 474,253 |
| EPA In-Kind Amount | $ 0 | $ 0 | $ 0 |
| Unexpended Prior Year Balance | $ 0 | $ 0 | $ 0 |
| Other Federal Funds | $ 0 | $ 0 | $ 0 |
| Recipient Contribution | $ 0 | $ 0 | $ 0 |
| State Contribution | $ 0 | $ 0 | $ 0 |
| Local Contribution | $ 0 | $ 0 | $ 0 |
| Other Contribution | $ 0 | $ 0 | $ 0 |
| Allowable Project Cost | $ 474,253 | $ 0 | $ 474,253 |

| Assistance Program | Statutory Authority | Regulatory Authority |
|---|---|---|
| 66.306 - Environmental Justice Collaborative Problem-Solving Cooperative Agreement Program | Clean Air Act: Sec. 138 | 2 CFR 200, 2 CFR 1500 and 40 CFR 33 |

5B - 00E03858 - 1    Page 3

Budget Summary Page

| Table A - Object Class Category (Non-Construction) | Total Approved Allowable Budget Period Cost |
|---|---|
| 1. Personnel | $ 150,000 |
| 2. Fringe Benefits | $ 45,000 |
| 3. Travel | $ 0 |
| 4. Equipment | $ 0 |
| 5. Supplies | $ 253 |
| 6. Contractual | $ 12,000 |
| 7. Construction | $ 0 |
| 8. Other | $ 247,500 |
| 9. Total Direct Charges | $ 454,753 |
| 10. Indirect Costs: 0.00 % Base SEE TABLE B | $ 19,500 |
| 11. Total (Share: Recipient ____0.00 % Federal __100.00 %) | $ 474,253 |
| 12. Total Approved Assistance Amount | $ 474,253 |
| 13. Program Income | $ 0 |
| 14. Total EPA Amount Awarded This Action | $ 0 |
| 15. Total EPA Amount Awarded To Date | $ 474,253 |

5B - 00E03858 - 1     Page 4

SUMMARY OF INDIRECT COST RATES

| Table B - Program Element Classification (Non-construction) | Total Approved Allowable Budget Period Cost |
|---|---|
| 1. 10% DEMINIMIS RATE | $ 0 |
| 2. | $ 0 |
| 3. | $ 0 |
| 4. | $ 0 |
| 5. | $ 0 |
| 6. | $ 0 |
| 7. | $ 0 |
| 8. | $ 0 |
| 9. | $ 0 |
| 10. | $ 0 |
| 11. Total (Share: Recip     % Fed     %) | $ 0 |
| 12. Total Approved Assistance Amount | $ 0 |

## Administrative Conditions

**THE FOLLOWING ADMINISTRATIVE TERM AND CONDITION IS ADDED:**

**UNILATERAL TERMINATION**

1. The Agency is asserting its right under 2 CFR 200.340 and the Termination General Term and Condition of this agreement to unilaterally terminate this award. This amendment serves as required notice under 2 CFR 200.341.

2. Consistent with 2 CFR 200.343 Effect of suspension and termination, costs to the recipient or subrecipient resulting from financial obligations incurred by the recipient or subrecipient after the termination of a Federal award are not allowable. Costs after termination are allowable if:

    a. The costs result from financial obligations which were properly incurred by the recipient or subrecipient before the effective date of suspension or termination, and not in anticipation of it; and

    b. The costs would be allowable if the Federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect.

    c. The costs are reasonable and necessary termination costs consistent with 2 CFR 200.472.

3. Federal Financial Reporting (FFR) General Terms and Conditions is still in full force and effect. EPA recipients must submit the SF-425 no later than 120 calendar days after the end date of the period of performance of the award.

4. Programmatic Terms and Conditions. Performance reporting is still in full force and effect.  The recipient must submit the final report no later than 120 calendar days after the period of performance.

In accordance with 2 CFR 200.329, the recipient agrees to submit performance reports that include information on each of the following areas:

    a. A comparison of accomplishments to the outputs/outcomes established in the assistance agreement work plan for the reporting period;

    b. Explanations on why established outputs/outcomes were not met; and

    c. Additional information, analysis, and explanation of cost overruns or high-than-expected-unit costs.

5. Waiver of Reports

The following reports are waived:

EPA_00143159

a. Utilization of Disadvantaged Business Enterprises General Terms and Conditions, EPA Form 5700-52A.

b. Tangible Personal Property Report, SF-428, General Terms and Conditions.

6. Record Retention

Access to Records, 2 CFR 200.337, is still in full force and effect. The termination of this award does not affect the right of EPA to disallow costs and recover funds on the basis of a later audit or other reviews. Information regarding record retention, property disposition in accordance with EPA regulations, and other frequently asked questions can be accessed at https://www.epa.gov/grants/frequent-questions-about-closeouts.

**ALL OTHER ADMINISTRATIVE TERMS AND CONDITIONS REMAIN THE SAME.**

# Programmatic Conditions

ALL PROGRAMMATIC TERMS AND CONDITIONS REMAIN THE SAME.

Message

---

**From:** Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov]
**Sent:** 2/26/2025 3:00:09 PM
**To:** Wise, Melissa [wise.melissa@epa.gov]; Coogan, Daniel [Coogan.Daniel@epa.gov]; Hublar, Jennifer [Hublar.Jennifer@epa.gov]
**CC:** Schindel, Phillip [Schindel.Phillip@epa.gov]; Wilson, Kevin [Wilson.Kevin@epa.gov]; Nguyen, Minh [nguyen.minh@epa.gov]; Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov]
**Subject:** Daily Summary Report of Grant Terminations as of 02/26/25
**Attachments:** Grant Terminations Report 2025.02.26.pdf; Grant Terminatons List.xlsx

Hi all,

Attached is the summary report of Grant Terminations.

*Kathy Tsing-Choy*
Associate Award Official
OMS-OGD-GMBOD-BOB
202-565-0049 or MS Team
tsing-choy.kathy@epa.gov

"To serve as a leader and supporter, live a balanced life, and to build collaborative relationships among individuals or group members toward a common vision."



Message

---

**From:** Nguyen, Minh [nguyen.minh@epa.gov]
**Sent:** 2/26/2025 6:40:15 PM
**To:** Schindel, Phillip [Schindel.Phillip@epa.gov]; Wise, Melissa [wise.melissa@epa.gov]
**CC:** Wilson, Kevin [Wilson.Kevin@epa.gov]; Sylvester, Kenneth [Sylvester.Kenneth@epa.gov]
**Subject:** Re: Pending Grant Actions
**Attachments:** Pending Grants Actions - With Status.xlsx

Hi All,

Please see changes to this report attached.

Added 'Status' Column to show if the action is 'new' (within last 2 days) or 'old'
Added 'Draft Award Created in NGGS' column.

Cheers,

Minh Nguyen
EPA Office of Grants and Debarment, Business Operations Branch
(202) 566-2668

---

**From:** Schindel, Phillip <Schindel.Phillip@epa.gov>
**Sent:** Wednesday, February 26, 2025 10:32 AM
**To:** Nguyen, Minh <nguyen.minh@epa.gov>; Wise, Melissa <wise.melissa@epa.gov>
**Cc:** Wilson, Kevin <Wilson.Kevin@epa.gov>; Sylvester, Kenneth <Sylvester.Kenneth@epa.gov>
**Subject:** RE: Pending Grant Actions

Thanks Minh.

Our Datamart [element] language is tough for people to follow. Can we make "Draft Award First Start Date" *appear* as Draft Award Created in NGGS for the purpose of this report?

Phil

---

**From:** Nguyen, Minh <nguyen.minh@epa.gov>
**Sent:** Wednesday, February 26, 2025 10:25 AM
**To:** Wise, Melissa <wise.melissa@epa.gov>
**Cc:** Schindel, Phillip <Schindel.Phillip@epa.gov>; Wilson, Kevin <Wilson.Kevin@epa.gov>; Sylvester, Kenneth <Sylvester.Kenneth@epa.gov>
**Subject:** Re: Pending Grant Actions

Hi Melissa and Phil,

I can add in the field 'Draft Award First Start Date' which is static and would show when the amendment was first created.

Then I can add in a function which check to see if this 'Draft Award First Start Date' is today, which would make it 'new'. Anything else would be 'old'

Cheers,

Minh Nguyen
EPA Office of Grants and Debarment, Business Operations Branch
(202) 566-2668

**From:** Wise, Melissa <wise.melissa@epa.gov>
**Sent:** Tuesday, February 25, 2025 5:19 PM
**To:** Nguyen, Minh <nguyen.minh@epa.gov>
**Cc:** Schindel, Phillip <Schindel.Phillip@epa.gov>; Wilson, Kevin <Wilson.Kevin@epa.gov>; Sylvester, Kenneth <Sylvester.Kenneth@epa.gov>
**Subject:** FW: Pending Grant Actions

Hi Minh,

Please see request below.  Is something like this possible?

Thanks,
Melissa

**From:** Jehling, Erica <Jehling.Erica@epa.gov>
**Sent:** Tuesday, February 25, 2025 5:14 PM
**To:** Wise, Melissa <wise.melissa@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Cc:** Loving, Kathryn <Loving.Kathryn@epa.gov>
**Subject:** RE: Pending Grant Actions

Hi, could we please modify this report to add a "date added" column so that we know what has changed day by day?

**From:** oms-arm-ogd-grant_reports@epa.gov <oms-arm-ogd-grant_reports@epa.gov>
**Sent:** Tuesday, February 25, 2025 5:02 PM
**To:** Loving, Kathryn <Loving.Kathryn@epa.gov>; Jehling, Erica <Jehling.Erica@epa.gov>
**Cc:** Coogan, Daniel <Coogan.Daniel@epa.gov>; Wise, Melissa <wise.melissa@epa.gov>
**Subject:** Pending Grant Actions

Attached is a Report of Pending Grants Actions. This report is daily generated. Please contact Melissa Wise for questions about the data or if the report needs to change. Thanks!

This document is produced in native format.

Original file name:

Pending Grants Actions - With Status.xlsx

Message
_____

| | |
|---|---|
| **From:** | Bae, Jenny [Bae.Jenny@epa.gov] |
| **Sent:** | 2/26/2025 8:22:47 PM |
| **To:** | Rose, Kenneth [Rose.Kenneth@epa.gov]; Durand, Jessica [Durand.Jessica@epa.gov]; Lentz, Rachel [Lentz.Rachel@epa.gov]; Schindel, Phillip [Schindel.Phillip@epa.gov] |
| **Subject:** | RE: OUO - GAO Subaward Oversight Draft for EPA Comment (107315) |
| **Attachments:** | FY23_ALL_STAFF-#2151175-v1-GAO-25-107315_-_COMBINED_FULL_REPORT_FOR_AGENCY_COMMENT_(PDF_PWP).PDF; Draft Report 107135 - Technical Comments - GAO.docx |

Hi Ken, Rachel, Jess and Phil,

I am inquiring if you would like to include any comments on GAO's Oversight of IIJA Grant Subawards Draft Report. The response is due today and wanted to see if there are any comments we would like to add before responding **COB today**. Thank you and please let me know if you have any questions or concerns.

Best Regards,

*Jenny Bae*
Accountant and Compliance Specialist

---

**From:** Bae, Jenny
**Sent:** Tuesday, February 25, 2025 12:24 PM
**To:** Rose, Kenneth <Rose.Kenneth@epa.gov>; Durand, Jessica <Durand.Jessica@epa.gov>
**Cc:** Lentz, Rachel <Lentz.Rachel@epa.gov>; Holliday, Kysha <Holliday.Kysha@epa.gov>; Schindel, Phillip <Schindel.Phillip@epa.gov>
**Subject:** OUO - GAO Subaward Oversight Draft for EPA Comment (107315)

Hi Ken and Jess,

The GAO draft report for the Oversight of IIJA Grant Subawards (107315) engagement has been received and although there are **no recommendations** for EPA, OGD can still provide any significant general/technical comments on their findings directly on the Draft Report Technical Comments document (attached). OMS has requested this be provided by this **Wednesday, February 26, 2026**. Please let me know if you have any input as well as any questions or concerns. Thank you.

Best Regards,

*Jenny Bae*
Accountant and Compliance Specialist

---

**From:** Bae, Jenny
**Sent:** Tuesday, February 25, 2025 11:04 AM
**To:** Sylvester, Kenneth <Sylvester.Kenneth@epa.gov>; Holliday, Kysha <Holliday.Kysha@epa.gov>; Lentz, Rachel <Lentz.Rachel@epa.gov>; Schindel, Phillip <Schindel.Phillip@epa.gov>
**Subject:** OUO - GAO Subaward Oversight Draft for EPA Comment (107315)

Hi All,

The GAO draft report for the Oversight of IIJA Grant Subawards (107315) engagement has been received and although there are **no recommendations** for EPA, OGD can still provide any significant general/technical comments on their

findings. OMS has requested this be provided by this **Wednesday, February 26, 2026**. Please let me know if you have any input as well as any questions or concerns. Thank you.

Best Regards,

*Jenny Bae*
Accountant and Compliance Specialist

---

**From:** Perez, Darryl <Perez.Darryl@epa.gov>
**Sent:** Monday, February 24, 2025 7:19 AM
**To:** Wise, Melissa <wise.melissa@epa.gov>; Holliday, Kysha <Holliday.Kysha@epa.gov>; Hobbs, Daryl <Hobbs.Daryl@epa.gov>; Bae, Jenny <Bae.Jenny@epa.gov>; Lentz, Rachel <Lentz.Rachel@epa.gov>; Schindel, Phillip <Schindel.Phillip@epa.gov>
**Cc:** Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Scott, Gregory <Scott.Gregory@epa.gov>; Jablonski, Janice <jablonski.janice@epa.gov>; Bossard, Justin <bossard.justin@epa.gov>; Wilson, Afreeka <Wilson.Afreeka@epa.gov>; Elkassabany, Sara <Elkassabany.Sara@epa.gov>; OMS Audit Coordination <OMS_Audit_Coordination@epa.gov>
**Subject:** RE: OUO - GAO Subaward Oversight Draft for EPA Comment (107315)

Good morning, just a reminder that comments/response are due to ORBO by this Wednesday.

Thank you,

Darryl

---

**From:** Perez, Darryl
**Sent:** Thursday, February 13, 2025 2:23 PM
**To:** Wise, Melissa <wise.melissa@epa.gov>; Holliday, Kysha <Holliday.Kysha@epa.gov>; Hobbs, Daryl <Hobbs.Daryl@epa.gov>; Bae, Jenny <Bae.Jenny@epa.gov>; Lentz, Rachel <Lentz.Rachel@epa.gov>; Schindel, Phillip <Schindel.Phillip@epa.gov>
**Cc:** Kalikhman, Yulia <Kalikhman.Yulia@epa.gov>; Scott, Gregory <Scott.Gregory@epa.gov>; Jablonski, Janice <jablonski.janice@epa.gov>; Bossard, Justin <bossard.justin@epa.gov>; Wilson, Afreeka <Wilson.Afreeka@epa.gov>; Elkassabany, Sara <Elkassabany.Sara@epa.gov>; OMS Audit Coordination <OMS_Audit_Coordination@epa.gov>
**Subject:** OUO - GAO Subaward Oversight Draft for EPA Comment (107315)

Good afternoon,

We've received the draft report for the Oversight of IIJA Grant Subawards (107315) engagement, now titled " Grants Management: Recent Guidance Could Enhance Subaward Oversight" (GAO-25-107315).

There are no recommendations for EPA in the report, and no formal response is required.

Technical comments or negative reply are due to the GAO by March 12, 2025. If you do plan to respond, please provide a response to ORBO by February 26, 2025.

Thank you,

**Darryl Perez**
Audit Follow-up Coordinator
Administrative Operations Branch (AOB)
Human Capital & Administration Division (HCAD)
Office of Resources and Business Operations (ORBO)
Office of Missions Support (OMS)
(202)-564-2438

EPA_00143240

**From:** EPA-GAO-Liaison-Team <EPA-GAO-Liaison-Team@epa.gov>
**Sent:** Thursday, February 13, 2025 8:35 AM
**To:** Perez, Darryl <Perez.Darryl@epa.gov>; Wilson, Afreeka <Wilson.Afreeka@epa.gov>; Bossard, Justin <bossard.justin@epa.gov>; OMS Audit Coordination <OMS_Audit_Coordination@epa.gov>
**Cc:** Vaidya, Dharmik <Vaidya.Dharmik@epa.gov>; Fleury, Lorraine <FLEURY.LORRAINE@EPA.GOV>; Bracey, Shay <Bracey.Shay@epa.gov>; Miles-Mclean, Stuart <Miles-Mclean.Stuart@epa.gov>; Knapp, Kristien <Knapp.Kristien@epa.gov>; Perkins, Susan <Perkins.Susan@epa.gov>; EPA-GAO-Liaison-Team <EPA-GAO-Liaison-Team@epa.gov>
**Subject:** OUO - GAO Subaward Oversight Draft for EPA Comment (107315)

Good morning,

Please find attached for review and response, GAO's Draft Report entitled *Grants Management: Recent Guidance Could Enhance Subaward Oversight* (GAO-25-107315). OMS had the lead for this engagement.

There are no recommendations for EPA in the report, and no formal response is required.

Technical comments or negative reply are due to GAO no later than **March 12, 2025**. Please include EPA-GAO-Liaison-Team@epa.gov in your response to GAO.

Kind regards,

Brittany Wilson | Agency GAO Liaison
OCFO / Office of the Controller
Phone: 202-564-6758 | Email: *wilson.brittany@epa.gov*

**From:** Gaffigan, Samuel A <GaffiganS@gao.gov>
**Sent:** Wednesday, February 12, 2025 4:39 PM
**To:** Treml, Gregg <Treml.Gregg@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>; Webb, Brian <Webb.Brian@epa.gov>; Perkins, Susan <Perkins.Susan@epa.gov>; Wilson, Brittany <wilson.brittany@epa.gov>; Bracey, Shay <Bracey.Shay@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>; EPA-GAO-Liaison-Team <EPA-GAO-Liaison-Team@epa.gov>; Fleury, Lorraine <FLEURY.LORRAINE@EPA.GOV>
**Cc:** Vaidya, Dharmik <Vaidya.Dharmik@epa.gov>; Arkin, Jeffrey L <ArkinJ@gao.gov>; Drennan, Kathleen M <DrennanK@gao.gov>; Bacon, Michelle <BaconM@gao.gov>
**Subject:** OUO - GAO Subaward Oversight Draft for EPA Comment (107315)

 **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

February 12, 2025

Mr. Gregg Treml
Acting Chief Financial Officer
Environmental Protection Agency
1200 Pennsylvania Ave., NW
Mail Code 2710A
Washington, DC 20460

Dear Mr. Treml,

Attached is a copy of our proposed report entitled *Grants Management: Recent Guidance Could Enhance Subaward Oversight (GAO-25-107315)*. We are providing this draft for your review and comment before the report is issued. Our work was done under engagement code 107315.

We would like to obtain the department's written or oral comments from you or your designated representative by March 12, 2025. These comments will be reflected in the final report. We prefer written comments and request that the written comments be provided electronically. However, we will accept comments provided in hard copy, orally, or in an unsigned e-mail message. Please direct all comments and any questions you may have concerning this draft to Kathleen Drennan, Assistant Director, (617) 788-0581 or drennank@gao.gov.

This draft has not been fully reviewed within GAO, is subject to change, and must be safeguarded to prevent its improper disclosure. Please do not show or release its contents for any purpose. All drafts remain the property of GAO. Upon request, all electronic copies of drafts must be destroyed and any hard copies of drafts must be returned. We appreciate your cooperation in this matter.

Sincerely yours,

Jeff Arkin
Director, Strategic Issues

Attachment



**United States Government Accountability Office**

## Report to Congressional Requesters

**March 2025**

DRAFT

# GRANTS MANAGEMENT
# Recent Guidance Could Enhance Subaward Oversight

This draft report is being provided to obtain advance review and comment. It has not been fully reviewed within GAO and is subject to revision.

Recipients of this draft must not, under any circumstances, show or release its contents for other than official review and comment. It must be safeguarded to prevent improper disclosure. This draft and all copies remain the property of, and must be returned on demand to, the Government Accountability Office.

**Notice:
This draft is restricted to official use only.**

GAO-25-107315

EPA_00143243



March 2025

# GRANTS MANAGEMENT

## Recent Guidance Could Enhance Subaward Oversight

Highlights of GAO-25-107315, a report to congressional requesters

## Why GAO Did This Study

In fiscal year 2024, the federal government awarded roughly $1.2 trillion in grants to support national priorities. Grant recipients can pass through these funds to subrecipients in the form of a subaward. GAO and Offices of Inspectors General (OIG) audits have found persistent issues with the completeness and accuracy of subaward information. This makes it challenging to track where subaward funds are ultimately spent and can increase the risk for fraud and misuse of federal funds.

GAO was asked to review various issues related to subaward oversight. This report describes (1) common issues related to subaward oversight identified through single audits; (2) how selected federal agencies and grant programs implement their subaward oversight requirements; and (3) recent changes to regulations and guidance that could enhance subaward oversight.

GAO analyzed single audit findings from the Federal Audit Clearinghouse to identify common compliance issues related to subaward oversight. GAO met with officials from IIJA grant programs that distributed funds as subawards to describe examples of federal subaward oversight. GAO also reviewed recent changes to relevant laws, regulations, and guidance, and discussed how those changes could improve subaward oversight with OMB staff.

View GAO-25-107315. For more information, contact Jeff Arkin at (202) 512-6806 or ArkinJ@gao.gov.

## What GAO Found

The Single Audit Act requires nonfederal entities that expend above a certain amount in federal awards in a fiscal year to undergo a single audit—an audit of an entity's financial statements and federal awards—or in select cases a program-specific audit. GAO analyzed 3,680 single audit findings from 2022-2024 addressed to recipients that received a grant award from a federal agency and passed funds through to another entity, or subrecipient, in the form of a subaward. According to this analysis, 36 percent of these findings were primarily associated with one of the following topics:

- **Incomplete subaward reporting.** Some of these grant recipients did not fulfill required reporting of subawards to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) for display on USAspending.gov. This limits the transparency of federal funding and make it challenging to track these funds for oversight purposes.

- **Subrecipient monitoring activities.** Some of these grant recipients did not monitor their subrecipients' activities or did not review audit reports for their subrecipients, which impairs their oversight of those subrecipients.

- **Verifying or justifying eligibility decisions.** Some of these grant recipients did not ensure that their subrecipients were eligible to receive federal funds, which can put those funds at risk for fraud.

While grant recipients are responsible for overseeing their subawards, federal agencies are to ensure the grant recipients they make awards to carry out their oversight responsibilities. GAO selected an example grant program with subrecipients from each of the three agencies that received the largest amounts of Infrastructure Investment and Jobs Act (IIJA) funding. Officials from these programs described a variety of approaches to support subaward oversight, such as reviewing recipients' budgets, progress reports, and audit findings.

In 2024, the Office of Management and Budget (OMB) took steps that could enhance federal subaward oversight. These steps include:

- revising the Code of Federal Regulations to direct agencies to review single audit findings to non-federal entities—including subrecipients—which could broaden agencies' awareness of challenges affecting their programs;

- issuing a memorandum directing agencies to update their award terms to clearly convey the requirement for grant recipients to provide complete subaward descriptions in their reports to FSRS, which should result in clearer information available to the public about federal spending; and

- addressing GAO's prior recommendation to clarify agencies' role in supporting subaward data quality by issuing a memorandum directing agencies to hold their grant recipients accountable for reporting subawards to FSRS as required, which should lead to more complete subaward data being publicly available on USAspending.gov.

GAO will continue to monitor subaward oversight and transparency as agencies take steps to implement this guidance.

United States Government Accountability Office

EPA_00143244

**Abbreviations**

| | |
|---|---|
| API | application programming interface |
| DOE | Department of Energy |
| DOT | Department of Transportation |
| EPA | Environmental Protection Agency |
| ESSER | Elementary and Secondary School Emergency Relief |
| FAC | Federal Audit Clearinghouse |
| FFATA | Federal Funding Accountability and Transparency Act of 2006 |
| FSRS | Federal Funding Accountability and Transparency Act Subaward Reporting System |
| GSA | General Services Administration |
| IIJA | Infrastructure Investment and Jobs Act |
| LDA | Latent Dirichlet Allocation |
| OIG | Office of Inspector General |
| OMB | Office of Management and Budget |
| UTC | University Transportation Centers |
| Weatherization | Weatherization Assistance Program for Low-Income Persons |

This is a work of the U.S. government and is not subject to copyright protection in the United States. The published product may be reproduced and distributed in its entirety without further permission from GAO. However, because this work may contain copyrighted images or other material, permission from the copyright holder may be necessary if you wish to reproduce this material separately.

DRAFT

EPA_00143245

March XX, 2025

The Honorable James Lankford
Chairman
Subcommittee on Border Management, Federal Workforce, and Regulatory Affairs
Committee on Homeland Security and Governmental Affairs
United States Senate

The Honorable Joni Ernst
United States Senate

The Honorable Margaret Hassan
United States Senate

In fiscal year 2024, the federal government obligated roughly $1.2 trillion in grants to tribal, state, local, and territorial governments to support national priorities. Grant recipients, such as states, can pass through these funds to other entities in the form of a subaward to help carry out a portion of the work associated with a grant.[1]

Our prior work, and that of federal Offices of Inspectors General (OIG), has found persistent issues with the completeness and accuracy of publicly available information on subawards. For example, our prior work found that a lack of robust data entry validations and unclear guidance limited the quality of subaward data displayed on USAspending.gov.[2] These issues make it challenging to track where subawards are ultimately spent and for what purpose. Likewise, OIG and single audit reports have also identified a number of issues with subaward reporting and oversight, including instances of subawards not being reported properly, grant recipients not performing required risk assessments of subrecipients, and grant recipients not reviewing single audit reports for their subrecipients.[3]

You asked us to review various issues related to subaward oversight. This report describes (1) common issues related to subaward oversight identified through single audits, (2) how selected federal agencies and grant program offices implement their grant subaward oversight

---

[1]A subaward is an award provided by a pass-through entity to a subrecipient to carry out part of a federal award received by the prime recipient or "pass-through" entity. 2 C.F.R. § 200.1.

[2]GAO, *Federal Spending Transparency: Opportunities Exist to Improve COVID-19 and Other Grant Subaward Data on USAspending.gov,* GAO-24-106237 (Washington, D.C.: Nov.16, 2024).

[3]A single audit is an audit of a non-federal entity's financial statements and expenditures of federal awards that can help identify the award recipient's deficiencies in (1) compliance with provisions of laws, regulations, contracts, or grant agreements that may have a direct and material effect on each major grant program; or (2) its internal controls pertaining to relevant compliance program requirements for each major grant program. The Single Audit Act, and implementing Office of Management and Budget (OMB) guidance, generally requires an annual single audit (or, in limited circumstances, permits a program-specific audit) be performed on non-federal entities that spent $1 million or more in federal award dollars in a fiscal year. 2 C.F.R. § 200.501(a), (b). 31 U.S.C. § 7502(a); 2 C.F.R. § 200.501. Effective for federal awards issued beginning October 1, 2024, the expenditure threshold increased from its previous level of $750,000 to $1 million. Such audits must be performed by an independent auditor and conducted in accordance with generally accepted government auditing standards. 31 U.S.C. § 7502(c). The Single Audit Act is codified, as amended, at 31 U.S.C. §§ 7501-7506, and the OMB single audit guidance is reprinted in 2 C.F.R. part 200, subpart F.

requirements, and (3) recent changes to regulations and guidance that could enhance subaward oversight.

To identify common subaward oversight issues identified through single audits, we analyzed single audit findings using a form of text analytics called topic modeling to identify themes in the contents of over 7,000 single audit reports from audit years 2022-2024, spanning over 30 grant awarding agencies.[4] We also reviewed federal government oversight reports related to subaward oversight.

To describe how selected federal agencies implement their subaward oversight requirements, we selected three example agencies and grant programs. We used data from USAspending.gov to identify agencies that received the most Infrastructure Investment and Jobs Act (IIJA) funding for grants and programs that had reported subawards.[5] We also interviewed knowledgeable officials from our selected agencies and program offices, and reviewed documentation related to their grant and subaward management activities.

To describe recent changes in the requirements on awarding agencies and grant recipients for subaward oversight, we reviewed relevant federal laws, regulations, and guidance, including OMB's final rule issued in April 2024, which took effect in October 2024. We interviewed Office of Management and Budget (OMB) staff about recent updates to regulations and guidance memoranda to confirm our understanding for our purposes. For more information on our scope and methodology, see appendix I.

We conducted this performance audit from January 2024 to March 2025 in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives.

## Background

Federal grant subawards are made when a recipient that received a grant award from a federal agency—known as the prime recipient—passes some amount of that award to a subrecipient to carry out part of the work associated with the grant award. Subawards made by prime grant recipients are referred to as first-tier subawards.[6] Federal awarding agencies do not have a direct legal relationship with subrecipients. Instead, oversight responsibility for first-tier subawards belongs to the prime recipients of federal awards (see figure 1).[7]

---

[4]We did not limit our single audit analysis to a specific awarding agency or agencies.

[5]Pub. L. No. 117-58 (2021).

[6]Subrecipients are also able to pass funding on to another entity to carry out or assist with part of the work, which would result in a subaward beyond the first tier (second tier, third tier, etc. as appropriate).

[7]2 C.F.R. §§ 200.331-332. A pass-through entity is a recipient or subrecipient that provides a subaward to a subrecipient (including lower tier subrecipients) to carry out part of a federal program. 2 C.F.R. § 200.1.

**Figure 1: Levels of Federal Funding for Grant Awards**



Source: GAO summary of grant award tiers.  |  GAO-25-107315

Federal regulations assign several oversight responsibilities to prime recipients for the subawards they make.[8] Among other requirements, these responsibilities include:

- confirming that subrecipients are not suspended or debarred from receiving federal funds;

- evaluating subrecipients' risk of committing fraud;

- reporting subaward information to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS), as required;[9]

- ensuring subrecipients undergo single audits, if required, and that they address findings from those audits; and

- regularly monitoring the activities of their subrecipients on an ongoing basis.[10]

---

[8]These requirements apply to all pass-through entities, including prime recipients and subrecipients who pass through funds to another entity. Pass-through entity means a recipient or subrecipient that provides a subaward to a subrecipient (including lower tier subrecipients) to carry out part of a federal program. The authority of the pass-through entity under this part comes from the subaward agreement between the pass-through entity and subrecipient.
[9]FSRS is the system into which prime recipients report subaward information. FSRS feeds that information into USAspending.gov for public access. The Government Services Administration (GSA) administers FSRS. In November 2024, GSA announced that it will be retiring FSRS.gov, the website prime recipients use to report subaward information, and transferring subaward reporting functions to SAM.gov in March 2025.
[10]See appendix II for a summary of selected prime recipient subaward oversight requirements laid out in federal regulations and guidance.

Although federal agencies that award prime grants do not have a direct legal relationship with subrecipients of those grants, they provide indirect oversight of subawards by ensuring prime recipients carry out their subaward oversight responsibilities.[11] The role for awarding agencies includes:

- approving prime recipients' subaward activities that were not previously approved as part of their application;

- communicating subaward oversight and reporting requirements to prime recipients;

- collecting and reviewing regular performance reports from prime recipients, which can include information on subrecipients and their activities;[12]

- reviewing and addressing findings from single audits, which can include findings on prime recipients' monitoring of subawards; and

- holding prime recipients accountable for reporting required subawards to USAspending.gov via FSRS.[13]

## Common Subaward Compliance Issues Emerged from Single Audit Findings

To identify common compliance issues related to subaward oversight, we used a statistical approach called topic modeling to analyze relevant findings from single audits.[14] We selected audit findings from audit years 2022-2024 that were addressed to prime recipients that passed funds through to another entity in the form of a subaward. Through our topic model we identified nine topics, three of which we determined were most relevant to subaward oversight and compliance issues. Of the 3,680 single audit findings we selected for this analysis, 1,332 (36 percent) were primarily associated with one of these three topics.

**Incomplete subaward reporting.**[15] According to our model, 517 (14 percent) of the 3,680 findings we selected for this analysis were most closely associated with the topic we refer to as

---

[11]2 C.F.R. § 200.339 details remedies for noncompliance, as appropriate. These remedies include temporarily withholding payments until an award recipient or subrecipient takes corrective action, disallowing costs for all or part of the activity associated with the noncompliance of the recipient or subrecipient, or suspending or terminating the federal award in part or in its entirety.

[12]Agencies are required to measure a recipient's performance and communicate how the recipient must submit performance reports on achievement of the program's goals and objectives. 2 C.F.R. § 200.301(a). Throughout this report, we refer to the recipient's performance reports as progress reports.

[13]See appendix II for a summary of selected agency oversight requirements laid out in federal regulation and guidance.

[14]Topic modeling uses machine learning to detect underlying topics, or groups of related words, within text documents. See appendix I for detailed information about our topic modeling.

[15]To succinctly refer to the topics generated by our topic models in this report, we have assigned shortened names to the ones we will discuss based on the keywords identified by our models and our subjective review of the findings deemed most representative of those topics, according to our models. These names do not summarize all the keywords identified by our model as associated with the topic, nor do all findings associated with that topic relate

"FFATA reporting." Findings associated with this topic commonly noted that data about subawards required to be reported under FFATA were either not reported, not reported timely, or reported incorrectly. For example, one single audit finding associated with this topic described testing a sample of 96 subawards and found that over half of those, totaling over $130 million in obligations, were not reported to FSRS.[16] Subawards not reported to FSRS are not visible to the public via USAspending.gov, limiting the transparency of federal funding and making it challenging to track these funds for oversight purposes.

We examined the single audit findings most closely associated with this topic to identify shared root causes.[17] Based on that analysis, we found:

- at least 199 (38.5 percent) were attributed to the prime recipient having deficient internal controls to fully comply with their subrecipient monitoring responsibilities;

- at least 99 (19.1 percent) were attributed to the prime recipient not understanding or being aware of federal requirements;

- at least 78 (15.1 percent) were attributed to mistakes or errors, including miscalculations;

- at least 44 (8.5 percent) were attributed to personnel limitations, such as inadequate staff and turnover; and

- at least 15 (2.9 percent) were attributed to the auditee lacking evidence, such as documents, records, or tracking.

**Subrecipient monitoring activities.**[18] According to our model, 482 (13 percent) of the 3,680 findings we selected for this analysis were most closely related to the topic we refer to as "assorted subrecipient monitoring activities." The findings most closely associated with this topic included deficiencies such as not monitoring the activities of subrecipients, not conducting a required risk assessment for subrecipients, and not ensuring that subrecipients underwent required single audits or failing to review single audit reports.

According to our analysis of the cause statements related to these findings, we found that:

- at least 224 (46.5 percent) were attributed to the prime recipient having inadequate internal controls to fully comply with their subrecipient monitoring responsibilities;

---

specifically to the concept captured by our topic name. FFATA reporting is the name we assigned to topic number 2 in appendix I table 1. "FFATA" refers to the Federal Funding Accountability and Transparency Act of 2006, Pub. L. No. 109-282, 120 Stat. 1186, which is reprinted as amended at 31 U.S.C. § 6101 note.

[16] Florida Department of Financial Services, *Florida Annual Comprehensive Financial Report for the fiscal year ended June 30, 2023* (Tallahassee, Fl.: Feb. 28, 2024).

[17] We performed this analysis by using a searching methodology on words and phrases related to certain root causes we identified (see appendix I for more information). Findings in our analysis may have more than one root cause type. In addition, because we cannot perfectly account for every possible phrasing, frequencies of root causes based on this analysis may be underestimates.

[18] Subrecipient monitoring activities refers to topic number 1 in appendix I table 1.

EPA_00143250

- at least 41 (8.5 percent) were attributed to personnel limitations, such as inadequate staff and turnover;

- at least 39 (8.1 percent) were attributed to mistakes or errors, including miscalculations;

- at least 31 (6.4 percent) were attributed to the prime recipient not understanding or being aware of federal requirements; and

- at least 30 (6.2 percent) were attributed to the auditee lacking evidence, such as documents, records, or tracking.

**Verifying or justifying eligibility decisions.**[19] According to our model, 333 (9 percent) of the 3,680 findings we selected for this analysis were most closely related to the topic we refer to as "verifying or justifying eligibility decisions." Prime recipients of federal funds that plan to make a subaward must first check that intended subrecipients are not suspended or debarred from receiving federal funding. This can be done by checking the list of suspended and debarred entities on SAM.gov.[20] If recipients award federal funds to subrecipients without conducting the required suspension and debarment checks, then those funds are at risk of being spent fraudulently.

According to our analysis of the cause statements in the findings most closely associated with this topic:

- at least 101 (30 percent) were attributed to the prime recipient having deficient internal controls to fully comply with their subrecipient monitoring responsibilities;

- at least 42 (12.6 percent) were attributed to the prime recipient not understanding or being aware of federal requirements;

- at least 37 (11.1 percent) were attributed to the auditee lacking evidence, such as documents, records, or tracking;

- at least 20 (6.0 percent) were attributed to simple mistakes or errors, including miscalculations; and

- at least 13 (3.9 percent) were attributed to personnel limitations, such as inadequate staff and turnover.

## Selected Agencies Use a Variety of Approaches to Conduct Subaward Oversight

Selected grant program officials we spoke to told us about a variety of approaches they take to implement their subaward oversight responsibilities. We selected three financial assistance programs from the Department of Energy (DOE), the Department of Transportation (DOT), and

---

[19]Verifying or justifying eligibility decisions is the name we assigned to topic number 5 in appendix I table 1. This topic also included findings about decisions to limit competition for procurements or contracts made with federal grant funds, and how those decisions were justified or documented.

[20]SAM.gov is the System for Award Management, administered by GSA.

the Environmental Protection Agency (EPA), which received the largest amounts of Infrastructure Investment and Jobs Act (IIJA) funding to provide examples of how they conduct oversight of subawards.[21] We selected these example programs based on funding they had received and their experience with subawards. See figure 2 for more information on our selected example programs.



**Figure 2: Selected Programs with Subawards that Received Funding from the Infrastructure Investment and Jobs Act (IIJA)**

| U. S. Department of Energy | U. S. Department of Transportation | U. S. Environmental Protection Agency |
|---|---|---|
| **Weatherization Assistance Program for Low-Income Persons** | **University Transportation Centers Program** | **Chesapeake Bay Program** |
| Provides formula grants to increase the energy efficiency of dwellings owned or occupied by low-income persons, reduce energy expenditures, and improve health and safety. | Provides project grants to universities for transportation research and education. | Provides project grants for restoration efforts in regions around the Chesapeake Bay. |
| Prime recipients: States and Territories | Prime recipients: Universities | Prime recipients: Non-profits; state, tribal and local governments; colleges and universities; and interstate agencies. |
| IIJA Appropriations: $3.5 billion | IIJA Appropriations: $500 million[a] | IIJA Appropriations: $238 million |

Source: GAO summary of program information.  |  GAO-25-107315

[a]This total includes general fund appropriations as well as contract authority for this program.

## Approving Planned Subaward Budgets in Prime Recipients' Applications

Recipients can include information about proposed subawards with their grant application. This information can include the total amount the prime recipient plans to pass through to subrecipients, details about anticipated subrecipients, and the amount each subrecipient would be slated to receive. Recipients must receive written approval for subaward activities that were not previously approved as part of their application from the agency or pass-through entity that made the award.

Officials we spoke to from our selected programs provided us different examples of what these proposed budgets contain. For example, applications for DOE's Weatherization Assistance Program for Low-Income Persons (Weatherization) include budgets with specific columns for

---

[21]Agencies reported the first year IIJA funds are available for obligation spans fiscal year 2022 to fiscal year 2026.

subrecipient administration, and training and technical assistance for subrecipients.[22] DOE officials told us that for competitive grants, applicants are to identify potential subrecipients in their grant proposal as well as provide an estimated budget that would include subawards, certain equipment to be used, and a written description of what the subrecipients' contributions to the overall project will be. Additionally, DOE officials told us that Weatherization prime recipients are required to submit a plan that outlines how the prime recipient will administer the funds and ensure compliance with requirements and that includes a list of planned subrecipients.

Colleges and universities applying for grants under DOT's University Transportation Centers (UTC) program as a lead institution include proposed budgets for each intended consortium member institution in their application.[23] DOT officials told us they consider the consortium of colleges and universities to be a team of partners, and the award decisions are made based on all the institutions involved in a proposed consortium.

If a prime recipient proposes subaward activities not previously proposed and approved in the federal award, they must submit a written request to the awarding agency and have that request approved.[24] For example, DOE officials shared an example of a Weatherization recipient's modified annual plan that added a subrecipient that was not in the original plan. The modification included the new subrecipient's name and revised subaward amount for each planned subrecipient.[25] Officials from UTC and the Chesapeake Bay Program told us they had not received any requests to change funding to subawards after an original grant agreement was made.


## Ensuring Prime Grant Award Recipients Report Required Subaward Information

Prime recipients are required to report subawards greater than or equal to $30,000 for display on USAspending.gov, via FSRS, by the end of the month after the month in which the award was made.[26] For example, a reportable subaward made in November must be reported to USAspending.gov via FSRS by the end of December.

Agency officials shared some examples of activities that are intended to ensure prime recipients report required subaward information. For example, EPA officials told us they check FSRS as

---

[22]Energy's Weatherization Assistance Program for Low-Income Persons is intended to increase the energy efficiency of dwellings owned or occupied by low-income persons, reduce their total residential energy expenditures, and improve their health and safety, especially low-income persons who are particularly vulnerable. DOE awards prime grants to states and territories. The states and territories then make subawards to non-profit community action agencies or other public or nonprofit entities that use the funds locally.

[23]Transportation's University Transportation Centers program awards grants to non-profit institutions of higher education to establish and operate centers that are intended to advance transportation research and technology and develop the next generation of transportation professionals. These centers are made up of a lead institution, which is the prime recipient of the grant, and consortium members, which are institutions of higher education that receive funding via subawards from the lead institution.

[24]2 C.F.R. § 200.308(f)(6). A change of subrecipient only requires prior approval if the federal agency or pass-through entity that made the award includes the requirement in the terms and conditions of the federal award.

[25]The total amount of subaward funds in this example remained the same, so the amount for some subrecipients was redistributed to account for the additional subrecipient.

[26]2 C.F.R. § 170 app. A(I)(a)(1)-(2). Some exemptions apply.

part of their annual review of each grant recipient to ensure subawards have been reported for the Chesapeake Bay Program.[27] EPA's internal guidance for this review contains detailed instructions on accessing FSRS to check whether grant recipients have reported their subawards. EPA officials also reach out to prime recipients that have not reported their subawards to FSRS to remind them of their reporting requirement.

DOE officials told us that they did not regularly check FSRS reporting for recipients of the Weatherization program.[28] DOE officials told us that they are working on improving the subaward data in FSRS for the Weatherization program by developing a report that merges data from several systems to identify prime recipients that are not reporting subawards. DOE officials also told us they plan to send a reminder to those prime recipients that have made subawards above the required reporting threshold regarding their FSRS reporting requirements, which could help improve the completeness of Weatherization subaward reporting.

Collecting Regular Progress Reports from Grant Recipients

Federal regulations generally require prime recipients to submit regular reports on their progress implementing grant awards to awarding agencies on at least an annual but no more than a quarterly basis.[29] These periodic reports help agencies ensure program goals are being met and can contain information on subrecipients and the work they are conducting.

The content of progress reports varied across our selected programs. For example, the progress reports we reviewed for the Weatherization program presented total numbers of weatherized units in a state or territory during the reporting period and over the life of the grant to date. These quarterly reports contained additional information on the work conducted, such as the number of weatherized units by primary heating fuel and type of occupant.[30]

Progress reports we reviewed for the UTC program included descriptions of research projects subrecipients were conducting. DOT officials told us that prime recipients submit progress reports every six months using a standardized template that describes major goals of the program; research projects being undertaken; and accomplishments in areas such as research,

---

[27]The EPA's Chesapeake Bay Program awards competitive grants and cooperative agreements to states, tribal and local governments, non-governmental organizations, interstate agencies and academic institutions to reduce and prevent pollution and to improve the living resources in the Chesapeake Bay. Some of these recipients make subawards to other entities, such as research centers, to conduct work that includes creating pollinator habitats, stream restoration, and implementing runoff reduction projects.

[28]We reviewed subaward data from USAspending.gov to identify prime recipients of our selected programs that had not reported any subawards to USAspending.gov, as of November 1, 2024. We then reviewed progress reports submitted by those prime recipients to determine whether the reported activities and budgets indicated that subawards had been made that should have been reported. We found that some Weatherization prime recipients that indicated they had made subawards did not have any subawards reported on USAspending.gov. For example, 15 (27 percent) of the 56 Weatherization grant recipients that indicated in their progress reports that they had made subawards had not reported any subawards to USAspending.gov via FSRS as of November 1, 2024. According to the plans we reviewed, these recipients intended to subaward a combined total of $818 million.

[29]Agencies are required to measure a recipient's performance and communicate how the recipient must submit performance reports on achievement of the program's goals and objectives.  2 C.F.R. § 200.301(a).  Throughout this report, we refer to the recipient's performance reports as progress reports.

[30]Revisions to the quarterly progress reports for program year 2024 include requiring recipients to report units completed by subrecipient.

EPA_00143254

education, and workforce development. They also noted that there are individual reports submitted for each research project across the centers that include a description of the project and its impacts, and that each transportation center is required to have a website where they post information on the research conducted.[31]


Reviewing Findings from Single Audits and OIG Reports

Under the Single Audit act and OMB's implementing guidance, nonfederal entities that expend $1 million or more in federal awards in their fiscal year are generally required to undergo a single audit.[32] If a single audit identifies certain deficiencies, then these single audit findings must be included in the reporting package that the recipient submits to the Federal Audit Clearinghouse (FAC).[33] Single audits typically include a financial review of an entity's expenditures of federal awards, and a compliance review related to its major grant programs that typically covers issues such as cash management, equipment and real property management, and allowable costs. Single audit findings can be relevant to subawards even when the auditee is not a subrecipient.[34] For example, single audits of prime recipients can find compliance issues with the auditee's subrecipient monitoring or reporting, which could include reporting subawards to FSRS. While single audits are an important component of oversight, they do not cover all recipients of federal funds, all federal programs, or all funding types.[35]

Officials we spoke to across our selected agencies took a variety of approaches when reviewing single audit findings.[36] For example, DOE officials told us single audits are a component of their annual risk assessment process for the states and territories that are the prime recipients of Weatherization program funds. These officials also told us that a single audit coordinator tracks and reviews single audit findings for prime recipients that receive weatherization funds, as well as other findings related to DOE financial assistance programs. According to DOE officials,

---

[31]For an example of one such website, see https://www.uh.edu/cybercare/.

[32]31 U.S.C. § 7502(a); 2 C.F.R. § 200.501. Effective for federal awards issued beginning October 1, 2024, the expenditure threshold increased from its previous level of $750,000 to $1 million. Such audits must be performed by an independent auditor and conducted in accordance with generally accepted government auditing standards. 31 U.S.C. § 7502(c).

[33] The FAC is the repository of record designated by OMB for single audits performed under the Single Audit Act. The U.S. Census Bureau maintained the FAC until October 2023, when OMB designated the General Services Administration to assume responsibilities. Audited entities upload reports to the FAC. The FAC can be accessed at https://www.fac.gov/.

[34]The annual Compliance Supplement is the authoritative source of information for auditors in which OMB identifies existing important compliance requirements that the federal government expects to be considered as part of an audit. Auditors use it to understand the federal program's objectives, procedures, and compliance requirements, as well as audit objectives and suggested audit procedures for determining compliance with the relevant federal program. 2 C.F.R. § 200.1.

[35]The absence of a single audit might occur, for example, when the recipient is a for-profit entity, the program does not involve a grant or other form of federal assistance, or the funding vehicle is a contract.

[36]GAO has previously reported on agency efforts to use single audit findings to ensure that federal funds are spent appropriately. See GAO, *Single Audits: Interior and Treasury Need to Improve Their Oversight of COVID-19 Relief Funds to Tribal Entities,* GAO-25-106741 (Washington, D.C.: Nov. 7, 2024); and GAO, *COVID-19 Relief: Treasury Could Improve Its Administration and Oversight of State and Local Fiscal Recovery Funds,* GAO-24-106027 (Washington, D.C.: Dec. 14, 2023). GAO also has work expected to issue in March 2025 examining the extent to which the Department of Health and Human Services follows up on single audit findings for the Temporary Assistance for Needy Families program to ensure corrective actions are taken.

these findings might not be related to the Weatherization program specifically, but any weaknesses in internal controls identified for a prime recipient could also affect the implementation of the Weatherization program. DOE officials also stated that single audits of Weatherization prime recipients generally do not focus on the quality of subrecipient oversight because Weatherization prime recipients are large jurisdictions—states and territories—for whom Weatherization spending is a relatively small portion of the total amount of federal financial assistance they expend.

DOT officials told us that DOT's OIG identifies single audit findings affecting DOT programs and coordinates with the Office of the Secretary of Transportation to track them using an agency-wide database. This information is also shared with relevant DOT program offices to implement a plan for remediating audit findings and with prime recipients to address any questioned costs.[37] DOT officials told us that once a finding is resolved, the Office of the Secretary works with DOT's OIG to document and provide evidence of the action that was taken to address the finding.[38] DOT OIG officials told us they issue quarterly summary reports on significant single audit findings, and that these reports focus on instances where DOT is the cognizant agency and the finding affects directly awarded DOT programs.[39] If DOT is not the cognizant agency, the officials told us they will only report on those findings in some cases, such as if the questioned costs exceed $5,000.

EPA officials told us the Chesapeake Bay Program has a baseline review process that involves administrative and technical checks performed once a year, and that a separate review of single audit findings is a part of this annual baseline review for all prime recipients. Specifically, the officials said that they search the FAC each year for their prime recipients and review the most recent year of audit findings for those recipients that are associated with the EPA.[40]

EPA officials also told us grant officers track single audit findings for follow up. The information they track includes the prime recipient involved, the year of the audit, the nature of the finding, the date the findings were resolved, when EPA sent a management decision letter to the audited entity, and any additional comments related to the single audit findings.[41] EPA officials also said they can use single audit findings to identify prime recipients they should contact to provide additional technical assistance or training.

---

[37]Questioned cost generally means an amount, expended or received from a federal award, that in an auditor's judgment (1) is noncompliant or suspected noncompliant with federal statutes, regulations, or the terms and conditions of the federal award; (2) lacked adequate documentation to support compliance at the time of the audit; or (3) appeared unreasonable and did not reflect the actions a prudent person would take in the circumstances. 2 C.F.R. § 200.1.

[38]DOT officials told us that an office is being formed that will track whether the agency's grant recipients and subrecipients undergo required single audits.

[39]A cognizant agency is generally a federal agency that provides the most direct funding to a non-federal entity that expends more than $50 million in federal awards. In certain circumstances however, OMB may designate a specific agency as a cognizant agency. 2 C.F.R. § 200.513.

[40]EPA officials also told us that grant specialists should notify EPA's Compliance and Oversight Branch if they identify recipients that may be noncompliant with the single audit submission requirement in federal regulation (30 calendar days after the auditee receives the auditor's report(s) or nine months after the end of the audit period—whichever is earlier).

[41]Management decision letters must disclose whether an agency sustains audit findings; the reasons for the decisions; and the expected auditee actions to repay disallowed costs, if any, make financial adjustments, or take other actions. See GAO-24-106027.

Agency OIGs can also conduct audits that can identify issues related to subawards. For example, DOT's OIG issued a report that found many Operating Administrations lack detailed information on how recipients use DOT funding because the funds are passed through to subrecipients.[42] Another DOT OIG report found the agency had not conducted some required reviews of subgrants.[43] Officials from DOE's OIG told us they are planning to conduct audits of recipient and subrecipients of the Weatherization program that will review topics such as eligibility testing and incurred costs.

Monitoring Prime Recipients' Oversight of First-Tier Subawards

Federal regulations require prime recipients to ensure that their subrecipients are not suspended or debarred, ensure subawards are identified as such to the subrecipient, evaluate fraud and noncompliance risk, verify subrecipients undergo required single audits, and perform appropriate subrecipient monitoring.[44]

Officials from our selected programs use a variety of approaches to monitor their prime recipients' oversight of first-tier subawards. These activities include:

**Collecting regular reports on subrecipient monitoring activities.** Weatherization prime recipients are required to complete an annual Training, Technical Assistance, Monitoring, and Leveraging report in which they describe their monitoring of subrecipients, including the subrecipients they monitored, any major findings from their monitoring and resolutions, and trends with respect to findings.

**Checking subrecipient eligibility.** DOE officials told us that when reviewing recipients' proposed plans, they use SAM.gov to look for any issues with intended subrecipients in the plan. For example, officials told us they might find that a subrecipient holds outstanding federal debt. In those cases, officials said they would reach out to the prime recipient or the subrecipient directly and ask if they have a payment plan in place. They would then confirm that the payment plan is being followed to resolve the debt or could put a temporary hold on those subrecipients' funding, if appropriate.[45]

**Conducting site visits.** DOE officials told us that each year, the Weatherization program performs a risk assessment of prime recipients and uses the results of that assessment to prioritize which site visits to conduct. During site visits, Weatherization officials use a monitoring checklist that directs officials to collect and review documents from the prime recipient that include the most recent subrecipient agreements and subrecipient monitoring reports, samples of communications with subrecipients, and subrecipient corrective action plans (if applicable). The checklist also instructs Weatherization officials to assess how a prime recipient ensures

---

[42]Department of Transportation OIG, *DOT Should Enhance Its Fraud Risk Assessment Process for IIJA-Funded Surface Transportation Programs*, ST2023034 (June 20, 2023).
[43]Department of Transportation OIG, *Gaps in FAA's Oversight of the AIP State Block Grant Program Contribute to Adherence Issues and Increase Risks,* AV2021017 (Feb. 10, 2021).
[44]2 C.F.R § 200.332.
[45]While they do not directly oversee subawards, awarding agencies may take action, including temporarily withholding payments until corrective action is taken and suspend or terminate an award. 2 C.F.R. § 200.339.

that its subrecipients have all relevant program materials needed to effectively carry out the program, what the prime recipient's process is for executing its subrecipient awards, and how the prime recipient reviews and validates subrecipient invoices for allowable costs.

**Holding regular meetings with prime recipients.** DOT officials told us that they hold meetings twice a year with transportation centers participating in the UTC program that allow recipients to ask questions and learn from one another. EPA officials told us that that they meet with prime recipients to touch base after the recipients submit each of their semi-annual progress reports.

**Providing technical assistance to prime recipients.** EPA officials told us they will often help Chesapeake Bay Program recipients with questions they raise. EPA also provides specific guidance to help prime recipients understand subawards. For example, EPA guidance documents contain an appendix with information on making the distinction between a subrecipient and a contractor.[46]

**Reviewing invoices.** DOT officials told us they periodically review prime recipients' invoices to provide assurance that subrecipients are using funds appropriately. Officials stated that grants managers use a risk-based approach to select invoices to review and may consider factors such as past issues with a recipient when determining risk. In addition to selecting invoices based on risk, officials told us that they also try to review invoices from a random recipient selected from different types of UTC grant recipients.

## Recent Revisions to Regulations and Guidance Could Enhance Subaward Oversight

Recent revisions to OMB regulation and guidance provide direction to federal agencies on improving the management of federal financial assistance, as shown in figure 3.

---

[46]The pass-through entity is responsible for determining whether an agreement constitutes a subaward or contract. 2 C.F.R. § 200.331. Different requirements may apply to the oversight of procurements.

**Figure 3: OMB Actions to Enhance Subaward Oversight (2022-2024)**



Source: GAO summary of OMB regulations, guidance, and statements. GAO illustrations and PixMarket/stock.adobe.com.  |  GAO-25-107315

Note: OMB issues uniform requirements and guidance for federal financial assistance. See 2 C.F.R. pt. 170, 200. OMB memoranda referenced are *Advancing Effective Stewardship of Taxpayer Resources and Outcomes in the Implementation of the Infrastructure Investment and Jobs Act*, M-22-12 (Washington, D.C.: Apr. 29, 2022) and *Reducing Burden in the Administration of Federal Financial Assistance*, M-24-11 (Washington, D.C.: Apr. 4, 2024).. .

These revisions could lead to improvements in the completeness and accuracy of subaward data, which may make it easier to track federal grant funds awarded to subrecipients and enhance subaward oversight. Specifically, recent revisions address:

**Checking subaward data quality and completeness.** In April 2022, OMB issued memorandum M-22-12, which directs federal agencies to annually review the quality of their financial assistance subaward data, including subaward descriptions, for all their programs.[47] The guidance specifies that agencies should test a statistical sample of subaward records to ensure that award descriptions, reporting of subawards, and post-award reporting are meeting requirements. The guidance also requires agencies' senior officials to consider the results of

---

[47]OMB Memorandum 18-16 on June 6, 2018, "Appendix A to OMB Circular A-123, Management of Reporting and Data Integrity Risk" directed certain agencies to issue a Data Quality Plan evaluating the quality of its reported data. Furthermore, OMB's memo states the plans should consider the incremental risks to data quality in Federal spending data and any controls that would manage such risks.

that testing in their process for producing the management assurance statement in agencies' annual Agency Financial Reports.[48]

In November 2023, we observed issues with the quality of reported subaward data in USAspending.gov, including subawards with impossibly large amounts and likely duplicative records.[49] We also found that existing OMB guidance, such as M-22-12, did not establish clear expectations for agencies' role in supporting subaward data quality. We recommended that OMB clarify its expectations of agencies in supporting the quality of subaward data reported to USAspending.gov via FSRS. OMB revised its regulations and the accompanying implementing memorandum M-24-11 in April 2024 to clarify the required reporting of subawards and that awarding agencies are responsible for ensuring prime recipients report required subaward information to FSRS to be displayed on USAspending.gov.[50] This guidance, if implemented properly, should lead to improvements in the completeness of subaward data available to the public on USAspending.gov. For example, EPA officials told us the Chesapeake Bay Program checks prime recipients' FSRS reporting as part of its annual review, and we did not identify any prime recipients of this program that had unreported subawards.

**Conveying subaward description requirements.** In its M-24-11 memorandum, OMB directed agencies to update the terms of their federal awards to clearly convey to prime recipients the requirement to provide complete subaward descriptions to further increase federal award transparency. We previously reported that award descriptions are particularly important to achieving the Digital Accountability and Transparency Act's transparency goals and for ensuring that data are consistent and comparable, thus allowing the public and policymakers to track federal spending.[51] *Subaward Description* is one of the data elements included by prime recipients when reporting subaward data to USAspending.gov via FSRS. In November 2023 we reported on some issues with subaward descriptions, such as subaward descriptions having five or fewer characters, no letters, or no spaces. Improved subaward descriptions may assist in providing clear information to the public about federal spending.

**Clarifying what must be reported as a subaward.** Previously, OMB, 2 C.F.R. 170 Appendix A instructed prime recipients to report each "obligating action" to FSRS. In November 2023, we found that approximately 25 percent of grant subawards may have been duplicative of other existing subaward records on USAspending.gov, and that some prime recipients may be

---

[48]Annually, agencies must prepare and submit a statement to Congress and the President on its systems compliance with internal accounting and administrative controls. If an agency determines its systems are not in compliance, the agency must identify any material weakness in the systems and describe the plans and schedule for correcting the weakness. 31 U.S.C. § 3512(c), (d)(2). Pursuant to OMB circular A-123, this statement of assurance represents the informed judgment of the agency as to the overall adequacy and effectiveness of internal control within the agency related to operations, reporting, and compliance.

[49]GAO-24-106237.

[50]2 C.F.R. pt. 170, app. A; OMB, *Reducing Burden in the Administration of Federal Financial Assistance,* M-24-11 (Washington, D.C.: Apr. 4, 2024). OMB also shared with us a Controller Alert, which according to OMB was issued in August of 2020, reminding agencies of their responsibilities for approving subawards and for holding prime recipients accountable for reporting subawards. Controller Alerts are designed to highlight emerging financial management issues that may require agency attention or action. They are intended to inform the Chief Financial Officer community of key issues where OMB believes further action may be warranted, but do not constitute official guidance or prescribe specific tasks for agencies beyond consideration of appropriate steps to address the issue.

[51]GAO, *DATA Act: OMB, Treasury, and Agencies Need to Improve Completeness and Accuracy of Spending Data and Disclose Limitations,* GAO-18-138 (Washington, D.C.: Nov. 8, 2017) and GAO-24-106237.

confused about what qualifies as an action they should report.[52] OMB amended the regulation, which became effective on October 1, 2024, to direct prime recipients to report the "total amount of the subaward" when reporting subawards to FSRS.[53] This change may help reduce duplicative reporting of subawards in USAspending.gov by clarifying what prime recipients are supposed to report.

**Following up on subrecipient single audit findings.** Prior to October 1, 2024, 2 C.F.R. 200 required federal awarding agencies to follow-up on single audit findings to ensure "recipients" take timely and appropriate corrective action.[54]  We have previously reported that some agencies focus on addressing and resolving single audit findings only where those findings were addressed to their prime recipients.[55] In its updated guidance, OMB now requires awarding agencies to follow-up on single audit findings for "non-Federal entities." OMB staff confirmed that this revised language is intended to include findings addressed to both prime recipients and subrecipients and clarify that agencies should be aware of all single audit findings associated with their programs.[56] The revised regulations and guidance could encourage agencies to review single audit findings made to subrecipients of their programs. This would enhance agencies' oversight of their prime recipients' subrecipient monitoring responsibilities.[57]

Fully implementing OMB's revised guidance could enhance federal oversight of subawards by leading to more complete subaward reporting to the public, including improved subaward descriptions, and greater use of single audit findings to identify common compliance issues requiring agency attention. Moreover, having more complete and accurate information on where subawards are spent, by whom, and for what purpose could help detect and prevent fraud and misuse of federal grant funds. We will continue to monitor subaward oversight and transparency as agencies take steps to implement this new guidance.

## Agency Comments

We provided a draft of this report to DOE, DOT, EPA, and OMB for review and comment.

We are sending copies of this report to the appropriate congressional committees, the Secretaries of Energy and Transportation, the Administrator of the Environmental Protection Agency, and the Director of the Office of Management and Budget. In addition, the report will be made available at no charge at the GAO website at www.gao.gov.

---

[52] GAO-24-106212.

[53] 2 C.F.R. pt. 170 app. A, § I(a)(1), (2).

[54] 2 C.F.R. § 200.513(c)(3) (2023).

[55] GAO, *Single Audits: Improving Federal Audit Clearinghouse Information and Usability Could Strengthen Federal Award Oversight,* GAO-24-106173, (Washington, D.C.: Apr. 22, 2024).

[56] OMB told us there continues to be no direct legal relationship between awarding agencies and subrecipients; therefore, agencies may go through their prime recipients to follow-up on the status of subrecipients' corrective actions.

[57] During audit years 2022 to 2024, single audits contained over 13,000 findings to subrecipients, based on findings and awards data available in the FAC application programming interface (API) as of January 3, 2025.

If you or your staff have any questions about this report, please contact me at (202) 512-6806 or arkinj@gao.gov. Contact points for our Offices of Congressional Relations and Public Affairs may be found on the last page of this report. GAO staff who made key contributions to this report are listed in appendix III.



Jeff Arkin

Director, Strategic Issues

# Appendix I: Objectives, Scope, and Methodology

This report describes (1) common issues related to subaward oversight identified through single audits, (2) how selected federal agencies and grant program offices implement their grant subaward oversight requirements, and (3) recent changes to regulations and guidance that could enhance subaward oversight.

To identify common subaward oversight issues, we analyzed findings made by independent auditors in recent single audits. A single audit is an audit of a non-federal entity's financial statements and expenditures of federal awards that can help identify the award recipient's deficiencies in (1) compliance with provisions of laws, regulations, contracts, or grant agreements that may have a direct and material effect on each major grant program; or (2) its internal controls pertaining to relevant compliance program requirements for each major grant program.[58] The Single Audit Act, and implementing Office of Management and Budget (OMB) guidance, generally requires an annual single audit (or, in limited circumstances, permits a program-specific audit) be performed on non-federal entities that spent $1 million or more in federal award dollars in a fiscal year.[59]

The Federal Audit Clearinghouse (FAC) is a website that publishes single audits performed under the Single Audit Act.[60] Our prior work has examined the reliability of the FAC data and found them sufficiently reliable for the purposes of describing available information in single audits.[61] We performed additional testing on single audit data we used in our analyses and found that they have not changed in ways that would affect their reliability for our purposes.

To efficiently summarize the contents of thousands of single audit findings, we used a type of statistical text analytics—known as topic modeling—on the text of selected findings. Topic modeling uses machine learning to detect underlying topics, or groups of related words, within text documents.

The topic modeling work took two phases: fitting the models and applying them to updated data. In both phases, we obtained all available findings and federal award data for audit years 2022-2024 from the FAC application programming interface (API). We did not limit that analysis to a specific awarding agency or agencies. To focus on findings most likely to describe challenges related to oversight of grant subrecipients, we removed findings associated with direct federal assistance loans. We also filtered down to findings addressed to either (1) a prime recipient

---

[58]We did not confirm individual cases of noncompliance with monitoring requirements.

[59]31 U.S.C. § 7502(a); 2 C.F.R. § 200.501. Effective for federal awards issued beginning October 1, 2024, the expenditure threshold increased from its previous level of $750,000 to $1 million. Such audits must be performed by an independent auditor and conducted in accordance with generally accepted government auditing standards. 31 U.S.C. § 7502(c). The Single Audit Act is codified, as amended, at 31 U.S.C. §§ 7501-7506, and the OMB single audit guidance is reprinted in 2 C.F.R. part 200, subpart F.

[60]The FAC is the repository of record for Single Audits designated by OMB under the Single Audit Act. The U.S. Census Bureau maintained the FAC until October 2023, when OMB designated the General Services Administration (GSA) to assume responsibilities. GSA developed an application programming interface (API) to host the full database of Single Audits and their findings in a machine-readable format.

[61]See GAO, *Single Audits: Improving Federal Audit Clearinghouse Information and Usability Could Strengthen Federal Award Oversight,* GAO-24-106173 (Washington, D.C.; Apr. 22, 2024) and *Medicaid Program Integrity: Opportunities Exist for CMS to Strengthen Use of State Auditor Findings and Collaboration,* GAO-23-105881 (Washington, D.C.; Sept. 21, 2023).

overseeing one or more subrecipients or (2) a subrecipient that did not pass along any portion of their funds to a further subrecipient. We determined the resulting sets of findings were most likely to relate to subrecipient oversight issues of interest to our audit.

To fit our models, we obtained our selected data as of September 28, 2024. We cleaned and processed the text of those findings to ensure they were useable for topic modeling.[62] We then extracted the condition, criteria, and cause statements from each finding, when they could be readily identified.[63] After consideration and testing of the numbers of topics appropriate to these texts, we fit two separate models for the two groups of findings. For one model, we used the texts from 3,694 findings addressed to prime recipients overseeing subrecipients. For the second model, we used the texts from 9,571 findings addressed to subrecipients that did not make further subawards. We fit each of our two topic models to these texts using a Latent Dirichlet Allocation (LDA) algorithm.[64] For each model, we assigned the number of topics that produced the most favorable values of coherence and perplexity.[65]

To succinctly refer to specific topics in other sections of this report, we assigned them names. For each named topic, we reviewed the keywords and the five findings the model deemed most representative of the topic, to develop initial names.[66] Those initial names were then independently reviewed by an internal methodological expert. The topic names used in this report are not intended to summarize all the findings that the model associated with a given topic.

In the next phase, we applied our models to our selected findings and awards data from the FAC API as of January 3, 2025. We extracted only the condition statements out of the findings and applied the same filters and data cleaning steps. Ultimately, we applied our models to 3,680 condition statements from findings addressed to prime recipients overseeing one or more

---

[62]Cleaning and processing steps include, for example, removing stopwords (overly common words like "and" or "the"), among others.

[63]Elements of a finding are pieces of information auditors should consider when developing findings, as distinct from other text in audit reports. The three elements we targeted for the fitting of our topic models were the statements of condition (description of the situation that exists), criteria (identification of the required or desired state or expectation for the situation, which may reference requirements in law, guidance, standards, or others), and cause (identification of the factor or factors responsible for the difference between the condition and the criteria); see GAO, *Government Auditing Standards: 2024 Revision*, GAO-24-106786 (Washington, D.C.: Feb. 1, 2024). We determined that the component of the finding of greatest interest to us was the condition statement; however, many of those were too short to be suitable for model fitting on their own. As a result, we added information pertaining to the criteria and cause statements, as they offer context about the deficiency in the least situation-specific detail. To identify the finding elements from within findings, we used a simple approach based on matching strings of regular expressions and retaining any text related to those three finding elements. In some cases, a fourth finding element comingled with or in between the three finding elements we sought, and in those cases, we kept the additional information.

[64]LDA yields topics that are a probability model over a list of words. David M. Blei, et. al., "Latent Dirichlet Allocation," *Journal of Machine Learning Research 3* (2003): 993-1022.

[65]Coherence is a proxy for topic quality when applying LDA to abstract and full-text data, based on the hypothesis that words with similar meaning tend to co-occur within a similar context. Perplexity in topic modeling is a measure of predictive power for a topic model. Shaheen Syed and Marco Spruit, "Full-Text or Abstract?: Examining Topic Coherence Scores Using Latent Dirichlet Allocation" (2017), DOI 10.1109/DSAA.2017.61 978-1-5090-5004-8/17; David Mimno, et. al., "Optimizing Semantic Coherence in Topic Models," *Proceedings of the 2011 Conference on Empirical Methods in Natural Language Processing* (2011): 262–272; David M. Blei and John D. Lafferty, "A Correlated Topic Model of Science," *The Annals of Applied Statistics*, vol. 1, no. 1 (2007): 17–35, DOI 10.1214/07-AOAS114.

[66]Based on those finding texts having the highest values of gamma (γ) for the given topic, according to our models.

subrecipients and 10,509 addressed to subrecipients that did not pass along any portion of their funds to a further subrecipient. These findings collectively came from 7,352 audits and spanned over 30 grant awarding agencies.

The LDA algorithm does not assign a single topic to a single text; rather, each text can have elements of more than one topic in it at a time. However, the LDA algorithm provides the topic distribution (as values of gamma, $\gamma$) for each of the texts it models. Therefore, to quantify the prevalence of the topics within our condition statements, we considered a condition statement to be *most closely associated with* a given topic (its dominant topic) if that topic maximized its value of gamma ($\gamma$) according to our models. Table 1 shows the topics and their frequencies as dominant topics according to our model of 3,680 findings addressed to prime recipients overseeing subrecipients.

**Table 1: Topics Generated by GAO Topic Modeling of Condition Statements from Single Audit Findings Addressed to Select Prime Recipients of Federal Grants**

| Topic | Topic keywords | Frequency as dominant topic in selected condition statements | Percent frequency as dominant topic in selected condition statements |
|---|---|---|---|
| 1 | subrecipient, monitoring, recipient, passthrough, risk, review, include, monitor, assessment, perform | 482 | 13.1% |
| 2 | act, funding, transparency, accountability, system, month, tier, equal, compensation, prime | 517 | 14.0% |
| 3 | fund, state, program, agency, schedule, total, fiscal, request, school, cash | 372 | 10.1% |
| 4 | federal, control, internal, award, entity, non, maintain, effective, establish, condition | 41 | 1.1% |
| 5 | contract, suspension, debarment, contractor, suspend, procedure, county, policy, debar, purchase | 333 | 9.0% |
| 6 | eligibility, payment, service, provider, case, child, process, access, claim, income | 543 | 14.8% |
| 7 | charge, activity, grant, support, employee, allowable, record, documentation, time, sample | 512 | 13.9% |
| 8 | report, submit, financial, quarterly, data, end, period, information, city, project | 591 | 16.1% |
| 9 | department, requirement, year, management, office, finding, property, equipment, level, identify | 289 | 7.9% |

Source: GAO topic modeling of selected single audit data from the Federal Audit Clearinghouse API for audit years 2022-2024, as of January 3, 2025. | GAO-25-107315.

Note: When preparing text for topic modeling, each text is cleaned of punctuation and set to lowercase. Frequencies were measured as the number of condition statements modeled for which the given topic maximized gamma ($\gamma$)—i.e., the findings deemed most representative of the topic—according to our Latent Dirichlet Allocation (LDA) model. Percentages calculated out of 3,680 total texts modeled, rounded to one decimal place.

Table 2 shows topics and their frequencies as dominant topics according to our model of the 10,509 findings addressed to subrecipients that did not make subawards.

EPA_00143265

**Table 2: Topics Generated by GAO Topic Modeling of Condition Statements from Single Audit Findings Addressed to Select Subrecipients of Federal Grants**

| Topic | Topic keywords | Frequency as dominant topic in selected condition statements | Percent frequency as dominant topic in selected condition statements |
|---|---|---|---|
| 1 | contract, wage, contractor, requirement, rate, project, certified, include, subcontractor, weekly | 529 | 5.0% |
| 2 | charge, employee, activity, support, time, allowable, record, indirect, allocate, effort | 1190 | 11.3% |
| 3 | control, internal, property, corporation, issue, non, effective, equipment, sponsor, general | 695 | 6.6% |
| 4 | report, submit, end, year, day, month, data, form, period, timely | 1329 | 12.6% |
| 5 | financial, schedule, accounting, statement, duty, prepare, account, segregation, error, ledger | 1174 | 11.2% |
| 6 | purchase, entity, suspension, debarment, suspend, debar, threshold, covered, method, exclude | 1056 | 10.0% |
| 7 | eligibility, documentation, state, student, service, child, income, application, eligible, case | 1018 | 9.7% |
| 8 | award, law, policy, procedure, establish, section, maintain, provide, condition, organization | 659 | 6.3% |
| 9 | subrecipient, program, recipient, department, passthrough, funding, information, monitoring, accountability, county | 471 | 4.5% |
| 10 | agency, food, provision, act, shall, labor, cash, net, resource, excess | 134 | 1.3% |
| 11 | district, fund, reimbursement, school, claim, meal, request, esser, context, total | 1130 | 10.8% |
| 12 | review, grant, system, payment, management, approval, process, prior, approve, invoice | 1124 | 10.7% |

Source: GAO topic modeling of selected single audit data available in the Federal Audit Clearinghouse API for audit years 2022-2024, as of January 3, 2025.  |  GAO-25-107315.

Note: When preparing text for topic modeling, each text is cleaned of punctuation and set to lowercase. For example, the keyword "esser" comes from findings mentioning the Elementary and Secondary School Emergency Relief (ESSER) program, after lowercasing. Frequencies were measured as the number of condition statements modeled for which the given topic maximized gamma ($\gamma$)—i.e., the findings deemed most representative of the topic—according to our Latent Dirichlet Allocation (LDA) model. Percentages calculated out of 10,509 total texts modeled, rounded to one decimal place.

Using the same set of findings as of January 3, 2025 used for topic modeling, we extracted the cause statements from those findings, when they could be identified. We then searched within these cause statements for selected root cause terms based on findings we read to identify other findings having the same root causes. Specifically, we wrote our search terms using regular expressions related to the following root cause types: (1) personnel issues, such as inadequate staff and turnover; (2) lack of understanding, knowledge, or awareness of the requirements; (3) lacking evidence, such as documents, records, or tracking; (4) mistakes or errors, including miscalculations; and (5) insufficient internal controls, including lack of

EPA_00143266

supervisory reviews or policies and procedures.[67] We associated a finding with one or more of these root cause types if its cause statement matched to one of our regular expressions search strings. Because we cannot perfectly account for every possible way of phrasing our root cause types, frequencies of root causes based on this analysis are very likely underestimates.

To describe how selected federal agencies and grant program offices oversee grant subawards, we selected three case study programs that received funding from the Infrastructure Investment and Jobs Act (IIJA).[68] We selected our case study agencies and programs using data from USAspending.gov to identify agencies that received the most IIJA funding for grants and programs that had reported subawards.  We also consulted with agency and Office of Inspector General (OIG) officials to identify case study programs with diverse recipients to give us exposure to a broad range of perspectives, potential challenges, and oversight approaches. Ultimately, we selected the Department of Energy's Weatherization Assistance for Low-Income Persons program, the Department of Transportation's University Transport Centers program, and the Environmental Protection Agency's Chesapeake Bay Program. The results from our selected case study programs are not generalizable to all programs, but they provide valuable insight into the approaches some agencies take to implement their subaward oversight responsibilities.

To describe our selected agencies' subaward oversight activities, we interviewed knowledgeable officials from our selected agencies and program offices. We asked them about steps and actions they take to ensure prime recipients fulfill their responsibilities for subrecipient oversight. We also discussed actions they take, if any, to oversee subrecipients directly.

We reviewed selected agencies' program-level and agency-level documentation including internal policies or guidance related to grant and subaward management. We also reviewed examples of notices of funding opportunities, grant applications, grant agreements, progress reports, and other relevant records. We discussed subaward oversight with each of our selected agencies' OIGs.

To describe recent revisions to regulations and guidance that could enhance subaward oversight, we reviewed relevant federal laws, regulations, and guidance, including OMB's final rule issued in April 2024, which took effect in October 2024.[69] We discussed requirements in regulations and memoranda with OMB staff to confirm our understanding of their purposes.

To identify subaward reporting issues in support of our third objective, we compared subaward information available on USAspending.gov for our three selected programs as of November 1, 2024, to information we obtained from agency records from recent grant years. We looked for potential reporting anomalies including duplicated subawards, missing subawards, subaward

---

[67]Regular expressions, or regex, is a way of notating a pattern of letters, numbers, or symbols with computer-recognized punctuation, to signal where and what kinds of variations on that pattern the computer may accept. For example, when searching other text for a pattern of interest (e.g., "do not understand the requirements"), regex can be used to specify variations to permit, like verb conjugations or pluralization (e.g., "*does* not understand the *requirement*") or interruption by certain modifying adjectives or adverbs (e.g., "do not *fully* understand *all of* the requirements").

[68]Pub. L. No. 117-58 (2021).

[69]89 Fed. Reg. 30046 (Apr. 30046). Part of our audit work was completed before OMB issued its final rule while the prior OMB regulations were in effect. 2 C.F.R. pt. 200 (2023).

amounts exceeding the prime award amount, and examples of award and subaward descriptions that were not consistent with established standards for reporting this information.[70] We discussed our observations with knowledgeable program officials. We also obtained information on recent single audit findings linked to our selected programs and discussed them with knowledgeable agency officials to understand their approaches for resolving relevant findings.

To address all three of our objectives, we reviewed prior GAO, Congressional Research Service, agency OIGs, Council of the Inspectors General on Integrity and Efficiency, and single audit reports.

We conducted this performance audit from January 2024 to March 2025 in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives.

# Appendix II: Selected Federal Regulations and Guidance for Subaward Oversight

**Table 3: Selected Subaward Oversight Requirements for Grant Prime Recipients**

| Source | Requirements |
|---|---|
| 2 C.F.R. pt. 170 app. A(I)(a)(1)-(2) | Recipients must report each subaward that equals or exceeds $30,000 in federal funds to the Federal Funding Accountability and Transparency Act of 2006 Subaward Reporting System (FSRS) by no later than the end of the month after the month in which the subaward was made (unless otherwise exempt). |
| 2 C.F.R. pt. 170 app. A(b) | If a subrecipient received at least 80 percent of its annual gross revenue from federal awards subject to the Transparency Act (including contracts and financial assistance) and had at least $25 million in annual gross revenue from federal awards, and if the public does not have access to information about the compensation of the subrecipient's senior executives through periodic reports, the pass-through entity must report information on the subrecipient's five most highly compensated executive officials if the total award is at least $30,000. |

---

[70]OMB M-24-11 states that federal award and subaward descriptions should include award-specific activities and avoid acronyms or federal or agency-specific terminology. It also states that agencies should update their federal award terms to clearly convey to prime recipients this requirement to provide complete subaward descriptions to further increase federal award transparency.

| Source | Requirements |
|---|---|
| 2 C.F.R. §§ 200.215, 200.216 | Awarding agencies and recipients are prohibited from contracting with prohibited or excluded persons or entities.<br><br>This restriction applies to grants and cooperative agreements exceeding $50,000, are performed outside the United States, and are in support of a contingency operation in which members of the Armed Forces are actively engaged in hostilities.<br><br>Recipients and subrecipients are prohibited from using grant funds to obtain prohibited telecommunications equipment or services. |
| 2 C.F.R. § 200.308(f) | As applied to subawards, the recipient or sub-recipient must request prior written approval from the awarding agency or pass-through entity for programmatic or budget changes, including change in scope and subaward activities not proposed and approved for the award. |
| 2 C.F.R. § 200.325(a) | As requested by the awarding agency or pass-through entity, the subrecipient must make available for review the technical specifications of proposed procurements to ensure that the item or service specified is the one being proposed for acquisition. |
| 2 C.F.R. § 200.329 | The recipient or subrecipient is responsible for the oversight of the federal award. The recipient or subrecipient must monitor its activities under federal awards to ensure they are compliant with all requirements and meeting performance expectations. Monitoring by the recipient or subrecipient must cover each program, function, or activity. See also § 200.332.<br><br>Generally, the recipient or subrecipient should submit progress reports at least annually but no more than quarterly. Annual reports submitted by the recipient or subrecipient are due no later than 90 days after the reporting period.<br><br>When reporting program performance, the recipient or subrecipient should relate financial data and project or program accomplishments to the performance goals and objectives of the federal award, as applicable.<br><br>The federal agency or pass-through entity may conduct in-person or virtual site visits, as warranted. |
| 2 C.F.R. § 200.332(a) | The passthrough entity must confirm in SAM.gov that a potential subrecipient is not suspended, debarred, or otherwise excluded from receiving federal funds. |
| 2 C.F.R. § 200.332(b)(1) | At the time of award, pass-through entities must ensure that every subaward is clearly identified to the subrecipient as a subaward, and that this identification includes specific information describing the award and subaward. |
| 2 C.F.R. § 200.332(b)(2), (3), (6) | At the time of award, pass-through entities must specify to the subrecipient all legal and other requirements imposed on the award recipients, as well as the terms and conditions for closeout of the subaward. |
| 2 C.F.R. § 200.332(b)(4)(i) | Pass-through entities must ensure that subawards include an approved, federally recognized indirect cost rate. If no rate has been negotiated between the subrecipient and the federal government, the pass-through entity must determine the appropriate rate, in collaboration with the subrecipient. |

| Source | Requirements |
|---|---|
| 2 C.F.R. § 200.332(b)(5) | Pass-through entities must ensure subawards include a requirement for the subrecipient to allow the pass-through entity and other auditors to have access to the necessary records and financial statements needed to fulfill monitoring requirements. |
| 2 C.F.R. § 200.332(c) | Pass-through entities must evaluate each subrecipient's risk of fraud, and noncompliance with federal statutes, regulations, and the terms and conditions of the subaward for purposes of determining the appropriate subrecipient monitoring. |
| 2 C.F.R. § 200.332(d) | Pass-through entities must consider whether it is appropriate to impose specific conditions upon the subrecipient based on potential risks and history of compliance, and they must inform the federal awarding agency of any such conditions imposed. |
| 2 C.F.R. § 200.332(e) | Pass-through entities must monitor the activities of a subrecipient to ensure that the subrecipient complies with federal statutes, regulations, and the terms and conditions of the subaward. The pass-through entity is responsible for monitoring the overall performance of a subrecipient to ensure that the goals and objectives of the subaward are achieved. |
| 2 C.F.R. § 200.332(e)(1) | Pass-through entities must review required financial and performance reports from the subrecipient. |
| 2 C.F.R. § 200.332(e)(2) | Pass-through entities must follow-up to ensure subrecipients take corrective action to address any significant developments that negatively affect the subaward. Significant developments include Single Audit findings related to the subaward, other audit findings, site visits, and written notifications from a subrecipient of adverse conditions which will impact their ability to meet the milestones or the objectives of a subaward. Subrecipients must provide the pass-through entity information about the corrective action to be taken and any assistance needed for resolution. |
| 2 C.F.R. § 200.332(e)(4) | Pass-through entities must resolve audit findings related to their subawards. |
| 2 C.F.R. §§ 200.332(g), 200.501 | Pass-through entities must verify that every subrecipient undergoes the required single audit (or, in limited circumstances a program-specific audit) performed by an independent auditor if the subrecipient's federal award expenditure was $1,000,000 or more in the subrecipient's fiscal year. (For federal awards issued prior to October 1, 2024, this expenditure threshold for single audits was $750,000, rather than $1 million.) |
| 2 C.F.R. § 200.332(h) | Pass-through entities must consider whether subrecipient audit results, onsite reviews, or findings from other monitoring efforts necessitate adjusting their records. |
| 2 C.F.R. §§ 200.332(i), 200.505 | Pass-through entities must consider taking enforcement actions when subrecipient noncompliance is identified. If a subrecipient is unable or unwilling to take part in a required audit, the pass-through entity must take appropriate action. |
| 2 C.F.R. § 200.333 | With written approval from the federal agency, pass-through entities may provide subawards based on fixed amounts up to $500,000. These awards are subject to other requirements. |

| Source | Requirements |
|---|---|
| 2 C.F.R. § 200.344(a) | If a subrecipient fails to complete close out requirements, pass-through entities must proceed to close out the federal award with the information available. |
| 2 C.F.R. § 200.501(i) | For subawards to for-profit organizations, as necessary, the pass-through entity is responsible for establishing requirements to ensure compliance by the for-profit subrecipient. |
| 2 C.F.R. § 200.521(c), (d) | Pass-through entities must issue management decisions within 6 months of the Federal Audit Clearinghouse's (FAC) acceptance of the audit report for audit findings about federal awards it issues to a subrecipient. Similarly, federal awarding agencies must issue management decisions within six months of the FAC's acceptance of the audit report. |
| OMB M-24-11 pt. III | The prime recipient is responsible for reporting quality subaward data to the Federal Funding Accountability and Transparency Act of 2006 Subaward Reporting System (FSRS) that is subsequently displayed on USAspending.gov for subawards they make that are greater than or equal to $30,000 unless exceptions apply. |
| OMB M-24-11 pt. III | Federal award and subaward descriptions should include award-specific activities and avoid acronyms or federal or agency-specific terminology. |

Source: GAO summary of selected regulations and guidance.  |  GAO-25-107315

Note: Pass-through entity is a recipient or subrecipient that provides a subaward to a subrecipient (including lower tier subrecipients) to carry out part of a federal program. 2 C.F.R. § 200.1.

**Table 4: Selected Grant Subaward Oversight Requirements for Awarding Agencies**

| Source | Requirements |
|---|---|
| 2 C.F.R. § 170.200(b) | Awarding agencies should ensure that agency-specific requirements do not result in duplicative subaward data reporting. |
| 2 C.F.R. § 170.220 | Awarding agencies should include subaward reporting requirements in the award terms for each grant award for which the total is anticipated to equal or exceed $30,000. |
| 2 C.F.R. § 200.308(f) | As applied to subawards, the awarding agency must review requests from the prime recipient for programmatic or budget changes, including change in scope and subaward activities not proposed and approved for the award. |
| 2 C.F.R. § 200.329(b) | The federal agency must use Office of Management and Budget (OMB) approved common information collections when requesting performance reporting information. The federal agency or pass-through entity may not collect performance reports more frequently than quarterly unless a specific condition has been implemented in accordance with OMB regulations. |
| 2 C.F.R. § 200.331 | The federal agency does not have a direct legal relationship with subrecipients or contractors of any tier; however, the federal agency is responsible for monitoring the pass-through entity's oversight of first-tier subrecipients. |

| Source | Requirements |
|---|---|
| 2 C.F.R. § 200.339 | Awarding agencies may impose additional conditions or take additional actions as appropriate if award recipients fail to comply with the U.S. Constitution, federal statutes, regulations, or the terms and conditions of a federal grant. |
| 2 C.F.R. § 200.513(a) | Non-federal entities receiving a Single Audit must have assigned an agency to provide technical audit advice and assistance to them and their auditor, among other responsibilities. If the non-federal entity expends $50 million or more of federal awards in a year, then this agency is called a cognizant agency for audit and also has a role in coordinating management decisions responding to cross-cutting findings, which are defined as findings that affect all federal grants received by the auditee.[a] |
| 2 C.F.R. § 200.513(c)(3) | Awarding agencies should follow up on findings from audits of award recipients to ensure they take appropriate and timely corrective action. Follow-up activities include issuing a management decision for audit findings affecting awards the federal agency makes within six months, as required in § 200.521, and monitoring the non-federal entity's progress implementing corrective action. |
| 2 C.F.R. § 200.513(c)(3)(iv) | Awarding agencies are required to develop metrics and baselines to track the effectiveness of their process for following up on audit findings and Single Audits' effectiveness in improving non-federal entity accountability. |
| OMB M-22-12, pt. II | Agencies should implement processes to support quality subaward data and should ensure that their recipients are compliant with reporting requirements. |
| OMB M-22-12, pt. II | Agencies should annually review the quality of their subaward data for all programs in their DATA Act Data Quality plans required by Appendix A to A-123. The reviews should include statistical sample testing. |
| OMB M-24-11, pt. III | The prime recipient is responsible for reporting quality subaward data to the Federal Funding Accountability and Transparency Act of 2006 Subaward Reporting System (FSRS) that is subsequently displayed on USAspending.gov. Federal agencies, in turn, are responsible for holding prime recipients accountable for this reporting taking place.

Federal agencies also have a role in ensuring prime recipients understand the reporting requirements and assisting to resolve subaward reporting challenges. Agencies can do this in a variety of ways, including checking USASpending.gov to verify that subaward reporting is taking place as outlined in the federal award term. |
| OMB M-24-11, pt. III | Federal award and subaward descriptions should include award-specific activities and avoid acronyms or federal or agency-specific terminology. Agencies should update their federal award terms to clearly convey to prime recipients this requirement to provide complete subaward descriptions to further increase federal award transparency. |
| M-24-11 | Cognizant agencies[a] or oversight agencies[a] for audit may authorize an extension on the mandatory timeframe for Single Audit report submission (in most cases, 30 calendar days after the auditee receives the auditor's report or 9 months after the audit period) by nonfederal entities, when complying with the mandatory timeframe would be unduly burdensome. |

Source: GAO summary of selected regulations and guidance.  |  GAO-25-107315

[a]Cognizant agencies for audit may also be assigned by OMB. A federal agency with oversight for an auditee may reassign oversight to another federal agency that agrees to be the oversight agency for audit. 2 C.F.R. § 200.513(b).

## Appendix III: GAO Contact and Staff Acknowledgements

<u>GAO Contact</u>

Jeff Arkin, (202) 512-6806 or arkinj@gao.gov

<u>Staff Acknowledgements</u>

In addition to the contact named above, Kathleen M. Drennan (Assistant Director), Samuel A. Gaffigan (Analyst-in-Charge), Michelle B. Bacon, Virginia A. Chanley, Jaqueline Chapin, Ann Czapiewski, and Crystal Wesco made key contributions to this report.



Message

| | |
|---|---|
| **From:** | oms-arm-ogd-grant_reports@epa.gov [oms-arm-ogd-grant_reports@epa.gov] |
| **Sent:** | 2/26/2025 9:00:21 PM |
| **To:** | Coogan, Daniel [Coogan.Daniel@epa.gov]; Hublar, Jennifer [Hublar.Jennifer@epa.gov]; Wise, Melissa [wise.melissa@epa.gov]; Sylvester, Kenneth [Sylvester.Kenneth@epa.gov]; Schindel, Phillip [Schindel.Phillip@epa.gov]; Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov] |
| **CC:** | Wilson, Kevin [Wilson.Kevin@epa.gov]; Nguyen, Minh [nguyen.minh@epa.gov]; Patrick, Dai [patrick.dai@epa.gov] |
| **Subject:** | Pending Grant Actions |
| **Attachments:** | Pending Grants Actions – All Regions and HQ.xlsx |

Attached is a Report of Pending Grants Actions. This report is daily generated. Please contact Phil Schindel or Minh Nguyen for questions about the data or if the report needs to change. Thanks!

**This document is produced in native format.**

**Original file name:**

**Pending Grants Actions – All Regions and HQ.xlsx**

Message

| | |
|---|---|
| **From:** | Wise, Melissa [wise.melissa@epa.gov] |
| **Sent:** | 2/27/2025 4:41:35 PM |
| **To:** | Schindel, Phillip [Schindel.Phillip@epa.gov] |
| **CC:** | Lentz, Rachel [Lentz.Rachel@epa.gov]; Sylvester, Kenneth [Sylvester.Kenneth@epa.gov] |
| **Subject:** | FW: Follow-up on Notice of Award |
| **Attachments:** | EPA Grant 84093901-0.pdf |

Hi Phil,

Can you please assist?  I have taken a stab at responses (blue text).  I believe the 21 days is a number that was established in EPA Policy.  Looping in Rachel.

Thanks,
Melissa

---

**From:** Coogan, Daniel <Coogan.Daniel@epa.gov>
**Sent:** Thursday, February 27, 2025 10:34 AM
**To:** Wise, Melissa <wise.melissa@epa.gov>
**Subject:** Follow-up on Notice of Award

Melissa, leadership asked about a specific section in the Notice of Award document (attaching one as an example):

"Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk."

They had a few questions that I said I wanted to connect back with you (and this is just for us to address internally from a grants perspective, we will engage OGC separately):

1.      Is this language included in all notice of awards?  Yes.
2.      What happens if the recipient does not draw down within 21 days or send a notice of disagreement?  Nothing.
3.      How many notice of disagreements have we received for GGRF? (I believe 0.)  Confirming it is zero.
4.      How many notice of disagreements have we received for other programs (ballpark)?  Extremely rare (I had polled GMOs for a data call previously).  Guessing only a handful.  I will ping them again.
5.      Can we include an award notice from some other grant programs for reference? (I am thinking an award document from WIFIA, DWSRF and Brownfields.)  Can you please pull together some award documents from this sample set?

Message

| | |
|---|---|
| **From:** | oms-arm-ogd-grant_reports@epa.gov [oms-arm-ogd-grant_reports@epa.gov] |
| **Sent:** | 2/27/2025 6:32:18 PM |
| **To:** | Mims, Kathy [Mims.Kathy@epa.gov]; Eades, Cassaundra [Eades.Cassaundra@epa.gov]; Tillery, Loreto [Tillery.Loreto@epa.gov]; Scales, Wuanisha [Scales.Wuanisha@epa.gov]; Bailey, KevinJ [Bailey.KevinJ@epa.gov] |
| **CC:** | Nitsch, Chad [Nitsch.Chad@epa.gov]; Wise, Melissa [wise.melissa@epa.gov] |
| **Subject:** | OCIR_Mail_Merge_Source_Data |
| **Attachments:** | OCIR_Mail_Merge_Source_Data.xlsx |

Attached is prepared Mail Merge Source Data This report is daily generated (2025-02-27-13-31-38). Automated delivery of this report will cease on 10/1/2025. Please contact Minh Nguyen for questions about the data or if the report needs to change. Thanks!

**This document is produced in native format.**

**Original file name:**

**OCIR_Mail_Merge_Source_Data.xlsx**

Message

**From:**       oms-arm-ogd-grant_reports@epa.gov [oms-arm-ogd-grant_reports@epa.gov]
**Sent:**       2/27/2025 9:00:00 PM
**To:**        Coogan, Daniel [Coogan.Daniel@epa.gov]; Hublar, Jennifer [Hublar.Jennifer@epa.gov]; Wise, Melissa [wise.melissa@epa.gov]; Sylvester, Kenneth [Sylvester.Kenneth@epa.gov]; Schindel, Phillip [Schindel.Phillip@epa.gov]; Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov]
**CC:**        Wilson, Kevin [Wilson.Kevin@epa.gov]; Nguyen, Minh [nguyen.minh@epa.gov]; Patrick, Dai [patrick.dai@epa.gov]
**Subject:**    Pending Grant Actions
**Attachments:** Pending Grants Actions – All Regions and HQ.xlsx


Attached is a Report of Pending Grants Actions. This report is daily generated. Please contact Phil Schindel or Minh Nguyen for questions about the data or if the report needs to change. Thanks!

EPA_00143533

Message

| | |
|---|---|
| **From:** | oms-arm-ogd-grant_reports@epa.gov [oms-arm-ogd-grant_reports@epa.gov] |
| **Sent:** | 2/28/2025 9:00:16 PM |
| **To:** | Coogan, Daniel [Coogan.Daniel@epa.gov]; Hublar, Jennifer [Hublar.Jennifer@epa.gov]; Wise, Melissa [wise.melissa@epa.gov]; Sylvester, Kenneth [Sylvester.Kenneth@epa.gov]; Schindel, Phillip [Schindel.Phillip@epa.gov]; Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov] |
| **CC:** | Wilson, Kevin [Wilson.Kevin@epa.gov]; Nguyen, Minh [nguyen.minh@epa.gov]; Patrick, Dai [patrick.dai@epa.gov] |
| **Subject:** | Pending Grant Actions |
| **Attachments:** | Pending Grants Actions – All Regions and HQ.xlsx |

Attached is a Report of Pending Grants Actions. This report is daily generated. Please contact Phil Schindel or Minh Nguyen for questions about the data or if the report needs to change. Thanks!

Message

**From**: Roth, Frank [Roth.Frank@epa.gov]
**Sent**: 3/3/2025 11:43:12 AM
**To**: Schindel, Phillip [Schindel.Phillip@epa.gov]
**Subject**: Today's EO in the Federal Register
**Attachments**: 2025-03527.pdf

As I mentioned Friday, there is a bit of a delay in getting these into the FR.

This is about the central spending repository (2/26), which I think you already had in hand.

Thanks,

Frank



Frank N. Roth
Office of Grants and Debarment
Grants Management and Business Operations Division
Business Operations Branch
Office: (202) 564-5311
Mobile: (202) 860-8934


Federal Register

Vol. 90, No. 40

Monday, March 3, 2025

# Presidential Documents

Title 3—

The President

Executive Order 14222 of February 26, 2025

## Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

Section 1. *Purpose.* This order commences a transformation in Federal spending on contracts, grants, and loans to ensure Government spending is transparent and Government employees are accountable to the American public.

Sec. 2. *Definitions.* As used in this order:

(a) "Administrator" means the Administrator of the United States DOGE Service, as defined in Executive Order 14158 of January 20, 2025 (Establishing and Implementing the President's "Department of Government Efficiency").

(b) "Agency" has the meaning given to that term in section 3502 of title 44, United States Code, except that such term does not include the Executive Office of the President or any components thereof.

(c) "Agency Head" means the highest-ranking official of an agency, such as the Secretary, Administrator, Chairman, or Director. Agency Heads may select designees within their agencies to carry out the responsibilities specified in this order.

(d) "Covered contracts and grants" means discretionary spending through Federal contracts, grants, loans, and related instruments, but excludes direct assistance to individuals; expenditures related to immigration enforcement, law enforcement, the military, public safety, and the intelligence community; and other critical, acute, or emergency spending, as determined by the relevant Agency Head. Notification shall be made to the agency's DOGE Team Lead.

(e) "DOGE Team Lead" means the leader of the DOGE Team at each agency, as defined in Executive Order 14158.

Sec. 3. *Cutting Costs to Save Taxpayers Money.* (a) *Contract and Grant Justification.* Each Agency Head shall, with assistance as requested from the agency's DOGE Team Lead, build a centralized technological system within the agency to seamlessly record every payment issued by the agency pursuant to each of the agency's covered contracts and grants, along with a brief, written justification for each payment submitted by the agency employee who approved the payment. This system shall include a mechanism for the Agency Head to pause and rapidly review any payment for which the approving employee has not submitted a brief, written justification within the technological system.

(i) Once the system described in subsection (a) of this section is in place, the Agency Head shall issue guidance, in consultation with the agency's DOGE Team Lead, to require that the relevant agency employee promptly submit a brief, written justification prior to that employee's approval of a payment under covered contracts and grants, subject to any exceptions the Agency Head deems appropriate.

(ii) To the maximum extent permitted by law, and to the maximum extent deemed practicable by the Agency Head, the payment justifications described in subsection (a)(i) of this section shall be posted publicly.

(b) *Review of Covered Contracts and Grants.* Each Agency Head, in consultation with the agency's DOGE Team Lead, shall review all existing

EPA_00143668

**11096**     *Federal Register* / Vol. 90, No. 40 / Monday, March 3, 2025 / Presidential Documents

covered contracts and grants and, where appropriate and consistent with applicable law, terminate or modify (including through renegotiation) such covered contracts and grants to reduce overall Federal spending or reallocate spending to promote efficiency and advance the policies of my Administration. This process shall commence immediately and shall prioritize the review of funds disbursed under covered contracts and grants to educational institutions and foreign entities for waste, fraud, and abuse. Each Agency Head shall complete this review within 30 days of the date of this order.

(c) *Contract and Grant Process Review.* Each Agency Head, in consultation with the agency's DOGE Team Lead, shall conduct a comprehensive review of each agency's contracting policies, procedures, and personnel. Each Agency Head shall complete this process within 30 days of the date of this order and shall not issue or approve new contracting officer warrants during the review period, unless the Agency Head determines such approval is necessary.

(d) *Covered Contract and Grant Approval.*

(i) Following the review specified in subsection (c) of this section, and prior to entering into new contracts, each Agency Head shall, in consultation with the agency's DOGE Team Lead, issue guidance on signing new contracts or modifying existing contracts to promote Government efficiency and the policies of my Administration. The Agency Head may approve new contracts prior to the issuance of such guidance on a case-by-case basis.

(ii) Each DOGE Team Lead shall provide the Administrator with a monthly informational report on contracting activities. As soon as an agency's contract and grant justification process described in subsection (a) of this section is established, this report shall include all payment justifications provided pursuant to that process, to the extent consistent with law.

(e) *Non-Essential Travel Justification.* Each Agency Head shall, with assistance from the agency's DOGE Team Lead, build a technological system within each agency that centrally records approval for federally funded travel for conferences and other non-essential purposes. Once an agency's system is in place, the Agency Head shall prohibit agency employees from engaging in federally funded travel for conferences or other non-essential purposes unless the travel-approving official has submitted a brief, written justification for the federally funded travel within such system. Each DOGE Team Lead shall, to the extent consistent with law, provide the Administrator with a monthly informational report listing each agency's justifications for non-essential travel. Such justifications shall be posted publicly unless prohibited by law or unless the Agency Head grants an exemption from this requirement.

(f) *Credit Card Freeze.* To the maximum extent permitted by law, all credit cards held by agency employees shall be treated as frozen for 30 days from the date of this order, except for any credit cards held by employees engaged in, or charges related to employees utilizing such credit cards for, disaster relief or natural disaster response benefits or operations or other critical services as determined by the Agency Head, and subject to such additional individualized or categorical exceptions as the Agency Head, in consultation with the agency's DOGE Team Lead, deems appropriate.

(g) *Real Property Disposition.* Agencies shall take the following actions:

(i) *Real Property Report.* Within 7 days of the date of this order, each Agency Head shall confirm to the Administrator of General Services or his designee that the Agency Head has submitted updates to the Federal Real Property Profile Management System to ensure the system reflects a complete and accurate inventory of real property subject to the agency's administration.

(ii) *Real Property Leases.* Within 30 days of the date of this order, each Agency Head shall promptly identify all termination rights the Agency Head may have under existing leases of Government-owned real property

**Federal Register** / Vol. 90, No. 40 / Monday, March 3, 2025 / Presidential Documents    **11097**

and, in consultation with agency's DOGE Team Lead and the Administrator of General Services or his designee, determine whether to exercise such rights.

(iii) *Real Property Disposition.* Within 60 days of the date of this order, the Administrator of General Services shall submit a plan to the Director of the Office of Management and Budget (OMB) for the disposition of Government-owned real property which has been deemed by the agency as no longer needed.

**Sec. 4.** *General Exclusions.* This order does not apply to:

(a) Law enforcement officers, as defined in 5 U.S.C. 5541(3) and 5 CFR 550.103, or covered contracts and grants directly related to the enforcement of Federal criminal or immigration law;

(b) U.S. Customs and Border Protection and U.S. Immigration and Customs Enforcement in the Department of Homeland Security;

(c) the Uniformed Services, as defined in 20 CFR 404.1330;

(d) any other covered grant or contract, agency component, or real property that the relevant Agency Head exempts in writing from all or part of this order, in consultation with the agency's DOGE Team Lead and the Director of OMB; or

(e) classified information or classified information systems.

**Sec. 5.** *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*February 26, 2025.*

[FR Doc. 2025–03527
Filed 2–28–25; 11:15 am]
Billing code 3395–F4–P

Message

**From:**      oms-arm-ogd-grant_reports@epa.gov [oms-arm-ogd-grant_reports@epa.gov]
**Sent:**      4/1/2025 7:59:17 PM
**To:**        Coogan, Daniel [Coogan.Daniel@epa.gov]; Hublar, Jennifer [Hublar.Jennifer@epa.gov]; Wise, Melissa
               [wise.melissa@epa.gov]; Sylvester, Kenneth [Sylvester.Kenneth@epa.gov]; Schindel, Phillip
               [Schindel.Phillip@epa.gov]; Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov]
**CC:**        Wilson, Kevin [Wilson.Kevin@epa.gov]; Nguyen, Minh [nguyen.minh@epa.gov]; Patrick, Dai [patrick.dai@epa.gov]
**Subject:**   Pending Grant Actions
**Attachments:** Pending Grants Actions – All Regions and HQ.xlsx


Attached is a Report of Pending Grants Actions. This report is daily generated. Please contact Phil Schindel or
Minh Nguyen for questions about the data or if the report needs to change. Thanks!

**This document is produced in native format.**

**Original file name:**

**Pending Grants Actions – All Regions and HQ.xlsx**

Message

---

**From:** Tsing-Choy, Kathy [Tsing-Choy.Kathy@epa.gov]
**Sent:** 3/3/2025 10:35:37 PM
**To:** Wise, Melissa [wise.melissa@epa.gov]; Coogan, Daniel [Coogan.Daniel@epa.gov]; Hublar, Jennifer [Hublar.Jennifer@epa.gov]
**CC:** Schindel, Phillip [Schindel.Phillip@epa.gov]; Wilson, Kevin [Wilson.Kevin@epa.gov]; Nguyen, Minh [nguyen.minh@epa.gov]
**Subject:** Daily Summary Report of Grant Terminations as of 03/03/2025
**Attachments:** Grant Terminatons List.xlsx; Grant Terminations Report 2025.03.03.pdf

Hi all,

Attached is the summary report of Grant Terminations. No update since 02/26/25.

FYI: FAIN is added in the Grant Family column.



*Kathy Tsing-Choy*
Associate Award Official
OMS-OGD-GMBOD-BOB
202-565-0049 or MS Team
tsing-choy.kathy@epa.gov

"To serve as a leader and supporter, live a balanced life, and to build collaborative relationships among individuals or group members toward a common vision."



**This document is produced in native format.**

**Original file name:**

**Grant Terminatons List.xlsx**

EPA_00143761 - EPA_00143767

**Grant Termination Summary Report**

Data compiled as of 03/03/2025

| Region/HQ | No. of Grants Awarded and Cancelled | Amount Awarded and Cancelled | Compass Remaining Amount (Estimate) | No. of Grants Not Yet Awarded and Cancelled | Amount Not Yet Awarded and Cancelled |
|---|---|---|---|---|---|
| R01 | 1 | $500,000 | $331,894 | 0 | $0 |
| R02 | 0 | $0 | $0 | 0 | $0 |
| R03 | 4 | $21,000,000 | $14,304,280 | 0 | $0 |
| R04 | 2 | $11,500,000 | $8,947,408 | 0 | $0 |
| R05 | 3 | $20,000,000 | $14,386,079 | 0 | $0 |
| R06 | 2 | $1,000,000 | $643,182 | 0 | $0 |
| R07 | 1 | $8,000,000 | $6,150,076 | 0 | $0 |
| R08 | 1 | $7,000,000 | $6,430,046 | 0 | $0 |
| R09 | 4 | $9,600,000 | $7,769,459 | 0 | $0 |
| R10 | 2 | $8,500,000 | $6,883,089 | 0 | $0 |
| HQ | 1 | $8,000,000 | $5,526,117 | 1 | $11,967,248 |
| **Total** | **21** | **$95,100,000** | **$71,371,630** | **1** | **$11,967,248** |



Message

| | |
|---|---|
| **From:** | oms-arm-ogd-grant_reports@epa.gov [oms-arm-ogd-grant_reports@epa.gov] |
| **Sent:** | 2/9/2025 10:58:43 PM |
| **To:** | Mims, Kathy [Mims.Kathy@epa.gov]; Eades, Cassaundra [Eades.Cassaundra@epa.gov]; Tillery, Loreto [Tillery.Loreto@epa.gov]; Scales, Wuanisha [Scales.Wuanisha@epa.gov]; Bailey, KevinJ [Bailey.KevinJ@epa.gov] |
| **CC:** | Nitsch, Chad [Nitsch.Chad@epa.gov]; Wise, Melissa [wise.melissa@epa.gov] |
| **Subject:** | OCIR_Mail_Merge_Source_Data |
| **Attachments:** | OCIR_Mail_Merge_Source_Data.xlsx |

Attached is prepared Mail Merge Source Data This report is daily generated (2025-02-09-17-58-08). Automated delivery of this report will cease on 10/1/2025. Please contact Minh Nguyen for questions about the data or if the report needs to change. Thanks!

**This document is produced in native format.**

**Original file name:**

**OCIR_Mail_Merge_Source_Data.xlsx**

Message

| | |
|---|---|
| **From:** | Wise, Melissa [wise.melissa@epa.gov] |
| **Sent:** | 2/10/2025 2:28:47 PM |
| **To:** | Schindel, Phillip [Schindel.Phillip@epa.gov] |
| **CC:** | Sylvester, Kenneth [Sylvester.Kenneth@epa.gov] |
| **Subject:** | FW: Additional Information on IIJA and IRA - program review pause |
| **Attachments:** | FFA Program Analysis Template OGD shared 2.05.2025_Unrestricting.xlsx |

**Importance:**     High

Hi Phil,

Can you please match the below list to specific grant program codes to assist in the identification of the specific programs and grants that are cleared or need to be paused? I added a Column W to our spreadsheet above to record these connections.

Thank you,
Melissa

---

**From:** Wise, Melissa <wise.melissa@epa.gov>
**Sent:** Friday, February 7, 2025 7:49 PM
**To:** OMS-OGD-GMOs Only <OMS-OGD-GMOs-Only@epa.gov>
**Cc:** OCFO-SROs <OCFO_SROs@epa.gov>; OMS-OGD-Grants JROs <OMS-OGD-Grants-JROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Deputy Directors <Regional_Mission_Support_Division_Deputy_Directors@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>
**Subject:** FW: Additional Information on IIJA and IRA - program review pause
**Importance:** High

Good evening, GMOs,

Please see important message below.

Thank you,
Melissa

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 6:04 PM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; Henry, Latonya <Henry.Latonya@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>; Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>; Lane, Gary <Lane.Gary@epa.gov>; Robinson, Angel <robinson.angel@epa.gov>; Boyd, Wyatt <Boyd.Wyatt@epa.gov>; Katz, Brian <Katz.Brian@epa.gov>; Cardenas, Andrew <Cardenas.Andrew@epa.gov>; Li,

Sylvana <li.sylvana@epa.gov>; Beg, Gul <Beg.Gul@epa.gov>; Cottrill, Edward <Cottrill.Edward@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA - program review pause

Pursuant to the review of financial assistance programs announced by the Acting Deputy Administrator on February 6, the following accounts are temporarily paused for new obligations or disbursements for assistance agreements, loans, rebates, interagency agreements, procurements, and no-cost actions pending a review for compliance with applicable administrative rules and policies.

Air Quality Sensors in Low Income and Disadvantaged Communities (OAR) (STAG)
Clean Heavy-Duty Vehicles (OAR) (STAG)
Clean Heavy-Duty Vehicles in Nonattainment Areas (OAR) (STAG)
Clean School Bus Program (STAG)
Competitive Grants (OAR) (STAG)
Diesel Emissions Reductions (OAR) (STAG)
Emissions from Wood Heaters (OAR/ORD) (STAG)
Environmental and Climate Justice Block Grants – Technical Assistance (OEJECR)
Environmental and Climate Justice Block Grants (OEJECR)
Environmental Product Declaration Assistance (OCSPP/ORD/OAR)
Fenceline Air Monitoring and Screening Air Monitoring (OAR/ORD) (STAG)
Funding for the Implementation of the American Innovation and Manufacturing Act (OAR)
Funding for Section 211 of the Clean Air Act – Advanced Biofuels (OAR)
GHG Air Pollution Implementation Grants (OAR) (STAG)
GHG and Zero Emission Standards for Mobile Sources (OAR) (STAG)
GHG Pollution Planning Grants (OAR) (STAG)
Grants to Reduce Air Pollution at Ports (OAR) (STAG)
Grants to Reduce Air Pollution at Ports in Nonattainment Areas (OAR) (STAG)
Greenhouse Gas Corporate Reporting (OAR) (STAG)
Greenhouse Gas Reduction Fund – General Assistance (OA) (STAG)
Greenhouse Gas Reduction Fund – Low Income and Disadvantaged Communities (OA) (STAG)
Greenhouse Gas Reduction Fund – Zero Emission Technologies (OA) (STAG)
Implementation / Accountability (OAR)
Implementation and Compliance (OECA)
Industry Outreach (OAR)
Low Embodied Carbon Labeling for Construction Materials for Transportation Methane Monitoring (OCSPP/OAR/ORD)
Multipollutant Monitoring Stations (OAR) (STAG)
State/Tribal/Local Government Outreach (OAR)
Technical Assistance for Low Income Communities (OAR)

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 11:29 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

We are working expeditiously to carry out the attached and request your assistance where appropriate.

*(excerpt)*

Notwithstanding this directive, any disbursements on open grant awards that were paused due to Office of Management and Budget Memorandum M-25-13 or any Executive Order underlying that Memorandum shall continue to be immediately released, as the Agency initiated on February 3, 2025.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Wednesday, February 5, 2025 11:00 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

Clarifying the compound sentence in the original message.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for:

- federal financial assistance;
- Superfund;
- and the accounts (originally) attached.

Note that thousands of accounts are involved and this is a manual process.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Tuesday, February 4, 2025 1:46 PM
**To:** OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** Additional Information on IIJA and IRA
**Importance:** High

This message provides additional detail to the attached message from the Acting Chief Financial Officer.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for all federal financial assistance, including cooperative assistance agreements, all Superfund, and the accounts attached.

We will continue to keep the community updated as we implement Orders. Please note that effectuation in agency systems is occurring and requires sequencing.

*Please share this information within EPA as necessary to execute.*

**This document is produced in native format.**

**Original file name:**

**FFA Program Analysis Template OGD shared 2.05.2025_Unrestricting.xlsx**

Message

| | |
|---|---|
| **From:** | Brown, Devon [Brown.Devon@epa.gov] |
| **Sent:** | 2/10/2025 3:09:38 PM |
| **To:** | Brooks, Jennifer [Brooks.Jennifer@epa.gov]; Burgess, Hazeletta [burgess.hazeletta@epa.gov]; Etheridge, Shana [Etheridge.Shana@epa.gov]; Hanlon, Alison [Hanlon.Alison@epa.gov]; Holder, Robin [holder.robin@epa.gov]; Nguyen, ThuyT [Nguyen.ThuyT@epa.gov]; Pierce, Brandon [pierce.brandon@epa.gov]; Lloyd, Keva [Lloyd.Keva@epa.gov]; Phillips, Lashaun [Phillips.Lashaun@epa.gov]; Chandler, Caitlyn [Chandler.Caitlyn@epa.gov]; Forte, Matthew [Forte.Matthew@epa.gov]; Lane, Zachary [Lane.Zachary@epa.gov] |
| **CC:** | Schindel, Phillip [Schindel.Phillip@epa.gov]; Brown, Devon [Brown.Devon@epa.gov] |
| **Subject:** | RE: ACTION ITEM: Pending Grants Available for Award and Allowable Actions **(Update as of 2/10/2025)** |
| **Attachments:** | FW: Additional Information on IIJA and IRA - program review pause |

Hello Grants Management Branch,

Per guidance from Melissa, please see the email (attached) on our path forward as of 2/10/2025. We are awaiting specific grant numbers from the list of programs.

ACTION ITEM:

Please "work up" actions. We will let you know what can be signed and awarded once we receive the updated list (based on Melissa's instruction).

AAOs, please hold on signing off on actions until we have received the updated list with specific allowable grant actions.

**If you can sign your own no cost extensions, please do not sign off on those actions** until we have received the updated list with specific allowable grant actions.

Contact me if you have any questions.

Respectfully,

Devon Brown
Branch Chief, Grants Management Branch (GMB)
Office of Mission Support
The Office of Grants and Debarment
U.S. Environmental Protection Agency
1300 Pennsylvania Ave., NW
Washington, D.C. 20460
Office: (202) 564-5097
Mobile: (202) 696-2219
Email: brown.devon@epa.gov

---

**From:** Brown, Devon <Brown.Devon@epa.gov>
**Sent:** Friday, February 7, 2025 2:23 PM
**To:** Brooks, Jennifer <Brooks.Jennifer@epa.gov>; Burgess, Hazeletta <burgess.hazeletta@epa.gov>; Etheridge, Shana <Etheridge.Shana@epa.gov>; Hanlon, Alison <Hanlon.Alison@epa.gov>; Holder, Robin <holder.robin@epa.gov>; Nguyen, ThuyT <Nguyen.ThuyT@epa.gov>; Pierce, Brandon <pierce.brandon@epa.gov>; Lloyd, Keva <Lloyd.Keva@epa.gov>; Phillips, Lashaun <Phillips.Lashaun@epa.gov>; Chandler, Caitlyn <Chandler.Caitlyn@epa.gov>; Forte, Matthew <Forte.Matthew@epa.gov>; Lane, Zachary <Lane.Zachary@epa.gov>
**Cc:** Schindel, Phillip <Schindel.Phillip@epa.gov>; Brown, Devon <Brown.Devon@epa.gov>
**Subject:** ACTION ITEM: Pending Grants Available for Award and Allowable Actions (as of 2/7/2025)
**Importance:** High

Hello Grants Management Branch,

We have an update to our allowable awarding actions, as of 2/7/2025.

As we await the complete OCFO list as described in the attached memo, HQ GMBOD will be moving forward on all pending actions that were authorized by IIJA, IRA, or that include funding from the STAG, Brownfields, or Superfund appropriations. Per the memo, these HQ pending grants should move forward through signature.

The attached Excel sheet has highlighted in green the actions we can move forward with for reviews and sign off/award.

ACTION ITEM:

Please see the excel and check your pending report and focus your reviews on those green highlighted actions/programs. These actions will be worked up all the way through and sent to the AAO for further review and signature.

All other actions, you will be able to work those up and review, but we will be holding on awarding of those actions (if they are not part of the green highlighted actions/programs).

If you are authorized to sign off on your own no cost amendments, please do not sign off on those actions that are not part of the green highlighted list.

Please hold on baseline and closeout actions not from programs designated on this list of green action items.

If for any reason we sign something and OCFO/RTP notifies you that they have opted not to obligate, please alert Phil and myself immediately.

We will discuss this more next week for those that still need some additional clarification on our path forward.

Have a great day!

Devon Brown
Branch Chief, Grants Management Branch (GMB)
Office of Mission Support
The Office of Grants and Debarment
U.S. Environmental Protection Agency
1300 Pennsylvania Ave., NW
Washington, D.C. 20460
Office: (202) 564-5097
Mobile: (202) 696-2219
Email: brown.devon@epa.gov

Message

| | |
|---|---|
| **From:** | Wise, Melissa [wise.melissa@epa.gov] |
| **Sent:** | 2/8/2025 12:49:26 AM |
| **To:** | OMS-OGD-GMOs Only [OMS-OGD-GMOs-Only@epa.gov] |
| **CC:** | OCFO-SROs [OCFO_SROs@epa.gov]; OMS-OGD-Grants JROs [OMS-OGD-Grants-JROs@epa.gov]; Regional Mission Support Division - Directors [Regional_Mission_Support_Division_Directors@epa.gov]; Regional Mission Support Division - Deputy Directors [Regional_Mission_Support_Division_Deputy_Directors@epa.gov]; Coogan, Daniel [Coogan.Daniel@epa.gov] |
| **Subject:** | FW: Additional Information on IIJA and IRA - program review pause |

| | |
|---|---|
| **Importance:** | High |
| **Flag:** | Follow up |

Good evening, GMOs,

Please see important message below.

Thank you,
Melissa

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 6:04 PM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; Henry, Latonya <Henry.Latonya@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>; Kadeli, Lek <Kadeli.Lek@epa.gov>; Jones-Peeler, Meshell <Jones-Peeler.Meshell@epa.gov>; Lane, Gary <Lane.Gary@epa.gov>; Robinson, Angel <robinson.angel@epa.gov>; Boyd, Wyatt <Boyd.Wyatt@epa.gov>; Katz, Brian <Katz.Brian@epa.gov>; Cardenas, Andrew <Cardenas.Andrew@epa.gov>; Li, Sylvana <li.sylvana@epa.gov>; Beg, Gul <Beg.Gul@epa.gov>; Cottrill, Edward <Cottrill.Edward@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA - program review pause

Pursuant to the review of financial assistance programs announced by the Acting Deputy Administrator on February 6, the following accounts are temporarily paused for new obligations or disbursements for assistance agreements, loans, rebates, interagency agreements, procurements, and no-cost actions pending a review for compliance with applicable administrative rules and policies.

Air Quality Sensors in Low Income and Disadvantaged Communities (OAR) (STAG)
Clean Heavy-Duty Vehicles (OAR) (STAG)
Clean Heavy-Duty Vehicles in Nonattainment Areas (OAR) (STAG)
Clean School Bus Program (STAG)
Competitive Grants (OAR) (STAG)
Diesel Emissions Reductions (OAR) (STAG)
Emissions from Wood Heaters (OAR/ORD) (STAG)
Environmental and Climate Justice Block Grants – Technical Assistance (OEJECR)
Environmental and Climate Justice Block Grants (OEJECR)
Environmental Product Declaration Assistance (OCSPP/ORD/OAR)

Fenceline Air Monitoring and Screening Air Monitoring (OAR/ORD) (STAG)
Funding for the Implementation of the American Innovation and Manufacturing Act (OAR)
Funding for Section 211 of the Clean Air Act – Advanced Biofuels (OAR)
GHG Air Pollution Implementation Grants (OAR) (STAG)
GHG and Zero Emission Standards for Mobile Sources (OAR) (STAG)
GHG Pollution Planning Grants (OAR) (STAG)
Grants to Reduce Air Pollution at Ports (OAR) (STAG)
Grants to Reduce Air Pollution at Ports in Nonattainment Areas (OAR) (STAG)
Greenhouse Gas Corporate Reporting (OAR) (STAG)
Greenhouse Gas Reduction Fund – General Assistance (OA) (STAG)
Greenhouse Gas Reduction Fund – Low Income and Disadvantaged Communities (OA) (STAG)
Greenhouse Gas Reduction Fund – Zero Emision Technologies (OA) (STAG)
Implementation / Accountability (OAR)
Implementation and Compliance (OECA)
Industry Outreach (OAR)
Low Embodied Carbon Labeling for Construction Materials for Transportation Methane Monitoring (OCSPP/OAR/ORD)
Multipollutant Monitoring Stations (OAR) (STAG)
State/Tribal/Local Government Outreach (OAR)
Technical Assistance for Low Income Communities (OAR)

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Friday, February 7, 2025 11:29 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

We are working expeditiously to carry out the attached and request your assistance where appropriate.

*(excerpt)*

Notwithstanding this directive, any disbursements on open grant awards that were paused due to Office of Management and Budget Memorandum M-25-13 or any Executive Order underlying that Memorandum shall continue to be immediately released, as the Agency initiated on February 3, 2025.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Wednesday, February 5, 2025 11:00 AM
**To:** Budget and Planning <Budget_and_Planning@epa.gov>; OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>

**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** RE: Additional Information on IIJA and IRA

Clarifying the compound sentence in the original message.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for:

- federal financial assistance;
- Superfund;
- and the accounts (originally) attached.

Note that thousands of accounts are involved and this is a manual process.

---

**From:** Budget and Planning <Budget_and_Planning@epa.gov>
**Sent:** Tuesday, February 4, 2025 1:46 PM
**To:** OCFO-SBO <OCFOSBO@epa.gov>; OCFO-SBO-STAFF <OCFOSBOSTAFF@epa.gov>; OCFO-Regional-Comptroller <OCFORegionalComptroller@epa.gov>; OCFO-Regional Budget Officers <OCFORegional_Budget_Officers@epa.gov>; OCFO-SROs <OCFO_SROs@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; Regional Mission Support Division - Directors <Regional_Mission_Support_Division_Directors@epa.gov>; OCFO-FCOs <OCFO-FCOs@epa.gov>
**Cc:** Wise, Melissa <wise.melissa@epa.gov>; Legare, Pamela <Legare.Pamela@epa.gov>; Rogers, JoanB <Rogers.JoanB@epa.gov>; Coogan, Daniel <Coogan.Daniel@epa.gov>; Kalikhman, Yulia <kalikhman.yulia@epa.gov>; Gulamali, Adil <Gulamali.Adil@epa.gov>; Lavergne, Dany <lavergne.dany@epa.gov>; Miller, Renee <Miller.Renee@epa.gov>; Jennette, Vonda <Jennette.Vonda@epa.gov>; Luebbering, Gregory <luebbering.gregory@epa.gov>; OCFO-OB-ALL. <OCFO-OB-ALL_x@epa.gov>; Talbert-Duarte, Angelia <talbert-duarte.angelia@epa.gov>; Goerke, Ariadne <Goerke.Ariadne@epa.gov>; Askew, Wendel <Askew.Wendel@epa.gov>; Holden, Allison <Holden.Allison@epa.gov>
**Subject:** Additional Information on IIJA and IRA
**Importance:** High

This message provides additional detail to the attached message from the Acting Chief Financial Officer.

Consistent with Court Order, obligations and disbursements to carry out all necessary work can proceed for all federal financial assistance, including cooperative assistance agreements, all Superfund, and the accounts attached.

We will continue to keep the community updated as we implement Orders. Please note that effectuation in agency systems is occurring and requires sequencing.

*Please share this information within EPA as necessary to execute.*