Message

| | |
|---|---|
| **From:** | Lloyd, Keva [Lloyd.Keva@epa.gov] |
| **Sent:** | 4/3/2025 5:51:59 PM |
| **To:** | Tan, Ying [Tan.Ying@epa.gov] |
| **CC:** | Brown, Devon [Brown.Devon@epa.gov] |
| **Subject:** | RE: Novation Procedure Guidance |
| **Attachments:** | Novation Guidance Draft 30725.docx; Appendix 1 Novation Procedures Draft 30725.docx |

Hi Ying

It was good to meet and speak with you earlier. Per your request, I've attached the draft copy of the Guidance for Processing Novations, Replacement Grants, and Administrative Changes along with Appendix 1. Processing Novations, Replacement Grants and Administrative Changes. If you have any questions, please let me know so that I can address them.

Thanks,

*Ms. Keva Lloyd*
*Associate Award Official (OECA, OW, OLEM, OMS-EN, OITA & OCSPP)*
*Grants Management Branch*
*Grants Management and Business Operations Division (GMBOD)*
*Office of Grants and Debarment*
*U.S. Environmental Protection Agency*
*1300 Pennsylvania Ave., NW*
*Washington, D.C. 20460*

*Office: 202-564-0645 and Email: Lloyd.Keva@epa.gov*

-----Original Appointment-----
**From:** Tan, Ying <Tan.Ying@epa.gov>
**Sent:** Thursday, April 3, 2025 8:24 AM
**To:** Tan, Ying; Lloyd, Keva
**Subject:** Novation Procedure Guidance
**When:** Thursday, April 3, 2025 1:45 PM-2:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Microsoft Teams Meeting

Hello Keva,

I heard that you may be the person to speak about in regards to an EPA procedure for a novation within the States and EPA's role. Feel free to counter the time for this if this schedule doesn't work. Thank you in advance.

Sincerely,

Ying Tan
U.S. Environmental Protection Agency
Office of Ground Water and Drinking Water
Drinking Water Capacity and Compliance Assistance Division
Drinking Water Protection and Grants Branch

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: 245 090 808 678

Passcode: 6i3NS7ec

---

### Dial in by phone

+1 202-991-0477,,192056509# United States, Washington

Find a local number

Phone conference ID: 192 056 509#

### Join on a video conferencing device

Tenant key: sip:teams@video.epa.gov

Video ID: 111 657 224 5

More info

For organizers: Meeting options | Reset dial-in PIN

This meeting may be recorded. If the meeting is recorded, it will be announced via a banner showing "this meeting is being recorded." Participation in a recorded meeting will be deemed as consent to be recorded. Meeting recordings may be official agency records subject to appropriate policy, rules and regulations.

---

EPA_00226224

XXXXX 2025

### GUIDANCE FOR PROCESSING NOVATIONS, REPLACEMENT GRANTS, AND ADMINISTRATIVE CHANGES

**Purpose:** This guidance provides advice to Grants Specialists (GS) and Project Officers (PO) for processing actions transfers an assistance agreement to a successor-in-interest. It distinguishes between novations based on transfers of projects due to movement of key personnel and mergers or acquisitions of recipient assets. Guidance is also provided on awarding replacement grants when a recipient is unable or unwilling to complete the EPA funded project.[1] The guidance also covers processing transfers of performance responsibilities among agencies of the same unit of government or campuses at the same institution of higher education. Finally, the guidance addresses updating the name or address of the recipient which may be processed through administrative changes.

### I. Novations.

A novation is the transfer of the legal and administrative responsibility for an assistance agreement from one recipient to another as a "successor in interest". The successor in interest acquires the rights to and obligations under an EPA assistance award(s) subject to the limits of the amount of EPA funding. This action involves either terminating the original assistance agreement through a no-cost amendment and making a new award with funding de-obligated from the original assistance agreement or amending another assistance agreement to add the de-obligated funds depending on the circumstances.

**NOTE:** Novations are complicated actions. The actions should be processed by senior GS and POs in close coordination with the GMO, the Research Triangle Park Finance Center (RTPFD) and OGC or ORC as appropriate.

Novations may take place because of the following types of transactions in which one recipient becomes the "successor-in interest" to another and assumes the rights and obligations under an EPA assistance agreement.

A. Project Transfers Due to Key Personnel Movement.

Note: It is EPA practice to only agree to novations when the entire amount of funds remaining in the EPA assistance agreement for the entire project is transferred from the original recipient to the successor recipient. Partial project transfers must be effectuated through subawards or procurement contracts depending on the circumstances. See section I.A.6. below for additional guidance on partial project transfers.

1. Description.

---

[1] "Replacement grant" is a term of art that includes cooperative agreements.

1

EPA_00226225

This action occurs when the original recipient ("original recipient") voluntarily agrees to relinquish responsibility for all of an active project before the expiration of the approved project period and a different recipient ("successor recipient") agrees to take responsibility for performing the project. Project transfers typically take place as a result of a Program Manager or Principal Investigator (PM/PI) on a research project moving from one institution to another. Research project transfers are the most common type of novation. Although this guidance focuses on research project transfers, the coverage below may also apply when a key person or persons for a different type of EPA funded project moves to a different organization.

2. Policy and Legal Considerations.

a. For project transfers it is the original recipient rather than the PI or PM makes the decision regarding whether to request EPA grant the project transfer to the successor recipient. This is because it is the non-Federal entity that EPA awarded the assistance agreement to that is the recipient rather than the individual PI/PM.

(1) The original recipient may employ one of the alternatives to novation described in section I A.6., below rather than transfer the project to a different institution through a novation.

(2) The original recipient also has the discretion to change the PI/PM specified in the original assistance agreement as long as EPA's Award Official or another Authorized EPA Official (AEO), after consulting with the PO, approves the qualifications of the new PI/PM under 2 CFR 200.308(f)(2).[2] Consequently, EPA must receive a written project transfer request from the original recipient's office of sponsored programs or similar institutional component with authority to make financial decisions on behalf of the recipient. This communication should also acknowledge that the original recipient is requesting that the assistance agreement be terminated under 2 CFR 200.340(a)(3) subject to EPA's agreement for the project transfer.

b. The scope of work for the project must remain essentially the same (i.e. the same outputs and outcomes for purposes of the Environmental Results Order) for the transferred project unless the obligational period for the time limited EPA funding such as Environmental Programs and Management, Science and Technology, and Superfund appropriations transferred to S&T has not expired or the project was funded with no-year appropriations.[3] This is because as a legal matter the transactions transferring the project to the successor recipient must not lead to a new obligation when after the two-year period for obligating these appropriations has expired.

---

[2] Under Delegation 1-14-A, Grants Management Officers and Associate Award Officials may also provide regulatory approvals.
[3] Minor scope revisions required for practical reasons are permissible. For example, a PI/PM may need to adjust the research design or sampling protocols based on the resources available at the second institution. The overall research objective and expected Environmental Results, however, must remain the same.

EPA_00226226

(1) EPA may award project transfer grants during the seven-fiscal year period following the expiration of the period of availability for obligation with time limited appropriations to liquidate obligations. However, all time limited appropriations must be obligated by EPA and that obligation liquidated by the recipient incurring and receiving payment for allowable costs before the seven-fiscal year period expires. Program offices should carefully consider the transaction costs and feasibility for project transfers when the funds for the original agreement will be cancelled in a relatively short period of time.

(1) The scope of work for competitively awarded agreements the successor recipient will perform must not vary substantially from the original agreement to be consistent with EPA policies for competition and peer review.

(2) EPA's Grant Competition Advocate has determined that as long as the scope of work for the transferred project is substantially the same as that for the original agreement and the PI/PM named in the original agreement continues to perform the agreement the project transfer may be effectuated without an exception from competition. This is because the substance of the agreement and the qualifications of the key personnel remain the same as the original award and the project transfer is necessary to complete the competitively funded project. In Funding Recommendations, as applicable, POs should indicate that the selection basis for the award is "Novation".

(3) Similarly, if the project transfer involves a research agreement that underwent peer review the scope of work and qualifications of key personnel must remain the same to ensure the scientific value of the EPA funded work will not be diminished. **[ORD to describe other peer review considerations, if any]**

(4) The facilities and resources at the successor recipient must be adequate for successful performance of the transferred project. POs must make appropriate inquiries to ensure that this requirement is met.

(5) If the successor recipient is a foreign organization, the PO must obtain Office of International Activities approval prior to the transfer.

c. In reviewing a recipient's request for a project transfer, the PO must consider whether there is a continuing need for the award-supported project or activity. For agreements funded with "no year" appropriations (e.g. Superfund, State and Tribal Assistance Grants and Leaking Underground Storage Tanks) EPA has the option of retaining de-obligated funds from terminated assistance agreements for use in funding other activities. When the funds may be put to better use elsewhere, it may be in EPA's best interest not to agree to a project transfer and request that the original recipient consent to a termination under 2 CFR 200.340(a)(2). Note, however, that if the original recipient declines to consent to termination it must request EPA approval under 2 CFR 200.308(f)(2) to change a key person specified in the award.

d. The AEO, in consultation with the PO and OGC/ORC if necessary, terminate grants when the PI/PM moves to a different organization.

EPA_00226227

(1) As noted above, under 2 CFR 200.308(f)(2) the original recipient must demonstrate to EPA's satisfaction that it can effectively perform the agreement with another PM/PI employed by that institution in order to retain the assistance agreement.

(2) If EPA and the original recipient do not reach an agreement on how to transfer the project, or for the original recipient to retain the project, then the original recipient may request that EPA terminate the agreement for convenience as provided by 2 CFR 200.340(a)(4). Alternatively, AEO may recommend that the original recipient enter into a termination agreement with EPA under 2 CFR 200.340(a)(3). Neither type of termination reflects adversely on the first institution's performance record such that the termination would be reported in EPA's Compliance Data Base or under 2 CFR 200.340(c) to the **SAM.gov** data base.

(3) EPA may unilaterally terminate the original grant under 2 CFR 200.340(a)(1) only after finding that the original recipient has violated 2 CFR 200.308(f)(2) or another provision of the agreement due to failure to replace key personnel with a PM/PI qualified to conduct the EPA funded research. The termination notice must, as required by 2 CFR 200.340, advise the original recipient that EPA will report the termination to the OMB-designated integrity and performance system accessible through the System for Acquisition Management (currently **SAM.gov**). The original recipient may dispute the termination pursuant to 2 CFR Part 1500, Subpart E. Consequently, a unilateral termination should only be initiated when other means of ensuring that the original recipient can perform effectively despite the loss of the PI/PM have not been successful.

e. If the transfer is approved, the GS will obtain the necessary documentation from the original recipient to terminate the agreement by amendment and obtain an application from the successor recipient for a new award. Additional details regarding the procedures the GS must follow are available in -Appendix 1 to this guidance.

f. In limited circumstances, the project transfer may be accomplished through a supplemental funding amendment to an existing assistance agreement with the successor recipient. The scope of work for the existing assistance agreement must be sufficiently broad to encompass the work that will be performed under the transferred project.

g. The PO must carefully review partial project transfer requests to ensure that the overall project that EPA funded projects will be effectively carried out if a portion of the project will be carried out by a different entity. It is EPA's policy to require that recipients use alternatives to novations described below rather than to process partial novations to effectuate a partial project transfer.

3. Transfers of projects within state university systems.

(1) State university systems often include multiple institutions (e.g. University of Wisconsin at Madison and University of Wisconsin at Milwaukee) and the process for transfers of projects between campuses would depend on state law. When the transfer is between two institutions that are legally separate under state law the procedures for a project transfer novation will be followed. GS should work with OGC/ORC to determine

4

it the two institutions are legally separate.  OGC/ORC will generally request an opinion from the legal department of the original recipient or the state Attorney General's office to make this determination.

(2)  When the transfer is between institutions that are components of the same legal entity under state law, the transfer may be effectuated by a simple name change amendment provided the transfer does not affect the PI/PM's role in the project, the scope of work, the recipient's administrative capabilities, facilities and other resources.   This amendment will change the name of the institution performing the agreement and provide RTPFD with financial information if the accounting data for Automated Standard Application for Payments (ASAP) will be changed.

5.  Additional Funding.

EPA may support transferred projects through incremental funding for the successor recipient in amounts up to the ceiling on the original award for the remainder of the previously approved project period.  Supplemental funding may be added to the extent permitted by EPA's Competition Policy.

6.  Alternatives to Novations for Project Transfers.

a.  The original recipient may request EPA approval under 2 CFR 200.308(f)(6) to make a subaward to the PI/PM's new institution.  Such a transaction will typically be more cost-effective from EPA's standpoint than a novation if a portion of the project will be transferred and is EPA's preferred option for partial project transfers.

(1) In the case of complete project transfers by subaward the cost effectiveness analysis must consider the need for the original recipient to use EPA funds to manage and monitor the subaward in compliance with 2 CFR 200.331 and the original recipient's as well as the succeeding subrecipient's ability to charge the EPA agreement for indirect costs.

(2) Generally, the original recipient may distribute its indirect rate up to the first $50,000 of each subaward (regardless of the period of performance of the subawards under the award). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs, and the portion of each subaward in excess of $50,000. Other items may only be excluded when necessary to avoid at 2 CFR 200.1, Modified Total Direct Cost unless the recipient is a governmental recipient whose cognizant agency approves a higher amount.  The subrecipient will also charge an indirect cost rate to the subaward as authorized by 2 CFR 200.331(b)(4). This may significantly reduce the funds available to carry out the substantive work under the project.

(3)  As long as there is no significant change to the scope of work for the original agreement, the AEO with the concurrence of the PO may approve the proposed subaward.  The AEO may approve the subaward by an informal modification.  A re-budgeting action will be necessary since the subaward will substantially change the

5

distribution of direct costs among cost categories from "Personnel" and "Fringe" for the PI/PM's compensation to the line item in "Other" for subawards.

b.  The original recipient may be able to justify a sole source consulting contract with the PI or PM as an individual particularly if the research is at an advanced stage.  EPA must approve these transactions as provided at 2 CFR 200.308(f)(1) and 2 CFR 200.320(c). EPA will agree to the use of non-competitive procurement contracts to complete projects only if the recipient provides an adequate justification.

(1) Again, from EPA's standpoint the contract must be cost effective and not substantially diminish the funding available for substantive work.  Keep in mind that under 2 CFR 200.1 recipients may distribute their indirect cost rate to the entire amount of procurement contracts. The original recipient may also charge the EPA assistance agreement for contract administration costs.

(2)  As long as there is no significant change to the scope of work for the original agreement, the AEO with the concurrence of the PO may approve the proposed contract.  The AEO may approve the contract by an informal modification.  A re-budgeting action will be necessary since the contract will substantially change the distribution of direct costs among cost categories from "Personnel" and "Fringe" for the PI/PM's compensation to the line item in "Contractual".

(3)  Unless the contract with the original recipient's former PI/PM is awarded on a fixed amount basis (i.e. a specified amount for production of a report) the consultant fee limit described at 2 CFR 1500.10 will probably apply to the contract.  This limit impacts the amount of the individual consultant's personal compensation that the recipient may charge to the EPA grant.  POs and GSs should consult with OGC/ORC on questions relating to the consultant fee limit.

B.  Acquisition and Merger Novations.

1.  Description.

a.  An acquisition is a legal action in which one non-Federal entity purchases the assets and rights or another non-Federal entity under a transaction in which the acquiring non-Federal entity assumes the rights and obligations of the acquired non-Federal entity as a successor in interest.  The acquired entity ceases to exist legally following the acquisition. The terms of the acquisition must authorize or require the acquiring entity to perform EPA assistance agreements in order for EPA to novate the assistance agreement to the acquiring entity.  POs should consult with OGC/ORC in reviewing the terms of acquisition agreements.

(1)  If an EPA recipient acquires another organization there should not be an impact on performing the assistance agreements and novations are not necessary.  There may be changes in personnel or the name of the recipient that would be addressed through other procedures.

EPA_00226230

(2) Acquisitions may not be effective immediately.  In some cases, the timing of the acquisition may be such that the original recipient remains legally viable and able to cooperate with novating the assistance agreement(s) to the successor in interest.  The guidance below presumes that the original recipient no longer exists.  However, the Legal and Policy Considerations remain the same when the original recipient still exists and is able to execute amendments or take other actions necessary to effectuate the novation in its own name.

b. A merger is a legal action resulting in the union of two or more non-Federal entities in which the legal existence of one or all of the parties to the merger is extinguished. When such an action involves the transfer of EPA assistance agreements to the surviving organization or a newly created organization, a successor-in-interest transaction takes place. The legal entity surviving the merger, or the new legal entity formed as a result of a merger, becomes the successor-in-interest.  However, if the surviving organization is the recipient itself (e.g. the articles of incorporation have not changed, UEI and Employer Identification Number remain the same) then the merger does not create a successor-in-interest situation and a novation is not necessary. There may be changes in personnel or the name of the recipient that would be addressed through other procedures.

(1)  Mergers may not be effective immediately.  In some cases, the timing of the merger may be such that the original recipient remains legally viable and able to cooperate with novating the assistance agreement(s) to the successor in interest.  The guidance below presumes that the original recipient no longer exists.  However, the Legal and Policy Considerations remain the same when the original recipient still exists and is able to execute amendments or take other actions necessary to effectuate the novation in its own name.

(2) When the merger does not involve the transfer of EPA assistance agreements, such as a situation in which the surviving organization is the original recipient, the procedures for recognizing a name change described in section IV will apply if necessary. POs should consult with OGC/ORC in reviewing the terms of acquisition agreements.

2.  Legal and Policy Considerations

a.  In order to novate an assistance agreement on the basis of an acquisition or merger, the successor in interest must be eligible to receive the agreement under the statutory authority for the grant program and any related program guidance including the terms of competitive funding announcements.  For example, if a for profit organization acquires the assets of a nonprofit EPA grant recipient then the assistance agreement may not be novated if for profit organizations are not eligible for the same grant.  This same rule applies to mergers. Similarly, the AEO may not approve a novation of an EPA assistance agreement to a 501(c)(4) non-profit organization that lobbies

b.  As with project transfers due to movement of key personnel, the scope of work for assistance agreements that are novated due to acquisitions or mergers must remain

7

essentially the same for grants funded with EPM or S&T appropriations unless the obligational period has not expired. Minor adjustments may be made if there are changes to facilities or personnel. However, if the successor recipient proposes to replace key personnel or to perform work through contracts or subawards that were not described in the original application/scope of work then prior EPA approval is required under 2 CFR 200.308(f)(2) and (6).

c. Agreements funded with no-year appropriations are not subject to the same fiscal law limitations on creating new obligations as those that apply to time limited appropriations. However, if the successor recipient proposes a substantially revised scope of work there may be competition implications and the transaction would not be allowable as a novation that is not subject to competition.

d. EPA's Grant Competition Advocate has determined that as long as the scope of work for the grant to be novated due to an acquisition or merger is substantially the same as that for the original agreement the novation may be effectuated without an exception from competition. This is because the substance of the agreement and the qualifications of the key personnel remain the same as the original award and the project transfer is necessary to complete the competitively funded project. In Funding Recommendations, POs should indicate that the selection basis for the award is "Novation".

e. The AEO may, in consultation with the PO and OGC/ORC if necessary, decline to agree to novate a grant based on an acquisition or merger.

(1) As noted above, if the successor recipient proposes to substantially change the scope of work for the original agreement that EPA funded with EPM or S&T appropriations EPA may not be able to novate the agreement due to fiscal law concerns. This same policy applies to competitive agreements funded with no-year appropriations.

(2) The successor in interest may request that EPA fully or partially terminate the agreement for convenience as provided by 2 CFR 200.340(a)(4). Alternatively, the AEO may recommend that the original recipient enter into a termination agreement with EPA under 2 CFR 200.340(a)(3) particularly when only a portion of the agreement will be terminated due to the successor recipient's decision not to carry out the original scope of work. Neither type of termination reflects adversely on the first institution's performance record such that the termination would be reported in EPA's Compliance Data Base or under 2 CFR 200.340(b) and 200.341(c) to the **SAM.GOV** data base.

f. If the acquisition/merger novation is approved, the GS will obtain the necessary documentation from the successor in interest to terminate the original agreement by amendment and obtain an application from the successor recipient for a new award. The successor in interest must provide financial information to the GS sufficient for EPA's RTPFD to financially close out the agreement. The successor recipient must submit an application that includes an acceptable work plan and budget. Additional details regarding the procedures the GS must follow are available in the Appendix to this guidance.

8

4. Additional Funding.

EPA may support projects that have been novated to successor recipients through incremental funding in amounts up to the ceiling on the original award for the remainder of the previously approved project period.  Supplemental funding may be added to the extent permitted by EPA's Competition Policy.

## II.  Replacement Grants.

Replacement grants are awarded under policies and procedures that are similar to those for novations for project transfers but may be subject to competition requirements depending on the circumstances.  EPA practice is to only award replacement grants for the entire amount of grant funds rather than partial replacement grants.

A.  Description.

EPA has the discretion to award a replacement grant when the original recipient dissolves or is otherwise no longer able to effectively perform the agreement and EPA terminates the agreement and selects another recipient ("replacement grantee") to complete the project.  EPA may terminate the agreement at the original recipient's request, by mutual agreement or for either noncompliance or cause as appropriate under 2 CFR 200.339 and 200.340.  Replacement grant actions are rare.

B.  Legal and Policy Considerations

1.  In determining whether a replacement grant is appropriate, the PO must consider whether there is a continued need for the award-supported project or activity.

(a) For agreements funded with "no year" appropriations (e.g. Superfund, STAG, and LUST) EPA has the option of retaining de-obligated funds from terminated assistance agreements for use in funding other activities.  It may be in EPA's best interest to not award a replacement grant when the funds could be put to better use elsewhere.  Additionally, there are substantial transaction costs for EPA in processing awards for replacement grants.

2.  The scope of work for the project must remain essentially the same for replacement grants funded with time limited appropriations (EPM and S&T) unless the obligational period for the appropriation has not expired. [4]   This is because as a legal matter the transfer or replacement grant must not lead to a new obligation when EPA funded the original agreement with EPM or S&T appropriations after the two-year period for obligation has expired. EPA has more flexibility to consider changes to the purpose of a project when the replacement grant will be funded with no-year appropriations. However, scopes of work for competitively awarded agreements financed with no-year

---

[4] Minor scope revisions required for practical reasons are permissible. The overall objective of the project and expected Environmental Results, however, must remain the same.

EPA_00226233

appropriations may not be materially changed in a replacement grant unless EPA re-competes funding for the project.

3.  For replacement grants, EPA must make case-by-case determinations on the need for competition in selecting the replacement grantee.

(a) For discretionary grants, the program office will normally select the replacement grantee competitively if the amount of the award (including potential incremental funding) exceeds the $25,000 competition threshold.  The GCA may make exceptions.

(b)  Exceptions may be warranted when the time limited appropriations obligated for the agreement will be de-obligated and cancelled by operation of law within a relatively short period of time or suspending the project to conduct a competition would adversely impact the project beneficiaries as may be the case in a training grant.

(c)  Competition is not required for replacement grants for programs that are exempt from competition.

(d)  For agreements financed with time limited appropriations (EPM and S&T), the competitive announcement for the successor agreement must be for a project that has essentially the same scope of work as the original agreement unless replacement grant will be awarded before the period for obligating the appropriations expires.  All EPA policies for competition and peer review must be followed.

4.  Replacement grant situations in which the original recipient cooperates with EPA in transferring the agreement to the replacement grantee do not require significant deviations from procedures.

(a)  If the original recipient has been dissolved or is unwilling to cooperate with EPA in closing out the original grant then reports required by regulation include the Final Federal Financial Report Procedures (2 CFR 200.328), Final Performance Reports (2 CFR 200.328(b)) and the MBE/WBE report (40 CFR 33.502) may not be submitted.  This does not prevent EPA from terminating the original agreement and closing it out.

(b)  Enforcement action under 2 CFR 200.339 to recover EPA funds or to take other authorized actions may be warranted depending on the circumstances if the recipient is unwilling to provide required reports.  Note that recipients may dispute enforcement actions under [ HYPERLINK "https://www.ecfr.gov/cgi-bin/text-idx?SID=3e044537433e0616cf933c3a2192a0f5&tpl=/ecfrbrowse/Title02/2cfr1500_main_02.tpl" ]

## III.  Intragovernmental Transfers of Performance Responsibility.

A.  Description.

An action whereby primary responsibility for performing an assistance agreement is transferred from one agency or component of the same governmental unit to another

EPA_00226234

agency or component due to a reorganization or other official action by the governmental unit.

B.  Legal and Policy Considerations.

There is no need to process a novation when performance is transferred between governmental agencies unless state, tribal or local law provides that the two agencies are separate legal entities for the purposes of entering binding obligations with the Federal Government and a new agreement is required on the basis on these laws.

1.  EPA's general policy, based on the definition of *Grantee, Local Government and State* in 40 CFR 31.3 has historically been that the governmental unit itself is the legal entity that receives EPA funds even if one particular component of the government is named in the assistance agreement as the performing recipient. EPA takes the same position under the UGG based on the definitions of the definitions of the terms "Non-federal entity" (200.69), "Indian Tribe" (200.54), "Local Government (200.64), "Recipient" (200.86) and "State" (200.90).

a.  When the action only results in a different agency or component having primary responsibility for performing the assistance agreement without substantially revising the scope of work the transfer may be effectuated by an administrative change to EPA's records.  Note, however, that state agencies may have different indirect cost rates so budget adjustments may be required in some cases.  Additional guidance on transfers of funding between agencies of the same unit of government is available in [ HYPERLINK "https://www.epa.gov/system/files/documents/2023-04/epa_subaward_policy_frequent_questions.pdf" ]

b.  If the name of the agency having primary responsibility for performing the agreement changes, without a transfer of primary responsibility for performing the agreement, POs and GSs should follow the guidance in Section IV. Name or Address Change.

2.  An intragovernmental transfer will require an amendment to the assistance agreement only if the scope of work and budget for the EPA funded project is substantially revised. If that is the case, the fiscal law and competition rules that apply unless the agreement at issue is a Continuing Environmental Program Grant or Superfund Cooperative Agreement that will be funded with no year STAG, LUST or Superfund Appropriations. No-year funds may be de-obligated and re-obligated without regard to limitations on the obligational period that apply to time limited appropriations.  Additionally, these agreements are not subject to competition.

3. Depending on state, local or tribal law intergovernmental transfers of responsibility for carrying out an EPA assistance agreement may also be effectuated through subawards or procurement contracts.  Additional guidance on the use of these instruments to transfer funds between agencies of the same unit of government is available in [ HYPERLINK "https://www.epa.gov/system/files/documents/2023-04/epa_subaward_policy_frequent_questions.pdf" ]

**IV.  Name or Address Changes**

11

EPA_00226235

A.  Description.

These actions only involve a change in the recipient's name and/or address.  The recipient's rights and responsibilities associated with the performance of the project are unchanged.

B.  Legal and Policy Considerations.

1.  If the only change is in the recipient's name or address a novation or amendment is unnecessary.  Because the recipient's name or address is the only thing that is changing, the recipient's eligibility to receive the award under EPA's statutory and regulatory requirements is unchanged. The articles of incorporation or legislative authorization establishing the recipient's legal status remain in effect as do the recipient's IRS employer identification number and UEI Number.  The funding obligation remains the same since there has been no change to the scope of work.  Name and address changes may be effectuated administratively.

2.  The Grants Management Office (GMO) updates the Next Generation Grants System (NGGS) and provides documentation of the change to the Servicing Finance Office (SFO). If the recipient's MBE/WBE fair share goals/objectives change because of the address change, the GMO will issue an amendment reflecting the new goals/objectives.

**V.  Equipment.**

A.  Description.

A change of recipient may also involve the transfer of equipment purchased with award funds from the original recipient to the successor recipient or replacement grantee. The transfer may be accomplished as part of the original recipient's relinquishment of the award based on disposition instructions from EPA.  Alternatively, EPA may allow the original recipient to retain the equipment for use on other Federally funded projects or provide other disposition instructions as described below.

B.  Legal and Policy Considerations.

1.  In general, conditional title to equipment acquired by a recipient with EPA funds vests in the recipient upon acquisition subject to the requirements of 2 CFR 200.312(c) in the case of Federally owned property. 2 CFR 200.313 and 2 CFR 200.314.  Limited exceptions to these general rules are available to States under 2 CFR 200.313(c)(d)(e) which provides that States use, manage, and dispose of equipment acquired under an award in accordance with State laws and procedures, and certain research grant recipients with exempt property. These requirements do not apply to equipment for which only depreciation or use allowances are charged, donated equipment, or equipment acquired primarily for sale or rental rather than for use.

2.  Under 2 CFR 200.313(e) the equipment purchased with EPA funds must be used as long as needed for the original project or program.  GSs and POs should work together to

12

ensure that any expensive equipment that is necessary for successful completion of the EPA funded project is transferred to the successor recipient in the case of project transfers or the replacement grantee. However, if the current value of the equipment is $5,000 or less or the cost of shipping the equipment to the successor recipient or replacement grantee (which may be charged to the current recipient's agreement) would be unreasonable then EPA should allow the current recipient to retain or sell the equipment pursuant to 2 CFR 200.313(f).  The AEO would issue equipment disposition instructions to that effect.



EPA_00226237

| Change Type | Amendment Documenting Change Required? | New Award Documenting Change Required? | Can the Workplan change? | Can the Budget change? | Is there Final FFR required prior to completing the transfer/award action? |
|---|---|---|---|---|---|
| Novation (Project Transfers, Acquisitions or Mergers) | Yes, a closeout/termination amendment must be created for the original recipient. | Yes, a new award within the same NGGS Grant Family, per regional business practice, must be issued to the successor recipient. | No | Yes, in limited circumstances, however the Award ceiling cannot change. | Yes |
| Replacement Grants | Yes, as long as the original recipient has not dissolved and is cooperative in accepting a termination action. Otherwise, EPA must take a unilateral termination action for failure to perform or cause. | Yes, a new award within the same NGGS Grant Family, per regional business practice, must be issued to the second institution. | No | Yes, in limited circumstances, however the Award ceiling cannot change. | Yes, as long as the first institution has not dissolved and is cooperative in accepting a termination action. Regulatory exceptions may be necessary in cases requiring unilateral EPA terminations. |
| Intragovernmental Transfers | Depends on if any items need to be changed for RTPFD purposes (such as new EIN, etc.) or if there is a substantial change to the scope of work and budget. | No | Yes as long as the obligational period for the supporting appropriations has not expired and the grant program is not subject to competition. | Yes, but the Award ceiling cannot change. | No |
| Name Change | Depends on if any items need to be changed for RTPFD | No | No | No. | No |

EPA_00226238



|  | purposes (such as new EIN, etc.) |  |  |  |  |
|---|---|---|---|---|---|
| Address Change | No | No | No | No. | No |

EPA_00226239

**Appendix 1.  Processing Novations, Replacement Grants and Administrative Changes.**

**Novations**

If a novation meets the legal and policy requirements described in the "Guidance for Processing Novations, Replacement Grants and Administrative Changes" (Guidance), Grant Specialists (GS) and Project Officers (PO) follow these procedures to effectuate the action. These procedures are based on the assumption that the project is not being transferred to a foreign recipient.  If the second recipient is a foreign organization, Office of International Activities approval must be approved prior to the transfer.

**NOTE:** Novations are complicated actions.  The actions should be processed by senior GS and POs in close coordination with the Grants Management Office (GMO), the Research Triangle Park Finance Division (RTPFD) and Office of General Counsel (OGC) or Office of Regional Counsel (ORC) as appropriate. **The termination amendment and the new award are to be signed simultaneously.**

**SECTION I. Novations Based on Project Transfers**

**Overview**

A complete project transfer occurs when the original recipient will not continue to perform any portion of the original agreement.  Complete project transfers may take place after the original recipient has incurred costs for performing the agreement or prior to performance beginning. EPA fully terminates the original agreement and makes a new award to the successor recipient in the case of a complete project transfer.

Partial project transfers involve only a portion of the scope of work that remains to be performed under the original agreement.  It is EPA policy to effectuate partial project transfers through subawards or procurement contracts rather than novations.   Refer to Guidance at **Section I.A.6.** for additional information on project transfers.

**Step 1.  Obtaining information from the original recipient and successor recipient and deciding whether to approve the project transfer and notifying EPA's Research Triangle Park Finance Division.**

When the original recipient requests a project transfer, EPA's PO and GS must obtain documentation sufficient to make a decision on whether to novate the assistance agreement and advise the RTPFD financial specialist assigned to the original award of the possibility of a project transfer.  Send notification of transfer to [ HYPERLINK "mailto:RTPFC-Grants@epa.gov" \h ] .

a.  Initial EPA Decision to transfer the project.

(1) In order to decide whether the project transfer is in EPA's best interest, the original recipient must submit the following material to the Grants Management Office (GMO).

1

(a)  A letter or email from an authorized official from the original recipient requesting that the agreement be terminated.  For example, an official from the office of sponsored programs rather than a principal investigator or project manager for a research grant to an institution of higher education must request termination.

(b) The communication must explain why the original agreement should terminated, describe the scope of the termination, the effective date, and justify transferring the project to the successor recipient.  Additionally, the original recipient must agree to liquidate all financial obligations incurred prior to terminating the original agreement.

(c) A copy of a letter or email from an authorized official in the successor organization agreeing to accept the transferred project and describing the terms of the acceptance.  The successor recipient must agree to assume the obligations of the original recipient under the original agreement subject to the limits on the amount of funds EPA awards under the successor agreement. The scope of work for the successor recipient's agreement with EPA must be essentially the same as that for the original recipient if the grant was funded with time limited appropriations (EPM or S&T) or was awarded competitively.  Refer to Guidance at **Section I.A.2.** for additional information.

(2)  When the Grants Specialist for the original agreement receives the project transfer request, he or she will contact the Project Officer to coordinate a decision on the request.  Project transfer decisions involve both policy considerations and administrative determinations of the successor recipient's eligibility and capacity.

(a) GS will notify RTPFD of a pending novation or transfer and request a hold of funds in ASAP.

(3)  For time limited appropriations (EPM or S&T) the period of time that the funds remain available for liquidating obligations must be such that it is feasible to complete the project and that transaction costs for the project transfer are not excessive.  The GS is to review the accounting data for all active lines of accounting for the original agreement and provide the information on fund availability to the Project Officer and GMO. Refer to Guidance **Section I.A.2.** for additional information.

**Create Screen Shot for both S&T and EPM.**

(4) The program office and the GMO office must reach a consensus on whether the project transfer is in EPA's best interest based on the factors described in the Guidance.  If consensus cannot be reached, the matter should be elevated through appropriate management channels.

(5) The GMO will advise the original recipient by email whether EPA will continue processing the project transfer.  A copy of this email will be transmitted to EPA's Research Triangle Park Finance Division (RTPFD).  The RTPFD finance specialist will include the email in the file for the assistance agreement and monitor the project transfer process.

EPA_00226241

(6) Note that decisions not to approve project transfers may not be disputed under 2 CFR Part 1500, Subpart E. For additional information on what to do if the original recipient decides to voluntarily terminate the agreement notwithstanding EPA's decision not to approve the project transfer see Guidance at **Section I.A.2**.

b. Required documentation to effectuate complete transfer.

(1) The GS will instruct the original recipient must submit all reports required to close out the agreement including:

(a) Final Federal Financial Report, Standard Form 425, submitted to the GS for subsequent transmission to RTPFD. The GS's instructions must include direction for the original recipient to include a statement in the "Remarks" section indicating that the FFR is being submitted in connection with a novation.

Note: If the original recipient has not incurred any costs under the agreement, and declines to provide a final FFR, the GS must obtain a statement from an authorized official from the original recipient clearly stating that no costs were incurred and that the original recipient will not submit a claim to EPA for any costs incurred under the original agreement.



(b) Final Performance Report submitted to the PO unless waived by the Program Office.

(c) Final Disadvantaged Business Utilization Report, EPA Form 5700-52A, submitted to the GS.

(d) Equipment inventory, if applicable, submitted to the PO.

(e) Deliverables and other agreement specific items submitted to the PO, if applicable.

(2) The successor recipient must provide:

(a) Application for Federal Assistance, Standard Form 424A and 424B including budget tables as well as required certifications and assurances submitted to the GS.

(b) Proposed work plan submitted to the PO and GS. Note—the scope of work for the successor recipient's agreement generally must be substantially the same as that for the original agreement. Refer to Guidance at section I.A.2 for additional information.

(c) Budget detail narrative addressing all applicable budget categories consistent with the budget table in the SF 424A submitted to the PO and GS.

(d) For agreements that involve environmentally related data operations, including environmental data collection, production or use, the successor recipient must provide written

3

quality assurance system for EPA approval as required by [ HYPERLINK "https://www.ecfr.gov/cgi-bin/text-idx?SID=c0c6691045108aa27a5b14f086d4e61f&mc=true&node=se2.1.1500_111&rgn=div8" ]

Note: If the successor recipient is a nonprofit organization other than an institution of higher education and the amount of the award will be more than $200,000 a pre-award certification described at EPA Order 5700.8 is also required unless the recipient has a current certification.

**Step 2.  Review of Documentation.**

a.  Project Transfers. The GS and PO will work together to review the documentation submitted by the original and successor recipients to ensure that:

(1) The amount of funding remaining in the original recipient's final FFR and the amount of EPA funds the successor recipient requests on the SF 424A budget coincide.

(2)  The project ending date for the original recipient's final FFR and the proposed project starting date on the successor recipient's SF 424A do not overlap. Unless the project start/end dates of the original award are the same as the start/end dates of the new award.

(3) The successor recipient's proposed work plan and budget narrative indicate that the successor recipient will carry out essentially the same project as the original recipient.  See Guidance at **Section II** for exceptions.

(4)  For agreements subject to [ HYPERLINK "https://www.ecfr.gov/cgi-bin/text-idx?SID=c0c6691045108aa27a5b14f086d4e61f&mc=true&node=se2.1.1500_111&rgn=div8" ], the successor recipient must provide an acceptable written quality assurance system.

(5)  The original recipient's equipment inventory does not include usable equipment that could be transferred to the successor recipient or otherwise disposed of (e.g. sold) of in an appropriate manner.

(6)  The final performance report and deliverables indicate that the original recipient adequately performed the project prior to transfer.

(7) The successor recipient's application is complete including all required certifications.

(8)  The successor recipient is not a nonprofit organization subject to the pre-award certification process described by [ HYPERLINK "http://intranet.epa.gov/ohr/rmpolicy/ads/orders/5700_8_proposed_revision.pdf" ]

**Step 3.  Processing the Project Transfer.**

a.  Termination of Original Award.

4

(1)   The PO prepares a memorandum from the program's Approval Official to the Grants Management Officer (with a copy to the GS) documenting approval of the project transfer.  The memorandum should provide:

(a)  The assistance agreement number.

(b)  The names of the original and successor recipients.

(c)  A justification for the project transfer.

(d)  The terms of the transfer including the end date for the original agreement and start date for the successor agreement.

(e)  A description of any changes to the programmatic terms and conditions including an attachment with revised terms and conditions (if any).

(f) Advice regarding any change to the PO for the successor agreement.

(2)  The GS will initiate the Change Request for the termination amendment to the original agreement.  Prior to initiating the Change Request, the GS must query the Compass Data Warehouse or the Grants Research Information Portal to obtain the following information:

(a)  Active accounting lines for the original award.

(b)  Available balance in each accounting line.

Note: The accounting data in EPA's information systems does not include amounts expended by or anticipated to be spent by the recipient for cost share.

(3)  The GS will review the original recipient's FFR to determine the amount of funds that could be de-obligated under the termination amendment. The GS will prepare the Change Request based on this information. (Please be aware that once RTPFD is notified of the forthcoming novation, the original recipient's ASAP account will be suspended to prevent any future drawdowns.)

(4) The GS processing the Change Request will:

(a)  In the "Change Type" section, select the "Decrease Amendment" and "General Amendment Requiring Signature" from the drop-down menu.

EPA_00226244

The new Change Request opens with basic information from the Award. The PO or GS must select at least one Change Type to indicate what will be modified.



(b) In the "Details" section, describe the action as a "Novation".

EPA_00226245



Also include, in the "Details" section the following or something similar:
- This action decreases $Dollar.Cents from the previously obligated amount. The Fiscal Line Details for this action are shown in whole dollars. The actual amounts to be decreased are shown in dollars and cents below: [insert fiscal line info with negative dollar amounts, including cents] (Please follow local practice and include the necessary language in the "Details" section.)

(c)  For each line of accounting with a remaining balance, identify amounts in each account that need to be de-obligated.  The amount to be de-obligated is based on whole dollars remaining in each accounting line.  Do not include cents from the remaining funds and do not round up or down.  This process must be completed manually.  Select the "Fiscal Data" button and manually enter the accounting line being transferred and minus (-) the funds."

•      STEP 1: Compare the original grantee transfer request to the Final FFR (SF-425) fields and then to the amounts showing in the Compass Data Warehouse and Line 15 of the Approved Budget table in the last award/amendment document:

Original grantee novation request letter excerpt to compare to Final FFR and Compass Data Warehouse: (example)

EPA_00226246

December 6, 2024



Hazeletta Burgess
Environmental Protection Agency
1200 Pennsylvania Avenue NW
Washington, DC 20460

Dear Hazeletta,

I am writing regarding Cooperative Agreement 84059201 between Sand County Foundation and the Environmental Protection Agency. The agreement's project was developed by staff of the Environmental Policy Innovation Center (EPIC), a formerly fiscally sponsored project of Sand County Foundation. It is entirely staffed and directed by employees of EPIC.

EPIC has received its 501(c)3 determination from the Internal Revenue Service. Given this, SCF agrees to terminate the agreement and relinquish its interest in the assets associated with this project effective October 1, 2024.

As reported previously, $1,439,959.12 remains of the $2,000,000 awarded in Cooperative Agreement 84059201.

Final FFR information excerpt to compare to Compass Data Warehouse:

| Federal Expenditures and Unobligated Balance: | FINANCIALLY CLOSED - Processed at RTPFD | |
|---|---|---|
| d. Total Federal funds authorized | DEOBLIGATED: $1,439,959.12 | 2,000,000.00 |
| e. Federal share of expenditures | DATE: 1/24/25 OCFO BY: *Thetrice Taylor* | 560,040.88 |
| f. Federal share of unliquidated obligations | | |
| g. Total Federal share (sum of lines e and f) | Federal 28.90%   Recipient 71.10% | 560,040.88 |
| h. Unobligated balance of Federal Funds (line d minus g) | $560,040.88 Federal Share of Expenditures | 1,439,959.12 |

Compass Data Warehouse information excerpt to compare to Final FFR:

8

 

Document Summary:    General Ledger Entries
Doc Type: GO
Doc No: 4Q84059201
System / External Doc No: IGMS - 84059201-0
IGMS Grant No: 84059201-2
IGMS Budget Start Date: 01/01/2023
IGMS Budget End Date: 12/31/2027
IGMS Project Start Date: 01/01/2023
IGMS Project End Date: 12/31/2027
Order Date: 07/10/23
Closed Date: 12/20/24
Servicing Finance Office: RTPFC
Order Amount: $560,040.88
Net Paid Amount: $560,040.88
Closed Amount: $560,040.88
Available Amount: $0.00
Vendor: THE SAND COUNTY FOUNDATION, INC
Vendor Legal Name: THE SAND COUNTY FOUNDATION, INC
Alternate Vendor:
Description:
Extended Description:

IPAS FFR Status: 01/27/2025-Final FFR received and processed; grant is financial

Document Details:  Expand

| Line# | Itemized Line# | IPP Item Code | Commodity Code | Line Amt | Expende |
|-------|----------------|---------------|----------------|-----------|---------|
|       |                |               |                | $280,020.44 | $280, |
|       |                |               |                | $280,020.44 | $280, |

Document Activity:

| Date | Ref Amount | Related Document | Direction | Date | Ref Amount | Rel |
|------|-----------|------------------|-----------|------|-----------|-----|
| 12/20/2024 | -$719,979.56 | RQ 2323C80005 | Back | | | |
| 12/20/2024 | -$719,979.56 | RQ 2340BIL012 | Back | | | |

NOTE – If any cents are included as remaining, they should not be included in either the Change Request or the termination amendment, rather only the whole dollars should be referenced as being decreased.  RTPFD will decrease the cents when they deobligate in Compass after the Award Official sends the final documents to them later. In this example, since $1,439,959.**12** is remaining as available, only "$1,439,959" should be decreased on the Change Request and the termination amendment.

**Lines 12 and 15 of the last issued amendment of the "Approved Budget" table (page 3):**

| 12. Total Approved Assistance Amount | $ 5,000,000 |
|---|---|
| 13. Program Income | $ 0 |
| 14. Total EPA Amount Awarded This Action | ($ 1,439,959) |
| 15. Total EPA Amount Awarded To Date | $ 560,041 |

- **STEP 2:  Within the CR, select the plus (+) in the "Fiscal Information" section in the bottom right corner**

9



- **STEP 3: Complete the fields within the "Add Fiscal Line Item" table**



10

EPA_00226249



**Note 1: Dollar Amount must be negative!**



11

EPA_00226250

**Note 2: Click "OK" when all fields are completed.**

**Note 3: You will need to complete "Add Fiscal Line Item" for every accounting line that needs to be deobligated.**

**Note 4: Later in the process, once the termination amendment is processed, the accounting information completed in the Change Request will inherit into the "Fiscal Information".**

- **STEP 1: Compare the original grantee transfer request to the Final FFR (SF-425) fields and then to the amounts showing in the Compass Data Warehouse and Line 15 of the Approved Budget table in the last award/amendment document:**

  **Original grantee novation request letter excerpt to compare to Final FFR and Compass Data Warehouse:**

  **Final FFR information excerpt to compare to Compass Data Warehouse:**

  | Federal Expenditures and Unobligated Balance: | |
  | --- | --- |
  | d.  Total Federal funds authorized | $399,327.00 |
  | e.  Federal share of expenditures | $275,693.94 |
  | f.  Federal share of unliquidated obligations | $0.00 |
  | g.  Total Federal share (sum of lines e and f) | $275,693.94 |
  | h.  Unobligated balance of Federal funds (line d minus g) | $123,633.06 |

  Recipient Share:

  **Compass Data Warehouse information excerpt to compare to Final FFR:**

  

  NOTE – If any cents are included as remaining, they should not be included in either the Change Request or the termination amendment, rather only the whole dollars should be referenced as being decreased. RTPFD will decrease the cents when they deobligate in Compass after the Award Official sends the final documents to them later. In this example, since $123,633.**06** is remaining as

12

available, only "$123,633" should be decreased on the Change Request and the termination amendment.

**Lines 12 and 15 of the last issued amendment of the "Approved Budget" table (page 3):**



- **STEP 2: Within the CR, select tab/section 9 "Fiscal Information"**

- **STEP 3: Select the "+" near the bottom of the "Fiscal Line Details" and enter the fiscal line information**

- **STEP 4: Complete the 12 fields within the "Add Fiscal Line Item" table**

13



- o Note 1 – you will need to complete "Add Fiscal Line Item" for every accounting line that needs to be deobligated.
- o Note 2 – Later in the process, once the termination amendment is processed, the accounting information completed in the Change Request will inherit into the "Fiscal Information".

(d) Include all of the documentation provided by the original and successor recipients as described in Step 1(b). in sections 1 & 2 of the Change Request.

14

EPA_00226253



(e) Finalize the Change Request.

(5) Upon receipt of notification from NGGS that the Change Request is final the GS will create the termination amendment for the original award.  The GS obtains a "Draft EPA Award Document" from the NGGS "Working Database" and:

(a)  Completes all required fields on the "Draft EPA Award Document".

EPA_00226254

(b) Ensures that the dollar amount in the field Amount Requested in section 1 is the same as either the negative of the Available Amount in Compass (if no funds were expended) or the Net Paid Amount in Compass (if funds were expended).

(c)  In the "Record Type" field, use Code B for a decrease amendment.

(d)  In section 5 – Project Information, the "Explan. of Changes" field, describe the reason for the termination as "Project transfer through a novation from [name of original recipient] to [successor recipient] based on [name of original recipient] request dated XXXX."  The GS will also include the exact amount to be de-obligated (**both whole dollars and cents**) through the termination amendment.



(e) In the "Competition" field, select "No" for the question regarding whether the amendment has been competed and using the "Other" option on the pick list type in "Termination due to Novation".

(f)  In the Administrative and Programmatic Conditions section of the "Draft EPA Award Document" include the following statement as Administrative Condition A:

> The recipient agrees to voluntarily terminate Assistance Agreement (Grant #) and to relinquish its interest in the funds remaining for the EPA funded project in accordance with the recipient's letter dated _____.

(g)  If there is a list of supplies and equipment that original recipient will transfer to the successor recipient, the GS must include an administrative condition specifying the terms of the transfer.

(h) Forward draft award documents to RTPFD for final review.

(i)  The GS forwards Draft EPA Award Document to the EPA Official who will terminate the original award at the same time the GS forwards the Award Document for the successor agreement.  This official may be a Grants Management Officer or Assistant Regional

EPA_00226255

Administrator depending on local practice. **The termination amendment and the new award are to be signed simultaneously.**

(6) Upon receipt of the Draft EPA Award Document terminating the original award and the Draft Award Document for the new award, the authorized EPA official signs the document electronically in NGGS and sends the final EPA Award document to the GS for transmission to the original recipient.

(7)  The GS or another representative of the GMO sends an email to the original recipient's authorized representative transmitting the Award Document containing the termination amendment.  Copies of this communication should be provided to:

(a)  The RTPFD financial specialist.

(b)  The EPA Project Officer.

(c)  The original recipient's Project Manager.

(d)  The original recipient's administrative point of contact, if known.

(8)  Following transmittal of the termination amendment to the GMO, the GS will close out the original award in NGGS in accordance with standard EPA close out procedures (see OGD guidance at: [ HYPERLINK "https://www.epa.gov/grants/frequent-questions-about-closeouts" ])

(a) In order to closeout the grant, the following closeout certification form will need to be completed by the PO and ultimately recorded in the grant file:
- [ HYPERLINK "https://work.epa.gov/sites/default/files/2024-12/po_closeout_certification.pdf" ]

(b) Closeout of the grant requires entry of required fields and "FT" (Assistance terminated by EPA before completion) coding within the NGGS "Post-Award" database as follows:



**STEP 1: Post Award Tracking for the grant number. Select tab/section 5: Closeout Information:**

**STEP 2: After all closeout questions are answered under tab/section 5: Closeout, click workflow task tab:**

17

EPA_00226256



STEP 3: Select the "Close Grant" button to close the grant:

STEP 4: After 'Close Grant' is selected, a selection box will appear. Select FC, FR or TR. Then press "Close Grant".

18

EPA_00226257



(c)  NGGS will generate an automatic "close out" email that the GS sends to the original recipient.

Dear Authorized Representative:

The Environmental Protection Agency (EPA) has received all required final reports and necessary forms to close-out the above-referenced award. Based upon administrative, programmatic and fiscal reviews, all documents have been deemed acceptable, the terms and conditions satisfied, and has been financially closed. Please note, any adjustments made by the recipient to the final Federal Financial Report during the approval process have been documented in Agency records.

This email constitutes the final action on this agreement and officially closes this award. However, the close-out of this award does not affect the right of EPA to disallow costs and recover funds on the basis of a later audit or other reviews. Information regarding record retention, property disposition in accordance with EPA regulations, and other frequently asked questions can be accessed through [ HYPERLINK "https://www.epa.gov/grants/frequent-questions-about-closeouts" \h ]

If further assistance is required regarding this award, please contact the Grant Specialist or Project Officer, copied on this message.

Sincerely,
EPA Grants Office

(d)  The GS will include the "close out" email in the official file.

b.  Project Transfer—PO Funding Recommendation.

Outlined below are the steps to take when there is funding remaining on the original agreement and that funding will be transferred through a new award to the successor recipient.  Also, these steps cover situations in which the original award was fully funded or partially funded.

(1)  The Project Officer works on the Funding Recommendation for the new award at the same time the GS is processing the termination amendment.  Note – the FR for novations must be manually created by the Project Officer from within the NGGS "Dashboard":

**STEP 1: An FR may be created from the Dashboard menu, either from scratch (that is, the user enters all the required data for a new grant number), or by inheriting data from the completed application.**

**STEP 2: Manually create a blank FR - select the "Create a new Funding Recommendation" option**

EPA_00226258



(2)  The PO uses the information the successor recipient provided in Step 2 to prepare the FR manually in NGGS.

(a)  All FR questions must be completed.

(b) For the "Grant Number" field (section A1), the PO should follow local practice and consult the Grants Specialist about which 8-character number should be used.

(c)  When preparing the "Description of Award" the PO should include a prefacing sentence that states "This award is the result of a project transfer from (original recipient) to (successor recipient)."

(d) The PO must ensure that the accounting data in the Environmental Results section of the FR for the successor award (i.e. Program Results Codes, Program Project Code, Strategic Plan Goal, Objective, and Sub-Objective, if any) matches that for funds that will be transferred.

---

Below is an example of how you should complete section B.5 of the FR and what information/documents you should be using to finish the table accurately.

In this example, the ceiling for the incrementally funded award was $996,847 but at the time of transfer EPA had only awarded/obligated $399,327.  The recipient had drawn down only $275,693.94 which reflected all allowable costs the original recipient incurred as reported on the final FFR. The PO must recommend awarding the successor recipient "$123,633" and additional incremental funding of $597,520 that may be awarded at a later date.

---

20

NOTE 1 – If any cents are included as remaining, they should not be included in the "Amount" row/section of "B.5", rather only the whole dollars should be referenced as being re-obligated.  RTPFD will decrease the cents when they deobligate in Compass after the Award Official sends the final associated Termination Amendment to them later in the process. In this example, since $123,633.06 is remaining as available, only "$123,633" should be referenced in the FR.

NOTE 2 – This example assumes that the PO's FR does not include Commitment Notices (CN) and that EPA is only awarding the amount to the successor recipient that will be de-obligated from the original recipient via the Termination Amendment. If EPA is planning to add funds (incremental funding) beyond those that are being transferred from the original award via CNs at the time of the award to the successor recipient, then the PO will need also account for the incrementally funds in appropriate PRCs, in section B.5.

**Lines 12 and 15 of the last award/amendment document (Page 3) issued to the original recipient:**

| | |
|---|---|
| **11. Total (Share:  Recipient  0.00 %  Federal 100.00 %.)** | $996,847 |
| **12. Total Approved Assistance Amount** | $996,847 |
| **13. Program Income** | $0 |
| **14. Total EPA Amount Awarded This Action** | $199,873 |
| **15. Total EPA Amount Awarded To Date** | $399,327 |

**The "Fiscal Information" section of the Change Request that was completed by the Grants Specialist for the Termination Amendment:**



Fiscal Information

Vendor Code: 546001805AV
Accounting Period: 012017
COMPASS Status: Accepted

| Line | Site Name | Req No | Fiscal Yr | Approp Code | BO Code | PRC | Object Class | Amount | Site Project | Cost Org Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 001 | - | 16D1D1E003 | 16 | E4 | D100BG7 | 301D79 | 4115 | -123,633 | - | - |
| | | | | | | | | -123,633 | | |

**Final FFR information excerpt to compare to Compass Data Warehouse:**

| Federal Expenditures and Unobligated Balance: | |
|---|---|
| d.  Total Federal funds authorized | $399,327.00 |
| e.  Federal share of expenditures | $275,693.94 |
| f.  Federal share of unliquidated obligations | $0.00 |
| g.  Total Federal share (sum of lines e and f) | $275,693.94 |
| h.  Unobligated balance of Federal funds (line d minus g) | $123,633.06 |
| Recipient Share: | |

**Compass Data Warehouse information excerpt to compare to Final FFR:**

21

EPA_00226260



(e)  For the competition question, the PO indicates that the project was not competed and the reason for not competing is "Novation".

(f)  The PO must complete a Cost Review on the successor recipient's proposed budget for inclusion in the FR.

(g) The PO adds appropriate programmatic terms and conditions such as:

1. Customized equipment disposition instructions if necessary. The [ HYPERLINK "https://www.epa.gov/grants/grant-terms-and-conditions" ] contain default equipment disposition instructions.

2.  Substantial involvement if the successor award will be a cooperative agreement.

EPA_00226261

3.  Cost share. For additional information on cost share POs may review [ HYPERLINK "https://work.epa.gov/sites/default/files/2024-04/ogd_cost_share_training_and_guidance.pdf" ] .

4.  Program Income.  The default disposition of program income under 2 CFR 1500.8(b) is "addition".  If the program office decides to allow the recipient to use program income for cost share, a customized T&C is necessary.

5.  Program specific subaward reporting, if any.  EPA's [ HYPERLINK "https://www.epa.gov/sites/default/files/2020-11/documents/gpi-16-01-subaward-policy_attachments.pdf" ] provides a default subaward reporting T&C.

6.  Performance reporting including frequency and content of final report.

7.  International travel.

8.  Data quality assurance and quality control requirements (if any).

9.  Program specific terms and conditions for ORD research grants.

(h) A Commitment Notice is not necessary to award remaining funds previously obligated on the original agreement. In situations in which the original award was partially funded, program offices may commit additional funds to the successor recipient subject to the award ceiling, which is the EPA Approved amount on Line 12 of the Award Budget for the original award.  A Commitment Notice must accompany the FR in the latter case.

(i) After the approval official signs the FR and (if applicable) the Funds Control Officer signs the Commitment Notice, the PO notifies the GS through NGGS to create the Award Document.

c.  Project Transfer---Draft Award Document.

(1)  Upon receipt of the FR, the GS creates the Draft Award Document.   Outlined below are unique procedures for a novation.  The GS completes other fields in the Draft Award Document following standard procedures.

(a)  In the "Record Type" field, the GS will need to manually change the type from "N" (New), to code "O" for a Novation.  This manual change must occur because "N" is inherited into the draft Award Document from the FR:

23



(b)  The GS should verify that competition section indicates that the award was not competed and the reason for not competing is "Novation".  The Competition Code should be "N".



(c) To populate the accounting information that is intended to be deobligated within the "Fiscal Information" section of the document, follow the steps below:

24

EPA_00226263

**STEP 1: Compare old accounting information from original grantee to intended successor award information**

Refer to the corresponding Termination Amendment, specifically the "Fiscal Information" section, and determine lines of accounting and the amounts of the funds remaining on the original award. The decreased accounting information from the Termination Amendment will need to be used verbatim when entering data on the Draft Award Document to the successor recipient to be re-obligated to the successor recipient. The only difference should be the "Amount" within the "Fiscal Data" table for the successor recipient's Draft Award Document should be a positive amount instead of "Negative", which was used for the Termination Amendment.

> Note – GSs need to manually add accounting lines to the successor agreement that will be decreased from the original award via the Termination Amendment. Any funds that are being added to the successor award via Commitment Notice(s) (for example - incremental funding not provided to the original recipient), can be inherited into the "Fiscal Information" section of the Draft Award Document.

Here's a screenshot of the Fiscal Data section of the Termination Amendment that needs to be used when completing the Draft Award Document for the successor award. The amount should be **negative**.



**STEP 2: Please refer to previous steps for how to add fiscal information.**


**STEP 3: Enter the details for each line of accounting intended to re-obligated to the successor grantee within the next screen.**

> Note – GSs will need to complete one screen shown below for each accounting line that will be manually input.

25

EPA_00226264



**Add/Edit Fiscal Line Amount**

Grant Number 84037801-1
Req No (include #):

Line:

Start Budget Fiscal Year:

End Budget Fiscal Year:

Approp Code (Max 6):

Budget Org Code (Max 7):

26



## Add/Edit Fiscal Line Amount

Grant Number 04D01224-0

Req No (include #):

2304VX3127

Line:

001

Start Budget Fiscal Year:

2022

End Budget Fiscal Year:

2031

Approp Code (Max 6):

E4SFX

Budget Org Code (Max 7):

04V7

27

EPA_00226266



**STEP 5: The accounting information should now be populated with your manually input data in the above steps.**

> Note – The "Amount" section should be a positive number because it is the amount EPA intends to re-obligate or obligate new funds.

28



(2)  The GS includes a "Successor in Interest" administrative condition in the Draft Award Document that states:

- Successor in Interest.  This agreement stems from the novation of Assistance Agreement XXXX from (name of original recipient) to (name of successor recipient).  Accordingly, (name of successor recipient) will receive the funds remaining on Agreement XXX and assumes responsibility for any financial obligations under that agreement subject to the limit of the amount of funds EPA awards under this assistance agreement.

(3)  Once the GS completes the Draft Award Document, the GS prepares:

(a)  The GS National Comprehensive Administrative Review for New Awards.

(b)  The GS Cost Review Checklist.

(4)  The GS develops and routes the award documents to the Award Official for review and signature.  Other reviews and concurrences may be required depending on Regional practice.

(5)  **The Award Official signs the new award to the successor recipient and the termination amendment for the original award simultaneously.** The Final FFR and the memo from the original recipient requesting the novation or termination of the award must be transmitted to RTPFD once Award Official signs both assistance agreements.

Note:  The 3-business day Congressional notification requirement applies to the new award to the successor recipient but does not apply to the termination amendment.

(6)  The GS or another representative of the GMO sends an email to the successor recipient's authorized representative transmitting the Award Document for the new award.  Copies of this communication should be provided to:

29

(a)  The RTPFD financial specialist.

(b)  The EPA Project Officer.

(c)   The successor recipient's Project Manager.

(d)   The successor recipient's administrative point of contact, if known.

(6)  The GS scans the original recipient's final FFR (or statement that no costs have been incurred) and sends it the RTPFD financial specialist for the original award.


(1)  RTPFD processes the termination amendment by de-obligating the amount indicated in the "Explan of Changes", which includes the cents remaining on the original agreement.  The de-obligations occur across all of the lines of accounting reflected in the financial information for the original agreement.

(2)  RTPFD obligates funds (without the cents) to the successor recipient's agreement based on the same lines of accounting that were reflected in the financial information for the original agreement.

(3) RTPFD processes an "ASAP Decrease" action to remove the funds from the original recipient's ASAP account for the original agreement.

(4) RTPFD processes an "ASAP Increase" action to add funds to the successor recipient's ASAP account or initiates ASAP enrollment for the successor agreement on the "mailing date" of the award to the successor recipient. (Funds availability depends on an active ASAP account with EPA.)

**SECTION II. Novations Based on Acquisitions and Mergers**

**Overview**

Novations based on acquisitions or mergers are rare.  The administrative procedures for processing the novation, however, are virtually identical to those for other project transfers. Nonetheless, because each acquisition or merger is somewhat different the GS and PO must work closely with OGC/ORC to ensure that EPA's records contain appropriate documentation.

**Step 1.  Obtaining information from the original recipient and successor recipient and deciding whether to approve the project transfer and notifying EPA's Research Triangle Park Finance Division .**

The procedures for obtaining documentation from the original recipient and the successor recipient in project transfer stemming from acquisition or merger situation are the same as those for other project transfers except that the GS must obtain:

30

EPA_00226269

a.  Correspondence from the successor recipient describing the acquisition and merger including the effective dates, the terms of the transaction, and documentation that the successor recipient has acquired or otherwise obtained the assets of the original recipient and will assume the financial obligations of the original recipient.

b.  A copy of the acquisition agreement or merger agreement as applicable.

c.  Articles of incorporation for the surviving organization (if the articles have changed) or articles of incorporation for a new legal entity formed as a result of the merger.

**Step 2.  Review of Documentation.**

a.  The GS and PO will work together to review the documentation submitted by the original and successor recipients.

(1)  OGC/ORC must have sufficient information to provide a legal opinion regarding whether the acquisition or merger has established a successor in interest relationship such that it is legally permissible to transfer the assistance agreement to the successor recipient.

(2) The other actions described in Step 2 of the Project Transfer procedures are the same except that GS and PO do not need to review the original recipient's equipment inventory for usable equipment to be transferred or disposed of because the successor recipient will acquire the equipment through the acquisition or merger.

**Step 3.  Processing Merger or Acquisition Transfer**

a.  Termination of Original Award.  The procedures in Step 3 a. for other types of project transfers apply to transfers based on acquisitions or mergers except that the GS does not need to include an administrative condition specifying the terms of the transfer of equipment and supplies.  The successor recipient will acquire the supplies and equipment through the acquisition or merger.

Note:  The use of equipment will be subject to EPA's General Term and Condition "Disposition" or any program specific equipment term and condition contained in the successor agreement.

b.  Merger or Acquisition Transfer—PO Funding Recommendation.  The procedures in Step 3 b. for other types of project transfers apply to transfers based on acquisitions or mergers.

c.  Merger or Acquisition Transfer—Draft Award Document.  The procedures in Step 3 c. for other types of project transfers apply to transfers based on acquisitions or mergers.

**SECTION III. Novations Based on Replacement Grants**

Replacement grants are awarded under procedures that are similar to those for novations for project transfers but EPA selects the replacement grantee. Selections may be subject to

competition requirements depending on the circumstances.  Additionally, the procedures may require adjustments if the original recipient has dissolved or is unwilling to cooperate with EPA. Refer to Section II of the Guidance for information on the legal and policy requirements for Replacement Grants.

1.  Original recipient is willing to cooperate with EPA and competition is not required to award the remaining funds.  This scenario would typically occur if the original recipient voluntarily agrees to terminate the original agreement. Procedures for awarding the replacement grant in this scenario are similar to that for a project transfer as described above in Steps 1, 2 and 3 for **"Processing the Project Transfer".**  GMOs may modify the procedures in Steps 1 and 2 depending on the circumstances.  The procedures in Step 3 apply to documenting the termination and award of the replacement grant.

2.  Original recipient is willing to cooperate with EPA and competition is required to award the remaining funds. In this scenario, EPA would terminate the original agreement, complete the competition, and then award the replacement grant to the successor recipient.  Although the procedures for taking these actions are similar to those for project transfers, the sequencing of steps is likely to be different.

a.  The termination would be by mutual agreement as provided by 2 CFR 200.340(a)(2) and EPA and the original recipient would agree on the terms of the termination such as the effective date and disposition of equipment purchased with EPA funds.   The recipient would submit a final Financial Report. Refer to Step 3. a. of the **"Processing the Project Transfer"** for additional guidance.

b.  The GS notifies RTPFD via email that a replacement grant action subject to competition will take place, provides an estimate of when the award will be made, and requests that RTPFD hold the funds pending award of the replacement grant.  The GS should consult with the PO regarding the expected date that program office will make the selection.

c.  RTPFD places the funds in a suspense account pending award of the replacement grant.

d.  All competitions for replacement grants are subject to section II. B. 3 of the Guidance.

e.  Once EPA selects the replacement grantee, the GS and PO follow the procedures in Step 3 awarding successor agreements for project transfers.

3.  Original recipient has dissolved or is unwilling to cooperate with EPA in terminating and closing out the original award but competition for the replacement grant is not required.  The procedures for these actions differ somewhat from those for project transfers.

a.  EPA would terminate the original agreement under 2 CFR 200.340(a)(1) due to material failure to comply with the terms of the agreement. The termination notice must include the information required by 2 CFR 200.340(b) and advise the original recipient of EPA Dispute Procedures at 2 CFR Part 1500, Subpart E.  Recipients have 30 days from the date EPA sends the

32

notice to them electronically to file a dispute. The GS and PO must await the outcome of the disputes process before initiating the replacement grant procedures.

b.  If there are no cost disallowances associated with the termination, the termination is recorded in NGGS by entering action code FT in the close out section of NGGS.  The agreement is closed financially and administratively subject to re-opening depending on the outcome of the disputes process following steps similar to those above for project transfers. Consequently, the GS must coordinate with RTPFD to ensure that that the funds remain available for re-obligation to a replacement grant.

c.  If the original recipient does not dispute the termination, or the termination decision is sustained under the Dispute Procedures, EPA must comply with the requirements at [ HYPERLINK "https://www.ecfr.gov/cgi-bin/text-idx?SID=89a905a908d87069403da33d0bdb77fa&mc=true&node=se2.1.200_1340&rgn=div8" ] relating to providing information to an OMB-designated integrity and performance system accessible through SAM (currently FAPIIS).  Refer to Policy Notice 2016-G02, Final Guidance Implementing Federal Awardee Performance and Integrity Information System (FAPIIS) for information on EPA procedures for complying with 2 CFR 200.340(c).   Additionally, as provided in Grants Policy Issuance 18-01 GMOs are responsible for ensuring that EPA's Suspension and Debarment program receives information regarding the termination.

d.  Once the termination becomes final:

(1)  The GS must coordinate RTPFD to advise them to continue to keep the funds available for obligation pending award of the replacement grant.

(2)   The Program Office selects the replacement grantee and works with the replacement grantee to develop the scope of work for the replacement grant based on the work that the original grantee did not complete and the funds de-obligated from the original grant.[1]  Program offices must ensure that the scope of work complies with section II B. of the Guidance.

(3)  Procedures for awarding the non-competitive replacement grant without the original recipient's cooperation are similar to that for a project transfer as described above in Steps 1, 2 and 3 for **"Processing the Project Transfer".**  GMOs may modify the procedures in Steps 1 and 2 depending on the circumstances.  The procedures in Step 3 apply to documenting the termination and award of the replacement grant.


4.  Original recipient has dissolved or is unwilling to cooperate with EPA in terminating and closing out the original award, but competition is required.  The procedures for these actions are virtually identical to those for a non-competitive award of a replacement grant but the Program Office selects the replacement grantee competitively.   The competition process should not be initiated until after the termination is final.

---

[1] There may be situations in which EPA has asserted a claim for unallowable costs and has initiated collection action.  Any claimed funds EPA recovers would be credited to the original grant.  EPA can re-obligate the recovered funds to the replacement grant provided the appropriation for the funds has not been cancelled.

33

**SECTION IV.  MAILING ADDRESS CHANGES THAT DO NOT CHANGE PLACE OF PERFORMANCE**

In this instance, the recipient only changes its mailing address and the place of performance remains the same.  The recipient's rights and responsibilities associated with the performance of the project are unchanged.  Because the recipient's mailing address is the only thing that is changing, the recipient's eligibility to receive the award under EPA's statutory and regulatory requirements is unchanged.

1.  If the only change is in the recipient's address, an amendment is unnecessary provided the recipient's UEI Number does not change. [2] The mailing address change may be made through an administrative change in NGGS without a formal amendment unless an amendment is necessary for other purposes (e.g. a change in the geographic market for MBE/WBE fair share purposes).  However, each active agreement the recipient has with EPA must be separately changed.

2.  Address changes may involve multiple GSs, Grant Automation Coordinators and POs.  When a GS receives a request from a recipient for a mailing address change, he or she must check the Grant Research Information Portal to determine whether the recipient has more than one agreement with EPA.  If multiple agreements are impacted, the GMO responsible for responding to the initial request for a mailing address change emails other affected GMOs to coordinate the changes to multiple grants.

3.  If the recipient's MBE/WBE fair share goals/objectives change as a result of the address change due to a change in the geographic market for the purposes of [ HYPERLINK "https://www.ecfr.gov/cgi-bin/text-idx?SID=0fff268421d7c83f64d4dca7a6eae3ae&mc=true&node=se40.1.33_1405&rgn=div8" ], the GMO will issue an amendment reflecting the new goals/objectives.

4.  If the address change is associated with a merger or acquisition, the address change should be incorporated into the novation reflecting that transaction.   Refer to Section II above.

**Step 1**. The recipient's authorized representative submits documentation requesting the change of mailing address to the GS with a copy to the PO. The recipient provides the following:

> - Their new Recipient address;
> - Their new Payee address;
> - Their new county and congressional district;
> - The Project Manager's new address and phone number;
> - The Administrative Point of Contact's new address and phone number.

---

[2] It is the recipient's responsibility to update its UEI information through SAM.gov.  Information provided by SAM.gov indicates that the UEI number will not change if the recipient moves to a different address without altering its legal status (e.g. through a merger or acquisitions).   However, if the UEI number does change an amendment in NGGS will be necessary to reflect the address and UEI number change.

EPA_00226273

- Assurance that the recipient has updated its SAM.gov information to reflect the mailing address change and the date the recipient made the changes. Additional information regarding updating SAM.gov information is available at [HYPERLINK "https://www.sam.gov"].

- The GS must verify that the address change is reflected in SAM.gov.

**Step 2.** The GS notifies the Grant Automation Coordinator (GAC) that the recipient has updated their address in SAM.gov. The GAC goes into the Public Address Book (PAB) and selects "Sync with SAM.gov". This will update the PAB record with the information from SAM.gov.



- If the change of mailing address results in a change of Grants Specialist, the Grants Specialist transfers the file to the new Grants Specialist and changes the Grants Specialist name in NGGS.

**Step 3.** The GS initiates a change request in NGGS to reflect the new mailing address. This action will not result in a formal amendment or change to the agreement number. When the GS INCORPORATES CHANGES the recipient address will change on the last version of the award document.

NOTE – This series of steps assumes that the user is only performing an address change and not combining other actions (extensions, funding increases, etc). This also assumes that the NGGS PAB for the existing grant recipient address has already been updated by the Grant Automation Coordination.

**STEP 1: Access the 'NGGS Awards' database**
Search Awards ⓘ

| My Tasks | Search | Recent | Obligations |

Filters: Active: Yes

| Awarding Region: | All | Approving Region: | All | Workflow Task: | All | Active: | Yes | Migrated: | All |
| Grant Number: | | Program Code: | All | Title: | | Applicant Name: | | | |
| Assignee: | | Grant Specialist: | | Project Officer: | | | | Apply | Reset |

**STEP 2: Using the 'Search' tab type in the grant number that corresponds to the action needing to change and then select the last approved Award Document.**

35

EPA_00226274

**STEP 3: Once the previous award document is accessed, using the Change Request button, select 'Change Request' (Note – ensure that you are listed as either the Editor or Delegate so that you have the appropriate buttons available).**



**STEP 4: Using the 'Change Type' picklist, select the item referred to as 'Recipient Information' and press ADD. In the 'Details' field reference the change(s) that you are performing, for example – "Physical address change of organization per recipient's notification dated 2/21/2019".**

36



**STEP 5: Within the specific 'Recipient Information' section, modify the addresses as appropriate in accordance with the recipient's request.**

**STEP 6: If you are changing the address of the "Name and Address of Payee" and/or "Recipient Point of Contact" (Project Manager), you must free type over the existing information.**

**STEP 7: After you have completed all the necessary changes to the address(es), then you must 'Incorporate Changes' using the button shown below. Note – Using the Incorporate Changes button will NOT create a new Amendment Number or award document in NGGS, rather it will only update the existing award document with the new address(es) based on your changes. The changes will be available in the 'NGGS Awards Active' database, not the 'NGGS Awards Working'.**

EPA_00226276



**STEP 8: In order to print/provide an updated version of the award document to the recipient for their records, you must locate the updated award in the ''NGGS Awards Active' database and access it similar to that shown in STEP 2 above. Note – The Amendment Number has not changed.**

**STEP 9: Once the updated Award document is open, select the "Print OMB Form" button.**

**STEP 10: Review the updated award document to ensure that the changes are accurate and then follow local procedures for submitting the entire document to the recipient, which should be similar to the procedures for sending new or amendment actions.  It is important to send the entire award document to the recipient so that they know there are no changes to other portions of the award, such as the terms and conditions, project period, etc. (See an example of an "OMB Form" below.)**

38



**Step 11. The GS sends an electronic copy of the updated award document to the recipient's authorized representative and to the PO.**


## SECTION V. NAME CHANGES

A.  Nonprofit Organizations.

In this instance, the recipient only changes its name.  The articles of incorporation establishing the recipient's legal status remain in effect as do the recipient's IRS employer identification number and UEI Number.  The recipient's rights and responsibilities associated with the performance of the project are unchanged.   If the GMO believes it is appropriate, he or she may request the Office of General Counsel (OGC) or the Office of Regional Counsel (ORC) for advice on the recipient's legal status.  Situations in which the recipient's legal status changes are handled through the novation process described above.  Otherwise, the name change may be processed under procedures similar to those for an address change.

**Step 1**.  The recipient's authorized representative submits documentation requesting the change of name to the GS with a copy to the PO.  The recipient provides the following:

39

EPA_00226278

- The Recipient new name.
- A statement verifying that the name change does not require new articles of incorporation or changes
- Their new county and congressional district;
- The Project Manager's new address and phone number;
- The Administrative Point of Contact's new address and phone number.

-  Assurance that the recipient has updated its SAM.gov information to reflect the name change and the date the recipient made the change. Additional information regarding updating SAM.gov information is available at [HYPERLINK "https://www.sam.gov"]_.

-  The GS must verify that the name change is reflected in SAM.gov.

**Step 2.**  The GS notifies the Grant Automation Coordinator (GAC) that the recipient has updated their name in SAM.gov. The GAC goes into the Public Address Book (PAB) and selects "Sync with SAM.gov". This will update the PAB record with the information from SAM.gov.



- If the name change results in a change of GS, the current GS transfers the file to the new GS and changes the Grants Specialist name in NGGS.

<p style="color:red; text-align:center"><strong>(ASAP account will also need to reflect the recipient name change.)</strong></p>

**Step 3.** The PO notifies RTPFD of the name change for updates required in ASAP." After which RTPFD will communicate with the recipient of what steps they will need to take.

**Step 4.**  The GS initiates a change request in NGGS to reflect the new name.  This action will not result in a formal amendment or change to the agreement number.  When the GS INCORPORATES CHANGES the recipient name will change on the last version of the award document.

---

NOTE – This series of steps assumes that the user is only performing a name change and not combining other actions (extensions, funding increases, etc)  This also assumes that the NGGS PAB for the existing grant recipient name has already been updated by the GAC.

**STEP 1: Access the NGGS Awards Active' database for the award impacted by the name change.**

**STEP 2: The GS will enter in the change type "Recipient Information".**

---

40



| EPA HQ | 5H - Zero-Emissions Technology Grant Program | - Recipient Information | 84088101-1 | MDWT TERA - MIDWEST TRIBAL ENERGY RESOURCES ASSOCIATION INC | Solar for All Midwest Tribes |

| 84088101-1 | Change Request | Solar for All Midwest Tribes | | Grant Specialist: Process |

\* Title (Max Length 1024):

Solar for All Midwest Tribes

**EPA Region:** EPA HQ

**Grant Number:** 84088101-1

\*Change Type:

[ dropdown ]  **Add**

**Selections of Change Types:**
Remove • Recipient Information

**STEP 3: After the "Recipient Information" is entered then select the "Workflow Task" at the top of the page.**

| **Full Details** | Workflow Task | Workflow History | Comments | Manage Access |

41

**STEP 4: The GS will review all information, including the applicant's name, for accuracy.**

Name and Address of Recipient

| | | | |
|---|---|---|---|
| *ᶜ **Applicant Type:** | Indian Tribe | **Other Type:** | |
| *ᶜ **Applicant Name:** | MDWT TERA - MIDWEST TRIBAL ENERGY RESOURCES ASSOCI ▼ | | |
| *ᶜ **UEI:** | CBSZX57DLCY1 | *ᶜ **DUNS:** | |
| *ᶜ **Address:** | 313 N 13TH ST | | |
| *ᶜ **City:** | Milwaukee | *ᶜ **County:** | .. |
| *ᶜ **State:** | WI ▼ | *ᶜ **Zip:** | 53233-2244 |
| ᶜ **Applicant Country:** | | | |
| *ᶜ **Congressional District:** | [   ]  **Add** | *ᶜ **EIN:** | 81-2036467 |
| | Selections for Congressional District: Remove • 04 | | |
| ᶜ **Organizational Unit:** | MIDWEST TRIBAL ENERGY RESOU | ᶜ **Sub Org. Unit:** | |

**STEP 5: Under the "Workflow Task" tab at the top of the page, the GS selects the "Incorporate Changes" button. Note – Using the Incorporate Changes button will NOT create a new Amendment Number or award document in NGGS, rather it will only update the existing award document with the new applicant name based on your changes. The changes will be available in the 'NGGS Awards Active' database, not the 'NGGS Awards Working'.**

|  | Full Details | **Workflow Task** |
|---|---|---|

> As of Mar 5, 2025 @ 1:17 PM you are the current editor of this document. It will remain locked to other edit access until you exit from the document.

**Grant Specialist: Process**   Modify Assignee   Modify Delegate   **Delete**

PO: Draft        GS: Process

━━━✓━━━━━★━━━

| Return to Draft | Request Project Officer Approval | Incorporate Changes | Preview Document |

42

**STEP 6: In order to print/provide an updated version of the award document to the recipient for their records, you must locate the updated award in the ''NGGS Awards Active' database and access it similar to that shown in SECTION IV above. Note – The Amendment Number has not changed.**

**STEP 7: Once the updated Award document is open, select the OMB button.**

**STEP 8: Review the updated award document to ensure that the changes are accurate and then follow local procedures for submitting the entire document to the recipient, which should be similar to the procedures for sending new or amendment actions.  It is important to send the entire award document to the recipient so that they know there are no changes to other portions of the award, such as the terms and conditions, project period, etc. (See an example of an "OMB Form" below.)**



**Step 9. The GS sends an electronic copy of the updated award document to the recipient's authorized representative and to the PO.**

43

🔍 Print Complete Form | ⟳ Back to Main Form

OS - 83135901 - 5     Page 1



| | **U.S. ENVIRONMENTAL PROTECTION AGENCY**<br><br>**Assistance Amendment** | **GRANT NUMBER (FAIN):** | 83135901 | |
|---|---|---|---|---|
| | | **MODIFICATION NUMBER:** 5 | | **DATE OF AWARD** 12/06/2007 |
| | | **PROGRAM CODE:** OS | | |
| | | **TYPE OF ACTION** No Cost Amendment | | **MAILING DATE** 12/11/2007 |
| | | **PAYMENT METHOD:** ACH | | **ACH#** 90075 |

| **RECIPIENT TYPE:** Indian Tribe | **Send Payment Request to:** Las Vegas Finance Center |
|---|---|
| **RECIPIENT:** | **PAYEE:** |



| Coyote Valley Band Of Pomo Indians<br>Address Change for Novation Guidance - Post-Change Request<br>Redwood Valley, CA 95470-0039<br>**EIN:** 94-2375697 | Coyote Valley Band Of Pomo Indians<br>Address Change for Novation Guidance Post-Change Request<br>Redwood Valley, CA 95470-0039 |
|---|---|

| **PROJECT MANAGER** | **EPA PROJECT OFFICER** | **EPA GRANT SPECIALIST** |
|---|---|---|
| Richard Campbell<br>Address Change for Novation Guidance<br>Post-Change Request<br>Redwood Valley, CA 95470-0039<br>**E-Mail:**<br>**Phone:** 707-485-6910 | Patricia Eklund<br>75 Hawthorne Street, R09<br>San Francisco, CA 94105<br>**E-Mail:** Eklund.Patricia@epa.gov<br>**Phone:** 415-972-3738 | Kenneth Sylvester<br>OGD, 3903R<br>**E-Mail:** Sylvester.Kenneth@epamail.epa.gov<br>**Phone:** 202-564-1902 |

**PROJECT TITLE AND EXPLANATION OF CHANGES**
Environmental Information Exchange Grant Program
Time Extension (Amendment);

| **BUDGET PERIOD** 08/01/2003 - 12/31/2008 | **PROJECT PERIOD** 08/01/2003 - 12/31/2008 | **TOTAL BUDGET PERIOD COST** $48,000.00 | **TOTAL PROJECT PERIOD COST** $48,000.00 |
|---|---|---|---|

## NOTICE OF AWARD

Based on your Application dated 07/29/2003 including all modifications and amendments, the United States acting by and through the US Environmental Protection Agency (EPA) hereby awards $0. EPA agrees to cost-share 0.00% of all approved budget period costs incurred, up to and not exceeding total federal funding of $48,000. Recipient's signature is not required on this agreement. The recipient demonstrates its commitment to carry out this award by either: 1) drawing down funds within 21 days after the EPA award or amendment mailing date; or 2) not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date. If the recipient disagrees with the terms and conditions specified in this award, the authorized representative of the recipient must furnish a notice of disagreement to the EPA Award Official within 21 days after the EPA award or amendment mailing date. In case of disagreement, and until the disagreement is resolved, the recipient should not draw down on the funds provided by this award/amendment, and any costs incurred by the recipient are at its own risk. This agreement is subject to applicable EPA regulatory and statutory provisions, all terms and conditions of this agreement and

| Federal Expenditures and Unobligated Balance: | |
|---|---|
| d. Total Federal funds authorized | $399,327.00 |
| e. Federal share of expenditures | $275,693.94 |
| f. Federal share of unliquidated obligations | $0.00 |
| g. Total Federal share (sum of lines e and f) | $275,693.94 |
| h. Unobligated balance of Federal funds (line d minus g) | $123,633.06 |

Recipient Share:

| | |
|---|---|
| **11. Total (Share: Recipient 0.00 % Federal 100.00 %.)** | $996,847 |
| **12. Total Approved Assistance Amount** | $996,847 |
| **13. Program Income** | $0 |
| **14. Total EPA Amount Awarded This Action** | $199,873 |
| **15. Total EPA Amount Awarded To Date** | $399,327 |

| | |
|---|---|
| 11. Total (Share: Recipient 0.00 % Federal 100.00 %.) | $996,847 |
| 12. Total Approved Assistance Amount | $996,847 |
| 13. Program Income | $0 |
| 14. Total EPA Amount Awarded This Action | $199,873 |
| 15. Total EPA Amount Awarded To Date | $399,327 |

12. **Remarks:** *Attach any explanations deemed necessary or information required by Federal sponsoring agency in compliance with governing legislation:*

NOVATION     Add Attachment     Delete Attachment     View Attachment

EPA_00226287

| Federal Expenditures and Unobligated Balance: | |
|---|---|
| d.  Total Federal funds authorized | $399,327.00 |
| e.  Federal share of expenditures | $275,693.94 |
| f.  Federal share of unliquidated obligations | $0.00 |
| g.  Total Federal share (sum of lines e and f) | $275,693.94 |
| h.  Unobligated balance of Federal funds (line d minus g) | $123,633.06 |

Recipient Share:



Document Review    Compass Document: GO TR83579301    09/27/16

**Document Summary:** General Ledger Entries
**Doc Type:** GO
**Doc No:** TR83579301
**Vendor Code:** 546001805A V
**IGMS Grant No:** 83579301-1
**IGMS Budget Start Date:** 02/01/2015
**IGMS Budget End Date:** 09/30/2019
**IGMS Project Start Date:** 02/01/2015
**IGMS Project End Date:** 09/30/2019
**Order Date:** 02/05/15
**Closed Date:**
**Servicing Finance Office:** LVFC
**Order Amount:** $399,327.00
**Net Paid Amount:** $275,693.94
**Closed Amount:** $275,693.94
**Available Amount:** $123,633.06
**Vendor:** VIRGINIA TECH
**Vendor Legal Name:** VIRGINIA POLYTECHNIC INSTITUTE & STATE UNIVERSITY
**Alternate Vendor:**
**Description:**
**Extended Description:**

**Document Details:** [Expand]

| Line# | Line Amt | Expended Amt | Closed Amt | Refunded Amt | Available Amt | BFY | Fund | Org | Program | Project | FOC | CostOrg | Comments | Extende |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $199,454.00 | $199,454.00 | $199,454.00 | $0.00 | $0.00 | 2015 | E4 | D100BG7 | 301D79 | GQ00BZ00 | 4115 | | RQ15D1D5E001 | Amend0 |
| 2 | $199,873.00 | $76,239.94 | $76,239.94 | $0.00 | $123,633.06 | 2016 | E4 | D100BG7 | 301D79 | n/a | 4115 | | RQ16D1D1E003 | Amend1 |

**B.5. Expected Environmental Results: Enter the Program Results Codes (PRC) of the funds tha used for this assistance agreement.** □ 🖾

(Use the PRC action buttons to modify the amount or delete the PRCs)

| PRC | AMOUNT | PROGRAM/PROJECT | ALLO |
|-----|--------|-----------------|------|
| 301D79 | 123,633 | 79 - Brownfields | 100 |

**Total Amount: $** 123,633

This project supports the following goals, objectives, and subobjectives.

| GOAL | OBJECTIVE | SUBOBJECTIVI |
|------|-----------|--------------|
| 3 - Cleaning Up Communities and Advancing Sustainable Development | 3.1 - Promote Sustainable and Livable Communities | - NA after FY 11 |

## Fiscal Information

**Vendor Code:** 546001805AV
**Accounting Period:** 012017
**COMPASS Status:** Accepted

| Line | Site Name | Req No | Fiscal Yr | Approp Code | BO Code | PRC | Object Class | Amount | Site Project | Cost Org Code |
|------|-----------|--------|-----------|-------------|---------|-----|--------------|--------|--------------|---------------|
| 001 | - | 16D1D1E003 | 16 | E4 | D100BG7 | 301D79 | 4115 | -123,633 | - | - |
| | | | | | | | | -123,633 | | |

## Fiscal Information

**Vendor Code:** 546001805AV
**Accounting Period:** 012017
**COMPASS Status:** Accepted

| Line | Site Name | Req No | Fiscal Yr | Approp Code | BO Code | PRC | Object Class | Amount | Site Project | Cost Org Code |
|------|-----------|--------|-----------|-------------|---------|------|--------------|---------|--------------|----------------|
| 001 | - | 16D1D1E003 | 16 | E4 | D100BG7 | 301D79 | 4115 | -123,633 | - | - |
| | | | | | | | | -123,633 | | |

Message

---

**From:**      Hanlon, Alison [Hanlon.Alison@epa.gov]
**Sent:**      1/28/2025 2:32:29 PM
**To:**        Thompson, Ashley [Thompson.Ashley.M@epa.gov]
**CC:**        Roberts, Timothy-P [Roberts.Timothy-P@epa.gov]
**Subject:**   RE: EPA Grant # 84060201, Ozone Transport Commission (Basic Operations of Ozone Transport Commission)
**Attachments:** 1.27.25 Acting CFO IIJA and IRA Pause Memo.pdf

Thanks Ashley, I submitted the OTC award back to my team leader yesterday.  Hopefully, she can sign it soon.

I haven't received any notification of a hold on funding awards unless the funds are IIJA or IRA funds.

Per my Office Director, at this time, we will hold off from the award of any grants that use IIJA or IRA funds.  OCFO issued a memo yesterday.

For reference, you'll spot IIJA and IRA funds as coded with an "SD" or and "SF" in them, e.g. BSD, ESD; BSF, CSF, ESF.


Alison Hanlon (She/Her/Hers)
Grants Specialist
Grants Management Branch
Grants Management and Business Operations Division (GMBOD)
Office of Grants and Debarment
Office of Mission Support
U.S. Environmental Protection Agency
1200 Pennsylvania Ave. NW, MC: 3903R
Washington, DC 20460
(202) 564-0244
Hanlon.Alison@epa.gov

---

**From:** Thompson, Ashley (she/her/hers) <Thompson.Ashley.M@epa.gov>
**Sent:** Tuesday, January 28, 2025 8:58 AM
**To:** Hanlon, Alison <Hanlon.Alison@epa.gov>
**Cc:** Roberts, Timothy-P <Roberts.Timothy-P@epa.gov>
**Subject:** RE: EPA Grant # 84060201, Ozone Transport Commission (Basic Operations of Ozone Transport Commission)

Hi Alison,

I have reached out to my supervisor for clarification on how she would like me to respond to this. But just so you're aware, this pause is just for funding actions related to the Inflation Reduction Act and the Infrastructure Investment and Jobs Act, which OTC does not use. So we can continue on with processing this award. As Paul noted below, they are low on funds so it would be great if we could get this out as soon as we can.

Thank you,

Ashley

---

**From:** Paul Miller <pmiller@nescaum.org>
**Sent:** Tuesday, January 28, 2025 8:04 AM
**To:** Thompson, Ashley (she/her/hers) <Thompson.Ashley.M@epa.gov>; Hanlon, Alison <Hanlon.Alison@epa.gov>
**Cc:** Roberts, Timothy-P <Roberts.Timothy-P@epa.gov>
**Subject:** RE: EPA Grant # 84060201, Ozone Transport Commission (Basic Operations of Ozone Transport Commission)

> **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

HI Ashley and Alison,
Are you able to tell me if the OTC's next year of funding is now in limbo with yesterday's WH memo suspending federal grants? As I noted before, the OTC is out of money, and our request for the 2nd year of OTC funding was made at the beginning of October 2024. If this means further delay, I need to shut down the commission asap. The OTC is a sole-source funded state group created by Congress, and we do not have other funding sources to tide us over beyond what Congress appropriates. Thanks, Paul

**Paul J. Miller**, Executive Director
Ozone Transport Commission (OTC)
89 South Street, Suite 602, Boston, MA 02111 | Ph: 617-259-2016
https://otcair.org
he/him/his

---

**From:** Thompson, Ashley (she/her/hers) <Thompson.Ashley.M@epa.gov>
**Sent:** Thursday, January 2, 2025 10:36 AM
**To:** Paul Miller <pmiller@nescaum.org>; Hanlon, Alison <Hanlon.Alison@epa.gov>
**Cc:** Roberts, Timothy-P <Roberts.Timothy-P@epa.gov>
**Subject:** RE: EPA Grant # 84060201, Ozone Transport Commission (Basic Operations of Ozone Transport Commission)

Hi Paul,

Yes, this is allowable. Additionally, since this grant includes cost share, you may use your cost share for these expenses as well if you'd like. We were informed that second year funds were expected to arrive at the end of January / early February. Please let us know if you expect this to cause any issues on your end.

Best,

**Ashley Thompson**
Acquisition Policy Team
OAR, Office of Program Management Operations
U.S. Environmental Protection Agency

---

**From:** Paul Miller <pmiller@nescaum.org>
**Sent:** Thursday, January 2, 2025 10:14 AM
**To:** Hanlon, Alison <Hanlon.Alison@epa.gov>; Thompson, Ashley (she/her/hers) <Thompson.Ashley.M@epa.gov>
**Subject:** RE: EPA Grant # 84060201, Ozone Transport Commission (Basic Operations of Ozone Transport Commission)

> **Caution:** This email originated from outside EPA, please exercise additional caution when deciding whether to open attachments or click on provided links.

Hi Alison and Ashley,
I don't know who to ask this question about OTC funding, so I'm sending to you both. During December, the OTC spent down all funding provided under the first grant year. As we budgeted each OTC grant year to start on September 1, and we're now well into the 2nd grant year period with no change to the current workplan and no second year funding yet, will the OTC be able to "back fill" labor and expenses during December to the pending 2nd year funding that I assume is arriving soon? To me, it's all part of the same grant work plan and consistent with how we budgeted each year under the grant. If you don't know the answer, can you let me know who to ask?

Thank you, Paul

**Paul J. Miller**, Executive Director
**Ozone Transport Commission (OTC)**
89 South Street, Suite 602, Boston, MA 02111 | Ph: 617-259-2016
https://otcair.org
he/him/his

---

**From:** Hanlon, Alison <Hanlon.Alison@epa.gov>
**Sent:** Friday, December 13, 2024 10:48 AM
**To:** Paul Miller <pmiller@nescaum.org>
**Cc:** Thompson, Ashley (she/her/hers) <Thompson.Ashley.M@epa.gov>; Debjani Brahmachari
<dbrahmachari@nescaum.org>
**Subject:** EPA Grant # 84060201, Ozone Transport Commission (Basic Operations of Ozone Transport Commission)

Hi Paul,

I am reviewing a funding request for the above-mentioned grant.  The attach Indirect Cost Rate agreement is the current agreement with have on file.  Is this still the most current IDC agreement?  If not, can someone please send me the most current agreement.


Alison Hanlon (She/Her/Hers)
Grants Specialist
Grants Management Branch
Grants Management and Business Operations Division (GMBOD)
Office of Grants and Debarment
Office of Mission Support
U.S. Environmental Protection Agency
1200 Pennsylvania Ave. NW, MC: 3903R
Washington, DC 20460
(202) 564-0244
Hanlon.Alison@epa.gov



## THE CHIEF FINANCIAL OFFICER
WASHINGTON, D.C. 20460

January 27, 2025

## CUI//SP-BUDG

**MEMORANDUM**

**SUBJECT:**    Inflation Reduction Act and Infrastructure Investment and Jobs Act Funding Action Pause

**FROM:**    Gregg Treml, Chief Financial Officer (Acting)    GREGG TREML    Digitally signed by GREGG TREML Date: 2025.01.27 16:59:02 -05'00'

**TO:**    Deputy Assistant Administrators
Deputy Associate Administrators
Deputy Regional Administrators

This message is being provided based on instruction from OMB.

In accordance with the Executive Order *Unleashing American Energy,* unobligated funds (including unobligated commitments) appropriated by the Inflation Reduction Act of 2022 (P.L. 117-169) and the Infrastructure Investment and Jobs Act (P.L. 117-58) are paused. Pursuant to this pause, the Compass financial system will temporarily not allow obligations to be made in these lines of accounting. EPA is in discussions with the Office of Management and Budget on the continuation of payroll in IIJA and IRA.

Additionally, all disbursements for unliquidated obligations funded by any line of accounting including funds appropriated by the Inflation Reduction Act of 2022 (P.L. 117-169) and the Infrastructure Investment and Jobs Act (P.L. 117-58), are paused. Additional details on the pause in disbursements will be provided separately by the Office of the Controller.

This pause will allow for the review of processes, policies and programs as required by Section 7 of the Order.

All related actions, including new contract, grant, rebate and interagency actions, to include drawdowns, for IIJA and IRA are paused. Offices are not to put IIJA or IRA lines of accounting on any actions and all current actions are paused. Further, no IIJA or IRA funded travel is permissible at this time and all upcoming travel funded from either should be cancelled.

A process has been established at OMB for their review and approval of obligations and disbursements based on the Order. We will continue to update the community. We appreciate your work to ensure compliance with the Order.

cc: Lek Kadeli
    Meshell Jones-Peeler
    Paige Hanson
    Senior Resource Officials
    Senior Budget Officers
    Regional Comptrollers
    Funds Control Officers

## Controlled by U.S. Environmental Protection Agency

EPA_00226298

Message

**From**:        DC-RRB-51287-M@epa.gov [DC-RRB-51287-M@epa.gov]
**Sent**:        2/19/2025 7:29:56 PM
**To**:          Brown, Devon [Brown.Devon@epa.gov]
**Subject**:     Scanned Document from DC-RRB-51287-M
**Attachments**: recepient letter02-19-2025-142956-1.pdf


work



SOLID WASTE TRANSFER STATION
MATERIALS RECOVERY FACILITY

ARMAND E. LEMBO JR.
President

170 FRELINGHUYSEN AVE.
NEWARK, NJ 07114

(973) 642-1212          Cell (201) 321-0501
Fax (973) 642-1331      a.lembo@lemcortransfer.com
www.lemcortransfer.com

2/10/2025

Environmental Protection Agency
Office of Grants and Debarment
Mail Code: 3901
1200 Pennsylvania Avenue,
N.W. Washington, D.C. 20460

Re: Solid Waste Infrastructure & Recycling Grant Programs

To whom it may concern:

I am the owner of a solid waste transfer station and materials recovery facility (MRF) in Newark, NJ., an EJ Community. New Jersey leaders often claim Newark to be the birthplace of the Environmental Justice Movement.

In 2024 we replaced two major pieces of heavy equipment; our yard jockey (tractor) and a diesel excavator with electric units thanks to NJDEP grant funding. We are one of the first transfer stations to use an electric excavator.

The former diesel excavator operated 16 hours per day. We reduced our carbon footprint now using a fraction of the diesel fuel we once did as well as lowered decibel levels and emissions, all appreciable reductions to the environmental bottom line within our operation and our community.

The out-of-pocket expenses were significant even with the assistance of grant funding and we now must install a new tipping floor at our facility, the expense of which will be considerable.

I wish to inquire about Federal grant funds within the EPA available for projects at waste and recycling facilities such as ours. We would like to continue to be progressive and responsible in our EJ community. The solid waste industry feels at times like a forgotten cornerstone of infrastructure. Our recent success through the help of grant funds, and the positive effects of the same proves that the needle can be moved in EJ communities with such assistance.

Please feel free to contact me at the address below or on my mobile phone 201-321-0501

Sincerely,

Armand E. Lembo Jr.
President