IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| The Sustainability Institute, et al., | ) Civil Action Number:  2:25-cv-02152-RMG |
|            Plaintiffs, | ) |
| vs. | ) |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | ) |
|            Defendants. | ) |

**DECLARATION**

I, Arlan Finfrock, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am employed by the Federal Highway Administration ("FHWA"), an operating administration of the United States Department of Transportation ("DOT"), as the Associate Administrator for Administration.

2. As the Associate Administrator for Administration, my duties include providing executive leadership to FHWA's mission support functions, which include the Office of Human Resources, the Office of Information Technology and Data Services, the Competitive Grants Coordination Division, the Workforce Programs Division, and the Office of Management Services. As part of my duties, I oversee the Competitive Grants Coordination Division, which develops and coordinates FHWA-wide competitive grant policies. I make this declaration based on my personal knowledge, information conveyed by other FHWA and DOT employees, and FHWA and DOT records.

3. There is no current pause on reviewing award selections. Since the current administration entered office, DOT has been reviewing its programs with announced award

**Exhibit 3**

selections for which there is not a signed grant agreement. The Secretary of Transportation described this process in testimony before the Senate Committee on Environment and Public Works on April 2, 2025. See Exhibit A. The Secretary explained that the current administration "inherited a backlog of over 3,200 awarded projects without signed grant agreements in place" and that, between November 5, 2024, and January 20, 2025, DOT "announced 940 award selections for discretionary grants totaling $9 billion." The Secretary stated that DOT "is prioritizing the review of these award selections."

4.      To facilitate the review of the award selections for which there is not a signed grant agreement, DOT has been evaluating programs with announced award selections to determine whether the programs align with the administration's priorities as stated in Executive Orders and otherwise. For example, on March 10, 2025, Secretary Duffy announced the rescission of DOT policy memoranda that set forth the prior administration's policy priorities in awarding funding under the Infrastructure Investment and Jobs Act (IIJA). See Exhibit B (press release); Exhibit C (memoranda on rescission). The memoranda explain the current administration's procedural and substantive concerns with how IIJA funding had been prioritized. Exhibit C. The memoranda also stated that FHWA is "thoroughly reviewing all guidance documents that have been issued to implement the IIJA to ensure that they comport with the law and Administration policy." Exhibit C.

5.      DOT Order 2100.7, *Ensuring Reliance on Sound Economic Analysis in Department of Transportation Policies, Programs, and Activities*, updated the principles and standards underpinning DOT's programs and required DOT and its operating administrations to update their grant agreements as necessary to comply with Federal law and Order 2100.7. Exhibit D. As part

of the update process described in Order 2100.7, and to align its programs with the current administration's policy priorities, which a recent press release stated include "building critical infrastructure projects" without "inject[ing] a social justice and environmental agenda" that "added meritless and costly burdens" to projects (Exhibit B) and which include the policies described in Order 2100.7, DOT is conducting a project-by-project review of grant programs that may implicate the President's Executive Orders or the administration's current priorities. As part of this review, DOT will determine whether each award selection announced by the prior administration will: continue in its current form with no change; be revised with a reduced or modified scope; or be withdrawn entirely.

6.  I understand that the above-captioned case includes claims related to two DOT grant award selections announced for the Metropolitan Government of Nashville & Davidson County: a grant awarded in August 2024 for the Charging and Fueling Infrastructure Discretionary Grant Program ("CFI"), and a grant awarded in January 2025 for the Active Transportation Infrastructure Investment Program ("ATIIP").

7.  A grant agreement has not been signed for either of these two grants. As of the date of this declaration, DOT and FHWA have yet to complete their individualized review of these two award selections as part of the process described above. Because the review for both grants is ongoing, DOT and FHWA have not made any final decisions about potential future actions involving either of the grants at issue in this case. DOT and FHWA have not provided any funds to Nashville as part of the unsigned grants at issue in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2025.

/s/ Arlan Finfrock
Arlan Finfrock
Associate Administrator for Administration
Federal Highway Administration
United States Department of Transportation

**Constructing the Surface Transportation Reauthorization Bill:**
**United States Secretary of Transportation's Perspective**
**Testimony of Secretary of Transportation**
**Sean P. Duffy**
**Before the Senate Committee on Environment and Public Works**
**April 2, 2025**

Chairman Capito, Ranking Member Whitehouse, and members of the committee – thank you for inviting me to testify before you today. My aim over the course of this hearing is to provide you a sense of the Administration's priorities as we work together on surface transportation reauthorization and embark on a golden age of transportation.

I took office just over two months ago, and in my first full day on the job, we experienced a sobering reminder of why the Department's top priority is and must always be safety. While I know today's hearing is about surface transportation, I want to start by highlighting some of the steps we're taking in the immediate aftermath of the mid-air collision approaching DCA, because they exemplify how we're going to approach our overall mission moving forward.

The Department of Transportation has been refocused to be, first and foremost, a department of safety. Following the mid-air collision, we swiftly restricted helicopter traffic in the vicinity of DCA and initiated a review of our Air Traffic Control workforce, policies, and procedures. At the end of February – less than a month after the fatal accident – I announced our plan to supercharge hiring of air traffic controllers and streamlined the hiring process while raising the bar on safety and increasing pay for new controllers. In March, following the NTSB's recommendations, I announced that the FAA will permanently restrict non-essential helicopter operations around Reagan Airport, and eliminate mixed helicopter and fixed wing traffic.

It's unacceptable that the people in charge were complacent; they failed to prioritize transitioning the world's largest commercial air travel market away from World War II-era machines and antiquated equipment like floppy disks. The golden age of transportation starts with propelling American aviation into the modern era. We will do this by embracing the most advanced 21st century technology that makes our system safer, cheaper, and easier to use for all Americans.

**Exhibit A**

We will bring these themes to our transportation programs – making travel by sea, rail, and road more efficient and more affordable while raising safety standards; cutting unnecessary red tape; and building the big, beautiful infrastructure that Americans are paying for with their hard-earned tax dollars.

We've already started integrating these priorities into the Department's work since January. We are aggressively revising fuel economy standards so that our Nation's hardest-working people can afford a new vehicle – a teacher should not have to pay a full year's salary just so they can have a car to get to work and teach our kids. By re-examining the inefficient and technology-forcing standards imposed by the last administration, our department is empowering more everyday Americans to purchase newer vehicles equipped with the latest state-of-the-art technology to keep our families safe. While our department looks out for the American worker, our agency has also taken emergency action to grant regulatory relief for the truck drivers hauling healthy chickens safely away from the Avian Flu that threatens our food supply.

Lawmakers on all sides of the aisle can agree that infrastructure projects are taking too long to complete. But the recent reconstruction of Interstate 40, the critical Appalachian artery in North Carolina and Tennessee washed away by Hurricane Helene, demonstrated what's possible when everyone is working together. To expedite re-building, we found creative ways to source materials closer to the job site, saving taxpayers both time and money. It is this kind of innovation and problem-solving that will unleash the golden age of transportation and pave over the fractured ruins of government inefficiency.

Before I close, Congress has expressed concerns to us about pauses in DOT funding. I want to assure you that disbursements for valid reimbursement requests under existing obligations continue as usual and were never paused. However, this Administration inherited a backlog of over 3,200 awarded projects without signed grant agreements in place. We are expediting reviews to ensure alignment with this Administration's priorities so that we can fund projects that deliver the infrastructure America so desperately needs. Between President Trump's election victory and his inauguration, the previous administration announced 940 award selections for discretionary grants totaling nearly $9 billion – this is an *unprecedented* surge of midnight awards. As a comparison, only 103 award selections were made during the same period following the 2020 election. I assure you that my team is prioritizing the review of these award

selections. We have also taken action by releasing Notices of Funding Opportunity (NOFOs), realigning them with statutory intent and removing extraneous, ideologically driven requirements. NOFOs for important programs have been republished or are in the process of being reissued.

There's so much more to do, and I look forward to working with Congress on the surface transportation reauthorization process. We need to make sure our transportation infrastructure is built to last with speed, ingenuity, and durability so that Americans can reap returns on their investments for generations to come.  Thank you, and I look forward to your questions.



Exhibit B

U.S. DEPARTMENT OF TRANSPORTATION

**Federal Highway Administration**

1200 NEW JERSEY AVENUE, SE

WASHINGTON, DC 20590

202-366-4000

[Subscribe To Email Updates](#)



**About**

[About FHWA](#)

[Careers](#)

[Org Chart](#)

[Staff Directories](#)

[Work with Us](#)

**Programs**

[Acquisition Management](#)

[Civil Rights](#)

[Federal Lands Highway](#)

[Infrastructure](#)

[Innovative Program Delivery](#)

[Operations](#)

[Planning, Environment, and Realty](#)

[Policy](#)

[Research, Development, and Technology](#)

[Safety](#)

**Policies, Rights, Legal**

[About DOT](#)

[Accessibility](#)

[Budget and Performance](#)

[Civil Rights](#)

[FOIA](#)

[Information Quality](#)

[No FEAR Act](#)

[Office of Inspector General](#)

[Privacy Policy](#)

[USA.gov](#)

[Web Policies and Notices](#)

[Web Standards](#)

**News & Events**

[Newsroom](#)

[Press Releases](#)

[Speeches & Testimony](#)

[Media Contacts](#)

[Connect with Us](#)



**U.S. Department of Transportation**

Office of the Secretary
of Transportation

OFFICE OF THE
GENERAL COUNSEL

1200 New Jersey Avenue, S.E.
Washington, D.C. 20590

March 7, 2025

ACTION MEMORANDUM TO THE SECRETARY

| | |
|---|---|
| **From:** | Gregory D. Cote<br>Acting General Counsel<br>X6-9519 |
| **Prepared by:** | Daniel Cohen<br>Assistant General Counsel for Regulation and Legislation<br>X-6-3633 |
| **Subject:** | Federal Highway Administration Guidance Document: "Rescission of Build a Better America Memoranda" |

### ACTION REQUESTED

I request that you approve the issuance of the attached deregulatory guidance document "otherwise of importance to the Department's interests" from the Federal Highway Administration (FHWA) titled, "Rescission of Build a Better America Memoranda."

### SUMMARY

This guidance document rescinds two controversial FHWA guidance documents: a memorandum titled, "Policy on Using Bipartisan Infrastructure Law Resources to Build a Better America," which was issued on December 16, 2021; and a memorandum updating the "Policy on Using Bipartisan Infrastructure Law Resources to Build a Better America," which was issued on February 24, 2023.

### BACKGROUND

On November 15, 2021, the Infrastructure Investment and Jobs Act (IIJA) was enacted into law, providing funding for various modes of surface transportation such as highways, transit, and rail. This funding included about $350.7 billion for FHWA to administer. To aid in implementing IIJA and to announce a preferred prioritization for projects, FHWA issued a memorandum titled, "Policy on Using Bipartisan Infrastructure Law Resources to Build a Better America" on December 16, 2021. The intent of the memorandum was to ensure that the funding and eligibilities provided by IIJA were interpreted and implemented to encourage States and other funding recipients to prioritize

**Exhibit C**

investing in projects that advanced policies of the prior administration, such as equity and responding to climate change.

This memorandum elicited significant confusion within the transportation community because it was issued without notice and comment, and it intended to serve as an overarching policy framework that prioritized IIJA resources toward certain projects inconsistent with the underlying statute. On December 15, 2022, the U.S. Government Accountability Office issued a decision stating that the memorandum was, in fact, a rule and should have followed certain congressional review procedures. Rather than rescind the memorandum, FHWA issued an updated version on February 24, 2023. The updated memorandum reaffirmed FHWA's commitment to the policy goals announced in the 2021 memorandum.

We are requesting that you approve the rescission of both guidance documents. We expect the transportation community to support this measure, as we have heard objections to the 2021 memorandum from many stakeholders.

This action will count as two deregulatory actions under Executive Order (EO) 14192, "Unleashing Prosperity Through Deregulation." This action will also respond to the President's direction provided in EO 14148, "Initial Rescissions of Harmful Executive Orders and Actions," and the implementing direction that you provided in a memorandum to departmental officials titled, "Implementation of Executive Orders Addressing Energy, Climate Change, Diversity, and Gender."

**RECOMMENDATION**

I recommend that you approve the issuance of the attached deregulatory guidance document "otherwise of importance to the Department's interests" from FHWA titled, "Rescission of Build a Better America Memoranda."

The Secretary

APPROVED: _[signature]_

DATE: _3-7-25_

COMMENTS:

Attachment:
- FHWA Memo titled, "Rescission of Build a Better America Memoranda"



**U.S. Department of Transportation**
**Federal Highway Administration**

# Memorandum

| | |
|---|---|
| Subject: **INFORMATION**: Rescission of Build a Better America Memoranda | Date: March 7, 2025 |
| From: James O. Payne III<br>Chief Counsel | In Reply Refer To:<br>HCC-1 |
| To: Associate Administrators<br>Chief Financial Officer<br>Directors of Field Services<br>Division Administrators<br>Division Directors | |

The Federal Highway Administration (FHWA) is responsible for ensuring that America's roads and highways are among the safest and most technologically sound in the world. Our focus should be on building big, beautiful, and durable projects that connect our country and people. President Trump has issued numerous Executive Orders[1] repealing the harmful policies that increased waste, threatened safety, and sought to divide. While purporting to implement the Infrastructure Investment and Jobs Act (IIJA) (Pub. L. No. 117-58), the previous Administration attempted to impermissibly impose misguided policy mandates and other requirements that had no basis in the statute. In fact, many of these policies were specifically rejected by Congress while considering the IIJA. IIJA provided States broad flexibility to maximize the investments that were made to address their unique infrastructure challenges, and FHWA intends to ensure they retain that flexibility. Therefore, the following documents are rescinded in their entirety and have no effect:

1. The December 16, 2021 memorandum titled, "Policy on Using Bipartisan Infrastructure Law Resources to Build a Better America"; and
2. The February 24, 2023 memorandum updating the "Policy on Using Bipartisan Infrastructure Law Resources to Build a Better America".

State Departments of Transportation and other recipients must continue to comply with applicable statutory and regulatory requirements. FHWA is thoroughly reviewing all guidance documents that have been issued to implement the IIJA to ensure that they comport with the law and Administration policy.

---

[1] See e.g., Executive Order 14148, "Initial Rescissions of Harmful Executive Orders and Actions" (January 20, 2025); Executive Order 14154, "Unleashing American Energy" (January 20, 2025); Executive Order 14173, "Ending Illegal Discrimination and Restoring Merit-Based Opportunity (January 21, 2025).

2

Please distribute this memorandum to your respective State Department of Transportation and other stakeholders as appropriate.

This document and the guidance documents referenced above do not have the force and effect of law and are not meant to bind the States or the public in any way, except to the extent that they reference applicable statutes and regulations.

If you have any questions about this memorandum, please contact Christopher Richardson, Assistant Chief Counsel for Administrative Law.



**U.S. Department
of Transportation**

Office of the Secretary
of Transportation

SUBJECT: ENSURING
RELIANCE UPON SOUND
ECONOMIC ANALYSIS IN
DEPARTMENT OF
TRANSPORTATION POLICIES,
PROGRAMS, AND ACTIVITIES

DOT Order 2100.7

1. <u>PURPOSE</u>

This Order updates and resets the principles and standards underpinning U.S. Department of Transportation (Department or DOT) policies, programs, and activities to mandate reliance on rigorous economic analysis and positive cost-benefit calculations and ensure that all DOT grants, loans, contracts, and DOT-supported or -assisted State contracts bolster the American economy and benefit the American people.

2. <u>CANCELLATION</u>

None

3. <u>APPLICABILITY AND SCOPE.</u>

This Order applies to all the Department's Operating Administrations (OA) and the Departmental Offices in the Office of the Secretary of Transportation (OST).[1]

4. <u>EFFECTIVE DATE</u>

This Order is effective upon its date of execution.

5. <u>POLICIES.</u>

The following principles govern the implementation and administration of all DOT policies, programs, and activities:

    a. The Department's grantmaking, lending, policymaking, and rulemaking activities shall be based on sound economic principles and analysis supported by rigorous cost-benefit requirements and data-driven decisions. This requirement shall apply

---

[1] The terms "Operating Administration" and "OA" hereinafter refer to both the Department's operating administrations and the OST Departmental Offices.

**Exhibit D**

    regardless of whether the activities in question fall below the economic threshold required for review by the Office of Information and Regulatory Affairs.

b. To engage in grantmaking, lending, policymaking, or rulemaking, the benefits must be estimated to outweigh the costs. The calculation of the "social cost of carbon" is marked by logical deficiencies, a poor basis in empirical science, politicization, and the absence of a foundation in legislation. Consequently, the Administrator of the Environmental Protection Agency has been ordered by the President to issue guidance to address these harmful and detrimental inadequacies. Prior to issuance of that guidance, DOT shall ensure estimates to assess the value of changes in greenhouse gas emissions resulting from agency actions, including with respect to the consideration of domestic versus international effects and evaluating appropriate discount rates, are, to the extent permitted by law, consistent with the guidance contained in OMB Circular A-4 of September 17, 2003 (Regulatory Analysis).

c. Statutes governing DOT policies, programs, and activities shall be administered to identify and avoid, to the extent practicable, relevant, appropriate, and consistent with law, adverse impacts on families and communities. Adverse impacts may include, but are not limited to, noise; water pollution; soil contamination; a denial of or a reduction in transportation services; increased difficulty in raising children in a safe and stable environment; and destruction or disruption of community cohesion, safety, or economic vitality.

d. Statutes governing DOT policies, programs, and activities shall also be administered to maximize, to the extent practicable, relevant, appropriate, and consistent with law, benefits for families and communities. The benefits may include, but are not limited to, economic opportunities, such as increased access to jobs, healthcare facilities, recreational activities, commercial activity, or any actions or project components that will help alleviate poverty, enhance safety, and primarily benefit families and communities by improving the quality of their lives, raising their standard of living, or enabling them to participate more fully in our economy.

e. DOT-supported or -assisted programs and activities, including without limitation, all DOT grants, loans, contracts, and DOT-supported or -assisted State contracts, shall not be used to further local political objectives or for projects and goals that are purely local in nature and unrelated to a proper Federal interest. DOT programs and activities should instead prioritize support and assistance for projects and goals that are consistent with the proper role of the Federal government in our system of federalism, have strong co-funding requirements, adhere faithfully to all Federal statutory Buy America requirements, and not depend on continuous or future DOT support or assistance for improvements or ongoing maintenance.

f. To the maximum extent permitted by law, DOT-supported or -assisted programs and activities, including without limitation, all DOT grants, loans, contracts, and DOT-supported or -assisted State contracts, shall prioritize projects and goals that:

      i. utilize user-pay models;
      ii. direct funding to local opportunity zones where permitted;
      iii. to the extent practicable, relevant, appropriate, and consistent with law, mitigate the unique impacts of DOT programs, policies, and activities on families and family-specific difficulties, such as the accessibility of transportation to families with young children, and give preference to communities with marriage and birth rates higher than the national average (including in administering the Federal Transit Administration's Capital Investment Grant program);
      iv. prohibit recipients of DOT support or assistance from imposing vaccine and mask mandates; and
      v. require local compliance or cooperation with Federal immigration enforcement and with other goals and objectives specified by the President of the United States or the Secretary.

6. RESPONSIBILITIES.

   a. The General Counsel is the chief legal officer of the Department with final authority on all questions of law for all components of DOT. The Office of the General Counsel (OGC) shall provide the legal advice, support, and guidance necessary to implement and effectuate this Order, including via the issuance of additional orders as warranted.

   b. OAs engaged in grantmaking, lending, policymaking, or rulemaking activities shall, in coordination and consultation with OGC, implement this Order and determine the most effective and efficient way of integrating the principles outlined in this Order with their existing regulations and guidance.

   c. In undertaking the integration with existing operations, and in coordination and consultation with OGC, OAs shall:

      1. Develop and issue guidance necessary to implement and effectuate this Order, or review and update any previously issued guidance to ensure consistency with this Order. OAs shall also engage in the notice-and-comment process, as appropriate and in accordance with DOT Order 2100.6B (Policies and Procedures for Rulemakings) and any corresponding regulations, to implement the requirements of this Order.

      2. Update and revise all Notices of Funding Opportunity, grant agreements, loan agreements, and other program documents as necessary to ensure compliance with Federal law and consistency with this Order.

      3. Review their existing grant agreements, loan agreements, and contracts, and, to the extent permitted by law, unilaterally amend the general terms and conditions as necessary to ensure compliance with Federal law and consistency with this Order, and provide corresponding notice of such to recipients.

 d. OAs shall prepare a report describing their efforts to comply with this Order and the impact of those efforts on their grantmaking, lending, policymaking, and rulemaking activities. The first of these reports shall be submitted to OGC no later than six months after the effective date of this Order, and each subsequent report shall be due no later than six months thereafter.

 e. OAs shall also observe the following principles:

  1. This Order should be implemented in a simple, transparent manner that avoids adding unnecessary procedural or regulatory steps or causing undue delay. The Order should not be interpreted to impose procedural or regulatory requirements that provide no benefit in the decision-making process. The Order should be carried out in a manner that considers the impact that delays in project delivery or rulemaking may have on the economic vitality, safety, and well-being of the American people, their families, and communities.

  2. OAs shall strive to promote the economic opportunities of DOT programs, policies, and activities for families and communities. Procedures shall be established or modified, as necessary, to provide meaningful opportunities for public involvement by families and communities during the planning and development of programs, policies, and activities (including the identification of potential effects, alternatives, and mitigation measures).

  3. DOT shall ensure comprehensive public engagement, including with families and community stakeholders, and provide meaningful access to public information concerning both the costs and the benefits of DOT programs, policies, or activities.

  4. Compliance with the terms of this Order is an ongoing responsibility. OAs shall continuously monitor their programs, policies, and activities to ensure they are administered in a manner consistent with this Order. This Order does not alter existing assignments or delegations of authority to the Operating Administrations or other DOT components.

7. **DISCLAIMER.**

This Order is intended to improve the internal management of DOT and is not intended to, nor does it, create any rights, benefits, or trust responsibility, substantive or procedural, enforceable at law or equity, by a party against the Department, its OAs, its officers, or any person. Nor should this Order be construed to create any right to judicial review involving the compliance or noncompliance with this Order by the Department, its Operating Administrations, its officers or any other person.

_____
Secretary of Transportation