IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| The Sustainability Institute, *et al.*, | ) | Civil Action Number: 2:25-cv-02152-RMG |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Donald J. Trump, in his official capacity | ) | |
| as President of the United States, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS

Defendants move this Court for an order dismissing the Amended Complaint, ECF No. 23, pursuant to Rule 12(b)(6) for failure to state a claim and Rule 12(b)(1) for lack of subject matter jurisdiction.[1] Defendants assert that, as to claims against the Secretary of Agriculture regarding the Partnerships for Climate-Smart Commodities ("PCSC") initiative, Plaintiffs' claims fail as a matter of law because they did not exhaust administrative remedies before seeking judicial review. As to all other remaining claims, by all Plaintiffs, the Court lacks jurisdiction.

**I.	Plaintiffs Fail to State a Claim Regarding the Partnerships for Climate-Smart Commodities Grants (Grant Award Nos. 27–32).**

**A. Statutory and Regulatory Background**

The Commodity Credit Corporation ("CCC") is a government-owned entity established by the CCC Charter Act (15 U.S.C. § 714 et seq.) and is an agency and instrumentality of the United States within the U.S. Department of Agriculture ("USDA"). *See* Stubbs, Megan (Jan. 14, 2021) The Commodity Credit Corporation (CCC), CRS Report R44606, https://www.congress.gov/crs-

---

[1] Defendants have filed a Notice of Appeal of the Court's Orders, ECF Nos. 146 and 157, which both addressed jurisdiction. With this Motion, Defendants now clarify and assert their position regarding the limits of the Court's jurisdiction over Plaintiffs' remaining claims.

product/R44606 (hereafter, the "CRS Report"). Incorporated in its current form in 1948, the CCC's primary mission is to "stabilize, support, and protect farm income and prices; assist in maintaining balanced and adequate supplies of agricultural commodities; and facilitate the orderly distribution of commodities." *Id.* CCC does not have any employees but uses the employees, services, and facilities of various USDA agencies. *Id.*; *see also* 15 U.S.C. § 714i (authorizing CCC to utilize the employees of "any bureau, office, administration, or other agency of [USDA]").

The Natural Resources Conservation Service ("NRCS") is a congressionally authorized agency within the USDA. *See* 7 U.S.C. § 6936(a). The Secretary has authority to assign NRCS jurisdiction over certain unenumerated laws and to perform "[s]uch other functions as the Secretary considers appropriate . . . ." 7 U.S.C. § 6936(b).

A "participant" may appeal an "adverse decision" made by the CCC or NRCS to the National Appeals Division at USDA. 7 U.S.C. § 6991(2)(B) and (F) (including CCC and NRCS in the definition of an "agency"); 7 C.F.R. § 11.1 (same and also defining "participant"). By law, a participant must exhaust these administrative procedures, including by appealing and receiving a determination from the National Appeals Division, before seeking judicial review. 7 U.S.C. § 6912(e) ("[A] person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against . . . the [Secretary of Agriculture]."); *see also* 7 C.F.R. § 11.13(b) ("An appellant may not seek judicial review of any agency adverse decision appealable under this part without receiving a final determination from the [National Appeals] Division pursuant to the procedures of this part."). The Director of the National Appeals Division is empowered to determine whether a decision is appealable. 7 U.S.C. 6992(d). Final determinations issued by the National Appeals Division are subject to judicial review. 7 U.S.C. § 6999.

**B. Factual Background**

In early 2022, USDA started the PCSC initiative as an exercise of the agency's authority under the CCC Charter Act. 15 U.S.C. § 714 et seq. PCSC was not created by Congress, nor is it specifically appropriated for by Congress. ECF No. 147-1 at ¶ 9. The NRCS issued a Notice of Funding Opportunity for the PCSC, which allowed for projects to be funded pursuant to terms set forth in grant agreements. *See id.* at ¶ 5 (providing a link to the Notice of Funding Opportunity). Plaintiffs Conservation Innovation Fund, Marbleseed, Pennsylvania Association for Sustainable Agriculture, and Organic Association of Kentucky are recipients of PCSC grants. ECF No. 136-1 at # 27, 29, 30, 31. Plaintiffs Alliance for Shenandoah Valley and RAFI-USA are parties to subaward agreements with PCSC grant recipients. *Id.* at # 28 and 32.

On April 14, 2025, USDA publicly announced that it has "reformed and overhauled" the PCSC initiative. https://www.usda.gov/about-usda/news/press-releases/2025/04/14/usda-cancels-biden-era-climate-slush-fund-reprioritizes-existing-funding-farmers (last visited May 27, 2025). The Secretary explained that USDA reviewed each partnership, which led to a concern with the high administration fees relative to the amount of funding going directly to farmers. *Id.* USDA announced that PCSC had been converted into the Advancing Markets for Producers ("AMP") initiative to reprioritize efforts so that more money goes directly to farmers. *Id.* USDA reviewed "existing grant agreements based on three Farmer First policy priorities," including a requirement that "a minimum of 65% of federal funds must go to producers." *Id.* In consideration of these new priorities, USDA terminated some, but not all, PCSC grant awards.

USDA has issued a notice of intended termination and final termination covering each of the six PCSC grants at issue in this litigation. *See id.* at 8–17 (providing relevant documents). USDA found each grant to be inconsistent with the priority that a minimum of 65 percent of federal

3

funds in any grant award go directly to producers. *Id.*; *see also* 2 C.F.R. § 200.340(a)(4) (allowing for terminations "if an award no longer effectuates the program goals or agency priorities"). The termination letter invites the affected grant recipients to submit a new proposal that aligns with the Farmer First policy priorities by June 20, 2025. *Id.*

### C. Procedural Background

The PCSC Plaintiffs, collectively with the other Plaintiffs in this action, asserted six claims against all Defendants. *See generally* ECF No. 23. Plaintiffs stated that they were seeking to restore grants under "congressionally mandated programs." ECF No. 24-1 at 2. Defendants supplemented the record with evidence that PCSC was an initiative created by the Secretary of Agriculture without Congressional directive or appropriations. ECF No. 147-1 at §§ 3–9. In response, the PCSC Plaintiffs crystallized their argument around two points: (1) the grant terminations violate 15 U.S.C. § 714, which generally states CCC's purpose is to stabilize, support, and protect agricultural commodities, and (2) the grant terminations were not the product of reasoned decision-making. ECF No. 149. Plaintiffs' arguments regarding PCSC have not plausibly implicated separation of powers, the Presentment Clause, or the First Amendment. *Id.*; *see also* ECF No. 157 at 23 (describing this issue as an APA challenge, rather than a failure to execute any law).

### D. Rule 12(b)(6): Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money

by the parties and the court.'" *Twombly*, 550 U.S. at 558 (quoting 5 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1216, at 233-34 (3rd ed. 2004)).

In considering a motion to dismiss, "[t]he court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (cleaned up) (citations omitted). Courts may also consider documents relied on in the Complaint, as well as the allegations made. *Id.*

### E. Because Plaintiffs have failed to exhaust administrative remedies, as required by law, their claims regarding PCSC should be dismissed.

Because Plaintiffs have not exhausted all available administrative remedies regarding the PCSC grant terminations, such claims are not ripe for judicial review.

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144(1992). As to claims against the Secretary of Agriculture, Congress has provided that "[n]otwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction . . . ." 7 U.S.C. § 6912(e); *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 95 (2d Cir. 1998) ("There can be little doubt that Congress's intent, in enacting [7 U.S.C. § 6912(e)], was to require plaintiffs to exhaust all administrative remedies before bringing suit in federal court."). Section 6912(e)'s exhaustion requirement is "mandatory, but nonjurisdictional." *Munsell v. U.S. Dep't of Agric.*, 509 F.3d 572, 581 (D.C. Cir. 2007). Indeed, "it is hard to imagine more direct and explicit language requiring that a plaintiff suing the Department of Agriculture, its agencies, or employees, must first turn to any administrative avenues before beginning a lawsuit." *Montanans for Multiple Use v. Barbouletos*, 542 F. Supp. 2d 9, 15 (D.D.C. 2008), *aff'd*, 568 F.3d 225 (D.C. Cir. 2009).

Section 6912(e)'s mandatory exhaustion requirement applies because a participant subject to an "adverse decision" concerning the CCC's domestic programs or NRCS may appeal to the National Appeals Division. 7 U.S.C. § 6991(2)(C); 7 C.F.R. § 11.1. Decisions issued by the NAD are subject to judicial review. 7 U.S.C. § 6999. However, "a party cannot bring a civil action in federal court against the Secretary of Agriculture without first exhausting all administrative appeal procedures." 7 U.S.C. § 6912(e); *see also Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (discussing the "final agency action" requirement in 5 U.S.C. § 704 and noting that statutory and regulatory exhaustion requirements are "prerequisite[s] to judicial review" under the APA).

Here, Plaintiffs seek judicial review of USDA's decision to terminate grant awards under a discretionary initiative. Yet they have not alleged that they exhausted their administrative remedies by appealing their grant terminations and receiving a final decision from the National Appeals Division. Because Plaintiffs' claims stem from grant decisions, and none of those claims have been properly exhausted as is statutorily required, Plaintiffs fail to state a viable claim. *See Gold Dollar Warehouse, Inc. v. Glickman*, 211 F.3d 93, 98 (4th Cir. 2000) ("Parties are required by statute to exhaust available administrative remedies before they may bring an action against the USDA in federal court."); *Ovanova, Inc. v. U.S. Dep't of Agric.*, No. CV 24-2769 (JEB), 2025 WL 343118, at *6 (D.D.C. Jan. 30, 2025) ("Plaintiffs' APA claims thus would topple on the merits for failure to exhaust.").

To the extent Plaintiffs respond that they are bringing a challenge that goes beyond individual grant terminations, Plaintiffs have not received a decision that their claims were not appealable, nor did they appeal that decision to the Director.[2] *See* 7 U.S.C. § 6992(d). Section

---

[2] Such an argument may also constitute a "programmatic attack" barred by the APA's limitation of judicial review to "circumscribed, discrete agency actions." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62, 64 (2004) (holding a plaintiff "cannot seek wholesale

6992(d) provides:

> If an officer, employee, or committee of an agency determines that a decision is not appealable and a participant appeals the decision to the Director, the Director shall determine whether the decision is adverse to the individual participant and thus appealable or is a matter of general applicability and thus not subject to appeal. The determination of the Director as to whether a decision is appealable shall be administratively final.

Thus, "Congress specifically vested the [National Appeals Division] with the authority to determine appealability." *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 474 (8th Cir. 2013); *see also Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 95 (2d Cir. 1998) ("Under the clear terms of [Section 6992(d)], plaintiffs' argument that their broad challenges . . . could not adequately have been presented within normal administrative channels is itself an argument that was required to be tested and exhausted before being presented in federal court."). In *Bastek*, the Second Circuit required exhaustion where plaintiffs purported to challenge a "general policy of calculating indemnities, rather than individual benefit determinations." 145 F.3d at 95. The same result would follow here regarding any categorical arguments – however framed – that agency action was inconsistent with the CCC's enabling legislation or the APA's reasoned decision-making standards.

On the other hand, the Fourth Circuit has recognized, a "narrow" exception to section 6912(e) for courts to address a "purely legal question." *Cowpasture River Pres. Ass'n v. Forest Serv.*, 911 F.3d 150, 181 (4th Cir. 2018), *rev'd and remanded on other grounds, U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604 (2020). In *Cowpasture River*, the Fourth Circuit examined whether the Mineral Leasing Act gave the United States Forest Service statutory authority to grant pipeline rights of way. *Id.* at 179–80. The court held that exhaustion was not

---

improvement of [a] program by court decree . . ."); 5 U.S.C. § 704 (limiting judicial review to "final agency action").

required because the agency had no expertise in the issue of statutory construction and there were no factual disputes to resolve. *Id.* at 183; *see also Gold Dollar Warehouse*, 211 F.3d at 99 (holding that a facial challenge to regulatory authority does not need to be exhausted, whereas "an as applied challenge to the regulations, which includes a predicate challenge to the adverse decision of the agency" does).

Here, though, the Court has found that a fuller record is needed to determine whether Plaintiffs' claims regarding PCSC have merit. ECF No. 157 at 23–24. *See generally Bastek*, 145 F.3d at 94 ("Exhaustion also allows the agency to develop the factual record of the case, which aids such judicial review as may be available."). Therefore, unlike in *Cowpasture*, resolution of Plaintiffs' claims regarding PCSC does not present a "purely legal question." Indeed, Plaintiffs do not appear to argue USDA lacks statutory authority to establish priorities or terminate grants. Rather, Plaintiffs argue the exercise of such authority contravened the general purpose of CCC and did not reflect reasoned decision-making. This argument mirrors the "as applied" challenge in *Gold Dollar Warehouse* and must be exhausted before it is subject to judicial review.

II. **The Court Lacks Nonstatutory Federal Jurisdiction Because Plaintiffs Have Other Means of Vindicating Their Rights and Seek to Payments Pursuant to Grant Awards. (Grant Award Nos. 1–26, 33–38)**

   A. **Background**

On April 29, 2025, the Court issued an Order finding that Plaintiffs' claims fall plainly within the jurisdiction of this Court under the APA. ECF No. 146. During the telephone conference on May 16, 2025, ECF No. 154, the Court questioned whether there was an additional, independent basis for jurisdiction. At that time, Plaintiffs asserted that the Court had jurisdiction independent of the APA. At the hearing on May 19, 2025, ECF No. 155, Plaintiffs advanced this argument, referring to their Amended Complaint and *Strickland v. United States*, 32 F.4th 311, 366 (4th Cir.

8

2022). Defendants took no position on whether nonstatutory review jurisdiction applied where APA claims had been resolved favorably to Plaintiffs. However, Defendants reiterated their position that causes of action, including constitutional and *ultra vires* claims, could not be recast to circumvent Tucker Act jurisdiction.

On May 20, 2025, the Court issued an Order on Plaintiffs' Motion for Preliminary Injunction. The Court found that nonstatutory review jurisdiction supplies an additional grant of jurisdiction beyond the APA. ECF No. 157 at 10–11. In reaching this conclusion, the Court noted that "Defendants have to date focused their opposition to Plaintiffs' federal jurisdiction almost entirely on whether this Court has jurisdiction under the APA." *Id.* at 10. Though Defendants briefly addressed Tucker Act jurisdiction over constitutional claims in responding to Plaintiffs' Motion for Preliminary Injunction, ECF No. 56 at 12, Defendants now clarify and assert their position regarding the limits of the Court's jurisdiction over Plaintiffs' remaining so-called constitutional and *ultra vires* claims.

### B. Rule 12(b)(1): Lack of Subject Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) is "a challenge to the court's subject matter jurisdiction." *Hoblick v. United States*, 526 F. Supp. 3d 130, 132 (D.S.C. 2021) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006)). Subject matter jurisdiction is a threshold issue that must be decided before reaching the merits of the case. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479-80 (4th Cir. 2005). Plaintiffs bear the burden of proving subject matter jurisdiction. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

Under Rule 12(b)(1), "a defendant may challenge subject matter jurisdiction in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A defendant can either (1) make a "facial challenge to subject matter

9

jurisdiction[,]" contending that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," or (2) raise a factual challenge "that the jurisdictional allegations of the complaint [are] not true." *Kerns*, 585 F.3d at 192 (quoting *Adams*, 697 F.2d at 1219). When the defendant makes a facial challenge, "'the plaintiff, in effect, is afforded the same procedural protection as he would receive under Rule 12(b)(6) consideration.'" *Kerns*, 585 F.3d at 192 (quoting *Adams*, 697 F.2d at 1219). The complaint's alleged facts are "taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

### C. Because Plaintiffs Have Other Means of Vindicating their Rights, Nonstatutory Jurisdiction Does Not Exist.

As the Court correctly recognized, federal courts have historically exercised jurisdiction over equitable claims that an agency official exceeded his statutory or constitutional authority. ECF No. 157 at 10–11 (citing *Leedom v. Kyne*, 358 U.S. 184, 188-89 (1958); *see also Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 108, (1902) ("The acts of all its officers must be justified by some law, and in case an official violates the law to the injury of an individual the courts generally have jurisdiction to grant relief."). "Such actions are based on the grant of general federal-question jurisdiction under 28 U.S.C. § 1331 and the inherent equity powers of the federal courts." *Rhode Island Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002).

With the passage of the APA, plaintiffs now have a statutory mechanism for obtaining injunctive or declaratory relief for certain agency actions. *See* U.S.C. § 703; *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 60 (1st Cir. 2007) ("Congress has provided a mechanism—the APA—for resolving these conflicts."). And since a requirement for equitable relief is "that a plaintiff lack an adequate remedy at law," nonstatutory review is unavailable where "the APA or a special statutory review proceeding can provide adequate relief." 33 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 8307 (2d ed.).

Indeed, the Supreme Court has recognized that *Kyne* turned on the fact that the plaintiff lacked "a meaningful and adequate means of vindicating its statutory rights." *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43, (1991); The holding in *Kyne* is, therefore, "limited," and nonstatutory review jurisdiction is "properly invoked only where the absence of federal court jurisdiction over an agency action 'would wholly deprive' the aggrieved party 'of a meaningful and adequate means of vindicating its statutory rights' and where the agency acted outside "'clear and mandatory' statutory prohibitions." *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 233 (4th Cir. 2008) (quoting *McCorp*, 502 U.S. at 43; *see also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 59–60 (1st Cir. 2007) ("Critically, with respect to the first requirement for nonstatutory review, Puerto Rico does have a means of vindicating its rights without nonstatutory review: the APA."); *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) ("*Leedom* jurisdiction is extremely narrow in scope."); *but see Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019) ("We do not think that the APA forecloses [an] equitable claim.").

Here, Plaintiffs can vindicate their alleged rights to grant funding through a contract action in the Court of Federal Claims under the Tucker Act, *see* Section II.D., *infra*. And even if this Court is correct that the Tucker Act does not apply, judgment has been entered in favor of Plaintiffs on their APA claims. Either way, access to an alternate remedy precludes a finding of nonstatutory review jurisdiction. *Compare Long Term Care Partners*, 516 F.3d at 236–237 (declining to exercise nonstatutory jurisdiction where other means to vindicate certain rights existed and where the plaintiffs "chose not to present the APA argument to the district court"), *with Strickland*, 32 F.4th 311 (4th Cir. 2022) (holding the APA did not apply and that the *only* jurisdictional basis for plaintiff to obtain equitable relief would be nonstatutory review).

### D. Because Plaintiffs' Claims, in Essence, Seek Monetary Relief, The Court Lacks Jurisdiction Over Them.

Additionally, nonstatutory review allows a plaintiff to obtain equitable relief only. This jurisdiction, thus, does not extend to the claims and relief sought in this case, as Defendants contend on appeal. *See* No. 25-1575, Docket Entry No. 6 at 20–23.

Invoking nonstatutory review jurisdiction, ECF No. 23 at ¶ 286, Plaintiffs claim that Defendants have violated the separation of powers, the Presentment Clause, and the First Amendment, *see id.* at ¶¶ 300, 307, 339, and assert that they are bringing their lawsuit "under the U.S. Constitution and the APA, 5 U.S.C. §§ 702, 704," *id.* at ¶ 15.

The Amended Complaint's purported nonstatutory claims and APA claims are, as this Court recognized, "mirror images of each other." ECF No. 157 at 14. Nonstatutory review permits a plaintiff to obtain "*equitable* relief against federal officials in their official capacities." *Strickland*, 32 F.4th at 366 (4th Cir. 2022) (emphasis added). Yet, Plaintiffs' Amended Complaint seeks access to grant funds by preventing "Defendants from otherwise impeding, blocking, cancelling, or terminating Plaintiffs' access," ECF No. 23 at 91, ¶ G —a remedy that is *monetary*, not equitable, *cf. Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 263 (1999) (holding that a remedy that seeks to "attach money in the hands of the Government" is "money damages"). As explained below, through the Tucker Act, Congress has made clear that this type of claim must be brought in the Court of Federal Claims, not district court. Consequently, the Amended Complaint should be dismissed for lack of subject matter jurisdiction.

The Tucker Act is a federal statute that waives sovereign immunity for certain claims. *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 259-60 (1999). Specifically, the Tucker Act states that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded upon . . . any express or implied contract with the

United States . . . ." 28 U.S.C. § 1491(a)(1). This jurisdiction is "exclusive in the Court of Federal Claims for claims over $10,000 . . . ." *Coleman v. Kendall*, 74 F.4th 610, 615 (4th Cir. 2023) (citing 28 U.S.C. § 1346(a)(2))."

When determining whether "a particular action" is "at its essence a contract action" subject to the Tucker Act, courts look to "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)[,]" *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982), and "courts should attempt 'to make rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds,'" *United States v. J&E Salvage Co.*, 55 F.3d 985, 988 (4th Cir. 1995) (quoting *Megapulse*, 672 F.2d at 969-70).

Plaintiffs' expressed goal in this litigation is to obtain a "guarantee of funding and reimbursement" from the federal government. ECF No. 24-1 at 3. The Amended Complaint raises claims concerning "legally binding agreement[s] with the government." ECF No. 23 at ¶ 174. Plaintiffs allege that they entered into "Grant Agreements" with the government, in which certain federal agencies "agreed to provide funding up to a specified dollar amount, over a specified time period, for specified work advancing Congress's objectives for the grant program." *Id.* at ¶ 178. And they contend that the Federal Government has failed to abide by the terms of these agreements. *See id.* at ¶ 197. Moreover, Plaintiffs state that these agreements "are not contracts[,]" *id.* at ¶ 179, and they persuaded this Court at the preliminary-injunction stage that that the "claims do not turn on the terms of a contract between the parties," ECF No. 146 at 5.

Nonetheless, at this juncture, where Defendants raise a facial challenge to subject matter jurisdiction under Rule 12(b)(1), the Amended Complaint must be dismissed. There is no "broad rule that the [Court of Federal Claims] cannot supply an adequate remedy in any case seeking injunctive relief." *South Carolina v. United States*, 221 F. Supp. 3d 684, 696 (D.S.C. 2016)

13

(quoting *Consolidated Edison*, 247 F.3d at 1383). As such, the Court of Federal Claims has exclusive jurisdiction over this lawsuit.

Plaintiffs cannot avoid the Court of Federal Claims by characterizing their claims as constitutional violations. *See Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) ("[T]he APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered here.") (internal quotation marks and citation omitted). Allowing Plaintiffs to get away with such repackaging of essentially contractual claims "would subvert the jurisdiction of the Court of Claims, and might enable [Plaintiffs] to gain duplicate relief for the same alleged wrong." *Metadure Corp. v. United States*, 490 F. Supp. 1368, 1373 (S.D.N.Y. 1980) (internal citation omitted).

"Stripped of its equitable flair," Plaintiffs' "requested relief seeks one thing": Plaintiffs "want[] the Court to order the Government to stop withholding the money due under" the grants— the "classic contractual remedy of specific performance." *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, 1:25-cv-465, 2025 WL 763738 (D.D.C. Mar. 11, 2025) (quotation omitted). Accordingly, the Court of Federal Claims could give Plaintiffs this relief and is the proper forum under the Tucker Act. Plaintiffs cannot sidestep sovereign immunity in this way and obtain an order granting them "access to their funds" owed pursuant to "legally binding agreements." *See South Carolina*, 221 F. Supp. at 696 ("[A]lthough the State dresses its monetary claim in the garb of an equitable remedy . . . the court concludes that the claim is essentially one for monetary relief."). Indeed, courts, including this one, have rebuffed efforts to reframe a claim for money damages as equitable in nature to avoid the Court of Federal Claims:

- No jurisdiction over claims premised on constitutional violations that sought a declaration and injunction related to the payment of decommissioning costs for uranium processing facilities. *Cons. Edison Co. of New York v. U.S., Dep't of Energy*, 247 F.3d 1378, 1385 (Fed. Cir. 2001) ("This court and its sister circuits will not tolerate

14

a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims.").

- No jurisdiction over due process claim related to an insurance agreement between mortgage lender and the government. *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1124 (Fed. Cir. 2007) ("Though the claim is styled as one for declaratory relief, Suburban in essence is seeking to obtain the financial benefit of a prior contract-based obligation that allegedly has not been honored by the Government. . . . We therefore agree with the Government that despite the form of the complaint, Suburban's claim is in substance a contract-based action asking for monetary relief from the Government.")

- No jurisdiction over claims related to federal funding pursuant to cooperative agreements. *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, 1:25-cv-465, 2025 WL 763738 (D.D.C. Mar. 11, 2025) ("Sure, the Conference seeks to set aside agency action. But the agency action that it asks the Court to reverse is the Government's decision to cease a financial relationship with the Conference.")

- No jurisdiction over claims for declaration and injunction related to the removal of plutonium from the Savannah River Site. *South Carolina v. United States*, 221 F. Supp. at 696 (D.S.C. 2016) ("[A]lthough the State dresses its monetary claim in the garb of an equitable remedy . . . the court concludes that the claim is essentially one for monetary relief.);

Plaintiff's invocation of constitutional and *ultra vires* language in describing an alleged breach of grant award agreements is the type of "artfully recasting" and "dressing up" courts have found intolerable. Since Plaintiffs "seek[] essentially a monetary award[]" against the Federal Government, this Court does not have jurisdiction to consider these claims. *South Carolina v. United States*, 221 F. Supp. 3d at 696.

### III. Since Plaintiffs Have Not Demonstrated a Concrete and Particularized Injury, Plaintiffs Lack Standing to Assert a First Amendment Claim.

In addition to the reasons set forth in Section II, *supra*, Plaintiffs' First Amendment claim also should be dismissed for lack of subject matter jurisdiction because the Amended Complaint fails to plead that Plaintiffs suffered a concrete, traceable, and redressable injury such that Plaintiffs have standing.

To establish the first element of standing, Plaintiffs must demonstrate that they suffered an injury in fact that is "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Plaintiff have not alleged that they suffered an injury in fact that is concrete and particularized. The Amended Complaint does not allege that the "Program Freezing Actions" prohibit Plaintiffs from engaging in specific, planned, and protected First Amendment conduct. *See* ECF No. 23 at 86-87. Instead, the Amended Complaint focuses on Plaintiffs' alleged inability to access grant funding. *Id*. at 89, ¶ 338.

Further, the Amended Complaint does not identify a concrete injury through the vague and unsupported allegation that "[t]he Program Freezing Actions violate the First Amendment by restricting Plaintiffs' constitutionally protected speech based on its content." *Id*. at ¶ 339. Indeed, the Amended Complaint does not bolster the restricted-speech assertion by including "objectively reasonable" allegations that the "Program Freezing Actions" are "likely [to] deter a person of ordinary firmness from the exercise of First Amendment rights." *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011) (citation omitted). Rather, the Amended Complaint's First Amendment claim does not include any allegation that Plaintiffs' free speech has been chilled. *See* ECF No. 23 at 329-339. Thus, Plaintiffs have not moved any such allegations from the realm of "subjective or speculative." Because a claimed chilling effect cannot be based on subjective or speculative accounts, Plaintiffs' Amended Complaint fails to satisfy the standing requirements. *See Benham*, 635 F.3d at 135.

Additionally, because the Amended Complaint fails to allege a concrete injury, Plaintiffs cannot satisfy the other two elements of the standing inquiry that flow from the concrete injury requirement. *See, e.g.*, *Frank Krasner Enters., Ltd. v. Montgomery Cty.*, 401 F.3d 230, 234 (4th Cir. 2005) (explaining traceability is satisfied when "a causal connection between the injury and

the conduct complained of . . . is fairly traceable, and not the result of the independent action of some third party not before the court" and redressability is satisfied when there is "a non-speculative likelihood that the injury would be redressed by a favorable judicial decision.") (emphasis and internal quotation marks omitted). For these reasons, Plaintiffs lack standing to assert the First Amendment claim and the Court lacks subject matter jurisdiction over the claim.

## IV. Conclusion

As explained above, Defendants respectfully submit that the Amended Complaint should be dismissed, pursuant to Rule 12(b)(6) and Rule 12(b)(1).

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By:   *s/Todd Timmons*
Todd Timmons (#11254)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Tel: (803) 237-9265
Todd.Timmons@usdoj.gov

Lee E. Berlinsky (#05443)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina 29401
Tel: (843) 266-1679
Lee.Berlinsky@usdoj,gov

May 27, 2025