**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| THE SUSTAINABILITY INSTITUTE, et al., | |
| Plaintiffs, | |
| v. | Case No. 2:25-cv-02152 |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Defendants' motion to dismiss Plaintiffs' claims should be denied. First, while Defendants style their motion as arising under Rules 12(b)(1) and (6), Defendants frequently invoke facts outside of the pleadings, and their motion should be denied on that basis.

Defendants' motion also fails as a matter of law. Defendants are wrong when they argue that Plaintiffs have failed to exhaust administrative remedies with regard to their Climate Smart Commodities grants. First, there is no avenue for Plaintiffs to pursue the remedies they seek (declaratory and injunctive relief related to Defendants' unlawful mass termination of the Climate Smart grants). Second, even if there were remedies to exhaust, exhaustion is not a jurisdictional bar and should be excused here because it would cause Plaintiffs irreparable harm and be futile. Finally, this case does not concern individualized grant terminations but constitutes a facial challenge to the Department of Agriculture's ("USDA") decision to freeze and terminate the entire Climate Smart Commodities program for reasons unrelated to individual grants.

Defendants' attempt to dismiss Plaintiffs' nonstatutory review claims also fails. This Court has already rejected Defendants' argument that this case turns on contract claims. Plaintiffs

do not seek money damages, but declaratory and injunctive relief. And the source of Plaintiffs'
nonstatutory review claims is the Constitution, not the specific terms and conditions of their
grants. The right to bring nonstatutory review claims in federal court is well-established through
decades of judicial precedent and has recently been reaffirmed by several courts. *See, e.g.*,
*Widakuswara v. Lake,* No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) (en banc);
*Maryland v. Corp. for Nat'l and Cmty. Serv.*, No. CV DLB-25-1363, 2025 WL 1585051 (D. Md.
June 5, 2025).

## BACKGROUND

Most relevant to the pending motion before the Court is the background of the six
Climate Smart Commodities grants, which Defendants wish to exclude from this litigation. The
Partnership for Climate Smart Commodities Initiative began in 2022 under the Commodity
Credit Corporation Charter Act as an initiative to expand the use of climate-smart farming
practices and to develop markets for commodities grown using those practices. 15 U.S.C. § 714
*et seq.* The Natural Resources Conservation Service issued a Notice of Funding Opportunity,
requesting applications that included meaningful involvement of small or historically
underserved producers.[1]

Plaintiffs Conservation Innovation Fund, Marbleseed, Pennsylvania Association for
Sustainable Agriculture, and Organic Association of Kentucky all applied for, and received
Climate Smart Grants as primary grantees. Most of the Climate Smart Grants are structured to
also include subaward agreements. Plaintiffs Alliance for Shenandoah Valley and RAFI-USA are
recipients of such subawards.

---

[1] USDA, *Partnerships for Climate-Smart Commodities* (2022),
https://www.usda.gov/sites/default/files/documents/climate-smart-nfo-usda-nrcs-comm-22-
nofo0001139-02062022-web-final.pdf.

The application process for the grants took considerable time; for example, Conservation Innovation Fund explained that its grant was "the culmination of over 10 years of planning and preparation." Dkt. No. 24-8 at ¶ 8. Plaintiff Pasa "surveyed hundreds of farmers" before applying for the award and based their application on the responses from this survey and "needs of farmers across the country." Dkt. No. 24-13 at ¶ 34. Plaintiff Alliance for the Shenandoah Valley spent 675 hours preparing and applying for its subaward Dkt. No. 24-5 at ¶ 6.

The Plaintiffs all began the work as set out by their grant terms. The grants were generally awarded for specific projects over a set time frame. For example, Plaintiff Marbleseed was awarded a grant for a five-year project that began on November 6, 2023, to provide "rural and agricultural communities with the tools needed to build operational and environmental resiliency by implementing climate-smart production practices that reduce greenhouse gas emissions and sequester carbon."  Dkt. No. 24-11 at ¶ 5.

The projects brought together hundreds of farmers and agricultural operations collaborating on the ground. For example, Plaintiff Conservation Innovation Fund's grant involves working with farmers in Virginia, Maryland, Pennsylvania, Delaware, West Virginia, Ohio, North Carolina, South Carolina, Tennessee, New Jersey, and New York to integrate agricultural best management practices such as "cover crops, zero tillage production, nutrient management and manure management into dairy, beef and grain supply chains." Dkt. No. 24-8 at ¶ 6. The grant "tackles a backlog of producer demand for capital to invest in best management practices and access to emerging markets." *Id.* at ¶ 7. Pasa Sustainable Agriculture explains that their grant includes contracts with farmers across 15 states, with each contract being typically for a three-year term, meaning that there are now hundreds of farmers anticipating at least two more years of financial and technical support who are no longer getting it. Dkt. No. 24-13 at ¶ 29.

3

Generally, Plaintiffs receive reimbursement for their expenses and time through an online portal. Some payments are made as reimbursements for past expenses, while some larger payments require advance authorization. Dkt. No. 24-3 at ¶ 11 (payments made as reimbursements); Dkt. No. 24-4 at ¶ 7 (payments made as reimbursements); Dkt. No. 24-12 at ¶ 8 (payments made as reimbursements and in advance). Plaintiffs provided regular reports to their grant officers.

In February 2025, Plaintiffs stopped receiving reimbursement payments for their work under Climate Smart Commodities grants. Plaintiff Conservation Innovation Fund was told by their grant officer on February 4, 2025 that the grants administration team had "been instructed not to work on approving any reimbursement claims or processing any advance requests." Dkt. No.24-8 at ¶ 9). And on March 7, 2025, Marbleseed was told by their grant liaison that "payments were paused because of recent executive orders."  Dkt. No. 24-11 at ¶ 12.

This unexplained freeze in funding plunged Plaintiffs into chaos. As just one example, at the time Plaintiffs filed their complaint, Conservation Innovation Fund reported that twenty-nine farms were awaiting payment totaling close to $2 million. The timing was particularly problematic because "spring is a key time frame for the implementation of best management practices." Dkt. No. 24-8 at ¶ 10. With no end to the freeze of grant funding in sight, Plaintiffs filed this action and an amended complaint on March 26, 2025.

Citing a press release from USDA, Plaintiffs alleged that "upon information and belief" some of the funding for the Climate Smart Commodities program came via the Inflation Reduction Act. Dkt. No. 23 at ¶ 170. Plaintiffs posited that that pathway may have led to the freeze of the grant program pursuant to the "Unleashing American Energy" Executive Order which directed termination of all grants related to the "Green New Deal." In any event,

4

Defendants have not offered any other explanation as to why the program was abruptly frozen, other than a vague assertion that the program is being revised to reflect new policy priorities.

On April 14, 2025, several weeks after Plaintiffs filed this action, Defendants announced the termination of the entire Partnerships for Climate Smart Commodities program. In a brief press release, Defendant USDA Secretary Brooke Rollins declared her view that "[t]he Partnerships for Climate Smart Commodities initiative was largely built to advance the green new scam . . . ."[2] Secretary Rollins announced that USDA was replacing the program with a new program called the "Advancing Markets for Producers (AMP)" in line with the President's priorities.[3] Secretary Rollins further announced that under this program, USDA would "review existing grant agreements" based on new priorities.[4] Plaintiffs received their Climate Smart Grant termination notices on April 22, 2025, and have since been invited to apply for the AMP program by requesting a one-on-one meeting with a USDA officer. Other than this invitation, details about the new AMP program, application process or participation criteria remain scant. This case is a facial challenge to USDA's wholesale termination of the entire Climate-Smart program, challenging its broad programmatic decision rather than an as-applied individualized grant termination.

Only after filing this lawsuit did Plaintiffs receive formal termination notices of their Climate Smart Grants, thus becoming eligible to file administrative appeals through USDA's

---

[2] USDA, *USDA Cancels Biden Era Climate Slush Fund, Reprioritizes Existing Funding to Farmers* (Apr. 14, 2025), https://www.usda.gov/about-usda/news/press-releases/2025/04/14/usda-cancels-biden-era-climate-slush-fund-reprioritizes-existing-funding-farmers.

[3] *Id.*

[4] *Id.*

National Appeals Division ("NAD"). However, as USDA's own rules make clear, NAD lacks jurisdiction over such claims. Before accepting a NAD appeal, the Director must first determine whether the challenged action is "adverse to the individual participant and thus appealable or is a matter of general applicability and thus not subject to appeal." 7 C.F.R. § 11.6(a)(2). The decision to cancel the entire Climate Smart Grant Program is "a matter of general applicability" as it does not turn on any individualized facts or grant performance but was instead a policy decision applicable across the board. As such, Plaintiffs cannot appeal it through the NAD process and thus have no administrative remedy to exhaust.

Even so, to preserve their rights in every forum, Plaintiffs have filed NAD appeals and those appeals remain pending. However, the NAD process, triggered by Defendants' *post hoc* termination actions, does not provide an adequate remedy for the harms Plaintiffs have already suffered, and cannot fully redress Plaintiffs' injuries stemming from the arbitrary termination of the Climate Smart Grant program. The harm to Plaintiffs and the communities they serve continues to compound as they remain unable to move forward with their Climate Smart Grant projects.

## ARGUMENT

### I.    Standard of Review

On a motion to dismiss under Rule 12(b)(6), the facts alleged in the complaint are taken as true and construed in the light most favorable to the plaintiff. *U.S. ex rel. Wheeler v. Acadia Healthcare Co., Inc.*, 127 F.4th 472, 485 (4th Cir. 2025). The motion must be denied if the complaint "'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 203 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Trombly*, 550 U.S.

544, 570 (2007)). In evaluating a motion to dismiss, "courts are limited to considering the sufficiency of allegations set forth in the complaint and in the documents attached or incorporated into the complaint. Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (citation and quotations omitted).

A motion to dismiss under Rule 12(b)(1) challenging the facial sufficiency of the complaint's allegations of subject matter jurisdiction is evaluated under the same standard as a Rule 12(b)(6) motion, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citations omitted).

## II.     Plaintiffs' Climate Smart Commodities Claims Should Not be Dismissed for Failure to Exhaust Administrative Remedies

Plaintiffs filed this suit in March 2025, after Defendant USDA abruptly froze the Partnership for Climate Smart Commodities program. In their complaint, Plaintiffs raised a number of claims, including allegations that Defendants violated the Administrative Procedure Act when they failed to engage in reasoned decisionmaking or consider reliance interests before they abruptly froze the Climate Smart program. Dkt. No. 23 at ¶¶ 280-82. Plaintiffs sought relief including the setting aside of the agency actions that led to the freeze of the grants, pursuant to 5 U.S.C. § 706(2), and injunctive relief prohibiting Defendants from freezing or terminating the grants. Dkt. No. 23, Prayer for Relief. There is no administrative process other than this Court to bring such claims or seek such relief, and Defendants have not pointed to one.

Defendants terminated the Climate Smart Grant program in its entirety, including all Plaintiffs' grants, after this litigation had already been filed. These arbitrary agency actions that

7

followed Defendants' initial freezing actions and then led to the terminations are properly encompassed in Plaintiffs' claims. *See Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 294 (4th Cir. 2022) (claims may continue to ripen after filing). Plaintiffs only became eligible to file their NAD appeals weeks after they filed this lawsuit. Plaintiffs were not, and could not have been, required to abandon their claims before this Court to pursue a separate administrative process that only became available after the filing of the complaint. Even were such a process to exist, which is does not, requiring such exhaustion would be futile and cause irreparable harm.

Plaintiffs' APA claims stem from USDA's decision to terminate the entire Climate Smart initiative and replace it with another one that remains undefined. All Climate Smart grantees received termination notices based on this programmatic decision, which is a matter of general applicability. Under USDA regulations, NAD lacks jurisdiction to hear appeals involving matters of general applicability—that is, decisions that apply uniformly to all similarly situated participants. Before accepting an appeal, NAD's Director must determine whether the agency decision "is adverse to the individual participant and thus appealable or is a matter of general applicability and thus not subject to appeal." 7 C.F.R. § 11.6(a)(2). Because this termination is a policy decision affecting all Climate Smart grantees, it falls outside of NAD's scope. Therefore, Plaintiffs have no administrative remedies to exhaust.

Instead, Plaintiffs may properly bring an APA claim in federal court challenging USDA's decision to rescind an entire grant program, as they did here. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal*., 591 U.S. 1, 24-25 (2020) (holding that the Department of Homeland Security's order rescinding the DACA program was arbitrary and capricious under the APA; *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 46-50 (1983)

(holding that National Traffic Safety Administration's rescission of motor vehicle safety regulation was arbitrary and capricious under the APA).

A.     **Defendants May Not Assert the Affirmative Defense of Failure to Exhaust Through a Rule 12(b)(6) Motion**

Before addressing Defendant's substantive exhaustion argument, the Court should reject it as procedurally improper because Defendants seek to prove this affirmative defense based on evidence outside the complaint under the guise of a Rule 12(b)(6) motion.

"A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). As a result, "a Rule 12(b)(6) motion to dismiss . . . generally does not enable the court to determine whether the exhaustion requirement has been satisfied or whether it has been waived or should be excused, because exhaustion is treated as an affirmative defense." *L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023). Only in the "'rare circumstances'" where "'all facts necessary to the affirmative defense clearly appear on the face of the complaint'" may an exhaustion defense be adjudicated on a motion to dismiss. *Id.* (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)).

Here, none of the "facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id.* at 586 (citation and quotations omitted). Indeed, Defendants' exhaustion argument does not even mention the complaint's allegations, drawing instead from a "Factual Background" section that only cites documents the *Defendants* filed weeks after the complaint. Dkt. No. 164 at 3-4 (citing Dkt. Nos. 136-1, 147-1). Defendants only allude to the complaint for what it does *not* contain, claiming that Plaintiffs "have not alleged that they exhausted their administrative remedies." *Id.* at 6. That gets the burden backwards. "[F]ailure-to-exhaust is an

affirmative defense that must be raised by a defendant," and a plaintiff is "not required to affirmatively show exhaustion in his complaint." *Wilcox v. Brown*, 877 F.3d 161, 167 (4th Cir. 2017). Because Defendants improperly seek to use evidence outside the complaint to prove an affirmative defense on a 12(b)(6) motion, their exhaustion argument should be denied.[5]

### B. Defendants Have Failed to Meet Their Burden to Prove Failure to Exhaust

Even if Defendants' failure to exhaust defense could be raised in a motion to dismiss, it would still fail. Defendants correctly point out that exhaustion under 7 U.S.C. § 6912(e) is "nonjurisdictional." Dkt. No. 164 at 5 (citing to *Munsell v. U.S. Dep't of Agric.*, 509 F.3d 572, 581 (D.C. Cir. 2007) (quotation omitted). This means that any alleged failure to exhaust on Plaintiffs' part would not divest the Court of jurisdiction or warrant dismissal; instead, exhaustion is an affirmative defense that can be excused when pursuing an administrative remedy would cause irreparable harm or be futile.

This Court should excuse any failure to exhaust. Courts have long recognized exceptions to administrative exhaustion, including where "the utilization of administrative procedures would cause irreparable injury," and "the resort to administrative procedures would be futile." *Whitewater v. Tidwell*, No. 8:09–cv–02665–JMC, 2010 WL 5019879, at *7 (D.S.C. 2010) (quoting *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1063 (4th Cir. 1991)); *see also Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 606 (5th Cir. 2007); *McCarthy v. Madigan*, 503 U.S. 140, 146-48 (1992). Here, requiring Plaintiffs to drop their properly pled litigation mid-

---

[5] Defendants cannot remedy these procedural defects by re-categorizing their failure-to-exhaust defense as a factual attack on subject matter jurisdiction under Rule 12(b)(1). Defendants correctly note that exhaustion under 7 U.S.C. § 6912(e) is "nonjurisdictional," Dkt. No. 164 at 5 (citation and quotations omitted), and thus, Rule 12(b)(1) is not a vehicle for this defense. Defendants, in cursory fashion and with no citation, claim that the failure to exhaust makes the PSCS claims "not ripe for judicial review," *id.*, but this mistakes an affirmative defense for a jurisdictional defect.

stream to engage in a separate administrative process that can have no chance of success would only exacerbate the irreparable harm already being experienced by Plaintiffs and would be futile.

1.     **Requiring Plaintiffs to Exhaust Administrative Remedies will Cause Irreparable Injury**

Plaintiffs face irreparable injury absent immediate judicial review. *See Randolph–Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 108 (D.C. Cir. 1986) (administrative exhaustion is not a bar to judicial review where a "clear showing of irreparable injury" is found); *see also McDonald,* 946 F.2d at 1063 (exception to exhaustion requirement when utilization of administrative process would cause irreparable injury).

The freezing and termination of Plaintiffs' Climate Smart Grants has already caused significant irreparable injury. As detailed in their declarations, Plaintiffs designed these grant programs to work hand-in-hand with farmers to develop, refine and then implement these plans on the ground. Dkt. No. 24-13 at ¶ 9 (program designed to support farmers with peer-to-peer engagement, direct education, and technical assistance to implement scientifically validated conservation practices); Dkt. No. 24-8 at ¶ 6-8 (program designed to serve important business development, cost reduction, and resource conservation needs of small farmers in the Mid-Atlantic).

Plaintiffs invested months and even years working up these programs and developing relationships with farmers and communities. The abrupt loss of funding has already harmed their reputations and eroded the trust and critical relationships with farmers and communities so painstakingly developed. *See, e.g.*, Dkt. No 24-1 at 29–30, 32–33. This Court already found Plaintiffs made a "clear showing" of irreparable harm. Dkt. 157 at 15–17. Requiring Plaintiffs to first complete a lengthy administrative process before filing legal action with this Court would only deepen that harm. Agriculture is necessarily seasonal; it does not wait for bureaucratic

11

processes to play out. Without swift relief, Plaintiffs risk permanently losing the trust, goodwill, and relationships they have built with farmers.

### 2.     The Utilization of Administrative Procedures Would be Futile

Pursuing administrative remedies here would also be futile. Defendant USDA did not merely terminate individual Climate Smart Grants, it cancelled the entire program. As such, there is no administrative process Plaintiffs could participate in to get what they ultimately seek, which is the full benefit of the Climate Smart Grant program. *See Coit Indep. Joint Venture v. Fed. Savings and Loan Ins. Corp.*, 489 U.S. 561, 587 (1989) ("[a]dministrative remedies that are inadequate need not be exhausted.").

Along these same lines, there is futility in Plaintiffs' participation in an administrative process confined to an individual grant. While Defendants state vaguely that each individual grant was reviewed, they have already been ordered to produce all relevant documents and there is no evidence to support their claim. Instead, the record establishes that USDA decided to terminate the Climate Smart program without consideration or individualized review of the six grants at issue here. Moreover, Defendants have disclaimed any fraud, waste, or abuse on the part of Plaintiffs: "The pauses and terminations here are not based on grantee compliance; they are based on the agency's review of whether federal funds are being spent in a matter that best promotes the Executive's agenda." Dkt. 56 at 21. Any individual proceeding would not challenge the relevant agency action and would thus be futile.

Moreover, USDA's public statements in cancelling the program and replacing it with another signaled its disdain for the Climate Smart program and its values, and the goals being pursued by grantees. In the press release announcing the program's termination, Secretary

Rollins characterized Climate Smart as a "slush fund" for "the green new scam,"[6] suggesting that USDA had predetermined the program's outcome. Courts may excuse exhaustion where the agency is "bias[ed] or has otherwise predetermined the issue before it." *McCarthy*, 503 U.S. at 148; *see also Ace Prop. and Cas. Ins. Co. v. Fed. Crop Ins. Corp.,* 440 F. 3d 992, 1000 (8th Cir. 2006) ("An administrative remedy will be deemed futile if there is doubt about whether the agency could grant effective relief.").

Here, where Defendants contend that agencies have the discretion to terminate grants "if an award no longer effectuates the program goals or agency priorities," Dkt. 164 at 3-4 (citing to C.F.R. § 200.340(a)(4)), the bias is clear, as is the futility of exhaustion. Defendants acknowledge that the Climate Smart grant terminations are wholly the result of shifting executive priorities, making it clear that the agency "has taken a hard and fast position that makes an adverse ruling a certainty." *Volvo GM Heavy Truck Corp. v. U.S. Dep't of Lab.*, 118 F. 3d 205, 213-14 (4th Cir. 1997) (*quoting Thetford Prop. IV Ltd. P'ship v. HUD*, 907 F.2d 445, 450 (4th Cir. 1990)).

### C. This Facial Challenge to USDA's Termination of the Climate Smart Program is Subject to APA Review by this Court

Finally, this case is not an as-applied challenge to individual grant terminations. Instead, Plaintiffs challenge the broad freeze and subsequent termination of the entire Climate Smart program for reasons unrelated to individual grantee compliance, making this a facial challenge to agency action. Courts routinely excuse exhaustion under 7 U.S.C. § 6912(e) where, as here, plaintiffs challenge the facial lawfulness of a broader policy decision. *See Gold Dollar*

---

[6] USDA, *USDA Cancels Biden Era Climate Slush Fund, Reprioritizes Existing Funding to Farmers* (Apr. 14, 2025), https://www.usda.gov/about-usda/news/press-releases/2025/04/14/usda-cancels-biden-era-climate-slush-fund-reprioritizes-existing-funding-farmers.

*Warehouse, Inc. v. Glickman*, 211 F. 3d 93, 99 (4th Cir. 2000) (holding exhaustion unnecessary where plaintiffs brought a facial and *ultra vires* challenge to USDA's statutory authority beyond the NAD administrative process); *McCarthy,* 503 U.S. at 147-48 (exhaustion not required where plaintiff raised constitutional claims the agency lacked authority to resolve); *McNeese v. Bd. of Ed. for Cmty. Unit . Dist.* 373 U.S 668 675-76 (1963) (exhaustion not required where agency could not grant the relief requested).

The Fourth Circuit has likewise held that where claims present "purely legal question[s]" beyond the agency's expertise, exhaustion is not necessary. *Cowpasture River Pres. Ass'n v. Forest Serv.*, 911 F. 3rd 150, 182 (4th Cir. 2018), rev'd on other grounds, 590 U.S. 604 (2020). This case constitutes a facial challenge to USDA's termination of the entire Climate Smart Grant program, not disputes about whether any grantees met their program benchmarks. And although Plaintiffs have since filed NAD appeals, which remain pending, the NAD administrative appeal process addresses individual grants, not the lawfulness of USDA's program-wide freeze and termination actions challenged here, claims outside of NAD's scope and properly before this Court.

In a footnote, Defendants half-heartedly suggest Plaintiffs' challenge could be considered an improper "programmatic attack" rather than a challenge to agency action reviewable under the APA. Dkt. 164 at 6 n.2. Defendants cite *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), which in turn quotes *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). But as the Supreme Court explained in *Lujan*, the hallmarks of an APA-reviewable agency action are that "the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying . . . to the claimant's situation in a fashion that harms or threatens to harm him." *Id.* The completed agency decision challenged here

could hardly have a more "actual or immediately threatened effect" than the fact that this action

has terminated Plaintiffs' grants. *Id.* at 894.

### III.    The Court Has Jurisdiction Over Plaintiffs' Nonstatutory Review Claims for Injunctive and Declaratory Relief

Defendants argue Plaintiffs' nonstatutory review claims should also be dismissed because

"Plaintiffs can vindicate their alleged rights to grant funding through a contract action in the

Court of Federal Claims under the Tucker Act." Dkt. 164 at 11. And they repeat their prior

argument that Plaintiffs' nonstatutory claims seek only monetary—not equitable—relief. Dkt.

164 at 12-15. This Court has already concluded that Plaintiffs properly asserted Separation of

Powers and *ultra vires* claims seeking equitable relief from federal officials acting beyond their

statutory or constitutional authority, found that the Court has jurisdiction to review those claims,

and granted preliminary injunctive relief on the nonstatutory review claims based on Supreme

Court and Fourth Circuit precedent and the record before it. Dkt. 157 at 10-11, 20. As this Court

has already rejected Defendants' Tucker Act arguments, it should do so again.

A divided Fourth Circuit panel has ruled, for now, that Defendants are likely to succeed

on their Tucker Act arguments, but that preliminary ruling is incorrect—for the reasons set out in

this Court's thorough May 20, 2025 Order—and Plaintiffs have petitioned for rehearing en

banc.[7] (Ex. 1) In a strikingly similar situation, a panel of the D.C. Circuit recently granted a stay,

deeming similar claims likely subject to the Tucker Act, only to be reversed en banc.

*Widakuswara v. Lake,* No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) (en banc).

---

[7] The Fourth Circuit has made clear that "an unpublished, non-precedential decision" of that court "[does] not constitute binding authority," nor should it be read to "demarcate a change" in existing law. *Ham v. Breckon*, 994 F.3d 682, 692-93 (4th Cir. 2021) (alterations and quotations omitted).

Meanwhile, another recent decision partially granting a preliminary injunction against the Administration's "dismantling" of AmeriCorps has confirmed this Court's analysis: "The grant terms are simply not relevant to this case at all. '[I]t would be quite extraordinary to consider Plaintiffs' claims to sound in breach of contract when they do not at all depend on whether the terms of particular awards were breached—they instead challenge whether the agency action here was unlawful, irrespective of any breach.'" *Maryland v. Corp. for Nat'l and Cmty. Serv.*, No. CV DLB-25-1363, 2025 WL 1585051, at *23 (D. Md. June 5, 2025) (quoting *AIDS Vaccine Advoc. Coal. v. Dep't of State*, No. CV 25-00400, 2025 WL 752378, at *9 (D.D.C. Mar. 10, 2025), *stay denied*, 145 S. Ct. 753 (2025) (mem.)).

And while Defendants (Dkt. No. 164 at p. 14) try to conflate Plaintiffs' nonstatutory review claims for constitutional violations with the APA procedural claims in *Department of Education v. California*, 145 S.Ct. 966, 968 (2025), they ignore the key distinction that *California* addressed only the APA's waiver of sovereign immunity, not nonstatutory review of unconstitutional acts. Sovereign immunity "does not apply when a plaintiff files suit seeking equitable relief against federal officials . . . alleging that those officials . . . acted unconstitutionally." *Strickland v. United States,* 32 F.4th 311, 363 (4th Cir. 2022).

Finally, Defendants' cited cases (Dkt. No. 164 at pp. 14–15) do not change the fact that, as this Court held, Dkt. No. 146 at 7, Plaintiffs seek to "preserve their ongoing and prospective agreements with the Government" via declaratory and injunctive relief:

- In *Consol. Edison Co. of New York v. Dep't of Energy*, 247 F.3d 1378 (Fed. Cir. 2001), "[t]he sole question . . . is whether the APA waives sovereign immunity for an action in a district court on the merits of ConEd's claim." *Id.* at 1382. That question is not at issue here, where nonstatutory review challenges the unconstitutional acts of officials for which there is no sovereign immunity. Nor could the Court of Federal Claims provide an adequate remedy, as the court held it could in *ConEd, id.*, since it cannot hear Plaintiffs' non-money-mandating constitutional claims or order the forward-looking relief they seek. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)

16

(distinguishing *Bowen*'s "going forward" relief (District Court) from an injunction solely to enforce a contractual obligation to pay money past due (Court of Federal Claims)); *Nat'l Ctr. for Mfg. Sciences. v. United States*, 114 F.3d 196, 201 (Fed. Cir. 1997) (explaining that grant restrictions governing future disbursal of funds made money judgment inappropriate, and reversing district court's transfer order).

- *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116 (Fed. Cir. 2007), was filed under the APA, in part as an action for specific performance of a contract, with the goal "to recover . . . insurance proceeds." *Id.* at 1126. The decision turned on the APA's limited waiver of sovereign immunity, which is not at issue in this motion to dismiss. And it involved only a past payment, not the ongoing, forward-looking relief sought here, which the Court of Federal Claims cannot provide.

- *United States Conf. of Cath. Bishops v. U.S. Dep't of State*, No. 1:25-CV-00465 (TNM), 2025 WL 763738 (D.D.C. Mar. 11, 2025), understood the claim as "an award of money due," *id.* at *5, unlike here, and it was brought under the APA; the decision and held that the APA's waiver of sovereign immunity did not apply. Again, that is irrelevant to the nonstatutory review claims at issue here, for which there is no sovereign immunity.

- *South Carolina v. United States*, 221 F. Supp. 3d 684 (D.S.C. 2016), dealt with a "money-mandating" statutory claim for payment or fines or penalties. *Id.* at 696. The constitutional provisions at issue here are not money-mandating and thus not within the jurisdiction of the Court of Federal Claims. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995).

Because Plaintiffs' nonstatutory review claims are not based on individual grant agreements (which Defendants admit were not even considered in the challenged actions), but rather on constitutional provisions over which the Court of Federal Claims lacks jurisdiction because they are not money-mandating, and because Plaintiffs seek forward-looking equitable relief that the Court of Federal Claims cannot provide, this Court should deny Defendants' attempt to dismiss these claims.

## IV.  Plaintiffs Have Standing to Bring their First Amendment Claims

Plaintiffs have alleged sufficient harm—an injury in fact that is concrete, particularized, and imminent, as required by *Lujan*, 497 U.S. at 879-82, to establish standing for their First Amendment claims. Where, as here, Defendants challenge standing pursuant to Rule 12(b)(1) on the ground that the complaint fails to allege sufficient facts to confer subject matter jurisdiction,

17

"all the facts alleged in the complaint are assumed to be true and [Plaintiffs], in effect, [are] afforded the same procedural protection as [they] would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see* also *Kerns*, 585 F.3d at 192. The Court must construe all reasonable inferences in Plaintiffs' favor, and dismissal is warranted "*only* if it appears beyond doubt that the plaintiff can prove no sets of facts to support [its] allegations." *Richmond, Fredericksburg & Potomac R.R Co.,* 4 F.3d at 257 (quoting *Revene v. Charles County Comm'rs*, 882 F. 2d 870, 872 (4ᵗʰ Cir.1989) (emphasis added). Thus, at this stage, Plaintiffs need only plausibly allege sufficient facts to demonstrate Article III standing and are not required to prove their case on the merits.

Contrary to Defendants' assertions, Plaintiffs' injury is not limited to their inability to access grant funding. Plaintiffs have alleged that the Program Freezing Actions were motivated by unconstitutional viewpoint discrimination that targeted Plaintiffs' speech disfavored by the current Administration, including references to environmental justice, climate change and equity. For example, Plaintiffs alleged that EPA was "using a flowchart to identify which grants to freeze or cancel based on the presence of certain arbitrary keywords representing viewpoints disfavored by the Administration in grant applications or other grant materials." Dkt. No. 23 at ¶ ¶ 338. Plaintiffs further alleged that these actions "penalize [Plaintiffs] based on [the] presence of certain words, concepts, and viewpoints in grant application or other grant materials" "that are central to [Plaintiffs'] missions. *Id*. This is textbook viewpoint discrimination prohibited by the First Amendment. *See Legal Servs. Corp. v. Velasquez*, 531 U.S. 533, 541-42 (2001); *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013).

Moreover, in their supplemental declarations, Plaintiffs explain how Defendants attempted to coerce them into avoiding certain speech both in their grant agreements and in

external communications related to their core mission in order to maintain grant funding and avoid further targeting for terminations. *See* Dkt. No. 149-7 at ¶¶ 2-10 (Sustainability Institute instructed to "sanitize" work plan to avoid certain words and ideas that the Administration disfavors); Dkt. No. 149-10 at ¶¶ 2-9 (CleanAIRE told to remove terms from project narrative like "environmental justice," "climate change," and "Black communities"). This is not a "subjective or speculative" fear: Plaintiffs were in fact chilled and considered altering their speech in response to Defendants' actions. The resulting chilled speech, programmatic disruption and lost funding constitute concrete and particularized Article III standing injuries directly traceable to Defendants' actions. Because these harms would be redressed by the injunctive and declaratory relief sought, Dkt. No. 23, Prayer for Relief A-L, Plaintiffs meet all three elements of standing for their First Amendment claims. *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014).

## CONCLUSION

For the reasons given above, Defendants' motion to dismiss should be denied.

Respectfully submitted, this 10th day of June, 2025,

/s/ Carl T. Brzorad
Carl T. Brzorad (S. C. Bar No. 105413)
SOUTHERN ENVIRONMENTAL LAW CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
Facsimile: (843) 414-7033
cbrzorad@selc.org

/s/ Kimberley Hunter
Kimberley Hunter (N. C. Bar No. 41333)
Irena Como (N. C. Bar No. 51812)
Nicholas S. Torrey (N. C. Bar No. 43382)
Benjamin J. Grillot (DC Bar No. 982114)
(Pro Hac Vice granted)
SOUTHERN ENVIRONMENTAL LAW CENTER
136 East Rosemary Street, Suite 500

Chapel Hill, NC 27514
Telephone: (919) 967-1450
Facsimile: (919) 929-9421
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org
bgrillot@selc.org

*Counsel for Plaintiffs The Sustainability Institute, Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAIRE NC, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Marbleseed, Organic Association of Kentucky, Pennsylvania Association of Sustainable*

*Agriculture, and Rural Advancement*
*Foundation International - USA*

/s/ Graham Provost
Graham Provost (DC Bar No. 1780222)
(Pro Hac Vice granted)
Elaine Poon (VA Bar No. 91963)
(Pro Hac Vice granted)
Jon Miller (MA Bar No. 663012)
(Pro Hac Vice granted)
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
graham@publicrightsproject.org

*Counsel for Plaintiffs Baltimore, Maryland,*
*Columbus, Ohio, Madison, Wisconsin,*
*Nashville, Tennessee, New Haven,*
*Connecticut*

/s/ Mark Ankcorn
Mark Ankcorn, Senior Chief Deputy City
Attorney
(CA Bar No. 166871)
(Pro Hac Vice pending)
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
(619) 533-5800
mankcorn@sandiego.gov

*Counsel for Plaintiff City of San Diego*

## CERTIFICATE OF SERVICE

I certify that on June 10, 2025, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system.

/s/ Carl T. Brzorad
Carl T. Brzorad (S. C. Bar No. 105413)
SOUTHERN ENVIRONMENTAL LAW CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
Facsimile: (843) 414-7039
cbrzorad@selc.org