SUSTAINABILITY INSTITUTE, ET AL v. TRUMP

2:25-CV-02152-RMG

# EXHIBIT 1

Plaintiffs'-Appellees' Petition for Rehearing En Banc of Order Granting Stay and Initial Hearing En Banc of the Appeal

No. 25-1575

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THE SUSTAINABILITY INSTITUTE, *et al.*,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States,
*et al.*,
*Defendants-Appellants.*

## APPELLEES' PETITION FOR REHEARING EN BANC OF ORDER
## GRANTING STAY AND INITIAL HEARING EN BANC OF THE APPEAL

Kimberley Hunter
Irena Como
Nicholas S. Torrey
Carl T. Brzorad
Spencer Gall
SOUTHERN ENVIRONMENTAL LAW
CENTER
*136 East Rosemary Street, Suite 500*
*Chapel Hill, NC 27514*
(919) 967-1450
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org
cbrzorad@selc.org
sgall@selc.org

Graham Provost
Elaine Poon
Jonathan Miller
PUBLIC RIGHTS PROJECT
*490 43rd Street, Unit #115*
*Oakland, CA 94609*
(510) 738-6788
graham@publicrightsproject.org
elaine@publicrightsproject.org
jon@publicrightsproject.org

Mark Ankcorn, Senior Chief Deputy
City Attorney
*1200 Third Avenue, Suite 1100*
*San Diego, California 92101-4100*
(619) 533-5800
mankcorn@sandiego.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... iii

INTRODUCTION AND RULE 40 STATEMENT ....................................................1

BACKGROUND .........................................................................................3

REASONS FOR GRANTING EN BANC REVIEW ..............................................8

I.    The Majority's Approach Conflicts with Established Precedent from the
      Supreme Court and this Court and Raises a "Serious Constitutional
      Question" .......................................................................................8

II.   This Matter Is One of Extraordinary Importance, Is Certain to Reoccur,
      and Requires Swift Resolution by this Court En Banc ................................15

CONCLUSION .......................................................................................17

# TABLE OF AUTHORITIES

## Cases

*American Federation of State, County & Municipal Employees*, *AFL-CIO v. Social Security Administration*, No. 25-1411, 2025 WL 1249608 (4th Cir. Apr. 30, 2025) ..................................................................................15

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015) ................ 12, 13

*Bartlett v. Bowen*, 816 F.2d 695 (D.C. Cir. 1987), *reinstated and rehearing denied*, 824 F.2d 1240 (D.C. Cir. 1987) .............................................................12

*Board of Governors of Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32 (1991) ..........................................................................................13

*Child Trends, Inc. v. Department of Education*, 8:25-cv-01154 (D. Md.)..............16

*Child Trends, Inc. v. Kennedy*, No. 8:25-cv-01479 (D. Md.) ..................................16

*Collins v. Yellen*, 594 U.S. 220 (2021) ....................................................................3

*Dalton v. Specter*, 511 U.S. 462 (1994) ................................................................14

*Department of Education v. California*, 145 S. Ct. 966 (2025) ................ 7, 8, 9, 10

*Green & Healthy Homes Initiative v. Environmental Protection Agency*, 1:25-cv-01096 (D. Md.) ..................................................................................16

*LeBlanc v. United States*, 50 F.3d 1025 (Fed. Cir. 1995)................................ *passim*

*Maryland v. Corporation for National and Community Service*, No. CV DLB-25-1363, 2025 WL 1585051 (D. Md. June 5, 2025)............................16

*Mayor & City Council of Baltimore v. Azar*, 799 F. App'x 193 (4th Cir. 2020)...............................................................................................2

*Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022) ................................ *passim*

*Webster v. Doe*, 486 U.S. 592 (1988)............................................................ *passim*

*Widakuswara v. Lake,* No. 25-5144(L), 2025 WL 1288817 (D.C. Cir. May 3, 2025)......................................................................... 13, 14

*Widakuswara v. Lake,* No. 25-5144(L), 2025 WL 1521355 (D.C. Cir. May 28, 2025) (en banc) ..............................................................2, 14

**Statutes**

Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (Nov. 15, 2021).....................................................3

Inflation Reduction Act of 2022, Pub. L. No. 117-169, 136 Stat. 1818 (Aug. 16, 2022).......................................................................3, 5

**Other Authorities**

Ending Radical and Wasteful Government DEI Programs and Preferencing, 90 Fed. Reg. 8339 (Jan. 29, 2025).............................................4

Fed. R. App. P. 40 ................................................................ 1, 2, 8, 9

Jonathan R. Siegel, *Suing the President: Nonstatutory Review Revisited*, 97 Colum. L. Rev. 1612 (1997)..................................................9

Taylor Mills, *Trump Administration Ordered to Restore Cities' Green Grants*, Bloomberg Law (May 19, 2025) ......................................17

Unleashing American Energy, 90 Fed. Reg. 8353 (Jan. 20, 2025)...........................4

William Baude et al., *Hart and Wechsler's The Federal Courts and the Federal System* (8th ed. 2025)......................................................1, 12

**Constitutional Provisions**

U.S. Const., art. I, § 7, cl. 2.......................................................................2

## INTRODUCTION AND RULE 40 STATEMENT

Last week, a divided panel of this Court issued an order that would deprive Plaintiffs—in this case and others shortly to follow—of any judicial forum for constitutional claims seeking equitable relief against federal officials in cases involving federal grant programs. To the knowledge of undersigned counsel, the Supreme Court has *never* read a statute to preclude all judicial review of a constitutional claim and has often "strained to construe statutes" to "avoid squarely facing" the "serious constitutional question" that such a statute would present. William Baude et al., *Hart and Wechsler's The Federal Courts and the Federal System* 462 (8th ed. 2025). Yet, in one sentence, the majority went where the Supreme Court has never gone, overreading the Tucker Act in a way that would preclude judicial review of constitutional claims relating to federal grant programs.

This case meets every standard for rehearing by the full Court. The majority ignored this Court's decision in *Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022), and contradicted settled Supreme Court precedent including *Webster v. Doe*, 486 U.S. 592 (1988). *See* Fed. R. App. P. 40(b)(2)(A)–(B). Because Plaintiffs have no other judicial forum for their constitutional claims, the majority's conclusion also raises a "serious constitutional question" about the Tucker Act itself. *Webster*, 486 U.S. at 603; *see also LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (no jurisdiction under Tucker Act for separation-of-powers or First

1

Amendment claims); Fed. R. App. P. 40(b)(2)(D). Finally, the order conflicts with a recent ruling from the D.C. Circuit in *Widakuswara v. Lake*, No. 25-5144(L), 2025 WL 1521355 (D.C. Cir. May 28, 2025) (en banc), finding likely district court jurisdiction over similar claims in similar circumstances. *See* Fed. R. App. P. 40(b)(2)(C). In fact, the panel order in *Widakuswara* relied on by the majority had been overruled in relevant part days earlier by the full court.

The majority's approach also has enormous real-world implications for reviewing "the legality of nationwide executive or agency action." *Mayor & City Council of Baltimore v. Azar*, 799 F. App'x 193, 195 (4th Cir. 2020) (Thacker, J.) (concurring in grant of initial hearing en banc). Consider what happened here: Plaintiffs challenged the wholesale freezing and termination of federal grant programs, and Defendants confirmed they took these actions based on disagreements with the policy choices of Congress embodied in those programs. *See infra* pp. 5–6, 14–15. There is no serious dispute that Defendants have violated the separation of powers and the Presentment Clause, U.S. Const., Art. I, § 7, cl. 2. Once the facts came to light in district court, Defendants essentially abandoned any substantive defense. *See infra* p. 6. Instead, they seek, in this case and in similar cases throughout the country, to evade judicial review of their unconstitutional actions via the Tucker Act. But because Plaintiffs' constitutional claims cannot be

heard under the Tucker Act, *LeBlanc*, 50 F.3d at 1028, the majority's approach would allow Defendants to escape any restraint on their lawlessness.

It is essential that the full Court address this issue promptly. Several cases in this Circuit involving the same or similar questions are currently pending, and the government has already submitted the panel order as supplemental authority in at least two of them. (Exs. 1 & 2).

"[T]he separation of powers is designed to preserve the liberty of all the people. So whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins v. Yellen*, 594 U.S. 220, 245 (2021) (citations omitted). To ensure that Plaintiffs and others have a judicial forum to assert their constitutional rights, the panel order cannot be left to stand a moment longer.

## BACKGROUND

This case challenges Defendants' unconstitutional actions to eliminate federal grant programs that Congress mandated. In recent years, Congress enacted the bipartisan Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (Nov. 15, 2021), and the Inflation Reduction Act, Pub. L. No. 117-169, 136 Stat. 1818 (Aug. 16, 2022). Among other things, these statutes established and funded grant programs to invest in transportation, fight greenhouse gas pollution,

and promote environmental justice. Congress counted on grantees to do the work and gave detailed commands to the agencies tasked with awarding the grants.

The day he took office, President Trump issued a pair of executive orders that, among other things, targeted the programs Congress established. In *Unleashing American Energy*, the President purported to "[t]erminat[e] the Green New Deal" by instructing that "[a]ll agencies shall immediately pause the disbursement of funds appropriated through the Inflation Reduction Act . . . or the Infrastructure Investment and Jobs Act." Exec. Order 14154, 90 Fed. Reg. 8353, 8357 (Jan. 20, 2025). In *Ending Radical and Wasteful Government DEI Programs and Preferencing*, the President directed each agency to "terminate" within sixty days all "'equity-related' grants or contracts." Exec. Order 14151, 90 Fed. Reg. 8339, 8339 (Jan. 20, 2025). These orders prompted federal officials to begin deleting entire grant programs *en masse*.

Plaintiffs are nonprofit organizations and local governments who have been ensnared in Defendants' across-the-board freeze and subsequent termination of these programs. Plaintiffs filed this lawsuit in mid-March and sought a preliminary injunction soon after. Plaintiffs assert two categories of claims that are relevant here. First, Plaintiffs assert claims for non-statutory review, alleging Defendants' actions to freeze and terminate their grants violated the separation of powers, the Presentment Clause, and the statutes creating and funding the grant programs in

4

question, principally the Infrastructure Investment and Jobs Act and the Inflation Reduction Act. *See* D. Ct. Dkt. 23 ¶¶ 288–307, 340–45.[1] Second, Plaintiffs assert claims under the Administrative Procedure Act, alleging Defendants' actions were arbitrary, capricious, and contrary to law, including because they are unconstitutional. *See id.* ¶¶ 308–28.

Targeted discovery revealed that Defendants eliminated entire grant programs based on policy disagreements with Congress's choices. For example, Environmental Protection Agency Assistant Deputy Administrator Travis Voyles averred in a sworn declaration that, in a single day, he "decided that certain grant *programs* . . . should be terminated for policy reasons." D. Ct. Dkt. 147-4 at 2, ¶ 3 (emphasis added). Many of the grants in this case are from programs that EPA "slated to be terminated" for policy reasons, D. Ct. Dkt. 147-4, Ex. G at 2, ¶ 6, including the Environmental and Climate Justice Block Grant Program that Congress specifically established and funded in Section 60201 of the Inflation Reduction Act to "benefit disadvantaged communities," 123 Stat. at 2078. Discovery also confirmed Defendants did not review any details about individual grants, what they were intended to accomplish, or how they were being managed.

---

[1] Plaintiffs also assert a First Amendment claim, but the district court did not enter relief on that claim and it is not part of this appeal.

*See* Dkt. 34 at Suppl. App. 52 ("document dump" contained thousands of irrelevant records and "[not] one document on [these] grantees").

When these facts came to light, Defendants abandoned any pretense of a substantive defense. Subject to jurisdictional objections, Defendants informed the district court that they "[did] not contest judgment on the merits of [the] APA claims"—which include allegations that they violated the separation of powers— and made scant attempt to defend their unconstitutional behavior more generally. D. Ct. Dkt. 153 at 1.[2] A few days later, the district court issued an order entering partial judgment and a permanent injunction on the uncontested APA claims, and a preliminary injunction on the claims for non-statutory review. D. Ct. Dkt. 157. Although Defendants' conduct is broadly unlawful, the injunctions were narrowly tailored to provide relief to Plaintiffs only. *Id.* at 8, 24.

Defendants immediately appealed and sought a stay. *See* Dkt. 6. Once again, they made no attempt to defend their unlawful conduct on the merits. They turned exclusively to jurisdictional arguments, presenting a sweeping theory that under the Tucker Act, only the Court of Federal Claims can hear cases that in some way relate to grant funding. *Id.*

Last week, a divided panel of this Court sided with the government and stayed the injunctions. *See* Dkt. 38 ("Order"). The panel majority focused primarily

_____

[2] Their concession excluded six grants that are not part of this appeal.

on what it believed to be similarities between this case and *Department of Education v. California*, 145 S. Ct. 966 (2025), and took *California* to mean the Tucker Act likely precludes district court jurisdiction over Plaintiffs' APA claims. Order at 3–5. The comparison is inapt, but the focus on *California* injected a more fundamental problem. The majority almost entirely ignored Plaintiffs' non-statutory claims, which do not depend on the APA at all. These claims were cast aside in a single sentence: "[I]t appears unlikely that Plaintiffs' ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended Plaintiffs' grants, would provide a detour around the Tucker Act." *Id.* at 4–5. Among other problems discussed below, the majority supported this conclusion with citations to two inapposite cases and a recent order from the D.C. Circuit in a "similar case," *id.* at 5, which the en banc D.C. Circuit had overruled just days earlier.

In dissent, Judge Heytens recognized that this case in not "on all fours" with *California*. Unlike in *California*, he explained, Plaintiffs here argue "that the defendants '*have not* undertaken an individualized review of the specific grants' but 'categorically terminate[d] all "equity-related" grants and contracts' without individualized regard to the terms of any grant or the performance of any grantee." Order at 6 (Heytens, J., dissenting). Especially relevant to this petition, Judge Heytens also noted that *California* is about APA claims and that Plaintiffs here

assert non-statutory claims, which do not depend on the APA. *Id.* Crucially, there is no sovereign immunity to waive for these non-statutory review claims.

## REASONS FOR GRANTING EN BANC REVIEW

The Court should grant rehearing en banc of the panel order, vacate it, and deny a stay pending appeal. The Court should also hear this appeal initially en banc. On an issue of enormous importance, in this case and others pending in this Circuit, the majority's reasoning contravened precedent of the Supreme Court and this Court, split from other circuits on this precise issue, and—raising a question of exceptional importance—suggested that the Tucker Act deprives Plaintiffs and other federal grantees of *any* forum to challenge the constitutionality of government action. *See* Fed. R. App. P. 40(b)(2)(A)–(D). For the same reasons, the full Court should hear this appeal as an initial matter. *See* Fed. R. App. P. 40(g).

## I.    The Majority's Approach Conflicts with Established Precedent from the Supreme Court and this Court and Raises a "Serious Constitutional Question"

In a single sentence and without acknowledgement, the majority created conflicts with this Court's decision in *Strickland* and the Supreme Court's decision in *Webster* on an issue of extraordinary importance.

Plaintiffs seek non-statutory review of constitutional violations by federal officials grounded in the separation of powers and the Presentment Clause. Defendants terminated grant programs that Congress created and funded because

those programs conflict with President Trump's policy preferences. The separation of powers—especially Congress's exclusive power of the purse—is the heart of this case. These claims undisputedly cannot be heard in the Court of Federal Claims under the Tucker Act. *LeBlanc*, 50 F.3d at 1028.

The majority thought it likely that the Tucker Act impliedly precludes these claims from being heard in district court, Order at 4–5, but the majority was wrong in at least three important ways. First, unlike the APA claims in *California*, these non-statutory claims cannot be affected by the Tucker Act. Second, the majority applied the Tucker Act in a way that, at best, raises a "serious constitutional question," *Webster*, 486 U.S. at 603, and likely would make the Tucker Act itself unconstitutional by precluding judicial review of these constitutional claims. Third, the majority relied on inapposite decisions, including one that the en banc D.C. Circuit had vacated just days earlier.

1.    Claims for non-statutory review are deeply rooted in the history of the Judiciary and do not depend on the APA. "Indeed, the most famous case of all, *Marbury v. Madison*, was a nonstatutory review case." Jonathan R. Siegel, *Suing the President: Nonstatutory Review Revisited*, 97 Colum. L. Rev. 1612, 1625 (1997) (footnote omitted). Just three years ago, this Court in *Strickland* reaffirmed two critical principles. First, non-statutory review is available for claims to "obtain injunctive relief against an individual officer or agent of the United States in his

official capacity for acts beyond his statutory or constitutional authority."
*Strickland*, 32 F.4th at 363. Second, "sovereign immunity does not apply when a
plaintiff files suit seeking equitable relief against federal officials in their official
capacities and alleging that those officials exceeded the scope of their authority
and/or acted unconstitutionally." *Id.* This exception to sovereign immunity,
sometimes called the *Larson–Dugan* exception, exists independent from and "[i]n
addition to [the] statutory waivers of sovereign immunity" contained in the APA
and other laws. *Id.*

Without acknowledging *Strickland* or the established Supreme Court
precedent on this point, the majority wrote off Plaintiffs' non-statutory
constitutional claims in a single sentence that conflated them with APA claims.
Order at 4–5. But this misses a key distinction: there is no sovereign immunity for
Plaintiffs' non-statutory review claims. In *California*, the only claim was an
arbitrary-and-capricious claim under the APA, and the Supreme Court's order was
based on the interplay between the Tucker Act and "the APA's limited waiver of
sovereign immunity." *California*, 145 S. Ct. at 968. As explained above, sovereign
immunity does not apply to non-statutory claims to enjoin constitutional violations,
so there is no waiver required. *Strickland*, 32 F.4th at 363. By treating these
distinct claims as equivalent, the majority's reasoning conflicts with *Strickland*.

2.      Worse yet, the majority's reasoning conflicts with *Webster* and applies the Tucker Act in a way that would likely render it unconstitutional. In *Webster*, the Supreme Court held that courts must not construe a federal statute to preclude any judicial review of constitutional claims absent a "clear" statement from Congress. *Webster*, 486 U.S. at 603. This "heightened showing" is required "in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* (quotations omitted).

Without even mentioning *Webster*—despite Plaintiffs raising it prominently in their brief—the majority disregarded *Webster*'s core holding. It is undisputed that if the Tucker Act deprives the district court of jurisdiction over Plaintiffs' constitutional claims, Plaintiffs will have no judicial forum in which to bring them. The Tucker Act confers jurisdiction over constitutional claims in the Court of Federal Claims only when they are based on constitutional provisions that create "a substantive right enforceable against the federal government for money damages." *LeBlanc*, 50 F.3d at 1028. The Federal Circuit has held that separation of powers claims do not meet this test and therefore cannot be brought in the Court of Federal Claims. *Id.* Under *Webster*, it would take a clear statement from Congress for the Tucker Act to preclude these claims. But the majority relied solely upon what it saw as an implication. *See* Order at 5.

11

Far from heeding the Tucker Act, the majority's reasoning imperils it. The Supreme Court has never upheld a statute precluding all judicial review of a constitutional claim, and has often gone out of its way to avoid the "serious constitutional question" that such a statute would present. William Baude et al., *Hart and Wechsler's The Federal Courts and the Federal System* 462 (8th ed. 2025) (collecting cases including *Webster*). Such a statute would very likely violate at least the Due Process Clause of the Fifth Amendment. *See, e.g.*, *Bartlett v. Bowen*, 816 F.2d 695, 703 (D.C. Cir. 1987), *reinstated and reh'g denied*, 824 F.2d 1240 (D.C. Cir. 1987). In this context, the majority's approach to the Tucker Act is extraordinary: it would render the Tucker Act the first federal statute to deprive a plaintiff of any judicial forum in which to challenge the constitutionality of government actions. It is imperative that the full Court step in.

3.      The majority's approach finds no support in the decisions it relied upon. Two are inapposite and the third was recently overruled en banc and now supports Plaintiffs.

First, *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), concerned whether a federal district court had equitable jurisdiction to enjoin state officials from violating a *statute* in which Congress expressly provided a different "method of enforcing [the] substantive rule," which the Supreme Court reasoned "implicitly preclude[d] private enforcement." *Id.* at 327–29.  Here, Plaintiffs seek

12

non-statutory review of federal officials' *constitutional* violations that cannot be

remedied or enforced in the Court of Federal Claims under the Tucker Act. And

where, as here, constitutional claims hang in the balance, even the implicit

preclusion in *Armstong* would not satisfy the clear statement rule of *Webster*. If

anything, *Armstrong* confirms that "[t]he ability to sue to enjoin unconstitutional

actions by . . . federal officers . . . reflects a long history of judicial review of

illegal executive action, tracing back to England." *Id.* at 327.

Second, *Board of Governors of Fed. Reserve System v. MCorp Financial,
Inc.*, 502 U.S. 32 (1991), also concerned *statutory* claims, not constitutional ones.
*Id.* at 43. In addition, *MCorp* involved a law that provided for judicial review of
the precluded statutory claim in a specialized court (the Foreign Intelligence
Surveillance Court), and "clearly and directly" stripped district courts of
jurisdiction. *Id.* at 44. In this case, the Tucker Act does not provide for judicial
review of these claims in the Court of Federal Claims and does not contain any
clear jurisdiction-stripping language.

Finally, *Widakuswara v. Lake*, No. 25-5144(L), 2025 WL 1288817 (D.C.
Cir. May 3, 2025), underscores the compelling need for reconsideration en banc
here. The majority characterizes *Widakuswara* as a "similar case" in which the
government obtained a stay because the Tucker Act likely divested the district
court of jurisdiction to hear constitutional claims. Order at 5. But the majority

overlooked that the en banc D.C. Circuit had already overruled the stay panel's Tucker Act holding and vacated the panel order on which the majority in this case relied. *Widakuswara*, 2025 WL 1521355, at *1. The en banc court adopted "substantially . . . the reasons explained by Judge Pillard" in dissent from the initial stay order, *id.*, in which she explained that the district court had jurisdiction over the constitutional claims because "the Court of Claims could not adjudicate plaintiffs' constitutional claims," and because "[c]onstitutional claims for injunctive or declaratory relief face no sovereign immunity bar," *Widakuswara*, 2025 WL 1288817, at *12 (Pillard, J., dissenting). As Judge Pillard recognized, interpreting the Tucker Act to deny the district court jurisdiction over these claims would have "serious implications for our constitutional structure." *Id.* at *12. So too here.

Defendants have tried to recast these constitutional claims as statutory ones, relying on *Dalton v. Specter*, 511 U.S. 462 (1994), but they are not. Unlike *Dalton*, where "[t]he President [was] said to have violated the terms of [a statute] by accepting procedurally flawed recommendations," *id.* at 474, Plaintiffs' non-statutory constitutional claims allege—and the record establishes—that Executive Branch officials targeted for termination the very policies Congress chose to put in place. *See, e.g.*, D. Ct. Dkt. 23-8 (EPA memo freezing all funding under Inflation Reduction Act and Infrastructure Investment and Jobs Act); D. Ct. Dkt. 23-10 at 2-

4 (Department of Transportation memo instructing staff to search for programs with "statutory language [that] includes equity requirements" for eventual cancellation); D. Ct. Dkt. 23-10 at 2; 23-12 at 1; 23-14 at 2–3; 147-1 at ¶¶ 17–18 (agencies using keyword searches to target grant programs that address issues such as "greenhouse gas," "climate change," and "equality," to which Congress had expressly appropriated funding); D. Ct. Dkt. 147-4 at 2, ¶ 3 (EPA terminating entire legislatively mandated programs for "policy reasons"). This is not a matter of exceeding a statutory procedure. This is a wholesale attack on Congress's power of the purse.

## II.    This Matter Is One of Extraordinary Importance, Is Certain to Reoccur, and Requires Swift Resolution by this Court En Banc

This case "presents issues of such gravity or institutional consequence that it merits the attention of the full Court." *Am. Fed'n of State, Cnty. & Mun. Emps.*, *AFL-CIO v. Soc. Sec. Admin.*, No. 25-1411, 2025 WL 1249608, at *5 (4th Cir. Apr. 30, 2025) (Wynn, J., concurring in grant of initial hearing en banc of motion to stay).  The majority's approach would enable the Executive Branch to evade judicial review and unconstitutional actions to go unchecked.

Moreover, the jurisdictional questions presented in this case affect other matters pending in this Circuit. Defendants and other members of the Executive Branch have unlawfully frozen and terminated myriad congressionally mandated programs, and their actions have necessitated significant litigation currently

pending in this Circuit. The panel order is already being wielded in some of these cases. For example, EPA filed a notice of supplemental authority in *Green & Healthy Homes Initiative v. EPA*, No. 1:25-cv-01096 (D. Md.). (Ex. 1).  A similar notice was filed in *Child Trends Inc. v. Department of Education*, No. 8:25-cv-01154 (D. Md.), where the plaintiffs assert constitutional challenges to the termination of their grants.  (Ex. 2).

Other cases involve similar considerations. One pending matter challenges the constitutionality of a potential grant termination. *See Child Trends, Inc. v. Kennedy*, No. 8:25-cv-01479 (D. Md.). And just last week, a district court rejected similar jurisdictional arguments from the government in a case involving APA claims and non-statutory claims, noting that "it would be quite extraordinary to consider Plaintiffs' claims to sound in breach of contract when they do not at all depend on whether the terms of particular awards were breached—they instead challenge whether the agency action here was unlawful, irrespective of any breach.'" *Maryland v. Corporation for National and Community Service*, No. CV DLB-25-1363, 2025 WL 1585051, at *23 (D. Md. June 5, 2025) (quotations omitted).

Finally, the significance of this case on its own warrants review by the full Court. Plaintiffs have detailed the ways in which federal agencies are blocking the implementation of legislation across the country. The on-again-off-again funding

16

for projects that Plaintiffs have committed to has plunged them into chaos and left them unable to fulfill their grant obligations, *e.g.*, D. Ct. Dkt. 24-2 at ¶¶ 41–43, employ staff, *e.g.*, D. Ct. Dkt. 24-14 at ¶ 15; 24-3 at ¶¶ 17–18; 24-7 at ¶ 12, and uphold their reputations in the communities that rely on them, *e.g.*, D. Ct. Dkt. 64-2; *see also* 24-1 at 33–34. Meanwhile, Defendants defiantly proclaim they cannot be restrained by any court. Beyond their litigation position here, the White House insists that "[c]ourts do not have jurisdiction to require the Administration to issue unnecessary funds." Taylor Mills, *Trump Administration Ordered to Restore Cities' Green Grants*, Bloomberg Law (May 19, 2025), https://perma.cc/7H3X-TC3X. (Ex. 3.)  It is critical for the full Court to clarify that Defendants' unconstitutional actions are subject to judicial review.

## CONCLUSION

For the foregoing reasons, the Court should grant rehearing en banc of the panel order, vacate it, and deny a stay pending appeal. The Court should also hear this appeal initially en banc.

Respectfully submitted,

Kimberley Hunter
Irena Como
Nicholas S. Torrey
Carl T. Brzorad
Spencer Gall
SOUTHERN ENVIRONMENTAL LAW CENTER
136 East Rosemary Street, Suite 500
Chapel Hill, NC 27514

Telephone: (919) 967-1450
Facsimile: (919) 929-9421
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org
cbrzorad@selc.org
sgall@selc.org

*Counsel for Plaintiff-Appellees The Sustainability Institute,*
*Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAIRE NC, Earth Island Institute, Leadership Counsel for Justice and Accountability, Marbleseed, Organic Association of Kentucky, Pennsylvania Association of Sustainable Agriculture, and Rural Advancement Foundation International - USA*

Graham Provost
Elaine Poon
Jonathan Miller
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
graham@publicrightsproject.org
elaine@publicrightsproject.org
jon@publicrightsproject.org

*Counsel for Plaintiff-Appellees Baltimore, Maryland; Columbus, Ohio; Madison, Wisconsin; Nashville, Tennessee; and New Haven, Connecticut*

Mark Ankcorn, Senior Chief Deputy City Attorney
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
(619) 533-5800
mankcorn@sandiego.gov

18

*Counsel for Plaintiff-Appellee City of San Diego*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing petition complies with the word limit of Federal Rule of Appellate Procedure 40(d)(3)(A) because the petition contains 3,896 words. The petition complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 4(d)(2) and 32(a)(5) and (6) because it has been prepared using Microsoft Word for Microsoft 365 in proportionally spaced 14-pt Times New Roman typeface.

*/s/ Kimberley Hunter*
Kimberley Hunter

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Kimberley Hunter*
Kimberley Hunter

# Exhibit 1

USCA4 Appeal: 25-1575    Doc: 42-1    Filed: 06/10/2025    Pg: 2 of 10    Total Pages:(2 of 17)
2:25-cv-02152-RMG    Date Filed 06/10/25    Entry Number 167-1    Page 28 of 43
Case 1:25-cv-01096-ABA    Document 52    Filed 06/05/25    Page 1 of 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GREEN & HEALTHY HOMES INITIATIVE, Inc., *et al.*, | * |
| | * |
| PLAINTIFFS, | * |
| | * |
| v. | *  No. 1:25-cv-01096-ABA |
| | * |
| ENVIRONMENTAL PROTECTION, AGENCY, *et al.*, | * |
| | * |
| DEFENDANTS. | * |

****** 

## NOTICE OF SUPPLEMENTAL AUTHORITY

On June 5, 2025, the Fourth Circuit granted the government's motion to stay the injunctions granted in *Sustainability Institute v. Trump*.  No. 25-1575 (4th Cir. June 5, 2025) (attached as ECF ___).  As this Court recalls, Plaintiffs in the instant case relied heavily on *Sustainability Institute* in their motion for summary judgment and at oral argument.  In the Fourth Circuit's order granting a stay, the court agreed that "the Government is likely to succeed in showing that the district court lacked subject matter jurisdiction over Plaintiffs' claims." *Id.* at 3 (internal quotations omitted).  The Fourth Circuit determined that the Tucker Act likely deprived the district court of jurisdiction and distinguished *Bowen v. Massachusetts*.  *Id.* at 3–4 (citing *Bowen v. Massachusetts*, 487 U.S. 879 (1988)).

1

Respectfully submitted,

Kelly O. Hayes
United States Attorney


By:  _____/s/_____
Molissa H. Farber (802255)
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
410-209-4862
Molissa.Farber@usdoj.gov

*Counsel for Defendants*

USCA4 Appeal: 25-1575    Doc: 42-1    Filed: 06/10/2025    Pg: 4 of 10    Total Pages:(4 of 17)
2:25-cv-02152-RMG    Date Filed 06/10/25    Entry Number 167-1    Page 30 of 43
Case 1:25-cv-01096-ABA    Document 52-1    Filed 06/05/25    Page 1 of 7

FILED: June 5, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

––––––––––––––

No. 25-1575
(2:25-cv-02152-RMG)

––––––––––––––

THE SUSTAINABILITY INSTITUTE; AGRARIAN TRUST; ALLIANCE FOR
AGRICULTURE; ALLIANCE FOR THE SHENANDOAH VALLEY; BRONX
RIVER ALLIANCE; CLEANAIRE NC; CONSERVATION INNOVATION
FUND; LEADERSHIP COUNSEL FOR JUSTICE AND ACCOUNTABILITY;
MARBLESEED; PENNSYLVANIA ASSOCIATION FOR SUSTAINABLE
AGRICULTURE; RURAL ADVANCEMENT FOUNDATION
INTERNATIONAL-USA; ORGANIC ASSOCIATION OF KENTUCKY;
EARTH ISLAND INSTITUTE,

and

BALTIMORE, MARYLAND; COLUMBUS, OHIO; MADISON, WISCONSIN;
NASHVILLE, TENNESSEE; NEW HAVEN, CONNECTICUT; SAN DIEGO,
CALIFORNIA,

Plaintiffs – Appellees,

v.

DONALD J. TRUMP, in his official capacity as President of the United States;
KEVIN HASSETT, in his official capacity as Assistant to the President for
Economic Policy and Director of the National Economic Council; UNITED
STATES OFFICE OF MANAGEMENT AND BUDGET; RUSSELL VOUGHT, in
his official capacity as Director of the United States Office of Management and
Budget; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE
ZELDIN, in his official capacity as Administrator of the United States
Environmental Protection Agency; UNITED STATES DEPARTMENT OF
AGRICULTURE; BROOKE ROLLINS, in her official capacity as Secretary of
Agriculture; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN
DUFFY, in his official capacity as the Secretary of the United States Department of
Transportation; UNITED STATES DEPARTMENT OF GOVERNMENTAL
EFFICIENCY SERVICE; AMY GLEASON, in her official capacity as Acting
Administrator of the United States DOGE Service; ELON MUSK, in his official

capacity as Senior Advisor of the United States DOGE Service; UNITED STATES
DEPARTMENT OF ENERGY; CHRIS WRIGHT, in his official capacity as the
Secretary of the United States Department of Energy,

Defendants – Appellants.

---

ORDER

---

Pending before the Court is the Government's Emergency Motion for Stay Pending

Appeal and Immediate Administrative Stay.  Plaintiffs are several nonprofit organizations

and municipalities who allege they were awarded, or are subrecipients on, 38 federal grants

administered by the Department of Energy, the Environmental Protection Agency, the

Department of Agriculture, and the Department of Transportation.  Plaintiffs sued the

President of the United States and various federal agencies and officials (collectively, the

Government) in the United States District Court for the District of South Carolina, alleging

that their grants were terminated or suspended in violation of the Administrative Procedure

Act (APA), certain appropriations statutes, and the Constitution.  Plaintiffs sought

preliminary and permanent injunctive relief.  The Government argued the district court

lacked jurisdiction to order such relief.

The district court held that it possessed jurisdiction over Plaintiffs' claims and

entered injunctive relief as to 32 of the grants—a permanent injunction on the APA claims

and a preliminary injunction on the separation of powers and Presentment Clause ultra

vires claims.  The injunctions order the Government "to restore Plaintiffs['] access to grant

funds immediately" and prohibit the Government from "freezing, terminating or otherwise

interfering with the funding of [those] Grants . . . without written authorization from the Court." *Sustainability Inst. v. Trump*, No. 2:25-cv-2152-RMG, 2025 WL 1486979, at *4, *10 (D.S.C. May 20, 2025).

The Government now asks us to stay the district court's injunctions pending appeal, raising purely jurisdictional concerns. Among other things, the Government contends that the Tucker Act, 28 U.S.C. § 1491, requires Plaintiffs to pursue their claims in the Court of Federal Claims and thereby precludes district court jurisdiction.

We agree the Government is "likely to succeed" in showing that the district court lacked subject matter jurisdiction over Plaintiffs' claims. *See Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal quotation marks omitted). This case is much like *Department of Education v. California*, 145 S. Ct. 966 (2025). The plaintiffs there challenged, under the APA, the cancellation of grants that were funded generally by an authorizing statute but awarded specifically to each grantee by an operative grant agreement. *See California v. Dep't of Educ.*, 132 F.4th 92, 95 (1st Cir. 2025) (citing 20 U.S.C. §§ 1022a, 6671, 6672(a), which authorize the Secretary of Education to award grants). They obtained an injunction which set aside the grant cancellations and prohibited the Government from "suspen[ding] or withholding . . . any funds approved and obligated for the grants." *California v. Dep't of Educ.*, No. 25-10548-MJJ, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025). The Supreme Court stayed the district court's injunction because the Government was "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *California*, 145 S. Ct. at 968. As the Supreme Court explained, "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual

3

obligation to pay money' along the lines of what the District Court ordered." *Id.* (quoting *Great-West Life & Annuity Ins. v. Knudson*, 534 U.S. 204, 212 (2002)). "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)).

The Plaintiffs here assert similar claims. They allege the Government violated the APA by suspending and canceling certain grants funded and authorized by omnibus appropriations statutes like the Inflation Reduction Act of 2022, Pub. L. 117-169, and the Infrastructure Investment and Jobs Act, Pub. L. 117-58. Like the plaintiffs in *California*, Plaintiffs here contend that their "dispute does not hinge on the terms of a contract between the parties." *California*, 2025 WL 760825, at *1; *see also California*, 132 F.4th at 97. Yet like the grants in *California*, the grants here were awarded by federal executive agencies to specific grantees from a generalized fund. While the appropriation statutes authorize the agencies to award grants, it is the operative grant agreements which entitle any particular Plaintiff to receive federal funds.

The district court relied on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), in exercising jurisdiction over Plaintiffs' claims. *See Sustainability Inst. v. Trump*, No. 2:25-cv-2152-RMG, 2025 WL 1486978, at *3–5 (D.S.C. Apr. 29, 2025). But the Supreme Court distinguished *Bowen* in *California*, highlighting the meaningful difference between the relief in that case and an order "to enforce a contractual obligation to pay money" along the lines of what the district court entered here. *California*, 145 S. Ct. at 968 (internal quotation marks omitted). And it appears unlikely that Plaintiffs' ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended

Plaintiffs' grants, would provide a detour around the Tucker Act. *See Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327–328 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to . . . implied statutory limitations," and "the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)); *see also Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43–44 (1991); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *5 (D.C. Cir. May 3, 2025) (staying injunction in a similar case raising APA claims and "mandamus, impoundment, Presentment Clause, Appropriations Clause, Spending Clause, Take Care Clause, Separation-of-Powers, and *ultra vires* claims").

As for the remaining stay factors, the Government has demonstrated irreparable harm because it is being forced to disburse funds from a finite appropriation and will not be able to recoup those funds once expended. *See California*, 145 S. Ct. at 969. While we do not doubt that a stay would work a hardship on Plaintiffs, the existence of burdens on each side points back to the preeminence of the likelihood-of-success inquiry, which in this case favors the Government. *See Nken*, 556 U.S. at 434 ("The first two factors of the traditional [stay] standard are the most critical.").

We therefore grant the Government's motion for a stay of the permanent injunction and the preliminary injunction pending this appeal. We deny the Government's motion for an administrative stay as moot. The Clerk will set an expedited briefing schedule.

Entered at the direction of Judge Rushing, with the concurrence of Judge Niemeyer. Judge Heytens filed a separate dissenting opinion.

TOBY HEYTENS, Circuit Judge, dissenting:

I would deny the motion for a stay pending appeal because I think the defendants have failed to carry their "burden of showing that the circumstances justify" one. *Nken v. Holder*, 556 U.S. 418, 434 (2009). At this stage, the defendants do not challenge the district court's conclusion that they acted unlawfully, choosing instead to go all-in on the argument that the court lacked jurisdiction. I think the jurisdictional questions here are novel and difficult, and that they could end up being resolved in favor of either party after full briefing and argument. At this point, however, I do not believe the defendants have made a sufficiently "strong showing" that they are "likely to succeed on the merits" to warrant the extraordinary equitable relief of a stay pending appeal. *Id.*

Nor do I think this case is on all fours with *Department of Education v. California*, 145 S. Ct. 966 (2025). True, there are obvious similarities between the two cases and much of what the Supreme Court said there seems applicable here. But there are differences too. In *California*, "the terms and conditions of each individual grant award" were "at issue." *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 96–97 (1st Cir. 2025). Here, in contrast, the plaintiffs argue that the defendants "*have not* undertaken an individualized review of the specific grants" but "categorically terminate[d] all 'equity-related' grants and contracts" without individualized regard to the terms of any grant or the performance of any grantee. Resp. Br. 8 (emphasis added) (first quote); Compl. ¶ 196 (second quote). In *California*, the plaintiffs' claims all "derived from the Administrative Procedure Act," 132 F.4th at 97, and the Supreme Court's order never mentions any other claims. Here, in contrast, the plaintiffs assert non-APA claims, and the district court made a preliminary

determination that those claims have merit. The defendants insist that the plaintiffs' non-APA claims improperly seek to circumvent "congressionally imposed limitations on [judicial] review" and thus fail for that reason. Reply Br. 9. But, once again, I do not think that the defendants have shown that the answer is sufficiently clear to warrant the disfavored remedy of a stay pending appeal.

# Exhibit 2

USCA4 Appeal: 25-1575    Doc: 42-2       Filed: 06/10/2025    Pg: 2 of 4       Total Pages:(12 of 17)
2:25-cv-02152-RMG    Date Filed 06/10/25    Entry Number 167-1    Page 38 of 43
Case 8:25-cv-01154-BAH    Document 38    Filed 06/05/25    Page 1 of 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHILD TRENDS, INCORPORATED, ET AL.,

     Plaintiffs,

v.

UNITED STATES DEPARTMENT OF EDUCATION, ET AL.,

     Defendants.

Case No.: 8:25-cv-01154-BAH

## <u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>

On June 5, 2025, the Fourth Circuit issued a memorandum opinion staying permanent and preliminary injunctions in a case based on the Administrative Procedures Act ("APA"), separation of powers and Presentment Clause ultra vires claims. Mem. Op., *The Sustainability Institute v. Trump*., No. 25-cv-2152-RMG (D. SC May 20, 2025) (attached as ECF 38-1). The injunctions ordered the Government to restore Plaintiffs' access to grant funds immediately and prohibited the Government from freezing, terminating or otherwise interfering with the funding of those Grants . . ." *Id.* In the opinion, the court noted that the government was "likely to succeed" in showing that the district court lacked subject matter jurisdiction over Plaintiffs' claims.

Critically important to the "termination claims" in this case, the Court made clear that "it appears unlikely that Plaintiffs' ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended Plaintiffs' grants, would provide a detour around the Tucker Act." *Id.* The court explained that "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others". *Id.* (citations omitted). Here, again, we have another example of the Fourth Circuit rejecting an invitation to exercise jurisdiction

over claims that are subject to "implied statutory limitations." *Id.* at 5 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)).

Also, on June 3, 2025, the United States District Court for the District of Columbia issued a decision denying a preliminary injunction in an APA case because the APA cannot reach a "larger programmatic challenge" alleging the "dismantling" of a program. *Mem. Op., Assoc. for Educ. Fin. v. Dept. of Educ.*, No. 25-cv-999-TNM (D. D.C. Jun. 3, 2025), Doc. 25, at 21 (attached as ECF 38-2). *See also id.* at 8 ("Plaintiffs pile aboard so many broad complaints that their claims sink underneath the sheer weight of the relief they seek."). The court's opinion analyzes why a wholesale challenge to agency decisions stemming from administrative priority changes is not cognizable under the APA. ECF 38-2 at 8–21, 24–26.

The court further determined that the Tucker Act "looms large here" and that "the Court would likely lack jurisdiction to hear any individual contract challenge . . . if it resembled a traditional contract claim." *Id.* at 23–24 This is of particular importance, as the DC plaintiffs were challenging the termination of contracts for regional educational laboratories as well.  The court also rejected a separation of powers claim as a "doppelgänger[] of the Academy's APA claim." *Id.* at 25.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

_____/s/_____
Tianna Bethune
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore. Maryland 21201
410-209-4922
Tianna.Bethune@usdoj.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that, on June 5, 2025, I caused a copy of the foregoing to be electronically served upon all parties receiving CM/ECF notices in this case.

_____
*/s/*
Tianna Bethune
Assistant United States Attorney

# Exhibit 3



Environment & Energy

# Trump Administration Ordered to Restore Cities' Green Grants (2)

May 19, 2025, 3:53 PM EDT; Updated: May 20, 2025, 9:42 AM EDT

- Agencies failed to justify withholding IRA-appropriate funds
- Trump administration notes intent to appeal over jurisdiction

The Trump administration must restore millions in green grants after a federal judge ruled Monday that agencies acted outside their constitutional authority in withholding congressionally appropriated funds.

Judge Richard M. Gergel of the US District Court for the District of South Carolina issued a permanent injunction from the bench during a hearing over whether to restore grant funds for climate projects, water quality, and more for 17 cities and nonprofit plaintiffs that brought the suit alleging violations of the Administrative Procedure Act and the US Constitution.

The ruling orders the restoration of 32 out of 38 grants at issue in the suit. In addition to the permanent injunction under the APA, the judge also issued a preliminary injunction under the Separation of Powers and Nonstatutory Review clauses of the Constitution.

Gergel denied the plaintiffs' preliminary injunction motion on grants under the US Department of Agriculture's Partnerships for Climate-Smart Commodities program, requesting additional briefing on the issues surrounding those funds.

"This is a huge victory for these organizations who can now get back to work improving their communities," Kym Meyer, the litigation director for the Southern Environmental Law Center, said in a statement. "While defendants have announced their intent to appeal this ruling SELC's team is energized and ready to continue this fight all the way to the Supreme Court until all the grants represented in our case are restored once and for all."

During the hearing, lawyers for the Trump administration agreed to final judgment on the APA but said they intend to appeal the judgment on the ground that the court lacked jurisdiction, Meyer told Bloomberg Law.

A White House representative said in a statement that President Donald Trump maintains the executive authority to pause and freeze grants.

"Courts do not have jurisdiction to require the Administration to issue unnecessary funds," said Taylor Rogers, an assistant press secretary.

Nashville, Baltimore, San Diego and other cities and nonprofit groups sued a host of federal agencies in March, alleging tens of millions of dollars of funds appropriated under former President Joe Biden's landmark climate and infrastructure laws—the Inflation Reduction Act and the Infrastructure Investment and Jobs Act—were illegally withheld.

The White House and Department of Justice didn't immediately respond to a request for comment.

The case is The Sustainability Inst. v. Trump, D.S.C., No. 2:25-cv-02152, injunction issued 5/19/25.

To contact the reporter on this story: Taylor Mills in Washington at tmills@bloombergindustry.com

To contact the editor responsible for this story: Laura D. Francis at lfrancis@bloombergindustry.com

© 2025 Bloomberg Industry Group, Inc.   All Rights Reserved