IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| The Sustainability Institute, *et al.*, ) | Civil Action Number: 2:25-cv-02152-RMG |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| Donald J. Trump, in his official capacity ) | |
| as President of the United States, *et al.* ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Defendants hereby reply, pursuant to Local Civil Rule 7.07, to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss.[1]

**I.     Partnerships for Climate-Smart Commodities**

**A.     Plaintiffs Recognize That They Have Not Exhausted Administrative Remedies.**

In their Response, Plaintiffs admit that they have received termination notices related to Partnerships for Climate-Smart Commodities ("PCSC") grants, that they are now eligible to file administrative appeals, and that they have, in fact, filed pending appeals. ECF No. 167 at 5–8. That

---

[1] Although Defendants previously indicated that that 7 U.S.C. § 6912(e) was nonjurisdictional, circuit courts have reached different conclusions on this question. *See Les Anciens D Une Eglise v. USDA*, No. 2:15-CV-26-D, 2018 WL 1279288, at *3 (E.D.N.C. Mar. 12, 2018) (discussing circuit split and dismissing claims because "[r]egardless of whether the exhaustion requirement in section 6912(e) is jurisdictional, it is 'mandatory'"). The Fourth Circuit has dismissed a claim for lack of jurisdiction where plaintiffs failed to exhaust under section 6912(e). *Gold Dollar Warehouse, Inc. v. Glickman*, 211 F.3d 93 (4th Cir. 2000); *but see Wong v. United States*, 575 U.S. 402, 410 (2015) ("[T]raditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences."); *Cowpasture River Pres. Ass'n v. Forest Serv.*, 911 F.3d 150 (4th Cir. 2018), *rev'd and remanded on other grounds*, *U.S. Forest Serv. V. Cowpasture River Pres. Ass'n*, 590 U.S. 604 (2020) (not directly deciding the issue but relying on two Eighth Circuit cases that held section 6912(e) was nonjurisdictional).

being the case, the Court should apply the mandatory exhaustion requirement in section 6912(e) and dismiss the PCSC Plaintiffs claims. *See*, *e.g.*, *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 92 (2d Cir. 1998) (deciding exhaustion in the Rule 12(b)(6) posture where plaintiffs admit they had not completed appeal procedures as required by section 6912(e)); *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 477 (8th Cir. 2013) (same); *Ovanova, Inc. v. U.S. Dep't of Agric.*, No. CV 24-2769 (JEB), 2025 WL 343118, at *6 (D.D.C. Jan. 30, 2025) (same); *Les Anciens D Une Eglise*, 2018 WL 1279288, at *3 (same); *Am. Whitewater v. Tidwell*, No. 8:09-CV-02665-JMC, 2010 WL 5019879, at *14 (D.S.C. Dec. 2, 2010) (same but finding exhaustion was not required); *see also Thetford Props. IV Ltd. P'ship v. U.S. Dep't of Hous. & Urb. Dev.*, 907 F.2d 445, 446 (4th Cir. 1990) (same as to a Housing and Urban Development ("HUD") exhaustion statute).

The rule that parties must exhaust administrative remedies is "well established" and serves two main purposes. *Woodford v. Ngo*, 548, U.S. 81, 88–89 (2006); *see also Thetford*, 907 F.2d at 447–48 (calling the rule "long-standing"). Exhaustion allows an agency to resolve a dispute or correct a mistake before judicial intervention. *Woodford*, 548 U.S. at 89. It also "promotes efficiency." *Id.* This is true despite a litigant's claim that "exhaustion is not efficient in that party's particular case" because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency." *Id.*

Here, requiring Plaintiffs to finish exhausting their administrative appeals might result in an outcome that is satisfactory to some or all the PCSC Plaintiffs. The Director of the National Appeals Division has recently accepted two appeals on PCSC grants in other cases and assigned them to administrative judges. *See* **Ex. 1, NAD Case No. 2025S000288**; **Ex. 2, NAD Case No.**

**2025S000316**.[2] While Plaintiffs prefer nationwide declaratory and injunctive relief, *see* ECF No. 149 at 25, that does not mean the National Appeals Division cannot give Plaintiffs "what they ultimately seek," restoration of their grants. *Thetford*, 907 F.2d at 449 (finding that HUD's administrative process was not "inadequate" despite litigants seeking a declaration that agency action was unconstitutional). As the Supreme Court has observed, parties have a "strong inducement to skip the administrative process" by seeking relief not offered in administrative processes but that is no grounds to excuse a statutory exhaustion requirement. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Hudson v. Wilkinson*, No. 0:13-CV-3075-RMG, 2014 WL 107983, at *4 (D.S.C. Jan. 9, 2014), *aff'd*, 589 F. App'x 90 (4th Cir. 2014) (citing *Booth* for the proposition that exhaustion "applies even if the relief sought in the civil action is not available in the administrative proceedings").

And if any part of this dispute continues past administrative review, final decisions issued by the National Appeals Division are subject to judicial review. 7 U.S.C. § 6999. At that point, Plaintiffs could file a civil action with legal theories specific to PCSC, as opposed to the twenty other grant programs at issue here, with the benefit of the administrative record(s) and decision(s). Likely, this process will produce a more "useful record for subsequent judicial consideration." *See Woodford*, 548 U.S. at 89.

### B. No Exception to Exhaustion Applies.

In seeking to avoid the well-established and long-standing exhaustion rule, Plaintiffs advance three arguments: general applicability, irreparable injury, and futility. Defendants address each below.

---

[2] Decisions issued by the National Appeals Division are publicly available at: https://usda-nad-local1.entellitrak.com/etk-usda-nad-prod-temp/page.request.do?page=page.searchDeterminations.styled.

*General Applicability*. The main thrust of Plaintiffs' argument is that they "have no administrative remedy to exhaust" because they are challenging the Secretary's initiatives broadly. ECF No. 167 at 6. They revisit this argument later in saying they intend to facially challenge the Secretary's handling of the PCSC program. *Id.* at 13. According to Plaintiffs, this is a "matter of general applicability" outside the National Appeals Division's authority. *Id.* (citing 7 C.F.R. § 11.6(a)(2)). But the "clear terms" of 7 U.S.C. § 6992(d) dictate that Plaintiffs' argument that their challenges "could not adequately have been presented within normal administrative channels is itself an argument that was required to be tested and exhausted." *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 95 (2d Cir. 1998). "Congress specifically vested the [National Appeals Division] with the authority to determine appealability." *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 474 (8th Cir. 2013) (citing 7 U.S.C. § 6992(d)). The Director of the National Appeals Divisions has already issued appealability determinations in other PCSC cases. **Ex. 1** and **Ex. 2**. As such, Plaintiffs may not "bypass[ ] the administrative appeal process and proceed[] directly to federal court." *Id.*

Plaintiffs borrow language from *Gold Dollar Warehouse, Inc. v. Glickman*, 211 F.3d 93, 99 (4th Cir. 2000) to say that exhaustion is inapplicable because they raise a facial challenge.[3] In *Gold Dollar*, the Fourth Circuit confronted a facial challenge and an as-applied challenge to USDA regulations. *Id.* The Court observed that a party must appeal an "adverse decision" from USDA before seeking judicial review, but appeal "procedures . . . may not be used to seek review of

---

[3] The other two cases cited by Plaintiffs do not support the proposition that Plaintiffs may directly challenge the "lawfulness of a broader policy decision." ECF No. 167 at 14 (citing *McCarthy v. Madigan*, 503 U.S. 140, (1992) and *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.*, 373 U.S. 668 (1963)). *McCarthy* did not involve a facial challenge and, in any event, has been superseded by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a). S*ee Woodford*, 548 U.S. at 85 (holding that litigants must now properly exhaust remedies before alleging constitutional violations). *McNeese* did not create an exception for facial challenges either, but rather excused exhaustion because the process would have only resulted in a nonbinding recommendation. 503 U.S. at 674–75.

statutes or USDA regulations issued under Federal Law." *Id.* at 98 (quoting 7 C.F.R. § 11.3(b)) (omissions in original). Applying this framework, the Court excused exhaustion for plaintiffs' argument that the regulations were not authorized by statute. *Id.* at 98–99. But the Court required exhaustion for the plaintiffs' as-applied argument that the pertinent regulations did not authorize USDA to impose penalties on them. *Id.* at 99–101. The Court held this argument was predicated on an "adverse decision" and was, thus, subject to section 6912(e). *Id.*; *see also* 7 U.S.C. § 6991(1) (defining "adverse decision" as "an administrative decision made by an officer employee, or committee of an agency that is adverse to a participant" to include "a denial of equitable relief"); 7 C.F.R. § 11.3(a)(1) (stating that appeal regulations apply to adverse decisions concerning "[d]enial of participation in, or receipt of benefits under, any program of an agency").

Plaintiffs' challenge is akin to the as-applied challenge that required exhaustion in *Gold Dollar*. Here, Plaintiffs urge the Court to apply, rather than set aside, regulations. ECF No. 23 at ¶¶ 174–85; 326. Plaintiffs also invoke grant-specific evidence to challenge the propriety of the grant terminations. ECF No. 149 at 15 (admitting that USDA may "establish new policies going forward" but citing declarations in arguing that "abruptly terminating *these* grants" are inconsistent with the general purposes listed in 15 U.S.C. § 714) (emphasis added). Finally, Plaintiffs obtained expedited discovery from USDA, stating that a prior Order requiring Defendants to set forth the factual basis for agency actions was insufficient because Plaintiffs need to review "emails discussing specific grants" to determine "why" and "how" the agencies carried out their decision-making. *See* ECF No. 44 at 1–2. Against this backdrop, it is hardly accurate for Plaintiffs to frame this dispute as a facial challenge or purely legal question.

Even if this case is deemed a facial challenge, which it should not be, the Court in *Gold Dollar* held only that facial challenges *to regulations* are excluded from review under 7 C.F.R. §

5

11.3(a). Here, Plaintiffs are challenging whether their grants could be terminated for the USDA's policy reasons, an issue that the Director of the National Appeals Division has determined, in two similar instances, can be administratively reviewed.

*Irreparable Injury*. As an initial matter, irreparable injury is not a basis for setting aside a mandatory exhaustion requirement, such as section 6912(e). *See Booth,* 532 U.S. at 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Davis v. Myers*, No. 4:12-CV-2057-RMG, 2014 WL 108352, at *5 (D.S.C. Jan. 10, 2014) (citing *Booth*). Regardless, though, Plaintiffs fail to show irreparably injury in saying that their relationships with farmers are at risk because agriculture is seasonal and cannot wait on "bureaucratic processes." ECF No. 167 at 11–12. Congress saw fit to create appeal procedures within the USDA and require that parties exhaust them. *See* ECF No. 164 at 5 (citing 7 U.S.C. § 6912(e) and *Bastek*, 145 F.3d at 95). Excusing exhaustion merely because an USDA decision impacts a party's reputation with farmers, or because agriculture is seasonal, would render subsection 6912(e) meaningless.[4]

*Futility***.** Under *Booth*, futility is also not a basis to dispense with a mandatory exhaustion requirement. 532 U.S. at 741 n.6 (2001); *Davis*, 2014 WL 108352, at *5 (citing *Booth*). To the extent the Court is inclined to take up this argument, Plaintiffs' contentions fall short of the

---

[4] The D.C. Circuit has stated that "extraordinary circumstances" must be present to excuse exhaustion on irreparable harm grounds, *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 111 (D.C. Cir. 1986), and Plaintiffs have not pointed to any case where such circumstances were found to exist. *See* ECF No. 167 at 11–12; *Am. Whitewater v. Tidwell*, No. 8:09-CV-02665-JMC, 2010 WL 5019879, at *7 (D.S.C. Dec. 2, 2010) (not addressing irreparable harm exception); *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1063–64 (4th Cir. 1991) (stating the irreparable harm exception was "inapplicable"); *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 606 (5th Cir. 2007) ("None of the grounds for excusing administrative exhaustion have been demonstrated to exist in this case."); *Randolph-Sheppard*, 795 F.2d at 111 (D.C. Cir. 1986) ("Appellants have failed to demonstrate adequate grounds upon which the requirement that they exhaust their administrative remedies should be waived.").

required "clear showing" that an adverse ruling is a "*certainty*." *Thetford*, 907 F.2d at 450 (emphasis added). Plaintiffs assert USDA is biased against the prior administration's policies and has "predetermined the program's outcome." ECF No. 167 at 12. True, the Secretary of Agriculture has policy priorities. But the agency has also invited each PCSC grant recipient to modify their projects to meet the requirement that 65 percent of funding goes directly to farmers. This does not evince bias or, as Plaintiffs put it, "disdain for . . . the goals being pursued by grantees." *See* ECF No. 167 at 12. There is simply no basis for a judicial finding that it is *certain* the National Appeals Division would reject the arguments Plaintiffs have forecasted. *See, e.g.*, ECF No. 149 at 15 (Plaintiffs citing grant-specific evidence to allege their grant terminations are inconsistent with 15 U.S.C. § 714 and also suggesting that USDA should consider cash and services in determining whether grantees met the 65 percent threshold); ECF No. 23 at ¶¶ 174–85; 326 (invoking grant regulations and terms).

**II.     The Availability of Other Means for Plaintiffs to Vindicate Their Rights Precludes Nonstatutory Review.**

In their Response, Plaintiffs ignore Defendants' argument that the Court lacks jurisdiction over any so-called nonstatutory claims since Plaintiffs have other "meaningful and adequate means of vindicating" their asserted right to grant funds. *See Board of Governors of Fed. Reserve Sys. v. MCorp Fin.*, Inc., 502 U.S. 32, 43-44 (1991). Indeed, regardless of the outcome of the appeal in this case, there exists a statutory remedy for the harm alleged – either under the APA or the Tucker Act. That being the case, this case falls outside the "limited" and "extremely narrow" basis for invoking nonstatutory review jurisdiction. *See Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 233 (4th Cir. 2008); *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006).

Rather than engage with this caselaw, Plaintiffs fall back on the contention that sovereign immunity is no bar to nonstatutory review. While true, this does not address the jurisdictional limit the Supreme Court placed on district courts in *Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958) and *MCorp*. Indeed, "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015). And "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 328 (quotation omitted).

Simply put, nonstatutory review is not the failsafe that Plaintiffs purport it to be. If it is ultimately determined – based on the source of rights and type of relief sought, *see* ECF No. 164 at 13 – that Plaintiffs' grant challenges can be brought in the Court of Federal Claims, Congress' choice as to the forum must be honored. *Cf. Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1439 (D.C. Cir. 1988) ("If Congress makes no specific choice of this type in the statute pursuant to which the agency action is taken, or in another statute applicable to it, . . . then an aggrieved person may get 'nonstatutory review.'"). In that case, there would be no alternative (or duplicative) jurisdiction in this court to order the disbursement of grant funding.

Finally, Plaintiffs argue that their nonstatutory claims are not based on grant agreements, but on constitutional provisions. *See, e.g.*, ECF No. 167 at 2. For this reason, they say, the Court of Federal Claims does not have jurisdiction. Such a statement cannot be squared with Plaintiffs having previously sought an injunction "simply requir[ing] the government to honor commitments it has already made to Plaintiffs in binding grant agreements." ECF No. 24-1 at 35; *see also* ECF No. 23 at ¶ 174 (alleging each plaintiff has a "legally binding agreement" with the government). There are no alleged "commitments" here other than to make payments pursuant to grant terms,

which are the source of any rights Plaintiffs may have. As such, the Court of Federal Claims can decide this dispute.

And as to the separation of powers and Presentment Clause claims, these are properly construed as statutory claims. The Supreme Court has carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Dalton v. Specter*, 511 U.S. 462, 472 (1994) (collecting cases). Claims alleging that an official has "exceeded his statutory authority are not 'constitutional' claims" that sustain a direct cause of action. *Id.* at 473.

Here, Plaintiffs allege the agencies' funding decisions violate "separation of powers" by "contraven[ing] Congress's directives in the IRA, IIJA, and other statutes to carry out and fund the statutory programs" and violate the "Presentment Clauses" by effectively "amend[ing] the spending provisions of the IRA and the IIJA and other statutes." ECF No. 23 at ¶¶ 297, 304. If these circumstances generate standalone constitutional violations, any statutory claim is "ipso facto in violation of the Constitution" – a result foreclosed by *Dalton*. *Id.* at 472.

### III.   Conclusion

For the reasons stated above and in Defendants' Motion to Dismiss, Defendants respectfully request that the Court dismiss all claims against USDA regarding the PCSC without prejudice and dismiss Counts I, II, V, and VI, as to all grants, with prejudice. Plaintiffs should be required to comply with the mandatory exhaustion requirement before suing the Secretary of Agriculture and the remainder of this case should proceed under the remedial scheme established by Congress, whether that ultimately turns out to be the APA or the Tucker Act.

                    Respectfully submitted,

                    BRYAN P. STIRLING
                    UNITED STATES ATTORNEY

By:   *s/Todd Timmons*
        Todd Timmons (11254)
        Assistant United States Attorney
        District of South Carolina
        1441 Main Street, Suite 500
        Columbia, South Carolina 29201
        803-237-9265 (cell)
        todd.timmons@usdoj.gov

June 17, 2025