**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| THE SUSTAINABILITY INSTITUTE, et al., | |
| Plaintiffs, | Case No. 2:25-cv-02152-RMG |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM REGARDING PROCEEDINGS ON REMAND**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 4

I.    Environment and Climate Justice Block Grants .................................................... 4

    A.   The facts establish that EPA eliminated the Environmental and Climate Justice
       Block Grant Program. .................................................................................... 4

    B.   Defendants' termination of the Environmental and Climate Justice Block Grant
       program violates the APA ............................................................................. 8

    C.   Defendants' termination of the Environmental and Climate Justice Block Grant
       program violates the Inflation Reduction Act and is *ultra vires*. ................... 10

    D.   Defendants' termination of the Environmental and Climate Justice Block Grant
       program violates the Constitution. ............................................................... 11

    E.   An order to restore the entire Environmental and Climate Justice Block Grant
       Program would redress Plaintiffs' injuries. ................................................... 14

    F.   Remedy ...................................................................................................... 15

II.    Remaining Proceedings. ..................................................................................... 16

    A.   DOE has *de facto* cancelled the Energy Codes program. ................................. 17

    B.   DOT has *de facto* cancelled the Charging and Fueling Infrastructure program. ............. 20

CONCLUSION.................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aiken County,*
  725 F.3d 255 (D.C. Cir. 2013) ...............................................................................13

*Appalachian Voices v. Environmental Protection Agency,*
  No. 1:25-cv-01982 (D.D.C. July 14, 2025) ..............................................................5

*Bell v. Hood,*
  327 U.S. 678 (1946).................................................................................................14

*Bennett v. Spear,*
  520 U.S. 154 (1997)...................................................................................................8

*Brotherhood of Locomotive Engineers & Trainmen v. Federal Railroad*
  *Administration,* 972 F.3d 83 (D.C. Cir. 2020) .......................................................24

*Chicago v. Sessions,*
  888 F.3d 272 (7th Cir. 2018) ..................................................................................12

*Child Trends, Inc. v. United States Department of Education,*
  795 F. Supp. 3d 700 (D. Md. 2025).............................................................8, 11, 15

*City & County of San Francisco v. Trump,*
  897 F.3d 1225 (9th Cir. 2018) ................................................................................12

*City of Chicago v. United States Department of Homeland Security,*
  No. 25-C-5463, 2025 WL 3043528 (N.D. Ill. Oct. 31, 2025) ................................11

*City of Houston v. Department of Housing and Urban Development,*
  24 F.3d 1421 (D.C. Cir. 1994).................................................................................15

*Climate Solutions v. United States Department of Transportation,*
  2:25-cv-02578 (W.D. Wash.)...................................................................................26

*Climate United Fund v. Citibank, N.A.,*
  No. 25-5122 (D.C. Cir.).................................................................................1, 2, 13

*Clinton v. New York,*
  524 U.S. 417 (1998).................................................................................................13

*Coalition of MISO Transmission Customers v. Federal Energy Regulatory*
  *Commission,* 45 F.4th 1004 (D.C. Cir. 2022) .........................................................14

*Correction Services Corporation v. Malesko*,
    534 U.S. 61 (2001) ........................................................................................14

*Diamond Alternative Energy v. Environmental Protection Agency*,
    606 U.S. 100 (2025) ......................................................................................15

*Global Health Council et al. v. Donald J. Trump et al.*,
    No. 1:25-cv-402-AHA (D.D.C. Feb. 24, 2026) ..........................................16

*Hispanic Affairs Project v. Acosta*,
    901 F.3d 78 (D.C. Cir. 2018) .......................................................................24

*Learning Resources, Inc. v. Trump*,
    607 U.S. __, 2026 WL 477534, slip op (Feb. 20, 2026) .............................13

*Long Term Care Partners, LLC v. U.S.*,
    516 F.3d 225 (4th Cir. 2008) .......................................................................10

*Massachusetts v. National Institutes of Health*,
    No. 25-1343, 164 F.4th 1 (1st Cir. 2026) ......................................................8

*National Institutes of Health v. American Public Health Association*,
    145 S. Ct. 2658 (2025) ...................................................................................8

*New York v. Trump*,
    133 F.4th 51 (1st Cir. 2025) .........................................................................22

*Nuclear Regulatory Commission v. Texas*,
    605 U.S. 665 (2025) ...............................................................................10, 11

*Office of Personnel Management. v. Richmond*,
    496 U.S. 414 (1990) .....................................................................................12

*Richardson v. Morris*,
    409 U.S. 464 (1973) .....................................................................................11

*Rochester Pure Waters District v. Environmental Protection Agency*,
    960 F.2d 180 (D.C. Cir. 1992) .....................................................................12

*Shawnee Tribe v. Mnuchin*,
    984 F.3d 94 (D.C. Cir. 2021) .......................................................................15

*Solutions in Hometown Connections v. Noem*
    (4th Cir. No. 25-1640) ...................................................................................1

*South Dakota v. Dole*,
    483 U.S. 203 (1987) .....................................................................................12

*State of California et al. v. Department of Transportation et al.*,
No. 2:25-cv-02574 (D.R.I. May 13, 2025), Dkt. No. 1 ........................................................22

*State of California et al. v. Wright et al.*,
No. 3:26-cv-01417 (N.D. Cal. Feb. 18, 2026), Dkt. No. 1 ...................................................20

*State of California v. United States Department of Transportation*,
2:25-cv-02574 (W.D. Wash., Dec. 16, 2025) ........................................................................26

*Strickland v. United States*,
32 F.4th 311 (4th Cir. 2022) .................................................................................................13

*Sustainability Institute v. Trump*,
165 F.4th 817 (4th Cir. 2026) ......................................................................................... *passim*

*Tootle v. Secretary of Navy*,
446 F.3d 167 (D.C. Cir. 2006) ..............................................................................................11

*Woonasquatucket River Watershed Council v. United States Department of
Agriculture*, 1:25-cv-00097 (D.R.I. Apr. 23, 2025), Dkt. No. 51-1....................................5, 18

*Woonasquatucket River Watershed Council v. United States Department of
Agriculture*, 778 F. Supp. 3d 440 (D.R.I. 2025) ..................................................................18

**Statutes**

5 U.S.C. § 704.........................................................................................................................8

5 U.S.C. § 706.............................................................................................................9, 10, 15

8 U.S.C. § 1252(a)(5)............................................................................................................11

23 U.S.C. § 118(b) .................................................................................................................20

23 U.S.C. § 151(a) .................................................................................................................22

42 U.S.C. § 6321(b) ...............................................................................................................17

42 U.S.C. § 7438......................................................................................................1, 2, 10

Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021).....................20

Inflation Reduction Act of 2022, Pub. L. No. 117-169, 136 Stat. 1818 (2022) ...........................17

One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72 (2025)................................. *passim*

**Regulatory Material**

*Unleashing American Energy*, Executive Order 14,154, 90 Fed. Reg. 8353 (Jan. 29, 2025) ................................................................................................ *passim*

*Removing Support for the National Definition of a Zero Emissions Building*, 90 Fed. Reg. 55722 (Dec. 3, 2025) ............................................................. 20

**Other Authorities**

Department of Energy Organization Chart, U.S. Department of Energy (n.d.), https://www.energy.gov/sites/default/files/2025-11/Organization-Chart-11.20.2025-2.pdf .......................................................................................... 19

*Full Transcript of President Trump's Speech to Congress*, THE NEW YORK TIMES (Mar. 4, 2025), https://www.nytimes.com/2025/03/04/us/politics/transcript-trump-speech-congress.html ....................................................................... 6

Hannah Northey and Christa Marshall, *Wright overhauls DOE, reflecting shift in US energy priorities,* E&E NEWS (Nov. 20, 2025), https://www.eenews.net/articles/wright-overhauls-doe-reflecting-shift-in-us-energy-priorities/ ......................................................................................... 19

Memo from Secretary of Energy Chris Wright, *Secretarial Policy on Ensuring Responsibility for Financial Assistance*, U.S. Department of Energy (May 15, 2025), ...................................................................................................... 18

Rachel Franzin, *Trump RIFs hit federal offices focused on green energy*, THE HILL (Oct. 15, 2025), https://thehill.com/policy/energy-environment/5556952-trump-rifs-green-energy-government-shutdown/ ...................................................... 19

*Terminations, Trump Administration Continues Dismantling EPA's Environmental Justice Portfolio*, INSIDE CLIMATE NEWS (Aug. 28, 2025), https://insideclimatenews.org/news/28082025/trump-epa-environmental-justice-terminations/ .................................................................................... 6

**INTRODUCTION**

Last week, counsel for the Environmental Protection Agency ("EPA"), a key Defendant in this case, told the *en banc* sitting of the United States Court of Appeals for the D.C. Circuit that a full-scale dismantling of a federal program mandated by Congress would give rise to a viable cause of action.[1] Speaking for the federal government, counsel urged over and over that the proper remedy for such a legal violation would be a court order requiring the agency to comply with the mandate from Congress and reinstate the program.[2] A transcript of the government's portions of this argument is attached as Exhibit 1.

The situation postulated by Defendant EPA is a precise analogue to the claims that remain in this case, and Plaintiffs seek the precise relief that the federal government has now conceded would be proper. Congress created the Environmental and Climate Justice Block Grant program and directed that appropriations "shall" be distributed for specific purposes by EPA. 42 U.S.C. § 7438(b). Despite that Congressional mandate, in February of last year, the Assistant Deputy

---

[1] *Climate United Fund v. Citibank, N.A.*, No. 25-5122 (D.C. Cir.), argued Feb. 24, 2026. At page 81 of the attached partial transcript (Ex. 1), Mr. Yaakov Roth, arguing for Defendant EPA, explains that if there is a "mandatory appropriation" and the government decides to refuse to spend that money then there "could be a cause of action." Mr. Roth makes similar concessions earlier in the argument: at page 18 Mr. Roth concedes that a separation of powers claim "turns very much on what the statute requires"; at page 53 Mr. Roth explains that a decision "not to use money for the statutory purpose" would give rise to a statutory claim; at page 59 Mr. Roth concedes that if EPA intended to dismantle entire grant programs it would be at least a statutory violation, a point he repeats on page 68. Plaintiffs attach an expedited partial transcript of the argument with key passages highlighted to facilitate the Court's review. A full recording of the oral argument is available at
https://media.cadc.uscourts.gov/recordings/docs/2026/02/25-5122-02.24.2026.mp3.

The concessions echoed a similar statement made by a government attorney before the Fourth Circuit during the October 23, 2025 argument in *Solutions in Hometown Connections v. Noem* (4th Cir. No. 25-1640) where the government conceded that "a claim where there is a final discrete agency action setting forth a policy to close a program that is statutorily mandated to exist" would be reviewable in federal court under the standard articulated by Justice Barrett in *NIH*. A recording of the argument is available at ca4.uscourts.gov/OAarchive/mp3/25-1640-20251023.mp3 [https://perma.cc/K9KW-94QN]. That statement occurs at 22:13-34.

[2] Mr. Roth explained that "the remedy is supposed to match the wrong. So if the wrong is you're not doing what Congress said, the remedy should be, you have to do what Congress says." Ex. 1 at 81. Elsewhere, Mr. Roth explained that would mean ordering EPA to "restore the program" Ex. 1 at 10, 11, 17, 52, 62-63, and more specifically an order to "re-obligate" the funding within a specific time frame, Ex. 1 at 59.

1

Administrator of the EPA ordered the termination of the Environmental and Climate Justice Block Grant program, a fact he confirmed in a sworn declaration before this Court. Accordingly, Plaintiffs now respectfully ask this Court to order EPA to restore the congressionally-mandated program.[3]

Plaintiffs respectfully urge the Court to move as expeditiously as possible on this matter. Congress required Defendants to obligate funding in the Environmental and Climate Justice Block Grant program by September 30, 2026. While it is well established that courts have equitable jurisdiction to extend this deadline, Defendants have taken the position in other cases that the courts have no such authority. Plaintiffs disagree with Defendants' position but urge, out of caution, the Court to order Defendants to obligate the funds in advance of this deadline per Congressional intent.

On February 2, 2026, this Court ordered Plaintiffs to advise the Court on the scope of further litigation on remand. Dkt. No. 184. Plaintiffs respectfully inform the Court that with respect to the Environmental and Climate Justice Block Grant program, Plaintiffs seek to litigate both Administrative Procedure Act ("APA") jurisdiction, their constitutional claims, and their *ultra vires* cause of action. Both the law and the facts establish Defendants' liability under the APA, the Constitution, and the Inflation Reduction Act ("IRA"). This Court has jurisdiction to issue relief on each of these claims, to vacate the illegal decision to terminate the Environmental and Climate Justice Block Grant program and to order that the program be restored.

Concurrent with this memorandum, Plaintiffs separately move, unopposed, for leave to file a supplemental complaint under Federal Rule of Civil Procedure 15(d). Although the

---

[3] Where the federal government has argued that the statute at issue in *Climate United* was not "mandatory," there is no doubt that the Environmental and Climate Justice Block Grants statute requires that EPA "shall" issue grants. 42 U.S.C. § 7438(b)(1).

operative First Amended Complaint, Dkt. No. 23, encompasses everything necessary for Plaintiffs to prevail on both issues the Court identified and for the Court to order commensurate relief, a supplemental complaint would provide a comprehensive foundation for remand proceedings that accounts for subsequent developments in fact and law and therefore ensures clarity on the issues before the Court and in any subsequent appeal. Once the Court issues an order on this motion, Plaintiffs intend to immediately file a motion for partial summary judgment with regard to the Environmental and Climate Justice Block Grant program claims in keeping with the reasoning set out in this memorandum.

Finally, in this memorandum Plaintiffs will provide an update on the other grant programs at issue in this case, and suggestions for how the Court should proceed to address them. To date, the federal government has restored some other grants at issue in this litigation and Plaintiffs do not anticipate seeking relief from this Court as to those awards at this time, without prejudice to their right to pursue them if facts change. Other grant programs remain in limbo and require further factual development. For the reasons explained below, Plaintiffs request that the Court allow them time to obtain the Administrative Record from Defendants and develop additional facts as to their claims that the Department of Energy ("DOE") and the Department of Transportation ("DOT") have *de facto* cancelled, respectively, the Assistance for the Adoption of Latest and Zero Building Energy Codes ("Energy Codes") program and the DOT Charging and Fueling Infrastructure ("CFI") program.

In this way, Plaintiffs respond to the Court's directive to advise on the issues they seek to litigate on remand: APA jurisdiction and remedy, and *ultra vires* relief. Dkt. No. 184. Plaintiffs intend to litigate Defendants' cancellation of entire grant programs under both approaches.

Below, Plaintiffs set out the legal and factual bases upon which these claims rely and note the instances where further factual development is needed.

## ARGUMENT

### I.  ENVIRONMENT AND CLIMATE JUSTICE BLOCK GRANTS

In its opinion, the Fourth Circuit declined to uphold this Court's preliminary injunction on the grounds that no statute specifically requires Plaintiffs' particular grants to be funded.[4] The Fourth Circuit observed, however, that this Court had not considered whether *entire grant programs* had been cancelled wholesale, and directed that this question should be considered in the first instance on remand. *Sustainability Inst. v. Trump*, 165 F.4th 817, 833–34 (4th Cir. 2026). As the federal government recently confirmed before the *en banc* D.C. Circuit, this Court has jurisdiction to rule on Plaintiffs' claims challenging Defendant EPA's wholesale termination of the Environmental and Climate Justice Block Grant program.[5] As detailed below, by dismantling the entire grant program, EPA violated the APA, the Constitution, and the IRA.

### A.  The facts establish that EPA eliminated the Environmental and Climate Justice Block Grant Program.

In February 2025, Travis Voyles, Assistant Deputy Administrator of the EPA, directed EPA to eliminate the Environmental and Climate Justice Block Grant program in its entirety. In a declaration submitted to this Court, Mr. Voyles stated that he "decided that certain grant *programs* . . . should be terminated for policy reasons." Dkt. No. 147-4 at ¶ 3 (emphasis added). These grant programs, which Mr. Voyles identified by "Assistance Number Listing" in his declaration, included the entirety of the Environmental and Climate Justice Block Grant

---

[4] Plaintiffs disagree with this assessment but pursue this remand rather than further appeal so as to expedite relief.

[5] The termination of the Environmental and Climate Justice Block Grant program is presented by the termination of grants #2-12 on the Court's chart. Exhibit A to Order on Motion for Preliminary Injunction, Dkt. No. 157-1 at 2-3.

program. *Id.* at ¶ 6; *see also* Decl. of Daniel Coogan, *Woonasquatucket River Watershed Council v. Dep't of Agric.*, 1:25-cv-00097 (D.R.I. Apr. 23, 2025), Dkt. No. 51-1 at ¶ 6 (declaration of EPA Deputy Assistant Administrator confirming that the IRA's "Environmental and Climate Justice Block Grant Program" was "slated to be terminated").

EPA moved quickly to effectuate the termination process for this program shortly after Mr. Voyles issued his directive. Grant managers were instructed to provide boilerplate "[c]opy/paste email language from Grant Termination [memo]," and send a form termination letter by email to each grantee in the program. Melissa Wise Email re: Termination Procedure, Dkt. No. 132-1 at 57–59; *see also* EPA Grant Termination Standard Operating Procedure, Dkt. No. 118-1 at 1–7; Boilerplate Termination Letter, Dkt. No. 128-8 at 1–2.

Subsequently, EPA purported to terminate almost all grants issued as part of the Environmental and Climate Justice Block Grant program. Def's Mot. To Dismiss at 5, *Appalachian Voices v. EPA*, No. 1:25-cv-01982 (D.D.C. July 14, 2025), Dkt. No. 66. The relevant grants in this litigation were initially frozen between January and February of 2025, and they were restored after this Court's ruling on May 20, 2025. Order on Prelim. Inj., Dkt. No. 157 at 2. However, in late July, EPA began the termination process for these grants after the Fourth Circuit stayed the Court's injunction. *See, e.g.*, Supp. Decl. of Sarah Diefendorf, Ex. 2 at ¶ 4 (Environmental and Climate Justice Community Change Grant terminated on July 24, 2025); Supp. Decl. of Gerald Babao, Ex. 3 at ¶ 6 (Environmental Justice Collaborative Problem Solving Grant terminated on July 28, 2025); Supp. Decl. of Faith Leach, Ex. 4 at ¶ 7; Supp. Decl. of Justin Elicker, Ex. 5 at ¶¶ 7, 12; Supp. Decl. of Jessica Price, Ex. 6 at ¶ 9. Later, staff assigned to administer the Environmental and Climate Justice Block Grant program were laid off. Aman Azhar, *With Latest Round of Terminations, Trump Administration Continues*

*Dismantling EPA's Environmental Justice Portfolio*, INSIDE CLIMATE NEWS (Aug. 28, 2025),

https://insideclimatenews.org/news/28082025/trump-epa-environmental-justice-terminations/

[https://perma.cc/9L43-4MYN]. Many grantees, including Plaintiffs in this case, challenged the

termination of their grants as unlawful through the administrative appeal process in accordance

with federal regulations. *See, e.g.*, Supp. Decl. of Bryan Cordell, Ex. 7 at ¶ 6-15; Supp Decl. of

Gerald Babao, Ex. 3 at ¶¶ 4, 6; Supp. Decl. of Kaylon Hammond, Ex. 8 at ¶ 6; Supp. Decl. of

Sarah Diefendorf, Ex. 2 at ¶ 4; Supp. Decl. of Faith Leach, Ex. 4 at ¶ 7. In response, EPA either

dismissed or rejected every Plaintiffs' challenge to their grant termination. *See, e.g.,* Supp. Decl.

of Sarah Diefendorf, Ex. 2 at ¶ 4 (EPA dismissing dispute); Supp. Decl. of Kaylon Hammond,

Ex. 8  at ¶ 6 (EPA dismissing dispute and denying petition for reconsideration); Supp. Decl. of

Faith Leach, Ex. 4 at ¶ 7; Supp. Decl. of Jessica Price, Ex. 6 at ¶ 10. As of February 2026, most

Plaintiffs have not closed out these grants in accordance with federal regulations and have not

received pretermination expenses or close out costs.

Consistent with the decision to eliminate the program, Defendant EPA has taken no

action over the past year to reallocate the funding to other eligible grantees. Instead, as Plaintiffs

have previously shown, Defendants have described the termination of the program as "taxpayer

savings," confirming that these funds will not be spent at all. *See, e.g.*, Dkt. No. 149 at 6. These

efforts are in keeping with the President's direction to "terminate" the "Green New Deal," his

name for the environmental programs in the IRA. Unleashing American Energy, Exec. Order No.

14,154, 90 Fed. Reg. 8353 (Jan. 29, 2025) ("Energy EO"), and his later claim that the Green

New Deal (or "Scam") had been terminated. *Full Transcript of President Trump's Speech to

Congress*, THE NEW YORK TIMES (Mar. 4, 2025),

https://www.nytimes.com/2025/03/04/us/politics/transcript-trump-speech-congress.html

[https://perma.cc/42YL-FB5Y].

In July 2025, Congress passed the One Big Beautiful Bill Act ("OBBBA"). In the Act, Congress rescinded only the "unobligated balances" of the Environmental and Climate Justice Block Grant program, H.R. 1, 119th Cong. § 60016 (2025), which the Congressional Budget Office determined to be $516 million. Congressional Budget Office, Estimated Budgetary Effects of an Amendment in the Nature of a Substitute to H.R. 1, the One Big Beautiful Bill Act, Relative to CBO's January 2025 Baseline: Title VI, Senate Committee on Environment and Public Works (June 27, 2025) (select "view document" and select tab "Title VI." View row 91 and column O), https://www.cbo.gov/publication/61534. Grants that had been issued and terminated but not yet closed out were not considered to be "unobligated," a fact confirmed by the federal government at argument before the D.C. Circuit.[6]

Plaintiffs' grants were not terminated, let alone closed out, when the OBBBA became law. And the OBBBA left in place the statutory language mandating the Environmental and Climate Justice Block Grant program, further confirming EPA's continuing obligation. H.R. 1, 119th Cong. § 60016 (2025).

In sum, as of the date of filing, the congressionally-mandated Environmental and Climate Justice Block Grant program and its requirement that Defendant EPA "shall" expend funds in specific ways remains in place. The vast majority of the $3 billion allocated for the program by Congress remains unspent, and only a small fraction of the initial allocation has been rescinded by Congress.

---

[6] Ex. 1 at 80 (explaining that grant funding remains obligated until closeout is complete).

**B.      Defendants' termination of the Environmental and Climate Justice Block Grant program violates the APA.**

The Fourth Circuit recognized that this case includes challenges to high-level "directives issued by the agencies," and that thus far this Court has not ruled on those challenges. *Sustainability Inst.*, 165 F.4th at 829 n. 8. The Fourth Circuit left it to this Court to determine in the first instance its jurisdiction to review and remedy these APA violations. *Id.* At the same time, it cited Justice Barrett's *NIH* concurrence, which recognized that federal district courts have jurisdiction to review high-level, final agency actions "related to grants." *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring). As Justice Barrett indicated, the APA's waiver of sovereign immunity gives this Court jurisdiction to review final agency actions like this one that cancel entire grant programs. *See also Massachusetts v. Nat'l Insts. of Health*, No. 25-1343, 164 F.4th 1, 11-12 (1st Cir. 2026) (federal district court had jurisdiction over policy-level decision affecting grant program); *Child Trends, Inc. v. U.S. Dep't of Educ.*, 795 F. Supp. 3d 700, 719 (D. Md. 2025) (jurisdiction over APA claims where "Plaintiffs' Program Claims challenge not the termination of their particular grant awards but instead dispute the legality of the wholesale cancellation of the REL program.").

EPA's decision to eliminate the Environmental and Climate Justice Block Grant program was a final agency action, i.e., an action that "marks the consummation of the agency's decisionmaking process" and "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). Here, Assistant Deputy Administrator Voyles' decision to eliminate the Environmental and Climate Justice Block Grant program was the consummation of EPA's decisionmaking process and resulted in direct legal consequences to Plaintiffs and others. This Court thus has jurisdiction to review the action. 5 U.S.C. § 704.

Defendants have already consented to judgment on all Plaintiffs' APA claims concerning the Environmental and Climate Justice Block Grant program in the First Amended Complaint. After discovery revealed, among other things, Mr. Voyles' decision on behalf of EPA to cancel the Environmental and Climate Justice Block Grant program for policy reasons, Defendants advised the Court in a submission on May 16, 2025 that they "do not contest judgment on the merits of Plaintiffs' APA claims," other than those concerning certain USDA grants no longer at issue in this case. Dkt. No. 153 at 1. The claims for which Defendants admitted liability included the high-level directive responsible for termination of the program. *See* Dkt. No. 23 at ¶¶ 8-9, 310-28.

Even if Defendants had not made this concession, this Court has everything it needs to determine that Mr. Voyles' directive violated the APA. As explained in more detail below, the dismantlement of the congressionally-mandated program violated the IRA and was not in accordance with law, *see* 5 U.S.C. § 706(2)(A), and was contrary to the Constitution, *see id*. § 706(2)(B). *See infra* Sections I C, D.

Further, Plaintiffs have explained in previous briefing how Defendants' actions also violated the procedural aspects of the APA by failing to consider reliance interests, relying on factors that Congress did not intend to be considered, and failing to provide a logical basis for the decision. Dkt. No. 24-1 at 21–25.

The Court thus has everything it needs to issue a final judgment that Defendants' termination of the Environmental and Climate Justice Block Grant program violated the APA. Plaintiffs will submit a formal request for partial summary judgment once this court has ruled on its motion to supplement the complaint. In terms of remedy, the Court should enter standard APA relief, vacating and setting aside Defendant EPA's unlawful decision under 5 U.S.C. § 706(2) and

directing the agency to comply with the Congressional mandate to obligate grant funds for the statutorily required purposes pursuant to 5 U.S.C. § 706(1).

**C.     Defendants' termination of the Environmental and Climate Justice Block Grant program violates the Inflation Reduction Act and is *ultra vires.***

The Fourth Circuit explained that "whether the cancellation of a specific program is subject to *ultra vires* review requires first determining whether a statute mandates that specific program." *Sustainability Inst*., 165 F.4th at 834 (emphasis added). Here, it is clear that the elimination of the Environmental and Climate Justice Block Grant program violated the IRA, which both mandates the program and directs specific appropriations for specific uses. The text of the IRA is clear and mandatory: EPA "shall" use appropriated funds "to award grants for periods of up to 3 years to eligible entities" for projects "that benefit disadvantaged communities" in ways specified in the grant statute. 42 U.S.C. § 7438. In the OBBBA, Congress specifically left this statutory command in place. Pub. L. No. 119-21, H.R. 1, 119th Cong. § 60016 (2025).

This Court has jurisdiction to address this violation as *ultra vires* review because there is a "strong and clear demonstration that a clear, specific and mandatory statutory provision has been violated." *Long Term Care Partners, LLC v. U.S.*, 516 F.3d 225, 234 (4th Cir. 2008) (quoting *Newport News Shipbuilding & Dry Dock Co. v. NLRB*, 633 F.2d 1079, 1081 (4th Cir. 1980)). Further, no other "statutory scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review,'" and no statute "forecloses all other forms of judicial review." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (quoting *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)).

Here, the only other statutory scheme that could potentially provide Plaintiffs with the ability to obtain the relief they seek, namely the restoration of the grant program, is the APA, as

discussed above. The Court of Federal Claims is not an alternative venue for restoration of the

program. While that court may provide Plaintiffs with some monetary relief related to their

individual grant terms, it is powerless to order Defendant EPA to restore an entire grant

program—quintessential equitable relief over which "the Court of Federal Claims has no power."

*Richardson v. Morris*, 409 U.S. 464, 465 (1973); *Child Trends, Inc. v. U.S. Dep't of Educ.*, 795 F.

Supp. 3d 700, 715–19, 725 (D. Md. 2025) (holding "Program Claims" for restoration of

cancelled grant programs sought "equitable" relief that is "not subject to the Tucker Act" or the

Court of Federal Claims' jurisdiction); *City of Chicago v. U.S. Dep't of Homeland Sec.*, No. 25-

C-5463, 2025 WL 3043528, at *12 (N.D. Ill. Oct. 31, 2025) (holding Court of Federal Claims

lacks jurisdiction over "plaintiffs' claims for equitable relief, in which they ask the Court to

unfreeze the [grant program]"). As the D.C. Circuit has explained, "[t]here cannot be exclusive

jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act." *Tootle v. Sec'y

of Navy*, 446 F.3d 167, 176-77 (D.C. Cir. 2006).

Finally, there is nothing in the statutory scheme of the IRA that "forecloses all other

forms of judicial review." *Nuclear Reg. Comm'n*, 605 U.S. at 681. *Contra, e.g.*, 8 U.S.C. §

1252(a)(5) (establishing "sole and exclusive means for judicial review of an order of removal").

Accordingly, Plaintiffs will submit a motion for partial summary judgment urging the

Court to order relief based on their APA claims, and in the alternative on the *ultra vires* claim,

which is well founded in the potential absence of relief under the APA.

### D. Defendants' termination of the Environmental and Climate Justice Block Grant program violates the Constitution.

The elimination of the Environmental and Climate Justice Block Grant program also

violates both the Constitution's separation of powers, and the presentment clause. On appeal, the

Fourth Circuit found Plaintiff's constitutional claims related to individual grant terminations

11

unavailing, *Sustainability Inst.*, 165 F.4th at 829–32, but did not address Plaintiffs' argument that Defendants' termination of entire grant programs violates Congress's exclusive power over the purse under the Constitution and the Presentment clause.[7] *Id.* at 831. These remain viable constitutional claims separate and apart from Plaintiffs' *ultra vires* statutory claims.

As Plaintiffs have explained, the Spending and Appropriations Clauses of the Constitution, art. I, § 8, cl. 1; art. I, § 9, cl. 7, grant Congress—not the President—"exclusive" power over the Nation's purse, *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992), including the power to "attach conditions on the receipt of federal funds," *South Dakota v. Dole*, 483 U.S. 203, 206 (1987). The Constitution assigned Congress power over the purse "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents. . . ." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 427–28 (1990).

By eliminating entire grant programs and not reallocating the funding, Defendants have failed to fulfill this mandate and violated their constitutional obligations—not merely their statutory ones. *E.g.*, *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1234–35 (9th Cir. 2018) ("Because the Executive Order directs Executive Branch administrative agencies to withhold funding that Congress has not tied to compliance with [the President's policy], there is no reasonable argument that the President has not . . . . violate[d] the constitutional principle of the Separation of Powers."); *Chicago v. Sessions*, 888 F.3d 272, 277 (7th Cir. 2018) ("[T]he power of the purse rests with Congress, which authorized the federal funds at issue and did not impose any

---

[7] To the extent the Court concludes that the Fourth Circuit decided even a program cancellation claim must be treated as an *ultra vires* statutory claim and not a constitutional one under *Dalton v. Specter*—Plaintiffs take the position the Fourth Circuit's application of *Dalton* was wrong and reserve the right to seek further review in any future appeal.

[of the President's] conditions on the receipt of such funds."), *vacated in part on other grounds*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018); *In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.) (majority opinion) ("'[w]ith respect to the suggestion that the President has a constitutional power to decline to spend appropriated funds, we must conclude that existence of such a broad power is supported by neither reason nor precedent.'" (quoting Memorandum from William H. Rehnquist, Assistant Attorney General, Off. of Legal Couns., to Edward L. Morgan, Deputy Couns. to the President (Dec.1, 1969))).

As Defendant EPA admitted at argument before the D.C. Circuit, nothing in the Constitution gives the executive branch the power to entirely disregard a congressional mandate to spend a directed appropriation. *Climate United Fund*, *supra* note 1. Indeed, to do so would effectively write the Spending and Appropriations Clauses out of the Constitution, giving the President unfettered power over the Nation's purse contrary to the Founders' designs. *See Learning Res., Inc. v. Trump*, 607 U.S. __, 2026 WL 477534, slip op at *20 (Feb. 20, 2026) (Gorsuch, J., concurring) ("[W]hen it comes to legislative power, Congress is the principal and executive officials are the agents" charged with "seeing that Congress's laws are faithfully executed."). It would also be analogous to a line-item veto, which our Constitution does not allow. *Clinton v. New York*, 524 U.S. 417, 447–49 (1998) (striking down the line-item veto as unconstitutional because Article I, section 7 of the Constitution makes clear that the Executive Branch cannot cancel a law, or any part of it, without Congress's express authorization).

As the Fourth Circuit observed, such constitutional claims are not subject to the same restrictions under the *ultra vires* review framework discussed above. *Sustainability Inst.*, 165 F.4th at 829–32. Instead, the Court has jurisdiction to enjoin such unconstitutional behavior without considering whether there is an alternative venue for relief. *Strickland v. United States*,

32 F.4th 311, 363 (4th Cir. 2022) ("[A] plaintiff can obtain injunctive relief against an individual officer or agent of the United States in his official capacity for acts beyond his . . . constitutional authority because such actions 'are considered individual and not sovereign actions.'"). "[I]njunctive relief has long been recognized as the proper means for preventing [government] entities from acting unconstitutionally." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). "[I]t is the established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." *Bell v. Hood*, 327 U.S. 678, 684 & n.4 (1946) (collecting cases). In any event, as discussed above, there is no alternative forum that could provide Plaintiffs with the programmatic relief they seek.

Plaintiffs' constitutional claims therefore provide the Court with an alternative avenue to order the restoration of the Congressionally mandated Environmental and Climate Justice Block Grant program, which Plaintiffs will detail in their forthcoming motion for partial summary judgment.

> **E.     An order to restore the entire Environmental and Climate Justice Block Grant Program would redress Plaintiffs' injuries.**

Plaintiffs seek restoration of the Environmental and Climate Justice Block Grant program. This remedy would redress Plaintiffs' injuries by enabling them to pursue grants anew under the reinstated programs. *See, e.g.*, Supp. Decl. of Siddhartha Sanchez, Ex. 9 at ¶¶ 11-13; Supp. Decl. of Kaylon Hammond, Ex. 8 at ¶¶ 8-10; Supp. Decl. of Bryan Cordell, Ex. 7 at ¶¶ 22-24; Supp. Decl. of Faith Leach, Ex. 4 at ¶¶ 10, 11; Supp. Decl. of Justin Elicker, Ex. 5 at ¶¶ 14-15; Supp. Decl. of Jessica Price, Ex. 6 at ¶¶ 13-14. Just as a plaintiff suffers harm for standing purposes where "it has been walled off from an entire category of projects for which it is qualified, prepared, and eager to compete," *Coal. of MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1016 (D.C. Cir. 2022), here, restoring Plaintiffs' ability to compete for funding under

14

the grant programs provides sufficient redressability where "invalidating" the challenged agency action "would remove a[n] . . . impediment to [plaintiffs'] ability to fully compete in the market." *Diamond Alt. Energy v. EPA*, 606 U.S. 100, 104–05 (June 20, 2025). *See also Child Trends*, 795 F. Supp. 3d at 718 ("Plaintiffs ask for . . . only 'the opportunity to compete for grants and subcontracts . . . a well-established form of redressable injury.'" (cleaned up)).

### F.    Remedy

Because the dismantling of the Environmental and Climate Justice Block Grant program, wholesale, was contrary to statute and unconstitutional, this Court should declare the termination decision unlawful and vacate it pursuant to the APA; compel Defendant EPA to restore the program, the implementation of which EPA has unlawfully withheld or unreasonably delayed, pursuant to the APA; and alternatively enjoin EPA to implement the program pursuant to Plaintiff's *ultra vires* and constitutional claims.

The Court should then order Defendants to restore the program as Congress intended. This injunctive relief could arise either pursuant to Plaintiff's *ultra vires* and constitutional claims, or the Court's jurisdiction pursuant to 5 U.S.C. § 706.

Mindful of the Fourth Circuit's admonition that no statute requires Defendants to fund Plaintiffs' individual grants, Plaintiffs do not request an order that directs these grants, specifically, to be restored. Rather, the Court should order Defendants to report within fifteen days how they intend to restore the grant program in compliance with Congressional directives, and direct that all money appropriated by Congress be obligated by the statutory deadline of September 30, 2026.

While it is well established that the court has equitable jurisdiction to extend this statutory deadline if necessary, *City of Houston v. Dep't of Hous. and Urb. Dev.*, 24 F.3d 1421,

15

1426 (D.C. Cir. 1994); *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 98–99 (D.C. Cir. 2021),

Defendants have recently taken the position in other cases that to do so would be

unconstitutional. *See, e.g.*, Def.'s Reply in Supp. of the Mot. to Dismiss the Third Am. Compl. at

3, *Global Health Council et al. v. Donald J. Trump et al.*, No. 1:25-cv-402-AHA (D.D.C. Feb.

24, 2026). As such, Plaintiffs respectfully request the Court issue an order expeditiously to avoid

an unnecessary dispute over this statutory timeframe.

## II.    REMAINING PROCEEDINGS

Most of the remaining grants before the Court do not yet lend themselves to the "program

by program" review directed by the Fourth Circuit. As detailed in Exhibit 11, a number of the

grants awarded under certain programs administered by the United States Department of

Agriculture and other agencies have been restored, at least temporarily, or have been

reconfigured by mutual agreement. Plaintiffs currently do not foresee needing to pursue claims

involving these awards or the associated programs, without prejudice to their rights to do so if

the facts change. Plaintiffs hope that Defendants can confirm where each of these grants stand, so

that the issues before the Court can be narrowed.

As things stand, two other grant programs remain at issue for further litigation: DOE's

Energy Codes program and DOT's Charging and Fueling Infrastructure program. Plaintiffs

believe that facts will ultimately show that DOE and DOT have, respectively, *de facto* cancelled

those grant programs.[8] As a result, the legal analysis above with respect to termination of the

---

[8] Plaintiffs acknowledge that the Fourth Circuit noted in dicta that: "pausing funding pending review is not the same as the complete, permanent termination of grant programs that Plaintiffs claim violates a specific statutory prohibition." *Sustainability Inst.*, 165 F.4th at 834 n.12. Here, Plaintiffs believe they will be able to demonstrate sufficient facts, as forecast below, to establish that DOE and DOT, respectively, have not merely "paused" the Energy Codes and CFI programs but have effectively abandoned them "with intent never to re-obligate the funding." *Id.* at 834.

entire Environmental and Climate Justice Block Grant program, and the claims outlined above, will also apply with equal force as to these two grant programs (though DOT's actions violate the Infrastructure Investment and Jobs Act ("IIJA") rather than the IRA). As explained below, Plaintiffs have preliminarily identified facts to support their claims, but the factual record as to these programs is incomplete and the claims are not yet ripe for summary judgment. Due to the impending statutory deadline for the Environmental and Climate Justice Block Grant program, Plaintiffs respectfully request that the Court allow the parties time to develop these facts without delaying resolution of claims relating to the Environmental and Climate Justice Block Grant program.

### A.    DOE has *de facto* cancelled the Energy Codes program.

Through Section 50131 of the IRA Pub. L. No. 117-169, 136 Stat. 1818, Congress appropriated $1 billion to carry out activities under Part D of Title III of the Energy Policy Conservation Act, a law with the express purpose of "promot[ing] the conservation of energy and reduc[ing] the rate of growth of energy demand." 42 U.S.C. § 6321(b). Of the IRA Section 50131 funding, the Secretary of Energy "shall use" $330 million "for grants to assist States, and units of local government that have authority to adopt building codes" to adopt the latest building energy codes. *Id.* The Secretary also "shall use" $670 million "for grants to assist" the same state and local entities to adopt "zero energy" provisions of the 2021 International Energy Conservation Code or its equivalent. *Id.*[9]

Through its obligation to spend the Section 50131 funds, DOE created the Energy Codes program, sometimes called the "IRA Codes" program. DOE awarded $242 million to nineteen

---

And as explained below, Plaintiffs will not rely solely on the status of their own grants to prove their claims.

[9] Zero Energy provisions aim to achieve net zero carbon emissions.

states and jurisdictions, including Baltimore, in an initial round of the competitive grant

opportunity under the program, another $108 million to ten awardees as part of a second round,

and additional funds to twenty-eight formula grant awardees. *See* Dkt. No. 65-2 at 86, 94-95

(lists of awardees). The initial awards under the program were conditional awards. *See* Dkt. No.

24-15 at 68 (Ex.14-E).

In response to the Energy EO, DOE issued a memo requiring that any funding activities

be placed on hold and reviewed to make sure they were "consistent with current Administration

policies and priorities." Dkt. No. 23-13. Following litigation regarding this overarching freeze,

DOE was enjoined from freezing the processing or payment of funding appropriated under the

IRA that had already been awarded and was required to take immediate steps to resume the

"processing, disbursement, and payment of already-awarded funding appropriated under" the

IRA. *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440,

479 (D.R.I. 2025). Last April, at a status conference, the *Woonasquatucket* defendants

represented to the Rhode Island District Court "that Energy is again processing conditional

awards in the ordinary course." Order at 2, *Woonasquatucket*, No. 1:24-cv-00097 (D.R.I. Apr. 24,

2025), Dkt. 52.

Notwithstanding DOE's representation to the Rhode Island District Court, weeks later, on

May 15, 2025, the Secretary of Energy established a "Portfolio Review Program" to again

"ensure that financial assistance award recipients and the individual projects are, among other

things . . . consistent with . . . this Administration's policies and priorities." *See* Memo from

Secretary of Energy Chris Wright, *Secretarial Policy on Ensuring Responsibility for Financial

Assistance*, U.S. Dep't of Energy (May 15, 2025),

https://www.energy.gov/sites/default/files/2025-05/EXEC-2025-005990%20-

%20Secretarial%20Policy%20-PRP%20-%205-14-25%20%28FINAL%29%20%282%29.pdf, [https://perma.cc/8277-Y73P]. Since DOE implemented this process, it has buried the Energy Codes awards in the Portfolio Review Program for so long that the period of performance for those awards has expired: DOE has effectively abandoned the Energy Codes program and run out the clock. *See* Supp. Decl. of Faith Leach, Ex. 4 at ¶¶ 16-23 & Attachment 1; *see also* Dkt. No. 24-15 at 68 (Ex.14-E); Dkt. No. 65-2 at 86 (columns in spreadsheet showing performance period for all competitive Energy Codes awards). Based on initial information Plaintiffs have gathered to date, the other Energy Codes program participants, except three whose awards were finalized before January 20, 2025, are all still in the "Portfolio Review Process"; DOE either does not respond to inquiries or simply says that they are still reviewing and have no further information at this time.[10] *See, e.g.*, Supp. Decl. of Faith Leach, Ex. 4 at ¶¶ 17-23 & Attachment. 2 (Jan. 2026 DOE email to "IRACodes" mailing list stating that award is "still in the Portfolio Review Process").

Nor has DOE taken any steps to solicit other applicants for the Energy Codes program—indeed, it has eliminated the public-facing websites for the program. In fall 2025, DOE also apparently eliminated the Office of State and Community Energy Programs ("SCEP"), which is responsible for administering the Energy Codes program, through reductions in force and reorganization. *See* Rachel Franzin, *Trump RIFs hit federal offices focused on green energy*, THE HILL (Oct. 15, 2025), https://thehill.com/policy/energy-environment/5556952-trump-rifs-green-

---

[10] Due to the procedural posture of this brief—intended to proffer the general factual basis to proceed with claims as to DOE and DOT and not prove entitlement to summary judgment—and the large number of other awardees, Plaintiffs have not sought to obtain declarations from other awardees or other individuals with personal knowledge of the status of the awards. Plaintiffs anticipate doing so in connection with a future motion for summary judgment once they have a complete administrative record.

energy-government-shutdown/ [https://perma.cc/3MGD-8A9F]; Hannah Northey and Christa

Marshall, *Wright overhauls DOE, reflecting shift in US energy priorities*, E&E NEWS (Nov. 20,

2025), https://www.eenews.net/articles/wright-overhauls-doe-reflecting-shift-in-us-energy-

priorities/ [https://perma.cc/CQ8C-RNQK]; *see also* Department of Energy Organization Chart,

U.S. Dep't of Energy (n.d.), https://www.energy.gov/sites/default/files/2025-11/Organization-

Chart-11.20.2025-2.pdf [https://perma.cc/T43Q-658G]. And recent DOE policies underscore that

DOE has no intention of resuming the Energy Codes program or re-obligating the money that

Congress appropriated for the program. *See Removing Support for the National Definition of a*

*Zero Emissions Building*, 90 Fed. Reg. 55722 (Dec. 3, 2025) (rescinding definition and stating

that the underlying goals "are not consistent with current Administration priorities," which are

"broadly unsupportive of net-zero policies"); *see also* Complaint, *State of California et al. v.*

*Wright et al.*, No. 3:26-cv-01417 (N.D. Cal. Feb. 18, 2026), Dkt. No. 1 (detailing DOE efforts to

"[t]erminat[e] the Green New Deal" and to use the May 2025 DOE memo as "thin bureaucratic

cover to eliminate congressionally established . . . programs, for no other reason than a

fundamental disagreement with the programs' policy underpinnings").

> ### B. DOT has *de facto* cancelled the Charging and Fueling Infrastructure program.

Congress appropriated $2.5 billion to fund the CFI program and directed that "the

Secretary [of Transportation] shall establish a grant program to award grants to eligible entities to

carry out" specific activities including "contract[ing] with a private entity for acquisition and

installation of publicly accessible electric vehicle charging infrastructure, hydrogen fueling

infrastructure, propane fueling infrastructure, or natural gas fueling . . . ." Pub. L. No. 117-58

§ 11401(a), 135 Stat. 429, 546, 547 (2021); *Id.* § 11101(b)(1)(C)(i)-(v), 135 Stat. 429, 445.

Additionally, Congress set a portion of the funding to expire in each subsequent year ($300

million at the end of FY 2025, $400 million at the end of FY 2026, etc.).[11] Between the CFI Program's inception and January 2025, hundreds of entities submitted grant applications and approximately 150 grant applicants received grant awards from the Federal Highway Administration ("FHWA") for their grant proposals. FHWA awarded all or nearly all of the $1.8 billion of CFI funding appropriated for fiscal years 2022-2025 in three successive rounds of grants: Round 1a (announced January 2024), Round 1b (announced August 2024), and Round 2 (announced January 2025). However, only a small fraction of the funding of the Round 1a, 1b, and 2 awards—roughly $215 million—was ultimately obligated by FHWA before January 20, 2025.

Since January 20, 2025, DOT has abandoned and *de facto* cancelled the CFI grant program. It has refused to award new grants, refused to execute new grant contracts with previously announced awardees, refused to enter into new obligations under existing grants, and refused to remit additional funds under the program. With each passing year, it allows additional funding that Congress directed it to spend on this program to expire.

The President's Energy EO effectively directed DOE to terminate the CFI program. In particular, section 7 of the EO mandated a "pause" on the "disbursement of funds appropriated through the . . . Infrastructure Investment and Jobs Act . . . including but not limited to funds for electric vehicle charging stations made available through the . . . *Charging and Fueling Infrastructure Discretionary Grant Program*." 90 Fed. Reg. at 8357 (emphasis added). It then

---

[11] In the IIJA, Congress appropriated $300 million for FY 2022, $400 million for FY 2023, $500 million for FY 2024, $600 million for FY 2025, and $700 million for FY 2026. Pub. L. No. 117-58, Section 11101(b)(1)(C). These funds are authorized to be appropriated out of the Highway Trust Fund. *Id.* at § 11101(b)(1). Funds that Congress appropriated for the CFI Program are available for obligation for three years after the end of the fiscal year for which they are allocated. *See* 23 U.S.C. § 118(b).

directed that all "processes, policies, and programs for issuing grants . . . of such appropriated funds" be evaluated "for consistency with the law and the policy outlined in section 2" of the EO. *Id.* Section 2, in turn, declared that it is the policy of the United States to "eliminate" the so-called "electric vehicle (EV) mandate" including by "considering the elimination of unfair subsidies and other ill-conceived government-imposed market distortions that favor EVs over other technologies." *Id.* at 8353. There can now be little doubt that DOT has responded to this EO by *de facto* terminating the CFI program. This "court is 'not required to exhibit a naiveté from which ordinary citizens are free.'" *New York v. Trump*, 133 F.4th 51, 69 (1st Cir. 2025) (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019)).

As an initial step toward implementing the EO, the DOT issued the DOT Memo. Dkt. No. 23-10. The DOT Memo froze all expenditures for DOT-administered award selections "made after January 20, 2021 that do NOT have fully obligated grant agreements or cooperative agreements in place." *Id.* It then required a three step process that included: (1) identifying programs that include elements such as "climate change activities," or "electric vehicles (EV), and EV charging infrastructure," (2) project-by-project review to determine which projects include disfavored components including EV charging and climate change activities, and (3) "updat[ing] project scopes to eliminate flagged activities." *Id.*

Congress created the CFI Program to "support changes in the transportation sector that help achieve a reduction in greenhouse gas emissions," 23 U.S.C. § 151(a), and all grant proposals are required to provide an "assessment of the estimated emissions that will be reduced," *Id.* § 151(f)(4)(B). As such, under the DOT Memo's required process, the CFI program would be flagged at step one, every grant award flagged at step two, and every grant eliminated at step three. The DOT Memo noted that if "project scope elements are based in statute, program

offices should consult with applicable legal counsel," then, "following legal concurrence," program offices should "raise any proposed scope changes to OA leadership." Dkt. No. 23-10. However, since January 20, 2025, DOT has ceased issuing new grant awards, executing new grant agreements, and agreeing to new obligations under prior agreements, effectively abandoning the CFI Program. This has been the experience of Nashville, Supp. Decl. of Casey Hopkins, Ex. 10 at ¶ 2-4, as well as the other awardees under the program, *see* Complaint, *State of California et al. v. Department of Transportation et al.*, No. 2:25-cv-02574 (W.D. Wash. Dec. 16, 2025), Dkt. No. 1 at ¶¶ 87–209.

On May 6, 2025, Arlan Finfrock, the Associate Administrator for Administration of the FHWA, submitted a declaration to this Court representing that "[t]here is no current pause on reviewing award selections" under the CFI program, asserting instead that DOT was merely "reviewing its programs with announced award selections for which there is not a signed grant agreement." Dkt. No. 147-3. Nearly ten months later, it is abundantly clear that DOT has not merely paused the CFI program for review, it has decided to abandon the program and allow the funds Congress appropriated to expire.

### C.  Plaintiffs require, at a minimum, the Administrative Record as to these *de facto* program cancellations and additional time to develop relevant facts.

The legal basis for Plaintiffs' claims that DOE and DOT have abandoned the Energy Codes and CFI programs is identical to the legal basis for Plaintiffs' Environmental and Climate Justice Block Grant program claims (except that DOT's actions violate the IIJA rather than the IRA). The factual record to establish the DOE and DOT claims, however, is still incomplete, for a few reasons.

First, DOE's production in this case remains incomplete. This Court ordered DOE (like the other agency defendants) to produce all documents which reference the relevant grant and

"which relate in any manner to the freezing, pausing, and/or terminating of access to the grant funds to the grant recipients who are parties to this litigation." Dkt. No. 45. DOE produced 95 pages of documents. Dkt. No. 65-2. On April 17, 2025, a DOE employee certified that DOE was still searching for and reviewing responsive records and that it would "continue to devote the resources necessary to diligently search[] DOE's records until [the employee] can certify that we have produced a complete set of responsive documents." Dkt. No. 65-1. DOE produced native versions of the documents filed at Dkt. No. 65-2 as of June 2025, but has never produced additional documents nor certified that it produced a complete set of responsive documents. On February 18, 2026, undersigned counsel contacted counsel for Defendants regarding the status of the remaining DOE documents; counsel for Defendants advised on February 27, 2026, that he was still communicating with DOE and did not yet have an update.[12]

Second, DOE has taken additional relevant agency actions since the parties prepared the record for the preliminary injunction. As described above, DOE issued a memorandum on May 15, 2025, adopting a "Portfolio Review Process" that resulted in DOE effectively running out the clock on all the Energy Codes awards, which had periods of performance ending on December 31, 2025. Last fall, DOE also apparently eliminated the Office of State and Community Energy programs, which is responsible for negotiating and administering the Energy Codes awards. *See supra* Section II A . These decisions, along with its decision to *de facto* cancel the Energy Codes program, evidenced by DOE's failure to pursue other obligations, awards of new grants, or any actions to negotiate conditional awards under the Energy Codes program, are the type of high-level agency actions that may be challenged under the APA, and Defendants must produce an

---

[12] Plaintiffs are not requesting any action from the Court at this time relating to these documents and intend to continue working collaboratively with counsel for DOE.

administrative record upon which the Court can evaluate DOE's decisions.[13] In addition, Section 7 of the Energy EO provides that: "Within 90 days of the date of this order [or April 20, 2025], all agency heads shall submit a report to the Director of the NEC and Director of OMB that details the findings of this [federal funding] review, including recommendations to enhance their alignment with the policy set forth in section 2." 90 Fed. Reg. at 8357. The recommendations from such a report—from both DOE and DOT—could also constitute a high-level action that may be challenged under the APA, or at the very least would provide the record regarding any relevant agency decision and should be included in any ultimate administrative record in this case.

DOT may similarly have taken additional relevant action since the parties prepared the record for the preliminary injunction. On May 6, 2025, FHWA Associate Administrator Finfrock submitted a declaration to this Court representing that there was no pause on reviewing CFI awards. Dkt. 147-3. Yet for more than a year, not a single new CFI grant has been awarded and not a single new CFI grant agreement has been finalized. If Associate Administrator Finfrock's assertion was true at the time he made it, there must have been subsequent agency action to institute not merely a pause, but a wholesale abandonment of the program.

Lastly, in light of the Fourth Circuit's footnote explaining that freezing or terminating a Plaintiff's grant does not "without more" show cancellation of an entire program, *Sustainability Inst.*, 165 F.4th at 834 n.12, and without the benefit of a clear-cut agency admission like the one

---

[13] *See Brotherhood of Locomotive Eng'rs & Trainmen v. Fed. Railroad Admin.*, 972 F.3d 83, 100 (D.C. Cir. 2020) ("Agency action generally need not be committed to writing to be final and judicially reviewable."); *Hispanic Affairs Project v. Acosta*, 901 F.3d 78, 386-87 (D.C. Cir. 2018) (holding that Plaintiffs could establish a plausible APA claim based on a "*de facto*" agency policy that "shrugg[ed] off . . . statutory and regulatory limitations, seemingly ignoring their straightforward requirement").

that exists for the Environmental and Climate Justice Block Grant program, Plaintiffs are in the process of marshalling facts regarding the disposition of the other more than fifty DOE Energy Codes awards. As described above, Plaintiffs believe that they will have sufficient information to establish that DOE has *de facto* cancelled the entire Energy Codes program, but Plaintiffs have not yet had the opportunity to obtain that information in the form of declarations due to the sheer number of program participants.

Similarly, Plaintiffs are in the process of marshalling facts regarding the approximately 150 other applicants who received awards under the CFI program. In December 2025, two groups of plaintiffs—one consisting of U.S. States and the other of nonprofits—filed separate lawsuits in the Western District of Washington, challenging DOT's failure to operate the CFI program as required by Congress. *State of California v. United States Department of Transportation,* 2:25-cv-02574 (W.D. Wash.); *Climate Solutions v. United States Department of Transportation*, 2:25-cv-02578 (W.D. Wash.). Those cases have been consolidated and DOT has agreed to produce and file the administrative record in that case by March 10, 2026, with any motions to supplement due April 7, 2026. *See id.* Dkt. No. 50. For the sake of efficiency, so long as this Court does not delay consideration of the claims relating to the Environmental and Climate Justice Block Grant program, Plaintiffs do not object to DOT producing the administrative record in this case as it produces the record in the consolidated *California* and *Climate Solutions* cases.

## CONCLUSION

In summary, Plaintiffs and the federal government now all agree that there is a cause of action to challenge the full-scale dismantling of mandatory grant programs and that the appropriate remedy is an order directing agencies to comply with Congressional intent.

With respect to the Environmental and Climate Justice Block Grant program, Plaintiffs have all the facts they need to demonstrate that Defendant EPA unlawfully dismantled this program resulting in violations of the APA, the IRA, and the Constitution. Plaintiffs will move for partial summary judgment as soon as this Court rules on their motion for a supplemental complaint.

With respect to the Energy Codes and CFI programs, Plaintiffs require Defendants to produce additional materials to fill out the factual record related to the *de facto* dismantling of those programs. Plaintiffs will work collaboratively to confer with Defendants regarding a schedule for production and future briefing. With respect to all other grants, Plaintiffs do not intend to pursue any challenges at this time, without prejudice to their ability to do so in the future if facts change.

Respectfully submitted, this 5th day of March, 2026.

/s/ Carl T. Brzorad
Carl T. Brzorad (S.C. Bar No. 105413)
SOUTHERN ENVIRONMENTAL LAW CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
Facsimile: (843) 414-7039
cbrzorad@selc.org

/s/ Kimberley Hunter
Kimberley Hunter (N.C. Bar No. 41333)
Irena Como (N.C. Bar No. 51812)
Nicholas S. Torrey (N.C. Bar No. 43382)
Ben Grillot (D.C. Bar No. 982114)
Spencer Gall (VA Bar No. 95376)
SOUTHERN ENVIRONMENTAL LAW CENTER
136 East Rosemary Street, Suite 500
Chapel Hill, NC 27514
Telephone: (919) 967-1450

Facsimile: (919) 929-9421
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org
bgrillot@selc.org
sgall@selc.org

*Counsel for Plaintiffs The Sustainability Institute, Agrarian Trust, Alliance for Agriculture, Alliance for the Shenandoah Valley, Bronx River Alliance, CleanAIRE NC, Conservation Innovation Fund, Earth Island Institute, Leadership Counsel for Justice and Accountability, Marbleseed, Organic Association of Kentucky, Pennsylvania Association of Sustainable Agriculture, and Rural Advancement Foundation International - USA*

/s/ Graham Provost
Graham Provost (DC Bar No. 1780222)
Elaine Poon (VA Bar No. 91963)

27

Jon Miller (MA Bar No. 663012)
Cassie Crawford (NC Bar No. 45396)
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
graham@publicrightsproject.org

*Counsel for Plaintiffs Baltimore, Maryland;*
*Columbus, Ohio; Madison, Wisconsin;*
*Nashville, Tennessee; New Haven,*
*Connecticut; and San Diego, California*

/s/ Julie Rau
Julie Rau, Lead Deputy City Attorney
(CA Bar No. 317658)
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
(619) 533-5800
jrau@sandiego.gov

*Counsel for Plaintiff City of San Diego*

**CERTIFICATE OF SERVICE**

I certify that on March 5th, 2026, I electronically filed the foregoing with the Clerk of the

Court by using the Court's CM/ECF system.


/s/ Carl T. Brzorad
Carl T. Brzorad (S.C. Bar No. 105413)
SOUTHERN ENVIRONMENTAL LAW CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
Facsimile: (843) 414-7039
cbrzorad@selc.org