SUSTAINABILITY INSTITUTE, ET AL v. TRUMP

2:25-CV-02152-RMG

# EXHIBIT 3

# CleanAIRE NC Supplemental Declaration

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| |
|---|
| THE SUSTAINABILITY INSTITUTE, et al., |
| Plaintiffs, |
| v. |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., |
| Defendants. |

Case No. 2:25-cv-2152-RMG

**SUPPLEMENTAL DECLARATION OF GERALD BABAO,
CLEANAIRE NC**

1. I, Gerald L. Babao, Deputy Director of CleanAIRE NC, submit this declaration to notify the Court of developments that have occurred since I submitted my original declaration (Dkt. No. 24-6) and supplemental declaration (Dkt. No. 149-10) in this case.

2. CleanAIRE NC is a recipient of the Environmental Protection Agency's ("EPA") Environmental Justice Collaborative Problem Solving Grant Program. On June 2, 2024, CleanAIRE NC was awarded $500,000 through this program to reduce air pollution through the collection of air quality data in four North Mecklenburg communities in North Carolina. The grant agreement specified a three-year project period ending on February 28, 2028.

3. This funding was originally frozen on January 29, 2025. On March 28, 2025, EPA emailed us a letter and amendment purporting to terminate the grant. We responded with a dispute of this notice of termination on April 28, 2025. The grant was restored after this Court's May 20, 2025 order.

4.  On May 22, 2025, EPA emailed us an amended grant agreement altering the terms of the award agreement. On June 11, 2025, we responded with a notice of disagreement. Our funding remained available during this time.

5.  When grant was turned back on, we were excited and immediately organized a meeting with community partners to let them know that we would attempt to restart the work. On June 6, 2025, we withdrew $21,984.02 of grant funding in order to resume our work to deploy air monitors in the North Mecklenburg community.

6.  On July 28, 2025, EPA emailed us a letter and amendment purporting to terminate the grant. CleanAIRE NC sent the EPA a notice of disagreement and a dispute on August 17, 2025. On August 18, 2025, the EPA Region 4 Administrator responded to the dispute stating that the administrative dispute is moot due to this litigation. On November 17, 2025, CleanAIRE NC sent EPA an objection to the close out and extension request.

7.  The notice of termination immediately disrupted our ability deploy the air monitors we purchased in June, 2025. Before installing the air monitors in the community, our grant agreement requires us to first complete an air monitor testing process. We received the notice of termination before this was complete.

8.  Additionally, we have not been able to move forward with full implementation of the project. The grant included a paid community health worker (CHW) train-the-trainer model, which would have supported local CHWs in leading recruitment, sensor deployment, and neighborhood-level education and data engagement. That compensated leadership structure is no longer able to move forward due to the termination.

9.  We remain in communication with community partners and are attempting, within our limited existing capacity, to continue preliminary recruitment conversations for future

monitoring. However, without the funding to compensate community health workers and provide structured training, outreach, and technical support, this effort is significantly constrained and less effective than originally designed.

10.     The impact on the community is meaningful. The project was structured to address cumulative air quality and heat burdens in North Mecklenburg through community-led monitoring and data transparency. The termination not only delays data collection and analysis but removes a paid, community-rooted engagement model that was central to building trust and sustained participation. Residents who anticipated an organized, compensated, and technically supported monitoring initiative are now left without the promised infrastructure or timeline, undermining community trust in the federal commitment to environmental justice investments.

11.     CleanAIRE NC continues to seek completion of its grant projects and would move forward with its intended work if EPA were to restore its award.

12.     If this Court orders EPA to reinstate the Environmental and Climate Justice Block Grant Program and EPA decides to reopen the application process for grants rather than restoring prior awards, CleanAIRE NC will apply for another grant under that program.

13.     A court order that reinstates the Environmental and Climate Justice Block Grant Program would redress the injury to CleanAIRE NC and its interests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States, the foregoing is true and correct.

Executed this ___ day of _____, 2026.

_____
Gerald L. Babao

3