SUSTAINABILITY INSTITUTE, ET AL v. TRUMP

2:25-CV-02152-RMG

# EXHIBIT 7

# Sustainability Institute Supplemental Declaration

## SUPPLEMENTAL DECLARATION OF BRYAN CORDELL, THE SUSTAINABILITY INSTITUTE

1.      I, Bryan Cordell, Executive Director of the Sustainability Institute, submit this declaration to notify the Court of developments that have occurred since I submitted my original declaration (Dkt. No. 24-04) and supplemental declaration (Dkt. No. 174-2) in this case.

2.      On December 20, 2024, the Sustainability Institute was awarded a $11,396,020 Environmental and Climate Justice Community Change Grant under the Inflation Reduction Act ("IRA") for a project titled "Advancing Environmental and Climate Justice in Union Heights, a historic Black settlement community in North Charleston, South Carolina." The grant has a project period of January 1, 2025, to December 31, 2027.

3.      Our Community Change Grant was initially frozen on January 10, 2025. We experienced our grant being frozen and unfrozen repeatedly over the following months. Without explanation, the grant was restored on April 28, 2025.

4.      This court ruled on May 20, 2025, issuing a permanent injunction on uncontested Administrative Procedure Act claims and a preliminary injunction on ultra vires constitutional claims.

5.      From April to July 2025, we performed pre-development engineering work on Project 218 and completed a preliminary site layout. We also completed conceptual architectural designs for the affordable housing units, including lot layouts. For the existing homes in the community, we conducted numerous home inspections where we identified critical safety and health repair needs, including weatherization fixes like repairing leaky roofs. We also participated in planning meetings with project partners and

with the community. During that time, Sustainability Institute was able to make drawdowns to reimburse necessary, allowable expenses for work we had completed totaling $163,814.12.

6.     On July 28, 2025, we received a termination notice from EPA. This notice outlined the 120-day closeout process required by 2 C.F.R. § 200.344. (Dkt. No. 174-2).

7.     On July 29, 2025, we received an email from EPA stating, "The Environmental Protection Agency (EPA) has received all required final reports and necessary forms to close-out the above-referenced award. Based upon administrative, programmatic and fiscal reviews, all documents have been deemed acceptable, the terms and conditions satisfied, and has been financially closed." No such documents have been provided to EPA by Sustainability Institute.

8.     On July 31, we timely filed our 2025 Quarter Two Progress Report for our Community Change Grant.

9.     I emailed EPA on August 18 and 19 to alert them that we do not agree to the termination and to request payment for allowable costs incurred prior to the date of termination ("pre-termination expenses"). On August 27, I sent a formal demand letter to EPA.

10.     I received a response on August 28 stating that the administrative dispute was moot due to the ongoing litigation regarding this matter.

11.     After not receiving a response to my August 19 request for costs, I followed up on August 29 and reiterated my request for payment of properly incurred pre-termination expenses. That same day (August 29), I received a response stating that payment would be issued only after submitting a Final Federal Financial Report (FFR) to reconcile the account.

12.     On September 6 and 15, our Director of Finance emailed EPA asking whether Sustainability Institute could receive their pre-termination expenses without submitting a Final FFR, which would require the organization to end our 120-day close-out period. EPA denied our request on September 19. The correspondence and related details from paragraphs 6-7 are documented in Sustainability Institute's declaration of Bryan Cordell. (Dkt. No. 174- 2).

13.     On October 31, 2025, we timely filed our 2025 Quarter Three Progress Report for our Community Change Grant.

14.     On November 20, 2025, 120 days after we received the termination letter, I sent an email to EPA objecting to closeout and requesting an extension. Sustainability Institute does not agree that closeout procedures have been triggered while the Sustainability Institute litigation remains pending. As such, EPA necessarily cannot "determine that all administrative actions and required work of the Federal award have been completed" as would be required to close out. I requested a response from EPA within four days but I did not receive one.

15.     On January 23, 2026, I received an email from EPA stating that, "The Agency will consider any refusal to comply with closeout requirements a failure to complete necessary administrative actions prescribed by 2 C.F.R. § 200.344. Consequently, EPA will proceed to close out the award based on the information available, as of July 29, 2026, consistent with 2 C.F.R. § 200.344(a) and may pursue enforcement actions as outlined in 2 C.F.R. § 200.339."

16.     As of the date of this second supplemental declaration, Sustainability Institute has not finalized the close out process and has not received payment for allowable pre-termination expenses. Sustainability Institute has also not received payment for any other close out costs.

17.     Despite having no advance notice of EPA's attempt to terminate our grant,

Sustainability Institute has managed to complete critical work in North Charleston on the project that should have been funded by our Community Change Grant. Our work has included completing key engineering actions as well as inspections of existing homes. We have also held meetings with the Union Heights community, the City of North Charleson, and relevant partners and stakeholders. We have done so through grit and creativity, backfilling only a fraction of the funding from the Community Change Grant Program. The substantial funding from EPA cannot be replaced, although we have explored many options.

18.     For example, Sustainability Institute was recently awarded $7.5 million from a Common Benefit Fund involving SCANA Corporation and South Carolina Electric & Gas Company. These funds will be used to complete state-wide home weatherization and critical home repair work across South Carolina. We have allocated $1.8 million of those funds back to the Union Heights community to continue our work on Project 218. Even so, our initial budget for this work was $2.8 million out of the $11.4 million from the Community Change Grant.

19.     Sustainability Institute also raised more than $380,000 from individual and anonymous contributors to go towards the Union Heights project.

20.     We have attempted to continue part of our work using resources from these other sources, but these are minimal and cannot fund the majority of the work we had planned to do pursuant to the grant and promised to the community.

21.     Since receiving EPA's termination notice, Sustainability Institute has been forced to lay off one person, a Federal Grants Manager, who was hired as a part-time employee. Our Director of Finance has assumed responsibility for much of the work previously handled by our Federal Grants Manager. Taking on someone else's work has stretched the Director of

Finance's capacity.

22. Sustainability Institute continues to seek completion of its grant projects and would move forward with its fully agreed upon workplan if EPA were to restore its award.

23. If this Court orders EPA to reinstate the Environmental and Climate Justice Block Grant Program and EPA decides to reopen the application process for grants rather than restoring prior awards, Sustainability Institute will apply for another grant under the program.

24. A court order that reinstates the Environmental and Climate Justice Block Grant Program would redress the injury to Sustainability Institute and its interests.

Executed this _2_ day of _March_ 2026.

Bryan Cordell