# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| The Sustainability Institute, *et al.*, | Case No. 2:25-cv-02152-RMG |
| Plaintiffs, | **DECLARATION OF GREGG A. TREML** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| Defendants. | |

## DECLARATION OF GREGG A. TREML

1. I, Gregg A. Treml, hereby declare that the following statements are true and correct to the best of my knowledge, and are based on my personal knowledge, information acquired by me in the course of performing my duties, information contained in the records of the United States Environmental Protection Agency ("EPA" or "Agency"), and information supplied to me by EPA employees including employees under my direction. This declaration is filed in support of Defendants' Partial Motion to Dismiss, or in the alternative, for Summary Judgment, and Response in Opposition to Plaintiffs' Motion for Summary Judgment.

2. I am the Deputy Chief Financial Officer and Deputy Chief Administrative Officer in the Agency's Office of Finance and Administration ("OFA"). I have held this position since November 17, 2025. In this position, I am responsible for overseeing the Agency's annual budget, annual performance plans, financial operations, financial information systems, strategic planning and financial policy development efforts, human resources, and grants administration, among other things.

### The Working Families Tax Cut Act[1]

3. Section 138 of the Clean Air Act, 42 U.S.C. § 7438, appropriated funds to EPA "to

---

[1] Also known as the "One Big Beautiful Bill Act." Pub. L. No. 119-21, 139 Stat. 72 (July 4, 2025).

DECL. OF GREGG A. TREML
2:25-cv-02152-RMG                                    1

remain available" until September 30, 2026, to award grants for certain air pollution-related activities. Section 60016 (Rescission of Funding for Environmental and Climate Justice Block Grants) of the Working Families Tax Cut Act ("WFTCA") states: "The unobligated balances of amounts made available to carry out section 138 of the Clean Air Act (42 U.S.C. § 7438) are rescinded."

4.     In relevant part, an obligation is "[a] definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received, or a legal duty on the part of the United States that could mature into a legal liability by virtue of actions on the part of the other party beyond the control of the United States." *See* Government Accountability Office ("GAO"), *A Glossary of Terms Used in the Federal Budget Process*, September 1, 2005.[2] An "unobligated balance," on the other hand, is "the cumulative amount of budget authority that remains available for obligation under law in unexpired accounts." OMB Circular No. A-11, *Preparation, Submission, and Execution of the Budget*, § 20 at 12 (August 29, 2025).[3]

5.     The Recording Statute, 31 U.S.C. § 1501, establishes the requirements for an agency to record an obligation of funds in its financial systems. In the non-formula grants context, 31 U.S.C. § 1501(a)(5)(B) states that "[a]n amount shall be recorded as an obligation of the United States Government only when supported by documentary evidence of . . . a grant or subsidy payable . . . under an agreement authorized by law[.]"

6.     A grant creates a legal duty on the part of the United States to make payments to the grantee for allowable costs incurred during the grant's period of performance. *See* GAO Decision No. B-300480, 2003 U.S. Comp. Gen. LEXIS 237 (April 9, 2003) (discussing obligational consequences of grants generally). EPA therefore treats grant agreements, including the ones at issue in this case, as recordable obligations.

---

[2] *Available at* https://www.gao.gov/assets/gao-05-734sp.pdf (last visited April 28, 2026).

[3] *Available at* https://www.whitehouse.gov/wp-content/uploads/2025/08/a11.pdf (last visited April 30, 2026).

DECL. OF GREGG A. TREML
2:25-cv-02152-RMG                                    2

7. When a grant is terminated, EPA's legal obligation to the grantee is reduced from the full grant amount to only the grantee's allowable pre-termination costs, termination costs, and closeout costs. *See generally* 2 C.F.R. § 200.472 (discussing termination and closeout costs). Therefore, for the grants at issue here, at the moment of termination, the difference between the original full grant award and the amount due following termination became unobligated. And, because such unobligated funds were still in their available, unexpired period, those funds became immediately subject to the rescission of "unobligated balances" in the WFTCA § 60016.

8. Notwithstanding that upon termination, such amounts become immediately, by definition, unobligated, *see supra* para. 4, and subject to the rescission, *see supra* para. 7, there is an administrative delay in executing both grant terminations and rescissions that causes a lag in EPA's financial systems.

9. Specifically, when a grant is terminated, EPA is unaware of the exact amount the Agency still owes the grantee for allowable pre-termination costs, termination costs, and closeout costs. EPA will not know that information until the grantee submits its Final Financial Report, which can be submitted up to 120 days following grant termination, with the possibility of extensions. *See generally* 2 C.F.R. § 200.344 (discussing grant closeout procedures). Accordingly, EPA's financial systems may reflect that the full amount of the grant award is still recorded as "obligated" to the recipient for several months after termination. For that reason, for nine of the EPA grants at issue in this litigation, EPA's financial systems still show the full amount of the grant award recorded as "obligated" notwithstanding the fact that, at the moment of termination, all amounts in excess of the grantees' allowable pre-termination, termination, and closeout costs became "unobligated."

10. Generally, EPA performs the ministerial bookkeeping act of "deobligating" any funds in excess of the Agency's actual legal obligation to the grantee, namely allowable pre-termination costs, termination costs, and closeout costs, at the conclusion of the grant closeout process, which marks when amounts owed to a grantee are finalized. Thus, there is a time delay between the legal act of

DECL. OF GREGG A. TREML
2:25-cv-02152-RMG                                    3

"unobligation" (effectuated by the termination) and the ministerial bookkeeping act of "deobligation" (adjusting EPA's recorded obligations to reflect the agency's true legal liabilities consistent with the Recording Statute, 31 U.S.C. § 1501). For two of the EPA grants at issue in this litigation, the grantees submitted their Final Financial Reports, and EPA completed the grant closeout process and "deobligation" action. Therefore, for those two grants, EPA's financial systems accurately reflect EPA's post-termination obligation, which was limited to allowable pre-termination, termination, and closeout costs. For both such grants, any amounts owed have been disbursed.

11.    Furthermore, for unobligated amounts subject to the indefinite rescission in WFTCA § 60016, EPA processes rescissions on available, unexpired balances in EPA's financial systems once-per-quarter. As a result, even after EPA adjusts its recorded obligations following completion of grant closeout, EPA's financial systems may still reflect available balances in the relevant account for some time until EPA executes the rescission on available, unexpired balances that were (ministerially) "deobligated" that quarter.

### Status of ECJ Plaintiffs'[4] EPA Grants

12.    **The Sustainability Institute.** As of April 28, 2026, for The Sustainability Institute's Environmental and Climate Justice Block Grant ("ECJ") – Community Change grant (#03D30824), EPA's financial systems reflect an obligation of $11,396,020, which is the full amount of the original grant award. However, on July 28, 2025, EPA terminated the grant. Further, The Sustainability Institute has not submitted the Final Financial Report. Therefore, consistent with paragraph 9 above, while EPA's financial systems temporarily reflect an obligation in the amount of the full grant award, that amount does not reflect the final legal obligation that remains to The Sustainability Institute, which only includes allowable pre-termination, termination, and closeout costs.

---

[4] We are using the term "ECJ Plaintiffs" here as defined in Plaintiffs' Motion for Partial Summary Judgment ("MPSJ"). Dkt. No. 204, p. 9, footnote 3. This declaration will not address other non-ECJ grants that plaintiffs have raised in their supplemental complaint.

13.     **Bronx River Alliance.** As of April 28, 2026, for the Bronx River Alliance's Environmental Justice Collaborative Problem Solving ("EJCPS") grant (#96229424) and ECJ – Community Change grant (#96272300), EPA's financial systems reflect an obligation of $500,000 for grant #96229424 and $1,047,647 for grant #96272300, which are the full amount of the original grant awards. However, on August 1, 2025, EPA terminated both grants. Further, the Bronx River Alliance has not submitted Final Financial Reports for either grant. Therefore, consistent with paragraph 9 above, while EPA's financial systems temporarily reflect an obligation in the amount of the full grant award for both grants, that amount does not reflect the final legal obligation that remains to the Bronx River Alliance, which only includes allowable pre-termination, termination, and closeout costs.

14.     **City of Baltimore.** The City of Baltimore's ECJ – Government-to-Government ("EJG2G") grant (#95336801) was terminated on July 30, 2025. The City of Baltimore submitted its Final Financial Report for this grant on January 25, 2026. Following submission of that report, consistent with paragraph 10 above, EPA performed the ministerial act of "deobligating" any funds in excess of the Agency's final legal obligation to the grantee, namely the City of Baltimore's allowable pre-termination, termination, and closeout costs.

15.     **City of Madison.** As of April 28, 2026, for the City of Madison's ECJ – Community Change grant (#00E05005), EPA's financial systems reflect an obligation of $20,232,335, which is the full amount of the original grant award. However, on July 25, 2025, EPA terminated the grant. Further, the City of Madison has not submitted the Final Financial Report. Therefore, consistent with paragraph 9 above, while EPA's financial systems temporarily reflect an obligation in the amount of the full grant award, that amount does not reflect the final legal obligation that remains to the City of Madison, which only includes allowable pre-termination, termination, and closeout costs.

16.     **City of New Haven.** As of April 28, 2026, for the City of New Haven's EJG2G grant (#00A01441) and ECJ – Community Change grant (#00A01479), EPA's financial systems reflect an

DECL. OF GREGG A. TREML
2:25-cv-02152-RMG                                    5

obligation of $1,000,000 for grant #00A01441 and $20,000,000 for grant #00A01479, which are the full amount of the original grant awards. However, on July 29, 2025, EPA terminated both grants. Further, the City of New Haven has not submitted Final Financial Reports for either grant. Therefore, consistent with paragraph 9 above, while EPA's financial systems temporarily reflect an obligation in the amount of the full grant award for both grants, that amount does not reflect the final legal obligation that remains to the City of New Haven, which only includes allowable pre-termination, termination, and closeout costs.

17.    **CleanAIRE NC.** As of April 28, 2026, for CleanAIRE NC's ECJ – Community Change grant (#03D03424), EPA's financial systems reflect an obligation of $500,000, which is the full amount of the original grant award. However, on July 28, 2025, EPA terminated the grant. Further, CleanAIRE NC has not submitted the Final Financial Report. Therefore, consistent with paragraph 9 above, while EPA's financial systems temporarily reflect an obligation in the amount of the full grant award, that amount does not reflect the final legal obligation that remains to CleanAIRE NC, which only includes allowable pre-termination, termination, and closeout costs.

18.    **Earth Island Institute.** Earth Island Institute's ECJ – Community Change grants (#97T28901 and #03D33625[5]) were terminated on July 24, 2025, and July 28, 2025, respectively. As of April 28, 2026, EPA's financial systems reflect an obligation of $3,073,914 for grant #97T28901, which is the full amount of the original grant award. Moreover, the Earth Island Institute has not submitted the Final Financial Report for grant #97T28901. Therefore, consistent with paragraph 9 above, while EPA's financial systems temporarily reflect an obligation in the amount of the full grant award for grant #97T28901, that amount does not reflect the final legal obligation that remains to the Earth Island Institute for this grant, which only includes allowable pre-termination, termination, and closeout costs.

---

[5] Note, EPA's records reflect that grant #03D33625 was awarded to the West Anniston Foundation, a statutory partner of the Earth Island Institute.

DECL. OF GREGG A. TREML
2:25-cv-02152-RMG                                                        6

With respect to grant #03D33625, as of April 28, 2026, EPA's financial systems reflect that this grant has been closed out, with the Final Financial Report received by EPA on January 8, 2026. Following submission of that report, consistent with paragraph 10 above, EPA performed the ministerial act of "deobligating" any funds in excess of the Agency's final legal obligation to the grantee, namely the Earth Island Institute's allowable pre-termination, termination, and closeout costs.

19.    **Leadership Counsel for Justice and Accountability.** As of April 28, 2026, for Leadership Counsel for Justice and Accountability's ECJ – Community Change grant (#97T28301), EPA's financial systems reflect an obligation of $3,058,750, which is the full amount of the original grant award. However, on July 24, 2025, EPA terminated the grant. Further, Leadership Counsel for Justice and Accountability has not submitted the Final Financial Report. Therefore, consistent with paragraph 9 above, while EPA's financial systems temporarily reflect an obligation in the amount of the full grant award, that amount does not reflect the final legal obligation that remains to Leadership Counsel for Justice and Accountability, which only includes allowable pre-termination, termination, and closeout costs.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

GREGG TREML
Digitally signed by GREGG TREML
Date: 2026.05.05 11:07:39 -04'00'

Gregg A. Treml