**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

THE SUSTAINABILITY INSTITUTE, et al.,

                        Plaintiffs,

        v.

DONALD J. TRUMP, in his official capacity
as President of the United States, et al.,

                        Defendants.

Case No. 2:25-cv-02152-RMG

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO ENVIRONMENTAL AND CLIMATE JUSTICE BLOCK GRANT
PROGRAM AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

I.      Plaintiffs' ECJ Program Claims are Justiciable ................................................... 1

    A.  Plaintiffs' ECJ Program Claims are Not Moot.................................................... 1

        1. The OBBBA Only Rescinded Funds That Were Unobligated on July 4, 2025. ............. 2

        2. Sending a Termination Notice Does Not Instantly Deobligate Grant Funds. ................. 4

        3. Defendants' Arguments are Unsupported by Caselaw. .................................................... 5

    B.  Plaintiffs Have Standing to Pursue Their ECJ Program Claims. ........................................ 7

II.     Plaintiffs are Entitled to Summary Judgment on Their APA Claims ................................. 8

    A.  The Tucker Act Does Not Apply. ...................................................................... 8

    B.  Challenging EPA's Decision to Terminate the ECJ Program is Not a "Programmatic Attack." ........................................................................................11

    C.  EPA has no Discretion to Terminate the ECJ Program. .................................................... 12

III.    Plaintiffs are Entitled to Summary Judgment on Their Constitutional and *Ultra Vires* Claims ...................................................................... 13

IV.    Defendants Have Failed to Respond to Plaintiffs' Request for Mandamus ...................... 15

CERTIFICATE OF SERVICE ............................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aiken County*,
    725 F.3d 255 (D.C. Cir. 2013) .........................................................................................12

*Appalachian Voices v. Environmental Protection Agency*,
    No. 25-5333 (D.C. Cir.) ......................................................................................................6

*Appalachian Voices v. Environmental Protection Agency*,
    No. 25-cv-01982 (RJL) (D.D.C. Aug. 4, 2025),...................................................................6

*Bishop of Charleston v. Adams*,
    No. 22-1175, 2023 WL 4363654 (4th Cir. July 6, 2023)......................................................7

*Building and Construction Trades Department, AFL-CIO v. Martin*,
    961 F.2d 269 (D.C. Cir. 1992) ............................................................................................2

*CC Distributors, Inc. v. United States*,
    883 F.2d 146 (D.C. Cir. 1989) .......................................................................................7, 10

*Child Trends, Inc. v. United States Department of Education*,
    795 F. Supp. 3d 700 (D. Md. 2025) .............................................................................7, 11, 15

*City of Chicago v. United States Department of Homeland Security*,
    ___ F. Supp. 3d ___, 2025 WL 3043528 (N.D. Ill. Oct. 31, 2025) ....................................15

*City of New York v. Department of Defense*,
    913 F.3d 423 (4th Cir. 2019) .............................................................................................11

*Dalton v. Specter*,
    511 U.S. 462 (1994)............................................................................................................13

*Department of Homeland Security v. Regents of the University of California*,
    591 U.S. 1 (2020)................................................................................................................11

*Diamond Alternative Energy, LLC v. Environmental Protection Agency*,
    606 U.S. 100 (2025)..............................................................................................................8

*Haaland v. Brackeen*,
    599 U.S. 255 (2023)..............................................................................................................8

*Harris County v. Kennedy*,
    786 F. Supp. 3d 194 (D.D.C. 2025) .....................................................................................2

*Lexecon Inc. v. Milberg Weiss*,
  523 U.S. 26 (1998)................................................................................................14

*Lincoln v. Vigil*,
  508 U.S. 182 (1993)..............................................................................................12

*Long Term Care Partners, LLC v. United States*,
  516 F.3d 225 (4th Cir. 2008) ...............................................................................13

*Maine Community Health Options v. U.S.*,
  590 U.S. 296 (2020)................................................................................................3

*Morton v. Mancari*,
  417 U.S. 535 (1974)................................................................................................3

*National Institute of Health v. American Public Health Association*,
  606 U.S. ----, 145 S. Ct. 2658 (2025) ..................................................................10

*New York v. Trump*,
  171 F.4th 1 (1st Cir. 2026).....................................................................................12

*Portsmouth Redevelopment and Housing Authority v. Pierce*,
  706 F.2d 471 (4th Cir. 1983) ..................................................................................9

*Richardson v. Morris*,
  409 U.S. 464 (1973)..............................................................................................15

*Rochester Pure Waters District v. Environmental Protection Agency*,
  960 F.2d 180 (D.C. Cir. 1992)................................................................................6

*Sustainability Institute v. Trump*,
  165 F.4th 817 (2026).............................................................................................13

*United States Conference of Catholic Bishops v. Department of State*,
  2025 WL 763738 (D.D.C. Mar. 11, 2025)...............................................................9

*United States v. Will*,
  449 U.S. 200 (1980)................................................................................................2

*W6 Restaurant Group, Ltd v. Loeffler*,
  140 F.4th 344 (6th Cir. 2025) .................................................................................5

*W6 Restaurant Group, Ltd. v. Guzman*,
  732 F. Supp. 3d 739 (N.D. Ohio 2024)................................................................5, 6

**U.S. Constitution**

U.S. Const. art. I........................................................................................................1

iv

**Statutes**

Administrative Procedure Act, 5 U.S.C. §§ 701-706 .......................................................... *passim*

Clean Air Act, 42 U.S.C. §§ 7401 et seq (Section 138) ....................................................3

One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72 (2025)................................. *passim*

Tucker Act, 28 U.S.C. § 1491..........................................................................................10

**Regulations**

2 C.F.R. § 200.342 ...........................................................................................................5

**Other Authorities**

U.S. Government Accountability Office, *Principles of Fed. Appropriations Law*,
    4th ed. (2016) ("GAO Redbook")..............................................................................2

Henry Campbell Black, *Handbook on the Construction and Interpretation of the
    Laws* (1896) ..............................................................................................................14

Office of Management and Budget Circular No. A-11, *Preparation, Submission,
    and Execution of the Budget* (August 29, 2025)
    https://www.whitehouse.gov/wp-content/ ....................................................................3

Black's Law Dictionary (12th ed. 2024).............................................................................14

The parties today will file a joint stipulation to dismiss the Nonprofit Plaintiffs' claims against the United States Department of Agriculture ("USDA"), as well as one claim against the Environmental Protection Agency ("EPA"). The parties are still conferring regarding disposition of Local Government Plaintiffs' USDA claims and certain EPA awards.[1] Plaintiffs' claims against the Department of Transportation and Department of Energy require further factual development. *See* Defs.' Br. at 2 n.2, Dkt. No. 205. Meanwhile, due to factual developments, Plaintiffs no longer seek to press their First Amendment claims. As such, this brief focuses on Plaintiffs' Environmental and Climate Justice Block Grant Program ("ECJ Program") claims.

Despite Defendants' assertions to the contrary, Plaintiffs seek restoration of the ECJ Program, which remains statutorily mandated, and not their individual grants. As a result, this case is justiciable and Plaintiffs are entitled to relief under the Administrative Procedure Act ("APA") and the Constitution. In the alternative, if their APA claims are unsuccessful, Plaintiffs are entitled to relief on their *ultra vires* statutory claims. Plaintiffs are also entitled to mandamus.

## I.     Plaintiffs' ECJ Program Claims are Justiciable

### A.     Plaintiffs' ECJ Program Claims are Not Moot.

The text of the One Big Beautiful Bill Act ("OBBBA")[2] was clear: Congress did not eliminate the ECJ Program, and it eliminated only those balances that were "unobligated" at the time OBBBA was enacted. It did not—and could not—affect funds associated with grants that had already been awarded, and certainly not funds associated with grants like Plaintiffs', which

---

[1] Plaintiffs could not obtain all necessary approvals relating to these claims before the time of this filing and respectfully request that the Court hold Defendants' Motion to Dismiss as to grants 13, 14, 35, and 36 in abeyance pending a later filing from the parties.

[2] One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72 (2025). Defendants refer to this same piece of legislation as the "Working Families Tax Cut Act." It is also referred to as H.R. 1.

were still active at time the legislation was passed. This case is not moot.

Defendants' arguments to the contrary hinge on two flawed propositions:

- **Future Effect:** Defendants argue that Congress's recission of "unobligated balances" applied to any funds that became unobligated at any time, including months after OBBBA became law.

- **Instant Unobligation:** Defendants insist that funds that were obligated to grantees become immediately unobligated upon EPA's sending of a termination notice—even if the grantee has appeal rights to contest the termination decision and the amount of close-out costs has not yet been determined.

Both propositions fail. The ordinary meaning of the plain text of the statute, longstanding principles of fiscal law and practice, and the context in which the bill was enacted make it clear that Congress rescinded only a small fraction of the funding for the ECJ Program—that which was actually unobligated at the time of passage—and certainly not the funds that were undeniably obligated to each of the plaintiffs. *See Harris Cnty. v. Kennedy*, 786 F. Supp. 3d 194, 202 (D.D.C. 2025) (in an analogous setting, finding that where "the Act rescinded only unobligated appropriations, any grants that had already been issued were left undisturbed").

1.     **The OBBBA Only Rescinded Funds That Were Unobligated on July 4, 2025.**

Because the funds associated with Plaintiffs' grants and most other awarded ECJ grants were obligated on July 4, 2025, they were unaffected by the OBBBA's recission of "unobligated funds." For appropriations language to apply to future events, it must contain "words of futurity" —such as "hereafter" or "in this or all future fiscal years." *See, e.g.*, *Bldg. & Const. Trades Dep't, AFL-CIO v. Martin*, 961 F.2d 269, 274 (D.C. Cir. 1992) ("when Congress intends a provision in an appropriations bill to have permanent effect, it uses words of permanency or futurity (such as 'to apply in all years hereafter')"); *U.S. v. Will*, 449 U.S. 200, 222–23 (1980) (appropriations bill stated future raises "shall not take effect"); *see also* GAO, *Principles of Fed. Appropriations Law*, 4th ed. (2016), ("GAO Redbook") at 2-86–2-89 (collecting cases).

2

Here, the OBBBA states that "unobligated balances . . . *are* rescinded"—in the present tense, without any words of futurity. Pub. L. No. 119-21, § 60016, 139 Stat. 72 (2025) (emphasis added). Congress's use of the present tense means that, at the time of enactment, recission applied to balances that were unobligated at that time. The Act does not say that balances that "are or become unobligated" are rescinded, or any balances that "are unobligated now or in the future" are rescinded. And it would not have been difficult to articulate such a directive if that was what Congress intended, which, as discussed below, it did not.

Reading the statute as Defendants suggest would constitute a repeal of Section 138 of the Clean Air Act by implication and run headlong into the "cardinal rule . . . that repeals by implication are not favored." *Morton v. Mancari*, 417 U.S. 535, 549 (1974) (quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)). As the Supreme Court has explained, this "aversion to implied repeals is especially strong in the appropriations context." *Maine Cmty. Health Options v. U.S.*, 590 U.S. 296, 315 (2020) (cleaned up). Here, Congress's purported intention to repeal was not clear and manifest. Indeed, Congress expressly left the statutory text of Section 138 intact. 42 U.S.C. § 7438. Its mandate to operate the ECJ Program remains, and Defendants must follow it.

Defendants attempt to argue that because the recission lacked a "defined dollar figure" it was "indefinite in nature" and thus "there is no cap on the amount of funds that are subject to the recission." Defs.' Br. at 12, Dkt. No. 205. While Defendants contend "agencies generally" execute such recissions by "rescinding all unobligated balances that are *or become* unobligated in the relevant account," they do not point to a single instance of agencies doing so.

Indeed, Defendants' only citation is to OMB's definition of "unobligated balances" as "the cumulative amount of budget authority that remains available for obligation under law in

3

unexpired accounts." OMB Circular No. A-11, *Preparation, Submission, and Execution of the Budget*, § 20 at 12 (August 29, 2025) https://www.whitehouse.gov/wp-content/uploads/2025/08/a11.pdf [https://perma.cc/4YZJ-SZG8]. But "cumulative" is not a word of futurity. The word simply directs agencies to rescind the cumulative total of all funds not obligated *on the day of enactment*. This is confirmed by the second part of the sentence cited, which defines "unobligated balances" as those which "remain[] available for obligation." *Id.* § 20 at 12. On the day of enactment, the only ECJ Program funds that "remain[ed] available for obligation," *id.*, were those that had not yet been awarded to any grantee. Certainly, funds tied to grants, like ECJ Plaintiffs', that Defendants had not even begun to terminate by July 4, 2025, Pls.' Mot. at 8 n. 9, Dkt. No. 204, were fully active at the time of enactment and did not "remain[] available for obligation," OMB Circular No. A-11, § 20 at 12.

As discussed in Plaintiffs' opening brief, these precise questions were contemplated and clarified during legislative debate. When Representative Morgan Griffith—OBBBA proponent and then-Chair of the Environmental Subcommittee—was asked about this exact issue during a committee hearing, he made clear the bill did not impact already-awarded grants. Pls.' Mot. at 27–28, Dkt. No. 204. Rep. Griffith explained that if awarded funds were later successfully de-obligated, their recission would need to be addressed in a "future recission." Exhibit B-1 at 8 (Excerpt of Hr'g Tr.), Dkt. No. 204-2. Defendants do not grapple with this clear statement of legislative intent. And while Defendants attempt to brush off the CBO scoring of the bill, the fact remains its recission estimate of $516 million comports with both the plain language and clear contemporaneous legislative intent to limit the recission to funds that had not yet been obligated.

**2.    Sending a Termination Notice Does Not Instantly Deobligate Grant Funds.**

Defendants' second proposition similarly does not withstand scrutiny. EPA's unilateral

4

decision to send a letter purporting to (illegally) terminate a grant does not instantly deobligate those funds. Nor could it. As Defendants admit, "[f]ederal appropriations law defines 'obligation' as 'a legally binding agreement that will result in outlays, immediately or in the future.'" Defs.' Br. at 11, Dkt. No. 205 (quoting OMB Circular No. A-11, § 20.5 at 20). That legally binding obligation does not end simply because EPA sends a letter. Instead, under binding regulations, EPA "must provide the recipient with an opportunity to object and provide information challenging" any termination decision. 2 C.F.R. § 200.342. Until that process is complete, EPA's legal obligations remain and funds remain obligated.

Even once that process concludes, if EPA is successful in showing it can legally terminate grants, the agency cannot deobligate funds until the 120-day close out process is complete and the specific amount of funds remaining quantified. As Plaintiffs previously discussed, this is consistent with both current and longstanding EPA practice. Pls.' Mot. at 26–28, Dkt. No. 204.

### 3.    Defendants' Arguments are Unsupported by Caselaw.

The only case Defendants cite to support their reading of the recission language is *W6 Restaurant Group, Ltd. v. Guzman*, 732 F. Supp. 3d 739 (N.D. Ohio 2024).[3] But Defendants miscast the facts of the case, and its central holding only serves to confirm this case is not moot.

In *W6 Restaurant Group*, unlike this case, after funds from the Restaurant Revitalization Fund had been obligated by the Small Business Association ("SBA"), a number of funds had been returned at the time Congress "permanently rescinded" all "unobligated balances." 732 F. Supp. 3d at 743. The question before the court was whether any remaining funds that had "not

---

[3] Defendants do not provide a full citation to this case, but presumably intended to reference the above-cited decision. That case was affirmed on other grounds, and the Sixth Circuit expressly did not reach the mootness issue for which Defendants cite it. *See W6 Rest. Grp., Ltd v. Loeffler*, 140 F.4th 344, 351 (6th Cir. 2025). Regardless, the case supports Plaintiffs.

yet [been] promised to pay to a specific entity," *id.* at 752, were "unobligated" at the time of recission. In reasoning that the returned funds were "unobligated," the court explained that it "construes 'unobligated balances of amounts' . . . to mean those funds . . . *not yet promised to pay* to a specific entity," making clear by the use of "not yet" that it referred to funds unobligated at the time of recission. *Id.* (emphasis added). In the case of the SBA's administration of the Restaurant Revitalization Fund, that meant "applications that were not approved—including those that were not reviewed at all—are unobligated." *Id.* By contrast, at the time the OBBBA became law, Plaintiffs' grants clearly had been, and were still, promised to Plaintiffs.

Under the same plain language reading of the OBBBA, the "unobligated balances of amounts" were those that had not yet been promised to any grantees, *i.e.*, the $516 million not yet allocated. This obvious reading of the plain language does not, as Defendants suggest, render the OBBBA "meaningless." Defs.' Br at 14, Dkt. No. 205. It does exactly what legislative history demonstrates was intended—rescinds money that had not yet been obligated, while leaving the funding that had been obligated to grantees in place.[4]

The other cases cited by Defendants also do not help them. They simply stand for the proposition that in the event Congress *has* rescinded funding, that funding is no longer available for courts to provide relief. Here, where Congress did not touch obligated balances, those cases

---

[4] Indeed, at oral argument before the D.C. Circuit in *Appalachian Voices v. EPA*, No. 25-5333 (D.C. Cir.), counsel for EPA characterized the same recission language this way: "I think Congress was really looking at, were these funds committed to—has the agency committed these funds, and if so, we're not going to disturb that, but for the pot of money that is uncommitted, is unobligated, we're going to pull that back," Ex. D-1 at 20, attached to Exhibit D, Decl. of Victoria Hamilton. He went on to note that "unobligated for purposes of [the OBBBA] looks at whether we have a legally binding agreement that's operative . . . at the time of rescission." *Id.* at 19. Likewise, in an earlier brief in that case, EPA and Administrator Zeldin argued that "[Congress] instructed EPA not to spend, but rather to return, any funds that were unobligated as of the day the rescission bill became law." Defs.' Reply in Support of Mot. to Dismiss at 4, *Appalachian Voices v. EPA*, No. 25-cv-01982 (RJL) (D.D.C. Aug. 4, 2025), Dkt. No. 91.

have no relevance. *Rochester Pure Waters Dist. v. E.P.A.*, 960 F.2d 180, 185 (D.C. Cir. 1992) (finding mootness where Congress intentionally rescinded exact amount of funds remaining for a grant program with full knowledge an entity had a pending claim that would require appropriated funding to remedy); *see also Bishop of Charleston v. Adams*, No. 22-1175, 2023 WL 4363654, at *3 (4th Cir. July 6, 2023) (funding at issue had all "actually already been disbursed").

Accordingly, because the text of the OBBBA only eliminated appropriations for amounts that were "unobligated" at the time the Bill was enacted, it did not—and could not—affect grants that had already been awarded. And it certainly did not affect funds for grants, like those held by Plaintiffs here, that were still active at time the Bill was enacted. This case is not moot.

### B.      Plaintiffs Have Standing to Pursue Their ECJ Program Claims.

Restoration of the ECJ Program will redress Plaintiffs' injuries by affording them the opportunity to participate and compete for funding to pursue the important projects that were derailed by Defendants' unlawful elimination of the program. Pl's Mot. at 12–13, Dkt. No. 204. For example, restoring the ECJ Program will provide the City of Madison the chance to compete for funds which would restore "the opportunity to provide much-needed training, housing improvements, and carbon emission reductions in [its]community." Suppl. Decl. of Jessica Price ¶¶ 12–14, Dkt. No. 189-6.

As a result, these Plaintiffs do not assert a "generalized grievance" or seek merely "to have the Government act in accordance with the law," as Defendants claim. Defs.' Br. at 22, Dkt. No. 205. "[A] plaintiff suffers a constitutionally cognizable injury by the loss of an *opportunity to pursue a benefit* . . . even though the plaintiff may not be able to show that it was *certain to receive* that benefit had it been accorded the lost opportunity." *CC Distributors, Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989) (emphases in original). Accordingly, "the opportunity

7

to compete for grants and subcontracts" under a restored grant program is "a well-established form of redressable injury." *Child Trends, Inc. v. U.S. Dep't of Educ.*, 795 F. Supp. 3d 700, 718 (D. Md. 2025) (cleaned up). Here, Plaintiffs' declarations make clear that they are highly qualified to compete anew for funding under a restored program.

Defendants argue that only "the restoration of funding to Plaintiffs," such that all their injuries would be remedied, would satisfy the redressability requirement. Defs.' Br. at 24, Dkt. No. 205. But that is not the standard. Article III requires only that a favorable decision would "likely" remedy "at least some" of Plaintiffs' injuries, as the Supreme Court recently confirmed in *Diamond Alternative Energy, LLC v. EPA,* 606 U.S. 100, 114 (2025). That is the case here: elimination of the ECJ Program has injured these Plaintiffs, Pl's Mot. at 12, Dkt. No. 204, and restoring it would remove the "impediment to [Plaintiffs'] ability to fully compete" by participating in the program. *Diamond*, 606 U.S. at 104–05. The requested relief does not depend on the decision's persuasive effect on a non-party, as in *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (cited by Defendants at pp. 23–24). Instead, it entails the requisite "predictable chain of events" by ordering Defendants to restore the program and thereby reopen the funding opportunities Plaintiffs seek to pursue. *Diamond*, 606 U.S. at 121 (quoting *Alliance for Hippocratic Medicine*, 602 U.S. 367, 385 (2024)).

## II.    Plaintiffs are Entitled to Summary Judgment on Their APA Claims

When EPA terminated the entire ECJ Program, the agency committed nearly every sin in the APA. *See* 5 U.S.C. § 706. Rather than answer that charge, Defendants retreat to three old arguments about APA jurisdiction that have no bearing on the claims before the Court today.

### A.    The Tucker Act Does Not Apply.

The Tucker Act does not affect this Court's jurisdiction over APA claims challenging the

8

elimination of the entire ECJ Program and seeking its restoration. These are classic APA claims seeking classic APA relief and they belong in federal district court.

Opting to attack a straw man, Defendants construct a Tucker Act argument based on the false premise that Plaintiffs are challenging the termination of their individual grants and seeking the restoration of payment under their grant agreements. This is demonstrably wrong. "To be clear, Plaintiffs challenge EPA's unlawful decision to terminate the ECJ Program itself—not their specific grants—and seek only an order that would require EPA to implement the ECJ Program on the terms mandated by Congress. Nothing more." Pl's Mot. at 11, Dkt. No. 204; *see also id.* at 2, 16, 28 (same). Because Defendants start from a false premise, they offer only inapt citations to cases where the plaintiffs sought orders requiring the government to pay them money, which is relief that Plaintiffs are not seeking. *Contra Portsmouth Redevelopment and Housing Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983); *U.S. Conf. of Catholic Bishops v. Dep't of State*, 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025); *see* Defs.' Br. at 21, Dkt. 205. On the flipside, Defendants do not even acknowledge, much less refute, the cases cited by Plaintiffs rejecting the applicability of the Tucker Act to claims challenging the termination of entire grant programs. *See* Pl's Mot. at 16, Dkt. No. 204 (citing *Washington v. Fed. Emergency Mgmt. Agency*, 2025 WL 3551751, at *4 (D. Mass. Dec. 11, 2025), and *Child Trends, Inc.,* 795 F. Supp. 3d at 719).

Defendants try several related arguments that miss the mark. *First*, Defendants conflate EPA's unlawful decision to terminate the entire ECJ Program with the termination of grants awarded under the Program. *See* Defs.' Br. at 18, 26, Dkt. No. 205. But the undisputed facts establish that EPA understood eliminating the ECJ Program as distinct from the freezing and termination of the grants themselves. *See* Decl. of Travis Voyles at ¶ 5, Dkt. No. 147-4 (distinguishing "the programs . . . . subjected to the financial control" from "the individual

9

awards for which drawdowns had been frozen as a result"). And Defendants have made clear they are not re-awarding terminated grants, confirming their action to end the program itself.

*Second*, Defendants insist that only the grant agreements create the rights Plaintiffs seek to vindicate. Not so. Plaintiffs seek to vindicate their rights to seek funding under a statutorily mandated program, which would exist even if Plaintiffs had never received awards in the first place. *See CC Distrib., Inc. v. U.S.*, 883 F.2d 146, 150 (D.C. Cir. 1989). *Finally*, Defendants take the wrong lesson from *Nat'l Inst. of Health v. Am. Pub. Health Ass'n*, 606 U.S. ----, 145 S. Ct. 2658 (2025). They posit a limited carve-out from the Tucker Act, under Justice Barrett's concurrence, for APA claims challenging policy guidance documents and the like. *See* Defs.' Br. at 20, Dkt. No. 205. But Defendants have it backwards. Even in cases that involve grant programs, the APA is the default mechanism for judicial review and the Tucker Act is implicated only in certain circumstances, not the other way around. As Justice Barrett explained, the fact that an APA claim involves grants "does not transform" that claim into one controlled by the Tucker Act. *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring). Defendants try an all-or-nothing comparison to the First Circuit decision that *NIH* stayed in part, Defs.' Br. at 20, Dkt. No. 205, but the lesson from *NIH* is that jurisdiction over APA claims in grant-related cases is not an all-or-nothing proposition and high-level agency actions, like the elimination of grant programs, remain reviewable by this Court.

The most striking aspect of their Tucker Act argument is what Defendants elide. The United States previously told the Fourth Circuit that, under *NIH*, a plaintiff can bring an APA claim in district court "where there is a final, discrete agency action setting forth a policy to close a program that is statutorily mandated to exist." Mot. at 16, Dkt. No. 204 (quoting Transcript of Oral Argument at 20, *Solutions in Hometown Connections v. Noem* (No. 25-1640) (4th Cir. Oct.

23, 2025)). That is exactly what happened here. Defendants do not even bother responding.

**B.     Challenging EPA's Decision to Terminate the ECJ Program is Not a "Programmatic Attack."**

On February 25, 2025, EPA made the decision to eliminate the entirety of the ECJ Program and its subprograms for policy reasons. Decl. of Travis Voyles ¶ 3, Dkt. No. 147-4; *see* Pl's Mot. at 6, Dkt. No. 204. Plaintiffs challenge that discrete, unlawful decision. Defendants appear to think the word "program" transforms this case into an unacceptably broad "programmatic attack" that asks the Court to superintend EPA's administration of the ECJ program. Defs.' Br., Dkt. No. 205 at 22. Not so. This case is about the unlawful "recission" of that program, which "is an action that provides a focus for judicial review." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 18 (2020) (internal quotation omitted). Accordingly, other courts have rightly rejected the argument Defendants make here. *See Child Trends*, 795 F. Supp. 3d at 714 ("As Fourth Circuit precedent makes clear, Defendants' position appears to incorrectly conflate the Plaintiffs' use of the word 'program' in their challenge to the termination of the [grant program] with the legal definition of what constitutes an unreviewable 'programmatic attack.'"). This Court should do the same.

In particular, Defendants find no support in *City of New York v. Dep't of Defense*, 913 F.3d 423 (4th Cir. 2019), which involved a generalized request to "mak[e] the assistance of the federal government more useful." *Id.* at 435. In contrast, Plaintiffs do not seek this Court's "day-to-day oversight" of EPA's activities nor an order to "improve" EPA's performance. *Id.* at 431. Plaintiffs seek only an order vacating the discrete decision to terminate the statutorily mandated ECJ Program and enjoining Defendants to implement it. Pl's Mot. at 34-35, Dkt. No. 204. How Defendants do that is up to them. But they cannot evade APA review by mischaracterizing the challenged action. Their "'ongoing failure[ ] to carry out *discrete obligations*' at all . . . is a claim

11

'subject to review.'" *Child Trends*, 795 F. Supp. 3d at 715 (internal quotation omitted).

### C.     EPA has no Discretion to Terminate the ECJ Program.

Defendants seem to contend that EPA's decision to eliminate an entire congressionally-mandated program is committed to agency discretion simply because the decision relates to a program that involves funding. Defs.' Br., at 24, Dkt. No. 205. But even the cases Defendants cite support Plaintiffs' position: as Defendants acknowledge, "an agency is not free simply to disregard statutory responsibilities" and discretion applies only "as long as the agency abides by the relevant statutes." *Id.* at 24-25 (citing *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993)). *Lincoln* does not apply where, as here, ECJ Plaintiffs have alleged that Defendants are wholly disregarding the statutory mandate to fund the ECJ Program, rather than challenging how Defendants are allocating funds from a lump-sum appropriation. *See New York v. Trump*, 171 F.4th 1, 19 (1st Cir. 2026) (cleaned up) (rejecting federal government's attempt to extend *Lincoln* and explaining that the relevant statues in *Lincoln* "spoke about Indian health only in general terms and did not so much as mention the program at issue"). Similarly, *Milk Train, Inc. v. Veneman* is inapposite: the case involved a challenge to "*how* the moneys . . . could best be distributed," where the statute explicitly provided that the funds would be provided "in a manner determined appropriate by the Secretary." *See* 310 F.3d 747, 751-52 (D.C. Cir. 2002) (emphasis added). There is no such discretion enumerated in the statutory language here, and EPA had no discretion to eliminate the ECJ Program. *See* 42 U.S.C. § 7438(b) ("The Administrator shall use amounts made available . . . to award grants . . . to eligible entities to carry out activities described in paragraph (2) that benefit disadvantaged communities."). "To reiterate, the President and federal agencies may not ignore statutory mandates or prohibitions merely because of policy disagreement with Congress." *In re Aiken County*, 725 F.3d 255, 260 (D.C. Cir. 2013).

12

Defendants have admitted they did exactly that here. Decl. of Travis Voyles at ¶ 3, Dkt. No. 147-4 (deciding to terminate ECJ grant program for "policy reasons").

### III.     Plaintiffs are Entitled to Summary Judgment on Their Constitutional and *Ultra Vires* Claims

Defendants assert that Plaintiffs' constitutional claims are foreclosed by the Fourth Circuit's analysis of *Dalton v. Specter*, 511 U.S. 462, 473 (1994), Defs.' Br. at 25, but the Fourth Circuit made clear that it "express[ed] no view on Plaintiffs' 'program cancellation' theory" and that its analysis of Plaintiffs' nonstatutory review claims was focused on individual grant terminations. *Sustainability Inst. v. Trump*, 165 F.4th 817, 829–32 (2026). The court did not address Plaintiffs' argument that termination of entire statutorily mandated programs trespasses upon the exclusive province of Congress and violates the Presentment Clause. *See id.* Defendants fail to respond to these claims and summary judgment should be granted to Plaintiffs.

This Court should also rule that if Plaintiffs do not receive relief under the APA or the Constitution, then they prevail on their *ultra vires* statutory claims. The undisputed facts establish that (1) EPA decided to cease operating the ECJ Program in violation of a specific statutory mandate, and (2) no statutory scheme—aside from the APA as discussed above—provides adequate (or indeed any) opportunity for judicial review. Defendants are unable to dispute these straightforward conclusions as to Plaintiffs' actual claim and instead resort again to miscasting Plaintiffs' claim as a challenge to grant terminations.

First, Defendants emphasize that *ultra vires* statutory claims are available only when an agency acts "contrary to a *specific prohibition* in a statute." Defs.' Br. at 26, Dkt. No. 205 (quoting *Sustainability Inst.*, 165 F.4th 817 at 830) (emphasis added by Defendants). But *Sustainability Institute* did not describe *ultra vires* review so narrowly and in the very next sentence quoted *Long Term Care Partners, LLC v. United States,* 516 F.3d 225, 234 (4th Cir.

13

2008), for the proposition that such review is available "where there is a 'strong and clear demonstration that a clear, specific and mandatory [statutory provision] has been violated.'" After all, the mandate to operate a program and award appropriated funds is, by basic logic, a prohibition on refusing to operate the program and award appropriated funds—precisely the action Plaintiffs challenge.[5] Defendants provide no basis to conclude otherwise.

Next, Defendants argue that "for jurisdictional purposes, there is no meaningful difference between an allegation that an agency terminated one grant agreement or all of them." Defs.' Br. at 26, Dkt. No. 205. This assertion is irrelevant because Plaintiffs do not challenge the termination of any particular grants, but rather the elimination of the ECJ Program. Elimination of the program and termination of the grants are separate and fundamentally distinct actions. If EPA had terminated the ECJ grants but subsequently re-awarded the funding consistent with Congress's terms, Plaintiffs would have no *ultra vires* statutory claim because EPA would not have acted contrary to the specific statutory prohibition against refusing to operate the ECJ Program. Here, however, it is undisputed that EPA has eliminated the entire ECJ Program with no intention of complying with Congress's statutory mandate, and has therefore acted "contrary to a specific prohibition in a statute."

Finally, Defendants argue that Plaintiffs have other meaningful avenues to seek relief. Again, Defendants rely on an inaccurate portrayal of Plaintiffs' claims as asserting a "right to grant funds." Defs.' Br. at 26, Dkt. No. 205. Plaintiffs' claim is that EPA is refusing to operate a statutorily mandated program, not that any particular entity is entitled to funds. This claim can be

---

[5] *See Lexecon Inc. v. Milberg Weiss*, 523 U.S. 26, 35 (1998) ("the mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion"); MANDATORY, Black's Law Dictionary (12th ed. 2024) ("A provision in a statute is said to be mandatory when disobedience to it . . . will make the act done under the statute absolutely void.") (quoting Henry Campbell Black, *Handbook on the Construction and Interpretation of the Laws* 334 (1896)).

14

brought by an entity "qualified, prepared, and eager to compete" for ECJ funding, regardless of whether the entity ever had a grant agreement. Pl's Mot. at 31, Dkt. No. 204. Thus, the claim is unrelated to any contract and could not be heard in the Court of Federal Claims. Moreover, as EPA conceded before the D.C. Circuit, the appropriate remedy where an agency refuses to carry out a statutorily mandated program is an order to restore the program. Dkt. No. 189-1, *Climate United Fund* Tr. at 63:2–3. Defendants acknowledge the same here as well. Defs.' Br. at 23, Dkt. No. 205 ("the proper remedy would be an injunction requiring EPA . . . to *reobligate* the grant funds in accordance with . . . the applicable statute[]"). That is equitable relief over which "the Court of [Federal] Claims has no power." *Richardson v. Morris*, 409 U.S. 464, 465 (1973); *see also Child Trends, Inc.*, 795 F. Supp. 3d at 719; *accord City of Chicago v. U.S. Dep't of Homeland Sec.*, ___ F. Supp. 3d ___, ___, 2025 WL 3043528, at *12 (N.D. Ill. Oct. 31, 2025) (claims to "unfreeze" program sought "relief that the CFC cannot grant"). As such, unless Plaintiffs can obtain relief under the APA, there is no statutory scheme that provides an alternative avenue of review and Plaintiffs are entitled to summary judgment on their *ultra vires* statutory claim.

**IV.     Defendants Have Failed to Respond to Plaintiffs' Request for Mandamus**

Defendants have no response to Plaintiffs' mandamus claim and have not disputed Plaintiffs have a right to compete for ECJ funds or that EPA has a clear duty to operate the ECJ Program and award appropriated funds. As such, if the Court concludes there are no other means of awarding relief, the Court should enter a writ of mandamus compelling Defendants to implement the ECJ Program as Congress commanded by fully obligating all appropriated funding before the statutory deadline of September 30, 2026.

Respectfully submitted, this 12th day of May, 2026.

15

/s/ Carl T. Brzorad
Carl T. Brzorad (S.C. Bar No. 105413)
SOUTHERN ENVIRONMENTAL LAW
CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
Facsimile: (843) 414-7039
cbrzorad@selc.org

/s/ Kimberley Hunter
Kimberley Hunter (N.C. Bar No. 41333)
Irena Como (N.C. Bar No. 51812)
Nicholas S. Torrey (N.C. Bar No. 43382)
Ben Grillot (D.C. Bar No. 982114)
Spencer Gall (VA Bar No. 95376)
SOUTHERN ENVIRONMENTAL LAW
CENTER
136 East Rosemary Street, Suite 500
Chapel Hill, NC 27514
Telephone: (919) 967-1450
Facsimile: (919) 929-9421
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org
bgrillot@selc.org
sgall@selc.org

*Counsel for Plaintiffs The Sustainability
Institute, Agrarian Trust, Alliance for
Agriculture, Alliance for the Shenandoah
Valley, Bronx River Alliance, CleanAIRE
NC, Conservation Innovation Fund, Earth
Island Institute, Leadership Counsel for
Justice and Accountability, Marbleseed,
Organic Association of Kentucky,
Pennsylvania Association of Sustainable
Agriculture, and Rural Advancement
Foundation International - USA*

/s/ Graham Provost
Graham Provost (DC Bar No. 1780222)
Elaine Poon (VA Bar No. 91963)
Jon Miller (MA Bar No. 663012)
Cassie Crawford (NC Bar No. 45396)

Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
graham@publicrightsproject.org

*Counsel for Plaintiffs Baltimore, Maryland;
Columbus, Ohio; Madison, Wisconsin;
Nashville, Tennessee; New Haven,
Connecticut; and San Diego, California*

/s/ Julie Rau
Julie Rau, Lead Deputy City Attorney
(CA Bar No. 317658)
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
(619) 533-5800
jrau@sandiego.gov

*Counsel for Plaintiff City of San Diego*

16

**CERTIFICATE OF SERVICE**

I certify that on May 12, 2026, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system.

/s/ Carl T. Brzorad
Carl T. Brzorad (S.C. Bar No. 105413)
SOUTHERN ENVIRONMENTAL LAW CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
Facsimile: (843) 414-7039
cbrzorad@selc.org

17