**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| The Sustainability Institute, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Donald J. Trump, in his official capacity as President of the United States, et al., <br><br> Defendants. | Case No. 2:25-2152-RMG <br><br><br> **ORDER AND OPINION** |

Before the Court is Plaintiffs' motion for partial summary judgment as to the Environmental and Climate Justice Block Grant Program ("ECJ Program") (Dkt. Nos. 204, 207). Defendants oppose Plaintiffs' motion and move to dismiss in part Plaintiffs' operative complaint. (Dkt. No. 205). For the reasons stated below, the Court grants in part and denies in part Plaintiffs' motion and denies Defendants' motion.

**Background**

Plaintiffs are eight nonprofit organizations and local governments who were each awarded grants under the ECJ Program. (Dkt. No. 204 at 9).

In 2022, the Inflation Reduction Act became law, amending the Clean Air Act by adding Section 138 and establishing the ECJ Program. (*Id.* at 10). Congress appropriated $2.8 billion to remain available through September 30, 2026. (*Id.*); 42 U.S.C. § 7438(a)(1). Section 138, codified at § 7438, states that the "Administrator shall use" the appropriated funds "to award grants." § 7438(b)(1).

In January 2025, President Donald J. Trump issued two Executive Orders: *Unleashing American Energy* and *Ending Radical and Wasteful DEI Programs and Preferencing.* (Dkt. No.

1

204 at 12). *Unleashing American Energy* directed agencies to "Terminat[e] the Green New Deal" and "pause the disbursement of funds appropriated through the Inflation Reduction Act." 90 Fed. Reg. 8353, 8357 (Jan. 20, 2025). It also directed "all agency heads" to submit "a report to the Director of the [National Economic Council] and Director of [the Office of Management and Budget] that details the findings of [a] review" concerning "processes, policies, and programs for issuing grants, loans, contracts, or any other financial disbursements of such appropriated funds for consistency with the law and the policy outlined in section 2 of this order." *Id.* Section 2 describes the President's policy for "[u]nleashing American Energy." *Id.* at 8353-54. *Ending Radical and Wasteful DEI Programs and Preferencing* directed agencies to "terminate" all " 'environmental justice' offices and positions" and all "equity-related" grants or contracts. 90 Fed. Reg. 8339, 8339 (Jan. 20, 2025).

On January 21, 2025, and January 27, 2025, the OMB issued memoranda interpreting *Unleashing American Energy*'s mandate to "[t]erminat[e] the Green New Deal." (Dkt. Nos. 23-5, 23-6). In particular, the OMB's January 27, 2025, memorandum ordered that "Federal agencies must temporarily pause" all grants related to "the green new deal." (Dkt. No. 23-6 at 3) (emphasis removed). That same day, Environmental Protection Agency ("EPA")'s Acting Chief Financial Officer Gregg Treml issued a memorandum "paus[ing]" "unobligated funds. . . appropriated by the Inflation Reduction Act of 2022." (Dkt. No. 23-8 at 2).

On or around February 25, 2025, EPA terminated "the entire ECJ Program." (Dkt. No. 204 at 13) (citing Dkt. No. 147-4 ¶ 3). In his declaration filed with the Court, Travis Voyles, Assistant Deputy Administrator, EPA, affirms that on February 25, 2025, he conducted an "individualized review of EPA grant programs" and "decided that certain grant programs," including the ECJ Program, "should be **terminated** for policy reasons." (*Id.* at 2-4) (emphasis added). That evening,

2

Daniel Coogan, Deputy Assistant Administrator for Infrastructure and Extramural Resources in the Office of Mission Support, EPA, sent an email documenting Voyle's decision to terminate, inter alia, the ECJ Program. (*Id.* at 2-3, 5). As to the ECJ Program, the email specifically stated to "**[t]erminate grants** and pay final invoices." (*Id.* at 6) (emphasis added). The email also specified "[n]o new award actions." (*Id.*).

In late April 2025, Defendants disclosed to the Court that EPA had marked Plaintiffs' ECJ grants as "Closed," "Terminated," or "Termination in Progress." (Dkt. No. 204 at 15). EPA sent "boilerplate" termination letters to the ECJ Plaintiffs in late July 2025. (*Id.*).

Defendants do not contest that they terminated the ECJ Program. *E.g.*, (Dkt. No. 147-4 at 110) (Coogan declaration stating ECJ program was "to be terminated"); *see generally* (Dkt. No. 205 at 4) (admitting EPA terminated "each grant" awarded under the ECJ Program). Plaintiffs further contend that "EPA laid off the agency staff charged with administering the ECJ Program." (Dkt. No. 204 at 15). Defendants do not contest this factual assertion either. *See generally* (Dkt. No. 205).[1]

---

[1] To be precise, Defendants argue that the "One Big Beautiful Bill Act" (the "Act") rescinded the entire ECJ Program and that, therefore, this action is moot. (Dkt. No. 205 at 10-16). The argument is without merit. The Act only rescinded funds which were unobligated at the time of the bill's passage. *See* Pub. Law. No. 119-21, 139 Stat. 72 (July 4, 2025) ("The unobligated balances of amounts made available to carry out section 138 of the Clean Air Act (42 U.S.C. § 7438) are rescinded."). Accordingly, the Court rejects Defendants' argument that Plaintiffs' ECJ-based claims are moot and must be dismissed. *See Maine Cnty. Health Options v. United States*, 590 U.S. 296, 315 (2020) (observing "repeals by implication are not favored" and that "[t]his Court's aversion to implied repeals is 'especially' strong 'in the appropriations context' "). Further, even if Defendants' reading of the Act were correct, this would not affect Plaintiffs' request for declaratory relief, which became ripe on February 25, 2025, when Defendants illegally terminated the ECJ Program in violation of the Administrative Procedure Act.

In their Supplemental Complaint for Declaratory and Injunctive Relief, as to the ECJ Program, Plaintiffs bring the following claims:

- Counts III, IV, and VII–Violation of the Administrative Procedure Act ("APA"). EPA's decision to terminate the ECJ Program violates 5 U.S.C. § 706(1)-(2).

- Counts I, II, and VI—Nonstatutory Review. The decision to terminate the ECJ Program is "ultra vires" and violates the "separation of powers."

Plaintiffs seek, inter alia, a declaratory judgment that the "executive actions taken to freeze or terminate" the ECJ Program violated the APA. (Dkt. No. 203 at 105-06). Plaintiffs affirm that "[v]acatur alone [of EPA's decision to terminate the ECJ program] should be sufficient to implement the ECJ Program, which the agency is under an ongoing statutory mandate to do." (Dkt. No. 204 at 37). Plaintiffs do not challenge in their amended complaint the termination of their individual ECJ grants nor seek reinstatement of their grants.

The parties' motions are fully briefed and ripe for disposition.

**Legal Standard**

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence

4

to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## Discussion

*The Court Has Jurisdiction Over Plaintiffs' APA Claims*

For the reasons stated below, the Court finds that it has jurisdiction to hear Plaintiffs' claim that EPA's guidance terminating the entire ECJ Program for "policy reasons" was unlawful.

A summary of *National Institutes of Health v. American Public Health Association* ("*NIH*"), 145 S. Ct. 2658 (2025) is necessary. This case involved a newly announced NIH policy, carried out through a series of guidance documents, "prohibit[ing] NIH from funding scientific research grants in certain categories," such as those "studies based on diversity, equity, and inclusion (DEI) and gender identity." *Am. Pub. Health Ass'n v. NIH*, 145 F.4th 39, 43, 45 (1st Cir. 2025). As a direct result of its new policy, NIH terminated hundreds of existing research grants. *See id.* at 45-47. Following a bench trial, the district court entered two orders, separately setting aside both the new policy and the resulting grant terminations as unlawful under the APA. *See id.* at 43-44. The First Circuit declined to stay the district court's orders pending appeal. *See id.* at 44.

NIH then applied to the Supreme Court for a stay. *See NIH*, 145 S. Ct. at 2659. The application was granted in part and denied in part, with Justice Barrett casting the deciding vote.

*See id.* In her controlling concurrence,[2] Justice Barrett explained that "the [d]istrict [c]ourt likely lacked jurisdiction to hear challenges to the grant terminations, which belong in the Court of Federal Claims (CFC)." *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring). As for the APA challenge to the guidance itself, however, Justice Barrett explained that "the [d]istrict [c]ourt was likely correct to conclude that it had jurisdiction." *Id.* She observed that "[p]laintiffs frequently seek vacatur of internal agency guidance on arbitrary-and-capricious grounds in district court," and she reasoned that the fact "[t]hat the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded . . . upon' contract that only the CFC can hear." *Id.* (omission in original) (quoting 28 U.S.C. § 1491(a)(1)). Justice Barrett also pointed out that "[v]acating the guidance does not reinstate terminated grants," making it appropriate to "channel[ ] challenges to the grant terminations and guidance to different forums." *Id.*

Courts have consistently followed Justice Barrett's concurrence, holding that they have jurisdiction to hear APA challenges in analogous or substantially similar factual scenarios such as those present here. *E.g.*, *Massachusetts v. NIH*, 164 F.4th 1, 12 (1st Cir. 2026) (applying Justice Barrett's concurrence to hold district court had jurisdiction to entertain challenge to agency guidance); *Pacito v. Trump*, 169 F.4th 895, 929 & n.15 (9th Cir. 2026) (applying Justice Barrett's concurrence to hold district court had jurisdiction to hear challenge to reinstate cooperative

---

[2] *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented [Supreme] Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .' " (omission in original) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976))).

agreements); *Metropolitan Transportation Authority v. Duffy*, No. 25-cv-1413 (LJL), 2026 WL 588117, 23-26 (S.D.N.Y. March 3, 2026) (jurisdiction proper under *NIH* because, inter alia, claim was not contractual); *American Council of Learned Societies v. National Endowment for the Humanities*, No. 25-cv-3657 (CM), 2026 WL 1256545, *23-25 (S.D.N.Y. May 7, 2026) (applying Justice Barrett's concurrence to find jurisdiction over plaintiffs' claims under APA); *County of Santa Clara v. Noem*, 815 F. Supp. 3d 979, 1022-23 (N.D. Cal. 2025) (applying Justice Barrett's concurrence to find jurisdiction over plaintiffs' "challenge [to] Defendants' use of an unlawful agency policy to impose unlawful grant conditions [where plaintiffs sought] equitable relief to prevent Defendants from imposing unlawful conditions"); *President and Fellows of Harvard College v. United States Dept. of Health and Human Servs.*, 798 F. Supp. 3d 77, 105-08 (D. Mass. 2025) (jurisdiction proper under *NIH* as to agency guidance documents but not proper "as they pertain to the Termination Letters" because claims "based on the grant terminations must be brought in the Court of Federal Claims"); *Association of American Univs. v. Department of Defense*, 806 F. Supp. 3d 79, 91-92 (D. Mass. 2025) (applying Justice Barrett's concurrence to find jurisdiction over APA challenge to agency guidance).

The Court finds that it has jurisdiction to hear Plaintiffs' APA claim that Defendants' guidance terminating the ECJ Program was unlawful. Plaintiffs seek to vacate the "guidance documents" described above which shuttered the ECJ program despite Congress' mandate to the contrary. *NIH*, 145 S. Ct. at 2661 (denying Government "a stay of the judgements insofar as they vacate the guidance documents") (Barret, J., concurring); 42 U.S.C. § 7438 (appropriating $2.8 billion "to remain available until September 30, 2026, to award grants"); *Sustainability Inst. v. Trump*, 165 F.4th 817, 829 n.8 (4th Cir. 2026) (remanding to this Court to address the application of Justice Barrett's concurring opinion in *NIH*) (citing 145 S. Ct. at 2660-2662). In line with the

numerous courts noted above and *NIH*, this Court likewise holds that it has "jurisdiction to entertain [Plaintiffs'] APA challenge to [Defendants'] guidance." *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring).

*Plaintiffs Are Entitled to Summary Judgment on their APA Claims related to the ECJ Program*

The APA allows the reviewing court to set aside an agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A); *see Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 763 (2004); *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 393 (4th Cir. 2014).

"[F]or an agency action to be deemed 'final' within the meaning of the APA and, thus, subject to the APA's requirement of a reasoned explanation, the agency 'action must be one by which rights or obligations have been determined, or from which legal consequences will flow.' " *QinetiQ US Holdings, Inc. & Subsidiaries v. Comm'r of Internal Revenue*, 845 F.3d 555, 560 (4th Cir. 2017) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)).

The challenged agency action must also be "discrete." *NAACP v. Bureau of the Census*, 945 F.3d 183, 189 (4th Cir. 2019). "This requirement derives from the APA's definition of 'agency action,' which includes 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.' " *Id.* (citing 5 U.S.C. § 551(13)); *see also* 5 U.S.C. § 701(a)(2) (adopting the definition given in Section 551). "All five specific examples given in this definition are 'discrete' in character, and only actions that share this 'characteristic of discreteness' are reviewable under the APA." *Id.*

The Court finds that Plaintiffs challenge a final, discrete agency action. Plaintiffs have established that, contrary to Congress' will, the EPA issued guidance that shuttered the ECJ Program before its end date of September 30, 2026. *See* 42 U.S.C. § 7438(a)(1). The agency

8

guidance requiring a definitive closure of the ECJ Program was final and discrete—this guidance resulted in Plaintiffs' inability to participate in the statutorily mandated ECJ Program. In sum, the actions Plaintiffs challenge are reviewable. *See In re Aiken Cnty.*, 725 F.3d 255, 261 (D.C. Cir. 2013) ("[A] President sometimes has policy reasons . . . for wanting to spend less than the full amount appropriated by Congress for a particular project or program. But in those circumstances, even the President does not have unilateral authority to refuse to spend the funds. Instead, the President must propose the rescission of funds, and Congress then may decide whether to approve a rescission bill.").

Plaintiffs likewise have Article III standing.  To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct . . . and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339. Because Plaintiffs here seek declaratory relief, they must establish an ongoing or future injury in fact. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects."). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).

As noted above, ECJ funds must be made available through September 30, 2026. Plaintiffs have plausibly alleged a denial of an opportunity to apply for a benefit (grants). Plaintiffs have likewise shown—as explained *infra*—that EPA's guidance terminating the ECJ Program was

arbitrary and capricious and contrary to the law.[3] In sum, Plaintiffs have standing. *See CC Distributors, Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989) ("Under this line of authorities, a plaintiff suffers a constitutionally cognizable injury by the loss of an *opportunity to pursue a benefit* . . . even though the plaintiff may not be able to show that it was *certain to receive* that benefit had it been accorded the lost opportunity.").

Last, there is no doubt that Defendants' internal guidance terminating the ECJ Program in contravention of § 7438 was arbitrary and capricious and unlawful. Section 7438 appropriated $2.8 billion to remain available until September 30, 2026, "to award grants" such as those under the ECJ Program. Defendants' guidance closing and premature shuttering of the ECJ Program and refusal to administer it are illegal.[4] *See In re Aiken Cnty.*, 725 F.3d at 260 ("To reiterate, the President and federal agencies may not ignore statutory mandates or prohibitions merely because of policy disagreement with Congress.") (citing *Lincoln v. Vigil,* 508 U.S. 182, 193 (1993) ("Of course, an agency is not free simply to disregard statutory responsibilities: Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes . . . .")); *Id.* at 258, 267 (granting mandamus where Nuclear Regulatory Commission "shut down

---

[3] This finding, it bears noting, could be independently relevant to any grant claims Plaintiffs bring before the CFC.

[4] In fact, Defendants previously admitted that they violated the APA but argued that this Court lacked jurisdiction to hear Plaintiffs' challenge to the termination of individual grants. (Dkt. No. 153 at 1) ("[F]or purposes of this case only, Defendants do not contest judgment on the merits of Plaintiffs' APA claims (excluding those asserted against the Secretary of Agriculture regarding grants under the Partnership for Climate-Smart Commodities ('PCSC'), see section II below), that would require Defendants to fund or negotiate grant agreements for 32 of the 38 grant awards at issue here. Defendants maintain their jurisdictional objections . . . ."). Further, in their current briefing, Defendants do not attempt to argue that the termination of the ECJ Program was legal. *See generally* (Dkt. No. 205).

its review and consideration of the Department of Energy's license application" in direct violation of federal statute and noting that "[i]t is no overstatement to say that our constitutional system of separation of powers would be significantly altered if we were to allow executive and independent agencies to disregard federal law in the manner asserted in this case by the Nuclear Regulatory Commission").

Accordingly, the Court declares that the agency guidance closing the ECJ Program is illegal and vacates this guidance. § 706(2)(A); *Sierra Club v. United States Army Corps of Eng'rs*, 909 F.3d 635, 655 (4th Cir. 2018) (noting "Supreme Court has recognized that Section 706(2)(A) 'requires federal courts to set aside federal agency action' that is 'not in accordance with law' ") (quoting *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003)); (Dkt. No. 204 at 37) (averring that "[v]acatur alone [of EPA's decision to terminate the ECJ Program] should be sufficient to implement the ECJ Program").

The Court denies, however, the remainder of Plaintiffs' motion. Plaintiffs ask that the Court enter a permanent injunction "requiring EPA . . . to implement the ECJ Program," (Dkt. No. 204 at 37), a request which would presumably require ordering EPA to rehire and staff the ECJ Program. Plaintiffs likewise allude to an "equitable extension" of § 7438's September 30, 2026, deadline. (*Id.* at 38). Under the circumstances noted here, however, the requested relief appears impractical. Plaintiffs' request for a permanent injunction is therefore denied. Plaintiffs' request for mandamus is likewise denied. Plaintiffs, however, are of course free to pursue their claims for alleged unlawful termination of their grants in the CFC. *See Department of Education v. California*, 604 U.S. 650, 651 (2025); *NIH*, 145 S. Ct. at 2659.

Last, the Court declines to address Plaintiffs' ultra vires/nonstatutory claims. *See Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (noting ultra vires review is "unavailable if, as

11

is usually the case, a statutory review scheme provides persons 'with a meaningful and adequate opportunity for judicial review' ").

Should Plaintiffs move for an attorneys' fee award under 28 U.S.C. § 2412, the Court will address that motion at a later date.

### Conclusion

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for partial summary judgment as to the ECJ Program (Dkt. No. 204) and **DENIES** Defendants' motion to dismiss in part (Dkt. No. 205).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

June 11, 2026
Charleston, South Carolina

12