**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| The Sustainability Institute, *et al.*, | ) Civil Action Number: 2:25-cv-02152-RMG |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| Donald J. Trump, in his official capacity | ) |
| as President of the United States, *et al.* | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO ENFORCE JUDGMENT AND CLARIFY RELIEF**

On June 11, 2026, the Court issued its Order and Opinion, Dkt. No. 217 ("Op."), and found that certain actions that the Environmental Protection Agency ("EPA" or "Agency") took to terminate the Environmental and Climate Justice Block Grant Program ("ECJ Program") grants constituted "guidance."  The Court held that this internal guidance was arbitrary and capricious and in contravention of the law.  The Court, however, expressly declined to enter permanent injunctive relief requiring EPA to implement the ECJ Program, finding that such relief would be "impractical." Op. at 11.  The Court also expressly declined to reinstate Plaintiffs' terminated ECJ grants and instructed that they are "free to pursue their claims for alleged unlawful termination of their grants in the CFC [Court of Federal Claims]." *Id*.

On June 29, 2026, Plaintiffs filed the instant Motion to Enforce Judgment and to Clarify Relief on Plaintiffs' Claims Pursuant to 5 U.S.C. § 706(1) ("Pls.' Mot.") and requested further enforcement of the Court's Order.  Additionally, Plaintiffs reupped their request for injunctive relief based on allegations that EPA has failed to take affirmative steps to implement the Court's Order.

1

The consequences of the Court's vacatur were automatic, however, and required no further agency action. The Court's Order forbids EPA from terminating obligated funds[1] or otherwise taking new actions based upon the vacated guidance after the date of the vacatur. *See Nat'l Insts of Health v. Am. Pub. Health Assoc.,* 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring) ("*NIH*") ("Even if the guidance and grant terminations are linked, vacating the guidance does not necessarily void decisions made under it . . .") That is the extent of the vacatur's effect; it does not compel further action, reinstate Plaintiffs' terminated grants, nor alter the statutory scheme rescinding unobligated balances from the ECJ Program (nor could it). If that leaves Plaintiffs feeling shortchanged, they may follow the Court's advice to seek relief in the CFC. Because the Court's Order is self-executing, and, as further discussed herein, EPA has taken no new action in reliance upon the vacated guidance document after the date that the Court entered the vacatur, Plaintiffs' Motion must be denied.

## ARGUMENT

### I. The legal consequences of vacatur are self-executing, therefore no further agency action is required.

Plaintiffs argue that the Court's vacatur must have consequences. Defendants do not disagree. As Plaintiffs correctly state, "when a court vacates agency action, 'the offending rule is rendered void and of no effect and there is a reinstatement of the rules previously in force.'" Pls.' Mot. at 3 (quoting *Am. Great Lakes Ports Ass'n v. Zukunft*, 301 F. Supp. 3d 99, 103–04 (D.D.C. 2018)). These consequences are automatic; there is no executory duty bestowed upon the government since "vacatur neither compels nor restrains further agency decision-making." *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 72 (D.D.C. 2025) (quoting *Texas v.*

---

[1] As discussed herein, although this Court indicated otherwise, *see* Op. at 2, n.3, EPA submits that notwithstanding the present tense used in the WFTCA, Congress's rescission is a continuing command, not a one-time only transaction.

*United States*, 40 F.4th 205, 220 (5th Cir. 2022)).   The premise of Plaintiffs' motion—that Defendants have failed to "take any action to comply with the Court's Order," Pls.' Mot. at 4—is accordingly flawed.   Indeed, it contradicts their own statement that the "effect of vacatur is to *automatically* resurrect the prior standard." *Id*. at 3 (quoting *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) (cleaned up) (emphasis added)).

The moment the Court's Order was issued, its vacatur became effective.   The agency guidance issued on or around February 25, 2025, terminating the ECJ Program was "rendered void and of no effect," *Am. Great Lakes Ports Ass'n*, 301 F. Supp. at 103-04, thus it may no longer be relied upon by EPA as a basis for future action, including any further terminations of obligated ECJ grants.   This is the full extent of the consequences of vacatur.   The vacatur does not prohibit EPA from completing the closeout process of grants that were terminated prior to the moment the Court's Order was issued and the termination process related to those grants is ongoing.   While it may not satisfy all of Plaintiffs' desires, it is still "meaningful" relief, *contra* Pls.' Mot. at 3, since EPA may no longer terminate obligated ECJ funds in reliance upon the guidance (separate and apart from completing the closeout process of grants that were terminated prior to the moment the Court's Order was issued).   Of course, Plaintiffs are free to seek relief in the CFC.

## II.     EPA is complying with statutory commands, including those contained in the Working Families Tax Cut Act.

The EPA is complying with statutory commands.   Section 138 of the Clean Air Act, as codified at 42 U.S.C. § 7438(a)(1), limits the use of the ECJ funds "to award grants" and no other purpose.   The Working Families Tax Cut Act ("WFTCA"), however, rescinds any unobligated funds under the ECJ Program.   Pub. Law. No. 119-21, 139 Stat. 72 (July 4, 2025).   EPA must comply with the WFTCA.

The Court correctly interpreted the Supreme Court's holding in *NIH* that "[v]acating the guidance does not reinstate terminated grants," Op. at 6 (quoting *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring)),  thus Plaintiffs' grant terminations remained effective following the Court's Order. Indeed, as the Court recognized, Plaintiffs "do not challenge in their amended complaint the termination of their individual ECJ grants nor seek reinstatement of their grants." Dkt. No. 217, p. 4.  Although this Court indicated otherwise, *see* Op. at 2, n.3, EPA submits that as soon as the funding underlying an ECJ grant agreement becomes unobligated, it is rescinded pursuant to the WFTCA, which states "[t]he unobligated balances of amounts made available to carry out section 138 of the Clean Air Act (42 U.S.C. § 7438) are rescinded."  Pub. Law. No. 119-21.  The government's understanding is that there is accordingly no unobligated funding available under the ECJ Program for the agency to award new grants. *See Rochester Pure Waters Dist. v. EPA,* 960 F.2d 180 (D.C. Cir. 1992) (holding district courts lack authority to require obligation of rescinded funds).

Although this Court indicated otherwise, *see* Op. at 2, n.3, EPA submits that notwithstanding the present tense used in the WFTCA, Congress's rescission is a continuing command, not a one-time only transaction.  Indeed, the Dictionary Act instructs that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise—words used in the present tense include the future as well as the present."  1 U.S.C. § 1.  The context of the rescission at issue does not counsel a departure from the Dictionary Act's ordinary instruction—if Congress chose to stop devoting resources to a program, the context surely implies it intended to do so on a continuing basis.  The WFTCA's "undeviating use of the present tense," furthermore, is "a striking indicator of its prospective orientation." *Carr v. United States*, 560 U.S. 438, 449 (2010).  The WFTCA makes 33 different rescissions; all are written in the present tense,

and none distinguishes between funds that later become unobligated. *See* Pub. Law. No. 119-21. "The intent of Congress could not be clearer: It did not want any part of the remaining funds to be expended for the [] grant program, so it canceled the appropriation." *Rochester Pure Waters Dist.*, 960 F.2d at 185.

Plaintiffs rely heavily upon the Court's statement that "ECJ funds must be made available through September 30, 2026," Op. at 9, in order to expansively construe the effects of the Court's vacatur. *See* Pls.' Mot at 2. The Court's language is best read as pertaining only to obligated funds, as otherwise it would contradict the WFTCA. Such a reading comports with the Court's conclusion that the WFTCA did not rescind "the entire ECJ Program" but only "funds which were unobligated at the time of the bill's passage." Op. at 3 n.1. The Court found that a controversy over the obligated funds (which the WFTCA did not affect) remained live. *Id*. EPA's reading of the he Court's ensuing discussion indicates it pertains only to those obligated funds.[2] *See id*. It is in this context that the Court quoted Plaintiffs' statement that "[v]acatur alone [of EPA's decision to terminate the ECJ program] should be sufficient to implement the ECJ Program, which the agency is under an ongoing statutory mandate to do." *Id*. at 4. Vacatur is indeed sufficient to wipe away the agency's decision to terminate the ECJ program—and might well have led EPA, in light of the underlying statute, to reimplement the program if funds were available; vacatur is insufficient, however, to require EPA to implement the ECJ Program given the WFTCA's rescission of the relevant funds. *See id*. at 3 n.1. The Court did not need to concern itself with those funds, however, since the controversy over them had become moot, even if the controversy as a whole remained live. *See id*.

---

[2] For a discussion of which ECJ Program funds pertaining to Plaintiffs were obligated or unobligated at the time of the Court's Order, *see* Declaration of Gregg A. Treml, Dkt. No. 205-2.

Vacatur under the Administrative Procedure Act ("APA") may be intended to return the parties to the *regulatory* status quo, but it does nothing to alter the present-day *statutory* circumstances. 5 U.S.C. § 706 (limiting relief to "agency action"). The Court's vacatur did not alter the WFTCA's rescission of unobligated funds (nor did it reinstate the grant terminations resulting in unobligated funding), therefore it could not have intended for the funding to be redistributed.

### III. The Court need not reconsider its denial of injunctive relief, which was correct as a practical and legal matter.

The Court correctly denied Plaintiffs' request for injunctive relief, therefore it should deny Plaintiffs' request to reconsider that decision. Denying injunctive relief was correct both as a practical and as a legal matter.

First, the conclusion that injunctive relief was "impractical" logically followed the Court's finding that any injunctive relief "would presumably require ordering EPA to rehire and staff the ECJ Program." Op. at 11. As a result of the WFTCA's rescission, EPA lacks sufficient funds to rehire ECJ Program staff, thus making it a practical impossibility to do so.

Second, as a legal matter, injunctive relief was properly denied because "the only agency action that can be compelled under the APA is action legally *required*." *Norton v. Southwestern Utah Wilderness All.*, 542 U.S. 55, 63 (2004). To the extent that EPA is legally required to spend funds appropriated under Section 138 of the Clean Air Act, such a requirement would arise from the Impoundment Control Act ("ICA"), which Plaintiffs have no right to enforce, not the Clean Air Act itself. Generally, appropriations are authorizations to obligate money, and their variations on the language that funds "shall be available" for certain purposes constitute conferrals of permissive authority, not mandates to spend every penny. *See, e.g.*, 42 Comp. Gen. 699 (1963) (finding "shall be available" language to be permissive and not mandatory). While the Court erred

in concluding that the Clean Air Act commanded EPA to make grants (rather than conferring permission to do so), *see* Op. at 10, it was nonetheless correct to deny injunctive relief.

The ICA is Congress's tool for ensuring funds allocated by appropriations acts are spent (not the acts themselves). It reflects Congress's attempt to engage with the Executive Branch regarding implementation of appropriations funding programs across the federal government, all of which implicate different inter-Branch considerations. 2 U.S.C. Ch. 17B, *et seq*. The ICA thus establishes a reticulated notification and enforcement regime between the political branches, which allows Congress and the Executive Branch to negotiate over the expenditure of appropriated funds; the statute does not direct the Executive Branch to make funds available for obligation until *after* it has notified Congress of a proposed rescission *and* Congress has failed to act. *Id*. § 683. And as the D.C. Circuit has recently held, that reticulated scheme forecloses private parties like plaintiffs from enforcing the ICA through APA suits like this one. *See Global Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025).

To the extent that the ICA contemplates litigation to enforce any obligation to spend appropriated funds, it provides for suits brought by the Comptroller General, an official within the Legislative Branch. *Id*. § 687. And the statute imposes limitations on the bringing of any such suit that reinforce Congress's desire to control any response to the Executive's actions: no such suit may be brought until the Comptroller General files "an explanatory statement" of "the circumstances giving rise to the" contemplated suit "with the Speaker of the House of Representatives and the President of the Senate" and then "25 calendar days of continuous session of the Congress" elapse. *Id.* Regardless of whether such a suit would be cognizable under Article III and the separation of powers, the statute does not contemplate enforcement at the behest of private parties, thus Plaintiffs clearly fall outside the "zone of interests" necessary to obtain APA

review of compliance with the ICA. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012). Because any requirement to spend appropriated funds comes from the ICA, not the Clean Air Act, and Plaintiffs cannot enforce the ICA, injunctive relief was properly denied.

## CONCLUSION

The Court's vacatur was automatically effective, and EPA has taken no new action in reliance upon the vacated guidance. Any additional injunctive relief is therefore unnecessary, as well as impractical and unwarranted by existing law. For these reasons and those discussed above, Plaintiffs' Motion should be denied.

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By:      *s/Joanna B. Stroud*
Joanna B. Stroud (#11245)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, SC 29401
Telephone:  (843) 266-1676
Email: Joanna.Stroud@usdoj.gov

July 13, 2026