**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

THE SUSTAINABILITY INSTITUTE, et al.,

          Plaintiffs,

      v.

DONALD J. TRUMP, in his official capacity
as President of the United States, et al.,

          Defendants.

Case No. 2:25-cv-02152-RMG

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE JUDGMENT AND
CLARIFY RELIEF ON PLAINTIFFS' CLAIMS PURSUANT TO 5 U.S.C. § 706(1)**

EPA confirms in its response brief that it refuses to implement the ECJ Program despite its statutory mandate and this Court's conclusion that EPA's "refusal to administer" the ECJ Program is "illegal." ECF No. 217 at 10 ("Order").

EPA bases its defiance not on law or logic, but rather on its *disagreement* with this Court's Order, stating that "**the Court erred in concluding that the Clean Air Act commanded EPA to make grants.**" ECF No. 223 at 6–7 (emphasis added). This disagreement, at bottom, stems from EPA's rejection of the Court's holding that the One Big Beautiful Bill Act ("OBBBA") "only rescinded funds which were unobligated at the time of the bill's passage." Order at 3 n.1. That is, the vast majority of the funds Congress appropriated for the ECJ Program were not affected by the OBBBA.

"**Although this Court indicated otherwise**," EPA purports to know better, attempting to relitigate its claim that the OBBBA rescinded funds that became de-obligated *after* the bill's passage. ECF No. 223 at 2 n.1, 3–6 (emphasis added). And because EPA has now issued terminations for every grant in the ECJ Program, it asserts that no unobligated funds remain

1

available to administer the Program, *id.* at 4, which is plainly contrary to this Court's holding on the OBBBA. Order at 3 n.1. In other words, because EPA disagrees with this Court's holdings, it will not administer the ECJ Program.

Federal courts issue orders, not suggestions. If EPA disagrees, its recourse is to appeal through the appropriate channels, not to defy. "[C]ourts have little patience with parties who decide to violate court orders they disagree with rather than challenge them through orderly legal channels." *Williams v. Dart*, 967 F.3d 625, 639 (7th Cir. 2020). To uphold its Order—and the rule of law—Plaintiffs urge the Court to promptly grant their Motion to Enforce in its entirety. *See* ECF No. 218.

## ARGUMENT

As the Court is well aware, the Clean Air Act appropriated $2.8 billion to EPA that it "shall use . . . to award grants" that benefit disadvantaged communities. 42 U.S.C. § 7438. After EPA abruptly terminated the ECJ Program due to its "policy" disagreement with Congress, Order at 2–3, 5, this Court granted summary judgment vacating EPA's termination of the Program. *Id.* at 11. The Court held that EPA "shuttered the ECJ program despite Congress' mandate to the contrary," that "ECJ funds must be made available through September 30, 2026," and that EPA's "closing and premature shuttering of the ECJ Program and refusal to administer it are illegal." *Id.* at 7, 9–10. The Court twice quoted and relied on Plaintiffs' assertion that "[v]acatur alone of EPA's decision to terminate the ECJ Program should be sufficient to implement the ECJ Program, which the agency is under an ongoing statutory mandate to do." *Id.* at 4, 11 (quotations and alterations omitted).

Despite this Court's Order, EPA continues to refuse to implement the ECJ Program, causing Plaintiffs to bring the instant Motion to Enforce and Clarify Relief, ECF No. 218. In its

2

response brief, EPA does not attempt to show compliance with the Order, instead claiming the Court "erred" in two of its key holdings, discussed below. *See* ECF No. 227 at 3–7. The Court need not address the merits of EPA's arguments, as they are all issues already considered and decided by the Court or else waived through EPA's failure to raise them on summary judgment. EPA's disagreement with the Court's Order cannot justify refusal to administer the ECJ Program.

I.      **EPA's Disagreement with the Court's Holding on the OBBBA Does Not Justify Its Refusal to Implement the ECJ Program.**

First, EPA attempts to justify its refusal to administer the ECJ Program by rejecting the Court's clear holding on the meaning of the OBBBA. The OBBBA states that "unobligated balances" under the ECJ Program "are rescinded." Pub. L. No. 119-21 § 60016, 139 Stat. 72 (2025). On summary judgment, EPA argued that this language rescinded all "funds that are subsequently unobligated *after* the passage of the [OBBBA]," including Plaintiffs' grants. ECF No. 205 at 11–12. Plaintiffs, in turn, argued that the OBBBA only rescinded those limited funds that were unobligated on the date the bill passed (July 4, 2025), leaving the vast majority of funds available to administer the Program that Congress left intact. ECF No. 207 at 6–9. The Court explicitly rejected EPA's argument, holding the case was not moot because the OBBBA "only rescinded funds which were unobligated at the time of the Bill's passage." Order at 3 n.1.

However, EPA now treats the Court's clear holding as a mere "indicat[ion]" of the meaning of the OBBBA, recycling its claim that the OBBBA rescinded all funds that become de-obligated *after* the bill passed. ECF No. 223 at 2 n.1, 3–6. The Court need not indulge EPA's re-writing of the bill, for the Court has already considered the question and ruled against the agency.

EPA's refusal to administer the ECJ Program rises and falls with its misreading of the OBBBA. As Defendants acknowledge:

> Vacatur is indeed sufficient to wipe away the agency's decision to terminate the ECJ program—and might well have led EPA, in light of the underlying statute, to reimplement the program **if funds were available**; vacatur is insufficient, however, to require EPA to implement the ECJ Program **given the [OBBBA's] rescission of the relevant funds.**

ECF No. 223 at 5 (emphasis added). In other words, the parties are in agreement that "the effect of vacatur is to automatically resurrect the prior standard." *Id.* at 3 (citation and quotations omitted). EPA effectively concedes that, but for the OBBBA's purported rescission of funds de-obligated in the future, vacatur would be sufficient to "reimplement" the ECJ Program. *Id.* at 5. Because the Court has held that the OBBBA did <u>not</u> rescind funds de-obligated in the future, EPA must administer the Program with all funds that were obligated when the OBBBA passed.[1]

In short, the Court's Order requires EPA to administer the ECJ Program with the funds left intact by the OBBBA. Plaintiffs respectfully request that the Court enforce and/or clarify its Order to that effect.[2]

**II.      EPA's Disagreement with the Court's Holding on the Clean Air Act Cannot Defeat Relief Under 5 U.S.C. § 706(1).**

Next, EPA asserts "the Court erred in concluding that the Clean Air Act commanded EPA to make grants (rather than conferring permission to do so)." ECF. No. 223 at 6–7. That assertion

---

[1] Based on the CBO's scoring, roughly $516 million of the $3 billion appropriated for the ECJ Program was unobligated at the time of the OBBBA's passage. *See* ECF No. 204 at 17; ECF No. 207 at 9. This would leave nearly $2.5 billion, less funds already spent, available to administer the Program.

[2] Bizarrely, EPA claims that the Court's Order still grants "meaningful" relief despite its contention that the Order does not require EPA to administer the ECJ Program—because the Order precludes EPA from issuing "any further terminations of obligated ECJ Grants." ECF No. 223 at 3. Such relief would be meaningless because EPA has already begun the termination process for "each grant awarded under the ECJ Program," Order at 3 (citation and quotations omitted), and maintains that the Order leaves it free to "complet[e]" those terminations. ECF No. 223 at 3. With no "further terminations" left that would be affected by the Order, EPA's view would render the Court's Order an advisory opinion.

4

is indefensible, as the Court simply adhered to the plain text of the Act, which appropriates funds that EPA "**shall** use . . . to award grants." 42 U.S.C. § 7438 (emphasis added). The Court need not parse EPA's strange argument that "shall" connotes "permissive authority," ECF. No. 223 at 6–7, for the Court squarely held that EPA has a "mandate" to administer the ECJ Program. Order at 7–10.

Contrary to EPA's view, that mandate requires the agency to spend all funds appropriated by Congress. As the Court found, quoting then-Circuit Judge Kavanaugh: "'[A] President sometimes has policy reasons . . . for wanting to spend less than the full amount appropriated by Congress for a particular project or program. But in those circumstances, even the President does not have unilateral authority to refuse to spend the funds.'" *Id.* at 9 (quoting *In re Aiken Cnty.*, 725 F.3d 255, 261 (D.C. Cir. 2013)). Indeed, "it is black letter appropriation law that, absent an express indication to the contrary, an appropriation is a mandate that the Executive Branch spend the full amount appropriated by Congress for a particular project or program." *Child Trends, Inc. v. U.S. Dep't of Educ.*, 795 F. Supp. 3d 700, 721 (D. Md. 2025) (citation and quotations omitted).

As the Court further held, the plain text of the Clean Air Act requires that "ECJ funds must be made available through September 30, 2026." Order at 9. "If Congress appropriates money for certain grants and specifies a deadline to obligate those funds, then the agency must issue grants up until that deadline." *Harris Cty. v. Kennedy*, 786 F. Supp. 3d 194, 208 (D.D.C. 2025). As a result of its mandate, reaffirmed by the Court, EPA is plainly required to award all remaining funds as grants by September 30, 2026.

The Court's plain-text reading of the Clean Air Act confirms that relief is required under 5 U.S.C. § 706(1), which provides that the reviewing court "**shall** . . . compel agency action unlawfully withheld or unreasonably delayed." (emphasis added). The Clean Air Act mandates

that EPA take a specified action—awarding a sum of money as grants—by a specified date—September 30, 2026. 42 U.S.C. § 7438. The Act leaves EPA discretion in choosing how to accomplish that objective, but plainly forbids EPA from simply refusing to award appropriated funds as grants, as it continues to do here. This is a textbook § 706(1) case under the Supreme Court's guidance: "[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004).

The Court should compel EPA to award all remaining funds as grants consistent with the Clean Air Act, 42 U.S.C. § 7438. Indeed, as the Fourth Circuit and this district court have held: "if a party has successfully demonstrated an unlawfully withheld agency action under § 706(1), the court **must** enter an appropriate order and secure the agency's compliance with the law . . . regardless of equitable or policy considerations." *South Carolina v. United States*, 907 F.3d 742, 756 (4th Cir. 2018) (emphasis added); *South Carolina v. United States*, 243 F. Supp. 3d 673, 694 (D.S.C. 2017) ("[T]he plain language of § 706(1) requires a reviewing court that has found that an agency action has been unlawfully withheld to issue an order compelling that agency action and does not permit the court to decline to do so based on equitable considerations.").

To avoid this result, EPA contends that any requirement to spend funds under the Clean Air Act stems not from the Act itself, but from the Impoundment Control Act ("ICA"). ECF No. 223 at 6–7. EPA further contends that Plaintiffs may not enforce the ICA and that only the Comptroller General may do so. *Id.* at 6–8. These arguments are plainly waived, as EPA never raised an ICA defense in its briefing on Plaintiffs' motion for summary judgment, the Defendants' parallel motion to dismiss, or in its answer to the Complaint. *See* ECF Nos. 205,

6

206, 210; *Webb-Harrison v. Assocs. Asset Recovery, LLC*, No. 4:23-cv-03812, 2025 WL 2680637, at \*7 n.5 (D.S.C. Sept. 18, 2025) ("[T]he argument is waived because it was not raised in Defendants' summary judgment briefing.").

Even if they were not waived, these arguments are meritless. EPA is mistaken that Plaintiffs are attempting to "enforc[e] the ICA through [an] APA suit." ECF No. 223 at 7. To the contrary, Plaintiffs seek to enforce the clear mandates of the Clean Air Act through an APA suit. Nothing in the ICA erases Section 7438 of the Clean Air Act or "preclude[s]" Plaintiffs' ability to enforce its mandates through APA claims. 5 U.S.C. § 701(a)(1) ("[The APA] applies . . . except to the extent that statutes preclude judicial review."); *see also Weyerhauser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22–23 (2018) (noting "strong presumption" against statutes precluding judicial review of APA claims (citation and quotations omitted)). Indeed, the ICA expressly states that "[n]othing contained in this Act . . . shall be construed as . . . affecting in any way the claims or defenses of any party to litigation concerning any impoundment." 2 U.S.C. § 681. By its plain text, the ICA does not "affect[] in any way" Plaintiffs' APA claims to enforce the Clean Air Act. Where, as here, "Defendants have run afoul . . . [of] the underlying statute that imposes fundamental programmatic duties," the ICA poses no bar to APA claims. *Child Trends*, 795 F. Supp. 3d at 721–22.[3]

EPA cites *Global Health Council v. Trump*, but that case dealt with the entirely distinct question of whether private litigants can directly enforce the ICA itself through an APA suit; the court expressly did "not decide whether the ICA precludes suits under the APA to enforce

---

[3] EPA does not appear to believe its own ICA argument, as the agency concedes that the Court's vacatur likely would have caused EPA to administer the ECJ Program "in light of the underlying statute"—i.e., the Clean Air Act—but for the agency's false view that no funds are available. ECF No. 223 at 5.

appropriations acts." 153 F.4th 1, 20 n.17 (D.C. Cir. 2025).[4] "[A]s *Global Health Council*

acknowledged, this holding did not extend to the question of whether the existence of the

Impoundment Control Act also precluded 'contrary-to-law claims . . . based on' other

'substantive provisions,' such as appropriations acts." *Neguse v. U.S. Imm. & Customs Enf.*, 813

F. Supp. 3d 45, 88–89 (D.D.C. 2025). The decision has no bearing on Plaintiffs' APA claims to

enforce the Clean Air Act.

In sum, the Court should summarily reject EPA's attempts to re-litigate its mandate under

the Clean Air Act and "compel" the agency to administer the ECJ Program pursuant to 5 U.S.C.

§ 706(1).

**CONCLUSION**

As its response brief illustrates, EPA continues to refuse to implement the ECJ Program

contrary to its statutory mandate and this Court's Order and Opinion on summary judgment.

With the statutory deadline of September 30, 2026, fast approaching, EPA is transparently

attempting to run out the clock. To address these tactics, Plaintiffs respectfully request that the

Court promptly grant its Motion to Enforce, ECF No. 218, by: (1) instructing EPA that the

Court's Order and Opinion of June 11, 2026, requires EPA to administer the ECJ Program and

---

[4] In fact, the *Global Health Council* panel amended its opinion to add the quoted language after a request for a rehearing en banc, which was at least part of the reason why the D.C. Circuit denied a rehearing. As Judge Garcia explained, the panel "originally held that the plaintiffs were precluded from bringing their challenge under the Administrative Procedure Act as a statutory claim that the Executive Branch is violating the Further Consolidated Appropriations Act of 2024. That holding left the plaintiffs with no meaningful avenue to test the legality of the Executive Branch's unilateral actions. Now, however, the panel has revised its opinion in a way that allows that claim to proceed. That claim (and any other remaining claims) may be litigated expeditiously in the district court." *Global Health Council v. Trump*, No. 25-5097, Order, ECF No. 2132525 at 8 (D.C. Cir. Aug. 28, 2025) (statement of Circuit Judge Garcia respecting the denial of rehearing en banc) (Ex. 1).

award and obligate[5] all available funding as grants before September 30, 2026; and (2) compelling EPA to do the same pursuant to 5 U.S.C. § 706(1).

If EPA continues in its efforts to run out the clock, Plaintiffs respectfully remind the Court of its authority to equitably toll the statutory deadline to award grants—particularly where the government's own actions have caused the expiration of budgetary authority. *See Nat'l Ass'n of Reg'l Councils v. Costle*, 564 F.2d 583, 588 (D.C. Cir. 1977) ("[A] court may act to prevent the expiration of budget authority" by "simply suspend[ing] the operation of a lapse provision and extend[ing] the term of already existing budget authority."); *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 98–99 (D.C. Cir. 2021) ("As long as the suit is filed prior to the expiration date, the court acquires the necessary jurisdiction and has the equitable power to 'revive' expired budget authority . . . after the date when the appropriation lapses." (citations and quotations omitted)).

Lastly, given the impending statutory deadline and EPA's conduct, Plaintiffs request that the Court convene a prompt status conference for EPA to explain how it plans to award all available funding by September 30, 2026, and require EPA to provide regular updates thereafter.

Respectfully submitted this 17th day of July 2026.

[signatures on following page]

---

[5] EPA's duty to award and obligate all funding by the statutory deadline does not necessarily mean that the agency must distribute all funding to grantees by this date. "The grant period may extend beyond the availability deadline . . . so long as the grant was issued prior to the [statutory] deadline." *Harris Cty.*, 786 F. Supp. 3d at 208.

9

/s/ Carl T. Brzorad
Carl T. Brzorad
SOUTHERN ENVIRONMENTAL LAW
CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
cbrzorad@selc.org

/s/ Kimberley Hunter
Kimberley Hunter (N.C. Bar No. 41333)
Irena Como (N.C. Bar No. 51812)
Nicholas S. Torrey (N.C. Bar No. 43382)
Ben Grillot (D.C. Bar. No. 982114)
SOUTHERN ENVIRONMENTAL LAW
CENTER
136 East Rosemary Street, Suite 500
Chapel Hill, NC 27514
Telephone: (919) 967-1450
Facsimile: (919) 929-9421
kmeyer@selc.org
icomo@selc.org
ntorrey@selc.org

*Counsel for Plaintiffs The Sustainability
Institute, Bronx River Alliance, CleanAIRE
NC, Earth Island Institute, and Leadership
Counsel for Justice and Accountability*

/s/ Graham Provost
Graham Provost* (DC Bar No. 1780222)
Elaine Poon* (VA Bar No. 91963)
Jon Miller* (MA Bar No. 663012)
Cassie Crawford* (NC Bar No. 45396)
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
Telephone: (510) 738-6788
graham@publicrightsproject.org

*Counsel for Plaintiffs Baltimore, Maryland;
Columbus, Ohio; Madison, Wisconsin;
Nashville, Tennessee; New Haven,
Connecticut; and San Diego, California*

/s/ Julie Rau
Julie Rau, Lead Deputy City Attorney
(CA Bar No. 317658)
1200 Third Avenue, Suite 1100
San Diego, California 92101-4100
(619) 533-5800
jrau@sandiego.gov

*Counsel for Plaintiff City of San Diego*

*Admitted in listed states but not licensed to
practice law in California.

10

**CERTIFICATE OF SERVICE**

I certify that on July 17, 2026, I electronically filed the foregoing with the Clerk of the Court by using the Court's CM/ECF system.

/s/ Carl T. Brzorad
Carl T. Brzorad (S.C. Bar No. 105413)
SOUTHERN ENVIRONMENTAL LAW CENTER
525 East Bay Street, Suite 200
Charleston, SC 29403
Telephone: (843) 720-5270
Facsimile: (843) 414-7039
cbrzorad@selc.org

11