**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| The Sustainability Institute, *et al.*, ) | Civil Action Number: 2:25-cv-02152-RMG |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| Donald J. Trump, in his official capacity ) | |
| as President of the United States, *et al.* ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL**

Defendants, by and through the undersigned Assistant United States Attorney, hereby move for a stay pending appeal of the Court's Orders, Dkt. Nos. 217; 227 ("Orders"). The Orders declared "that the agency guidance closing the ECJ Program is illegal and vacate[d] that guidance." Dkt. No. 217, p. 11. Defendants have appealed the Orders to the Fourth Circuit, *see* Dkt. No. 231, and respectfully move this Court for a stay of its Orders pending resolution of Defendants' appeal.

In light of the effects of the vacatur (as described more fully below), Defendants respectfully request that the Court rule on this motion by August 5, 2026, so that Defendants may promptly seek appellate relief, if necessary. If, upon reviewing this motion, the Court determines that Defendants have not met the requirements for a stay, Defendants respectfully request that this Court summarily deny this motion without awaiting a response from Plaintiffs.

As explained below, all four relevant factors weigh in favor of a stay. The balance of harms strongly weighs in favor of a stay. Additionally, Defendants are likely to prevail on appeal on their arguments.

**STANDARD OF REVIEW**

1

Courts typically consider four factors in evaluating a request for a stay pending appeal: (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant will be irreparably harmed if the stay is not granted; (3) whether issuance of the stay will substantially harm the other parties; and (4) whether the granting of the stay serves the public interest. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 981 F.3d 251, 256 (4th Cir. 2020) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). Where the federal government is a party, its interests and the public interest overlap in the balancing of harms. *Nken v. Holder*, 556 U.S. 418, 420 (2009).

**ARGUMENT**

**I.      The Balance of Harms Weighs Strongly in Favor of a Stay.**

The government will suffer irreparable injury if the vacatur Orders are not stayed pending appeal.  Indeed, EPA estimates that, to comply with this Court's Orders, which Defendants read to require EPA to re-obligate all ECJ funds that remain available (based on the Court's reading of Congress's rescission) by September 30, 2026, the Agency would be restarting a grant program worth approximately $1.56 billion in the span of two months. Ex. A, Voyles Decl., p. 3.  Thus, if the government is forced to obligate an extremely large amount of funds while this Court's Orders are in place, once those funds are disbursed, the government may well be left with no meaningful recourse to reclaim the funds even if it prevails. The resulting harm to the government and the public fisc is plainly enormous.  That harm is compounded by the Orders' interference with the President's and Congress's ability to implement their own preferred policies.

Administering the ECJ Program using existing staff and resources puts approximately $56 million in other funding not at issue in this litigation that also expires on September 30, 2026 at risk of not being able to be obligated prior to its expiration. *Id*. at p. 4. Hiring new employees and

2

obtaining contractor support to assist with administering the ECJ program – without rediverting existing staff time and resources from other programs – is likely to take more than the two months given by the Court's Orders. *Id*. at p. 4. Additionally, it is extremely unlikely EPA would be able to complete the steps necessary to prudently award new grants within two months. *Id.* at pp. 5-8. The application period for a new grant alone is typically open for a minimum of 45 calendar days, and often longer. *Id.* at pp. 7.  In sum, taking into account (1) EPA's existing work (2) what it would take to obtain staff and/or contract support, and (3) what it takes to prudently make new awards, it would be extremely unlikely that EPA would be able to prudently implement the ECJ Program by making new awards by September 30, 2026. *Id*. at p. 8. Even reinstatement, rather than new awards – a relief Plaintiffs did not request – would require a tremendous diversion of EPA resources, rendering compliance by September 30, 2026, "extremely difficult." *Id.* at pp. 8-9.

By contrast, Plaintiffs will experience only minimal, if any, injuries from a stay of the vacatur pending appeal.  As noted by this Court, "Plaintiffs . . . are of course free to pursue their claims for alleged unlawful termination of their grants in the [Court of Federal Claims]." Dkt. No. 217, p. 11.

## II.    Defendants Are Substantially Likely to Prevail on Appeal, and, at a Minimum, Have a Substantial Case on Appeal.

The Court's Orders determined "that the agency guidance closing the ECJ Program is illegal and vacate[d] that guidance." Dkt. No. 217, p. 11.  In so ruling, the Court held that the Act "only rescinded funds which were unobligated at the time of the [One Big Beautiful Bill] Act's passage." *Id*. at p. 3, n.1.   Defendants respectfully submit that their position regarding rescinded funds at a minimum presents a substantial case on appeal, and Defendants believe that the Fourth Circuit will adopt their interpretation as described below.

### A.    There Are No Available ECJ Funds Because Congress Rescinded Them.

Congress initially appropriated $2.8 billion to fund ECJ grants, and EPA awarded approximately 300 grants using those funds. EPA then determined to terminate each grant and, while those terminations were ongoing, Congress rescinded all "unobligated balances of amounts made available to carry out" the ECJ program. Pub. L. No. 119-21, § 60016, 139 Stat. 72, 156 (July 4, 2025). EPA has now terminated nearly every grant that was originally made with ECJ funds, thereby rendering the remaining funds originally attached to each grant unobligated. The moment each set of funds became unobligated, it was rescinded pursuant to Congress's directions. Thus, no portion of the original ECJ appropriation remains available to be obligated to new grants. And "[i]t is beyond dispute that a federal court cannot order the obligation of funds for which there is no appropriation"—or order the obligation of funds "in the face of a rescission by Congress of the underlying appropriation." *Rochester Pure Waters Dist. v. EPA*, 950 F.2d 180, 184 (D.C. Cir. 1992).

Despite this, the Court concluded that funds remain available for EPA to award to new grantees entirely because, in the Court's view, Congress "only rescinded funds which were unobligated at the time of the bill's passage" on July 4, 2025. Dkt. No. 217, p. 3, n.1. Defendants respectfully submit that Congress has rescinded all unobligated balances associated with the ECJ program. As a result, there are no available unobligated appropriations for the program, and the district court's Order(s) requiring EPA to disburse funds before September 30 cannot be sustained.

**B.    The District Court's Vacatur Did Not Require EPA to Affirmatively Reobligate or Expend Funds, nor Would Such Relief Be Permissible.**

Even setting aside Congress's rescission of the relevant funding, this Court's view that its Orders require EPA to reobligate approximately $1.56 billion in the next two months is incorrect. Plaintiffs claimed that EPA's decision to terminate the ECJ program was contrary to the APA's requirements, and this Court agreed and vacated the guidance memorializing that decision. That

4

vacatur effectively voids the guidance, but it does not impose any new affirmative requirement to reobligate funds on EPA. Moreover, any such mandatory injunction would have to rest on conclusions about EPA's non-discretionary obligations that this Court did not reach and that would be incorrect in this case.

The effect of this Court's vacatur was clear and limited: EPA's guidance no longer has legal effect and EPA may no longer rely on it. In other words, the vacatur has "re-establish[ed] the status quo absent the" guidance. *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022). The vacatur, however, "neither compels nor restrains further agency decision-making." *Id*.; *see also National TPS All. v. Noem*, 166 F.4th 739, 760 (9th Cir. 2026) ("By its plain terms, a set aside does not affect the Government's future actions."); *Make the Road N.Y. v. Noem*, 2025 WL 3563313, at *17 (D.C. Cir. Nov. 22, 2025) (statement of Millett and Childs, JJ.) (similar).

This Court's misinterpretation of its vacatur as effectively a mandatory injunction requiring EPA to obligate funds is only more problematic in this case because the Court could not have properly entered such an injunction. For one, this Court neither applied the rigorous standard applicable to such mandatory injunctions on the merits nor evaluated the equitable factors required to enter injunctive relief. And, regardless, any conclusion by this Court that such an injunction was warranted would have been erroneous.

To compel an agency to take a specific action, a court must first conclude that "an agency failed to take a discrete agency action that it is required to take." *Norton v. Southwestern Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphases omitted). Under traditional mandamus principles that have been carried forward into the APA, such an affirmative injunction remedy is "normally limited to enforcement of a specific, unequivocal command"—that is, "the ordering of

5

a precise, definite act about which an official had no discretion whatever." *Id.* at 63 (quotation and alterations omitted).

Here, the underlying statute, which appropriated $2.8 billion "to award grants" to eligible entities for specified climate-justice activities, *see* 42 U.S.C. §7438(a)(1), contains no such specific, unequivocal command to – following terminations of the grants awarded – reobligate or expend any (much less all) of the funds originally appropriated for the ECJ program (even setting aside Congress's more recent rescission). Thus, this Court cannot properly have entered any mandatory injunction requiring that result, even if it had considered Plaintiffs' request that it provide such relief.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court stay its Orders pending the resolution of Defendants' appeal.

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By:     *s/Joanna B. Stroud*
Joanna B. Stroud (#11245)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, SC 29401
Telephone: (843) 266-1676
Email: Joanna.Stroud@usdoj.gov

July 31, 2026

6